UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------- x

SHERRY SCHNALL, Individually and
On Behalf of All Others Similarly Situated,

                   Plaintiff,

          v.

ANNUITY AND LIFE RE (HOLDINGS),
LTD., XL CAPITAL, LTD., LAWRENCE S.
DOYLE, FREDERICK S. HAMMER, JOHN
F. BURKE, WILLIAM W. ATKIN, BRIAN
O'HARA, AND MICHAEL P. ESPOSITO JR.

                Defendant.,

---------------------------------------------------- x

CONSOLIDATED CIVIL ACTION
02-CV-2133 (GLG)

ALL CASES

## DEFENDANT JOHN F. BURKE'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

1-NY/1661308.2

CARMODY & TORRANCE LLP
Attorneys at Law

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .......................................................................................iii

PRELIMINARY STATEMENT....................................................................................1

RELEVANT FACTS ...................................................................................................3

ARGUMENT ..............................................................................................................9

I.     PLAINTIFFS DO NOT ALLEGE PARTICULARIZED
FACTS FROM WHICH A STRONG INFERENCE OF
SCIENTER MAY BE DRAWN AGAINST MR. BURKE ....................................9

     A.     Plaintiffs Must Allege With Particularity Facts Giving Rise
To A Strong Inference That Mr. Burke Acted With The Required
State Of Mind To Establish A Violation Of Section 10(b)....................10

     B.     Plaintiffs Do Not Allege That Mr.
Burke Had A Motive To Commit Fraud...............................................11

          1.     ANR's Desire To Maintain Financial Strength Ratings
Does Not Give Rise to Scienter On the Part of Mr. Burke ........11

          2.     Mr. Burke's Purchases of ANR Stock And The
Absence Of Any Sales On His Part During the
Purported Class Period Negates Any Inference of
Scienter ...............................................................................13

     C.     Plaintiffs Fail To Plead Particularized Facts That Constitute
Strong Circumstantial Evidence Of Conscious or Reckless
Behavior............................................................................................14

          1.     Conclusory Allegations of Mr. Burke's State Of Mind Do
Not Give Rise To An Inference of Conscious or Reckless
Behavior ..............................................................................14

          2.     Mr. Burke's Position Within The Company, His Access to
Non-Public Information, And His Signature On Certain
Documents Do Not Give Rise To A Strong Inference of
Scienter ...............................................................................16

     D.     Plaintiffs' Accounting Allegations Do Not
Give Rise To A Strong Inference Of Scienter......................................18

          1.     The Alleged Violation of GAAP Does Not
Give Rise To A Strong Inference of Scienter............................18

          2.     Alleging Accounting Fraud Is Not A
Perfunctory Task, Especially Given The
Accounting Judgments At Issue In This Case ..........................19

II.     SEVERAL ALLEGED MISSTATEMENTS AND OMISSIONS
CONTAINED IN ANR'S CONFERENCE CALLS ARE NON-
ACTIONABLE FORWARD-LOOKING STATEMENTS ..................................26

CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law              Post Office Box 1110
                            Waterbury, CT 06721-1110
                            Telephone: 203 573-1200

i

**TABLE OF CONTENTS**
(continued)

Page

    A.    Many Of The Statements Made By Mr. Burke During ANR's
Earnings Conference Calls Were Forward-Looking Statements .........27

    B.    Mr. Burke's Oral Forward-Looking Statements
Are Protected By The Safe Harbor of the Reform Act.........................28

    C.    Claims Based Upon Mr. Burke's Forward-Looking
Statements Must Be Dismissed Because Plaintiffs
Fail To Allege Mr. Burke's Actual Knowledge.....................................32

III.    MR. BURKE'S ALLEGED MISSTATEMENTS ARE NOT ACTIONABLE
AS A MATTER OF LAW BECAUSE THEY CAUSED THE MARKET
PRICE OF ANR'S STOCK TO DECREASE, THEREBY NEGATING
THE NECESSARY ELEMENT OF RELIANCE.............................................33

IV.    THE CLAIM AGAINST MR. BURKE FOR CONTROL
PERSON LIABILITY MUST ALSO BE DISMISSED .....................................35

CONCLUSION...............................................................................................37

CARMODY & TORRANCE LLP    50 Leavenworth Street    ii
Attorneys at Law    Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

## TABLE OF AUTHORITIES

### CASES

*Acito v. IMCERA Group, Inc.*,
47 F.3d 47 (2d Cir. 1995)........................................................................9, 10, 14, 24

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999)..........................................................................11, 13, 16

*In re Allied Capital Corp. Sec. Litig.*,
No. 02 Civ. 3812, 2003 WL 1964184 (S.D.N.Y. Apr. 25, 2003) ...............................12, 35

*Allison v. Brooktree Corp.*,
999 F. Supp. 1342 (S.D. Cal. 1998)........................................................................13

*Asher v. Baxter Intl, Inc.*,
No. 02 C 5608, 2003 WL 21825498 (N.D. Ill. July 24, 2003) ...................................31, 32

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)...............................................................................................33, 35

*Brass v. Am. Film Techs., Inc.*,
987 F.2d 142 (2d Cir. 1993)........................................................................................3

*Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997).....................................................................................34

*In re Capstead Mortgage Corp. Sec. Litig.*,
258 F. Supp. 2d 533 (N.D. Tex. 2003).......................................................................21

*In re CDnow, Inc. Sec. Litig*,
138 F. Supp. 2d 624 (E.D. Pa. 2001)..........................................................................13

*In re Cendant Corp. Sec. Litig.*,
76 F. Supp. 2d 531 (D.N.J. 1999) .............................................................................17

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996).................................................................................18, 19

*Christidis v. First Penn. Mortgage Trust*,
717 F.2d 96 (3d Cir. 1983).........................................................................................22

*Chu v. Sabratek*,
100 F. Supp. 2d 827 (N.D. Ill. 2000) .........................................................................13

*In re Cirrus Logic Sec. Litig.*,
946 F. Supp. 1446 (N.D.Cal. 1996)............................................................................20

*Clark v. TRO Learning, Inc.*,
No. 97 C 8683, 1998 WL 292382 (N.D. Ill. May 20, 1998)............................................23

*Coates v. Heartland Wireless Communications, Inc.*,
26 F. Supp. 2d 910 (N.D. Tex. 1998)............................................................................25

*Coble v. Broadvision Inc.*,
No. C 01-01969 CRB., 2002 WL 31093589 (N.D. Cal. Sept. 11, 2002)...................26, 28

