UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHERRY SCHNALL, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br>v. )<br><br>ANNUITY AND LIFE RE (HOLDINGS), )<br>LTD., XL CAPITAL, LTD., LAWRENCE S. )<br>DOYLE, FREDERICK S. HAMMER, JOHN )<br>F. BURKE, WILLIAM W. ATKIN, BRIAN )<br>O'HARA, AND MICHAEL P. ESPOSITO )<br>JR., )<br><br>Defendants. ) | CONSOLIDATED CIVIL ACTION NO. 02-CV-2133 (GLG)<br><br>ALL CASES |

DEFENDANT LAWRENCE S. DOYLE'S
**ANSWER TO CONSOLIDATED AMENDED COMPLAINT**

Defendant Lawrence S. Doyle ("Doyle"), by his attorneys, denies knowledge or information sufficient to form a belief as to the truth of the introductory paragraphs of the Complaint and answers the consecutively-numbered paragraphs of Plaintiffs' Consolidated Amended Complaint as follows:

**SUMMARY OF COMPLAINT**

1.    Admits that Plaintiffs purport to bring this action as a class action on behalf of the class as defined, but denies the remaining allegations.

2.     Admits the allegations of the first, second and fourth sentences (except denies that Annuity and Life Re (Holdings), Ltd. ("ANR") and its subsidiaries should be referred to collectively as ANR for all purposes), and further admits on information and belief that, for an annuity reinsurance contract, ANR normally expects over the life of the contract to make its profits primarily by earning "spreads" between amounts due policyholders and the earnings derived from investment of policyholder premiums, but denies the remaining allegations.

3.     Admits on information and belief the allegations of the first, second and third sentences. Doyle also admits that ANR's public filings stated:  that ANR conducted loss recognition testing at the end of each accounting period; that ANR updated historical and anticipated future experience at the end of each accounting period; and that ANR reflected revisions to estimated gross profits in earnings in the accounting period such estimates were revised.  Doyle denies the remaining allegations.

4.     Admits that ANR is a Bermuda corporation not subject to United States corporate taxes; that most of ANR's client companies are based in the United States and subject to state regulations; that ANR and Annuity and Life Reassurance, Ltd., ANR's Bermuda operating subsidiary, were not registered or licensed to do business in any United States jurisdiction, and, as a result, needed to post collateral in connection with a number of reinsurance agreements; that ANR sometimes posted collateral by obtaining letters of credit from banks; that ANR's financial ratings were sometimes important in connection with obtaining such letters of credit; and that

some of ANR's contracts contain provisions relating to ANR's financial ratings. Doyle denies the remaining allegations.

5.    Admits on information and belief the allegations of the first and third sentences (except for the characterization of the book of annuity policies as "massive," which is denied); that ANR's 1999 10-K reported interest sensitive contracts liabilities to policyholders of approximately $1.6 billion; that the predominance of those liabilities was attributable to the Transamerica contract; that ANR's Transamerica contract was a modified coinsurance arrangement; that IL Annuity controlled and managed the investment of policyholder premiums, and that ANR assumed its share of risk in the event that the investments supporting its Funds Withheld at Interest asset failed to earn a sufficient total return to pay the sums due surrendering policyholders. Doyle denies the remaining allegations.

6.    Admits on information and belief that the Transamerica contract differs from ANR's other annuity reinsurance contracts in that the annuity products reinsured allowed policyholders to select among four "investment strategies;" that IL Annuity has retained investment managers, which have historically invested policyholder premiums consistent with the policyholder's selected investment strategy; that IL Annuity has historically credited rates reflecting the yield (consisting of income plus net realized capital gains and losses, less IL Annuity's targeted gross margin or aggregate expenses) on the assets then supporting the selected investment strategy; that various state laws require that fixed annuity policyholders

receive minimum guaranteed interest of 3% to 3.5% per annum; and that holders of the underlying annuity policies had the opportunity to earn more than the guaranteed minimum interest rate if their selected investment strategy performed well. Doyle denies the remaining allegations.

