179.    Denied.

180.    Denied, except admits that while Doyle was ANR's CEO and a director, he regularly monitored ANR's financial results.

181.    Admits ANR issued a press release on July 25, 2002, which listed Doyle and Burke as contacts; and that Plaintiffs have in the second sentence correctly quoted portions of ANR's July 25, 2002 press release, which speaks for itself. Doyle denies the remaining allegations.

182.    Admits that Plaintiffs have correctly quoted portions of the July 25, 2002 press release, which speaks for itself (except denies that the portions of ANR's July 25, 2002 press release Plaintiffs have italicized were italicized or emphasized in the original).

183.    Admits that Plaintiffs have correctly quoted a portion of ANR's July 25, 2002 press release, which speaks for itself. Doyle denies the remaining allegations.

184.    Denied.

185.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 185 and therefore denies the same.

186.    Admitted.

187.    Denies the allegations of the first sentence. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 187 and therefore denies the same.

188.    Admits that on July 29, 2002, ANR issued a press release, which speaks for itself.
Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining
allegations of paragraph 188 and therefore denies the same.

189.    Admits that on August 15, 2002, ANR issued a press release, listing Doyle and
Burke as contacts, which speaks for itself; and that that Plaintiffs have correctly quoted portions
of the press release.  Admits that on August 15, 2002, ANR filed its second quarter 10-Q, signed
by Doyle and Burke, which 10-Q speaks for itself.  Doyle denies the remaining allegations.

190.    Avers that ANR's second quarter 10-Q speaks for itself.  Doyle denies the
remaining allegations.

191.    Admits that Plaintiffs have correctly quoted portions of ANR's second quarter
2002 10-Q, which speaks for itself (but denies that the portions Plaintiffs have italicized were
italicized or emphasized in the original).  Doyle denies the remaining allegations.

192.    Admits, as ANR's second quarter 2002 10-Q stated, that in estimating the amount
of the second quarter 2002 charge for the Transamerica contract, ANR had "assumed an annual
investment return of 0% on convertible bonds for the remainder of 2002, with an 8% return
assumed for 2003 and thereafter."  Doyle denies the remaining allegations.

193.    Admits that ANR's second quarter 2002 10-Q stated that in connection with
ANR's writedown of deferred acquisition costs for the Transamerica contract, ANR had
"assumed annual policyholder lapse rates of 26% for 2002 and 21 % for 2003," which was

"consistent with our experience for 2001," and that ANR had increased its assumed lapse rate for the second half of 2002 to 28%. Doyle denies the remaining allegations.

194.    Admits that ANR's  second quarter 2002 10-Q reported that "surrender fees and other revenues" were $6.16 million, which consisted "primarily" of "net surrender fees" and was a higher figure than prior quarters, and that the yield on ANR's Funds Withheld at Interest asset for the first six months of 2001 was 5.14%; that the 10-Q was the first time ANR had in its public filings specifically stated the yield on its Funds Withheld at Interest asset; and that the 10-Q stated that if management's estimates regarding future lapse rates and investment returns did not "prove to be accurate," ANR might "be required to write down additional deferred acquisition costs" on the Transamerica contract. Doyle denies the remaining allegations.

195.    Admits that ANR's second quarter 2002 10-Q stated that ANR had unsecured letters of credit with Citibank of approximately $89 million; that these letters had been "posted as security to allow certain of our ceding companies to take credit on their statutory financial statements for reinsurance obtained from us;" that Citibank had requested that those letters be secured; and that ANR was "seeking to raise capital to fund its collateral requirements and eliminate the need for Citibank's unsecured letters of credit." ANR also admits that Plaintiffs have correctly quoted portions of the 10-Q (except denies that the portions Plaintiffs have italicized were italicized or emphasized in the original). Doyle denies the remaining allegations.

196.    Denied.

      (a)     Denied.

      (b)     Denied.

      (c)     Denied.

197.    Admits that Plaintiffs have correctly quoted portions of statements made by Doyle and Burke, respectively, in ANR's August 16, 2002 conference call (but denies that Burke said "are drastically overreactive" (the words were "have drastically overreacted"), and that the portion Plaintiffs have italicized was emphasized by Doyle). Doyle denies the remaining allegations.

