UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

SHERRY SCHNALL, Individually and
on Behalf of All Others Similarly Situated,

        Plaintiff,

v.

ANNUITY AND LIFE RE (HOLDINGS),
LTD., XL CAPITAL LTD., LAWRENCE
S. DOYLE, FREDERICK S. HAMMER,
JOHN F. BURKE, WILLIAM W. ATKIN,
BRIAN O'HARA, and MICHAEL P.
ESPOSITO, JR.,

        Defendants.

CIVIL ACTION NO.

3:02CV2133 (GLG)

## DEFENDANT FREDERICK S. HAMMER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO DISMISS

Richard B. Harper
Margaret Nolan
McCARTER & ENGLISH, LLP
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

John J. Robinson (ct 14802)
McCARTER & ENGLISH, LLP
One Financial Plaza
755 Main Street, 18th Floor
Hartford, Connecticut 06103
jrobinson@mccarter.com
(860) 493-3900
(860) 493-3939 (fax)

R. Nicholas Gimbel
McCARTER & ENGLISH, LLP
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, Pennsylvania 19103
(215) 979-3800

Attorneys for Defendant
    Frederick S. Hammer

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

I. PLAINTIFFS' CLAIMS UNDER SECTION 10(b) OF THE
   EXCHANGE ACT AND SEC RULE 10b-5 SHOULD BE DISMISSED ......................2

   A. Plaintiffs Have Not Pled An Actionable Misstatement Or
      Omission By Mr. Hammer.......................................................................................2

   B. Plaintiffs Have Not Pled With Particularity That Hammer Acted With
      The Requisite Scienter .............................................................................................4

      1. Plaintiffs' Conclusory Allegations That Hammer Had Actual
         Knowledge Or Acted With Reckless Disregard For The Truth
         Are Insufficient ............................................................................................4

      2. Plaintiffs Do Not Adequately Allege A Motive And
         Opportunity To Commit Fraud ....................................................................8

II. PLAINTIFFS' SECTION 20(a) CLAIMS SHOULD BE DISMISSED .........................9

CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

Adams v. Amplidyne, Inc., No. 99-4468, 2000 U.S. Dist. LEXIS 21383 (D.N.J. Oct. 24, 2000) ..............6

In re Amylin Pharms., Inc. Sec. Litig., NO. 01CV1455 BTM, 2002 U.S. Dist. LEXIS 19481 (S.D. Calif. Oct. 10, 2002) ..............7

Boguslavsky v. Kaplan, 159 F.3d 715 (2d Cir. 1998) ..............10

In re Cabletron System, 311 F.3d 11 (1st Cir. 2002) ..............2

In re Cell Pathways Sec. Litig., No. 99-752, 2000 U.S. Dist. LEXIS 8584 (E.D. Pa. June 20, 2000) ..............6

In re Cendant Corp. Sec. Litig., 76 F. Supp. 2d 539 (D.N.J. 1999) ..............5, 6

Cohn v. Lone Star Indus., Inc., Civ. No. B-89-617, 1990 U.S. Dist. LEXIS 19414 (D. Conn. May 18, 1990) ..............5, 9

Cosmas v. Hassett, 886 F.2d 8 (2d Cir. 1989) ..............6

Howard v. Everex Sys., Inc., 228 F.3d 1057 (9th Cir. 2000) ..............2

In re Independent Energy Holdings PLC Sec. Litig., 154 F. Supp. 2d 741 (S.D.N.Y. 2001) ..............2

In re Lernout & Hauspie Sec. Litig., 208 F. Supp. 2d 74 (D. Mass. 2002) ..............2

Leventhal v. Tow, 48 F. Supp. 2d 104 (D. Conn. 1999) ..............5

Lindelow v. Hill, No. 00 C 3727, 2001 U.S. Dist. LEXIS 10301 (N.D. Ill. July 19, 2001) ..............6

