# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHERRY SCHNALL, Individually and on Behalf of All Others Similarly Situated, | : : : | Case No. |
| Plaintiff, | : : | 02CV2133 (GLG) |
| -against- | : : | March 12, 2004 |
| ANNUITY AND LIFE RE (HOLDINGS), LTD., XL CAPITAL, LTD., LAWRENCE S. DOYLE, FREDERICK S. HAMMER, JOHN F. BURKE, WILLIAM W. ATKIN, BRIAN O'HARA, AND MICHAEL O. ESPOSITO JR. | : : : : : : : | |
| Defendants. | : : | |

## MEMORANDUM OF LAW OF DEFENDANT KPMG LLP (U.S.) IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

WIGGIN AND DANA LLP
400 Atlantic Street
Stamford, CT 06901
(203) 363-7600

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York  10019-6099
(212) 728-8000

Attorneys for Defendant KPMG LLP (U.S.)

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

FACTS ....................................................................................... 3

    A.    The Parties .......................................................................3

    B.    Summary of the Allegations of the Amended Complaint........................3

ARGUMENT ................................................................................ 6

I.    THE AMENDED COMPLAINT FAILS TO ALLEGE ANY ACTIONABLE
    MISREPRESENTATION BY KPMG U.S. ....................................... 6

    A.    There Is No Misstatement Attributed To KPMG U.S. ...........................6

    B.    KPMG U.S.'s Participation in the Audits Does Not Create Primary
        Liability under Section 10(b). ...................................................7

        1.    The Second Circuit, Following *Central Bank*, Has Rejected Any
            Form of an "Aiding and Abetting" Claim....................................7

        2.    Plaintiffs' Allegations Regarding the Participation of KPMG U.S.
            in ANR's Audits Is Not Sufficient............................................10

II.    THE AMENDED COMPLAINT FAILS TO PLEAD FRAUD WITH
    PARTICULARITY UNDER RULE 9(b)....................................... 11

III.    THE AMENDED COMPLAINT FAILS ADEQUATELY TO ALLEGE SCIENTER
    AGAINST KPMG U.S. ......................................................... 14

        1.    The Amended Complaint Must Plead the Equivalent of Fraud by
            KPMG U.S....................................................................14

    B.    Plaintiffs' Group Pleading Against "KPMG," and the Alleged GAAP and
        GAAS Violations, Are Insufficient.........................................16

IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON LIABILITY
    UNDER SECTION 20(a). ...................................................... 18

CONCLUSION............................................................................. 22

i

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Adair v. Kaye Kotts Assocs., Inc.*, No. 97 Civ. 3375 (SS), 1998 WL 142353
    (S.D.N.Y. Mar. 27, 1998) ...........................................................................................9

*Apex Arc, Inc. v. Garvey*, 104 F. Supp. 2d 326 (S.D.N.Y. 2000) ...................................16

*In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 391 (S.D.N.Y. 2003) ................13, 19

*Boguslavsky v. Kaplan*, 159 F.3d 715 (2d Cir. 1998) ....................................................19

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164
    (1994).........................................................................................................2, 6, 7, 8

*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) ....................................................15

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2d Cir. 1987)..............13

*Dubowski v. Ash (In re AM Int'l, Inc. Sec. Litig.)*, 606 F. Supp. 600 (S.D.N.Y. 1985)...........12, 14

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976).........................................................14

*Filler v. Lernout (In re Lernout & Hauspie Sec. Litig.)*, 230 F. Supp. 2d 152
    (D. Mass. 2002)........................................................................................... *passim*

*Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360 (S.D.N.Y. 2001).................................15

*Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654 (S.D.N.Y. 1997), *aff'd*,
    173 F.3d 844 (2d Cir. 1999)........................................................................................13

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 131 F. Supp. 2d 680 (E.D. Pa. 2001), *aff'd*,
    277 F.3d 658 (3d Cir. 2002)........................................................................................15

*Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417 (D.N.J. 1999)...................15, 18

*In re MSC Indus. Direct Co., Inc.*, 283 F. Supp. 2d 838 (E.D.N.Y. 2003)....................18

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ..............................................................12

*Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    No. 00 Civ. 8688 (WHP), 2002 WL 362794 (S.D.N.Y. Mar. 6, 2002)............................12

