47-51.) The Committee alleges, upon "information and belief," that defendants "knew ... that they needed to locate a suitor with an appetite for prepaid wireless who would rely heavily upon [DLJ Securities Corp.'s] advice, since routine pre-acquisition due diligence could potentially have uncovered WWD's desperate financial condition." (Am.Compl.¶ 49.) The Committee further alleges, also "upon information and belief," that "seeing an opportunity to turn their losing WWD investment into a potential winner, the DLJ Defendants and the WWD Defendants set out to cause SmarTalk and WWD to merge." (Am.Compl.¶ 50.)

The Committee avers that to this end, DLJ Securities Corp. completed the first of two interested director transactions. (*See* Am. Compl. ¶ ¶ 72-74.) Pursuant to a letter agreement dated May 28, 1998 (the "Engagement Letter"), Spangenberg engaged DLJ Securities Corp., through Kenneth Viellieu (a member of SmarTalk's board of directors), as SmarTalk's exclusive financial advisor in connection with the WWD transaction. (*See* Am. Compl. ¶ 52.) The Committee charges that since DLJ Securities Corp. also was exclusively advising WWD in connection with the transaction, "the DLJ Defendants ... effectively controlled the flow of information between the two companies." (Am.Compl.¶ 52.)

During negotiations concerning the proposed merger, DLJ Securities Corp. and WWD provided to SmarTalk an "Information Book" which allegedly misrepresented the financial condition of WWD. (Am.Compl.¶ 53.) According to the amended complaint, the Consolidated Balance Sheet and Cash Flow statement in the Information Book showed that WWD maintained a positive cash flow for the period from April through June 1998. It purportedly listed WWD's monthly cash flow as follows:

```
April 1998   $(492)
May 1998     $100,000
June 1998    $100,000.
```

(Am. Compl. ¶ 53 (parenthesis denote negative figures).) By contrast, according to the amended complaint, internal WWD documents dated March 5, 1998 portrayed a cash-poor company and projected the company's cash flow for the same time period as follows:

```
April 1998   $(48,947)
May 1998     $(81,810)
June 1998    $(559,840).
```

(Am.Compl.¶ 54.) In addition, the Committee alleges that the Information Book materially misrepresented WWD's financial condition by providing to SmarTalk "grossly inflated net income projections." (Am.Compl.¶ 56.)

*4 The Committee further alleges that at or before a June 1, 1998 presentation to the SmarTalk board of directors, Viellieu failed to disclose numerous material adverse facts concerning WWD. Viellieu allegedly omitted that (i) WWD was in a "serious cash flow crisis"; (ii) WWD's "financial projections were grossly inflated and unrealistic" given its history of losses and cash flow problems; (iii) WWD "had decided to exit the postpaid wireless business," the company's only significant revenue generating segment; and (iv) WWD's pre-paid wireless business was "incipient and unproven." (Am.Compl.¶ 57.)

On June 10, 1998, SmarTalk acquired WWD and issued 2,715,000 SmarTalk shares to WWD shareholders. (Am.Compl.¶ 59.) The Committee charges that the merger is the second interested director transaction completed as part of the scheme, as DLJ interests were "represented on the boards of directors of both SmarTalk (though Viellieu) and WWD (through Levinson)." (Am.Compl.¶ 66.) It is alleged that the GRP Entities received shares of SmarTalk stock having a market value of more than $12 million, representing an unrealized gain of approximately $6 million on their investment in WWD. (Am.Compl.¶ 60.) SmarTalk filed for bankruptcy protection on January 19, 1999. (Am.Compl.¶ 2.)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Discussion

On a motion to dismiss pursuant to Rule 12(b)(6), a court typically must accept the material facts alleged in the complaint as true and construe all reasonable inferences in a plaintiff's favor. _Grandon v. Merrill Lynch & Co._, 147 F.3d 184, 188 (2d Cir.1998). A court should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." _Conley v. Gibson_, 355 U.S. 41, 45-46 (1957); _Gant v. Wallingford Bd. of Educ._, 69 F.3d 669, 673 (2d Cir.1995). Dismissal is proper when the plaintiff fails to plead the basic elements of a cause of action. _See Wright v. Giuliani_, No. 99 Civ. 10091(WHP), 2000 WL 777940, at *4 (S.D.N.Y. June 14, 2000).

In support of their motions to dismiss, defendants reference a number of documents extrinsic to the amended complaint. This Court may consider documents incorporated by reference in the pleadings. _Brass v. American Film Techns., Inc._, 987 F.2d 142, 150 (2d Cir.1993). As such, the Committee agrees that the Engagement Letter and the Information Book may be considered in assessing the sufficiency of the pleadings, (Transcript of Oral Argument dated July 13, 2001 at 21), as both documents are relied upon in framing the amended complaint. (_See_ Am. Compl. ¶ 52 (Engagement Letter) & ¶¶ 53-56 (Information Book).) This Court however declines to consider SmarTalk's publicly filed documents (Exs. C- G, I to Decl. of Dennis E. Glazer dated May 18, 2000 ("Glazer Decl.")), and the short discussion of those materials in the introductory portions of defendants' briefs, as this is not a securities fraud action and those materials are not incorporated by reference or integral to the amended complaint. _Cf. San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Companies, Inc._, 75 F.3d 801, 808-09 (2d Cir.1996); _Cortec Indus., Inc. v. Sum Holding L.P._, 949 F.2d 42, 47 (2d Cir.1991).

I. _Choice Of Law_

*5 As a predicate to addressing the sufficiency of the amended complaint, this Court must determine what state's law applies to this case, which is heard pursuant to the grant of jurisdiction in 28 U.S.C. § 1334 covering civil actions related to bankruptcy proceedings. The parties dispute the issue. The Committee argues that its claims are governed by the law of California, the state of SmarTalk's incorporation, by operation of the "internal affairs" doctrine. _See BBS Norwalk One, Inc. v. Raccolta, Inc._, 60 F.Supp.2d 123, 129 (S.D.N.Y.1999), aff'd, 205 F.3d 1321 (2d Cir.2000). The DLJ defendants argue that New York law primarily applies by operation of the choice of law provision contained in the Engagement Letter.

A federal court sitting in diversity jurisdiction applies the choice of law doctrines of the forum state. _See Klaxon Co. v. Stentor Elec. Mfg. Co._, 313 U.S. 487, 496 (1941). As an outgrowth of this settled principle, courts hearing bankruptcy cases, such as this Court, employ the forum state's choice of law doctrines where the underlying rights and obligations are defined by state law. _See Koreag, Controle Et Revision S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle Et Revision S.A.)_, 961 F.2d 341, 350 (2d Cir.1992). Because this action was transferred to this District pursuant to 28 U.S.C. § 1406(a), New York law determines what law applies. _See Maltz v. Union Carbide Chems. & Plastics Co._, 992 F.Supp. 286, 295 (S.D.N.Y.1997).

Under New York law, in order for a choice of law provision to apply to tort claims arising incident to a contract, the express language of the provision must be "sufficiently broad" to encompass the entire relationship between the contracting parties. _Krock v. Lipsay_, 97 F.3d 640, 645 (2d Cir.1996); _Turtur v. Rothschild Registry Int'l, Inc._, 26 F.3d 304, 309-10 (2d Cir.1994). Here, under the terms of the Engagement Letter, SmarTalk and DLJ Securities Corp. agreed that:
> This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.
> The Company irrevocably and unconditionally submits to the exclusive jurisdiction of any State or Federal court sitting in New York City over any suit, action or proceeding arising out of or relating to this Agreement (including Schedule I).

