UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------------x

SHERRY SCHNALL, Individually and On Behalf of
All Others Similarly Situated,

                                    Plaintiffs,                                    CIVIL ACTION NO.
                                                                                   3:02CV2133 (GLG)

                          -against-

ANNUITY AND LIFE RE (HOLDINGS), LTD.,
XL CAPITAL, LTD., LAWRENCE S. DOYLE,
FREDERICK S. HAMMER, JOHN F. BURKE,
WILLIAM W. ATKIN, BRIAN O'HARA, AND
MICHAEL P. ESPOSITO, JR.,                                                          March 15, 2004

                                    Defendants.

-------------------------------------------------------------------x

## MEMORANDUM OF LAW OF DEFENDANT KPMG BERMUDA
## IN SUPPORT OF ITS MOTION TO DISMISS
## THE FIRST AMENDED CLASS ACTION COMPLAINT

Frederick S. Gold
Morgan P. Rueckert
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel. (203) 324-8100
Fax. (203) 324-8199

Michael J. Malone
Paul A. Straus
Lisa Albert
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel. (212) 556-2100
Fax. (212) 556-2222

*Attorneys for KPMG BERMUDA*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 2

STATEMENT OF FACTS ................................................................................................... 4

      KPMG Bermuda's Role as Auditors of ANR ............................................................ 4

      The Transamerica Contract ...................................................................................... 5

POINT I   PLAINTIFFS HAVE FAILED TO PLEAD SCIENTER AGAINST KPMG
            BERMUDA........................................................................................................ 8

      A.    Plaintiffs Must Meet a Very High Burden to Plead Scienter with Respect to
            KPMG Bermuda. ............................................................................................... 8

      B.    Plaintiffs' Attempt to Plead Fraud by Hindsight Must Be Rejected. ................ 10

      C.    Plaintiffs Cannot Show Scienter Against KPMG Bermuda Based on
            ANR's Alleged Failure to Disclose Risks....................................................... 16

      D.    Plaintiffs' Alleged Violations of GAAP Fail to Establish Scienter. ................ 18

POINT II  PLAINTIFFS HAVE NOT EVEN ALLEGED A MATERIALLY
            MISLEADING STATEMENT OR OMISSION BY KPMG BERMUDA ............ 23

CONCLUSION.................................................................................................................. 26

## TABLE OF AUTHORITIES

### FEDERAL CASES

Baraschi v. Silverwear, Inc.,
  No. 01 Civ. 11263, 2002 WL 31867730 (S.D.N.Y. Dec. 23, 2002) .......................... 15

In re Capstead Mortgage Sec. Litig.,
  258 F. Supp. 2d 533 (N.D. Tex. 2003) ....................................................................... 10

Central Bank of Denver v. First Interstate Bank of Denver,
  511 U.S. 164 (1994) .................................................................................................. 23-24

Chill v. Gen. Elec. Co.,
  101 F.3d 263 (2d Cir. 1996) ......................................................................... 7, 8, 16-17

D.E.& J. Ltd. P'ship v. Conaway,
  284 F. Supp. 2d 719 (E.D. Mich. 2003) ....................................................................... 8

In re Duane Reade Inc. Sec. Litig.,
  No. 02 Civ. 6478, 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003) .............................. 13

In re The First Union Corp. Sec. Litig.,
  128 F. Supp. 2d 871 (W.D.N.C. 2001) .................................................................. 10, 12

Halperin v. eBanker USA.com Inc.,
  295 F.3d 352 (2d Cir. 2002) ................................................................................... 7, 23

Hart v. Internet Wire, Inc.,
  145 F. Supp. 2d 360 (S.D.N.Y. 2001) ........................................................................... 8

In re Ikon Office Solutions, Inc. Sec. Litig.,
  277 F.3d 658 (3d Cir. 2002) .......................................................................................... 4

In re Loral Space & Communications Ltd. Sec. Litig.,
  No. 01 Civ. 4388, 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) ................................. 11

Maywalt v. Parker & Parsley Petroleum Co.,
  808 F. Supp. 1037 (S.D.N.Y. 1992) ........................................................................... 15

In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003) ........................................................................ 13

Mortensen v. Americredit Corp.,
  123 F. Supp. 2d 1018 (N.D. Tex. 2000) ..................................................................... 10

In re MSC Indus. Direct Co. Sec. Litig.,
  283 F. Supp. 2d 838, (E.D.N.Y. 2003) ......................................................................... 9

OneBeacon Ins. Co. v. Empress Ambulance Serv., Inc.,
    No. 02 Civ. 2595, 2003 WL 1857622 (S.D.N.Y. March 28, 2003) ............................ 15

Podany v. Robertson Stephens, Inc.,
    No. 03 Civ. 3961, 2004 WL 307296 (S.D.N.Y. Feb. 17, 2001) .................................... 9

Rothman v. Gregor,
    220 F.3d 81 (2d Cir. 2000) ..................................................................................... 8, 16

In re Rural Cellular Corp. Sec. Litig.,
    No. Civ. 02-4893 PAMRLE, 2004 WL 67651 (D. Minn. Jan. 9, 2004) ....................... 9

Seeman v. Arthur Andersen & Co.,
    896 F. Supp. 250 (D. Conn. 1995) ............................................................................ 15

In re Segue Software, Inc. Sec. Litig.,
    106 F. Supp. 2d 161 (D. Mass. 2000) ....................................................................... 12

Shields v. Citytrust Bancorp, Inc.,
    25 F.3d 1124 (2d Cir. 1994) ............................................................................ 7, 9, 12

Stavros v. Exelon Corp.,
    266 F. Supp. 2d 833 (N.D. Ill. 2003) .................................................................. 11-12

Vladimir v. Deloitte & Touche LLP,
    No. 95 CIV. 10319, 1997 WL 151330 (S.D.N.Y. March 31, 1997) ..................... 10, 17

In re The Wellcare Mgmt Group, Inc. Sec. Litig.,
    964 F. Supp. 632 (N.D.N.Y. 1997) ........................................................................... 17

Wright v. Ernst & Young LLP,
    152 F.3d 169 (2d Cir. 1998) cert. denied 525 U.S. 1104 (1999) ......................... 23, 24

Zucker v. Sasaki,
    963 F. Supp. 301 (S.D.N.Y. 1997) .......................................................... 8, 12, 18, 21

## FEDERAL STATUTES

15 U.S.C. § 78u-4(b)(2) (2002) ........................................................................................ 7

15 U.S.C. § 78j(b) (2002) ................................................................................................. 7

## MISCELLANEOUS

Thomas C. Noddings et al., The International Handbook of Convertible
Securities, 311 (2d ed. 2001) ......................................................................................... 13

This memorandum of law is submitted by defendant KPMG Bermuda in support of its motion to dismiss plaintiffs' first amended class action complaint dated January 13, 2004 (the "Amended Complaint" or "A.C.").[1]

## PRELIMINARY STATEMENT

Plaintiffs' 119-page Amended Complaint is replete with inaccuracies, misstatements of fact and misstatements of the applicable accounting literature. But even assuming the truth of plaintiffs' allegations, plaintiffs' claim for securities fraud against KPMG Bermuda must be dismissed for failure to allege facts sufficient to demonstrate scienter or a material misstatement by KPMG Bermuda.