*In re Columbia Labs., Inc. Sec. Litig.*,
144 F. Supp. 2d 1362 (S.D. Fla. 2001) .........................................................................11

*Decker v. Massey-Ferguson, Ltd.*,
681 F.2d 111 (2d Cir. 1982) .........................................................................................15

*Denny v. Barber*,
576 F.2d 465 (2d Cir. 1978)..........................................................................................24

*In re Deutsche Telekom AG Sec. Litig.*,
No. 00-Civ. 9475 SHS, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ........................35, 36

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990)....................................................................................22, 24

*In re Digi Intl, Inc. Sec. Litig.*,
No. 00-3162, No. 00-3227, 2001 WL 753869 (8th Cir. Jul. 5, 2001)............................19

*Elliot Assocs. v. Hayes*,
141 F. Supp. 2d 344, 358-59 (S.D.N.Y. 2000), *affd*, 26 Fed. Appx. 83 (2d. Cir. 2002)12, 14,

*In re e.spire Comm., Inc. Sec. Litig.*,
127 F. Supp. 2d 734 (D. Md. 2001).........................................................................16, 24

*In re FAC Realty Sec. Litig.*,
990 F. Supp. 416 (E.D.N.C. 1997)................................................................................24

*Fant v. Perelman*,
No. 97 CIV. 8435 (AP), 97 Civ. 8436  1999 WL 199078 (S.D.N.Y. Apr. 9, 1999) ..........12

*In re First Union Sec. Litig.*,
128 F. Supp. 2d 871 (W.D.N.C. 2001)...........................................................................19

*Fox v. Equimark Corp.*,
782 F. Supp. 295 (W.D. Pa. 1991).................................................................................22

*Gabriel Capital, L.P. v. NatWest Fin., Inc.*,
122 F. Supp. 2d 407 (S.D.N.Y. 2000) ............................................................................36

CARMODY & TORRANCE LLP        50 Leavenworth Street    iv
Attorneys at Law            Post Office Box 1110
                    Waterbury, CT 06721-1110
                    Telephone: 203 573-1200

*Gannon v. Contl Ins. Co.*,
920 F. Supp. 566 (D.N.J. 1996) ...............................................................................21

*Glickman v. Alexander & Alexander Servs. Inc.*,
No. 93 Civ 7594 (LAP), 1996 WL 88570 (S.D.N.Y. Feb. 29, 1996)..................15, 16, 23

*Greebel v. FTP Software, Inc.*,
194 F.3d 185 (1st Cir. 1999) .............................................................................19, 22

*Greenberg v. Howtek, Inc.*,
790 F. Supp. 1181 (D.N.H. 1992). ..........................................................................23

*Grossman v. Texas Commerce Bancshares, Inc.*,
No. 87 Civ 6295 (MJL)., 1995 WL 552744 (S.D.N.Y. Sept. 15, 1995) ..................11, 25

*Harris v. Ivax Corp.*,
182 F.3d 799 (11th Cir. 1999)...............................................................................28

*Harris v. Ivax Corp.*,
998 F. Supp. 1449 (S.D. Fla. 1998), *affd*, 182 F.3d 799 (11th Cir. 1999) ...............31, 32

*In re Health Management Sys., Inc. Sec. Litig.*,
No. 97 CIV 1865 (HB), 1998 WL 283286 (S.D.N.Y. June 1, 1998)...................13, 16, 17

*In re Home Health Corp. of America, Inc. Sec. Litig.*,
No. CIV. A. 98-834., 1999 WL 79057 (E.D. Pa. Jan. 29, 1999) ....................................26

*In re K-Tel Intl, Inc. Sec. Litig.*,
300 F.3d 881 (8th Cir. 2002)...............................................................................11

*Karacand v. Edwards*,
53 F. Supp. 2d 1236 (D. Utah 1999)......................................................................5, 13

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)..........................................................................10, 12, 14

*Kramer v. Time Warner, Inc.*,
937 F.2d 767 (2d Cir. 1991).....................................................................................3

*Kriendler v. Chem. Waste Mgmt., Inc.*,
877 F. Supp. 1140 (N.D. Ill. 1995) ......................................................................23, 25

*Leonard v. NetFRAME Systems, Inc.*,
No. C-95-0238, 1995 WL 798923 (N.D. Cal. Aug. 8, 1995)...........................................20

*Lovelace v. Software Spectrum Inc.*,
78 F.3d 1015 (5th Cir. 1996)..................................................................................20

CARMODY & TORRANCE LLP
Attorneys at Law

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

*Malin, v. Ivax Corp.,*
17 F. Supp. 2d 1345 (S.D.Fla. 1998), *aff'd,* 226 F.3d 647 (11th Cir. 2000)....................23

*Mishkin v. Ageloff,*
No. 97 Civ. 2690 LAP, 1998 WL 651065 ...............................................................36

*In re MCI Worldcom, Inc. Sec. Litig.,*
191 F.Supp. 2d 778 (S.D. Miss. 2002)....................................................................23

*In re MCI Worldcom, Inc. Sec. Litig.,*
93 F. Supp. 2d 276 (E.D.N.Y. 2000) .......................................................................12

*Mathews v. Centex Telemanagement, Inc.,*
No. C-92-1837, 1994 WL 269734 (N.D. Cal. June 8, 1994)....................................14, 19

*In re Mercator Software, Inc. Sec. Litig.,*
161 F. Supp. 2d 143 (D. Conn. 2001)..................................................................11, 12

*Molinari v. Symantec Corp.,*
No. C-97-20021-JW, 1998 WL 78120 (N.D. Cal. Feb. 17, 1998)..................................23

*Mortensen v. AmeriCredit Corp.,*
123 F.Supp. 2d 1018 (N.D. Tex.), *affd,* 240 F.3d 1073 (5th Cir. 2000) .........................17

*In re MSC Industrial Direct Co., Inc.,*
No. 02CV4422(ADS)(WDW), 2003 WL 22118961 (E.D.N.Y. Sept. 13, 2003) ...............23

*Nathenson v. Zonagen, Inc.,*
267 F.3d 400 (5th Cir. 2001)..................................................................................34

*In re Northern Telecom Ltd. Sec. Litig.,*
116 F. Supp. 2d 446 (S.D.N.Y. 2000) ..................................................................13, 18

*Novak v. Kasaks,*
216 F.3d 300 (2d Cir. 2000)...............................................................................12, 18