7.      Admits on information and belief the allegations of the second and third sentences (except for the characterizations of the interest rate bonds pay as "guaranteed," and of that convertible bonds pay as "typically," "relatively low," which are denied); that at various points in time, consistent with policyholder investment strategy selections, approximately 70% of the premiums held and managed by IL Annuity were invested in convertible bonds; and that IL Annuity made minimum interest guarantee payments to various surrendering policyholders because the earnings (net of fees and including net realized capital gains and losses) on the assets supporting their selected investment strategies, after application of the total return adjustment, were insufficient to cover the minimum interest guarantees. Doyle denies the remaining allegations.

8.      Denied.

9.      Admits that IL Annuity charged policyholders an annual management or administrative fee of approximately 2.5% of the assets plus some additional investment management expenses, for total expenses at certain times of approximately 2.75% of the assets

annually; and that under various state laws, policyholders were entitled to minimum guaranteed interest of 3% to 3.5% per annum.  Doyle denies the remaining allegations.

10.    Denied.

11.    Denied.

12.    Admits that ANR's financial ratings were at various times downgraded; on information and belief that ANR has announced that it has ceased writing new reinsurance; and that ANR and its auditor have stated that there is substantial doubt about ANR's ability to continue as a going concern.  Doyle denies the remaining allegations.

## JURISDICTION AND VENUE

13.    Denied.

14.    Denied as legal conclusions.

15.    Admits that certain of the acts and transactions of which Plaintiffs complain involved use of the mails and the facilities of national securities markets, but denies the remaining allegations.

16.    Denies as a legal conclusion the allegation that venue is proper; lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the last clause and therefore denies the same; and denies the remaining allegations.

## PARTIES

17.    Lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Communication Workers of America purchased ANR common stock, and therefore denies that allegation, and denies the remaining allegation of the first sentence. Admits the allegations of the second sentence.

18.    Lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Midstream Investments, Ltd. purchased ANR common stock and therefore denies that allegation, and denies the remaining allegation of the first sentence. Admits the allegations of the second sentence.

19.    Admits, except denies that Annuity and Life Re America, Inc. is an operating company that directly provides reinsurance, and that ANR has any reinsurance contracts that indemnify the ceding company for all of the risks associated with the underlying insurance policies.

20.    Admits the allegations of the first sentence. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 20 and therefore denies the same.

21.    Admitted.

22.    Admits that Hammer was throughout the Class Period the Chairman of ANR's Board of Directors and that Hammer was at various times a member of ANR's Board of

-6-

Directors' Executive Committee, Finance and Investment and Corporate Governance Committees. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 22 and therefore denies the same.

23.    Admits, on information and belief (except denies that Burke was ANR's Treasurer).

24.    Admits, on information and belief.

25.    Admits, on information and belief.

26.    Admits on information and belief the allegations of the second sentence, and that Esposito was a Director of ANR and the Chairman of XL Capital's Board of Directors. Doyle denies the remaining allegations.

27.    Admits that Plaintiffs have chosen to refer to the referenced defendants collectively as the "Individual Defendants," but denies that those defendants should be grouped together for all purposes.

28.    Admits that as Chief Executive Officer, President and Director, Doyle was privy to confidential and proprietary information concerning ANR's operations, finances, financial condition, and present and future business prospects; and that he signed certain documents filed with the Securities and Exchange Commission which said documents speak for themselves. Doyle denies the remaining allegations.

29.    Denied.

30. Denied, except admits that the defendants who were officers, during the times that they were officers, directly participated in the management of the Company and had access to certain confidential and proprietary information concerning the Company, and that those who were officers were directly involved in day-to-day operations of the company. Doyle denies the remaining allegations.

31. Denied.

32. Denied.

33. Denied.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

34. Admits that Plaintiffs purport to bring this action as a class action on behalf of the class as defined, but denies the remaining allegations.

35. Admits that during the Class Period ANR's shares traded first on NASDAQ and then on the NYSE. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Plaintiffs know or believe, and therefore denies the same. Doyle denies the remaining allegations.

36. Denied.

37. Admits that Plaintiffs have retained counsel competent and experienced in class and securities litigation, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 37 and therefore denies the same.

38.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 and therefore denies the same.

39.    Denies that any class member is entitled to damages, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 39 and therefore denies the same.

## SUBSTANTIVE ALLEGATIONS

40.    Admits the allegations of the first three sentences, and the first clause of the fourth sentence, but denies the remaining allegations.