198.    Denied.

199.    Admits that on September 12, 2002, ANR issued a press release which stated that "Mr. Doyle has resigned as President, Chief Executive Officer and a director of the company, but he has agreed to remain with the Company on an interim basis to assist with certain projects;" that "[until an appropriate replacement is identified, a Transition Committee of the Board of Directors will oversee the management and operations of the Company;" and that Hammer and another Board member were the Members of the Transition Committee. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 199 and therefore denies the same.

200.    Admits that on November 5, 2002, ANR issued a press release, which speaks for itself. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 200 and therefore denies the same.

201.    Admits that on November 13, 2002, ANR issued a press release, which speaks for itself. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 201 and therefore denies the same.

202.    Admits ANR issued a press release on November 19, 2002, which speaks for itself, and that Plaintiffs have correctly quoted portions of the release (but denies that the portions italicized by Plaintiffs were italicized or emphasized in the original). Doyle denies the remaining allegations.

203.    Admits ANR filed its Report  on Form 8-K on November 19, 2002, which speaks for itself, and that Plaintiffs have correctly quoted portions of ANR's November 19, 2002 8-K (but denies that the portions italicized by Plaintiffs were italicized or emphasized in the original). Doyle denies the remaining allegations.

204.    Admits that ANR's November 19, 2002 8-K stated that "such expenses generally accrue at a rate of approximately 2.5% of the assets annually," and that ANR's 2001 10-K-A, filed on March 21, 2003, stated that "such expenses generally accrue at a rate of approximately 2.75% of the assets annually." Doyle denies the remaining allegations.

205.    Admits that Plaintiffs have correctly quoted a portion of ANR's November 19, 2002 8-K, which speaks for itself (but denies that the portion italicized by Plaintiffs was italicized or emphasized in the original).

206.    Admits that ANR's November 19, 2002 8-K stated that for the first nine months of 2002, the yield on ANR's Funds Withheld at Interest Asset related to the Transamerica contract had been 3.8% and that the average yield on ANR's Funds Withheld at Interest Asset had been 5.8%, and that Plaintiffs have correctly quoted a portion of the 8-K, which speaks for itself (but denies that the portion Plaintiffs have italicized was italicized or emphasized in the original). Doyle denies the remaining allegations

207.    Admits that Plaintiffs have correctly quoted the stated book value and market value of the convertible bonds and "below investment grade U.S. corporate bonds," respectively. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 207 and therefore denies the same.

208.    Admits that Plaintiffs have correctly quoted portions of the November 19, 2002 8-K, which speaks for itself (but denies that the portions italicized by Plaintiffs were italicized or emphasized in the original). Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 208 and therefore denies the same.

209.    Admits that Plaintiffs have correctly quoted a sentence from ANR's November 19, 2002 8-K, which speaks for itself (but denies that the portions italicized by Plaintiffs were italicized or emphasized in the original). Doyle denies the remaining allegations.

210.    Admits that Plaintiffs have correctly quoted portions of ANR's November 19, 2002 8-K, which speaks for itself (but denies that the portions italicized by Plaintiffs were italicized or emphasized in the original). Doyle denies the remaining allegations.

211.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 211 and therefore denies the same.

212.    Admits ANR issued a press release on January 2, 2003, which speaks for itself. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 212 and therefore denies the same.

213.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 213 and therefore denies the same.

214.    Admits that ANR filed an Amended 10-K, on or about March 21, 2003, and Amended 10-Qs for each of the first three quarters of 2002, and that these documents speak for themselves. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 214 and therefore denies the same.

215.     Admits that ANR filed an amended 10-K, on or around March 21, 2003, and that the Amended 10-K speaks for itself. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 215 and therefore denies the same.

216.     Admits that Plaintiffs have correctly quoted portions of ANR's 1999, 2000 and 2001 10-Ks and ANR's 2001 10-K-A and that these documents speak for themselves.   Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 216 and therefore denies the same.

217.     Admits that Plaintiffs have correctly quoted a portion of ANR's 2001 10-K-A, which speaks for itself. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 217 and therefore denies the same.

218.     Admits that on April 21, 2003, ANR issued a press release, which speaks for itself. Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 218, and therefore denies the same.

219.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 219, and therefore denies the same.