Manufacturers Life Insurance Co. v. Donaldson, Lufkin & Jenrette Securities Corp., No. 99-Civ.-1944, 2000 WL 709006 (S.D.N.Y. June 1, 2000) ..............6

Mathews v. Centex Telemanagement, Inc., No. C-92-1837-CAL, 1994 WL 269734 (N.D. Cal. June 8, 1994) ..............8

In re Mercator Software, Inc. Sec. Litig., 161 F. Supp. 2d 143 (D. Conn. 2001) ..............8

Mishkin v. Ageloff, No. 97 Civ. 2690, 1998 WL 651065 (S.D.N.Y. Sept. 23, 1998) .................................................................................................................10

Nathenson v. Zonagen Inc., 267 F.3d 400 (5th Cir. 2001) ............................................7

Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000) ..............................................................4

In re Reliance Sec. Litig., 135 F. Supp. 2d 480 (D. Del. 2001) .....................................2

Rich v. Maidstone Finance, Inc., No. 98 Civ. 2569, 2001 WL 286757 (S.D.N.Y. Mar. 23, 2001) .....................................................................................................9, 10

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000) ............................................................8

San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Co., Inc., 75 F.3d 801 (2d Cir. 1996) ...........................................................................8

Steed Finance LDC v. Laser Advisers, Inc., 258 F. Supp. 2d 272 (S.D.N.Y. 2003) ........................................................................................................................10

In re U.S. Bioscience Security Litigation, 806 F. Supp. 1197 (E.D. Pa. 1992) ............7

In re Worldcom, Inc. Sec. Litig., 02 Civ. 3288( 2003 U.S. Dist. LEXIS 21363 (S.D.N.Y. Dec. 1, 2003) ...........................................................................................7

**STATUTES**

15 U.S.C. § 78u-4(b)(2) ................................................................................................10

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief confirms the fatal flaw in the Consolidated Amended Class Action Complaint as directed against Defendant Frederick S. Hammer ("Hammer"): Plaintiffs have not alleged any specific misstatements or facts that establish a "strong inference" of scienter against Hammer as an <u>outside</u> <u>director</u> of Annuity & Life Re (Holdings), Ltd.'s ("ANR" or "the Company"). Instead, Plaintiffs are left to try to bring him back into the case through pleading doctrines, such as the group pleading doctrine (misstatements) and the core business doctrine (scienter), that have been seriously discredited since the enactment of the Private Securities Litigation Reform Act's ("PSLRA"). Even if such doctrines are allowed under the PSLRA, however, they too require a level of involvement that Plaintiffs have not pled Hammer had at ANR as an outside director.

The Complaint should be dismissed on several independent grounds. Plaintiffs' Section 10(b) claim against Hammer fails because (i) the Complaint does not sufficiently plead that Hammer made an actionable misstatement or omission and (ii) the Complaint does not meet the Private Securities Litigation Reform Act's ("PSLRA") heightened standard for pleading scienter. Plaintiffs' Section 20(a) claim against Hammer fails because (i) the Complaint does not allege that Hammer had sufficient control over the alleged misrepresentations and omissions and (ii) the Complaint does not adequately allege Hammer's culpable participation in any wrongdoing. Despite Plaintiffs' protestations to the contrary, each of these deficiencies in the Complaint persists. Therefore, the claims asserted against Hammer should be dismissed.

I. **PLAINTIFFS' CLAIMS UNDER SECTION 10(b) OF THE EXCHANGE ACT AND SEC RULE 10b-5 SHOULD BE DISMISSED.**

   A. **Plaintiffs Have Not Pled An Actionable Misstatement Or Omission By Mr. Hammer.**

In his opening brief, Hammer demonstrated that Plaintiffs failed to plead any actionable misstatements or omissions against him because they improperly rely on the group pleading presumption to ascribe allegedly false and misleading statements to him. Def. Frederick S. Hammer's Mem. of Law in Support of His Mot. To Dismiss ("Hammer Br.") at 12-16. Plaintiffs' arguments to the contrary are unavailing.