*Queen Uno Ltd. P'ship v. Coeur d'Alene Mines Corp.*, 2 F. Supp. 2d 1345
    (D. Colo. 1998) .............................................................................................................17

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)...........................................................6, 14, 17, 18

*Schnall v. Annuity and Life Re (Holdings), Ltd.*, No. 3:02 CV 2133 (GLG),
   2004 WL 231439 (D. Conn. Feb. 4, 2004) .............................................................. *passim*

*Schnall v. Annuity and Life Re (Holdings), Ltd.*, No. 3:02 CV 2133 (GLG),
   2004 WL 367644 (D. Conn. Feb. 22, 2004) ............................................................ *passim*

*Schnall v. Annuity and Life Re (Holdings), Ltd.*, No. 3:02 CV 2133 (GLG),
   (D. Conn. Mar. 9, 2004)....................................................................................................22

*SEC v. First Jersey Sec. Inc.*, 101 F.3d 1450 (2d Cir. 1996) ...................................................19, 20

*Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997)..............................................................................9

*In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041 (DLC), 2000 WL 1234601
   (S.D.N.Y. Aug. 31, 2000) ....................................................................................................16

*Stevelman v. Alias Research Inc.*, 174 F.3d 79 (2d Cir. 1999) .........................................14, 15, 18

*Vladimir v. Deloitte & Touche LLP*, 95 Civ. 10319 (RPP), 1997 WL 151330
   (S.D.N.Y. March 31, 1997)..................................................................................................14

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998)..............................................6, 7, 8, 9

*Zucker v. Sasaki*, 963 F. Supp. 301 (S.D.N.Y. 1997) ..............................................................15, 18

## **Statutes**

15 U.S.C. § 78t(a) (West 2004) .........................................................................................19

15 U.S.C. § 78u-4(b)(1) (West 2004) ...............................................................................12

KPMG LLP (hereinafter "KPMG U.S.") respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Class Action Complaint, dated January 13, 2004[1] ("Am. Cplt."), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT

Plaintiffs Communications Workers of America and Midstream Investments Ltd., individually and on behalf of all others who purchased securities of Annuity and Life Re (Holdings), Ltd. ("ANR") during the class period, allege that both KPMG U.S. and KPMG Bermuda violated Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and that KPMG U.S. also violated Section 20(a) of the Exchange Act as a "controlling person" of KPMG Bermuda. For the reasons discussed below, the Court should dismiss each of plaintiffs' claims against KPMG U.S.

First, the Section 10(b) claim should be dismissed because KPMG U.S. made no statement of any kind to plaintiffs, let alone a misstatement. KPMG U.S. did not sign the audit reports on ANR's financial statements, which plaintiffs allege contained the misrepresentations that purportedly give rise to plaintiffs' claims. In fact, KPMG U.S. made no public statement of any kind regarding ANR.

Instead, plaintiffs' Section 10(b) claim relies on allegations that KPMG U.S. was supposedly involved in the audits of ANR's financial statements. But that is nothing more than a claim that KPMG U.S. "aided and abetted" others' alleged misrepresentations. And, as the Supreme Court decided in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*

---

[1]  Plaintiffs filed their original class action complaint on October 23, 2003. The original complaint was also brought against KPMG LLP (United Kingdom), which was since voluntarily dismissed.

511 U.S. 164 (1994), there is no cognizable claim for "aiding and abetting" a Section 10(b) violation.

In an apparent attempt to overcome this fatal deficiency, plaintiffs try to lump KPMG U.S. and KPMG Bermuda together, pleading that "KPMG" made misstatements. There is, however, no entity known as "KPMG." Rather, as plaintiffs and their counsel well know, KPMG U.S. is a separate and distinct partnership and legal entity from defendant KPMG Bermuda - - a separateness that has been recognized by numerous courts. (Presumably, this is why plaintiffs separately sued and served each such entity.)  In sum, plaintiffs have not pleaded a single misrepresentation attributed to KPMG U.S.  Under *Central Bank* and its progeny in this Circuit, plaintiffs cannot therefore state a Section 10(b) claim as a matter of law.

Plaintiffs' Section 10(b) claim against KPMG U.S. fails for additional reasons: even if plaintiffs could plead an actionable misrepresentation by KPMG U.S., plaintiffs' Section 10(b) claim fails to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b), and fails adequately to allege scienter.