(Glazer Decl. Ex. A.) Construing a materially identical provision, the Second Circuit held that New York law applied because "this language is sufficiently broad to cover tort claims as well as contract claims 'arising out of or relating to' " the relevant agreement. _Turtur_, 26 F.3d at 310. As a result, New York law governs the Committee's common law tort claims against the DLJ Defendants, which arise out of or relate to DLJ Securities Corp.'s position as financial advisor to SmarTalk as established by the Engagement Letter. [FN2] Although the WWD Defendants dispute that they are subject to California law, neither they nor the Committee identify any substantive difference between California and New York law on the

common law torts at issue--fraud, civil conspiracy and aiding and abetting breach of fiduciary duty--and therefore this Court will apply New York law for those claims as well for purposes of this motion. The GRP Defendants do not contest that California law applies to the Committee's common law claims against them.

> FN2. The Committee asserts that the Engagement Letter is voidable as a result of the challenged conduct. Such a claim, even if proven, does not invalidate the choice of law clause because there is no allegation that the clause, specifically, was the product of fraud or coercion. See _M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972)._

*6 Separate choice of law issues exist as to the Committee's claims brought under California statute. While the DLJ Defendants and the GRP Defendants agree that a sufficient jurisdictional nexus exists for the Committee to assert voidable transaction claims against them under the California Corporations Code, the WWD Defendants dispute whether such claims may be asserted against them. In addition, the DLJ Defendants and the WWD Defendants challenge the Committee's ability to assert a claim under Section 17200 of the California Business and Professions Code. To the extent necessary, the applicability of those statutes is addressed below as part of the discussion of the legal sufficiency of Committee's claims.

II. *Relevant Pleading Standards And Review Of The Allegations Set Forth In The Amended Complaint*

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Rule 9(b) is designed to serve three goals, namely (i) to provide a defendant with fair notice of the claims against it; (ii) to protect a defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and (iii) to reduce the number of strike suits. _DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987); Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F.Supp.2d 282, 293 (S.D.N.Y.2000)._ Still, Rule 9(b) must be read together with Rule 8(a), which calls for a "short and plain statement" of a claim for relief. _DiVittorio, 822 F.2d at 1247._

To survive scrutiny under Rule 9(b), fraud allegations generally should specify the time, place, speaker and content of an alleged misrepresentation. _DiVittorio, 822 F.2d at 1247; O'Brien v. National Prop. Analysts Partners, 719 F.Supp. 222, 225 (S.D.N.Y.1989)._ In instances where the alleged fraud is premised on an omission, a plaintiff must specify the person responsible for the failure to speak, the context of the omission and the manner in which the omission misled the plaintiff. _Odyssey Re, 85 F.Supp.2d at 293._ Where, as here, there are multiple defendants, the complaint must disclose the specific nature of each defendant's participation in the alleged fraud. _DiVittorio, 822 F.2d at 1247; O'Brien, 719 F.Supp. at 225-26._

Finally, allegations of fraud ordinarily cannot be based on information and belief. _Segal v. Gordon, 467 F.2d 602, 608 (2d Cir.1972)._ Still, this pleading restriction may be relaxed where the matter is peculiarly within the knowledge of the defendant. _DiVittorio, 822 F.2d at 1247; O'Brien, 719 F.Supp. at 226._ When pleading on information and belief is appropriate, the allegations must be accompanied by a statement of facts upon which the belief is founded. _Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 1003 (2d Cir.1988); Segal, 467 F.2d at 608._

Allegations of conspiracy are not measured under Rule 9(b) standards, but under the more liberal notice pleading standards set out in Rule 8(a). Fed.R.Civ.P. 8(a); _Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir.1990)_ (citing _Rose v. Bartle, 871 F.2d 331, 366 (3d Cir.1989))._ Even so, a complaint must allege "some factual basis" to sustain a finding of a "conscious agreement among the defendants." _Hecht, 897 F.2d at 26 n.4._ Similarly, for other civil claims, Rule 8(a) requires a plaintiff to provide "fair notice of the claim asserted" so as to permit a defendant to answer and prepare for trial, _Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988),_ and does not "permit conclusory statements to substitute for minimally sufficient factual allegations," _Furlong v. Long Island College Hosp., 710 F.2d 922, 927 (2d Cir.1983)._

*7 The amended complaint is a cacophony of legal theories untethered to well-pleaded facts. Throughout the pleading, the Committee uses the term "DLJ Defendants" not only to refer to DLJ Securities Corp ., DLJ, Inc. and Kenneth Viellieu, as designated herein, but also to the GRP Entities and Linda Fayne Levinson. However, at the very outset of its papers (Pl.'s Opp. Mem. at 1 n.1), the Committee effectively concedes the infirmities posed by this group pleading device when it abandoned its designations and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

adopted the defendants' nomenclature. Indeed, as the amended complaint indicates, the GRP Defendants occupy a different role in the alleged scheme than the DLJ Defendants: only the GRP Defendants are alleged to hold an investment interest in WWD. (*See* Am. Compl. ¶ 33.) Nevertheless, due to the imprecise group pleading used by the Committee, DLJ Securities Corp., DLJ, Inc. and Viellieu frequently are alleged, without foundation, to hold shares in WWD. (*See* Am. Compl. ¶ 39 ("the DLJ Defendants ... might be forced to sink more money into WWD"); ¶ 46 ("the DLJ Defendants' increased ownership in WWD"); ¶ 80 ("DLJSC's investment in the failing company").) The amended complaint repeatedly seeks to exploit this ambiguity by referring to the desire of the "DLJ Defendants" to "offload their investment in WWD." (Am.Compl.¶ 45.)

As a reflection of this problem, the DLJ Defendants request that all claims against DLJ, Inc. be dismissed because the amended complaint attributes no wrongful act to it. According to the Committee's brief, "DLJ, Inc. was at the very center of the web of deceit that was created to ensnare SmarTalk." (Pl.'s Opp. Mem. at 52-53.) A review of the amended complaint, however, does not support this far-reaching claim. The only factual allegations against DLJ, Inc. are its status as the parent corporation of DLJ Securities Corp. (Am.Compl.¶ ¶ 3-4) and its relationship to unidentified subsidiaries that serve as general partners of the GRP Entities (Am.Compl.¶ 30). In this respect, the amended complaint continues with its generalized allegations in averring that DLJ, Inc. (and DLJ Securities Corp.), through the GRP Entities, provided financing to WWD and that, upon information and belief, they operated and controlled the GRP Entities. (Am.Compl.¶ ¶ 30, 33.) Because the amended complaint does not link DLJ, Inc. to any wrongful act or role in injuring SmarTalk, and for the further reasons detailed below in the context of specific claims, all claims against DLJ, Inc. are dismissed.

The same infirmities pervade the allegations against the WWD Defendants and the GRP Defendants. Specifically, only twelve paragraphs in the body of the amended complaint expressly refer to the WWD Defendants. Six of the twelve paragraphs merely identify the titled positions of the four WWD defendants with the company and whether they were shareholders. (*See* Am. Compl. ¶ ¶ 14-17, 26, 28.) As to the remaining six, three simply recount lawful conversations or corporate acts. Thus, paragraph 42 states that in December 1997, Robert Lorsch of SmarTalk "was introduced to Grillo, Jr." and that "Lorsch and Grillo, Jr. recognized the potential fit of their respective businesses"; paragraph 47 states that at the March 6, 1998 WWD board meeting, "Grillo, Sr. recommended that the WWD board of directors raise the borrowing limits under the Century agreement from $2 million to $5 million"; and paragraph 55 states at the WWD September 5, 1997 board meeting, a full nine months prior to the closing of the merger, "the President of WWD [Grillo, Jr.] advised the board that cash flow would be a problem in the next few months as vendors were unwilling to extend credit to the company." The remaining three paragraphs, though suggesting in conclusory fashion unlawful designs, never set forth facts that attribute any specific wrong to any WWD Defendant. Paragraph 48 alleges upon "information and belief" that "the DLJ Defendants and WWD Defendants conspired to locate a suitable merger partner." Paragraphs 49 and 50 then allege that DLJ Securities Corp. and the WWD Defendants "quickly realized they needed to look no further than [DLJ Securities Corp.'s] own client list" for a "suitor" and then set out "to cause SmarTalk and WWD to merge."