Plaintiffs have failed to identify any facts that demonstrate, as plaintiffs must, that KPMG Bermuda, an independent auditor, not only made material misrepresentations, but did so with "severe recklessness." They have pled no facts demonstrating such an "extreme departure from the standard of ordinary care" that KPMG Bermuda's audits of the financial statements of Annuity & Life Re (Holdings), Ltd. ("ANR") approximate an "actual intent to aid" in the alleged fraud by ANR. As a matter of law, plaintiffs cannot establish scienter against KPMG Bermuda based solely on ANR's restatements of its financial statements. As shown below, the accounting at issue involved matters of judgment, and there are no allegations demonstrating that ANR, let alone KPMG Bermuda, did not reach their judgments in good faith.

---

[1] The Amended Complaint was filed in the action captioned <u>Communications Workers of America v. KPMG LLP (U.S.) et al.</u>, No. 03 CV 1826 (GLG), which has been consolidated with the above-captioned action. Pursuant to the Notice of this Court dated January 30, 2004, this brief is filed with the earlier-filed caption.

Exhibit numbers referenced in this memorandum of law refer to exhibits attached to the Declaration of Paul A. Straus. The Amended Complaint is attached as Exhibit 1.

In addition, while plaintiffs claim that KPMG Bermuda disregarded "red flags," none of plaintiffs' allegations of "red flags" shows knowledge by KPMG Bermuda of any fraud or improper conduct on the part of ANR. Instead, these "red flags" all require the Court to assume that KPMG Bermuda <u>must</u> <u>have</u> <u>known</u> throughout the class period that management's judgments regarding estimates and the adequacy of ANR's own disclosures were not only wrong but lacked any reasonable basis at the time. They fall into three categories:

- Many of plaintiffs' alleged "red flags" are merely an attempt to plead fraud by hindsight. In one glaring example, plaintiffs' allegation that ANR failed to recognize embedded derivatives in the Transamerica contract is based on an interpretation of generally accepted accounting principles ("GAAP") that <u>had</u> <u>not</u> <u>even</u> <u>been</u> <u>announced</u> by the Financial Accounting Standards Board ("FASB") until <u>five</u> <u>months</u> <u>after</u> <u>the</u> <u>class</u> <u>period</u> <u>ended</u>.

- A second category of "red flags" consists of a laundry list of ways in which ANR's financial statements supposedly violated GAAP. But not one of plaintiffs' alleged GAAP violations withstands scrutiny. Plaintiffs' allegations do not demonstrate GAAP violations, are contradicted by ANR's public filings, and disregard well-settled principles of disclosure under the securities laws. Plaintiffs allege no facts showing how these supposed violations show that KPMG Bermuda's audit amounted to "no audit at all."

- Other supposed "red flags" rely on a supposed concealment of risks by ANR. But those allegations are contradicted by the risk disclosure in ANR's public filings. Plaintiffs allege no facts showing how the disclosures, which were in fact extensive, put KPMG on alleged notice of fraud, or support a "strong inference" that KPMG Bermuda was "severely reckless."

Plaintiffs also fail even to allege any material misstatement by KPMG Bermuda. The only allegedly false statement by KPMG Bermuda is the statement in each of its audit reports that its audits were conducted in accordance with generally accepted auditing standards ("GAAS") and that in its opinion, ANR's financial statements are presented in accordance with GAAP. Because plaintiffs do not adequately allege that ANR's financial statements violated GAAP, they also fail to plead a material misstatement by KPMG Bermuda. Plaintiffs certainly

3

cannot state a section 10(b) claim against KPMG Bermuda based on alleged misstatements by other parties, such as statements in ANR's 10-Qs, on conference calls by ANR's management, or in third-party analyst reports.

Because plaintiffs have failed to allege scienter or a material misstatement against KPMG Bermuda, the Amended Complaint must be dismissed.

## STATEMENT OF FACTS

### KPMG Bermuda's Role as Auditors of ANR's Financial Statements

This action is based on alleged misstatements and omissions in the financial statements and other documents of ANR, a Bermuda-based reinsurer.[2]  ANR conducts its reinsurance business by entering into contractual arrangements with primary insurers (known as ceding companies) in which it agrees to indemnify the ceding company for all or a portion of the risks associated with the underlying insurance policy, in exchange for a reinsurance premium. ANR's Form 10-K for year ended December 31, 1998 (Ex. 4) at 1.

The sole basis for liability alleged in the Amended Complaint against KPMG Bermuda is the fact that it served as independent auditor with respect to ANR's year-end financial statements for the years 1999, 2000 and 2001.  A.C. ¶ 7.  Auditors do not prepare the company's financial statements; that is the role of the company's management.  ANR's Form 10-K for year ended December 31, 1999 ("1999 10-K") (Ex. 5) at 19.  Rather, the role of an independent auditor is to plan and perform an audit to obtain "reasonable assurance" that the company's financial statements are free of material misstatement.  Id.  The purpose of the audit is to enable the auditor to express an opinion regarding whether the financial statements fairly

4

present the financial position of the company in accordance with GAAP. In re IKON Office

Solutions, Inc. Sec. Litig., 277 F.3d 658, 673 (3d Cir. 2002). The auditor certifies only that it

exercised appropriate levels of professional care and judgment. Id. An audit "does not guarantee

that a client's accounts and financial statements are correct." Id.

KPMG Bermuda audited ANR's financial statements for the years ended

December 31, 1999, 2000, 2001. A.C. ¶ 27. In connection with each year's audit, KPMG

Bermuda issued an audit report stating that it had audited ANR's financial statements

incorporated in ANR's 10-Ks in accordance with GAAS and that ANR's financial statements

were presented fairly in accordance with GAAP in all material respects. 1999 10-K (Ex. 5) at

19; ANR's Form 10-K for year ended December 31, 2000 ("2000 10-K") (Ex. 6) at 21; ANR's

Form 10-K for year ended December 31, 2001 ("2001 10-K") (Ex. 7) at 25. KPMG Bermuda's

reports specifically state:

> These consolidated financial statements and financial statement
> schedule are the responsibility of the Company's management.
> Our responsibility is to express an opinion on these consolidated
> financial statements and financial statement schedule based on our
> audits.

1999 10-K (Ex. 5) at 19; 2000 10-K (Ex. 6) at 21; 2001 10-K (Ex. 7) at 25.

**The Transamerica Contract**

In September 1998, ANR entered into a retrocessional agreement with

Transamerica Occidental Life Insurance Company, a major U.S. insurance company and a major

reinsurer to other insurance companies. A.C. ¶ 8. Retrocessional reinsurance differs from

ordinary reinsurance in that the company shifting its risk is itself a reinsurer, rather than a

---

[2] The facts set forth herein are taken from the Amended Complaint, documents filed with the
SEC and other documents of which this Court can take judicial notice and which may be

primary insurer. Id. As ANR disclosed, the products reinsured through the Transamerica contract were deferred annuity policies issued by IL Annuity, the primary insurer, that contained minimum interest guarantees and market value adjustment features. 1999 10-K (Ex. 5) at 14.