*In re Oak Technology Sec. Litig.,*
No. 96-20552 SW., 1997 WL 448168 (N.D. Cal. Aug. 1, 1997) ...................................20

*Oppenheimer v. Novell, Inc.,*
851 F. Supp. 412 (D. Utah 1994)............................................................................14

*Oran v. Stafford,*
226 F.3d 275 (3d Cir. 2000)...............................................................................13, 34

*In re Paracelsus Corp. Sec. Litig.,*
61 F. Supp. 2d 591 (S.D. Tex. 1998) .......................................................................24

CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law                        Post Office Box 1110
                                               Waterbury, CT 06721-1110
                                               Telephone: 203 573-1200

*In re Peritus Software Servs., Inc. Sec. Litig.*,
52 F. Supp. 2d 211 (D. Mass. 1999)......................................................................24

*Press v. Chem. Inv. Serv.*,
166 F.3d 529 (2d Cir. 1999) ................................................................................33

*Ressler v. Claiborne, Inc.*,
75 F. Supp. 2d 43 (E.D.N.Y. 1999)......................................................................14

*Rich v. Maidstone Financial, Inc.*,
No. 98 CIV 2569 (DAB)., 2001 WL 286757 (S.D.N.Y. Mar. 23, 2001) .........................15

*Rich v. Maidstone Fin., Inc.*,
No. 98 Civ 2569 (DAB)., 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002)................35, 37

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996)................................................................................3, 11

*In re Sec. Litig. BMC Software, Inc.*,
183 F. Supp. 2d 860 (S.D. Tex. 2001) ..........................................................13, 26, 29

*In re Segue Software, Inc. Sec. Litig.*,
106 F. Supp. 2d 161, (D. Mass. 2000) ....................................................................24

*Shapiro v. UJB Fin. Corp.*,
964 F.2d 272 (3d Cir. 1992)................................................................................21

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994)..........................................................................12, 15, 25

*Siegel v. Lyons*,
No. C-95-3588, 1996 WL 438793 (N.D. Cal. Apr. 26, 1996)................................20, 22

*In re Spyglass, Inc. Sec. Litig.*,
No. 99 C 512, 1999 WL 543197 (N.D. Ill. July 21, 1999) ..........................................13

*Stack v. Lobo*,
903 F. Supp. 1361 (N.D. Cal. 1995)......................................................................22

*Stack v. Lobo*,
Civ. No. 95-20049 SW, 1995 WL 241448 (N.D. Cal. Apr. 20, 1995)...........................22

*Stavros v. Exelon Corp.*,
266 F. Supp. 2d 833 (N.D. Ill. June 13, 2003)......................................................31, 32

*Steed Finance LDC v. Laser Advisers, Inc.*,
258 F. Supp. 2d 272 (S.D.N.Y. 2003) ....................................................................36

*Steiner v. Shawmut Natl Corp.*,

766 F. Supp. 1236 (D. Conn. 1991)..............................................................25

*Stevelman v. Alias Research Inc.*,
174 F.3d 79 (2d Cir. 1999)..............................................................23, 24, 25, 30

*Thacker v. Medaphis Corp.*,
No. 97 Civ 2849 (DAB), 1998 WL 684595 (S.D.N.Y. Sept. 30, 1998)...........................15

*The High View Fund, L.P. v. Hall*,
27 F. Supp. 2d 420 (S.D.N.Y. 1998)..............................................................11, 32

*Thor Power Tool Co. v. Commr*,
439 U.S. 522 (1979)..............................................................19

*Thorton v. Micrografx*,
878 F. Supp. 931 (N.D. Tex. 1995)..............................................................14

*In re Twinlab Corp. Sec. Litig.*,
103 F. Supp. 2d 193, 208 (E.D.N.Y. 2000)...........................................35

*Wallace v. Sys. & Computer Tech. Corp.*,
No. Civ.A. 95-CV-6303, 1997 WL 602808 (E.D. Pa. Sept. 23, 1997) .......................5, 20

*Wenger v. Lumisys, Inc.*,
2 F. Supp. 2d 1231 (N.D. Cal. 1998)..............................................................5, 16, 28

*Zucker v. Sasaki*,
963 F. Supp. 301 (S.D.N.Y. 1997) ..............................................................25

## STATUTES

15 U.S.C. § 78t ..............................................................35

15 U.S.C. § 78u-4(b)..............................................................10, 35

15 U.S.C. § 78u-5(c)..............................................................passim

15 U.S.C. § 78u-5(i)..............................................................28

## MISCELLANEOUS

H.R. Conf. Rep. 104-369 (November 28, 1995), 1995 U.S.C.C.A.N. 730...............31, 32

## PRELIMINARY STATEMENT

Distilled to its essence, plaintiffs' claims in this case boil down to the following simple premise: during the class period, defendant Annuity and Life Re (Holdings) Ltd. ("ANR") increased accounting reserves, incurred write-offs, and ultimately restated several years worth of financial statements; thus, plaintiffs conclude, a massive fraud occurred. Standing alone, this premise is legally untenable and cannot form the basis of a securities fraud claim. Rather, plaintiffs must allege specific facts demonstrating that the financial statements later restated and subject to reserve adjustments and write-offs were fraudulent, as opposed to simply incorrect. Plaintiffs must allege the existence of contemporaneous "red flags," internal documents or memoranda contradicting the accounting judgments made, evidence of facts or information hidden from ANR's auditors, or other facts demonstrating that ANR and its management knew or recklessly disregarded the fact that their accounting was wrong or would need to be revised in the future. Plaintiffs do not so allege.

Compounding these fundamental errors, plaintiffs improperly target defendant John F Burke. Mr. Burke was hired as the Chief Financial Officer of ANR on September 17, 2001, during the middle of the putative class period, after the underlying accounting judgments that plaintiffs' primarily challenge were made by ANR and its auditors. It was under his watch at ANR, shortly after he began at the company, that ANR began the process of write-offs, reserve increases and, ultimately, restatements that form the basis of plaintiffs' claims and caused ANR's stock price to decline significantly. The undisputed facts alleged in the complaint demonstrate that Mr. Burke did not commit securities fraud – rather, he was

1-NY/1765058.2& TORRANCE ᴸᴸᴾ
Attorneys at Law

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

1

instrumental in disclosing that which plaintiffs claim was misstated or omitted in the company's prior financial statements.