41.    Admits that annuity policies often have the features described in the first two sentences, and that higher than originally anticipated surrender rates can have an adverse impact on a contract's profitability, but denies the remaining allegations.

42.    Admits on information and belief the allegations of the first sentence and that various state laws require that fixed annuity policyholders receive minimum guaranteed interest of 3% to 3.5% per annum, but denies the remaining allegations.

43.    Admits that many primary insurers do not want to bear all of the risks associated with these transactions, but denies the remaining allegations of the first sentence. Admits the remaining allegations on information and belief, except for the allegations about what constitutes a "typical" reinsurance contract, which are denied.

44. Admits on information and belief the allegations of the first four sentences, but denies the remaining allegations.

45. Admits on information and belief (except for the characterization of the Transamerica contract as ANR's "principal" annuity reinsurance contract, which is denied).

46. Admits on information and belief that IL Annuity's Visionmark policies underlying ANR's Transamerica contract are "investment-type" products within the meaning of FAS 97, but denies the remaining allegations.

47. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47 and therefore denies the same.

48. Denied.

49. Admits on information and belief the allegations of the second, third, fourth and sixth sentences (except denies that ANR's ability to obtain secured letters of credit was necessary directly tied to ANR's credit-worthiness), and that, because ANR was not licensed or registered in United States jurisdictions, ANR was required to post collateral in connection with some of its reinsurance contracts. Doyle denies the remaining allegations.

50. Admits the allegations of the first sentence. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 50 and therefore denies the same.

51.    Admits that on September 29, 1998, ANR issued a press release in which Doyle was quoted, and that Plaintiffs have correctly quoted portions of ANR's September 29, 1998 press release, which speaks for itself.  Doyle denies the remaining allegations.

52.    Admits that ANR filed a Form 10-K for 1998, which speaks for itself; and that Plaintiffs have correctly quoted portions of the 1998 10-K.  Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 52 and therefore denies the same.

53.    Admits the allegations of the first, second and third sentences.  Further admits that Plaintiffs have correctly quoted a portion of a sentence from ANR's 1999 10-K, which speaks for itself (but denies that the portion Plaintiffs have italicized was italicized or emphasized in the original).  Doyle denies the remaining allegations.

54.    Admits that ANR issued a press release on February 17, 2000, which speaks for itself; and further admits that Plaintiffs have correctly quoted a portion of ANR's February 17, 2000 press release.  Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 54 and therefore denies the same.

55.    Denied.

56.    Admits the allegations of the second sentence and that, for an annuity reinsurance contract, ANR normally expects over the life of the contract to make its profits primarily by

earning "spreads" between amounts due policyholders and the earnings derived from investment of policyholder premiums, but denies the remaining allegations.

57.    Admits the allegations of the second and third sentences; that the Transamerica contract differs from ANR's other annuity reinsurance contracts in certain respects; that IL Annuity charged policyholders aggregate annual expenses, which at certain times were approximately 2.75% of the assets; and that various state laws entitled fixed annuity policyholders to minimum guaranteed interest of 3% to 3.5% per annum.  Doyle denies the remaining allegations.

58.    Admits the allegations of the second, third and fourth sentences (except denies knowledge or information sufficient to form a belief as to whether the Visionmark policies were "unusual").  Doyle denies the remaining allegations.

59.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59 and therefore denies the same.

60.    Admits the allegations of the second sentence; that at various points approximately 70% of the premiums held and managed by IL Annuity were invested in convertible bonds; and that Plaintiffs have correctly quoted a portion of a sentence from ANR's November 19, 2002 8-K (except denies that the parenthetical "(i.e., interest)" appears in that portion).  Doyle denies the remaining allegations.

61.     Admits that Plaintiffs have correctly quoted a portion of ANR's November 19, 2002 8-K, which speaks for itself (but denies that sentence three states "If the conversion value is above the market value"). Doyle denies the remaining allegations.

62.     Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62 and therefore denies the same.

63.     Admits on information and belief that of ANR's 2000 income as reported in ANR's 2000 10-K, approximately 39.6%, or almost $16 million, represented income on the Transamerica contract. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the third sentence and therefore denies the same. Doyle denies the remaining allegations.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 67 and therefore denies the same.