220.     Admits that on or around July 2, 2003, ANR filed a 2002 10-K-A, which speaks for itself; and that Plaintiffs have correctly quoted a sentence from the 10-K-A. Doyle denies the remaining allegations.

-38-

221.  Denied.

222.  Denied.

       (a)    Denied.

       (b)    Denied.

       (c)    Denied.

       (d)    Denied.

223.  Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 223 and therefore denies the same.

224.  Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 224 and therefore denies the same.

225.  Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 225 and therefore denies the same.

226.  Denied.

227.  Denied.

228.  Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 228 and therefore denies the same.

229.  Admits that Plaintiffs have quoted portions of SEC Interpretive Release No. 3426831 (except denies that the portion of SEC Interpretive Release No. 3426831 that Plaintiffs have italicized was italicized or emphasized in the original and that Plaintiffs have

correctly quoted the Release (the final portion actually reads "and reasonably likely to have material effects on the registrant's financial condition or results of operation"). Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 229 and therefore denies the same.

230.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 230 and therefore denies the same.

231.    Denied.

232.    Admits that Plaintiffs have correctly quoted a portion of ANR's 1999 10-K and 2000 10-K, which speak for themselves.

233.    Denied.

234.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 234 and therefore denies the same.

235.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 235 and therefore denies the same.

236.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 236 and therefore denies the same.

237.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 237 and therefore denies the same.

238.   Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 238 and therefore denies the same.

239.   Denied.

240.   Denied.

241.   Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 241 and therefore denies the same.

242.   Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 242 and therefore denies the same.

243.   Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 243 and therefore denies the same.

244.   Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 244 and therefore denies the same.

245.   Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 245 and therefore denies the same.

246.   Denied.

247.   Denied.

248.   Denied.

249.   Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 249 and therefore denies the same.

250.    Denied.

251.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 251 and therefore denies the same.

252.    Denies the second sentence.  Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 252 and therefore denies the same.

253.    Denied.

254.    Denied.

255.    Denied.

      (a)    Denied.

      (b)    Denied.

      (c)    Denied.

      (d)    Denied.

      (e)    Denied.

      (f)    Denied.

      (g)    Denied.

      (h)    Denied.

256.    Denied.

257.     Admits the allegations of the second, third, fourth and fifth sentences. Doyle denies the remaining allegations.

258.     Admits that ANR filed its Registration Statement with the SEC on December 24, 1997, and that Plaintiffs have correctly quoted portions of the Registration Statement, which speaks for itself (except denies that the portions italicized by Plaintiffs were italicized or emphasized in the original). Doyle denies the remaining allegations.

259.     Admits that Plaintiffs have correctly quoted a portion of ANR's Registration Statement. Doyle denies the remaining allegations.

260.     Avers that ANR's 1999 10-K, 2000 10-K and 2001 10-K speak for themselves. Doyle denies the remaining allegations.

261.     Denied.

262.     Admits that the Individual Defendants have the experience set forth in ANR's 2000 and 2001 Proxy Statements. Doyle denies the remaining allegations.

263.     Admits that during ANR's April 24, 2002 conference call, Burke stated that, going forward, ANR would be reporting separately its results for the annuity and life segments and that "[o]ur belief is that this type of presentation is far more meaningful and informative to you. It is also the basis upon which Larry monitors results." Doyle denies the remaining allegations.

264.    Admits that ANR's 1999 10-K, 2000 10-K and 2001 10-K contained a "Report of Management," which stated: that "[m]anagement of the Company has established and maintains a system of internal controls designed to provide reasonable assurance as to the integrity and reliability of the consolidated financial statements;" that "[m]anagement of the Company has primary responsibility for preparing the consolidated financial statements and for their integrity and objectivity;" and that "[t]he consolidated financial statements included in this report were prepared in accordance with accounting principles generally accepted in the United States of America applied on a consistent basis." Doyle denies the remaining allegations.