First, Plaintiffs' allegation that Hammer signed ANR's Form 10-Ks is not by itself sufficient to attribute allegedly false statements in the 10-Ks to him. See Hammer Br. at 14-15. The cases relied on by Plaintiffs for the proposition that signing an SEC filing can be sufficient to make a misstatement for Section 10(b) purposes involve defendants who had much greater involvement with the company at issue than Plaintiffs allege Hammer had with ANR. See Howard v. Everex Sys., Inc., 228 F.3d 1057, 1059 (9th Cir. 2000) (defendant was the CEO); In re Indep. Energy Holdings PLC Sec. Litig., 154 F. Supp. 2d 741, 768 (S.D.N.Y. 2001) (defendant was a founder and largest shareholder of the company and was significantly involved in the company's affairs); In re Lernout & Hauspie Sec. Litig., 208 F. Supp. 2d 74, 78 (D. Mass. 2002) (defendants held management positions); In re Cabletron Sys., 311 F.3d 11, 41 (1st Cir. 2002) (outside director defendants engaged in insider trading that gave rise to a strong inference of scienter); In re Reliance Sec. Litig., 135 F. Supp. 2d 480, 507 (D. Del. 2001) (outside director defendants served on audit committee).

Second, despite Plaintiffs' assertion that "it is well-accepted in this Circuit that the group pleading doctrine has survived the PSLRA," Opposition Memo. ("Opp."). at 32, no Second Circuit or District of Connecticut case has considered the viability of the doctrine after the

enactment of the PSLRA. However, a number of federal courts around the country have either questioned the doctrine's survival or held it did not survive the PSLRA. Hammer Br. at 12-13.

Third, even if the group pleading doctrine survives the PSLRA, Plaintiffs' attempt to use the presumption against Hammer fails. See Hammer Br. at 13-15. Plaintiffs do not dispute that the group pleading doctrine only applies to outside directors if they are involved in the day-to-day management of those parts of the corporation involved in the alleged fraud or if they have a special relationship or status with the corporation. Id. at 14; Opp. at 33. Plaintiffs do not allege that Hammer had a "special relationship" with ANR or participated in the preparation of any document containing allegedly false and misleading statements. Plaintiffs' only allegations concerning Hammer's relationship with ANR are: (i) he was Chairman of ANR's Board of Directors and served at various times on the Executive Committee, the Finance and Investment Committee, and the Corporate Governance Committee; and (ii) he signed ANR's 10-Ks for 1999, 2000 and 2001. As demonstrated in Hammer's Opening Brief, these allegations are insufficient to permit the application of the group pleading presumption. Hammer Br. at 13-14.

The remaining allegations on which Plaintiffs rely in attempting to attribute ANR's statements to Hammer, Opp. at 33-34, are also insufficient to permit the application of the group pleading presumption to Hammer. Although Plaintiffs allege that Hammer had "extensive experience in the industry," there is no allegation that Hammer used that experience in participating in the day-to-day management of ANR. Plaintiffs' argument that because Hammer "headed ANR . . . at the end of the Class Period"[1] there is "an inference that he was familiar with ANR's day-to-day activities prior to that time" is incomprehensible. In fact, the allegations that Hammer headed ANR after the alleged misstatements were made and during the time in which

---

[1] All of the alleged misstatements and omissions were made before September 12, 2003, the date Mr. Hammer assumed his role on the Transition Committee of the Board of Directors. Hammer Br. at 9.