Second, plaintiffs' Section 20(a) claim should be dismissed.  Plaintiffs' Section 20(a) claim seeks to hold KPMG U.S. responsible for KPMG Bermuda's audit reports on ANR's financial statements as a "controlling person" of KPMG Bermuda.  This claim, however, is nothing more than an attempt at an end-run around the Supreme Court's elimination of aiding and abetting liability in *Central Bank*, and should be rejected for that reason alone.  In any event, plaintiffs' allegations fall far short of adequately pleading that KPMG U.S. "controlled" KPMG Bermuda under the terms of Section 20(a).  For all these reasons, plaintiffs' amended complaint against KPMG U.S. should be dismissed with prejudice in its entirety.

FACTS

A.    **The Parties**

ANR is a Bermuda corporation, formed in 1997 as a holding company for subsidiaries whose purpose was to sell annuity and life reinsurance products. Am. Cplt. ¶ 2. The amended complaint in this action principally focuses on a contract ANR entered into with Transamerica Occidental Life Insurance ("Transamerica") in 1998 to provide reinsurance for annuity policies originally issued by IL Annuity and Insurance Company ("IL Annuity"). Am. Cplt. ¶¶ 42, 48, 55.

Defendant KPMG U.S. is a partnership established under the laws of New York, with its headquarters located in New York. Am. Cplt. ¶ 25.

Defendant KPMG Bermuda is identified in the amended complaint as having its headquarters in Bermuda. Am. Cplt. ¶ 24.[2] Plaintiffs allege that A. Neil Patterson of KPMG Bermuda was the "engagement partner" for the audits and interim reviews conducted for ANR during the class period. *Id.* These are the audits at issue in the amended complaint.

B.    **Summary of the Allegations of the Amended Complaint**

This is a putative class action against KPMG U.S. and KPMG Bermuda brought on behalf of plaintiffs and all other persons who purchased the securities of ANR between March 15, 2000 and November 19, 2002, inclusive (the "Class Period"). In a separate and prior class action before this Court, plaintiffs have sued ANR, XL Capital, Ltd., and certain of their officers

---

[2]    Notably, the original complaint identified KPMG Bermuda as having "issued audit opinions incorporated into ANR's financial reports, publicly filed with the SEC, from March 2000 through April 2001." Cplt. ¶ 22. This allegation was omitted from the amended complaint.

and directors alleging that certain inaccuracies in ANR's year-end financial statements, which resulted in a restatement, were the product of fraud.[3]

Plaintiffs' amended complaint, referring to KPMG U.S. and KPMG Bermuda collectively and repeatedly as "KPMG," asserts that "KPMG" audited ANR's financial statements for the fiscal years ended December 31, 1999, December 31, 2000, and December 31, 2001, and consented to use of its audit reports on ANR's financial statements for 1999, 2000, and 2001 in ANR's Annual Reports and Reports on Form 10-K, filed by ANR with the SEC. Am. Cplt. ¶ 26. Plaintiffs allege that as ANR's outside auditors since its inception, "KPMG" was supposedly aware that ANR's reported liabilities were understated and its financial statements materially misstated in violation of generally accepted accounting principles ("GAAP").

Specifically, plaintiffs assert that "KPMG" falsely represented in its audit opinions that ANR's financial statements were fairly presented in accordance with GAAP. Am. Cplt. ¶ 13. Plaintiffs also assert that "KPMG" failed to conduct its audit in accordance with generally accepted auditing standards ("GAAS") because, among other things, (i) "KPMG" supposedly ignored ANR's violations of GAAP, as well as several alleged "red flags," such as ANR's alleged failure to reevaluate its outdated estimate of the profitability of the Transamerica contract, and (ii) "KPMG" supposedly failed to require a restatement or withdraw its earlier audit opinions in light of subsequent SEC's inquires regarding certain aspects of ANR's accounting. Am. Cplt. ¶¶ 79(i), 117, 250.

In its 284 paragraphs, plaintiffs' amended complaint does not contain a single allegation as to any particular fraudulent conduct of KPMG U.S., or as to any misrepresentation

---

[3]    The complaint against ANR was first filed on December 2, 2002, and was later amended on July 11, 2003.

that KPMG U.S. specifically made. Importantly, the audit reports issued and contained in ANR's public filings, and upon which plaintiffs' amended complaint is wholly based, nowhere indicate that *KPMG U.S.* issued those reports. In fact, KPMG U.S. did not. The reports were issued by KPMG Bermuda.[4] Moreover, ANR's public filings nowhere indicate that KPMG U.S. had any involvement in the audits or reports thereon.