*8 Similarly, with respect to the GRP Defendants, the amended complaint simply alleges the status of the GRP Entities as "DLJ's captive equity investment funds" (Am.Compl.¶ ¶ 6-12, 30) and describes defendant Levinson as a principal of one of the entities, Global Retail Partners, Inc., and a member of the WWD board of directors as of July 25, 1997 (Am.Compl.¶ 13). Moreover, the amended complaint attributes only lawful acts to the GRP Defendants, alleging that the GRP Entities provided financing to WWD (Am.Compl.¶ ¶ 33, 44) and that Levinson attended two WWD board of directors meetings, one on March 6, 1998 and a second on April 28, 1998 (Am.Compl.¶ ¶ 47, 51).

The significance of the overly generalized nature of the Committee's pleadings against the WWD Defendants and the GRP Defendants are addressed as to particular claims as they arise in the course of the legal discussion below.

### III. *The Breach Of Fiduciary Duty Claims*

In its first cause of action, the Committee asserts that DLJ Securities Corp. breached its fiduciary duties to SmarTalk arising out of its agreement to act as its exclusive financial advisor with respect to the acquisition of WWD. (Am.Compl.¶ ¶ 62-65.) Relatedly, as its tenth cause of action, the Committee asserts that the GRP Defendants, the WWD Defendants and Kenneth Viellieu aided and abetted DLJ Securities Corp. in breaching those fiduciary

duties. (Am.Compl.¶¶ 103-08.)

As a threshold matter, defendants move to dismiss the breach of fiduciary duty claims for failure to comply with Rule 9(b)'s requirements for pleading fraud with particularity. Defendants are correct that "Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty--statutory, common law, tort, contractual or fiduciary." *Frota v. Prudential- Bache Securities, Inc.*, 639 F.Supp. 1186, 1193 (S.D.N.Y.1986). However, the case on which the *Frota* court relied for its statement of the law, *Shapiro v. Miami Oil Producers, Inc.*, 84 F.R.D. 234, 236 (D.Mass.1979), also concluded that Rule 9(b) "does not extend to allegations of breach of duty, whether or not characterized as fiduciary, by conduct not amounting to fraud or mistake." Here, DLJ Securities Corp. may be found to have breached its fiduciary duty to SmarTalk by conduct not amounting to fraud, such as by breaching its duties of care, disclosure and loyalty. (*See* Am. Compl. ¶ 64.) As a result, the general pleading standards set out by Rule 8(a), not the heightened standards of Rule 9(b), apply to the Committee's breach of fiduciary duty claim. See *Strougo v. Scudder, Stevens & Clark, Inc.*, 964 F.Supp. 783, 804-05 (S.D.N.Y.1997); *Benenson v. Fleischman*, No. 94 Civ. 5009(CSH), 1995 WL 303618, at *4 (S.D.N.Y. May 18, 1995).

Moving to defendants' substantive arguments, the DLJ Defendants argue that the amended complaint fails to allege facts giving rise to the existence of a fiduciary relationship between DLJ Securities Corp. and SmarTalk. Under New York law, " '[a] fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." ' *Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 168, 521 N.Y.S.2d 672, 676 (1st Dep't 1987) (quoting *Restatement (Second) of Torts* § 874 cmt. a). Broadly speaking,

> *9 a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another.
> *Penato v. George*, 52 A.D.2d 939, 942, 383 N.Y.S.2d 900, 904-05 (2d Dep't 1976); *accord CBS, Inc. v. Ahern*, 108 F.R.D. 14, 25 (S.D.N.Y.1985).

Based on those standards, this Court concludes that the Committee has set forth sufficient factual allegations to suggest the existence of a fiduciary relationship between DLJ Securities Corp. and SmarTalk. The Engagement Letter provided that DLJ Securities Corp. would serve as SmarTalk's "exclusive financial advisor for a period twelve (12) months ... with respect to the possible acquisition of Worldwide Direct Incorporated...." (Glazer Decl. Ex. A at 1.) Pursuant to the Engagement Letter, DLJ Securities Corp. assumed responsibility for "assisting [SmarTalk] in evaluating WWD, its operations, its historical performance and its future prospects"; "advising on a proposed purchase price and form of consideration"; "assisting [SmarTalk] in structuring any Transaction"; and "negotiating the financial aspects of any Transaction." (Glazer Decl. Ex. A at 1.) Although the Engagement Letter did not expressly provide that a fiduciary relationship would exist, "it is not mandatory that a fiduciary relationship be formalized in writing" and "the ongoing conduct between the parties may give rise to a fiduciary relationship that will be recognized by the courts." *Wiener v. Lazard Freres & Co.*, 241 A .D.2d 114, 122, 672 N.Y.S.2d 8, 14 (1st Dep't 1998). As alleged in the amended complaint, beyond what was memorialized in the Engagement Letter, "SmarTalk placed its trust and confidence in [DLJ Securities Corp.] to advise it on the appropriateness of the transaction with WWD" and DLJ Securities Corp. "accepted the trust and confidence placed in it by SmarTalk as an entity with superior knowledge and in a superior position to exert unique influence over SmarTalk." (Am.Compl.¶ 63.)

The DLJ Defendants' argument that the Committee is attempting "to establish a *per se* rule that would create a fiduciary relationship between every investment banker and its clients" misses the point. (DLJ Defs.' Reply Mem. at 4.) The issue is not whether the Committee has established the existence of a fiduciary duty as a matter of law, but whether it has pled sufficient facts that may support a finding that such a duty existed between the parties, often a fact- specific inquiry reserved for a jury. See *Richardson Greenshields Sec., Inc. v. Mui-Hin Lau*, 693 F.Supp. 1445, 1456 (S.D.N.Y.1988). Indeed, in similar contexts, courts have rejected efforts to dismiss breach of fiduciary claims as a matter of law, holding that a fiduciary relationship may exist between an investment bank and its client. *E.g., Frydman & Co. v. Credit Suisse First Boston Corp.*, 272 A.D.2d 236, 236-37, 708 N.Y.S.2d 77, 79 (1st Dep't 2000) (reversing dismissal of breach of fiduciary duty claim by potential acquirer against investment bank advisory firm); *Wiener*, 241 A.D.2d at 122, 672 N.Y.S.2d at 14-15 (reversing dismissal of

breach of fiduciary duty claim by members of real estate partnership against investment bank advisory firm, notwithstanding presence of commitment letter detailing the nature of the parties' contractual relationship); *accord BNY Capital Markets, Inc. v. Moltech Corp.*, No. 99 Civ. 11754(GEL), 2001 WL 262675, at *7 (S.D.N.Y. March 14, 2001) (noting that "several New York authorities have held that under various factual circumstances, a fiduciary relationship can arise within an investment banking context").