Consistent with GAAP accounting for agreements like the Transamerica contract, ANR established an account called "Deferred Acquisition Costs" or "DAC," which represented a portion of ANR's share of commissions paid to acquire the underlying annuities. 1999 10-K at 24. The amount of DAC reflected the present value of ANR's estimate of the future profits it expected to earn on the Transamerica contract. 1999 10-K at 24, 25. ANR periodically reviewed the assumptions underlying its estimate of future profits from the contract to determine the recoverability of DAC carried on its balance sheet in light of the contract's actual performance. 2001 10-K (Ex. 7) at 31. In the third quarter of 2001, ANR concluded that the amount it had originally estimated for DAC would not be fully recoverable and took a write-down to reflect the amount ANR believed would not be recovered based on its "revised view of future surrender rates on our largest annuity reinsurance contract due to its poor persistency." 2001 10-K (Ex. 7) at 14.

In the fourth quarter of 2001, ANR learned that due to policy surrenders and declining portfolio performance, IL Annuity had been required to make minimum interest guarantee payments to some policyholders. ANR had been seeking this information and had been assured by Transamerica as late as June 2001 that minimum interest guarantee payments had not been paid. ANR's Form 10-K/A-1 for year ended December 21, 2001 ("2001 10-K/A") (Ex. 8) at 10. When ANR learned that payments had in fact been made, it took a charge for minimum interest guarantees resulting from "the combined impact of excessive surrenders and

considered on this motion to dismiss.                6

poor investment performance" on the Transamerica contract. 2001 10-K (Ex. 7) at 14. At their

peak in 2001, minimum interest guarantee payments represented only 0.22% of ANR's total

interest sensitive contracts liability under the contract. 2001 10-K/A (Ex. 8) at 27. Payments in

the other quarters were even lower. Id. at 10.

As ANR's experience under the contract developed, the surrender rates continued

to climb and investment performance continued to decline. ANR concluded that more of DAC

would not be recoverable and took an additional write-down to DAC in the fourth quarter of

2001 and a further write-down of $27.4 million in the second quarter of 2002. ANR's Form 10-

K for year ended December 31, 2002 ("2002 10-K") (Ex. 10) at 9.

In the Spring of 2002, ANR concluded that its modified coinsurance contracts

contained embedded derivatives, and in July 2002, ANR announced that it would restate its

financials to reflect this new conclusion. A.C. ¶ 179.[3]

\*       \*       \*

The sole misstatement alleged against KPMG Bermuda is its audit report for each

of the years 1999, 2000 and 2001. A.C. ¶ 27. KPMG Bermuda is not alleged to have made any

statements in ANR's 10-Qs. It is not alleged to have made any statements in any press releases

---

[3] ANR also restated its financials to reflect the reclassification of its $19,500,000 reserve for
future policy benefits to a reduction in DAC, to reflect payments of minimum interest guarantees
in the quarters in which they occurred and to treat certain annuity agreements (other than the
Transamerica contract) as containing embedded derivatives. A.C. ¶ 195. These restatements
only reduced ANR's net income for 2000 from $39,987,195 to $39,101,736, a decrease in
income of 2.2%, increased ANR's net loss for 2001 from $38,709,686 to $40,581,431, an
increase in loss of 4.8%, and increased ANR's net income for the first quarter of 2002 from
$8,244,551 to $10,433,630, an increase in income of 21%. See 2001 10-K/A (Ex. 8) at 19;
ANR's Form 10-Q/A for the quarterly period ended March 31, 2002 ("2002 10-Q/A") (Ex. 9) at
10.

or analyst reports.  It is not alleged to have made any other statements on which investors supposedly relied.

## ARGUMENT

## POINT I

### PLAINTIFFS HAVE FAILED TO PLEAD
### SCIENTER AGAINST KPMG BERMUDA

Plaintiffs' only claim against KPMG Bermuda is an alleged violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder.  A.C. ¶ 274.  "To state a cause of action under § 10(b) and Rule 10b-5, the complaint must allege that, in offering to buy or sell securities, defendant, acting with scienter, made a false statement or omitted a material fact, so that plaintiff, acting in reliance on defendant's false statement or omission, suffered injury and damages."  Halperin v. eBanker USA.com, Inc., 295 F.3d 352, 357 (2d Cir. 2002).  Plaintiffs have utterly failed to plead the critical element of scienter against KPMG Bermuda.  The Amended Complaint must therefore be dismissed.

A.    **Plaintiffs Must Meet a Very High Burden to**
      **Plead Scienter with Respect to KPMG Bermuda.**

The Private Securities Litigation Reform Act ("PSLRA") imposes a number of stringent requirements for stating a securities fraud claim.  With respect to scienter, the PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2) (2002) (emphasis

added).[4]  Pleading scienter with respect to a company's independent auditor presents a

particularly high hurdle.  To plead scienter against an auditor based on alleged recklessness,

"such recklessness must be conduct that is highly unreasonable, representing an extreme

departure from the standards of ordinary care." Rothman v. Gregor, 220 F.3d 81, 98 (2d Cir.

2000) (citations omitted) (emphasis added) (dismissing claims against auditors).  In fact, the

auditor's state of mind "must approximate an actual intent to aid in the fraud being perpetrated

by the audited company."  Id. (emphasis added).  Accord Chill, 101 F.3d at 269; Hart v. Internet

Wire, Inc., 145 F. Supp. 2d 360, 366 (S.D.N.Y. 2001) (recklessness must be "equivalent to willful

fraud"; dismissing complaint) (emphasis added); D.E.& J. Ltd. P'ship v. Conaway, 284 F. Supp.

2d 719, 745 (E.D. Mich. 2003) ("[T]he standard for recklessness in securities fraud cases is more

onerous where, as here, the claim is brought against an outside auditor"; dismissing claims).  The

fact that a reasonable accountant would, might or should have handled the matter differently does

not amount to recklessness. Zucker v. Sasaki, 963 F. Supp. 301, 307 (S.D.N.Y. 1997) (granting

motion to dismiss).

       The Amended Complaint fails to meet this stringent pleading burden.  In essence,

plaintiffs attempt to plead scienter with respect to KPMG Bermuda by reciting a laundry list of

supposed "red flags" that KPMG Bermuda allegedly failed to investigate.  A.C. ¶ 250(d).  Many

of these "red flags" are simply allegations that an estimate or assumption regarding future

---

[4] Plaintiffs must allege either: (1) facts that show both a motive and opportunity to commit fraud
or (2) facts that constitute strong circumstantial evidence of conscious misbehavior or
recklessness.  See Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996) (upholding
dismissal); Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (affirming
dismissal).  The Amended Complaint does not even purport to allege scienter against KPMG
Bermuda based on a motive and opportunity or conscious misbehavior.  Plaintiffs therefore must
allege facts demonstrating a high degree of recklessness by KPMG Bermuda.  This they have
failed to do.

performance turned out to be incorrect.  Id.  Others are based on allegations that ANR's

disclosures were insufficient, which is contradicted by ANR's disclosures.  Id.  The remaining

"red flags" are strained attempts to allege GAAP violations where none exist.  These allegations

simply do not support an inference of scienter against KPMG Bermuda.