Accordingly, for several reasons, the Complaint should be dismissed as against Mr. Burke, in its entirety, with prejudice:

- First, the complaint fails to allege specific facts from which a strong inference of scienter may be drawn as to Mr. Burke based on the motive and opportunity test:

    ◆ The desire to keep and maintain ANR's financial strength and credit ratings is not a proper motive to commit fraud

    ◆ Mr. Burke not only did not sell ANR stock during the class period, he actually purchased ANR stock, thus negating an inference of scienter

- Second, the complaint fails to allege specific facts from which a strong inference of scienter may be drawn as to Mr. Burke based on strong circumstantial evidence of conscious misbehavior or recklessness:

    ◆ The complaint contains only conclusory allegations that Mr. Burke acted with knowledge or reckless disregard of the falsity of the alleged misstatements and omissions

    ◆ Mr. Burke's position within the company and the fact of his signature on certain documents do not constitute specific facts from which and inference of conscious or reckless misbahevior may be inferred

    ◆ The alleged violation of GAAP by ANR does not constitute a sufficient basis from which to infer scienter and at best, constitutes impermissible fraud by hindsight

- Third, several alleged misstatements attributed to Mr. Burke are forward-looking statements protected by the safe harbor for forward-looking statements

- Fourth, plaintiffs have failed to allege facts supporting the fraud on the market presumption of reliance with respect to the statements and omissions allegedly attributable to Mr. Burke because the stock price actually declined after each such statement

- Fifth, the control person claim against Mr. Burke must be dismissed because plaintiffs have failed to allege the necessary culpable participation in the alleged primary violations

For the foregoing reasons, as explained in more detail below, the claims against Mr. Burke should be dismissed.

## RELEVANT FACTS[1]

Annuity and Life Re (Holdings), Ltd. ("ANR" or the "Company") provides life and annuity reinsurance to select insurers and reinsurers. (Consolidated Amended Class Action Complaint ("Compl.") ¶ 19; ANR Annual Report on Form 10-K for 2001 ("2001 10-K"), Chlapowski Decl. Exh. 1, at 1). Reinsurers enter into contractual agreements with primary insurers, or ceding companies, whereby they agree to indemnify the ceding company for all or a portion of the risks associated with the underlying insurance policy, in exchange for a reinsurance premium payable to the reinsurer. Reinsurers also enter into similar agreements with other reinsurers. Id.

Plaintiffs allege that, during and prior to the purported class period, ANR allegedly made various misstatements and omissions concerning its largest annuity reinsurance contract, which was with a company called Transamerica Occidental Life Insurance ("Transamerica"), entered into in 1998. (Compl. ¶ 5). Plaintiffs allege that, from the inception of the contract with Transamerica in 1998 and in violation of

---

[1] These facts are derived from the Consolidated Class Action Complaint, the documents referred to and incorporated therein, and documents of which this Court may take judicial notice and which are proper to consider on a motion to dismiss. See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808-09 (2d Cir. 1996); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991). These documents are annexed as exhibits to the Declaration of Francis S. Chlapowski (the "Chlapowski Decl.").

Generally Accepted Accounting Principles ("GAAP"), the Company: (i) improperly accounted for liabilities and deferred costs relating to minimum interest guarantees, management fees, policy surrender rates and the nature of the Transamerica contract; (ii) failed to adjust for experience in performing loss recognition testing to determine amortization expenses; (iii) failed to disclose certain accounting policies and methods; and (iv) failed to disclose risks and uncertainties relating to the Transamerica contract. (*See, e.g.,* Compl. ¶¶ 222, 225-255).

On September 17, 2001, long after ANR entered into the Transamerica contract, after it determined how to account for the Transamerica contract, and after that accounting treatment was audited several times by a Big Four accounting firm, Mr. Burke became the Chief Financial Officer ("CFO") of ANR. (Compl. ¶ 23). Prior to that date, Mr. Burke had no connection or relationship with the Company. As explained in detail below, beginning in October 2001, shortly after Mr. Burke assumed his position, ANR began to issue a series of disclosures that, through write-offs and restatements, modified how ANR accounted for the Transamerica contract. Indeed, it is these very disclosures that form the basis of plaintiffs' allegations and that plaintiffs claim were misstated or omitted from the Company's earlier public filings and statements. (Compl. ¶ 144). These disclosures continued steadily throughout 2002 until the end of the purported class period, progressively providing the public with more information and greater detail about the modified accounting treatment for the Transamerica contract based upon new information received from ANR's clients and its own ongoing review.

Specifically, on October 25, 2001, approximately five weeks after Mr. Burke assumed his position at the Company, ANR announced a net operating loss for the

quarter and three write-downs, including a $24.7 million write-down of deferred acquisition costs in its annuity business. (Compl. ¶ 145; October 25, 2001 Press Release, Chlapowski Decl. Exh. 2). On October 26, 2001, the Company held its earnings conference call concerning the results announced the previous day. At the outset of the call, Mr. Burke stated:

> This conference call contains forward-looking statements. These statements are subject to known and unknown risks and uncertainties that may cause actual future experience and results to differ materially from the statements made. I also want to refer you to our 10-K for a complete description of our business operations.

(October 26, 2001 Conference Call Transcript, Chlapowski Decl. Exh. 3 at 3.)[2] During the call, Mr. Burke provided additional detail about the losses and write-downs, explaining the basis for the annuity-related write-down, setting forth the Company's assumptions and approach and expressing his belief that the write-down was reasonable. (*Id.* at 4, 8, 14-15, 30-34). On November 14, 2001, ANR filed its Quarterly Report on Form 10-Q for the third quarter of 2001 (the "Third Quarter 2001 10-Q"), repeating the operating results that had been disclosed in the October 25,

1-NY/1661308.2
CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law    Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

5

2001 press release.  (Compl. ¶ 151; Third Quarter 2001 10-Q, Chlapowski Decl. Exh. 4 at 14).