68.     Denied.

69.     Admits that ANR's 1999 10-K was signed by Doyle, Atkin, Hammer, Esposito and O'Hara, and that Plaintiffs have correctly quoted portions of ANR's 1999 10-K, which

speaks for itself. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 69 and therefore denies the same.

70.     Denied.

71.     Admits that Plaintiffs have correctly quoted portions of ANR's 1999 10-K, which speaks for itself (but denies that the portions Plaintiffs have italicized were italicized or emphasized in the original). Doyle denies the remaining allegations.

72.     Admits that Plaintiffs have correctly quoted portions of ANR's 1999 10-K, which speaks for itself (but denies that the portions plaintiffs have italicized were italicized or emphasized in the original) Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 72 and therefore denies the same.

73.     Admits that Plaintiffs have correctly quoted portions of ANR's 1999 10-K, which speaks for itself. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 73 and therefore denies the same.

74.     Admits on information and belief that ANR's 1999 10-K listed revenue called "other," and further admit that ANR's 1999 10-K speaks for itself. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 74 and therefore denies the same.

75.     Admits that Plaintiffs have correctly quoted a portion of ANR's 1999 10-K (but denies that the portion Plaintiffs have italicized was italicized or emphasized in the original).

76.     Admits that Plaintiffs have correctly quoted a portion of a sentence from ANR's 1999 10-K, which speaks for itself, and that the quoted portion appeared in the section titled "Quantitative and Qualitative Disclosures About Market Risk" (except denies that the portion of ANR's 1999 10-K that Plaintiffs have italicized was italicized or emphasized, and that the words "we enter into" appeared in the original). Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 76 and therefore denies the same.

77.     Admits that Plaintiffs have correctly quoted a portion of ANR's 1999 10-K, which speaks for itself (but denies that the portion Plaintiffs have italicized was italicized or emphasized in original and further denies that the third sentence directly followed the second in the original).

78.     Admits that Plaintiffs have correctly quoted a portion of ANR's 1999 10-K, which speaks for itself (but denies that the portion of ANR's 1999 10-K that Plaintiffs have italicized was italicized or emphasized in the original).

79.     Denied.

        (a)     Denied.

        (b)     Denied.

        (c)     Denied.

        (d)     Denied.

-15-

(e)    Denied.

(f)    Denied.

(g)    Denied.

80.    Denied.

81.    Denied.

82.    Admits that on April 19, 2000, ANR issued a press release, listing Doyle as a contact, which speaks for itself. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 82 and therefore denies the same.

83.    Admit that on May 15, 2000, ANR filed its Report on 10-Q for the first quarter, signed by Doyle and Atkin, which speaks for itself. Doyle denies the remaining allegations.

84.    Admits that Plaintiffs have correctly quoted a portion of ANR's 2000 10-Q, which speaks for itself. Doyle denies the remaining allegations.

85.    Admits that Plaintiffs have correctly quoted portions of ANR's first quarter 2000 10-Q, which speaks for itself (but denies that the portion of ANR's 1999 10-K and first quarter 2000 10-Q that Plaintiffs have italicized was italicized or emphasized in the originals).

86.    Denied.

87.    Denied.

88.     On information and belief, admits that Plaintiffs have correctly quoted a sentence from a Prudential Securities "Annuity & Life Re Company Update" dated April 24, 2000, but denies the remaining allegations.

89.     On information and belief, admits that in a Research Note dated June 8, 2000, Prudential Securities stated that "ALRe's Management endorses . . . earnings growth of 25%" over the next two years.  Doyle denies the remaining allegations.

90.     Admits that on July 24, 2000, ANR issued a press release, listing Doyle and Atkin as contacts, which speaks for itself.  Doyle denies the remaining allegations.

91.     On information and belief, admitted.

92.     On information and belief, admits that on August 3, 2000, Standard & Poor's issued a press release affirming its single A- counterparty credit and financial strength ratings of Annuity and Life Reassurance Ltd., ANR's Bermuda operating subsidiary, and that Plaintiffs have correctly quoted a portion of the release, which speaks for itself.  Doyle denies the remaining allegations.

93.     Admits that on August 14, 2000, ANR filed its Report on Form 10-Q for the second quarter of 2000, signed by Doyle and Atkin, which speaks for itself.  Denies the allegation that ANR's second quarter 2000 10-Q reported all of the information contained in its earnings release, and the characterization of the yield rate as "mere."  Doyle denies the remaining allegations.