265.    Admits that ANR's 1999 10-K, 2001 10-K and 2001 10-K stated that under Bermuda law, Annuity & Life Reassurance, Ltd., ANR's Bermuda operating subsidiary, was "required to submit an annual actuary's certificate when filing its Statutory Financial Return;" that the "certificate must state whether or not in the opinion of the insurer's approved actuary, the aggregate amount of the liabilities of the insurer in relation to long term business as at the end of the relevant year exceeded the aggregate amount of those liabilities as shown in the insurer's statutory balance sheet;" that Annuity & Life, Reassurance, Ltd.'s approved actuary was Robert P. Mills; that Bermuda law "provides that the value of the long term business assets of an insurer carrying on long term business must exceed the amount of its long-term business liabilities by at least $250,000;" and that Annuity & Life Reassurance, Ltd. "met the minimum statutory capital and surplus requirements" as of the end of the year covered by the particular 10-

K. Doyle also admits: that several of the 10-Ks stated that ANR's underwriting and pricing were based in part on actuarial models developed by an "experienced underwriting team." Doyle lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 265 and therefore denies the same.

266.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 266 and therefore denies the same.

267.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 267 and therefore denies the same.

268.    Denied.

269.    Admits that financial ratings were important to ANR's business. Doyle denies the remaining allegations.

270.    Admits that Atkin, ANR's former CFO, sold his ANR stock between May and July, 2001. Doyle denies the remaining allegations.

271.    Admits that in May and July of 2001, Atkin exercised the bulk of his options to purchase ANR's stock and then sold the shares, and also sold his other ANR stock; that Atkin sold his shares for more than $2,250,000 above his cost or basis; and that Atkin's total cash compensation for 2000 was approximately $500,000; that ANR in its public statements first made specific reference to difficulties with its Transamerica contract during ANR's July 31, 2001 conference call; that ANR in its public filings first stated that its "other income" consisted

primarily of net surrender fees in its second quarter 2001 10-Q, filed on August 13, 2001; and

that ANR announced its first charge related to the Transamerica contract on October 25, 2001.

Doyle denies the remaining allegations.

272.   On information and belief, admitted.

273.   Denied.

274.   Denied.

275.   Denied.

276.   Denied.

277.   Admits the allegations of subparagraphs (a), (b), and (c), but denies the remaining

allegations.

278.   Admits that ANR was followed by several securities analysts employed by major

brokerage firms who at times wrote reports, but lacks knowledge or information sufficient to

form a belief as to the truth of the remaining allegations and therefore denies the same.

279.   Denied.

280.   Denied.

## COUNT I

### Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder Against ANR and the Individual Defendants

281.    Doyle incorporates by reference his answers to paragraphs 1 to 280 above, as if set forth fully herein.

282.    Denied.

283.    Denied.

284.    Denied.

285.    Denied.

286.    Denied.

287.    Denied.

288.    Denied.

289.    Denied.

290.    Denied.

291.    Denied.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants and XL Capital

292.    Doyle incorporates his answers to paragraphs 1 to 291 above by reference, as if set forth fully herein.

293.    Denied.

294.    Denied.

295.    Denied.

296.    Doyle lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 296 and therefore denies the same.

WHEREFORE, Doyle respectfully asks that this Court grant judgment in his favor and against Plaintiffs, together with its attorneys' fees and costs in this action and such other and further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

To the extent the Complaint is based on any forward-looking statement by ANR, Plaintiffs are barred from recovery by the "bespeaks caution" doctrine because ANR provided the investing public with sufficiently specific risk disclosures or other cautionary statements concerning the subject matter of each forward-looking statement to render each such forward looking statement immaterial.

### THIRD AFFIRMATIVE DEFENSE

To the extent that the Complaint is based on any forward-looking statement contained in ANR's public disclosures, Plaintiffs are barred from recovery by the safe harbor provision of the Private Securities Litigation Reform Act of 1995 because (i) each such forward-looking statement was identified as a forward-looking statement and was accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ from those in the forward-looking statement; (ii) assuming that any such forward-looking statement was false and misleading, and Doyle denies that any forward-looking statement was false or misleading, the forward-looking statement was not made with actual knowledge that it was false or misleading; and (iii) each such forward-looking statement was immaterial.

### FOURTH AFFIRMATIVE DEFENSE

Each of ANR's Class Period 10-Ks contained a "Report of Independent Auditors," which stated that KPMG had audited ANR "in accordance with auditing standards generally accepted in the United States of America," and that, in KPMG's opinion, ANR's "consolidated financial statements . . . present fairly, in all material respects, the financial position of the Company and its subsidiaries . . . and the results of their operations and cash flows in conformity with accounting principles generally accepted in the United States of America."