3

the Company announced it would restate its financial statements supports the inference that Hammer was not familiar with ANR's day-to-day activities prior to September 12, 2002. Plaintiff's assertion that ANR's Registration Statement identifies Hammer as a member of ANR's "senior management team" is simply wrong. The Registration Statement identifies Hammer as a member of the Board of Directors, not as a member of the "senior management team." See Hammer Br. Exh. A. at 6. The assertion -- which does not appear in the Complaint -- that Hammer was a principal of Inter-Atlantic, a consulting firm that provided services to ANR, alleges nothing about Hammer being involved in managing ANR's day-to-day business. Finally, the generalized allegation that ANR's Board of Directors approved its underwriting guidelines also says nothing about Hammer's involvement with ANR's day-to-day affairs or with the underwriting guidelines. In short, Plaintiffs' allegations about Hammer's relationship with ANR do not permit an application of the group pleading presumption to him.

    **B.    Plaintiffs Have Not Pled With Particularity That Hammer Acted With The Requisite Scienter.**

        **1.    Plaintiffs' Conclusory Allegations That Hammer Had Actual Knowledge Or Acted With Reckless Disregard For The Truth Are Insufficient.**

Although Plaintiffs claim to have alleged "the existence of a number of specific facts that Defendants knew or should have known," Opp. at 37-38, neither the Complaint nor Plaintiff's Opposition offer any specific allegations that Hammer had direct knowledge or access to material adverse facts with regard to the alleged fraud. Plaintiffs offer nothing to support their assertion that Hammer had actual knowledge of inaccuracies in ANR's financial reports or was reckless in not knowing of such inaccuracies other than (i) wholly conclusory allegations and (ii) generalized allegations based on Hammer's position as an outside director. Neither is sufficient to give rise to a strong inference of scienter. See Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir.

4

2000)(where plaintiffs allege defendants had access to information contradicting a public statement, "they must specifically identify the reports or statements containing this information"); Leventhal v. Tow, 48 F. Supp. 2d 104, 114-15 (D. Conn. 1999); In re Cendant Corp. Sec. Litig., 76 F. Supp. 2d 539, 547 (D.N.J. 1999) ("the Court cannot infer scienter based on the defendant's position as a director or officer").

Each of the reasons Plaintiffs enumerates for why it is "proper to infer that [Hammer, Esposito and O'Hara] were aware of the massive inaccuracies in ANR's financial reports," Opp. at 51-53, is insufficient to create a strong inference of scienter. First, the allegation that "[a]ll three signed ANR's financial reports, filed with the SEC," Opp. at 51, is "simply insufficient to raise an inference, much less a 'strong inference,'" of scienter. See Cohn v. Lone Star Indus., Inc., Civ. No. B-89-617, 1990 U.S. Dist. LEXIS 19414, at *10-11 (D. Conn. May 18, 1990) (dismissing Section 10(b) and Section 20(a) claims against outside directors that signed allegedly misleading 10-K forms).

Second, Plaintiffs' argument that "[i]n the wake of Atkin's bizarre departure, all three were on notice of the fundamental inaccuracies in ANR's financial statements," Opp. at 51, is a non sequitur. Plaintiffs make no effort to explain how or why Hammer should have equated Atkin's retirement with problems in ANR's financial statements. Moreover, Plaintiffs argument that "the firing of executives . . . is a classic hallmark of scienter," Opp. at 42, is curious considering the Complaint does not allege that Atkin was fired.

Third, although Plaintiffs assert that Hammer, Esposito and O'Hara "were intimately involved in ANR's affairs," Opp. at 52, as noted above in the discussion of the inapplicability the group pleading doctrine, Plaintiffs have alleged no specific facts suggesting that Hammer played any role in ANR's management or day-to-day affairs at the time the allegedly misleading statements and omissions were made. An individual's status as an outside director alone is