Rather, plaintiffs' claims rely on allegations that KPMG U.S. is a member of the American Institute of Certified Public Accountants ("AICPA") SEC Practice Section, which plaintiffs claim "qualifies" KPMG Bermuda to practice before the SEC, and that personnel from KPMG offices in New York and Chicago "participated" in the ANR audits and certain conferences with the SEC during the Class Period. Am. Cplt. ¶ 25. Plaintiffs also allege that "[t]hrough KPMG USA's domination of the defense of ANR's reporting (and KPMG's earlier audit certifications) to the SEC at least as far back as May 2002, KPMG USA demonstrated its control of the audit positions and public representations made with respect to ANR's financial reporting, including KPMG's failure to timely require correction of ANR's false financial statements KPMG had earlier certified." Am. Cplt. ¶ 264.

As shown below, even assuming the truth of these allegations (as the Court must on a motion to dismiss), they are inadequate as a matter of law to state a Section 10(b) or Section 20(a) claim against KPMG U.S.

---

[4]    Affidavit of James H. Bicks, sworn to on March 12, 2004 ("Bicks Aff."), Exh. A. For purposes of a motion to dismiss, a court can deem a complaint to include "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *See Schnall v. Annuity and Life Re (Holdings), Ltd.*, No. 3:02 CV 2133 (GLG), 2004 WL 231439, at *2 (D. Conn. Feb. 4, 2004) (*Schnall I*) (annexed hereto as Exh. A) and *Schnall v. Annuity and Life Re (Holdings), Ltd.*, No. 3:02 CV 2133 (GLG), 2004 WL 367644, at *2 (D. Conn. Feb. 22, 2004) (*Schnall II*) (quoting *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000)) (annexed hereto as Exh. B).

## ARGUMENT

I.    **THE AMENDED COMPLAINT FAILS TO ALLEGE ANY ACTIONABLE MISREPRESENTATION BY KPMG U.S.**

The amended complaint's most fundamental inadequacy is that it fails to identify a single false statement by KPMG U.S. To be sure, the amended complaint goes on for more than one hundred pages listing the reasons plaintiffs believe they were defrauded as to ANR's financial performance. But nowhere are plaintiffs able to identify even a single false statement – or, for that matter any statement – made by KPMG U.S. This critical deficiency requires dismissal of the Section 10(b) claim against KPMG U.S.

**A.    There Is No Misstatement Attributed To KPMG U.S.**

To prove a violation of Section 10(b), plaintiffs must show that KPMG U.S. (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase and sale of securities, (4) upon which plaintiffs reasonably relied, (5) that proximately caused their damages. *See Rothman v. Gregor*, 220 F.3d 81, 89 (2d Cir. 2000); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 177 (2d Cir. 1998). The Supreme Court, in the landmark *Central Bank* decision, held that Section 10(b) "prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act." *Cent. Bank of Denver, N.A.*, 511 U.S. at 177.

Here, there is not a single allegation that any statement was made by, or attributed to, KPMG U.S. to investors. The audit reports upon which plaintiffs sue (Bicks Aff., Exh. A) were issued by, and on the letterhead of, KPMG Bermuda. *Id.* They do not contain a single reference to KPMG U.S., nor does any other public statement made by ANR to investors. The Section 10(b) claim must therefore be dismissed for failure to have alleged a misstatement by KPMG U.S. *See Wright*, 152 F.3d at 175.

- 6 -

**B.    KPMG U.S.'s Participation in the Audits Does Not Create Primary Liability under Section 10(b).**

In an apparent attempt to overcome this fundamental deficiency, plaintiffs' amended complaint purports to allege certain conduct of KPMG U.S. in connection with the ANR audits. *See, e.g.,* Am. Cplt. ¶¶ 191, 215. Even assuming the truth of the allegations for purposes of this motion, those allegations do not overcome the lack of a misstatement attributed to KPMG U.S.