*10 The Committee further alleges that "the GRP Entities, Levinson, Grillo, Jr., Grillo, Sr., Lapidus, Wysocki and Viellieu colluded in or aided and abetted [DLJ Securities Corp.'s] breaches of fiduciary duty and were active participants in [DLJ Securities Corp.'s] breaches of fiduciary duty to SmarTalk." [FN3] (Am.Compl.¶ 106.) To plead aiding and abetting breach of fiduciary duty under New York law, the Committee must set forth facts showing (i) a breach by a fiduciary of obligations to another; (ii) that the aider and abettor knowingly induced or participated in the breach; and (iii) that the plaintiff suffered damages as a result of the breach. *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 847-48 (2d Cir.1987); *Kolbeck v. LIT America, Inc.*, 939 F.Supp. 240, 245 (S.D.N.Y.1996). "[A]ctual knowledge" of the primary violator's wrongdoing is required to impose liability as an aider and abettor. *Kolbeck*, 939 F.Supp. at 246-47.

> FN3. While the tenth cause of action is asserted against "all defendants except DLJSC," there is no suggestion within the claim that DLJ, Inc. is alleged to have aiding and abetted the breach. (*See also* Am. Compl. ¶ 103 ("Defendants the GRP Entities, Levinson, Grillo, Jr., Grillo, Sr., Lapidus, Wysocki and Viellieu aided and abetted defendant DLJSC in breaching its fiduciary duties owed to SmarTalk.")). In any event, for the reasons summarized above with respect to the allegations concerning DLJ, Inc., the amended complaint fails to state such a claim against DLJ, Inc.

California law does not differ substantively from New York law. Under California law, to be liable under an aiding and abetting theory, the third party must (i) be an active participant in the breach and (ii) participate in the breach for the purpose of advancing his or her interests or financial advantage. *Richardson v. Reliance Nat'l Indem. Co.*, No. C 99- 2952(CRB), 2000 WL 284211, at *11 (N.D.Cal. March 9, 2000) (applying California law); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 80 Cal.Rptr.2d 329, 342 (Ct.App.1998).

The DLJ Defendants (on behalf of Viellieu) and the WWD Defendants, in part, have moved to dismiss this claim for failure to allege facts showing the existence of a fiduciary duty between DLJ Securities Corp. and SmarTalk and to satisfy the pleading requirements of Rule 9(b). As detailed above, the Committee has pled sufficient facts to show the existence of a fiduciary duty. Also, Rule 9(b) does not apply to the breach of fiduciary duty claim asserted here and, to the extent the motions of the DLJ Defendants and the WWD Defendants rely on Rule 9(b) grounds, those motions are denied.

Regardless of whether Rule 9(b) applies, the Committee still must allege some facts, in non-conclusory terms, showing that Viellieu and the WWD Defendants knowingly participated in DLJ Securities Corp .'s breach. *See Hecht*, 897 F.2d at 26 n. 4; *Furlong*, 710 F.2d at 927. As to Viellieu, the amended complaint alleges sufficient factual allegations to sustain an aiding and abetting claim against him. (Am.Compl.¶ ¶ 52-57, 82(c)--(d).) The same, however, cannot be said for the WWD Defendants.

In support of the aiding and abetting claim asserted against the WWD Defendants, the Committee points to paragraphs 48, 50, 53, and 56. (Pl.'s Opp. Mem. at 19-20.) None of those paragraphs, though, suffices to establish the requisite element of knowing participation. As stated earlier, paragraphs 48 and 50 only vaguely suggest collusion without detailing any facts attributing responsibility to any WWD Defendant for any act in furtherance of DLJ Securities Corp.'s breach. While paragraphs 53 and 56 combine to state that "WWD"--the corporate entity--and DLJ Securities Corp. furnished to SmarTalk the Information Book which purportedly misstated WWD's financial condition, neither paragraph (nor any other) squarely alleges that any WWD Defendant prepared, or in any way contributed to, the financial material contained therein. All the Committee can muster in their brief is that the individual WWD Defendants are "fairly chargeable" with making the purportedly false statements in the Information Book and that it is "reasonable to infer" that they had knowledge of omissions made to SmarTalk and acted to injure SmarTalk by voting for the merger. (Pl.'s Opp. Mem. at 35.) However, absent factual allegations to support the urged inferences, the Committee does not adequately plead the WWD

Defendants' knowing participation in DLJ Securities Corp.'s breach.

*11 In turn, the GRP Defendants argue that they cannot be liable for aiding and abetting a breach of fiduciary duty because they owed no independent fiduciary duty to SmarTalk, citing to the formulation of California law in *Kidron v. Movie Acquisition Corp.*, 47 Cal.Rptr.2d 752 (Ct.App.1995). That argument lacks merit, as *Kidron* involved a conspiracy claim, not an aiding abetting claim. 47 Cal.Rptr.2d at 768 ("[a] nonfiduciary cannot conspire to breach a duty owned only by a fiduciary"). Indeed, as one district court in California more recently held, "[u]nder California law, a plaintiff may sue a third party for aiding and abetting a breach of fiduciary duty, but only if the third party was acting for personal gain or in furtherance of his or her own financial advantage." *Richardson*, 2000 WL 284211, at *11. Moreover, other California state authority has disapproved of *Kidron* on this point. *See Atascadero,* 80 Cal.Rptr.2d at 342 n. 14 ("To the extent *Kidron* ... purports to establish an absolute rule barring any cause of action against a nonfiduciary for aiding and abetting a breach of fiduciary duty even where the nonfiduciary was acting for his or her own individual advantage, we respectfully disagree with the opinion in that case.").

Nevertheless, the amended complaint alleges no facts to suggest that the GRP Defendants participated in furthering DLJ Securities Corp.'s alleged breach of fiduciary duty. The Committee argues that the amended complaint states sufficient facts in support its claim in paragraphs 47, 51, 53 and 59, as they evidence "Levinson's participation as the GRP Entities' representative in the March 6 and April 28, 1998 WWD board meetings at which WWD's cash crisis was discussed and an agreement was reached to pursue merger talks with SmarTalk, her role in authorizing [DLJ Securities Corp.] to provide the Information Book to SmarTalk, and her vote in favor of the merger." (Pl.'s Opp. Mem. at 19.) However, the cited paragraphs do not support the Committee's summary of its allegations. Paragraph 47 merely states that "Levinson of GRP was present in her capacity as a WWD director" at the March 6, 1998 WWD board meeting, while paragraph 51 simply asserts that Levinson "was present" at the April 28, 1998 board meeting. Those two paragraphs lack any allegation regarding Levinson's role, if any, in the decision by WWD to pursue merger negotiations with SmarTalk or her role, if any, in authorizing financial information to be provided to SmarTalk. Paragraphs 53 and 59 fail to refer, even indirectly, to Levinson or the GRP Entities. Accordingly, the claim for aiding and abetting a breach of fiduciary duty asserted against the GRP Defendants cannot be sustained.

IV. *The Fraud Claims*

As its sixth and eighth causes of action, the amended complaint asserts separate fraud claims, respectively, against DLJ Securities Corp. and the WWD Defendants. Defendants submit that those claims must be dismissed because they do not comport with Rule 9(b)'s requirements for pleading fraud with particularity.