**B.      Plaintiffs' Attempt to Plead Fraud by Hindsight Must Be Rejected.**

Most of plaintiffs' supposed "red flags" are really an attempt to show "severe

recklessness" based on nothing more than KPMG Bermuda's inability to foretell the future.  The

Second Circuit has "firmly rejected this 'fraud by hindsight' approach."  Podany v. Robertson

Stephens, Inc., No. 03 Civ. 3961, 2004 WL 307296, at *8 (S.D.N.Y. Feb. 17, 2004) (granting

motion to dismiss); accord Shields, 25 F.3d at 1129.  Thus, the fact that ANR subsequently

restated its financials does not warrant an inference of scienter against KPMG Bermuda.  In re

MSC Indus. Direct Co. Sec. Litig., 283 F. Supp. 2d 838, 849 (E.D.N.Y. 2003) (restatement of

company's financials did not allege scienter against auditor); In re Rural Cellular Corp. Sec.

Litig., No. Civ. 02-4893 PAMRLE, 2004 WL 67651, at *5 (D. Minn. Jan. 9, 2004) (same).[5]  As

set forth below, plaintiffs' other allegations of fraud by hindsight must be rejected.

**1.      Plaintiffs' Allegations Regarding Embedded Derivatives Are
           Based on a New Interpretation of GAAP and Cannot Show Scienter.**

One of the most glaring examples of plaintiffs' attempt to plead fraud by hindsight

is the alleged "red flag" based on ANR's financial statements failure to account for "embedded

---

[5] Any inference of scienter against KPMG Bermuda based on ANR's restatements is particularly
unwarranted here, where the effect of the restatements on net income was relatively small.
ANR's entire restatement for the year 2001 amounts to only a change in net income of 4.8%, and
for all of 2000, net income changed by 2.2%.  ANR 2001 10-K/A-1 at 67.  For the first quarter of
2002, net income increased by 26%.  ANR 2002 10-Q/A-1 at 9.  E.g., In re MSC Indus. Direct
Co. Sec. Litig., 283 F. Supp. 2d at 849 (restatement that reduced net income by 6% did not allege
scienter).

derivatives" in the Transamerica contract.  A.C. ¶ 250(d)(9).  This allegation is based on an

interpretation of Statement of Financial Accounting Standards ("FAS") 133 that the FASB <u>did</u>

<u>not</u> <u>even</u> <u>announce</u> until <u>after</u> the class period ended.  The first time the FASB took the position

that FAS 133 applied to modified coinsurance agreements such as the Transamerica contract was

in Statement 133 Implementation Issue No. B36, <u>which</u> <u>was</u> <u>not</u> <u>even</u> <u>released</u> <u>by</u> <u>the</u> <u>FASB</u> <u>until</u>

<u>April</u> <u>2003</u>, <u>nearly</u> <u>five</u> <u>months</u> <u>after</u> <u>the</u> <u>class</u> <u>period</u> <u>ended</u>.  FASB Statement 133

Implementation Issue No. B36 (Ex. 15) at 1.  The effective date of the new guidance was for

quarterly periods beginning after September 15, 2003.[6]  <u>Id.</u> at 4.  Plaintiffs cannot establish

scienter by KPMG Bermuda based on an alleged failure to follow an interpretation that had not

even been announced during the relevant period.  To the contrary, the very fact that the FASB

needed to release a statement clarifying the implementation of FAS 133 to such reinsurance

arrangements -- which it did not do until <u>after</u> the end of the class period -- itself defeats

plaintiffs' attempt to plead scienter, because it demonstrates the judgment involved in applying

the standard.  <u>E.g.</u>, <u>Mortensen v. Americredit Corp.</u>, 123 F. Supp. 2d 1018, 1027 (N.D. Tex.

2000) (plaintiffs' allegation of "knowing" violation of GAAP failed to allege scienter, since

---

[6] FAS 133 did not even apply to the Transamerica contract, which was entered into before that provision's transition date.  Under FAS 133, entities are entitled to choose a transition date of January 1, 1998 or January 1, 1999.  FAS 133 (Ex. 16) ¶ 50, as amended by FAS 137 (Ex. 17) ¶ 3(b).  FAS 133 only applies to contracts issued, acquired or substantially modified after the transition date.  <u>Id.</u>  Since ANR chose January 1, 1999 as its transition date, and the Transamerica contract was entered into in September 1998, FAS 133 did not apply to that contract.  <u>See</u> 2001 10-K/A (Ex. 8) at 14, 24; 2002 10-K/A (Ex. 11) at 16, 29.

subsequent clarification of GAAP provision at issue highlighted need to apply judgment in applying standard).[7]

### 2. Plaintiffs Cannot Establish Scienter Against KPMG Bermuda Based on the Timing or Size of ANR's DAC Write-Down.

Most of plaintiffs' "red flags" simply allege that the estimates and assumptions employed with respect to the Transamerica contract turned out, with hindsight, to be incorrect. For instance, plaintiffs allege that ANR's financials violated Accounting Principles Board ("APB") Opinion No. 28 ¶ 17 because, they claim, ANR did not write down that portion of DAC that was not recoverable. A.C. ¶¶ 224-25, 250(d)(1)-(3). Since plaintiffs admit that ANR took just such a write-down in the third quarter of 2001 (A.C. ¶ 140), their only complaint is that ANR's write-down should have been taken <u>sooner</u> and in a greater amount. Such an allegation is legally insufficient to plead scienter as to KPMG Bermuda.

A plaintiff cannot plead scienter simply by alleging that a company should have taken write-offs sooner than it did, because such an action is necessarily a matter of judgment. <u>Zucker</u>, 963 F. Supp. at 307 (allegation that accounts receivable should have been written down sooner failed to establish scienter against auditor; dismissing claim). <u>Accord</u> <u>In re Loral Space & Communications Ltd. Sec. Litig.</u>, No. 01 Civ. 4388, 2004 WL 376442, at *17 (S.D.N.Y. Feb. 27, 2004) ("<u>When</u> the impairments became so severe as to require specific accounting charges, and whether the requirements of the accounting principles were satisfied, necessarily involved issues of judgment"; granting motion to dismiss because allegation that company failed to recognize

---

[7] Courts do not hesitate to review and rely on statements of GAAP on a motion to dismiss. <u>Vladimir v. Deloitte & Touche LLP</u>, No. 95 Civ. 10319, 1997 WL 151330, at *4-6 (S.D.N.Y. March 31, 1997) (granting motion to dismiss); <u>In re Capstead Mortgage Sec. Litig.</u>, 258 F. Supp. 2d 533, 551-54 (N.D. Tex. 2003) (same); <u>In re The First Union Corp. Sec. Litig.</u>, 128 F. Supp. 2d

impairment losses did not establish scienter) (emphasis added) (citing <u>Thor Power Tool Co. v.</u> <u>Comm'r Internal Revenue</u>, 439 U.S. 522, 544 (1979) ("Generally accepted accounting principles . . . tolerate a range of reasonable treatments, leaving the choice among alternatives to management.")); <u>Stavros v. Exelon Corp.</u>, 266 F. Supp. 2d 833, 852 (N.D. Ill. 2003) (allegation that company should have recorded an impairment in value eight months earlier did not establish scienter; dismissing complaint).