On January 15, 2002, in the second earnings release issued after Mr. Burke joined the Company, ANR made additional disclosures about the Company's finances and the Transamerica contract, announcing that it would take a fourth quarter charge of approximately $33 million relating to minimum interest guarantees to policy-holders that were required by the laws of states in which ANR conducted business.  The charge would encompass payments for 2001 and a reserve for anticipated future payments.  (Compl. ¶ 155; January 15, 2002 Press Release, Chlapowski Decl. Exh. 5).  The press release explained that the charge was based upon new information received from the Company's client that the primary carrier's investment performance would not sufficiently fund the minimum interest guarantees, thus increasing the Company's exposure due to the excessive lapse rate.  *Id.*  Mr. Burke was quoted as stating that the Company's estimates assume the same lapse

---

[2]    A court may consider authentic transcripts of the full text of analyst and investor telephone conferences referred to in the Complaint in order to view the statements to which plaintiffs refer in their proper context. *See Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1240-42 (N.D. Cal. 1998) (denying plaintiffs' motion to strike conference call transcripts submitted for the purpose of alerting the court to safe harbor warnings contained therein); *Karacand v. Edwards*, 53 F. Supp. 2d 1236, 1245 (D. Utah 1999) (considering conference call transcripts on motion to dismiss); *Wallace v. Sys. & Computer Tech. Corp.*, No. Civ.A. 95-CV-6303, 1997 WL 602808, *5-6 (E.D. Pa. Sept. 23, 1997) (considering transcript of conference call on motion to dismiss).  A true and correct copy of a transcript, created by a court reporter, of each of ANR's October 26, 2001, April 24, 2002 and August 16, 2002 earnings telephone conference calls referred to in the Complaint, is annexed to the Chlapowski Declaration as Exhibits 3, 7 and 11.  Also annexed to the Chlapowski Declaration are compact discs containing a true and correct digital recording of each of the three telephone conferences.  (*See* Chlapowski Decl., Exs. 3, 7, 11).

or surrender rates used to calculate the 2001 write off of deferred acquisition cost, and that the Company believes that its assumptions and actions were realistic. *Id.*

On March 28, 2002, ANR filed its Annual Report on Form 10-K for 2001 (the "2001 10-K"). (Compl. ¶ 164; 2001 10-K, Chlapowski Decl. Exh. 1). Consistent with the measures taken and disclosures made after Mr. Burke's arrival at the Company, the 2001 10-K contained information and disclosures that had not been in the previous year's 10-K.[3]

ANR released its earnings for the first quarter of 2002 on April 23, 2002 and held its earnings conference call to discuss the results on the following day. (Compl. ¶ 174; April 23, 2002 Press Release, Chlapowski Decl. Exh. 6; April 24, 2002 Conference Call Transcript, Chlapowski Decl. Exh. 7). Mr. Burke began the call with the same disclosure concerning forward-looking statements that he made in the October 26, 2001 call. April 24, 2002 Conference Call Transcript, Chlapowski Decl. Exh. 7 at 2). In keeping with Mr. Burke's clear efforts to improve the Company's financial reporting, the Company announced that, in order to render the presentation of the Company's financial statements more meaningful and informative to investors,

---

[3]  In particular, the 2001 10-K included more detailed risk disclosures in connection with forward-looking statements (2001 10-K at 11-13), disclosed that the Company's annuity products are affected by fluctuations in interest rates as well as fixed income and equity markets, that the annuity line can be adversely impacted by the combined effects of poor market performance and excessive surrender rates (*id.* at 13, 22), that estimates, including reserves, are based on information and management's judgment and that actual results may differ from those estimates (*id.* at 13), that the underlying assets of its annuity contracts are managed by the ceding companies, and the Company is dependent on the cedants to appropriately match its asset management strategy to its obligations to policyholders (*id.* at 18, 22, 33), and specifically addressed the Company's potential obligation to fund state mandated minimum interest guarantees.   (*id.* at 22, 33).

it would report the income for each of its business segments separately. (*Id.* at 2-3). During the call, Mr. Burke disclosed that the Company's largest annuity contract (the Transamerica contract) represented 62% of its annuity assets, was expected to break even going forward, and acknowledged that the annuity segment was not doing well as a result of the performance of the contract. (*Id.* at 5). Lawrence S. Doyle, Chief Executive Officer of the Company at that time, also explained the negative effect of statutory state minimum interest guarantees and low interest rates on annuity business. (*Id.* at 18-19). On May 15, 2002, ANR filed its Quarterly Report on Form 10-Q for the first quarter of 2002 (the "First Quarter 2002 10-Q"). (Compl. ¶ 178; First Quarter 2002 10-Q, Chlapowski Decl. Exh. 8).

On July 25, 2002, ANR announced its second quarter earnings, the fourth earnings release since Mr. Burke joined the Company. In it, ANR announced another write-off of $24 million relating to the Transamerica contract. (Compl. ¶ 182; July 25, 2002 Press Release, Chlapowski Decl. Exh. 9). The Company explained that the write-off was the result of declining financial markets and the fact that, as a result, the assets underlying the Transamerica contract had not achieved the surrender rate assumptions used in estimating the 2001 charge. The Company also disclosed a restatement of financial results for the year 2001 and the first quarter of 2002 as a result of the implementation of Financial Accounting Standard ("FAS") 133, relating to contracts containing derivatives and embedded derivatives. (Comp. ¶¶ 182-83; July 25, 2002 Press Release, Chlapowski Decl. Exh. 9).

On August 15, 2002, the Company issued its full financial results for the second quarter of 2002 and filed its Quarterly Report on Form 10-Q for the second quarter of 2002 (the "Second Quarter 2002 10-Q", Chlapowski Decl. Exh. 10). On

the next day, the Company held its earnings conference call with analysts and investors. (Compl. ¶ 197; August 16, 2002 Conference Call Transcript, Chlapowski Decl. Exh. 11). Mr. Burke provided the same forward-looking statements disclosure at the beginning of the call that he had made during the previous conference calls. (August 16, 2002 Conference Call Transcript, Chlapowski Decl. Exh. 11 at 1-2). During the call, in addition to setting forth the Company's financial results, Mr. Burke extensively explained the application of FAS 133 and ANR's treatment of embedded derivatives. (*Id.* at 2-8). He also provided greater information and explanation about the $24 million write-off relating to the Transamerica contract that had been announced in July 2002. (*Id.* at 29-32).

On November 19, 2002, the last day of the purported class period, ANR issued a press release announcing that it would restate its financial statements for the fiscal years ended December 31, 2000 and December 31, 2001 as well as for the first two quarters of 2002. (Compl. ¶ 202; November 19, 2002 Press Release, Chlapowski Decl. Exh. 12). The Company also filed a Current Report on Form 8-K (the "November 19 8-K") fully explaining the restatement and various aspects of ANR's business and accounting. (Compl. ¶ 203; November 19 8-K, Chlapowski Decl. Exh. 13 at 1). Specifically, the Company announced that the restatement of its financial statements for the fiscal year ending December 31, 2000 would recognize $2,800,000 in minimum interest guarantee payments that had been made during 2000 and that the Company had been made aware of in 2002 as an expense rather than a reduction in the Company's interest sensitive contracts liability, and that the Company expected that the restatement of net income for 2000 would reduce the

Company's net income by less than three percent. (November 19, 2002 Press Release, Chlapowski Decl. Exh. 12).