94.    Avers that ANR's Report on Form 10-Q for the second quarter of 2000 speaks for itself. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 94 and therefore denies the same.

95.    Admits that Plaintiffs have correctly quoted a portion of ANR's second quarter 2000 10-Q and 1999 10-K, which speak for themselves (but denies that the portion of ANR's second quarter 2000 10-Q and 1999 10-K that Plaintiffs have italicized was italicized or emphasized in the originals).

96.    Denied.

97.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 97 and therefore denies the same

98.    Admits that on October 30, 2000, ANR issues a press release listing Doyle as a contact and that the October 30, 2000 press release speaks for itself. Doyle further admits that on November 14, 2000, ANR filed its Report on 10-Q for the third quarter signed by Atkin and Doyle; that Plaintiffs have correctly quoted certain fragmentary portions of ANR's third quarter 2000 10-Q; and the 10-Q speaks for itself. Doyle denies the remaining allegations.

99.    Admits that Plaintiffs have correctly quoted a portion of ANR's third quarter 2000 10-Q and 1999 10-K, which speaks for itself (but denies that the portion Plaintiffs have italicized was italicized or emphasized in the originals).

100.    Denied.

108.    Admits that Plaintiffs have correctly quoted portions of ANR's 2000 10-K, which speaks for itself (but denies that the portions Plaintiffs have italicized were italicized or emphasized in the original).  Doyle denies the remaining allegations.

109.    Admits that Plaintiffs have correctly quoted portions of ANR's 2000 10-K, which speaks for itself (but denies that the portions Plaintiffs have italicized were italicized or emphasized in the original).  Doyle denies the remaining allegations.

110.    Admits that ANR's 2000 10-K stated that total income earned on Funds Withheld at Interest for the year was $116,522,000. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 110 and therefore denies the same.

111.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 111 and therefore denies the same.

112.    Admits that Plaintiffs have correctly quoted a portion of ANR's 2000 10-K, which speaks for itself (except denies that the portion italicized by Plaintiffs was italicized or emphasized in the original). Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 112 and therefore denies the same.

113.    Denied.

114.    Denied.

115.    Denied.

116.    Admits that Plaintiffs have correctly quoted a portion of ANR's 2000 10-K, which speaks for itself (except denies that the words "and interest credited to clients' account balances" appeared in the original).

117.    Denied.

118.    Avers that ANR's 2000 10-K speaks for itself.  Doyle denies the remaining allegations.

119.    Admits that Plaintiffs have correctly quoted all but an omitted word ("currently" follows "Company" in the original) of a sentence from ANR's 2000 10-K (but denies that the portion italicized by Plaintiffs was italicized or emphasized in the original) and that ANR's 2000 10-K speaks for itself.  Doyle denies the remaining allegations.

120.    Admits that the Company's 2000 Annual Report was signed by Doyle; that Plaintiffs have correctly quoted portions of the Annual Report, which speaks for itself (except for the characterization that the 2000 10-K "went on to assure investors," which is denied).  Doyle denies the remaining allegations.

121.    Denied.

122.    Admits that Doyle gave an interview to the Wall Street Transcript, which the Wall Street Transcript published on April 2, 2001, and that Plaintiffs have correctly quoted a portion of Doyle's answer to one of the questions posed to him (except denies that the number "10"

preceded the words "of whom;" "10" followed those words).  Doyle denies the remaining allegations.

123.    Admits that ANR's April 26, 2001 press release stated that ANR would pay a dividend of 5 cents per share and that ANR intended to transfer the listing of its common stock to the NYSE.  Doyle denies the remaining allegations.

124.    Admits that on May 1, 2001, ANR issued a press release listing Doyle and Atkin contacts.  Further admits that Plaintiffs have correctly quoted portions of the press release, which speaks for itself.  Doyle denies the remaining allegations.

125.    Admits that on May 2, 2001, ANR issued a press release, and that Plaintiffs have correctly quoted portions of the release, which speaks for itself.  Doyle denies the remaining allegations.

126.    Admits that on May 14, 2001, ANR filed its Report on Form 10-Q for the first quarter 2001 signed by Doyle and Atkin.  Admits that Plaintiff has correctly quoted portions of the first quarter 2001 10-Q, which speaks for itself.  Doyle denies the remaining allegations.