-49-

KPMG also reviewed the accounting principles ANR applied in issuing its interim quarterly financial statements, and did not disagree with management's opinion that those statements were prepared in accordance with GAAP.

ANR, its management and its Board of Directors respected KPMG's expertise and in good faith relied when issuing ANR's year-end financial statements on KPMG's unqualified opinions that ANR's financial statements fairly presented in all material respects the financial position of ANR and its subsidiaries in conformity with GAAP, and when issuing ANR's interim quarterly financial statements, on KPMG's reviews of the accounting principles ANR applied, and non-disagreement with management's opinion that those statements were prepared in accordance with GAAP.

## FIFTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs establish that ANR made false and misleading representations or omissions, which Doyle denies, Plaintiffs' claims are barred by the "truth on the market" corollary to the "fraud on the market" theory of reliance because the information misrepresented or omitted was known to the market, already in the public domain and/or reasonably available to shareholders.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable statute of limitations.

WHEREFORE, Doyle respectfully asks that this Court grant judgment in his favor and against Plaintiffs, together with its attorneys' fees and costs in this action and such other and further relief as the Court deems just and proper.

Dated: October 24, 2003

John W. Cannavino (ct06051)
Karen L. Allison, (ct21849)
Cummings & Lockwood LLC
Four Stamford Plaza
107 Elm Street
Stamford, CT  06902
(203) 327-1700
Fax:  203-351-4534


Attorneys for Defendant
Lawrence S. Doyle

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing DEFENDANT LAWRENCE S.

DOYLE'S ANSWER TO CONSOLIDATED AMENDED COMPLAINT was mailed, postage

prepaid, this 24th day of October, 2003 to:

**ATTORNEYS FOR PLAINTIFFS**

David R. Scott
Erin G. Comite
**SCOTT + SCOTT LLC**
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415

Peter E. Siedman
Beth Kaswan
Ann M. Lipton
Steven G. Shulman
U. Seth Ottensoser
**MILBERG WEISS BERSHAD HYNES &
    LERACH, LLP**
One Pennsylvania Plaza
New York, NY  10119

Marc Edelson
**HOFFMAN & EDELSON**
45 West Court Street
Doylestown, PA  18901

**ATTORNEYS FOR DEFENDANTS**

Edward M. Posner, Esq.
Gary R. Battistoni
Stuart A. Law, Jr.
**DRINKER BIDDLE & REATH LLP**
One Logan Square
18th and Cherry Streets
Philadelphia, PA  19103-6996

James F. Stapleton
Kenneth W. Ritt
Terence J. Gallagher
**DAY, BERRY & HOWARD LLP**
One Canterbury Green
Stamford, CT  06901

Thorn Rosenthal
Tammy Roy
**CAHILL GORDON REINDEL, LLP**
80 Pine Street
New York, NY  10005-1702

**ATTORNEYS FOR PLAINTIFFS**

Andrew M. Schatz
Jeffrey S. Nobel
Patrick A. Klingman
**SCHATZ & NOBEL**
330 Main Street
Hartford, CT  06106-1817

James E. Miller
**SHEPHERD FINKELMAN MILLER
& SHAH, LLC**
One Lewis Street
Hartford, CT  06103

Elias A. Alexiades
**ATTORNEY ELIAS A. ALEXIADES**
215 Church Street
New Haven, CT  06525

**ATTORNEYS FOR DEFENDANTS**

Lawrence W. Andrea
**LAW OFFICES OF LAWRENCE W.
ANDREA**
57 North Street, Suite 313
Danbury, CT  06810

James T. Shearin
Peter S. Olson
**PULLMAN & COMLEY, LLC**
850 Main Street
P.O. Box 7006
Bridgeport, CT  06601-7006

R. Nicholas Gimbel
**McCARTER & ENGLISH, LLP**
Mellon Bank Center
1735 Market Street, Suite 1700
Philadelphia, PA  19103

Marc J. Sonnenfeld
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA  19103-2921

John J. Robinson
**McCARTER & ENGLISH LLP**
775 Main Street, 18th Floor
Hartford, CT  06103

**ATTORNEYS FOR DEFENDANTS**
Thomas J. Sansone
James K. Robertson, Jr.
**CARMODY & TORRANCE**
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT  06721


KAREN L. ALLISON (ct 21849)

.StmLib1:1033973.1 10/24/03