insufficient to infer that the individual possessed the requisite scienter. See In re Cendant, 76 F. Supp. 2d at 547. Plaintiffs' argument that all of the outside directors should be charged with knowledge of misstatements relating to the Transamerica contract because it made up a "huge portion of ANR's business" fails. Even if the contract was a significant part of the business, Plaintiffs have made no specific allegations as to why or how Hammer was aware that statements made in ANR's SEC filings regarding that contract were false. Outside directors can well be in error about the affairs of their company without engaging in fraud. To allow for this distinction to be made at the pleading stage, Plaintiffs are required to specifically allege conduct "involving not merely simple, or even excusable negligence, but rather an extreme departure from the standards of ordinary care." See Manufacturers Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec. Corp., No. 99-Civ.-1944, 2000 WL 709006, at *3 (S.D.N.Y. June 1, 2000). The cases cited by Plaintiffs involve situations in which the defendants were far more involved in the operations of the business or where there was otherwise a strong presumption that defendants were aware of information that belied the alleged statements. See In re Cell Pathways Sec. Litig., No. 99-752, 2000 U.S. Dist. LEXIS 8584, at *24-25 (E.D. Pa. June 20, 2000) (individual defendants were high level officers involved with day-to-day operations); Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989) (where company made false and misleading statements that sales to China would represent a significant part of the business, scienter pled against directors who were aware that import restrictions prevented sales to China); Lindelow v. Hill, No. 00 C 3727, 2001 U.S. Dist. LEXIS 10301, at *22 (N.D. Ill. July 19, 2001) (defendants held top management positions); Adams v. Amplidyne, Inc., No. 99-4468, 2000 U.S. Dist. LEXIS 21383, at *24-25 (D.N.J. Oct. 24, 2000) (defendants had day-to-day involvement with virtually all aspects of company's operations).

Fourth, although Plaintiffs argue that a company's small size "make[s] it more likely that high-level corporate executives are aware of the problems," Opp. at 52, Plaintiffs rely on Nathenson v. Zonagen Inc., 267 F.3d 400, 425 (5th Cir. 2001), in which the court found that scienter was not sufficiently pled against outside directors of a small corporation. The other cases Plaintiffs cite involve defendants who had much greater involvement with companies than Hammer had with ANR, In re Amylin Pharms., Inc. Sec. Litig., No. 01cv1455 BTM, 2002 U.S. Dist. LEXIS 19481, at *29 (S.D. Calif. Oct. 10, 2002) (defendant was former officer, largest shareholder and "involved in the day-to-day activities of the corporation"), or were decided before the PSLRA's heightened pleading standards took effect, In re U.S. Bioscience Sec. Litig., 806 F. Supp. 1197 (E.D. Pa. 1992).

At most, Plaintiffs have alleged that Hammer had the opportunity as an outside director to become involved with the day-to-day operations of ANR and "ask probing questions" and failed to do so. Opp. at 51-52. However, Plaintiffs do not allege with particularity that Hammer played an active role in ANR's management, nor do they allege with particularity that as an outside director he had a well-defined duty to become so involved. See In re Worldcom, Inc. Sec. Litig., 02 Civ. 3288(DLC), 2003 U.S. Dist. LEXIS 21363, at *17 (S.D.N.Y. Dec. 1, 2003) (scienter not sufficiently pled against audit committee members who "accepted too readily" reports of management and accountants and were "anemic in [their] oversight function").

Plaintiffs' protestations that Hammer must have known of the alleged falsity of the misrepresentations referenced in the Complaint are particularly dubious in light of their recent filing of a complaint against KPMG which targets the very disclosures which are the subject of the present Complaint. See Exh. A to the Declaration of John J. Robinson ("Robinson Decl."). Plaintiffs admit in their KPMG complaint that KPMG certified the financial statements, certifying that they were fairly presented in accordance with GAAP. See Robinson Decl. Exh. A

¶ 27. There are no allegations that Hammer in any way hid facts from the auditors or influenced their opinions. Given Plaintiffs' allegations against KPMG, a reasonable inference can be drawn that Hammer did not question ANR's financial reporting because he relied on KPMG's audit opinions. See Mathews v. Centex Telemanagement, Inc., No. C-92-1837-CAL, 1994 WL 269734, at *7 (N.D. Cal. June 8, 1994)(finding scienter allegations insufficient where defendants "relied in good faith on their outside auditor"). In short, Plaintiffs' allegations against Hammer are insufficient to raise a strong inference of scienter.