**1.    The Second Circuit, Following *Central Bank*, Has Rejected Any Form of an "Aiding and Abetting" Claim.**

In *Central Bank*, the Supreme Court addressed a Section 10(b) claim asserted against a defendant who, like here, had made no statement to the plaintiff but who was alleged to have assisted in making purported misstatements attributed to others. The Supreme Court dismissed plaintiffs' claim. The Court held that Section 10(b) explicitly "prohibits only the *making* of a material misstatement (or omission) or the commission of a manipulative act." 511 U.S. at 177 (emphasis added). The Court stated:

> We reach the uncontroversial conclusion, accepted even by those courts recognizing a § 10(b) aiding and abetting cause of action, that the text of the 1934 Act does not itself reach those who aid and abet a § 10(b) violation. Unlike those courts, however, we think that conclusion resolves the case. It is inconsistent with settled methodology in § 10(b) cases to extend liability beyond the scope of conduct prohibited by the statutory text.

*Id.*

The Second Circuit, following *Central Bank*, has repeatedly held that an allegedly false statement therefore "must be attributed to that specific actor at the time of public dissemination" to establish Section 10(b) liability, and "a secondary actor cannot incur primary liability under the Act for a statement not attributed to that actor at the time of its dissemination." *Wright*, 152 F.3d at 175. Thus, allegations that KPMG U.S. may have participated in ANR

- 7 -

audits - - essentially an "aiding and abetting" claim - - are not sufficient to overcome the *Central Bank* holding.

In *Wright*, an investor brought a class action against the company's independent auditor, Ernst & Young LLP ("E&Y"), alleging materially false representations in connection with the company's sale of its stock. The investor alleged that E&Y "signed off on BT Office Products' 1995 financial statements . . . and authorized [BT] to release its 1995 year end results with full knowledge of the fact that the market would and did interpret the release of these figures as having been approved [by E&Y]." *Id.* at 172. The complaint further alleged that in reliance on E&Y's "oral assurances, BT issued a press release...that set forth BT's...financial results." *Id.* The press release stated that "the figures were 'unaudited' and it made no mention of Ernst & Young." *Id.* In light of discoveries of improper accounting techniques and embezzlement, BT announced in March 1996 that it was restating its 1995 financial results from a previously announced profit of $1.5 million to a loss of $200,000. The BT stock lost more than 25% of its value. *Id.*

The Second Circuit in *Wright* outlined the two approaches courts have taken since *Central Bank* in determining when a secondary actor may incur primary liability under Section 10(b): the "substantial participation" test and the "bright line" test. *Id.* at 174-75. The "substantial participation" test is used by some courts, including the Ninth Circuit, which "have held that third parties may be primarily liable for statements made by others in which the defendant had *significant participation*." *Id.* at 175 (emphasis added). The Second Circuit, however, has adopted, and has continued to adhere to, the "bright line" test, reasoning that "[i]f *Central Bank* is to have any real meaning, a defendant *must actually make a false or misleading statement* in order to be held liable under Section 10(b). Anything short of such conduct is

- 8 -

merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)." *Id.* at 175 (citations omitted) (emphasis added).

The Second Circuit then addressed whether the complaint stated a claim against E&Y for a primary violation of Section 10(b), given allegations that E&Y had approved the financial information contained in the press release and that the market had understood the press release to be an "implied statement" by E&Y that the financial information contained therein was accurate. *Id.* at 173; *see also Id.* at 176. The Second Circuit dismissed the complaint, holding that there could be no liability of E&Y because the public statements at issue "did not attribute any assurances to Ernst & Young and, in fact, did not mention Ernst & Young at all." *Id.* at 175.[5]

Subsequent to *Wright*, the Second Circuit has also rejected "participation in" and similar conduct as a basis for alleging primary liability under Section 10(b), holding that "[a]llegations of 'assisting,' 'participating in,' 'complicity in,' and similar synonyms used throughout the complaint all fall within the prohibitive bar of *Central Bank*." *Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997). Courts also have specifically found allegations of "reviewing" audits and "commenting on" documents insufficient to trigger liability under *Central Bank. See, e.g., Filler v. Lernout (In re Lernout & Hauspie Sec. Litig.)*, 230 F. Supp. 2d 152, 168 (D. Mass. 2002); *see also Adair v. Kaye Kotts Assocs., Inc.*, No. 97 Civ. 3375 (SS), 1998 WL 142353, at *9 (S.D.N.Y. Mar. 27, 1998) (dismissing 10(b) claim against accounting firm because "an

---

[5]   The court further explained that allowing a secondary actor to incur primary liability for a statement not attributed to it "would circumvent the reliance requirements of the Act, as '[r]eliance only on representations made by others cannot itself form the basis of liability.' Thus, the misrepresentation must be attributed to that specific actor at the time of public dissemination." *Wright v. Ernst & Young LLP*, 152 F.3d at 175. For this reason as well, plaintiffs fail to allege the requisite reliance element of a Section 10(b) claim against KPMG U.S.

accountant could not be liable for misrepresentations or omissions which he or she did not certify") (annexed hereto as Exh. C).