*12 The Committee's fraud claims against DLJ Securities Corp. and the WWD Defendants are predicated in part on the alleged misstatements in the Information Book supplied to SmarTalk. Thus, an examination of the sufficiency of the claims must begin there. The amended complaint alleges that the Information Book misrepresented that WWD maintained a positive cash flow (Am.Compl.¶ ¶ 53-54) and overstated the company's net income projections (Am.Compl.¶ 56). However, as demonstrated by the WWD Defendants, the amended complaint misreads the Consolidated Statement of Cash Flows, evidently confusing the projections from the line for "Minimum Balances" with the projections from the line for "Ending Cash before Notes Payable." (*See* Affidavit of Arthur H. Aufses III dated May 21, 2001 ("Aufses Aff.") Ex. A: Information Book at tab 10.) Thus, the Information Book on its face disproves the allegation that DLJ Securities Corp. and WWD Defendants provided false cash flow information, as the following chart shows:

|          | False cash flow figures as alleged (Am.Compl.¶ 53) | Projected WWD internal cash flow (Am.Compl.¶ 54) | Cash flow figures as stated in Information Book |
|----------|---------------------------------|-----------------------------------|---------------------------|
| April 1998 | $(492) | $(48,947) | $(13,850) |
| May 1998 | $100,000 | $(81,810) | $(499,699) |

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

```
June 1998  $100,000              $(559,840)                  $(586,823)
```

Indeed, for two of the three months highlighted in the amended complaint, the Information Book forecasts larger deficits than did WWD in its internal projections. While the Committee dismisses this discovery as "academic" (Pl.'s Opp. Mem. at 28), it is plain that the allegations of misstated cash flows set forth in paragraphs 53 and 54 cannot support the fraud claims.

Defendants attempt to capitalize on this error and use it to quash the fraud claims in their entirety. This attempt is not persuasive, as the Committee bases its fraud claims on more than the cash flow allegations. Specifically, the amended complaint avers that DLJ Securities Corp. and WWD failed to disclose that the company "had decided to exit the postpaid wireless business-- the only segment of WWD's business that generated [ ] significant revenues." (Am.Compl.¶ 57.) This allegation, which must be accepted as true for purposes of this motion, supports the further allegation that the Information Book contained "grossly inflated and unrealistic" income projections, since those projections were based in part on revenues from the soon-to-be-discontinued postpaid wireless business. (*See* Am. Compl. ¶ ¶ 56-57.) Similarly, the claimed failure to inform SmarTalk that WWD's pre-paid wireless business was "incipient and unproven" (Am.Compl.¶ 57) further supports the allegation of that SmarTalk was given inflated revenue projections.

Having determined that certain of the allegations relating to the Information Book may support the fraud claims, this Court turns to the specific arguments made by the DLJ Defendants and the WWD Defendants to dismiss those claims. The DLJ Defendants (on behalf of DLJ Securities Corp.) contend that the fraud claim set out in the sixth cause of action does not satisfy Rule 9(b) because the amended complaint lumps together several different parties under the rubric "the DLJ Defendants"--DLJ Securities Corp., DLJ, Inc., Viellieu, the GRP Entities and Levinson--and improperly makes allegations using this group pleading shorthand. As discussed earlier, this is a significant defect.

*13 The Committee nonetheless overcomes this pleading defect by using more specific allegations in attributing misstatements and omissions to DLJ Securities Corp. (*See* Am. Compl. ¶ ¶ 53-57, 82.) As discussed, the amended complaint alleges that in the May 1998 Information Book, DLJ Securities Corp. misrepresented "WWD's financial picture by giving SmarTalk grossly inflated net income projections," reporting that "WWD was expected to earn net income over $6 million in 1998 and over $16 million in 1999." (Am.Compl.¶ 56.) In addition, the amended complaint alleges that both prior to and during the June 1, 1998 SmarTalk board of directors meeting, DLJ Securities Corp. through Viellieu and another one of its investment bankers "repeated WWD's income projections which were grossly over inflated and unjustifiable" (Am.Compl.¶ 82(c)), and failed to disclose that "WWD had decided to exit the postpaid wireless business" or that "WWD's pre-paid wireless was incipient and unproven" (Am.Compl.¶ 82(d)). Those allegations are sufficient to sustain the fraud claim against DLJ Securities Corp.

While the fraud claim against DLJ Securities Corp. survives the noted group pleading problems, the corresponding claim against the WWD Defendants does not. The skeletal references to the WWD Defendants throughout the complaint flatly recite the positions each held within the company, their shareholder status and lawful acts performed in their capacity as company directors. Moreover, the amended complaint, in at least three pivotal paragraphs, charges misrepresentations and omissions only against "WWD"--the corporate entity- - (Am.Compl.¶ ¶ 53, 56, 57) and pleads derelictions against the "WWD Defendants" generally, with no specification as to individual roles (Am.Compl.¶ 96). With only poorly attributed and undifferentiated allegations to support it, the fraud claim against the WWD Defendants must be dismissed for failure to comply with Rule 9(b)'s particularity requirements. *See DiVittorio*, 822 F.2d at 1247-48; *accord Landy v. Mitchell Petroleum Tech. Corp.*, 734 F.Supp. 608, 621 (S.D.N.Y.1990) ("Plaintiffs must clearly identify each defendant's role in the scheme and what their connection was to the alleged misrepresentation.").

V. *The Civil Conspiracy Claim*

The amended complaint's ninth cause of action asserts a claim for civil conspiracy against all defendants. In support of this claim, the Committee urges this Court to "infer" that DLJ, Inc. caused its affiliates, including DLJ Securities Corp. and the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

GRP Entities, to engage in a common scheme to harm SmarTalk through the commission of the various substantive torts alleged. (*See* Pl.'s Opp. Mem. at 40-42.) Such a claim cannot be sustained on this pleading.

New York law does not recognize the substantive tort of civil conspiracy. *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 251 (2d Cir.1985); *Sado v. Ellis*, 882 F.Supp. 1401, 1408 (S.D.N.Y.1995). Under New York law, " 'a mere conspiracy to commit a tort is never of itself a cause of action." ' *Sado*, 882 F.Supp. at 1408 (quoting (*Alexander & Alexander v. Fritzen*, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 547 (1986)). Rather, "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." *Alexander & Alexander*, 68 N.Y.2d at 969, 510 N.Y.S.2d at 547; *accord Missigman v. USI Northeast, Inc.*, 131 F.Supp.2d 495, 517 (S.D.N.Y.2001) (under New York law, "a claim for civil conspiracy is available only if there is evidence of an underlying actionable tort"). Civil conspiracy requires (i) an agreement between two or more persons, (ii) an overt act, (iii) an intentional participation in the furtherance of a plan or purpose and (iv) resulting damage, and effectively subjects a defendant and his co-conspirators to joint and several liability for joint activity. *Kashi v. Gratsos*, 790 F.2d 1050, 1054-55 (2d Cir.1986) (applying New York law). California law is consistent in all material respects. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 458 (Cal.1994).

*14 In this case, there is no substantive tort common to all defendants. No substantive, independent tort has been asserted against DLJ, Inc. Nor could there be, as the vague allegations pertaining to DLJ, Inc. are not colorable. While the fraud claim asserted against the DLJ Securities Corp. has been sustained, the corresponding claim against the WWD Defendants is not actionable and none is alleged against the GRP Defendants. Thus, fraud does not provide a vehicle by which to connect all defendants in a common scheme.