In short, the decision to write down DAC requires judgment and is ultimately an opinion that depended on ANR's projection of <u>future</u> performance. Plaintiffs have alleged absolutely no facts from which this Court could infer that failing to take a write-down sooner in this case demonstrates scienter of KPMG Bermuda. <u>E.g.</u>, <u>Zucker</u>, 963 F. Supp. 2d at 307.

Plaintiffs also fail to plead scienter against KPMG Bermuda based on their allegation that ANR's third-quarter 2001 write-down to DAC was not <u>large</u> enough. A.C. ¶ 150. Like the <u>timing</u> of a write-down, the <u>size</u> of a write-down is based on forward-looking assumptions and estimates, which are "particularly untenable bases for fraud cases." <u>First</u> <u>Union</u>, 128 F. Supp. 2d at 894. <u>Accord</u> <u>Shields</u>, 25 F.3d at 1129; <u>In re Segue Software, Inc. Sec.</u> <u>Litig.</u>, 106 F. Supp. 2d 161, 170 (D. Mass. 2000) (allegation that company underestimated product returns and took an insufficient allowance for income reversals did not establish scienter; dismissing complaint).[8]

---

871, 894 n.22 (W.D.N.C. 2001) (same); <u>Mortensen v. Americredit Corp.</u>, 123 F. Supp. 2d 1018, 1026-27 (N.D. Tex. 2000) (same).

[8] In fact, the uncertain nature of the write-down was disclosed to investors at the time it was taken:

> While management has made what it believes to be adequate
> provision for future costs based upon reasonable assumptions
> about future investment performance and surrenders, **the provision**

The sole "fact" plaintiffs rely on to show scienter with respect to the third-quarter 2001 write-down is their allegation that ANR projected 10% returns on underlying investments in future years. A.C. ¶ 150. First, this allegation is contradicted by plaintiffs' own Amended Complaint. While ANR projected 10% with respect to the single year 2002, it assumed a lower, 8% return for future years. A.C. ¶ 184. In any event, plaintiffs fail to allege how KPMG Bermuda was reckless in its audit with respect to either projection made by ANR in 2001 for the performance of these long-term annuities. They do not allege, for example, any comparable performance data that KPMG Bermuda supposedly disregarded.[9] Therefore, this allegation fails to allege scienter against KPMG Bermuda.

---

       **is an estimate. Actual amounts paid may be significantly**
       **higher or lower than the current reserve.**

2001 10-K (Ex. 7) at 14 (emphasis added). ANR repeated this disclosure in the Notes to the financial statements. 2001 10-K (Ex. 7) at 39.

[9] To the contrary, in light of the long-term historical performance of the convertible bond market available at the time, a projection of 8 or 10% was conservative. The average annual investment return for the Morgan Stanley Dean Witter All Convertibles Index for the 9-year period ending 1999 was 18.5%. Thomas C. Noddings et al., The International Handbook of Convertible Securities (2d ed. 2001) (Ex. 19) at 325. Such historical performance negates any inference that ANR's assumptions lacked a reasonable basis. The Court can take judicial notice of this historical performance and consider it on this motion to dismiss. E.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 254 (S.D.N.Y. 2003) (taking judicial notice of stock price). In addition, the fact that the investments may have performed lower over the periods leading up to the write-down is of little weight in assessing the performance over the very long term. Indeed, it would have been unreasonable to assume that investment performance for the next 30 years would mimic the performance over the prior year and a half. E.g., In re Duane Reade Inc. Sec. Litig., No. 02 Civ. 6478, 2003 WL 22801416, at *10 (S.D.N.Y. Nov. 25, 2003) ("Plaintiffs' argument that because sales were down at the end of the first quarter, the impending final results for the second quarter must have been apparent throughout the quarter . . . mimics the typical type of 'fraud by hindsight' theory that courts have been unwilling to entertain"; dismissing claims).

### 3.    Plaintiffs' Allegations Regarding Minimum Interest Guarantees Fail to Plead Scienter.

Plaintiffs also attempt to plead scienter against KPMG Bermuda based on ANR's failure to expense the payment of minimum interest guarantees until the fourth quarter of 2001, but, again, their own allegations defeat an inference of scienter.  A.C. ¶ 250(d)(5), (6).  Plaintiffs admit that KPMG Bermuda was not even aware the payments had been made until the fourth quarter of 2001.  A.C. ¶¶ 151, 202.  Plaintiffs obviously cannot plead that KPMG Bermuda committed intentional fraud with respect to a fact of which it was unaware.  Instead, they attempt to plead scienter by alleging that KPMG Bermuda was reckless in failing to obtain information regarding minimum interest payments.  While plaintiffs allege this information was "critical to KPMG's audit," A.C. ¶ 242(a), they utterly fail to allege why that was so.  Specifically, plaintiffs do not allege how not having this one piece of information, even if true, rendered KPMG Bermuda's audit "no audit at all" or otherwise demonstrated recklessness.

Furthermore, plaintiffs allege no reason that KPMG Bermuda had to believe at the outset of the Transamerica contract that payment of minimum interest guarantees was more than a remote possibility.  Assuming arguendo that there was some risk that surrender rates would be much higher than anticipated and that investment performance would be much lower, plaintiffs have alleged no facts showing that the risk of these events occurring was significant, or would have made a difference to the conclusions contained in KPMG Bermuda's audit reports.

Accordingly, plaintiffs' alleged "red flags" regarding the payment of minimum interest guarantees cannot support an inference of scienter against KPMG Bermuda.

15

**C.    Plaintiffs Cannot Show Scienter Against KPMG
        Bermuda Based on ANR's Alleged Failure to Disclose Risks.**

Plaintiffs assert that ANR's alleged concealment of the risk that the underlying

investments would not earn enough for ANR to make a profit on the Transamerica contract was a

"red flag" which KPMG Bermuda should have investigated.  A.C. ¶¶ 55-56, 63, 169(a),

250(d)(10).  Plaintiffs do not allege how this supposedly inadequate disclosure by ANR

constituted a "red flag."  If plaintiffs are alleging that the disclosure was so inadequate that

KPMG Bermuda somehow must have known that ANR was committing fraud, nothing on the

face of the disclosure permits such an inference.  To the contrary, ANR disclosed the very risk

that plaintiffs allege was concealed:

> The profitability of the deferred annuity reinsurance product line
> depends on earning a targeted spread between the interest rate
> earned on the supporting asset base and the interest rate credited to
> the underlying annuity liability.  This spread is interest rate
> sensitive, as fluctuations in the general level of interest rates from
> period to period may cause fluctuations in the results of operations.