With respect to the fiscal year ending December 31, 2001, the Company's restatement would reflect the bifurcation and separate accounting for embedded derivatives in certain of its annuity reinsurance contracts, pursuant to FAS 133. In addition, ANR explained that the restatement would reclassify the $19,500,000 reserve component of the $33,000,000 charge that had been taken in the fourth quarter of 2001 in connection with minimum interest guarantees on the Transamerica contract as a reduction of its carried balance for deferred acquisition costs. Further, portions of the fourth quarter 2001 charge would be allocated across certain prior quarters. The Company also announced that it intended to restate the financial statements for the first and second quarters of 2002. (*Id.*).

Following the announcement of the Company's restatement, this action was filed.

## ARGUMENT

### I.    PLAINTIFFS DO NOT ALLEGE PARTICULARIZED FACTS FROM WHICH A STRONG INFERENCE OF SCIENTER MAY BE DRAWN AGAINST MR. BURKE

Mr. Burke did not commit securities fraud. If anything, through efforts largely directed by him, ANR embarked on a review of its accounting practices that led to the negative disclosures that form the very basis of plaintiffs' claims. Accordingly, plaintiff has failed to allege scienter – an essential element of their claim under

1-NY/1661308.2
CARMODY & TORRANCE LLP
Attorneys at Law

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

10

Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act").[4]  As explained

below, the facts alleged and of which this Court may take judicial notice actually

*negate* an inference of scienter with respect to Mr. Burke, rather than support one.

The key facts are:

- Mr. Burke obtained no concrete and personal benefit from the
  alleged fraud – indeed, each of the disclosures attributed to Mr.
  Burke caused the price of ANR stock to decline and his personal
  holdings to decrease in value;

- Mr. Burke did not sell ANR stock during the class period – in fact, he
  bought ANR stock during the class period;

- Plaintiffs allege no specific facts demonstrating that Mr. Burke knew
  or was reckless with respect to any of the statements he made;

- Plaintiffs accounting claims allege no more than a violation of
  GAAP, which is insufficient to give rise to a strong inference of
  scienter; and

- Plaintiffs accounting allegations as they relate to Mr. Burke involve
  questions of timing and judgment, and therefore require more than
  simply a fraud by hindsight comparison of different financial
  statements, which is all plaintiffs allege.

---

[4]      To state a cause of action under Rule 10b-5, a plaintiff must plead that,
in connection with the purchase or sale of securities, the defendant, acting with
scienter, made a false material representation or omitted to disclose material
information and that plaintiff's reliance on defendant's action caused plaintiff injury.
*Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).

Accordingly, the claims against Mr. Burke should be dismissed for failure to adequately allege scienter.

**A.    Plaintiffs Must Allege With Particularity Facts Giving Rise To A Strong Inference That Mr. Burke Acted With The Required State Of Mind To Establish A Violation Of Section 10(b)**

Under the Private Securities Litigation Reform Act (the "Reform Act"), plaintiffs must **"*state with particularity facts giving rise to a strong inference* that the defendant acted with the required state of mind"** with respect to ***each*** alleged misstatement or omission.  *See* 15 U.S.C. § 78u-4(b)(2)(1995)(emphasis added).  In the Second Circuit, a strong inference of fraudulent intent may be established by alleging particularized facts demonstrating either: (1) a motive and opportunity to commit fraud; or (2) "strong circumstantial evidence of conscious misbehavior or recklessness."  *Acito*, 47 F.3d at 52; *see also Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001); *In re Mercator Software, Inc. Sec. Litig.*, 161 F. Supp. 2d 143, 148 (D. Conn. 2001).

With respect to forward-looking statements, the state of mind required is even more difficult to allege.  In that context, the Reform Act requires that plaintiffs plead with particularity facts giving rise to a strong inference that defendants had "actual knowledge" of the falsity of the forward-looking statements when made.  *See* 15

U.S.C. §§ 78u-5(c)(1)(B)(i)(1995), 78u-4(b)(2); *The High View Fund, L.P. v. Hall*, 27

F. Supp. 2d 420, 427 n.3 (S.D.N.Y. 1998).[5]

> **B.**    **Plaintiffs Do Not Allege That Mr.
> Burke Had A Motive To Commit Fraud**
>
> > **1.    ANR's Desire To Maintain Financial Strength Ratings
> > Does Not Give Rise to Scienter On the Part of Mr. Burke**

The Complaint alleges that defendants, presumably including Mr. Burke, were

motivated to commit fraud in order to maintain ANR's financial strength ratings and

satisfy the conditions of its existing contracts, attract new business and post required

collateral for its reinsurance agreements. (Compl. ¶¶ 4, 49, 269). The desire to

maintain a company's high credit and financial strength rating is insufficient to plead

scienter. *See San Leandro*, 75 F.3d at 814 (desire to maintain high credit rating is

not sufficient motive for fraud); *see also In re K-Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881,

894 (8th Cir. 2002) (the general desire to maintain a high credit rating is not a

sufficient allegation to support scienter); *Grossman v. Texas Commerce Bancshares,

Inc.*, No. 87 Civ. 6295 (MJL)., 1995 WL 552744, at *11 (S.D.N.Y. Sept. 15, 1995)

(desire for high credit rating to obtain commercial paper too generalized motive to

give rise to scienter).

Moreover, in order to establish scienter based upon the motive and

opportunity test, plaintiffs must allege "that defendants benefited in some *concrete*

---

5    *See also In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 536 (3d Cir. 1999)
(failure to plead actual knowledge of falsity with particularity fatal to claim); *In re
Columbia Labs., Inc. Sec. Litig.*, 144 F. Supp. 2d 1362, 1369 (S.D. Fla. 2001)
(plaintiffs' failure to plead facts giving rise to a strong inference of "actual knowledge"
that the disputed forward-looking statements were false when made was fatal to
claim).

*and personal way* from the purported fraud." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (emphasis added); *see also Kalnit*, 264 F.3d at 140; *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1125 (2d Cir. 1994) (courts should assume that defendants act in their "informed economic self-interest"); *In re Mercator*, 161 F. Supp. 2d at 148 (plaintiffs must assert concrete and personal benefit to individual defendant that will result from fraud); *Elliot Assocs. v. Hayes*, 141 F. Supp. 2d 344, 358-59 (S.D.N.Y. 2000), *aff'd*, 26 Fed. Appx. 83 (2d. Cir. 2002)(same).  The Complaint fails to allege any way in which *Mr. Burke* would personally benefit in any way from the purported scheme.