127.    Admits that Plaintiffs have correctly quoted a sentence from ANR's first quarter 2001 10-Q, which speaks for itself (but denies that the portion italicized by Plaintiffs was italicized or emphasized in the original).  Doyle denies the remaining allegations.

128.    Denied.

129.    Admits that IL Annuity had originally written the Visionmark policies, which had been reinsured by Transamerica; that AmerUs Group acquired Indianapolis Life, of which IL Annuity was a subsidiary, in or about May, 2001; that Larry R. Prible had been Chairman, President and CEO of Indianapolis Life prior to the acquisition; and that in or about July, 2001, AmerUs announced Prible's retirement.  Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 129 and therefore denies the same.

130.    On information and belief, admits that after ANR announced his retirement, Atkin in May and July of 2001 exercised the bulk of his options to purchase ANR shares and then sold the shares, and also sold his other ANR stock; that Atkin sold his shares for more than $2,250,000 above his cost or basis; that Atkin's transactions were publicly and correctly reported on Forms 4 filed with the SEC in June and August of 2001.  Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 130 and therefore denies the same.

131.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 131 and therefore denies the same.

132.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 132 and therefore denies the same.

-23-

133.    Admits that on July 24, 2001, ANR issued a press release listing Doyle and Atkin as contacts and admits that Plaintiffs have correctly quoted portions of the release, which speaks for itself. Doyle denies the remaining allegations.

134.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 134 and therefore denies the same.

135.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 135 and therefore denies the same.

136.    Admits that on August 13, 2001, ANR filed its Report on Form 10-Q for the second quarter of 2001, signed by Doyle and Atkin, which speaks for itself. Doyle denies the remaining allegations.

137.    Denied, except admits that ANR's second quarter 2001 10-Q was issued after Atkin's transactions in ANR shares and after ANR had announced his retirement, and admits that Plaintiffs have correctly quoted portions of the 10-Q, which speaks for itself.

138.    Admits that Plaintiffs have correctly quoted portions of ANR's second quarter 10-Q, which speaks for itself. Doyle denies the remaining allegations.

139.    Denied.

140.    Admit that ANR had recognized approximately $6 million of income on the Transamerica contract during the first six months of 2001. Doyle denies the remaining allegations.

141.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 141 and therefore denies the same.

142.    Admits that on August 21, 2001, ANR issued a press release with Doyle listed as the contact; that Plaintiffs have correctly quoted portions of ANR's August 21, 2001 press release, which quoted portions of Standard & Poor's August 21, 2001 release (except denies that the portions Plaintiffs have italicized were italicized or emphasized in the originals), and that the August 21, 2001 press release speaks for itself.    Doyle denies the remaining allegations.

143.    Denied.

144.    Denied.

145.    Admits  that on October 25, 2001, ANR issued a press release listing Doyle and Burke as contacts and that Plaintiffs have correctly quoted portions of ANR's October 25, 2001 press release, which speaks for itself.  Doyle denies the remaining allegations.

146.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 146 and therefore denies the same.

147.    Admits the allegations of the first and third sentences; that ANR's October 26, 2001 press release stated that Doyle had during the conference call "provided guidance on earnings in the $1.80 to $1.90 per share range." Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Bear Stearns reported and therefore denies the same.  Doyle denies the remaining allegations.

148.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 148 and therefore denies the same.

149.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 149 and therefore denies the same.

150.    Admits that on October 29, 2001, ANR issued a press release, which speaks for itself. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 150 and therefore denies the same.

151.    Admits that on November 14, 2001, ANR filed its Report on Form 10-Q for the third quarter signed by Doyle and Burke, which speaks for itself. Doyle denies the remaining allegations.

152.    Admits that Plaintiffs have correctly quoted portions of ANR's second and third quarter 2001 10-Qs and 2001 10-K, which speak for themselves. Doyle denies the remaining allegations.

153.    Denied.

154.    Denied.

155.    Admits that on January 15, 2002, ANR issued a press release, listing Doyle and Burke as contacts, which speaks for itself. Doyle denies the remaining allegations.

156.    Admits that on January 15, 2002, ANR issued a press release, which speaks for itself. Doyle also admits that Plaintiffs have correctly quoted a portion of the release. Doyle denies the remaining allegations.