### 2. Plaintiffs Do Not Adequately Allege A Motive And Opportunity To Commit Fraud.

Plaintiffs also failed to plead facts that establish motive and opportunity against Hammer. Plaintiffs rely on two arguments in their effort to plead motive against Hammer: (i) Hammer was motivated by the need to maintain ANR's financial ratings and (ii) Hammer's "career [was] at stake." Opp. at 53-54. Both arguments fail.

First, courts have consistently rejected allegations of the need to maintain the financial strength of the company as a basis for establishing motive. See San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Co., Inc., 75 F.3d 801, 814 (2d Cir. 1996) (holding that a company's desire to maintain a high bond or credit rating does not qualify as sufficient motive for fraud); In re Mercator Software, Inc. Sec. Litig., 161 F. Supp. 2d 143, 148 (D. Conn. 2001). Plaintiffs' reliance on cases holding that "artificial inflation of stock price in the acquisition context may be sufficient for . . . scienter," see, e.g., Rothman v. Gregor, 220 F.3d 81, 93 (2d Cir. 2000), is misplaced because Plaintiffs do not allege that ANR was involved in any acquisition discussions.

Second, Plaintiffs' argument that Atkin's departure somehow put Hammer's career at risk is completely unsupported by the allegations in the Complaint. Plaintiffs simply make no effort

8

to explain why Hammer -- who was an outside director -- would believe that his career was "on the line." Opp. at 54.

## II.    PLAINTIFFS' SECTION 20(a) CLAIMS SHOULD BE DISMISSED.

Plaintiffs' Section 20(a) claim against Hammer should also be dismissed for two reasons: (i) Plaintiffs have not established that Hammer controlled ANR and (ii) Plaintiffs have failed to plead that Hammer was a culpable participant in the alleged fraud.

In order to establish that a defendant had control over a primary violator, "[a] complaint must allege facts from which it can be inferred that the defendant had actual power or influence over the controlled person." Rich v. Maidstone Fin., Inc., No. 98 Civ. 2569, 2001 WL 286757, at *9 (S.D.N.Y. Mar. 23, 2001). Plaintiffs essentially argue that such an inference arises here because Hammer was an outside director and signed certain SEC filings. However, pleading director status alone is not enough to establish actual control, see id., and courts in this district have dismissed Section 20(a) claims against outside directors who signed SEC filings containing alleged misstatements, see Cohn v. Lone Star, 1990 U.S. Dist. LEXIS 19414, at *10-11. Plaintiffs other arguments that Hammer controlled ANR also fail. First, even if Hammer did "personally head[] the Company in the last two months of the Class Period," Opp. at 75, Plaintiffs have not alleged any misstatements or omissions during that time period. Second, the Complaint contains no specific allegations about Inter-Atlantic's role in ANR's business, and the only allegations relating to Inter-Atlantic in Plaintiffs' Opposition brief are that Inter-Atlantic provided consulting services to ANR and was paid for its work. Opp. at 72. Such allegations do not give rise to an inference that Hammer has actual power over ANR.

Plaintiffs have also failed to plead particularized facts establishing that Hammer was a culpable participant in the alleged primary violation. Although Plaintiffs argue that the culpable participation element should not be required to plead a Section 20(a) violation, see Opp. at 64-

9

67, the better position is that culpable participation must be pled in order to make out a prima facie case of control liability, see, e.g., Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998); Rich v. Maidstone, 2001 WL 286757, at *8; Mishkin v. Ageloff, No. 97 Civ. 2690, 1998 WL 651065, at *23 (S.D.N.Y. Sept. 23, 1998). Furthermore, as Hammer explained in his opening brief, the heightened pleading requirements of the PSLRA should apply to the culpable participation element of a Section 20(a) claim. See Hammer Br. at 24; 15 U.S.C. § 78u-4(b)(2); Mishkin, 1998 WL 651065, at *23 (plaintiffs required to plead "particularized facts of the controlling person's conscious misbehavior as a culpable participant in the fraud").