>        **2.      Plaintiffs' Allegations Regarding the Participation of KPMG U.S. in ANR's Audits Are Not Sufficient.**

Unable to plead any statement by KPMG U.S, plaintiffs instead allege that KPMG U.S. is a member of the American Institute of Certified Public Accountants ("AICPA") SEC Practice Section, which purportedly qualified KPMG Bermuda to practice before the SEC and to audit the financial statements of public companies (Am. Cplt. ¶ 25), that KPMG Bermuda used the "technical support" and "expertise" of KPMG U.S. (Am. Cplt. ¶ 5), that KPMG U.S. participated in the audits and conferences with the SEC (Am. Cplt. ¶ 25), and that an individual working at KPMG U.S. assisted in audit reviews and provided actuarial services (Am. Cplt. ¶¶ 251, 259). As shown above, however, such allegations have repeatedly been found insufficient to support a Section 10(b) claim.

An analogous complaint was rejected in *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152. There, a group of investors brought a class action against several KPMG firms that allegedly provided audit services to a speech technology company. Like KPMG U.S. here, KPMG Singapore was alleged to have provided KPMG Belgium (the firm that signed the audit report) its "'professional opinion that L&H's Singapore operations and revenues were presented fairly in conformity with U.S. GAAP,' a material misrepresentation that was later disseminated...over the signature of KPMG Belgium." *Id.* at 171. Plaintiffs also asserted that KPMG Singapore was liable for its own fieldwork and conclusions communicated to the market over the signature of KPMG Belgium, that it "substantially participated in" misstatements made by KPMG Belgium, and that it participated in a conference call in which allegedly false and misleading oral statements were made to shareholder representatives. *Id.*

- 10 -

The court granted KPMG Singapore's motion to dismiss the Section 10(b) claim, stating:

> Even if KPMG Belgium partially relied on KPMG Singapore's conclusion that L&H's Singapore operations and revenues were fairly presented in issuing its "clean" audit report, there is no case law to support plaintiff's theory that KPMG Singapore made a material misstatement or omission upon which investors relied.

*Id.*[6]

Plaintiffs' Section 10(b) claim is even more insufficient than that alleged against analogous KPMG defendants in *Lernout.* Here, KPMG U.S. did not sign the audit reports of ANR, and no statements in ANR's financial statements were attributed to KPMG U.S. As in *Wright*, the statements alleged in plaintiffs' amended complaint do not mention KPMG U.S. at all.[7]

In sum, courts have repeatedly held that there is no basis for Section 10(b) liability unless the specific statement upon which plaintiffs sue was publicly attributed to the defendant. Anything less is merely an aiding and abetting claim - - explicitly rejected by the Supreme Court in *Central Bank.* As plaintiffs' Section 10(b) claim does not -- and cannot -- plead a misstatement attributed to KPMG U.S., the Section 10(b) claim should be dismissed pursuant to Rule 12(b)(6).

## II.    THE AMENDED COMPLAINT FAILS TO PLEAD FRAUD WITH PARTICULARITY UNDER RULE 9(b).

Not surprisingly, as the amended complaint fails to identify a single alleged misstatement by KPMG U.S., it also fails to specify how any such statement was supposedly

---

[6]    The court noted that subsections (a) and (c) of Rule 10b-5 do not create a short-cut to circumvent *Central Bank's* limitations on liability for a secondary actor's involvement in preparing misleading documents. *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d at 174. The lack of particularized allegations as to KPMG U.S.'s participation in the alleged fraud compels the same conclusion.

[7]    *See, e.g.*, Am. Cplt. ¶¶ 74, 76, 77, 78, 103, 104, 105, 116, 163, 165, 167, 168.

false, let alone any other of the specifics required by the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b). Under the PSLRA, plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (West 2004).