Similarly, the breach of fiduciary duty claim fails to supply a sufficient predicate for civil conspiracy. In contrast to the allegations against DLJ Securities Corp., no independent fiduciary duty is alleged to have been owed by either the WWD Defendants or the GRP Defendants to SmarTalk, a necessary predicate to establishing the underlying tort. *See Singer v. Carlisle*, 23 N.Y.S.2d 1014, 1015 (Sup.Ct.) (under New York law, sustaining claim for conspiracy to breach a fiduciary duty where all defendants, as corporate directors, independently owed fiduciary duty to corporation and wholly-owned subsidiary); *aff'd*, 258 App. Div. 905, 16 N.Y.S.2d 832 (1939); *Applied Equip.*, 869 P.2d at 457 (under California law, "tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty"); *accord In re Orthopedic Bone Screw Prods. Liability Litig.*, 193 F.3d 781, 789 (3d Cir.1999) (after surveying the law of civil conspiracy, concluding that "one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant" and that "actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor"). In any event, a claim for civil conspiracy to breach DLJ Securities Corp.'s fiduciary duty is duplicative of the claim for aiding and abetting the breach, which is insufficiently pled against the WWD Defendants and the GRP Defendants. *See Durante Bros.*, 755 F.2d at 251; *Artco, Inc. v. Kidde, Inc.*, No. 88 Civ. 5734(MJL), 1989 WL 140284, at *7 (S.D.N.Y. Nov. 15, 1989). As a result, civil conspiracy predicated on breach of fiduciary duty cannot be sustained.

Moreover, those underlying torts, taken together, cannot provide a basis on which to assert a civil conspiracy claim because insufficient factual allegations exist by which to find a conscious agreement among the defendants. *See Hecht*, 897 F.2d at 26 n.4. The vague allegation that "upon information and belief" DLJ, Inc. "operate[d] and control[led] the GRP Entities" (Am.Compl. ¶ 30) fails to create any sustainable inference that DLJ, Inc. directed a conspiracy among its affiliates through the commission of fraud and breach of fiduciary duty. As discussed, the allegations against DLJ, Inc. are merely descriptive and attribute no independent wrong to the company. In addition, the substantive common law torts asserted against the WWD Defendants (fraud and aiding and abetting breach of fiduciary duty) and the GRP Defendants (aiding and abetting breach of fiduciary duty) fail to state claims for relief.

*15 Accordingly, because the amended complaint does not allege an underlying tort common to all defendants, nor sufficiently link up any actionable claims for relief as part of an overall scheme, the ninth cause of action fails to state a claim as a matter of law and is dismissed.

VI. *The Professional Negligence And Negligent Misrepresentation Claims*

The amended complaint asserts against DLJ Securities Corp. claims for professional negligence (fourth cause of action) and negligent misrepresentation (seventh cause of action). The DLJ Defendants argue that those claims are barred by an exculpatory clause in Schedule I (the "Exculpatory Clause") to the Engagement Letter executed between DLJ Securities Corp. and SmarTalk. Specifically, the Exculpatory Clause provides:

> The Company [SmarTalk] also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by an Indemnified Person pursuant to this Agreement, the transactions contemplated hereby or any Indemnified Person's actions or inactions in connection with such advice, service or transactions except for Liabilities (and related Expenses) of the Company that are determined by a judgment of a court of competent jurisdiction which is no longer subject to appeal or further review to have resulted solely from such Indemnified Person's gross negligence or willful misconduct in connection with any such advice, actions, inactions or services.

(Glazer Decl. Ex. A: Schedule I at 2.) Thus, SmarTalk agreed to exculpate DLJ Securities Corp. from liability arising out of ordinary negligence as compared to gross negligence or willful misconduct.

Under New York law, unambiguous contractual clauses absolving a party for liability from its own ordinary negligence--such as the Exculpatory Clause interposed here--are enforceable. *Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs. Ltd.*, 81 N.Y.2d 821, 823, 595 N.Y.S.2d 381, 382 (1993) ("New York law generally enforces contractual provisions absolving a party from its own negligence"); *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 554, 583 N.Y.S.2d 957, 962 (1992) ("[a]bsent a statute or public policy to the contrary, a contractual provision absolving a party from its own negligence will be enforced"). Exculpatory clauses will only be deemed unenforceable and against public policy if they apply to "willful or grossly negligent acts" or to conduct that "smacks of intentional wrongdoing" or "betokens a reckless indifference to right of others." *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 385-86, 461 N.Y.S.2d 746, 749-50 (1983).

The Committee challenges the Exculpatory Clause as void, arguing based on a series of bankruptcy decisions that the obligations it creates are inconsistent with the "special relationship" between SmarTalk and DLJ Securities Corp. (Pl.'s Mem. at 20-23.) This argument fails. [FN4] Foremost, each of the decisions cited by the Committee involves a Chapter 11 debtor's application to a bankruptcy court for authorization to retain investment banking firms or other professionals and stand for the inapposite proposition that agreements to exculpate or indemnify professionals are disfavored in bankruptcy. *See In re Drexel Burnham Lambert Group*, 133 B.R. 13 (Bankr.S.D.N.Y.1991); *In re Gillett Holdings, Inc.*, 137 B.R. 452 (Bankr.D.Col.1991); *In re Mortgage & Realty Trust*, 123 B.R. 626 (Bankr.C.D.Cal.1991); *In re Allegheny Int'l, Inc.*, 100 B.R. 244 (Bankr.W.D.Pa.1989). Moreover, even those decisions contradict the Committee's argument that there is a blanket prohibition against an exculpatory or indemnity clause in agreements retaining financial advisors. *See Gillett Holdings*, 137 B.R. at 458-59 (declining "to hold that indemnity provisions *per se* are either unacceptable or unnecessary" and concluding that they "must be analyzed on a case-by-case basis"); *Allegheny Int'l*, 100 B.R. at 246 (permitting limited indemnification agreements). To the extent a few bankruptcy decisions broadly condemn exoneration or indemnification of financial advisors, *e.g., Drexel Burnham*, 133 B.R. at 27; *Mortgage & Realty Trust*, 123 B.R. at 631, more recent and circumspect authority has determined that those decisions "overlook the common law principles permitting indemnity of fiduciaries, and the idea that a fiduciary cannot be indemnified for negligence, or that such indemnification is contrary to public policy, is just plain wrong." *In re Joan & David Halpern, Inc.*, 248 B.R. 43, 46 (Bankr.S.D.N.Y.2000), *aff'd*, No. 00 Civ. 3601(JSM), 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000).

> FN4. The Committee also argues that the Exculpatory Clause can be avoided because DLJ Securities Corp. "committed many of its acts of negligence prior to the execution of the Engagement Letter." (Pl.'s Opp. Mem. at 20.) However, to the contrary, the Exculpatory Clause permits DLJ Securities Corp. to be held harmless for claims "arising out of or in connection with advice or services rendered or to be rendered." Thus, included are alleged negligent acts committed prior to the execution of the Engagement Letter.

*16 The Exculpatory Clause is enforceable because the scope of the promise is limited to ordinary negligence. As such, the Exculpatory Clause operates as a bar to the negligence-based claims because the Committee charges DLJ Securities Corp. simply with ordinary negligence, not more extreme degrees of careless behavior such as gross negligence or willful misconduct that resembles intentional wrongdoing. In particular, the Committee's professional negligence claim alleges that DLJ Securities Corp. breached its duty "to use such skill, prudence and diligence as other members of its profession commonly possess and exercise." (Am.Compl.¶ 75.) Although, as the Committee argues, negligent misrepresentation is a "species of fraud," such a cause of action "replaces the required showing of scienter with a showing of negligence" equivalent to a "carelessness in imparting words." *Fromer v. Yogel*, 50 F.Supp.2d 227, 242- 43 (S.D.N.Y.1999); *see also In re LILCO Sec. Litig.*, 625 F.Supp. 1500, 1504 (E.D.N.Y.1986) ("In contrast [to fraud], [negligent misrepresentation] lacks the element of intention and does not require proof of scienter, but only a lack of due care."). This statement of the law is confirmed by the manner in which the Committee chose to plead its negligent misrepresentation claim. The amended complaint avers that DLJ Securities Corp. made statements and omissions not with recklessness or a willful intent, but "without a reasonable belief that they were true or a reasonable basis for failing to disclose the true facts." (Am.Compl.¶ 90.) Such allegations do not amount to more than an ordinary breach of a duty of care.