1999 10-K (Ex. 5) at 11; see also 1999 10-K (Ex. 5) at 15. [10]  ANR further disclosed that the

development of policy reserves for the Company's products required management to make

"estimates and assumptions regarding mortality, lapse, expense and investment experience,"

which are "primarily based on historical experience and information provided by ceding

---

[10] In determining whether plaintiffs have stated a claim, the Court need not accept allegations
contradicted by ANR's public filings.  Baraschi v. Silverwear, Inc., No. 01 Civ. 11263, 2002 WL
31867730, at *2 (S.D.N.Y. Dec. 23, 2002); Maywalt v. Parker & Parsley Petroleum Co., 808 F.
Supp. 1037, 1046 (S.D.N.Y. 1992).  Rather, "to the extent that the [public filing] contradicts the
allegations in the complaint, the [public filing] controls."  Seeman v. Arthur Andersen & Co., 896
F. Supp. 250, 253 (D. Conn. 1995) (citations omitted).  The Court may consider on this motion to
dismiss all documents and materials of which it might take judicial notice pursuant to Federal
Rule of Evidence 201, such as documents filed with the SEC.  OneBeacon Ins. Co. v. Empress
Ambulance Serv., Inc., No. 02 Civ. 2595, 2003 WL 1857622, at *2 (S.D.N.Y. 2003) (citing
Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991)).

companies." 1999 10-K (Ex. 5) at 25.  ANR also disclosed that "[a]ctual results could differ

materially from those estimates," and that, "where circumstances warrant," it would revise its

assumptions and the related reserve estimates based on actual experience.  Id. (emphasis added).

Plaintiffs have alleged no facts to show that these disclosures -- which reveal the same risk

plaintiffs allege was concealed -- could give rise to a "strong inference" of scienter on the part of

KPMG Bermuda.

       Similarly, plaintiffs fail to allege scienter against KPMG Bermuda based on what

they claim is ANR's concealment of its exposure to market and interest rate risk.  A.C. ¶¶ 79(d),

80, 250(d)(8).  These allegations too are contradicted by disclosures in ANR's 1999 Form 10-K.

Regarding market risk, ANR specifically disclosed on page 4 of that report that:  "Under the

terms of the reinsurance agreements, the investment income that accrues to us is dependent on

the performance of the underlying portfolios."  1999 10-K (Ex. 5) at 4 (emphasis added).  ANR

also disclosed that "[t]he products reinsured under these [annuity reinsurance] agreements are

general account deferred annuity policies containing minimum interest guarantees and market

value adjustment features."  1999 10-K (Ex. 5) at 14 (emphasis added).  ANR also disclosed that

the assets underlying these accounts included fixed income and convertible fixed income

securities.  Id.

       ANR's disclosures were at least as extensive with respect to interest rate risk.  In

addition to the statement above regarding the profitability on the Transamerica contract, ANR's

10-Ks advised investors that the profitability of the annuity contracts "depends on earning a

targeted spread between the interest rate earned on the asset base and the interest rate credited to

the underlying annuity," which spread is "interest rate sensitive."  1999 10-K (Ex. 5) at 11.

Plaintiffs will doubtless urge that these disclosures should have been more detailed and more extensive. But plaintiffs cannot show that these disclosures by ANR were so inadequate that they support the conclusion that KPMG Bermuda's state of mind approximated "an actual intent to aid" in the purported fraud. Rothman, 220 F.3d at 98.

### D.    Plaintiffs' Alleged Violations of GAAP Fail to Establish Scienter.

Plaintiffs' laundry list of supposed "red flags" includes several allegations that ANR's financial statements violated GAAP. Plaintiffs cannot allege scienter against KPMG Bermuda merely by alleging violations of GAAP by ANR. Rothman, 220 F.3d at 98 (2d Cir. 2000) (dismissing claims against auditors); Chill, 101 F.3d at 270 (allegations of violations of GAAP provisions without corresponding fraudulent intent held not sufficient to state securities fraud claim); In re The Wellcare Mgmt. Group, Inc. Sec. Litig., 964 F. Supp. 632, 642 (S.D.N.Y. March 31, 1997) (granting auditors' motion to dismiss); Vladimir, 1997 WL 151330, at *3 (same). Moreover, the Amended Complaint does not even adequately allege how the financial statements violated GAAP, much less how the violation, even if properly alleged, could establish the requisite "strong inference" of recklessness by KPMG Bermuda.

### 1.    Plaintiffs' Allegation Regarding a Liability for Future Minimum Interest Guarantee Payments Selectively Quotes FAS 97 and Cannot Support an Inference of Scienter Against KPMG Bermuda.

Plaintiffs' allegation that ANR was required to establish a liability for future anticipated payments of minimum interest guarantees on surrender is based on a selective quotation of FAS 97 that cannot establish scienter against KPMG Bermuda. Plaintiffs allege that "if a contract is treated as an investment-type contract," then "the cash value, measured at the date of the financial statements, that could be realized by a policyholder upon surrender shall represent [an] element of liability . . . ." A.C. ¶ 231 (purporting to quote FAS 97 ¶ 18). This is

18

flat wrong. Plaintiffs have distorted the language of FAS 97 (paragraph 18) to disguise the fact

that it does not apply to investment contracts at all, but to universal life contracts. The sentence

plaintiffs purport to quote reads in full:

> In the absence of a stated account balance or similar explicit or
> implicit contract value, the cash value, measured at the date of the
> financial statements, that could be realized by a policyholder upon
> surrender shall represent **the** element of liability **described in
> paragraph 17(a).**

FAS 97 (Ex. 12) ¶ 18 (emphasis added). Paragraph 17 explicitly applies only to <u>universal life</u>

<u>contracts</u>:

> 17.    The liability for policy benefits for **universal life-type
> contracts** shall be equal to the sum of . . .

FAS 97 (Ex. 12) ¶ 17 (emphasis added). The accounting treatment for investment contracts, such

as the Transamerica contract, appears two paragraphs earlier, under the boldface heading

"**Investment Contracts.**" FAS 97 (Ex. 12) ¶ 15. It makes no mention of a liability for cash

value that could be realized upon surrender.[11]

Plaintiffs' reliance on paragraph 18 of FAS 97 is wrong for a second reason. By

its own terms, paragraph 18 applies only "in the absence of a stated account balance or similar

explicit or implicit contract value." The Transamerica <u>contract</u> <u>included</u> <u>a</u> <u>stated</u> <u>account</u> <u>value,</u>

which was disclosed in ANR's financial statements as "Interest Sensitive Contracts Liability."

1999 10-K (Ex. 5) at 14, 33.

Plaintiffs cannot plead scienter based on their own misreading of FAS 97. Even if

plaintiffs were correct, at most they would have alleged a difference in judgment regarding the

application of GAAP. This is not sufficient to plead scienter against KPMG Bermuda. <u>E.g.,</u>

Zucker, 963 F. Supp. at 307 (fact that a reasonable accountant would, might or should have

handled the matter differently does not amount to recklessness).