In any event, Mr. Burke's conduct here suggests that he was not motivated to artificially inflate the stock price and bolster ANR's financial ratings.  From the inception of his tenure at ANR, Mr. Burke was instrumental in disclosing negative information about the Company, establishing and increasing reserves, and significantly wrote down assets, consistently causing ANR's financial ratings to *decline* and its stock price to *decrease*.  (Compl. ¶¶ 146, 150, 158, 185, 188, 200).[6] Had Mr. Burke been motivated to maintain the Company's strong financial ratings and condition, he would not have acted to cause the ratings and conditions to decline, thus negating any inference of scienter on his part.

**2.    Mr. Burke's Purchases of ANR Stock And The Absence Of Any Sales On His Part During the Purported Class Period Negates Any Inference of Scienter**

The Complaint does not, and cannot, allege that Mr. Burke sold a single share of ANR stock during the purported class period.  Mr. Burke's lack of any stock sales during the purported class period negates any inference of scienter.  *See, e.g., In re Northern Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000) (absence of stock sales by insiders is inconsistent with an intent to defraud); *In re Health Mgmt. Sys., Inc.*, No. 97 CIV 1865 (HB)1998 WL 283286, at \*6 (S.D.N.Y. June 1, 1998) (finding failure to plead scienter based on failure to allege that officer sold large stock holding during purported class period).[7]

In fact, Mr. Burke ***purchased*** 16,000 shares of ANR stock during the purported class period, further negating any inference of scienter.  (SEC Form 4 for November 2001, Chlapowski Decl. Exh. 15; SEC Form 4 for May 2002, Chlapowski

---

[6]    ANR's historical stock price reflects that the stock closed at a lower price on the day following each of the alleged misstatements made after Mr. Burke assumed his position as CFO of ANR.  (Chlapowski Decl. Exh. 14).  This Court can and should take judicial notice of ANR's historical stock prices, attached to the Chlapowski Decl. as Exhibit 14.  *See, e.g., In re Allied Capital Corp. Sec. Litig.*, No. 02 Civ. 3812, 2003 WL 1964184, at \*3 (S.D.N.Y. Apr. 25, 2003); *In re MCI Worldcom, Inc. Sec. Litig.*, 93 F. Supp. 2d 276, 285 n.4 (E.D.N.Y. 2000); *Fant v. Perelman*, No. 97 CIV. 8435 (AP), 97 Civ. 8436 (LAP), 1999 WL 199078, at \*5 (S.D.N.Y. Apr. 9, 1999).

[7]    *See also Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (affirming dismissal as to individual defendants who did not sell stock); *In re Advanta Corp. Sec. Litig.*, 180 F.3d at 541; *In re CDnow, Inc. Sec. Litig*, 138 F. Supp. 2d 624, 644 (E.D. Pa. 2001) (no motive where no alleged stock sales); *Chu v. Sabratek*, 100 F. Supp. 2d 827, 842 (N.D. Ill. 2000) ("[o]bviously, having made no insider sales [during the purported class period], we can infer no intent . . . to commit securities fraud").

Decl. Exh. 16).[8]  *See Ressler v. Claiborne, Inc.*, 75 F. Supp. 2d 43, 60 (E.D.N.Y.

1999) ("[i]nferences of scienter can be undermined when an insiders' sales of stock

are offset by even larger stock acquisitions during the relevant time period");

*Mathews v. Centex Telemanagement, Inc.*, No. C-92-1837, 1994 WL 269734, at *8

(N.D. Cal. June 8, 1994) (no scienter alleged where company purchased its own

shares); *Oppenheimer v. Novell, Inc.*, 851 F. Supp. 412, 417 (D. Utah 1994) (stock

buyback program precluded inference of fraud).

Mr. Burke's purchases and the absence of sales of ANR stock during the

purported class period are inconsistent with a motive to commit fraud, defy logic, do

not support a strong inference of scienter and, in fact, negate any such inference.

Had Mr. Burke actually committed fraud in order to artificially inflate the price of ANR

stock for his own personal gain, he would have sold shares during the period of time

the price was inflated, rather than purchasing and holding such shares.  *See Kalnit,*

264 F.3d at 140-141 ("Where plaintiff's view of the facts defies economic reason, ...

[it] does not yield a reasonable inference of fraudulent intent"); *Thorton v. Micrografx,*

878 F. Supp. 931, 938 (N.D. Tex. 1995) (rejecting plaintiffs' theory, which asks the

Court "to leave its common sense at the courthouse steps").

---

[8]    On a motion to dismiss, courts may take judicial notice of SEC Forms 3, 4
and 5, which report beneficial ownership and changes of beneficial ownership of
stock by company insiders.  *See, e.g., In re Advanta Corp. Sec. Litig.,* 180 F.3d at
540; *In re Sec. Litig. BMC Software, Inc.,* 183 F. Supp. 2d 860, 884 (S.D. Tex. 2001)
(motion to strike Forms 3, 4, and 5 denied); *In re Spyglass, Inc. Sec. Litig.,* No. 99 C
512, 1999 WL 543197, at *5 (N.D. Ill. July 21, 1999) (taking judicial notice of publicly
filed Forms 3 and 4 in considering additional transactions by officer defendants not
cited by plaintiffs); *Karacand,* 53 F. Supp. 2d at 1246 (considering Forms 3, 4, and 5
to negate scienter allegations based on officer defendants' stock sales); *Allison v.*

**C.    Plaintiffs Fail To Plead Particularized Facts
That Constitute Strong Circumstantial Evidence
Of Conscious or Reckless Behavior**

**1.    Conclusory Allegations of Mr. Burke's
State Of Mind Do Not Give Rise To An
Inference of Conscious or Reckless Behavior**

In the absence of sufficient allegations of motive and opportunity to commit

fraud, plaintiffs must allege strong circumstantial evidence of conscious misbehavior

or recklessness. *Acito*, 47 F.3d at 52. "When a plaintiff seeks to establish scienter

by demonstrating conscious or reckless behavior, [rather than motive] . . . the

strength of the circumstantial allegations must be correspondingly greater." *See,*

*e.g., Elliott*, 141 F. Supp. 2d at 357 (internal citation omitted). In addition, plaintiffs

must "link the misleading statement with facts that give rise to an inference that the

speaker had a basis for knowing it was false." *Rich v. Maidstone Fin., Inc.*, No. 98

CIV. 2569 (DAB)., 2001 WL 286757, at *4 (S.D.N.Y. Mar. 23, 2001); *see also*

*Thacker v. Medaphis Corp.*, No. 97 Civ. 2849 (DAB), 1998 WL 684595, at *3

(S.D.N.Y. Sept. 30, 1998); *Glickman v. Alexander & Alexander Servs. Inc.*, No. 93

Civ. 7594 (LAP), 1996 WL 88570, at *14 (S.D.N.Y. Feb. 29, 1996) (conclusory

assertions fail to connect underlying facts concerning inaccurate reporting to

conscious misconduct or recklessness).