157.    Denied.

158.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 158 and therefore denies the same.

159.    Denies the allegations of the first sentence. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 159 and therefore denies the same.

160.    Doyle denies the allegations of the first sentence. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 160 and therefore denies the same.

161.    Admits on information and belief the allegations of the first two sentences and that ANR's shelf registration represented ANR's first attempt to sell debt securities in the public market. Doyle denies the remaining allegations.

162.    Admits the allegations of the first and second sentences. Doyle denies the remaining allegations.

163.    Denied.

164. Admits that on March 28, 2002, ANR filed its report on Form 10-K for 2001 signed by Doyle, Burke, Hammer, Esposito and O'Hara. Admits that Plaintiffs have correctly quoted portions of ANR's 2001 10-K, which speaks for itself (but denies that the portion Plaintiffs have italicized was italicized or emphasized in the original). Doyle denies the remaining allegations of paragraph 164.

165. Admits that Plaintiffs have correctly quoted a portion of ANR's 2001 10-K, which speaks for itself. Doyle denies the remaining allegations.

166. Admits that Plaintiffs have correctly quoted portions of ANR's 2001 10-K and prior 10-Ks, which speak for themselves (but denies that the portions Plaintiffs have italicized were italicized or emphasized in the originals). Doyle denies the remaining allegations.

167. Admits that Plaintiffs have correctly quoted portions of ANR's 2001 10-K, which speaks for itself (but denies that the portions Plaintiffs have italicized were italicized or emphasized in the original). Doyle denies the remaining allegations of paragraph 167.

168. Avers that ANR's 2001 10-K speaks for itself. Doyle denies the remaining allegations of paragraph 168.

169. Admits that Plaintiffs have correctly quoted portions of ANR's 2001 10-K, which speaks for itself. Doyle denies the remaining allegations of paragraph 169.

170. Admitted, and avers that the 2001 10-K speaks for itself.

171.    Admits that the Plaintiffs have correctly quoted portions of ANR's 2001 10-K, which speaks for itself.

172.    Denied.

(a)    Denied.

(b)    Admits that ANR's 2001 10-K stated that "[W]hile management has made what it believes to be adequate provision for future costs based upon reasonable assumptions about future investment performance and surrenders, the provision is an estimate. Actual amounts paid may be significantly higher or lower than the current reserve." Doyle denies the remaining allegations.

(c)    Denied.

(d)    Avers that ANR's 2001 10-K speaks for itself. Doyle denies the remaining allegations of subparagraph (d).

(e)    Avers that ANR's 2001 10-K speaks for itself. Doyle denies the remaining allegations.

173.    Admits that ANR's 2001 Annual Report was filed with the SEC and signed by Doyle, and that the Annual Report speaks for itself. Doyle denies the remaining allegations.

174.    Admits that on April 23, 2002, ANR issued a press release which listed Doyle and Burke as contacts, which speaks for itself. Doyle denies the remaining allegations.

175.     Admits that on April 24, 2002, Doyle and Burke participated in a conference call with analysts, and that Plaintiffs have quoted portions of statements made during the conference call (except denies that the portion of Burke's quotation that Plaintiffs have italicized was emphasized in Burke's statement, and further denies that Burke "began" the conference call by explaining that ANR would in the future report results for its annuity and life segments separately).  Doyle denies the remaining allegations.

176.     Admits that Plaintiffs have correctly quoted portions of certain statements made by Doyle and Burke, respectively, on ANR's April 24, 2002 conference call.  Doyle denies the remaining allegations.

177.     Admits that Plaintiffs have correctly quoted portions of certain statements made by Doyle during ANR's April 24, 2002 conference call (but denies that the portion Plaintiffs have italicized was emphasized by Doyle); and that many states require that fixed annuity policyholders receive minimum guaranteed interest of 3% to 3.5% per annum on their premium payments.  Doyle denies the remaining allegations.

178.     Admits that Plaintiffs have correctly quoted portions of certain statements made by Doyle during ANR's April 24, 2002 conference call; that on May 14, 2002, ANR declared a divided of 5 cents per share; that on May 15, 2002, ANR filed its Report on Form 10-Q for the first quarter of 2002 signed by Doyle and Burke, which speaks for itself.  Doyle denies the remaining allegations.