Plaintiffs point to the same generalized allegations against Hammer in their attempt to establish culpable participation as they did in their effort to establish Section 10(b) liability. Opp. at 78. However, Plaintiffs' conclusory allegations fail on both counts. See Steed Finance LDC v. Laser Advisers, Inc., 258 F. Supp. 2d 272, 280 (S.D.N.Y. 2003) (finding culpable participation and scienter allegations inadequate for the same reasons). As set forth above, the Complaint contains no specific allegations that Hammer knew or should have known of the false and misleading nature of the alleged misstatement and omissions. Instead, Plaintiffs rely on conclusory allegations that Hammer is subject to Section 20(a) liability based on his status as an outside director. These allegations are insufficient to state a claim for control person liability.

## CONCLUSION

For the above reasons, Defendant Frederick Hammer respectfully requests that the Court dismiss the claims asserted against him with prejudice.

                              Respectfully Submitted,

                              McCARTER & ENGLISH, LLP

                              */s/ John J. Robinson*

                              John J. Robinson (ct 14802)
                              McCARTER & ENGLISH, LLP
                              One Financial Plaza
                              755 Main Street, 18th Floor
                              Hartford, Connecticut 06103
                              jrobinson@mccarter.com
                              (860) 493-3900
                              (860) 493-3939 (fax)

| | |
|---|---|
| Richard B. Harper<br>Margaret Nolan<br>McCARTER & ENGLISH, LLP<br>100 Mulberry Street<br>Newark, New Jersey 07102<br>(973) 622-4444 | R. Nicholas Gimbel<br>McCARTER & ENGLISH, LLP<br>Mellon Bank Center<br>1735 Market Street, Suite 700<br>Philadelphia, Pennsylvania 19103<br>(215) 979-3800<br><br>Attorneys for Defendant<br>   Frederick S. Hammer |

Dated: December 22, 2003

## CERTIFICATE OF SERVICE

I, John J. Robinson, hereby certify that I caused true and correct copies of the foregoing to be served on the following persons by having same mailed first-class, postage prepaid, to them at their addresses appearing below on December 22, 2003.

**Attorneys for Plaintiffs**

David R. Scott
Erin Green Comite
Scott & Scott LLC
108 Norwich Avenue
Colchester, Ct  06415

Beth Kaswan
Ann Lipton
Milberg Weiss Bershad Hynes & Lerach
One Pennsylvania Plaza
New York, NY  10119

Marc Edelson
Hoffman & Edelson
45 West Court St.
Doylestown, PA  18901

Andrew M. Schatz
Schatz & Nobel
330 Main Street
Hartford, CT  06106-1817

James E. Miller
Shepherd Finkelman Miller & Shah, LLC
One Lewis Street
Hartford, CT  06103

Elias A. Alexiades
Attorney Elias A. Alexiades
215 Church Street
New Haven, CT  06525

**Attorneys for Defendants**

John W. Cannavino
Cummings & Lockwood, LLC
Four Stamford Plaza
107 Elm Street
Stamford, CT  06902

Terence J. Gallagher
Day, Berry & Howard, LLP
One Canterbury Green
Stamford, CT  06901

Thorn Rosenthal
Cahill Gordon & Reindel, LLP
80 Pine Street
New York, NY  10005-1702

Lawrence W. Andrea
Law Offices of Lawrence W. Andrea
57 North Street, Suite 313
Danbury, CT  06810

James T. Shearin
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT  06601-7006

Francis S. Chlapowski
Morgan, Lewis & Bockius LLP
101 Park Avenue, 44th Floor
New York, NY  10178

Thomas J. Sansone
Carmody & Torrance
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110

Gary R. Battistoni
Edward M. Posner
Drinker, Biddle & Reath
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103

_____
John J. Robinson