To satisfy the particularity requirements of Rule 9(b) in connection with a Section 10(b) claim, a plaintiff "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *See Schnall I*, 2004 WL 231439, at *3 and *Schnall II*, 2004 WL 367644, at *3 (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999)); *see also Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000). Rule 9(b) is stringently applied to complaints such as those here, as "one of the purposes of Rule 9(b) is to protect the reputation of professionals such as accountants from groundless allegations of fraud." *Dubowski v. Ash* (*In re AM Int'l, Inc. Sec. Litig.*), 606 F. Supp. 600, 606 (S.D.N.Y. 1985).

Moreover, where, as here, there are multiple defendants, the complaint must disclose the specific nature of each defendant's participation in the alleged fraud. *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688 (WHP), 2002 WL 362794, at *6 (S.D.N.Y. Mar. 6, 2002) (annexed hereto as Exh. D). Failure to distinguish adequately the actions of one defendant from another is grounds for dismissal. *Id.* (dismissing complaint without leave to amend for grouping defendants together as one entity, and thus failing to attribute any wrongful act to parent company); *see also In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d at 170 (noting that the court must "evaluate the allegations

- 12 -

concerning each of the individual defendants" who are "linked only by their membership in a

trade association and collaboration on certain client projects" (citation omitted)). Moreover, the

Second Circuit has specifically held that, to survive a motion to dismiss, the complaint must link

an auditor in a "specific way to any fraudulent misrepresentation or omission." *DiVittorio v.*

*Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1246-49 (2d Cir. 1987) (dismissing complaint

where scienter allegations were made against all "defendants" and not separately as to each).

Plaintiffs' allegations come nowhere close to meeting the requirements of Rule

9(b). Plaintiffs' allegations regarding the purported conduct of KPMG U.S. and KPMG

Bermuda are, nearly without exception, pleaded against the collective "KPMG." The amended

complaint fails, however, to state how each of the individual and distinct "KPMG" entities

caused the alleged injuries.[8]

Rather, the amended complaint purports to "group plead" against all of the

defendants as if they were a single entity. They are not. KPMG Bermuda is a wholly separate

and distinct entity from KPMG U.S.[9] Courts have repeatedly rejected reliance on the "'one-

firm', unified-company theory." *In re Asia Pulp & Paper Sec. Litig.,* 293 F. Supp. 391, 394

(S.D.N.Y. 2003) (rejecting attempted "group pleading" against international accounting firm

where plaintiffs asserted that the firm set "professional standards and principles" under which

other offices operated); *see also Howard v. Klynveld Peat Marwick Goerdeler,* 977 F. Supp. 654,

662-63 (S.D.N.Y. 1997), (rejecting theory that auditors were part of a "global firm" or an

"international network of member firms" based solely on statements in marketing documents)

---

[8]   *See, e.g.,* Am. Cplt. ¶¶ 26-28, 52, 53, 64, 67, 79(h), 81, 116, 151, 153-155, 161.

[9]   As plaintiffs' amended complaint appears to concede by, among other things, suing different KPMG firms as individual defendants, these defendants are separate entities and not part of a single enterprise. *See* Am. Cplt. ¶¶ 24-25.

*aff'd*, 173 F.3d 844 (2d Cir. 1999); *In re AM Int'l, Inc. Sec. Litig.*, 606 F. Supp. at 607 (rejecting

theory that "all the Price Waterhouse firms world-wide are in fact one entity" and dismissing

complaint against foreign affiliates of Price Waterhouse); *In re Lernout & Hauspie Sec. Litig.*,

230 F. Supp. 2d at 170 (rejecting plaintiffs' allegation that "KPMG Int'l markets itself and all of

its member firms as a single entity").

> Yet even assuming the group-pled allegations were sufficiently particular - -
which they are not - - the amended complaint nonetheless fails to adequately specify how the
statements by "KPMG" were supposedly false, or any other of the specifics required by Rule
9(b). *See Stevelman*, 174 F.3d at 83-84; *Vladimir v. Deloitte & Touche LLP*, 95 Civ. 10319
(RPP), 1997 WL 151330, at \*\*7-8 (S.D.N.Y. Mar. 31, 1997) (annexed hereto as Exh. E).
Plaintiffs' amended complaint should therefore be dismissed for failure to satisfy the requisite
standards of the PSLRA and Rule 9(b).