Accordingly, the fourth and seventh causes of action are dismissed as barred by the terms of the Exculpatory Clause in the Engagement Letter.

VII. *The Voidable Transaction Claims*

The Committee's second and third causes of action seek affirmative relief pursuant to California Corporations Code § 310 for two purported interested director transactions: the merger between SmarTalk and WWD, and the Engagement Letter executed between DLJ Securities and SmarTalk. More specifically, in its second cause of action, the amended complaint alleges that since one of the directors of SmarTalk (Viellieu) was affiliated with a DLJ entity (DLJ Securities Corp.) and a WWD director (Levinson) was a principal of a DLJ affiliate (Global Retail Partners, L.P.), the merger between SmarTalk and WWD is a void or voidable interested director transaction, thereby entitling the Committee to "damages ... including return of the value of shares Defendants received at the time the transaction was consummated." (Am. Compl. ¶¶ 66-70, 111 & p.28 subpar. (b).) In its third cause of action, the Committee asserts that the Engagement Letter is void or viodable because DLJ Securities Corp. was represented on the SmarTalk board of directors through Viellieu and seeks rescission of that agreement. (Am.Compl.¶¶ 72-74, 111.)

*17 The Committee's claims, however, rest on the infirm premise that Section 310 creates duties or grounds for imposing liability. Instead, the statute creates a safe-harbor mechanism by which corporate directors may protect themselves against allegations of conflicts of interest and attendant liability from stockholder derivative suits or other challenges to the reasonableness of contracts to which they are parties. *See* Cal. Corp.Code § 310(a)(1-3) (West 2002); *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 732 (9th Cir.1999) ("Section 310 states that even if the director's personal interest was not disclosed and the transaction was not approved or ratified by a majority of the disinterested board members or shareholders, the transaction can still be valid ... [if] the party asserting the validity of the ... transaction sustains the burden of proving that the contract or transaction was just and reasonable...."); *Sammis v. Stafford*, 56 Cal.Rptr.2d 589, 592-93 (Ct.App.1996) (same); *accord* 3 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 915.10 (perm. ed.1994) (referring to Section 310 as one of many state statutes establishing that "if statutory requirements are met, contracts or transactions between an interested director and the corporation are not automatically void or voidable by reason of the director's interest").

Notably, rather than supporting the notion that Section 310 provides for an affirmative cause of action, the cases the Committee cites show that the statute serves as a defense to attacks on the validity of contracts. *See, e.g., Gaillard v. Natomas Co.*, 256 Cal.Rptr. 702, 716-17 (Ct.App.1989) ( Section 310 interposed by corporate directors as defense to shareholder derivative suit alleging claims of breach of fiduciary duty, waste and mismanagement, negligence and conversion). Other cases involving alleged interested director transactions confirm this conclusion as well. *Walczak*, 198 F.3d at 732 (Section 310 interposed by corporate directors as defense to shareholder derivative suit alleging breach of fiduciary duty); *Sammis*, 56 Cal.Rptr. at 592-95 (Section 310 interposed by corporate officer and director as defense to shareholder's derivative suit alleging misappropriation of corporate funds).

Accordingly, the second and third causes of action

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

are dismissed. [FN5]

> FN5. This is not to say that the Committee, for example, was precluded from seeking rescission of the Engagement Letter as a consequence of the alleged breach of fiduciary by DLJ Securities Corp. This Court only holds that Section 310 of the California Corporations Code does not entitle the Committee to such relief.

VIII. *The Claim Under California Unfair Competition Law*

As its fifth cause of action, the amended complaint asserts a claim against all defendants under Section 17200 of the California Business and Professions Code, which defines unfair competition as "any unlawful, unfair or fraudulent business act or practice." See also Bank of the West v. Superior Court, 833 P.2d 545, 549 (Cal.1992) (en banc). A plaintiff alleging unfair business practices under the California unfair competition statutes "must state with reasonable particularity the facts supporting the statutory elements of the violation." Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F.Supp. 1303, 1316 (N.D.Cal.1997) (quoting Khoury v. Maly's of California, Inc., 17 Cal.Rptr.2d 708, 712 (Ct.App.1993)).

*18 Solely referencing the rest of the claims asserted in the amended complaint, the Committee alleges that by committing those acts defendants "have engaged in unlawful and/or unfair business practices within the meaning of Business and Professions Code § 17200 et seq." (Am.Compl.¶ 78.) Because New York law governs the Committee's common law tort claims against the DLJ Defendants, this statutory claim under California law cannot stand against them. See Cavagnuolo v. Rudin, No. 94 Civ. 585(SS), 1996 WL 79861, at *1 n.1 (S.D.N.Y. Feb. 26, 1996). Plus, since all of the Committee's claims against the WWD Defendants and the GRP Defendants have been dismissed, there is no underlying basis to assert an unfair competition claim against them. See Silicon Knights, 983 F.Supp. at 1316 (applying Section 17200). Therefore, the fifth cause of action is dismissed as against all defendants.

IX. *Punitive Damages*

On the basis of the ten causes of action asserted, the amended complaint requests punitive damages. (Am.Compl.¶ 112.) By virtue of defendants' motions to dismiss, all that remains are the breach of fiduciary duty and fraud claims against DLJ Securities Corp. and the related aiding and abetting a breach of fiduciary claim against Viellieu.

Under New York law, in order to recover punitive damages for breach of contract, a plaintiff must establish that the defendant's conduct: (i) is actionable as an independent tort; (ii) was sufficiently egregious; and (iii) was directed not only against the plaintiff, but "was part of a pattern of similar conduct directed at the public generally." Rocanova v. Equitable Life Assurance Soc'y, 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 343 (1994). The New York Court of Appeals has since suggested that those requirements are applicable whenever an action "has its genesis in the contractual relationship between the parties." New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 287 (1995). Recently, the Second Circuit expressly declined to resolve the issue of whether the "public harm" requirement set forth in Rocanova applies to a breach of fiduciary duty claim. Schonfeld v. Hilliard, 218 F.3d 164, 183-84 (2d Cir.2000). Although skeptical that the amended complaint as pled may support a prayer for punitive damages as to any claim, this Court, based on the state of the law, declines at this time to dismiss the Committee's prayer for punitive damages.

X. *Leave To Amend*

If a court grants a motion to dismiss, leave to amend under Rule 15(a) should be "freely given when justice so requires." As a general matter, amendments to the pleadings are favored in order to facilitate a resolution on the merits. See Black Radio Network, Inc. v. NYNEX Corp., 44 F.Supp.2d 565, 573 (S.D.N.Y.1999). However, the decision to grant leave to amend is committed to the discretion of the trial court, see Black Radio, 44 F.Supp.2d at 573 (citing Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 330 (1971)), and may be denied where amendment would be futile. See Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir.1995).