> **2.     Plaintiffs' Allegation That ANR's Financial Statements
> Violated GAAP By Failing to Identify and Describe ANR's
> Accounting Policies Is Contradicted by ANR's SEC Filings and
> Cannot Support an Inference of Scienter Against KPMG Bermuda.**

Plaintiffs allege that ANR's financial statements violated GAAP by failing to

identify and describe ANR's accounting policies, and assert that ANR included only a single

brief paragraph regarding its accounting methods for the Transamerica investments and

policyholder liabilities.  A.C. ¶ 220.  This allegation is not even correct.  It ignores the

descriptions in ANR's 10-Ks of its accounting for the Transamerica contract.  ANR's SEC filings

disclosed exactly how the Transamerica contract was treated, including how ANR accounted for

policy surrenders:

> These reinsurance agreements are accounted for as investment type
> contracts because they do not bear significant insurance risk.
> Accordingly, premiums are reported as a deposit liability on the
> balance sheet and benefits such as policy surrenders are reported as
> withdrawals from the liability account.

1999 10-K (Ex. 5) at 15.  More specifically, under the heading "SUMMARY OF SIGNIFICANT

ACCOUNTING POLICIES," ANR described its accounting for DAC, the very account that is

the subject of much of the Amended Complaint.  1999 10-K (Ex. 5) at 24, 25.  The financial

statements also described the Funds Withheld at Interest and Interest Sensitive Contracts

Liabilities accounts which, along with DAC, are the most significant accounts reflecting the

Transamerica contract.  1999 10-K (Ex. 5) at 33.  The 10-K disclosed the nature of these

accounts, how they were calculated, and the fact that the underlying policies contained minimum

---

[11] Instead, the proper way to account for the risk of future surrenders was by taking them into

interest guarantees. 1999 10-K (Ex. 5) at 14. [12] The "SUMMARY OF SIGNIFICANT

ACCOUNTING POLICIES" also described the risks of ANR's need to rely on the ceding

company for information, as well as the risks that its forward-looking estimates and assumptions

regarding lapses (including surrenders) and investment performance might be wrong -- exactly

the risks that plaintiffs complain were not disclosed. 1999 10-K (Ex. 5) at 25.

     Given the extent of these disclosures, plaintiffs' allegations surely do not establish

a "strong inference" that KPMG Bermuda somehow must have been aware of an alleged fraud.

    **3.**    **Plaintiffs Fail to Allege Facts Showing That GAAP Required
Disclosure of the Composition of Funds Withheld at Interest and
Therefore Do Not Establish Scienter Against KPMG Bermuda.**

     Plaintiffs also allege that ANR's financial statements violated GAAP by not

disclosing the composition and valuation of the various investments supporting ANR's asset

called "Funds Withheld at Interest." A.C. ¶¶ 218(b), 238-41, 250(d)(10). This supposed GAAP

violation, plaintiffs urge, is another "red flag" that shows scienter of KPMG Bermuda. Again,

plaintiffs' allegation is unfounded.

     FAS 115, "Accounting for Certain Investments in Debt and Equity Securities,"

requires the disclosure of certain information with respect to investments held by the company.

FAS 115 (Ex. 13) ¶¶ 3, 19-22. ANR disclosed such information with respect to all investments it

held. See, e.g., 1999 10-K (Ex. 5) at 27-28. But the Funds Withheld at Interest asset does not

---

account in evaluating the recoverability of the DAC asset. See AAG-LHI (Ex. 21) ¶ 10.48.
[12] "The products reinsured under these agreements are general account deferred annuity policies
**containing minimum interest guarantees and market value adjustment features**. . . . Funds
Withheld at Interest is equivalent to the statutory reserve held by the ceding company. This
reserve is calculated in accordance with the actuarial valuation method known as the
Commissioners Annuity Reserve Valuation Method. Under the reinsurance agreements the
ceding company is obligated to credit interest on the outstanding amounts of these funds based

reflect investments held by ANR. Rather, this account is a <u>receivable</u> from Transamerica, equivalent to the amount of the statutory reserve held by Transamerica (and ultimately, IL Annuity), the amount of which is determined in accordance with an actuarial valuation method known as the Commissioners Reserve Annuity Valuation Method. 1999 10-K (Ex. 5) at 14. The FASB specifically chose to exclude "receivables," such as the Funds Withheld at Interest, from the scope of FAS 115.[13] Since Funds Withheld at Interest was a receivable, there was no violation of FAS 115 and no "red flag." Again, at most plaintiffs have alleged a difference in judgment regarding the application of GAAP, which, as a matter of law, fails to establish scienter. <u>Zucker</u>, 963 F. Supp. at 307.

**4.     Plaintiffs Fail to Allege Facts Showing that GAAP
Required Segmented Reporting by ANR and Therefore
<u>Do Not Establish Scienter Against KPMG Bermuda.</u>**

Plaintiffs also claim a "red flag" based on their allegation that ANR's financial statements violated FAS 131 by not reporting the annuity and life business by segment. A.C. ¶¶ 169(e), 218(c), 235-37, 250(d)(10). Again, plaintiffs have overreached. FAS 131 only requires separate reporting for a company's "operating segments." FAS 131 (Ex. 14) ¶ 16. An "operating segment" is defined as a component of an enterprise "[w]hose operating results are regularly reviewed by the enterprise's chief operating decision maker to make decisions about resources to be allocated to the segment and assess its performance," in addition to meeting other criteria. FAS 131 (Ex. 14) ¶ 10(b).

---

on the return of the underlying assets held by the ceding companies in segmented portfolios." 1999 10-K (Ex. 5) at 14 (emphasis added).
[13] "In deciding which assets to include in the scope of the Statement, the Board **excluded receivables** that are not securities because of concerns about the effort and cost required in some cases to make a reasonable estimate of fair value." FAS 115 ¶ 45 (emphasis added).

There is no well-pleaded allegation in the Amended Complaint that ANR viewed

its life and annuity businesses as separate segments or that those businesses were reported

separately within the company at any time prior to April 2002, when ANR announced it would

begin treating them as segments.[14]  A.C. ¶ 171.  Therefore, no "strong inference" of scienter

against KPMG Bermuda can be based on this allegation.[15]

## POINT II

### PLAINTIFFS HAVE NOT EVEN ALLEGED A MATERIALLY MISLEADING STATEMENT OR OMISSION BY KPMG BERMUDA

The only statement by KPMG Bermuda alleged in the Amended Complaint is the

opinion expressed in KPMG Bermuda's audit reports that KPMG Bermuda conducted its audits

of ANR's financial statements in accordance with GAAS and that, in its opinion, the financial

statements presented fairly, in all material respects, the financial position of ANR in accordance

with GAAP.  A.C. ¶¶ 78, 116, 168.  Plaintiffs attempt to show that these statements were false

because, plaintiffs allege, ANR's financial statements violated GAAP.  As argued in Point I,

however, plaintiffs' allegations of GAAP violations are based on GAAP interpretations that did

---

[14] Plaintiffs make the conclusory allegation that because ANR began to review its business in segments in 2002, it must always have done so.  Plaintiffs allege no facts in support of this unwarranted inference.