The Complaint repeatedly states, in conclusory fashion without any

explanation or elaboration, that "defendants" knew or recklessly disregarded facts

underlying the allegedly false or misleading statements. (Compl. ¶¶ 28, 32, 154, 221,

---

*Brooktree Corp.*, 999 F. Supp. 1342, 1352 n.3 (S.D. Cal. 1998) (taking judicial notice
of Form 4 in determining that insider trading did not constitute scienter).

280, 286, 287, 288, 293).[9] Such generalized allegations are conclusory and insufficient. An individual defendant's awareness of falsity or recklessness may not be inferred from conclusory allegations that defendants collectively knew or were reckless in not knowing the allegedly undisclosed facts. *See Shields*, 25 F.3d at 1129 (conclusory allegations that defendants knew information fail to allege scienter); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 120 (2d Cir. 1982) (generalized statements concerning knowledge and reckless disregard do not satisfy requirements of Rule 9(b)); *Elliott*, 141 F. Supp. 2d at 353 ("[p]laintiffs cannot plead scienter based on speculation and conclusory allegations"). The Complaint does not contain any allegations linking the statements made by Mr. Burke, or by any defendant, to specific and particularized facts giving rise to an inference that Mr. Burke knew his statements to be false or misleading, especially in light of the fact that Mr. Burke was not affiliated with the Company at the time the original accounting decisions at issue were made. Absent such allegations, no securities fraud claim can be asserted against Mr. Burke.

> **2.    Mr. Burke's Position Within The Company, His Access to Non-Public Information, And His Signature On Certain Documents Do Not Give Rise To A Strong Inference of Scienter**

Plaintiffs' allegations that Mr. Burke was aware of the alleged misstatements and fraudulent conduct by virtue of his executive position within the company and resulting access to non-public information patently fail to establish an inference of

---

[9]    The Complaint also contains repeated conclusory assertions that ANR knew or disregarded such facts. (Compl. ¶¶ 9, 55, 57, 65, 66, 84, 104, 157, 165, 214).

1-NY/1661308.2
CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
18

scienter. (*See* Compl. ¶¶ 28, 32, 257-261, 268, 286, 293); *see In re Advanta Corp. Sec. Litig.*, 180 F.3d at 539 (allegations that defendant "must have known" statement was false because of position within the company is insufficient); *In re e.spire Comm., Inc. Sec. Litig.,* 127 F. Supp. 2d 734, 749 (D. Md. 2001) (individual defendants' executive positions, signature of statements at issue and had extensive experience with and knowledge of the company's business insufficient to raise a strong inference of scienter); *In re Health Management Sys., Inc. Sec. Litig.*, 1998 WL 283286, at *6 (scienter not adequately pled where alleged knowledge based upon positions held and access to information); *Glickman*, 1996 WL 88570, at *14 ("unfettered access" to records inadequate basis for scienter); *Wenger*, 2 F. Supp. 2d at 1251 (N.D. Cal. 1998) (alleged knowledge of the adverse undisclosed facts "via access to internal corporate documents" failed to show a strong inference of fraud).[10]

Plaintiffs' conclusory allegations that Mr. Burke was aware or should have been aware of information that would have rendered his statements false or misleading are unavailing, since the Complaint does not allege any particularized facts supporting his purported knowledge or setting forth the basis of such an allegation. The mere facts that ANR was a smaller corporation and management

---

[10] Similarly, the fact that Mr. Burke signed certain documents at issue does not adequately plead scienter. (Compl. ¶¶ 151, 164, 173, 178); see *Mortensen v. AmeriCredit Corp.*, 123 F.Supp. 2d 1018, 1027 (N.D. Tex.), *aff'd*, 240 F.3d 1073 (5th Cir. 2000) (defendants' signatures on financial reports and positions held in company insufficient to plead scienter); *In re Cendant Corp. Sec. Litig.*, 76 F. Supp. 2d 531, 547 (D.N.J. 1999) (alleged signatures on public disclosures and/or involvement in daily operations of company does not satisfy pleading requirements of Rule 9(b) or Reform Act).

was therefore aware of the Company's performance, and that management was to be integrally involved with the Company generally, (Compl. ¶¶ 257-60), fail to set forth, as required, "*how* it is the individual defendants had knowledge of the true seriousness of [the Company's] financial condition, or of the other problems . . ." *In re Health Management*, 1998 WL 283286, at *6 (emphasis added). Absent allegations of some specific contemporaneous document, conversation or other information apprising Mr. Burke of facts relating to accounting practices that had been adopted long before he assumed his position as CFO of the Company and that would have made him aware that his statements false or misleading at the time they were made, allegations relating to his position in the Company and access to documents generally fail to plead "specific facts that create a strong inference of either knowing misrepresentations or conscious recklessness. *Id.*

    **D.    Plaintiffs' Accounting Allegations Do Not
             Give Rise To A Strong Inference Of Scienter**

           **1.    The Alleged Violation of GAAP Does Not
               Give Rise To A Strong Inference of Scienter**

    It is well settled that a violation of GAAP, without more, does not state a claim for fraud. Scienter "'requires more than a misapplication of accounting principles,'" and "[a]llegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) (quoting *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1240 (S.D.N.Y. 1992)); *see also Novak*, 216 F.3d at 309 (GAAP violations or accounting irregularities without evidence of "corresponding fraudulent intent" insufficient to state securities fraud claim); *In re Northern Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d at 465.

1-NY/1661308.2
CARMODY & TORRANCE LLP    50 Leavenworth Street    **20**
    Attorneys at Law             Post Office Box 1110
                                 Waterbury, CT 06721-1110
                                 Telephone: 203 573-1200