## III.    THE AMENDED COMPLAINT FAILS ADEQUATELY TO ALLEGE SCIENTER AGAINST KPMG U.S.

> Plaintiffs' Section 10(b) claim should be dismissed for the additional reason that it
fails adequately to allege the factual predicate of its assertion of fraudulent intent, or "scienter,"
by KPMG U.S. Even assuming plaintiffs met the misstatement element on the part of KPMG
U.S., the amended complaint does not contain a single allegation supporting any motive or
fraudulent intent for KPMG U.S. to commit securities fraud.

### A.    The Amended Complaint Must Plead the Equivalent of Fraud by KPMG U.S.

> Of the prerequisites to a Section 10(b) claim, none is more fundamental than
scienter - - affirmative proof of "a mental state embracing intent to deceive, manipulate, or
defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976); *see also Rothman*, 220
F.3d at 98. Even to the extent recklessness will suffice, the Supreme Court-mandated standard

requires that such recklessness be "equivalent to willful fraud." *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 366 (S.D.N.Y. 2001) (internal quotations and citation omitted). Moreover, the Second Circuit has found that the PSLRA did not change the basic pleading standard for scienter in this Circuit. *See Schnall I*, 2004 WL 231439, at \*3 and *Schnall II*, 2004 WL 367644, at \*3 (citing *Novak*, 216 F.3d at 309-311).

When an auditor is charged with a violation of Section 10(b), it is not sufficient to plead that the financial statements were misstated, that management perpetrated a fraud, or even that the auditor negligently failed to comply with the standards of the profession, to meet the scienter requirement. Indeed, "mistakes in accounting calculations, unreasonable accounting procedures, or even outright violations of professional standards, without more, simply do not establish scienter." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 131 F. Supp. 2d 680, 692 (E.D. Pa. 2001), *aff'd*, 277 F.3d 658 (3d Cir. 2002); s*ee also Stevelman*, 174 F.3d at 84; *Zucker v. Sasaki*, 963 F. Supp. 301, 307 (S.D.N.Y. 1997). Rather, the complaint must plead that the auditor deliberately falsified its conclusions in such a way that rendered it a willful participant in a fraud or undertook its engagement with a level of recklessness that made its conclusions the equivalent of willful misrepresentations. To plead such fraud, the complaint must allege specific events or "connecting incidents"[10] that tie the auditor to fraudulent conduct or, in the Second Circuit, fraudulent motive and opportunity.

---

[10]   A complaint must allege specific facts demonstrating fraudulent conduct. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267-70 (2d Cir. 1996). As described by one court, the complaint must allege "incidents or circumstances which, apart from [defendants'] positions or roles within [the company], connect them to wrongdoing." *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 430 (D.N.J. 1999).

**B.    Plaintiffs' Group Pleading Against "KPMG," and the Alleged GAAP and GAAS Violations, Are Insufficient.**

Here, the complaint does not adequately allege scienter against "KPMG," let alone KPMG U.S. Plaintiffs have essentially taken their complaint against ANR and its officers and directors (filed on July 11, 2003), and have simply inserted "and KPMG" into each of the substantive allegations. This, however, is not enough. The complaint must specifically allege that <u>KPMG U.S.</u> "knew," what it knew, and when it supposedly knew it. *See, e.g., Apex Arc, Inc. v. Garvey*, 104 F. Supp. 2d 326, 328 (S.D.N.Y. 2000) (conclusory assertions that a defendant "knew or should have known that the representations were inaccurate . . . do not suffice to create a proper pleading of scienter."); *In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041 (DLC), 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000) ("It is well established that boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their [insider positions] are insufficient to plead scienter.") (annexed hereto as Exh. F).

*In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, discussed above, demonstrates in particular how plaintiffs' allegations as to KPMG U.S. are deficient. Plaintiffs there alleged that a partner in the KPMG UK office played a "substantial role in conducting audits and preparing" public filings, was "a key behind-the-scenes player in drafting the statement and conducting the audit, and [ ] knew that the statements he prepared would be publicly disseminated." *Id.* at 168. It was also alleged that the KPMG UK partner participated in a meeting and conference call in which he may have learned of several "red flags" to which his colleagues in other offices were already privy. *Id.* at 169 n.14. The court found, however, that these allegations were not enough to satisfy the rigorous scienter standard because the complaint "cites no particular instances . . . in which [any] KPMG UK representative was specifically informed (or informed others) of a 'red flag' in [the Company's] accounting

- 16 -