*19 Here, the two voidable transactions claims as well as the claims for professional negligence and negligent misrepresentation are dismissed with prejudice and without leave to amend because the defects are incurable. Section 310 of the California Corporations Code does not provide for affirmative claims for relief with respect to voidable transactions, while the claims sounding in negligence are barred by the Exculpatory Clause. In addition, this Court dismisses the civil conspiracy claim with prejudice

and without leave to amend. The amended complaint is completely devoid of any facts suggesting that DLJ, Inc. facilitated a joint plan among all three groups of defendants to commit a common underlying tort or a series of underlying torts. The failure to do so cannot be ascribed to a technical pleading defect, but rather to the inability to assert actionable facts. In fact, in preparing the amended complaint, the Committee "reviewed thousands of documents produced by [DLJ Securities Corp.], WWD and SmarTalk in the bankruptcy proceedings, including documents leading up to the merger between WWD and SmarTalk." (Am.Compl.¶ 57.) Because the claim under Section 17200 of the California Business and Professions Code is predicated on the same factual conduct as alleged in the civil conspiracy claim, that claim is dismissed with prejudice and without leave to amend.

This Court however is not convinced that a cognizable claim of fraud cannot be asserted against the WWD Defendants or that an aiding and abetting a breach of fiduciary duty claim cannot be asserted against the WWD Defendants or certain of the GRP Defendants. As a result, those claims are dismissed without prejudice and with leave to amend.

Conclusion

For the reasons detailed above, defendants' motions to dismiss are granted in part and denied in part. Specifically, this Court rules as follows:

As to the first cause of action for breach of fiduciary duty against defendant DLJ Securities Corp., the motion to dismiss is denied.

As to the second cause of action for voidable transactions against the DLJ Defendants and the WWD Defendants except defendant Victor Grillo, Sr. and as to the third cause of action for voidable transaction against defendant DLJ Securities Corp. and defendant Kenneth Viellieu, the motions to dismiss are granted for failure to state a claim. The second and third causes of action are dismissed with prejudice and without leave to amend.

As to the fourth cause of action for professional negligence against DLJ Securities Corp., the motion to dismiss is granted for failure to state a claim. This cause of action is dismissed with prejudice and without leave to amend.

As to the fifth cause of action for violations of California Business and Professions Code § 17200 against all defendants, the motions to dismiss are granted for failure to state a claim. This cause of action is dismissed with prejudice and without leave to amend.

As to the sixth cause of action for fraud against DLJ Securities Corp., the motion to dismiss is denied.

*20 As to the seventh cause of action for negligent misrepresentation against DLJ Securities Corp., the motion to dismiss is granted for failure to state a claim. This cause of action is dismissed with prejudice and without leave to amend.

As to the eighth cause of action for fraud against the WWD Defendants, the motion is dismiss is granted for failure to comply with Rule 9(b)'s particularity requirements. This cause of action is dismissed without prejudice and with leave to amend.

As to the ninth cause of action for civil conspiracy against all defendants, the motions to dismiss are granted for failure to state a claim. This cause of action is dismissed with prejudice and without leave to amend.

As to the tenth cause of action for aiding and abetting a breach of fiduciary duty against all defendants except defendant DLJ Securities Corp., the motions to dismiss are granted as to DLJ, Inc., the WWD Defendants and the GRP Defendants, but are denied as to defendant Kenneth Viellieu. This cause of action is dismissed with prejudice and without leave to amend as to DLJ, Inc., but dismissed without prejudice and with leave to amend as to the WWD Defendants and the GRP Defendants.

To the extent permitted, plaintiff shall serve and file a further amended complaint within thirty (30) days of the date of this Memorandum and Order.

2002 WL 362794 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT E

1997 WL 151330                                                                                                         Page 1
Fed. Sec. L. Rep. P 99,456
(Cite as: 1997 WL 151330 (S.D.N.Y.))

**H**

United States District Court, S.D. New York.

Bert VLADIMIR, Alvin Levine, Edward and
Elizabeth McDaid, Athanasios Cheliotis,
Shelby Gordon, and Theodore Rogus, on behalf of
themselves and all others
similarly situated, Plaintiffs,
v.
DELOITTE & TOUCHE LLP, Defendant.

No. 95 CIV. 10319 (RPP).

March 31, 1997.

Rabin & Garland by I. Stephen Rabin, Brian Murray, New York City, for Plaintiffs.

Skadden, Arps, Slate, Meagher & Flom by Thomas J. Dougherty, New York City, for Defendant.

ROBERT P. PATTERSON, District Judge.

*1 In this class action, defendant Deloitte & Touche LLP ("Deloitte") moves to dismiss the amended class action complaint ("Amended Complaint") with prejudice and without leave to replead pursuant to Federal Rule of Civil Procedure (Fed.R.Civ.P.) 12(b)(6), failure to state a claim upon which relief may be granted, and Fed.R.Civ.P. 9(b), failure to plead fraud with particularity. Defendant also argues that the amended complaint should be dismissed because plaintiffs do not adequately plead loss causation or that the alleged fraud was "in connection with" a sale of securities.

For the reasons set forth below, defendant's motion to dismiss for failure to plead fraud with particularity is granted.

*Background*

Plaintiffs filed this amended class action complaint on behalf of "all persons or entities who purchased Cambridge Biotech Corp. ('Cambridge' or the 'Company') common stock during the Class Period beginning on March 30, 1992 ... and ending on March 30, 1994." (Amended Complaint ¶ 1.) According to the amended complaint, Cambridge, a pharmaceutical company, publicly traded stock on the NASDAQ National Market System, and so was required to file annual 10-K forms with the Securities and Exchange Commission ("SEC"), including audited financial statements and an audit report signed by an independent public accountant. (Id. ¶¶ 17-20.) During the Class Period, defendant Deloitte served as Cambridge's auditor and signed the independent audit reports accompanying Cambridge's 10-K filings with the SEC. Among these reports were the two audit reports at issue in this action, the first, filed March 30, 1992 for fiscal year 1991 ("1991 financial statement"), which accompanied Cambridge's 1991 Form 10-K, and the second, filed March 31, 1993 for fiscal year 1992 ("1992 financial statement"), which accompanied Cambridge's 1992 Form 10-K. (Id. ¶¶ 20-21.) In October 1993, Cambridge filed a restated 1992 financial statement ("1992 Restatement"). (Id. ¶¶ 26-28.) The Class Period ends on March 30, 1994 when Deloitte withdrew its opinion certifying the 1992 statements and resigned as Cambridge's auditor, as a result of which Cambridge's stock dropped 51%. (Id. ¶ 30.) Cambridge again restated its 1992 results as well as its 1991 results in May 1994. (Id. ¶ 31.) Cambridge was delisted from NASDAQ in 1994 for failure to file its 1993 statements and filed for bankruptcy in July 1994. (Id. ¶¶ 17, 31.)

Plaintiffs filed the first class action complaint on December 7, 1995 ("Original Complaint") alleging violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78-j, and Rule 10b-5 promulgated thereunder. That complaint was dismissed by this Court pursuant to Fed.R.Civ.P. 9(b) in an Opinion and Order dated April 9, 1996, with leave to replead within 30 days, "for failure to allege facts which raise a strong inference of intent to deceive" or "raise a strong inference of reckless conduct by the defendant". The April 9, 1996 Opinion stated:

*2 Plaintiffs have also failed to state as to each allegation of improper financial reporting what specific auditing standard defendant is alleged not to have observed [citations omitted].

At oral argument plaintiffs' counsel articulated a claim not evident in the complaint and when asked for the specific allegations stated that the claim was implicit based on a number of other allegations. Plaintiffs' counsel have had access to defendant's work papers since 1993 and also have been counsel to stockholders in a putative class action against Cambridge Biotech Corp. and defendant filed in 1993 in the District Court in Massachusetts. Under these circumstances, defendant is entitled to a properly drafted complaint or dismissal thereof.

(April 9, 1996 Opinion at 2.) Plaintiffs filed this Amended Class Action Complaint on May 23, 1996.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works