[15] Plaintiffs' remaining "red flag" allegations also fail to show scienter.  For instance, plaintiffs cite as a "red flag" the jump in yield earned on the portfolios underlying the Funds Withheld at Interest account in the fourth quarter of 2000.  A.C. ¶ 250(d)(4).  Plaintiffs do not allege what this supposed "red flag" should have led KPMG Bermuda to do or how KPMG Bermuda failed to take this into account.  Similarly, while plaintiffs make the conclusory allegation that ANR failed to recognize as an expense the 2.75% fees charged by IL Annuity (A.C. ¶ 250(d)(7)), plaintiffs do not allege with any particularity that ANR's financial statements failed to reflect the correct amount.  Plaintiff's lack of particularity makes it impossible to respond to this allegation.

not exist during the class period, or are contradicted by ANR's public disclosures, or otherwise fail to demonstrate a violation. For example:

- Plaintiffs' allegation that ANR failed to recognize embedded derivatives in the Transamerica contract (A.C. ¶¶ 79(g), 84) is based on an interpretation of GAAP that did not even appear in the applicable accounting literature during the class period. Indeed, the interpretation urged by plaintiffs was not even announced until five months after the class period ended. See section I.B.1 above.

- Plaintiffs' allegation that the financial statements were required to establish a liability for anticipated payments of minimum interest guarantees (A.C. ¶ 231) is based on plaintiffs' own misstatement of FAS 97. See section I.D.2 above.

- Plaintiffs' allegation that ANR's financial statements violated GAAP by failing to identify and describe ANR's accounting policies (A.C. ¶ 220) is contradicted by the extensive disclosure in ANR's 10-Ks regarding the treatment of the Transamerica contract. See section I.D.1 above.

- Plaintiffs' allegation that ANR did not write down the non-recoverable portion of DAC (A.C. ¶¶ 224-25) is really an allegation that plaintiffs should have written DAC down earlier and to a greater extent. Plaintiffs cannot allege fraud by claiming a write-down should have been taken sooner than it was, and plaintiffs have alleged no facts to show that KPMG Bermuda's opinion lacked a reasonable basis when made. See section I.B.2 above.

Since none of plaintiffs' alleged violations of GAAP are adequately pled, plaintiffs have not even alleged a material misstatement by KPMG Bermuda.

Plaintiffs also cannot state a claim against KPMG Bermuda based on statements by other parties, including alleged misstatements and omissions in ANR's Form 10-Qs (which did not contain any report of KPMG Bermuda), statements by ANR's management on conference calls or in press releases, and even statements in third-party analyst reports. Because none of these statements was made by or publicly attributed to KPMG Bermuda, none can be the basis of a claim against it. To state a claim against a party, plaintiffs must allege a materially misleading statement or omission made by that party. Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998) (affirming dismissal), cert. denied 525 U.S. 1104 (1999); Halperin, 295

24

F.3d at 357.  In <u>Central Bank of Denver v. First Interstate Bank of Denver</u>, the Supreme Court

refused to hold defendant liable where plaintiff only alleged that defendant assisted others in

making purported misstatements.  511 U.S. 164 (1994).  The Court held that Section 10(b)

explicitly prohibited "only the <u>making</u> of a material misstatement (or omission) or the

commission of a manipulative act."  <u>Id.</u> at 177 (emphasis added).  In light of <u>Central Bank</u>, the

Second Circuit has repeatedly held that a purportedly false statement "must be attributed to that

specific actor at the time of public dissemination" to establish Section 10(b) liability, and "a

secondary actor cannot incur primary liability under the Act for a statement not attributed to that

actor at the time of dissemination."  <u>Wright</u>, 152 F.3d at 175.  Consistent with <u>Central Bank</u>, the

Second Circuit has repeatedly held that "[a]nything short of such conduct is merely aiding and

abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under

Section 10(b)."  <u>Id.</u>

       Because none of these statements was allegedly made by KPMG Bermuda, none

can be the basis of a claim against KPMG Bermuda.

**CONCLUSION**

WHEREFORE, in view of all the foregoing, KPMG Bermuda respectfully requests that the First Amended Class Action Complaint be dismissed in its entirety with prejudice, together with such other and further relief as the Court deems proper.

**DEFENDANT**
**KPMG BERMUDA**

By: _____

Frederick S. Gold
Fed. Bar. No.: ct 03560
Morgan P. Rueckert
Fed. Bar. No.: ct 19838
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel. (203) 324-8100
Fax. (203) 324-8199


Michael J. Malone
Paul A. Straus
Lisa Albert
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel. (212) 556-2100
Fax. (212) 556-2222

*Attorneys for KPMG BERMUDA*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent via U.S. Mail, first-class,

postage pre-paid on March 15, 2004, to the following counsel:


Andrew M. Schatz
Jeffrey S. Nobel
Patrick A. Klingman
SCHATZ & NOBEL
330 Main Street
Hartford, CT 06106-1817

Beth M. Kaswan
Ann Lipton
Peter E. Seidman
MILBERG WEISS BERSHAD HYNES &
LERACH
One Pennsylvania Plaza
New York, NY 10119


James E. Miller
SHEPHERD FINKELMAN MILLER &
SHAH, LLC
One Lewis Street
Hartford, CT 06103

Marc Edelson
HOFFMAN & EDELSON
45 West Court St.
Doylestown, PA 18901


Elias A. Alexiades
ATTORNEY ELIAS A. ALEXIADES
215 Church Street
New Haven, CT 06525

David R. Scott
Erin Green Comite
Karen M. Lesser
Scott + Scott, LLC
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415


Michael Malone
Paul Straus
KING & SPALDING
1185 Avenue of the Americas
New York, NY 10036-4003

Kelly M. Hnatt
Joseph T. Baio
Michelle J. Nadel
WILKIE, FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099

James H. Bicks
WIGGIN & DANA LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06901

John W. Cannavino
Karen L. Allison
CUMMINGS & LOCKWOOD, LLC
Four Stamford Plaza
107 Elm Street
Stamford, CT 06902

James F. Stapleton
Kenneth W. Ritt
Terence J. Gallagher, III.
DAY, BERRY & HOWARD, LLP
One Canterury Green
Stamford, CT 06901

Thorn Rosenthal
Tammy Roy
CAHILL GORDON & REINDEL, LLP
80 Pine Street
New York, NY 10005-1702

Peter S. Olson
James T. Shearin
PULLMAN & COMLEY, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

Steven D. Ecker
COWDERY, ECKER & MURPHY, LLC
750 Main Street
Hartford, CT 06103

Lawrence W. Andrea
LAW OFFICES OF LAWRENCE W.
ANDREA
57 North Street, Suite 313
Danbury, Ct 06810

Gary R. Battistoni
Stuart A. Law
Edward M. Posner
DRINKER BIDDLE & REATH
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

R. Nicholas Gimbel
McCARTER & ENGLISH, LLP
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA 19103

Francis S. Chlapowski
Randi B. Pincus
MORGAN, LEWIS & BOCKIUS, LLP
101 Park Avenue, 44th Floor
New York, NY 10178

John R. Horvack, Jr.                    John J. Robinson
James K. Robertson, Jr.                 McCARTER & ENGLISH, LLP
CARMODY & TORRANCE                      City Place I
50 Leavenworth Street                   185 Asylum Street, 36th Floor
P.O. Box 1110                           Hartford, CT  06103
Waterbury, CT 06721-1110


_____
                              Morgan P. Rueckert

107831