UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHERRY SCHNALL, Individually and | : | |
| on Behalf of All Others Similarly Situated, | : | CONSOLIDATED |
| | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| v. | : | 3:02-cv-2133(GLG) |
| | : | |
| ANNUITY AND LIFE RE (HOLDINGS), | : | |
| LTD., XL CAPITAL LTD., LAWRENCE | : | |
| S. DOYLE, FREDERICK S. HAMMER, | : | |
| JOHN F. BURKE, WILLIAM W. ATKIN, | : | |
| BRIAN O'HARA, MICHAEL P. | : | |
| ESPOSITO, JR., KPMG LLP | : | |
| (United States), and KPMG in Bermuda, | : | |
| | : | |
| Defendants. | : | APRIL 8, 2004 |

## DEFENDANTS XL CAPITAL, LTD., BRIAN O'HARA, AND MICHAEL P. ESPOSITO JR.'S ANSWER AND CROSS-CLAIM TO THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Defendants XL Capital, Ltd. ("XL Capital"), Michael P. Esposito Jr.

("Esposito"), and Brian O'Hara ("O'Hara," and collectively the "XL Capital Defendants"),

for their Answer and Defenses to Plaintiffs' Consolidated Amended Class Action Complaint

(the "Amended Complaint" or "AC"), allege through their undersigned counsel as follows:

Plaintiffs' Heading:
"SUMMARY OF COMPLAINT"

1.    Admit that plaintiffs purport to bring this action as a class action on

behalf of the class as defined, but deny the remaining allegations.

2.    Admit the allegations of the first, second and fourth sentences (except

deny that ANR and its subsidiaries should be referred to collectively as ANR for all

purposes), and further admit, that, for an annuity reinsurance contract, ANR normally expects over the life of the contract to make its profits primarily by earning "spreads" between amounts due policyholders and the earnings derived from investment of policyholder premiums, but deny the remaining allegations.

3.      Admit the allegations of the first, second and third sentences. The XL Capital Defendants also admit that ANR's public filings stated: that ANR conducted loss recognition testing at the end of each accounting period; that ANR updated historical and anticipated future experience at the end of each accounting period; and that ANR reflected revisions to estimated gross profits in earnings in the accounting period such estimates were revised. The XL Capital Defendants deny the remaining allegations.

4.      Admit that ANR is a Bermuda corporation not subject to United States corporate taxes; that most of ANR's client companies are based in the United States and subject to state regulations; that ANR and Annuity and Life Reassurance, Ltd., ANR's Bermuda operating subsidiary, were not registered or licensed to do business in any United States jurisdiction, and, as a result, needed to post collateral in connection with a number of reinsurance agreements; that ANR sometimes posted collateral by obtaining letters of credit from banks; that ANR's financial ratings were sometimes important in connection with obtaining such letters of credit; and that some of ANR's contracts contain provisions relating to ANR's financial ratings. The XL Capital Defendants deny the remaining allegations.

5.      Admit the allegations of the first and third sentences (except for the characterization of the Transamerica contract as "massive," which is denied); that ANR's 1999 10-K reported interest sensitive contracts liabilities to policyholders of approximately

2

$1.6 billion; that the predominance of those liabilities was attributable to the Transamerica contract; that ANR's Transamerica contract was a modified coinsurance arrangement; that IL Annuity controlled and managed the investment of policyholder premiums, and that ANR assumed its share of risk in the event that the investments supporting its Funds Withheld at Interest asset failed to earn a sufficient total return to pay the sums due surrendering policyholders. The XL Capital Defendants deny the remaining allegations.

6.      Admit that the Transamerica contract differs from ANR's other annuity reinsurance contracts in that the annuity products reinsured allowed policyholders to select among four "investment strategies" and that holders of the underlying annuity policies had the opportunity to earn more than the guaranteed minimum interest rate if their selected investment strategy performed well. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the fourth and fifth sentences concerning IL Annuity's investment practices and the minimum guaranteed interest rates set by various state laws and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

7.      Admit the allegations of the second and third sentences (except for the characterizations of the interest rate bonds pay as "guaranteed," and of that convertible bonds pay as "typically," "relatively low," which are denied). The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the first and fifth sentences and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

8.      Denied.

3

9. Admit that ANR did not in its public filings state the approximate percentage of assets amount of IL Annuity's aggregate annual expenses until the filing of its November 19, 2002 8-K. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the fees charged by IL Annuity to policyholders and the minimum guaranteed interest rates set by various state laws and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

10. Admit that ANR did not in its public filings state the approximate percentage of assets amount of IL Annuity's aggregate annual expenses until ANR's filing of its November 19, 2002 8-K; that ANR did not in its public statements make reference to higher than expected surrender rates on a large annuity contract until its July 31, 2001 conference call, and to minimum interest guarantee payments on that contract until its January 15, 2002 press release; and that discussions between ANR and the SEC staff resulted in ANR's decision to restate its 2000 and 2001 financial statements. The XL Capital Defendants deny the remaining allegations.

11. Admit that plaintiffs have accurately quoted a sentence and another part of a sentence from ANR's 1999 10-K (but deny that the portions plaintiffs have italicized were italicized or emphasized in the original, and that the words plaintiffs have bracketed appeared in the original), and that ANR's public filings stated: that ANR conducted loss recognition testing at the end of each accounting period; that ANR updated historical and anticipated future experience at the end of each accounting period; and that

ANR reflected revisions to estimated gross profits in earnings in the accounting period such estimates were revised. The XL Capital Defendants deny the remaining allegations.

12.    Admit that ANR's financial ratings were at various times downgraded; that ANR has announced that it has ceased writing new reinsurance agreements and does not anticipate resuming to do so in the foreseeable future; and that ANR and its auditor have stated that there is substantial doubt about ANR's ability to continue as a going concern. The XL Capital Defendants deny the remaining allegations.

Plaintiffs' Heading:
"JURISDICTION AND VENUE"

13.    Denied.

14.    The XL Capital Defendants do not challenge the subject matter jurisdiction of the Court.

15.    Admit that certain of the acts and transactions of which plaintiffs complain involved use of the mails and the facilities of national securities markets, but deny the remaining allegations.

16.    The XL Capital Defendants do not challenge venue.

Plaintiffs' Heading:
"PARTIES"

17.    Lack knowledge or information sufficient to form a belief as to the truth of the allegation that Communication Workers of America purchased ANR common stock, and, consequently, deny that allegation, and deny the remaining allegation of the first sentence. Admit the allegations of the second sentence.

5

18.   Lack knowledge or information sufficient to form a belief as to the truth of the allegation that Midstream Investments, Ltd. purchased ANR common stock, and, consequently, deny that allegation, and deny the remaining allegation of the first sentence. Admit the allegations of the second sentence.

19.   Admitted (except deny that Annuity and Life Re (Holdings), Ltd. is an operating company that directly provides reinsurance, and that ANR has any reinsurance contracts that indemnify the ceding company for all of the risks associated with the underlying insurance policies).

20.   Admit the allegations of the third sentence; that XL Capital has subsidiaries worldwide that provide insurance and reinsurance coverage; that XL Capital has offices at XL House, One Bermudiana Road, Hamilton, Bermuda; that XL Capital, Ltd. filed a 13D, Amendment, No. 2, as of March 15, 2000, which stated that XL Capital owned approximately 11.6% of ANR's common stock; that ANR's 2000 Proxy Statement stated that XL Capital owned 11.1% of ANR's common stock; that XL Capital filed a 13D, Amendment No. 4, as of November 27, 2001, which stated that XL Capital owned approximately 12.9% of ANR's common stock; that ANR's 2001 Proxy Statement stated that XL Capital owned 12.9% of ANR's common stock; and that XL Capital did not further amend its 13D during the Class Period. The XL Capital Defendants deny the remaining allegations.

21.   Admitted.

6

22.    Admit that Hammer was throughout the Class Period the non-executive Chairman of ANR's Board of Directors; that from approximately September 12, 2002 until the end of the Class Period, Hammer was a non-executive Member of the Transition Committee of ANR's Board of Directors that was formed to oversee the management and operations of ANR until a new President and Chief Executive Officer was identified; and that Hammer was at various times a member of ANR's Board of Directors' Executive Committee, Finance and Investment Committee and Corporate Governance Committee. The XL Capital Defendants deny the remaining allegations.

23.    Admitted, except deny that Burke was ANR's Treasurer.

24.    Admitted.

25.    Admitted.

26.    Admit the allegations of the second sentence and that Esposito was throughout the Class Period a Director of ANR and the non-executive Chairman of XL Capital's Board of Directors. The XL Capital Defendants deny the remaining allegations.

27.    Admit that plaintiffs have chosen to refer to the referenced defendants collectively as the "Individual Defendants," but deny that those defendants should be grouped together for all purposes.

28.    Admit the allegations of the first and third sentences (except deny the implicit allegation that Defendants O'Hara and Esposito had the same access to information and participated in the same meetings and conversations as the other Individual Defendants).

7

The XL Capital Defendants also admit that Hammer, Esposito and O'Hara signed ANR's
1999, 2000, and 2001 Forms 10-K; that Doyle signed ANR's 1999, 2000 and 2001 Forms
10-K, and ANR's 2000, 2001 and first and second quarter 2002 Forms 10-Q; that Atkin
signed ANR's 1999 and 2000 Forms 10-K and ANR's 2000 and first and second quarter
2001 Forms 10-Q; and that Burke signed ANR's 2001 10-K and third and fourth quarter
2001 and 2002 Forms 10-Q. The XL Capital Defendants deny the remaining allegations.

29.    Denied, except admit that each of the Individual Defendants was
provided with copies of certain of the Company's reports, filings and/or press releases prior
to or shortly after their issuance.

30.    Admit that the defendants who were officers, during the times that
they were officers, directly participated in the management of the Company and had access
to certain confidential and proprietary information concerning the Company, and that the
director defendants had access to certain confidential and proprietary information
concerning the Company, but deny the remaining allegations.

31.    Denied.

32.    Denied, except admit that each of the Individual Defendants
participated, although to different extents and at different times, in the drafting, preparation
and/or approval of certain of the public filings and statements of which plaintiffs complain.

33.    Denied.

8

Plaintiffs' Heading:
"PLAINTIFFS' CLASS ACTION ALLEGATIONS"

34.    Admit that plaintiffs purport to bring this action as a class action on behalf of the class as defined, but deny the remaining allegations.

35.    Admit the allegations of the first, second and fourth sentences. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning what plaintiffs know or believe, and, consequently, deny those allegations. The XL Capital Defendants deny the remaining allegations.

36.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations and, consequently, deny them.

37.    Admit that plaintiffs have retained counsel competent and experienced in class and securities litigation, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, consequently, deny them.

38.    Admit that certain common questions of law and fact exist, but deny the remaining allegations.

39.    Deny that any class member is entitled to damages, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and, consequently, deny them.

9

Plaintiffs' Heading:
"SUBSTANTIVE ALLEGATIONS"

Plaintiffs' Subheading:
"Background Facts"

    40.    Admit the allegations of the first three sentences, and the first clause of the fourth sentence, but deny the remaining allegations.

    41.    Admit that annuity policies often have the features described in the first two sentences, and that higher than originally anticipated surrender rates can have an adverse impact on a contract's profitability, but deny the remaining allegations.

    42.    Admit the allegations of the first sentence. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the minimum guaranteed interest rates set by various state laws and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

    43.    Admitted (except deny the allegations about what constitutes a "typical" reinsurance contract).

    44.    Admit the allegations of the first four sentences, but deny the remaining allegations.

    45.    Admitted (except deny the characterization of the Transamerica contract as ANR's "principal" annuity reinsurance contract).

    46.    Admit that IL Annuity's Visionmark policies underlying ANR's Transamerica contract are "investment-type" products within the meaning of FAS 97, but deny the remaining allegations.

47.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations of the third, fifth, sixth, seventh, eighth, ninth and tenth sentences; the allegations concerning whether ANR credited policyholders' accounts for minimum interest guarantee payments that the policyholder might be entitled to receive in the event of an immediate surrender of the policy; and the allegations concerning ANR's consideration of historical surrender rates in conducting loss recognition testing and, consequently, deny them.  The XL Capital Defendants deny the remaining allegations.

48.    Admit, on information and belief, that as of December 1997, there were no Bermuda-based reinsurers specializing in life and annuity reinsurance.  Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning what "was believed" as of that time, and, consequently, deny those allegations. The XL Capital Defendants deny the remaining allegations.

49.    Admit that, because ANR was not licensed or accredited in United States jurisdictions, ANR was required to post collateral in connection with some of its reinsurance contracts.  The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the second, third, fourth and sixth sentences and, consequently, deny them.  The XL Capital Defendants deny the remaining allegations.

50.    Admit the allegations of the first sentence.  Lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, consequently, deny them.

51.    Admit that plaintiffs have correctly quoted portions of ANR's

September 29, 1998 press release and that the "significant annuity transaction" was ANR's

Transamerica contract relating to IL Annuity's underlying Visionmark policies, but deny the

remaining allegations.

52.    Admitted.

53.    Admit the allegations of the first, second and third sentences and that

plaintiffs have correctly quoted a portion of a sentence from ANR's 1999 10-K, but deny

that the portion plaintiffs have italicized was italicized or emphasized in the original, and

deny the remaining allegations.

54.    Admit the allegations of the first and second sentences. Lack

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations and, consequently, deny them.

Plaintiffs' Subheading:
"Undisclosed Adverse Facts
Affecting ANR's Business" — Denied.

55.    Admit that plaintiffs have correctly stated the dollar amounts

appearing in the third sentence and that policyholder surrender rates, fees and expenses

charged by the primary insurer and minimum interest guarantee payments were factors that

could potentially affect the contract's profitability. The XL Capital Defendants lack

knowledge or information sufficient to form a belief as to truth of the allegations concerning

ANR's knowledge of the terms and risks associated with the Transamerica and the method

by which the contract was priced (including the policyholders surrender rates and the

12

performance of the convertible bonds in which IL Annuity invested assets) and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

56.    Admit that, for an annuity reinsurance contract, ANR normally expects over the life of the contract to make its profits primarily by earning "spreads" between amounts due policyholders and the earnings derived from investment of policyholder premiums. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the second sentence and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

57.    Admit the allegations of the second and third sentences and that the Transamerica contract differs from ANR's other annuity reinsurance contracts in certain respects. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the fees charged by IL Annuity to policyholders and the minimum guaranteed interest rates set by various state laws and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

58.    Admit the allegations of the second, third and fourth sentences (except for the characterization of the underlying annuities as "unusual," which is denied), but deny the remaining allegations.

59.    Admitted.

60.    Admit the allegations of the second and third sentences and that plaintiffs have correctly quoted a portion of a sentence from ANR's November 19, 2002 8-K

(except deny that the parenthetical "(i.e., interest)" appears in the quoted language). The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, consequently, deny them.

61.    Admit the allegations of the second sentence and that plaintiffs have correctly quoted a portion of ANR's November 19, 2002 8-K, but deny the remaining allegations.

62.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the approximate percentages of total policyholder premiums that IL Annuity had invested in convertible bonds and the quota shares of IL Annuity, Transamerica and ANR under the reinsurance agreements and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

63.    Admit that of ANR's 2000 income as reported in ANR's 2000 10-K, approximately 39.6%, or almost $16 million, represented income on the Transamerica contract. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the third sentence and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

64.    Denied.

65.    The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the yield on ANR's "Funds Withheld at Interest" asset relating to the Transamerica contract and the allegations concerning ANR's knowledge of the risks of the Transamerica contract and the performance

14

of the assets supporting the contract and, consequently, deny them. The XL Capital
Defendants deny the remaining allegations.

    66. Lack knowledge or information sufficient to form a belief as to the
truth of the allegations concerning whether ANR credited policyholders' accounts for
minimum interest guarantee payments that the policyholder might be entitled to receive in
the event of an immediate surrender of the policy and, consequently, deny these allegations.
The XL Capital Defendants admit that ANR restated its 2000 and 2001 financial statements
in part to reflect as expenses minimum interest guarantee payments that ANR only later
learned it had been making during those times, but deny the remaining allegations.

    67. Lack knowledge or information sufficient to form a belief as to the
truth of the allegations concerning the Visionmark policyholder surrender rates; whether
such rates were higher than ANR had anticipated in pricing the contract; ANR's knowledge
of certain surrendering policyholders receiving minimum interest guarantee payments during
1999, 2000 and the first three quarters of 2001; ANR's continued practice to make such
payments; and whether ANR at times revised the surrender rate assumptions it used in
setting its deferred acquisition cost amortization schedule and, consequently, deny these
allegations. The XL Capital Defendants deny the remaining allegations.

    68. Denied.

Plaintiffs' Heading:
"FALSE AND MISLEADING STATEMENTS
AND OMISSIONS DURING THE CLASS PERIOD" — Denied.

69.    Admitted (except, with respect to the first sentence, admit only that plaintiffs purport to define the Class Period as beginning on March 15, 2000, but deny the remaining allegations).

70.    Denied.

71.    Admit that plaintiffs have correctly quoted portions of ANR's 1999 10-K, but deny that the portions plaintiffs have italicized were italicized or emphasized in the original, and deny the remaining allegations.

72.    Admit that plaintiffs have correctly quoted portions of ANR's 1999 10-K and that plaintiffs have correctly cited the reported deferred acquisition cost amounts, but deny that the portions plaintiffs have italicized were italicized or emphasized in the original. The XL Capital Defendants deny the remaining allegations.

73.    Admit the allegations of the first sentence and that plaintiffs have in the footnote correctly quoted a portion of ANR's 1999 10-K (except deny that the portion plaintiffs have italicized was italicized or emphasized in the original). The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the income earned on ANR's Funds Withheld at Interest asset for 1999; plaintiffs' calculation of the approximate yield earned from the Funds; and whether ANR specifically calculated and set forth that yield and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

16

74.    Admit that ANR's 1999 10-K listed a category of revenue called "other" and that the "other" revenue for 1999 was approximately $3.2 million. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether a portion of the "other" revenue consisted of surrender fees received from policyholders surrendering Vision-mark policies and ANR's knowledge that certain surrendering policyholders had received minimum interest guarantee payments and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

75.    Admit that plaintiffs have correctly quoted a portion of ANR's 1999 10-K, but deny that the portion plaintiffs have italicized was italicized or emphasized in the original.

76.    Admit that plaintiffs have correctly quoted a portion of a sentence from ANR's 1999 10-K (except deny that the portion of ANR's 1999 10-K that plaintiffs have italicized was italicized or emphasized, and that the words "we enter into" appeared, in the original), and that the quoted portion was in the section titled "Quantitative and Qualitative Disclosures About Market Risk," which is required under 17 C.F.R. § 229.305 (not 17 C.F.R. § 229.303). The XL Capital Defendants deny the remaining allegations.

77.    Admitted (except deny that the portion of ANR's 1999 10-K that plaintiffs have italicized was italicized or emphasized, and that the third sentence directly followed the second in the original).

17

78.    Admitted (except deny that the portion of ANR's 1999 10-K that plaintiffs have italicized was italicized or emphasized in the original).

79.    Denied.

(a)    Denied.

(b)    Denied.

(c)    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether the surrender rates for the policies underlying the Transamerica contract had been higher than expected during the second half of 1999 and ANR's knowledge of minimum interest guarantee payments made in 1999 and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

(d)    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether ANR's Fund Withheld at Interest asset consisted chiefly of assets supporting the Transamerica contract and the percentage of premiums held and managed by IL Annuity that were invested in convertible bonds and, consequently, deny these allegations. The XL Capital Defendants admit that plaintiffs have correctly quoted two sentences from ANR's November 19, 2002 8-K, but deny the remaining allegations.

(e)    Denied.

(f)    Denied.

18

(g)     Admit the allegations of the second sentence; that ANR in mid-2002 concluded, and publicly stated, that it "had embedded derivatives in certain of its fixed annuity reinsurance contracts that are required to be bifurcated from their host contracts and accounted for separately pursuant to FAS 133"; that ANR also concluded and publicly stated, that it need not apply FASB 133 to the Transamerica contract because ANR acquired that contract prior to the transition date ANR elected under FAS 133, as amended by FAS 137; and that ANR has publicly stated that if it applied FASB 133 to the Transamerica contract, the bifurcation and separate accounting for the embedded derivatives contained in that contract would add significant volatility to ANR's reported results. The XL Capital Defendants deny the remaining allegations.

80.     Denied.

81.     Admit that the overall profitability of the Transamerica contract to ANR over time depended primarily on earning a targeted spread between amounts due policyholders, which could include minimum interest guarantee payments, and the earnings derived from investment of policyholder premiums; and that ANR's 1999 10-K did not discuss surrender rates for, or the returns on the assets supporting, the Transamerica contract. The XL Capital Defendants deny the remaining allegations.

82.     Admitted (except deny the allegations that ANR's April 19, 2000 press release reported "other" income of $1.8 million and that the release quoted Doyle as referring to the annuity "segment").

19

83.    Admit the allegations of the first and third sentences (except for matters of emphasis, which are denied) and that ANR's first quarter 2000 10-Q repeated some of the information contained in the earnings release and reported that the Funds Withheld at Interest asset had earned a total of $21.8 million for the period. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning plaintiffs' calculation of the approximate yield on ANR's Funds Withheld at Interest asset and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

84.    Admit that ANR did not in its first quarter 2000 10-Q state the sources of "other" revenue; that ANR later learned that certain of the surrendering policyholders received payments for minimum interest guarantees; and that plaintiffs have correctly quoted a portion of ANR's first quarter 2000 10-Q. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether a portion of the "other" revenue consisted of surrender fees from the Transamerica contract and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

85.    Admitted (except deny that the portion of ANR's 1999 10-K and first quarter 2000 10-Q that plaintiffs have italicized was italicized or emphasized in the originals).

86.    Denied.

87.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations of the second and third sentences; whether ANR's recorded "Interest Sensitive Contracts Liability" credited policyholders' accounts for any minimum interest guarantee payments that might be due in the event that policyholders immediately surrendered their policies; whether minimum interest guarantee payments in connection with surrenders should be recorded as expenses; ANR's knowledge of minimum interest guarantee payments made in the first quarter of 2000; and ANR's accounting of these payments and, consequently, deny these allegations. The XL Capital Defendants admit that ANR's restated financial statements restated minimum interest guarantee payments as an expense, but deny the remaining allegations.

88.    Admit that plaintiffs have correctly quoted a sentence from a Prudential Securities "Annuity & Life Re Company Update" dated April 24, 2000, but deny the remaining allegations.

89.    Admit that in a Research Note dated June 8, 2000, Prudential Securities stated that "ALRe's Management endorses . . . earnings growth of 25%" over the next two years. The XL Capital Defendants deny the remaining allegations.

90.    Admitted (except deny the allegations that the release reported net income for the quarter of $7.8 million and that $1.6 million of that was attributable to "other" income).

91.    Admitted.

21

92.    Admit that on August 3, 2000, Standard & Poor's issued a press
release affirming its single A- counterparty credit and financial strength ratings of Annuity
and Life Reassurance Ltd., ANR's Bermuda operating subsidiary, and that plaintiffs have
correctly quoted a portion of the release. The XL Capital Defendants deny the remaining
allegations.

93.    Admitted (except deny the allegation that ANR's second quarter 2000
10-Q reported all of the information contained in its earnings release and the
characterization of the yield rate as "mere").

94.    Admit that ANR's second quarter 2000 10-Q did not discuss the
sources of the "other" revenue and that plaintiffs have correctly quoted fragmentary portions
of ANR's second quarter 2000 10-Q. The XL Capital Defendants lack knowledge or
information sufficient to form a belief as to the truth of the allegations concerning whether a
portion of the "other" revenue came from surrender fees relating to the Transamerica
contract and ANR's accounting of minimum interest guarantee payments and, consequently,
deny these allegations. The XL Capital Defendants deny the remaining allegations. .

95.    Admitted (except deny that the portion of ANR's second quarter 2000
10-Q and 1999 10-K that plaintiffs have italicized was italicized or emphasized in the
originals).

96.    Lack knowledge or information sufficient to form a belief as to the
truth of the allegations concerning whether minimum interest guarantee payments in
connection with surrenders should be recorded as expenses; ANR's knowledge of minimum

22

interest guarantee payments made in the second quarter of 2000; and ANR's accounting of these payments. The XL Capital Defendants admit that ANR's restated financial statements restated minimum interest guarantee payments as an expense, but deny the remaining allegations.

      97.    Admit the allegations of the first sentence (except deny that the first clause plaintiffs have placed in quotes is an accurate quotation from A.M. Best's August 23, 2000 release and report); that on August 31, 2000, Fitch issued a press release affirming its A financial strength rating for Annuity & Life Reassurance, Ltd., ANR's Bermuda operating subsidiary; and that plaintiffs have correctly quoted a portion of Fitch's release. The XL Capital Defendants deny the remaining allegations.

      98.    Admit the allegations of the first four sentences (except deny the allegations that ANR's October 30, 2000 press release reported net income of $10.9 million and "other" income of $1.7 million) and that plaintiffs have correctly quoted certain fragmentary portions of ANR's third quarter 2000 10-Q. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning ANR's knowledge of minimum interest guarantee payments made during the third quarter of 2000 and ANR's accounting of such payments and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

      99.    Admit that plaintiffs have correctly quoted a portion of ANR's third quarter 2000 10-Q and 1999 10-K, but deny that the portion plaintiffs have italicized was italicized or emphasized in the originals.

23

100.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether minimum interest guarantee payments in connection with surrenders should be recorded as expenses; ANR's knowledge of minimum interest guarantee payments made in the third quarter of 2000; and ANR's accounting of these payments and, consequently, deny these allegations. The XL Capital Defendants admit that ANR's restated financial statements restated minimum interest guarantee payments as an expense. The XL Capital Defendants deny the remaining allegations.

101.    Admit the allegations of the first sentence; lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Bear Stearns reported, and, consequently, deny them; and deny the remaining allegations.

102.    Admit the allegations of the first and second sentences, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, consequently, deny them.

103.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations, and, consequently, deny them.

104.    Admit the allegations of the first six sentences (except deny the allegation that ANR's February 12, 2001 release reported "other" income of $1.83 million), and that ANR later stated that during 2000 it had sought to determine the validity of "unexpected increases in asset management expenses." The XL Capital Defendants deny the remaining allegations.

24

105.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether minimum interest guarantee payments should be recorded as expenses; ANR's knowledge of minimum interest guarantee payments made during the fourth quarter of 2000; and ANR's accounting of these payments and, consequently, deny these allegations. The XL Capital Defendants admit that ANR later restated its financial statements to recognize minimum interest guarantee payments as an expense. The XL Capital Defendants deny the remaining allegations.

106.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations, and, consequently, deny them.

107.    Admitted (except deny the allegations that ANR's 2000 10-K noted that income had increased 6 cents per share over the prior year and reported ANR's "annuity segment" and "life insurance segment" together).

108.    Admit that plaintiffs have correctly quoted portions of ANR's 2000 10-K, but deny that the portions plaintiffs have italicized were italicized or emphasized in the original, and deny the remaining allegations.

109.    Admit that plaintiffs have correctly quoted portions of ANR's 2000 10-K, but deny that the portions plaintiffs have italicized were italicized or emphasized in the original.

110.    Admit that ANR's 2000 10-K stated that total income earned on Funds Withheld at Interest for the year was $116,522,000. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the

second or third sentences and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

111.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations of the first clause of the first sentence and, consequently, deny those allegations, and deny the remaining allegations.

112.    Admit that plaintiffs have correctly quoted a portion of ANR's 2000 10-K (except deny that the portion italicized by plaintiffs was italicized or emphasized in the original). The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning plaintiffs' calculation of the approximate yield on ANR's Funds Withheld at Interest asset for 2000 and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

113.    Denied.

114.    Denied.

115.    Denied.

116.    Admit that plaintiffs have correctly quoted a portion of ANR's 2000 10-K, except deny that the words "and interest credited to clients' account balances" appeared in the original.

117.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether minimum interest guarantee payments should be recorded as expenses; ANR's knowledge of minimum interest guarantee payments made

26

during 2000; and ANR's accounting of these payments and, consequently, deny these allegations. The XL Capital Defendants admit that ANR's restated financial statements restated minimum interest guarantee payments as an expense. The XL Capital Defendants deny the remaining allegations.

118.    Admitted.

119.    Admit that plaintiffs have correctly quoted all but an omitted word ("currently" follows "Company" in the original) of a sentence from ANR's 2000 10-K, but deny that the portion italicized by plaintiffs was italicized or emphasized in the original, and deny the remaining allegations.

120.    Admitted (except deny the characterization that the 2000 10-K "went on to assure investors").

121.    Denied.

122.    Admit that Doyle gave an interview to the Wall Street Transcript, which the Wall Street Transcript published on April 2, 2001, and that plaintiffs have correctly quoted a portion of Doyle's answer to one of the questions posed to him (except deny that the number "10" preceded the words "of whom"; "10" followed those words). The XL Capital Defendants deny the remaining allegations.

123.    Admit that ANR's April 26, 2001 press release stated that ANR would pay a dividend of 5 cents per share and that ANR intended to transfer the listing of its common stock to the NYSE. The XL Capital Defendants deny the remaining allegations.

27

124.    Admit the allegations of the first three sentences (except deny the allegation that ANR's May, 2001 earnings release reported net income of nearly $4 million over the prior year); that ANR's May 1, 2001 press release stated that ANR had credited approximately $6.7 million in interest to policyholders' accounts and reported approximately $3.13 million of "other" revenue; and that ANR later stated that its other income consisted primarily of net surrender fees. The XL Capital Defendants deny the remaining allegations.

125.    Admit that plaintiffs have correctly quoted ANR's May 2, 2001 press release and the allegations of the last sentence, but deny the remaining allegations.

126.    Admit the allegations of the first and third sentences (except deny that ANR's first quarter 2001 10-Q repeated all the information contained in ANR's May 1, 2001 earnings release); that ANR's first quarter 2001 10-Q stated that approximately $18 million of income had been earned on its Funds Withheld at Interest asset; that the 10-Q did not discuss surrender rates on the Transamerica contract; and that plaintiffs have correctly quoted a fragment of the 10-Q. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning plaintiffs' calculation of the approximate annualized yield on ANR's Funds Withheld at Interest asset and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

127.    Admit that plaintiffs have correctly quoted a sentence from ANR's first quarter 2001 10-Q, but deny that the portion italicized by plaintiffs was italicized or emphasized in the original.

28

128. Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether minimum interest guarantee payments in connection with surrenders should be recorded as expenses; ANR's knowledge of minimum interest guarantee payments made during the first quarter of 2001; and ANR's accounting of these payments and, consequently, deny these allegations. The XL Capital Defendants admit that ANR's restated financial statements restated minimum interest guarantee payments as an expense, but deny the remaining allegations.

129. Lack knowledge or information sufficient to form a belief as to the truth of the allegations, and, consequently, deny them.

130. Admit that after ANR announced his retirement, Atkin and/or his wife in May and July of 2001 exercised the bulk of his and/or her options to purchase ANR shares and then sold the shares, and also sold his and/or her other ANR stock; that Atkin and/or his wife sold his and/or her shares for more than $2,250,000 above his and/or her cost or basis; that Atkin's and/or his wife's transactions were publicly reported on Forms 4 filed with the SEC in June and August of 2001; that ANR's Proxy Statement, filed on April 12, 2002, erroneously reported certain information relating to those transactions; and that ANR's 2001 10-K-A, filed on March 21, 2003, corrected the error. The XL Capital Defendants deny the remaining allegations.

131. Admitted (except deny the characterization that Prudential Securities "praised" ANR's underwriting approach).

29

132. Admitted (except deny the characterization that trading volume on May 22, 2001 was "heavy").

133. Admit the allegations of the first, second, fourth and fifth sentences (except deny that ANR's July 24, 2001 press release stated the per share amount of the dividend); that ANR's July 30, 2001 press release reported that net operating income had increased by 26% over the previous year; and that ANR's second quarter 2001 10-Q stated that deferred policy acquisition costs were approximately $246 million, that "other" revenue was approximately $4.64 million, and that the "other" income consisted primarily of net surrender fees. The XL Capital Defendants deny the remaining allegations.

134. Admit that ANR's share price closed at $35.06 on July 30, 2001, but deny the remaining allegations.

135. Admitted.

136. Admitted (except deny the allegation that ANR's second quarter 2001 10-Q repeated all the information contained in ANR's July 30, 2001 earnings announcement and the characterization of the yield as "just").

137. Admit that ANR's second quarter 2001 10-Q, which was issued after Atkin's transactions in ANR shares and after ANR had announced his retirement, but before his August 31, 2001 retirement, stated that "other income" was "primarily derived from net surrender fees" and that plaintiffs have correctly quoted portions of the 10-Q. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning surrender and withdrawal levels during the three and six month

30

period ended June 30, 2001 and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

138.    Admit that ANR's second quarter 2001 10-Q, unlike its earlier Forms 10-Q, had a separate section titled "Quantitative and Qualitative Disclosures about Market Risks"; that the 10-Q referred readers to Item 7A of ANR's 2000 10-K; and that plaintiffs have correctly quoted portions of the 10-Q. The XL Capital Defendants deny the remaining allegations.

139.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether minimum interest guarantee payments in connection with surrenders should be recorded as expenses; ANR's knowledge of minimum interest guarantee payments made in the second quarter of 2001; and ANR's accounting of these payments and, consequently, deny these allegations. The XL Capital Defendants admit that ANR's restated financial statements restated minimum interest guarantee payments as an expense, but deny the remaining allegations.

140.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether minimum interest guarantee payments in connection with surrenders should be recorded as expenses; ANR's knowledge of minimum interest guarantee payments made during the first half of 2001; and ANR's accounting of these payments and, consequently, deny these allegations. The XL Capital Defendants admit that ANR's restated financial statements restated the minimum interest guarantee payments as expenses and wrote down related deferred acquisition costs; that prior to the restatements, ANR had recognized income on the Transamerica contract during the first six

31

months of 2001; and that after the restatements ANR recognized losses on the Transamerica contract for that period. The XL Capital Defendants deny the remaining allegations.

141.    Admit that on August 16, 2001, three days after ANR filed its second quarter 2001 10-Q, Fitch affirmed its A financial strength rating on, and revised its rating outlook from Stable to Positive for, Annuity & Life Reassurance, Ltd., ANR's Bermuda operating subsidiary. The XL Capital Defendants deny the remaining allegations.

142.    The XL Capital Defendants admit that plaintiffs have correctly quoted portions of ANR's August 21, 2001 press release, which quoted portions of Standard & Poor's August 21, 2001 release (except deny that the portions plaintiffs have italicized were italicized or emphasized in the originals); that plaintiffs have correctly stated the date of the release, the contact person referred to, and ANR's web address, where press releases are available; and that the releases stated that Standard & Poor's had raised, *inter alia*, its financial strength ratings on ANR's operating subsidiaries from A- to A. The XL Capital Defendants deny the remaining allegations.

143.    Denied.

Plaintiffs' Subheading:
"The Truth Begins to Emerge" — Deny the implication that ANR's previous statements
                                were deliberately and materially deceptive.

144.    Denied.

145.    Admit the allegations of the first and second sentences and that plaintiffs have correctly quoted portions of ANR's October 25, 2001 press release. The XL Capital Defendants deny the remaining allegations.

32

146.    Admitted, but deny the characterization "very heavy."

147.    Admit the allegations of the first and third sentences; that ANR's October 26, 2001 press release stated that Doyle had during the conference call "provided guidance on earnings in the $1.80 to $1.90 per share range"; and that in its October 26, 2001 conference call, ANR discussed high surrender rates; but did not discuss minimum interest guarantee payments. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Bear Stearns reported and, consequently, deny those allegations. The XL Capital Defendants deny the remaining allegations.

148.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations and, consequently, deny them.

149.    Admit that on October 29, 2001, Fitch affirmed its A financial strength rating on, and revised the rating outlook from Positive to Stable for, Annuity & Life Reassurance, Ltd., ANR's Bermuda operating subsidiary. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence, and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

150.    Admit the allegations of the first sentence concerning the stock price and that ANR's October 29, 2001 press release stated that ANR would pay a 5 cent per share dividend on its common shares. The XL Capital Defendants deny the remaining allegations.

33

151. Admit the allegations of the first, third, fourth and fifth sentences (except deny the allegation that ANR's third quarter 2001 10-Q repeated all the information contained in ANR's October 25, 2001 earnings release), and that the 10-Q reported "other income" of $5.513 million, which was "primarily net surrender fees." The XL Capital Defendants deny the remaining allegations.

152. Admit that plaintiffs have correctly quoted portions of ANR's second and third quarter 2001 Forms 10-Q and 2001 10-K, but deny the remaining allegations.

153. Admit that ANR later learned that it had in the third quarter of 2001 made approximately $4.4 million in minimum interest guarantee payments, which, in light of ANR's lack of knowledge, ANR had failed to record as an expense and had instead recorded as a reduction in its liabilities; and that ANR's restated financial statements restated that item as an expense. The XL Capital Defendants deny the remaining allegations.

154. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning ANR's knowledge of the performance of the convertible bonds underlying the Transamerica contract and the extent of information provided to ANR by its cedents and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

155. Admit that on January 15, 2002, ANR issued a press release, listing Doyle and Burke as contacts, which stated that ANR would "take a fourth quarter charge of approximately $33 million related to minimum interest guarantees" on its Transamerica

34

contract, and that the charge comprised "payments for 2001 and a reserve for anticipated future payments"; that the release stated that ANR expected its net operating income for the full year 2002 to be between $1.70 and $1.80 per share; and that as of its January 15, 2002 release, ANR had announced that, for the third quarter and fourth quarters of 2001, ANR would recognize charges of $57.7 million in expenses for the Transamerica contract consisting of a deferred acquisition cost writedown, minimum guarantee payments and a reserve for such future payments. The XL Capital Defendants deny the remaining allegations.

156.    The XL Capital Defendants admit that ANR's January 15, 2002 press release stated that "XL Capital has agreed to provide additional protection for up to $10 million for possible losses related to the minimum interest guarantees under this contract in excess of our charge," and quoted Burke as saying that, with respect to ANR's provision for 2001 minimum interest guarantee payments and a reserve for future liability and the assumptions ANR used in calculating those, "we believe our assumptions and actions are realistic." The XL Capital Defendants admit that plaintiffs have correctly quoted a portion of the release. The XL Capital Defendants deny the remaining allegations.

157.    The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning ANR's knowledge of surrender rate trends, the variances in investment spread assumptions and the performance of the convertible bonds underlying the Transamerica contract and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

35

158.    Admit the allegations of the second and fourth sentences and the first clause of the third sentence, and that on January 16, 2002, Fitch placed its financial strength rating of Annuity & Life Reassurance, Ltd., ANR's Bermuda operating subsidiary, on Rating Watch Negative. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning what J. P. Morgan stated and about what "market-watchers" thought and, consequently, deny those allegations. The XL Capital Defendants deny the remaining allegations.

159.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Bear Stearns and Keefe Bruyette & Woods reported, and, consequently, deny those allegations, and deny the remaining allegations.

160.    Admit the allegations of the third sentence regarding A.M. Best, and that on February 8, 2002, Fitch affirmed its A rating on, and changed the rating outlook from Stable to Negative for, Annuity & Life Reassurance, Ltd., ANR's Bermuda operating subsidiary. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning what analysts concluded and Bear Stearns reported and, consequently, deny those allegations. The XL Capital Defendants deny the remaining allegations.

161.    Admit the allegations of the first two sentences and that ANR's shelf registration represented ANR's first attempt to sell debt securities in the public market. The XL Capital Defendants deny the remaining allegations.

162. Admit the allegations of the first sentence, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and, consequently, deny them.

163. Denied.

164. Admit the allegations of the first and last sentences; that plaintiffs have correctly quoted portions of ANR's 2001 10-K (but deny that the portion plaintiffs have italicized was italicized or emphasized in the original); and that the 10-K stated that during 2001, ANR "established additional reserves of $20.0 million related to the Transamerica contract," and that XL Capital had "agreed to provide protection for up to $10 million against further deterioration in this contract." The XL Capital Defendants deny the remaining allegations.

165. Admit that plaintiffs have correctly quoted a portion of ANR's 2001 10-K, but deny the remaining allegations.

166. Admit that plaintiff have correctly quoted portions of ANR's 2001 10-K and prior Forms 10-K, but deny that the portions plaintiffs have italicized were italicized or emphasized in the originals, and deny the remaining allegations.

167. Admit the allegations of the first sentence (except deny that $102.3 million of the DAC was due to the Transamerica contract) and that plaintiffs have correctly quoted portions of ANR's 2001 10-K, but deny that the portions plaintiffs have italicized were italicized or emphasized in the original.

37

168.    Admit the allegations of the first, second and fourth sentences. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of the third sentence and, consequently, deny them.

169.    Admit that plaintiffs have correctly quoted portions of ANR's 2001 10-K, but deny the remaining allegations.

170.    Admitted.

171.    Admitted.

172.    Denied.

(a)    Admit that ANR's 2001 10-K did not specifically state the approximate percentage of assets amount of IL Annuity's aggregate annual expenses, but deny the remaining allegations.

(b)    Admit that ANR's 2001 10-K stated that "[W]hile management has made what it believes to be adequate provision for future costs based upon reasonable assumptions about future investment performance and surrenders, the provision is an estimate. Actual amounts paid may be significantly higher or lower than the current reserve." The XL Capital Defendants deny the remaining allegations.

(c)    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning ANR's knowledge of minimum interest guarantee payments made during 2000 and the first three quarters of 2001 and ANR's accounting of these payments. The XL Capital Defendants admit that ANR's restated financial statements

38

restated minimum interest guarantee payments as an expense, but deny the remaining allegations.

(d)     Admit that ANR's 2001 10-K did not discuss the approximate percentage of policyholder premiums that IL Annuity had invested in convertible bonds, but deny the remaining allegations.

(e)     Admit that ANR's 2001 10-K reported its annuity and life business as one business segment, but deny the remaining allegations.

173.    Admit the allegations of the first sentence and that ANR's 2001 Annual Report twice mentioned ANR's A ratings from Standard & Poor's, A.M. Best and Fitch. The XL Capital Defendants deny the remaining allegations.

174.    Admit the allegations of the first and third sentences, and that ANR's April 23, 2002 press release reported net income for the quarter of $8.245 million, stated that the Transamerica contract "no longer generates income," and did not "warn" of "future losses." The XL Capital Defendants deny the remaining allegations.

175.    Admitted (except deny that the portion of Burke's quotation that plaintiffs have italicized was emphasized in Burke's statement, and further deny that Burke "began" the conference call by explaining that ANR would in the future report results for its annuity and life segments separately).

39

176.    Admit that plaintiffs have substantially correctly quoted parts of certain statements made by Doyle and Burke, respectively, on ANR's April 24, 2002 conference call, but deny the remaining allegations.

177.    Admit that plaintiffs have substantially correctly quoted portions of a statement made by Doyle during ANR's April 24, 2002 conference call (but deny that the portion plaintiffs have italicized was emphasized by Doyle). The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the minimum guaranteed interest rates set by various state laws and, consequently, deny them. The XL Capital Defendants deny the remaining allegations.

178.    Lack knowledge or information sufficient to form a belief as to truth of the allegations of the fifth sentence. The XL Capital Defendants admit the remaining allegations, except deny that the portion of Burke's statement during the April 24, 2002 conference call that plaintiffs have italicized was emphasized by Burke; that ANR's first quarter 2002 10-Q reported "surrender fees of $3.9 million"; that the yields on the Funds Withheld at Interest assets for other annuity contracts were "significantly" better than the yield on the assets supporting the Transamerica contract; and that the 5% yield on the Funds Withheld at Interest asset is properly characterized as "only."

179.    Denied.

180.    Denied (except admit that while Doyle was ANR's CEO and a director, he regularly monitored ANR's financial results).

40

181.    Admit that on July 25, 2002, ANR issued a press release announcing a writedown of approximately $24 million in deferred acquisition costs relating to the Transamerica contract; that ANR on August 15, 2002 issued a press release announcing a second quarter loss of over $20 million; and that plaintiffs have in the second sentence correctly quoted portions of ANR's July 25, 2002 press release. The XL Capital Defendants deny the remaining allegations.

182.    Admitted (except deny that the portions of ANR's July 25, 2002 press release plaintiffs have italicized were italicized or emphasized in the original).

183.    Admit that ANR's July 25 2002 press release stated that it would implement FAS 133 and restate its financial results "for the year 2001 and the first quarter of 2002," and that ANR and its auditors had concluded that ANR's "annuity reinsurance agreements, which are standard industry modified coinsurance agreements or coinsurance funds withheld agreements, contain embedded derivatives." The XL Capital Defendants also admit that plaintiffs have correctly quoted a sentence from ANR's November 19, 2002 8-K (except deny that the portion plaintiffs have italicized was italicized or emphasized in the original). The XL Capital Defendants deny the remaining allegations.

184.    Denied.

185.    Admitted, except deny the characterization "extremely heavy trading volume."

186.    Admitted.

41

187.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning ANR's knowledge of minimum interest guarantee payments relating to the Transamerica contract made during 1999, 2000 and the first three quarters of 2001; ANR's accounting of these payments; and the allegations concerning the comments of Bear Stearns and, consequently, deny these allegations. The XL Capital Defendants admit that ANR's restated 2000 and 2001 financial statements restated minimum interest guarantee payments as expenses, but deny the remaining allegations.

188.    Admitted.

189.    Admit the allegations of the first, second and fourth sentences, and that ANR's August 15, 2002 press release and second quarter 2002 10-Q stated that because of the pending SEC review, KPMG, ANR's independent auditor, was not able to complete its review of ANR's financial statements in ANR's second quarter 2002 10-Q. The XL Capital Defendants deny the remaining allegations.

190.    Admit the allegations of the second sentence, and that ANR's second quarter 2002 10-Q stated that it would reclassify "the $19,500,000 reserve component of the $33,000,000 charge taken in the fourth quarter of 2001 in connection with minimum interest guarantees" as a "writedown of deferred acquisition costs." The XL Capital Defendants deny the remaining allegations.

191.    Admit that plaintiffs have correctly quoted portions of ANR's second quarter 2002 10-Q, but deny that the portions plaintiffs have italicized were italicized or emphasized in the original, and deny the remaining allegations.

42

192. Admit, as ANR's second quarter 2002 10-Q stated, that in estimating the amount of the second quarter 2002 charge for the Transamerica contract, ANR had "assumed an annual investment return of 0% on convertible bonds for the remainder of 2002, with an 8% return assumed for 2003 and thereafter." The XL Capital Defendants deny the remaining allegations.

193. Admit that ANR's second quarter 2002 10-Q stated that in connection with ANR's writedown of deferred acquisition costs for the Transamerica contract, ANR had "assumed annual policyholder lapse rates of 26% for 2002 and 21% for 2003," which was "consistent with our experience for 2001," and that ANR had increased its assumed lapse rate for the second half of 2002 to 28%. The XL Capital Defendants deny the remaining allegations.

194. Admit that ANR in its second quarter 2001 10-Q reported that "surrender fees and other revenues" were $6.16 million, which consisted "primarily" of "net surrender fees" and was a higher figure than prior quarters, and that the yield on ANR's Funds Withheld at Interest asset for the first six months of 2001 was 5.14%; that the 10-Q was the first time ANR had in its public filings specifically stated the yield on its Funds Withheld at Interest asset; and that the 10-Q stated that if management's estimates regarding future lapse rates and investment returns did not "prove to be accurate," ANR might "be required to write down additional deferred acquisition costs" on the Transamerica contract. The XL Capital Defendants deny the remaining allegations.

195. Admit that ANR's second quarter 2002 10-Q stated that ANR had unsecured letters of credit with Citibank of approximately $89 million; that these letters had

been "posted as security to allow certain of our ceding companies to take credit on their

statutory financial statements for reinsurance obtained from us"; that Citibank had requested

that those letters be secured; and that ANR was "seeking to raise capital to fund its collateral

requirements and eliminate the need for Citibank's unsecured letters of credit." The XL

Capital Defendants also admit that plaintiffs have correctly quoted portions of the 10-Q,

except deny that the portions plaintiffs have italicized were italicized or emphasized in the

original. The XL Capital Defendants deny the remaining allegations.

196.    Denied.

(a)    Admit that ANR's second quarter earnings release and 10-Q did not

state that a yield of more than 6.25% was needed "to avoid further losses" on its

Transamerica contract, but deny the remaining allegations.

(b)    Lack knowledge or information sufficient to form a belief as to the

truth of the allegations concerning the annualized yield on ANR's Funds Withheld at

Interest asset relating to the Transamerica contract in 2002 and, consequently, deny them.

The XL Capital Defendants deny the remaining allegations.

(c)    Lack knowledge or information sufficient to form a belief as to the

truth of the allegations concerning ANR's accounting of the deferred acquisition costs for

the Transamerica contract and, consequently, deny them. The XL Capital Defendants deny

the remaining allegations.

197.    Admit that plaintiffs have substantially correctly quoted portions of

statements made by Doyle and Burke, respectively, in ANR's August 16, 2002 conference

call, but deny that Burke said "are drastically overreactive" (the words were "have

drastically overreacted"), and that the portion plaintiffs have italicized was emphasized by

Doyle. The XL Capital Defendants deny the remaining allegations.

198.    Denied.

199.    Admit that ANR's September 12, 2002 press release stated: that "Mr.

Doyle has resigned as President, Chief Executive Officer and a director of the company, but

he has agreed to remain with the Company on an interim basis to assist with certain

projects"; that "[u]ntil an appropriate replacement is identified, a Transition Committee of

the Board of Directors will oversee the management and operations of the Company"; and

that Hammer and another Board member were the non-executive Members of the Transition

Committee. The XL Capital Defendants also admit the allegations of the second and third

sentences. The XL Capital Defendants deny the remaining allegations.

200.    Admitted.

201.    Admitted (except deny that the date of ANR's press release was

November 12, 2002; the press release was issued on November 13, 2002).

> Plaintiffs' Subheading:
> "More Revelations to the Market" — Denied.

202.    Admit that plaintiffs have correctly quoted a portion of ANR's

November 19, 2002 press release, but deny that the portions italicized by plaintiffs were

italicized or emphasized in the original.

45

203.    Admit that plaintiffs have correctly quoted portions of ANR's
November 19, 2002 8-K, but deny that the portions italicized by plaintiffs were italicized or
emphasized in the original, and deny the remaining allegations.

204.    Admit that ANR's November 19, 2002 8-K stated that "such expenses
generally accrue at a rate of approximately 2.5% of the assets annually," and that ANR's
2001 10-K-A, filed on March 21, 2003, stated that "such expenses generally accrue at a rate
of approximately 2.75% of the assets annually," but deny the remaining allegations.

205.    Admit that plaintiffs have correctly quoted a portion of ANR's
November 19, 2002 8-K, but deny that the portion italicized by plaintiffs was italicized or
emphasized in the original, and deny the remaining allegations.

206.    Admit that ANR's November 19, 2002 8-K stated that for the first
nine months of 2002, the yield on ANR's Funds Withheld at Interest Asset related to the
Transamerica contract had been 3.8% and that the average yield on ANR's Funds Withheld
at Interest Asset had been 5.8%, and that plaintiffs have correctly quoted a portion of the 8-
K (but deny that the portion plaintiffs have italicized was italicized or emphasized in the
original). The XL Capital Defendants deny the remaining allegations.

207.    Admit that ANR's November 19, 2002 8-K provided data supplied to
ANR by Transamerica as of September 30, 2002 regarding the assets held and managed by
IL Annuity, showing, *inter alia*, the "type of security," "book value," "market value," and
"percentage of total," and that plaintiffs have correctly quoted the stated book value and

46

market value of the convertible bonds and "below investment grade U.S. corporate bonds," respectively. The XL Capital Defendants deny the remaining allegations.

208.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether minimum interest guarantee payments in connection with surrenders should be recorded as expenses; ANR's knowledge of minimum interest guarantee payments made during 2000 and the first three quarters of 2001; and ANR's accounting of these payments and, consequently, deny these allegations. The XL Capital Defendants admit ANR's restated 2000 and 2001 financial statements restated minimum interest guarantee interest payments as expenses and made related DAC adjustments; that ANR's November 19, 2002 8-K stated that ANR would be restating its 2000 and 2001 and first and second quarter 2002 financial statements; and that plaintiffs have correctly quoted portions of the 8-K (but deny that the portions italicized by plaintiffs were italicized or emphasized in the original). The XL Capital Defendants deny the remaining allegations.

209.    The XL Capital Defendants admit that plaintiffs have correctly quoted a sentence from ANR's November 19, 2002 8-K, but deny that the portions italicized by plaintiffs were italicized or emphasized in the original. The XL Capital Defendants deny the remaining allegations.

210.    The XL Capital Defendants admit that plaintiffs have correctly quoted portions of ANR's November 19, 2002 8-K, but deny that the portions italicized by plaintiffs were italicized or emphasized in the original, and deny the remaining allegations.

211.    Admitted.

Plaintiffs' Subheading:
"Post-Class Period Events"

212.    Admit that ANR's January 2, 2003 press release stated: that ANR had "transferred five blocks of life reinsurance business to XL, which has in turn entered into a 50% quota share reinsurance contract with the Company with respect to four of those blocks of business"; that the transfer enabled ANR "to satisfy a substantial portion of the collateral requirements under its reinsurance contracts"; and that ANR expected "to record a non-cash charge in the fourth quarter of 2002 of at least $20 million in connection with the writedown of deferred acquisition costs associated with the contracts transferred to XL." The XL Capital Defendants deny the remaining allegations.

213.    Admit the allegations of the second sentence, and that on February 24, 2003, ANR issued a press release stating that it had "ceased writing new business and had notified its existing customers that it will not be accepting any new business under its existing treaties on their current terms." The XL Capital Defendants deny the remaining allegations.

214.    Admit the allegations of the first two sentences (except for matters of emphasis, which are denied); that ANR's restated financial statements for 2000 treated as an expense the minimum interest guarantee payments that ANR had only later learned it was then making; and that ANR's 2001 10-K-A stated that expenses associated with the Transamerica contract "generally accrue at a rate of approximately 2.75% of the assets annually," and that ANR had during 2000 sought to determine the validity of "unexpected

48

increases in asset management expenses." The XL Capital Defendants deny the remaining allegations.

215.    Admit that ANR's Proxy Statement, filed on April 12, 2002, had erroneously reported certain information relating to Atkin's transactions in ANR securities; and that ANR's 2001 10-K-A corrected the error. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, consequently, deny them.

216.    Admit that plaintiffs have correctly quoted portions of ANR's 1999, 2000 and 2001 Forms 10-K and ANR's 2001 10-K-A, and that the wording of the latter differs from that of the former, but deny the remaining allegations.

217.    Admit that plaintiffs have correctly quoted a portion of ANR's 2001 10-K-A, but deny the remaining allegations.

218.    Admit that on April 21, 2003, ANR issued a press release announcing: that it had been notified by the NYSE that ANR did not satisfy the NYSE's "continued listing standards as of [April 8, 2003] because the average closing price of the Company's common shares had been below $1.00 for a 30 consecutive trading day period"; that the NYSE would commence delisting proceedings if the Company could not "achieve a $1.00 average share price for 30 consecutive trading days within six months of the receipt of this notification"; and that the NYSE was "considering whether the Company continues to meet certain of the NYSE's qualitative continued listing standards due to concerns over the

49

Company's financial condition." The XL Capital Defendants deny the remaining allegations.

219.   Lack knowledge or information sufficient to form a belief as to the truth of the allegations, and, consequently, deny them.

220.   Admit that on July 2, 2003, ANR filed a 2002 10-K-A and that plaintiffs have correctly quoted a sentence from the 10-K-A, but deny the remaining allegations.

> Plaintiffs' Heading:
> "DEFENDANTS' FALSE AND
> MISLEADING FINANCIAL STATEMENTS" — Denied.

Plaintiffs' Subheading:
"Violations of Generally Accepted Accounting Principles (GAAP)" — Denied.

221.   Admit that each of ANR's Class Period Forms 10-K contained a "Report of Management," which included a statement that "[t]he consolidated financial statements included in this report were prepared in accordance with accounting principles generally accepted in the United States of America applied on a consistent basis," and a "Report of Independent Auditors," which stated the auditors' opinion that "the consolidated financial statements . . . present fairly, in all material respects, the financial position of the Company and its subsidiaries . . . and the results of their operations and cash flows . . . in conformity with accounting principles generally accepted in the United States of America." The XL Capital Defendants further admit that each of its Class Period Forms 10-Q prior to August 15, 2002 contained a section titled "Basis of Presentation," which stated that "[t]he accompanying unaudited consolidated financial statements of the Company have been

50

prepared in accordance with accounting principles generally accepted in the United States of America ("U.S. GAAP") for interim financial information and in accordance with Regulation SX. Accordingly, they do not include all information in the footnotes required by U.S. GAAP for complete financial statements." The XL Capital Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations concerning ANR's accounting practices and their compliance with GAAP beyond what information was presented by management and KPMG to Defendants O'Hara and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

222.    Lack knowledge or information sufficient to form a belief as to truth of the allegations concerning ANR's accounting practices and their compliance with GAAP beyond what information was presented by management and KPMG to Defendants O'Hara and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations as set forth in paragraph 222 and subparagraphs (a), (b), (c), and (d). The XL Capital Defendants deny the remaining allegations.

223.    Admitted.

224.    Admitted (except lack knowledge or information sufficient to form a belief as to the truth of the exact quotation plaintiffs make from the AICPA professional standards, and, consequently, deny that allegation).

51

Plaintiffs' Subheading:
"ANR Improperly Failed to Disclose Significant
Accounting Policies, Practices and Relevant Trends" — Denied.

225. Admit the allegations of the first sentence. The XL Capital
Defendants lack knowledge or information sufficient to form a belief as to truth of the
allegations concerning ANR's accounting practices and their compliance with GAAP
beyond what information was presented by management and KPMG to Defendants O'Hara
and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations.
The XL Capital Defendants deny the remaining allegations.

226. Lack knowledge or information sufficient to form a belief as to truth
of the allegations concerning ANR's accounting practices and their compliance with GAAP
beyond what information was presented by management and KPMG to Defendants O'Hara
and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations.
The XL Capital Defendants deny the remaining allegations.

227. Admit that ANR did not in its public statements discuss the specific
future lapse rate assumptions it was using to determine its deferred acquisition cost .
amortization until its October 26, 2001 conference call, and that ANR did not in its public
statements discuss the future investment return assumptions it was using for that purpose
until its January 16, 2002 conference call. The XL Capital Defendants lack knowledge or
information sufficient to form a belief as to truth of the allegations concerning ANR's
accounting practices and their compliance with GAAP beyond what information was
presented by management and KPMG to Defendants O'Hara and Esposito for disclosure in

ANR's SEC filings and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

228.    Admitted.

229.    Admitted, except deny that the portion of SEC Interpretive Release No. 34-26831 that plaintiffs have italicized was italicized or emphasized in the original and that plaintiffs have correctly quoted the Release (the final portion actually reads "and reasonably likely to have material effects on the registrant's financial condition or results of operation").

230.    Admitted.

231.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning ANR's knowledge of minimum interest guarantee payments made during 2000 and the first three quarters of 2001 and ANR's accounting of these payments and, consequently, deny these allegations. The XL Capital Defendants admit that ANR's restated financial statements restated minimum interest guarantee payments as expenses and that ANR did not until the filing of its November 19, 2002 8-K specifically describe in its public filings the approximate percentages of policyholder premiums that IL Annuity had invested, respectively, in all the various investment strategies, the yield on ANR's Funds Withheld at Interest asset for the Transamerica contract, the book and market values of the assets invested in the various investment strategies, and how various factors affect the prices of convertible bonds. The XL Capital Defendants further lack knowledge or information sufficient to form a belief as to the truth of the allegations

53

concerning ANR's knowledge of the surrender rates associated with the Transamerica contract and the performance of the assets underlying the contract and the propriety of ANR's pricing and subsequent accounting of the Transamerica contract beyond what information was presented by management and KPMG to Defendants O'Hara and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

Plaintiffs' Subheading:
"ANR Improperly Failed to Acknowledge Losses,
or Accrue Liabilities for Future Policy Benefits" — Denied.

232. Admitted.

233. Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether minimum interest guarantee payments in connection with surrenders should be recorded as expenses; ANR's knowledge of minimum interest guarantee payments made during 2000 and the first three quarters of 2001; and ANR's accounting of these payments and, consequently, deny these allegations. The XL Capital Defendants admit that ANR's restated financial statements restated minimum interest guarantee payments as expenses. The XL Capital Defendants further lack knowledge or information sufficient to form a belief as to truth of the allegations concerning ANR's accounting practices and their compliance with GAAP beyond what information was presented by management and KPMG to Defendants O'Hara and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

234.    Admit that ANR disclosed in its 10-K that it had accounted for the Transamerica contract as an investment-type contract within the meaning of FAS 97, but deny the remaining allegations.

235.    Admit that plaintiffs have correctly quoted portions of FAS 97 and SFAS 60, and the allegations of the second sentence. The XL Capital Defendants deny the remaining allegations.

236.    Admit that SFAS 60, ¶¶ 35-37 contain some of the wording cited by plaintiffs, but deny the remaining allegations.

237.    Admit that plaintiffs have correctly quoted portions of FAS 97, ¶ 8 (except deny that the bracketed "[an]" appears in the original), but deny the remaining allegations.

238.    Admit that plaintiffs have correctly quoted portions of SFAS 60 (except deny that the portions italicized by plaintiffs were italicized or emphasized in the original), but deny the remaining allegations.

239.    Lack knowledge or information sufficient to form a belief as to truth of the allegations concerning ANR's accounting practices and their compliance with GAAP beyond what information was presented by management and KPMG to Defendants O'Hara and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

240.    The XL Capital Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations concerning ANR's accounting practices and their compliance with GAAP beyond what information was presented by management and KPMG to Defendants O'Hara and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

241.    Admit the allegations of the first, second and third sentences concerning the partial contents of SFAS 5. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning ANR's accounting of minimum interest guarantee payments and, consequently, deny them. The XL Capital Defendants further lack knowledge or information sufficient to form a belief as to truth of the allegations concerning ANR's accounting practices and their compliance with GAAP beyond what information was presented by management and KPMG to Defendants O'Hara and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

242.    Admit that FASB Interpretation No. 14 is titled "Reasonable Estimation of the Amount of a Loss," and that plaintiffs have paraphrased a portion of one paragraph of the Interpretation (but omitted other portions). The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning ANR's accounting of minimum interest guarantee payments and, consequently, deny them. The XL Capital Defendants further lack knowledge or information sufficient to form a belief as to truth of the allegations concerning ANR's accounting practices and their

56

compliance with GAAP beyond what information was presented by management and KPMG to Defendants O'Hara and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

243.    Admitted, except deny that the portion of Regulation S-X plaintiffs have italicized was italicized or emphasized in the original, and lack knowledge and information sufficient to form a belief as to the truth of the allegations concerning what the SEC thought in promulgating Regulation S-X, and, consequently, deny those allegations.

244.    Admit that plaintiffs have correctly quoted a portion of APB Opinion No. 28, ¶ 17. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to truth of the allegations concerning ANR's accounting practices and their compliance with GAAP beyond what information was presented by management and KPMG to Defendants O'Hara and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

245.    Admitted.

246.    Lack knowledge or information sufficient to form a belief as to truth of the allegations concerning ANR's accounting practices and their compliance with GAAP beyond what information was presented by management and KPMG to Defendants O'Hara and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

247. Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning ANR's knowledge of minimum interest guarantee payments made in 2000 and the first three quarters in 2001 and ANR's accounting of these payments and, consequently, deny these allegations. The XL Capital Defendants admit that ANR's restated financial statements restated minimum interest guarantee payments as expenses; that ANR decided, as a result of discussions with the SEC staff, to restate its 2000, 2001 and interim 2002 financial statements to, *inter alia*, implement FASB 133; that ANR's restated financial statements implemented FASB 133 regarding accounting for "embedded derivatives"; and that plaintiffs have correctly quoted a fragmentary portion of APB Opinion No. 20. The XL Capital Defendants further lack knowledge or information sufficient to form a belief as to truth of the allegations concerning ANR's accounting practices and their compliance with GAAP beyond what information was presented by management and KPMG to Defendants O'Hara and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations. The XL Capital Defendants deny the remaining allegations.

Plaintiffs' Subheading:
"ANR Improperly Failed to Report
Its Financial Results by Segments" — Denied.

248. Admit that SFAS No. 131 is titled "Disclosures About Segments of an Enterprise and Related Information" and requires public business enterprises to report information by business segment where certain conditions are met, but deny that SFAS No. 131 required ANR prior to reporting its 2002 quarterly results, to report its annuity and life businesses as separate segments, and deny the remaining allegations.

58

249.    The XL Capital Defendants incorporate by reference their answer to

paragraph 248 above, as if set forth fully herein.

250.    Lack knowledge or information sufficient to form a belief as to the

truth of the allegations concerning any review by ANR's president and CEO of ANR's

results on a segmented basis and, consequently, deny these allegations. The XL Capital

Defendants deny the remaining allegations.

Plaintiffs' Subheading:
"ANR Improperly Failed to Disclose its
Full Risks Related to the Funds Withheld at
Interest Associated with the Transamerica Contract" — Denied.

251.    Admit that plaintiffs have correctly quoted a portion of SFAS No. 115

(except deny that the portion that plaintiffs have italicized was italicized or emphasized in

the original), but deny the remaining allegations.

252.    Admit that SEC Regulation S-K, Item 305, 17 C.F.R § 229.305 (not

17 C.F.R. § 229.303) is titled "Quantitative and Qualitative Disclosures about Market Risk,"

but deny the remaining allegations.

253.    Denied.

254.    Denied.

Plaintiffs' Subheading:
"ANR's Materially False and Misleading Financial Statements" — Denied.

255.    Lack knowledge or information sufficient to form a belief as to truth

of the allegations concerning ANR's accounting practices and their compliance with GAAP

beyond what information was presented by management and KPMG to Defendants O'Hara

and Esposito for disclosure in ANR's SEC filings and, consequently, deny these allegations as set forth in paragraph 255 and subparagraphs (a-h). The XL Capital Defendants deny the remaining allegations.

Plaintiffs' Heading:
"ADDITIONAL SCIENTER ALLEGATIONS"

256.    Lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning ANR's knowledge of and access to information from its cedent, Transamerica, concerning the nature of the annuity policies issued by IL Annuity and the performance of the reinsurance contract and ANR's understanding of the significance to the contract's long-term profitability of surrender rates, state-imposed minimum interest guarantees and investment returns on, *inter alia*, the assets invested in convertible bonds and, consequently, deny these allegations. The XL Capital Defendants deny that they had access to the foregoing information and deny the remaining allegations.

Plaintiffs' Subheading:
"Defendants' Knowledge of the Falsity of ANR's Representations" — Denied.

257.    Admit the allegations of the second, third, fourth and fifth sentences, but deny the remaining allegations.

258.    Admit that ANR filed its Registration Statement with the SEC on December 24, 1997, and that plaintiffs have correctly quoted portions of the Registration Statement (except deny that the portions italicized by plaintiffs were italicized or emphasized in the original), but deny the remaining allegations.

60

259.    Admit that plaintiffs have correctly quoted a portion of ANR's Registration Statement, but deny the remaining allegations.

260.    Denied.

261.    Admit that ANR's 2001 10-K-A stated: that Transamerica had supplied ANR with monthly settlement reports and that ANR analyzed policyholder surrenders and the investment performance of the assets underlying the contract; that ANR had noticed that surrenders for the policies from mid-1999 on had been higher than anticipated in pricing; and that ANR had during 2000 sought to determine the validity of "unexpected increases in asset management fees." The XL Capital Defendants deny that they had the same access to this information and deny the remaining allegations.

262.    Admit that the Individual Defendants have the experience set forth in ANR's 2000 and 2001 Proxy Statements, but deny the remaining allegations.

263.    Admit that during ANR's April 24, 2002 conference call, Burke stated that, going forward, ANR would be reporting separately its results for the annuity and life segments and that "[o]ur belief is that this type of presentation is far more meaningful and informative to you. It is also the basis upon which Larry monitors results." The XL Capital Defendants deny the remaining allegations.

264.    Admit that defendants Doyle, Hammer, Esposito and O'Hara signed each 10-K during the Class Period; that defendant Atkin signed the 1999 and 2000 Forms 10-K; and that defendant Burke signed the 2001 10-K. The XL Capital Defendants further admit that each of the foregoing Forms 10-K contained a "Report of Management," which

stated: that "[m]anagement of the Company has established and maintains a system of internal controls designed to provide reasonable assurance as to the integrity and reliability of the consolidated financial statements"; that "[m]anagement of the Company has primary responsibility for preparing the consolidated financial statements and for their integrity and objectivity"; and that "[t]he consolidated financial statements included in this report were prepared in accordance with accounting principles generally accepted in the United States of America applied on a consistent basis." The XL Capital Defendants deny the remaining allegations.

265.    Admit that each of ANR's Forms 10-K stated: that under Bermuda law, Annuity & Life Reassurance, Ltd., ANR's Bermuda operating subsidiary, was "required to submit an annual actuary's certificate when filing its Statutory Financial Return"; that the "certificate must state whether or not in the opinion of the insurer's approved actuary, the aggregate amount of the liabilities of the insurer in relation to long term business as at the end of the relevant year exceeded the aggregate amount of those liabilities as shown in the insurer's statutory balance sheet"; that Annuity & Life, Reassurance, Ltd.'s approved actuary was Robert P. Mills; that Bermuda law "provides that the value of the long term business assets of an insurer carrying on long term business must exceed the amount of its long term business liabilities by at least $250,000"; and that Annuity & Life Reassurance, Ltd. "met the minimum statutory capital and surplus requirements" as of the end of the year covered by the particular 10-K. The XL Capital Defendants also admit: that several of its Forms 10-K stated that ANR's underwriting and pricing were based in part on actuarial models developed by an "experienced underwriting team"; that the NAIC has promulgated an Actuarial Opinion and Memorandum Regulation,

which has been adopted in substance in various states of the United States (but deny that that Regulation applies to the actuarial work that must be performed pursuant to Bermuda law in connection with the actuarial certificate that accompanies a Bermuda insurer's Statutory Financial Return); and that plaintiffs have in general terms in the fourth, fifth and sixth sentences correctly described certain aspects of the process known as cash flow testing as explained by the Regulation. The XL Capital Defendants deny the remaining allegations.

266.    Admit that plaintiffs have correctly quoted certain fragmentary portions of ASOP Nos. 22 and 7, but deny that those standards, which are promulgated by the American Academy of Actuaries, apply to the actuarial work that must be performed pursuant to Bermuda law in connection with the actuarial certificate that accompanies a Bermuda insurer's Statutory Financial Return. The XL Capital Defendants deny the remaining allegations.

267.    Admit that plaintiffs have correctly quoted portions of ASOP No. 11 (except deny that the portions that plaintiffs have italicized were italicized or emphasized in the original), but deny that that standard, which was promulgated by the American Academy of Actuaries, applies to the actuarial work that must be performed pursuant to Bermuda law in connection with the actuarial certificate that accompanies a Bermuda insurer's Statutory Financial Return. The XL Capital Defendants deny the remaining allegations.

268.    Denied.

Plaintiffs' Subheading:
"Defendants' Motive to Commit Fraud" — Denied.

269. Admit that financial ratings were important to ANR's business, but deny the remaining allegations.

270. Admit that ANR's Proxy Statement, filed on April 12, 2002, erroneously reported certain information relating to Atkin's transactions in ANR securities and that ANR's 2001 10-K-A, filed on March 21, 2003, corrected the error. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, consequently, deny them.

271. Admit that ANR in its public statements first made specific reference to difficulties with its Transamerica contract during ANR's July 31, 2001 conference call; that ANR in its public filings first stated that its "other income" consisted primarily of net surrender fees in its second quarter 2001 10-Q, filed on August 13, 2001; and that ANR announced its first charge related to the Transamerica contract on October 25, 2001. The XL Capital Defendants lack knowledge or information sufficient to form a belief as to the truth of remaining allegations and, consequently, deny them.

272. Admit that Atkin had not sold ANR stock prior to May 2001, but deny the remaining allegations.

273. Denied.

64

> Plaintiffs' Heading:
> "APPLICABILITY OF PRESUMPTION OF RELIANCE:
> FRAUD-ON-THE-MARKET-DOCTRINE" — Denied.

274.    Admit that ANR securities traded first on NASDAQ and later on the

NYSE, but deny the remaining allegations.

275.    Denied.

276.    Denied.

277.    Admit the allegations of subparagraphs (a), (b), and (c), but deny the

remaining allegations.

278.    Admit that ANR was followed by several securities analysts

employed by major brokerage firms who at times wrote reports, but lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations and,

consequently, deny them.

279.    Lack knowledge or information sufficient to form a belief as to the

truth of the allegations of the first sentence, and, consequently, deny them. The XL Capital

Defendants deny the remaining allegations.

> Plaintiffs' Heading:
> "NO SAFE HARBOR" — Denied.

280.    Denied.

65

Plaintiffs' Heading:
"COUNT I" — Denied.

Plaintiffs' Subheading:
"Violation of Section 10(b) of the Exchange Act and
Rule 10b-5 Promulgated Thereunder Against ANR and the Individual Defendants" —
Denied.

281.    The XL Capital Defendants incorporate by reference their answers to

paragraphs 1 to 280 above, as if set forth fully herein.

282.    Denied.

283.    Denied.

284.    Denied.

285.    Denied.

286.    Denied.

287.    Denied.

288.    Denied.

289.    Denied.

290.    Denied.

291.    Denied.

Plaintiffs' Heading:
"COUNT II" — Denied

Plaintiffs' Heading:
"Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants and XL Capital" — Denied.

   292.   The XL Capital Defendants incorporate their answers to paragraphs 1

to 291 above by reference, as if set forth fully herein.

   293.   Denied.

   294.   Denied.

   295.   Denied.

   296.   Admit that plaintiffs have correctly quoted a portion of XL Capital's

2000 10-K (except deny that the portion plaintiffs have italicized was italicized or

emphasized, and that the bracketed symbols appeared, in the original), but deny the

remaining allegations.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

   297.   The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

   298.   The Complaint fails to plead fraud with particularity as required by

the Private Securities Litigation Reform Act of 1995 and Federal Rule of Civil Procedure

9(b).

## THIRD AFFIRMATIVE DEFENSE

299.   To the extent the Complaint is based on any forward-looking statement by ANR, plaintiffs are barred from recovery by the "bespeaks caution" doctrine because ANR provided the investing public with sufficiently specific risk disclosures or other cautionary statements concerning the subject matter of each forward-looking statement to render each such forward looking statement immaterial.

## FOURTH AFFIRMATIVE DEFENSE

300.   To the extent that the Complaint is based on any forward-looking statement contained in ANR's public disclosures, plaintiffs are barred from recovery by the safe harbor provision of the Private Securities Litigation Reform Act of 1995 because (i) each such forward-looking statement was identified as a forward-looking statement and was accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ from those in the forward-looking statement; (ii) assuming that any such forward-looking statement was false and misleading, and The XL Capital Defendants deny that any forward-looking statement was false or misleading, the forward-looking statement was not made with actual knowledge that it was false or misleading; and (iii) each such forward-looking statement was immaterial.

## FIFTH AFFIRMATIVE DEFENSE

301.   To the extent they have been damaged, if at all, plaintiffs' failure to mitigate their damages limits or bars recovery.

68

## SIXTH AFFIRMATIVE DEFENSE

302.    Plaintiffs cannot recover against the XL Capital Defendants because the losses, if any, sustained by plaintiffs resulted from causes other than the acts and occurrences alleged in the Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

303.    Each of ANR's Class Period Forms 10-K contained a "Report of Independent Auditors," which stated that KPMG had audited ANR "in accordance with auditing standards generally accepted in the United States of America," and that, in KPMG's opinion, ANR's "consolidated financial statements ... present fairly, in all material respects, the financial position of the Company and its subsidiaries.... and the results of their operations and cash flows . . . in conformity with accounting principles generally accepted in the United States of America."

304.    KPMG also reviewed the accounting principles ANR applied in issuing its interim quarterly financial statements, and did not disagree with management's opinion that those statements were prepared in accordance with GAAP.

305.    The XL Capital Defendants respected KPMG's expertise and in good faith relied, when signing ANR's Forms 10-K, on KPMG's unqualified opinions that ANR's year-end financial statements fairly presented in all material respects the financial position of ANR and its subsidiaries in conformity with GAAP, and on KPMG's interim quarterly reviews of the accounting principles ANR applied, and nondisagreement with management's

opinion that ANR's interim quarterly financial statements were prepared in accordance with GAAP.

## EIGHTH AFFIRMATIVE DEFENSE

306.    Each of ANR's Class Period Forms 10-K contained a "Report of Management," which stated, *inter alia*, that the "Management of the Company has primary responsibility for preparing the accompanying financial statements and for their integrity and objectivity," that "[t]he financial statements included in [the Company's filings] were prepared in accordance with generally accepted accounting principles in the United States applied on a consistent basis ... [and] include amounts that are based on management's best estimates and judgements," and that "Management also prepared the other information presented in the annual report and is responsible for its accuracy and consistency with the financial statements."

307.    The XL Capital Defendants, in good faith, when signing ANR's Forms 10-K, relied on the representations of Management that the financial statements that Management had prepared were in compliance with GAAP and fairly presented the financial position of ANR in all material respects.

## NINTH AFFIRMATIVE DEFENSE

308.    To the extent that plaintiffs establish that ANR made material misrepresentations or omissions, which the XL Capital Defendants deny, plaintiffs are barred from recovery because they did not rely on such misrepresentations and/or omissions.

70

## TENTH AFFIRMATIVE DEFENSE

309.    Plaintiffs' claims are barred by the applicable statute of limitations.

## ELEVENTH AFFIRMATIVE DEFENSE

310.    The XL Capital Defendants acted in good faith in connection with the statements, omissions, actions and/or inactions of which plaintiffs complain.

## TWELFTH AFFIRMATIVE DEFENSE

311.    In the event that plaintiffs establish that ANR is liable to plaintiffs, which the XL Capital Defendants deny, the XL Capital Defendants did not culpably participate in any of the statements, omissions, actions and/or inactions giving rise to any such ANR liability.

## THIRTEENTH AFFIRMATIVE DEFENSE

312.    The XL Capital Defendants lacked the power to control the actions of ANR.

## CROSS-CLAIM

Pursuant to Federal Rule of Civil Procedure 13(g), the XL Capital Defendants, by its undersigned attorneys, alleges a cross-claim for contribution, to the full extent permitted by law, against defendants KPMG in Bermuda and KPMG LLP (United States) (collectively "KPMG") as follows:

313.    The XL Capital Defendants repeat and reallege its answers and affirmative defenses set forth in paragraphs 1-312 as set forth above.

314.    As alleged in the First Amended Class Action Complaint filed against KPMG on January 13, 2004 (the "KPMG Complaint"), Defendant KPMG in Bermuda has offices at Crown House, Par-La-Ville Road, Hamilton HM 08 Bermuda and Defendant KMPG LLP (United States) has its principal office at 345 Park Avenue, New York, NY 10154.

315.    At all relevant times, XL Capital Ltd. has been a corporation duly organized and existing under the laws of the Cayman Islands with offices at XL House, One Bermudiana Road, Hamilton, Bermuda; Brian O'Hara was the President and CEO of XL Capital Ltd. and was a director of ANR during the purported class period; and Michael P. Esposito, Jr. was the Chairman of the Board of Directors of XL Capital Ltd. and was a director of ANR during the purported class period.

316.    This Court has original jurisdiction over the claims asserted in the Amended Complaint and the KPMG Complaint and over this cross-claim seeking contribution with respect to these complaints pursuant to 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 78aa.

317.    The Amended Complaint alleges that Defendants O'Hara and Esposito are liable to plaintiffs under Section 10(b) of the 1934 Act and further alleges that each of the XL Capital Defendants are liable to plaintiffs under Section 20(a) of the 1934 Act. The XL Capital Defendants deny these allegations.

318.    The KPMG Complaint alleges a violation of Section 10(b) against KPMG and a violation of Section 20(a) against KPMG LLP (United States) arising out of similar allegations to those asserted in the Amended Complaint. As alleged in the KPMG Complaint, KPMG purported to audit ANR's financial statements for the fiscal years ended December 31, 1999, December 31, 2000, and December 31, 2001 and issued audit opinions, incorporated into ANR's financial reports and publicly filed with the SEC, representing that ANR's financial statements were fairly presented in accordance with GAAP. The KPMG Complaint further alleges that KPMG made misstatements and omitted material facts that artificially inflated the market prices for ANR securities and did so with actual knowledge or reckless disregard of the falsity of its statements.

319.    Subject to the denials and affirmative defenses asserted above, the specific allegations set forth in the Amended Complaint and the KPMG Complaint against KPMG are incorporated by reference herein and made part of this cross-claim.

320.    While the XL Capital Defendants deny any wrongdoing or liability under Section 10(b) or 20(a) of the Securities Act of 1934, in the event that any of the XL Capital Defendants are found liable to plaintiffs, then the XL Capital Defendants are entitled to contribution from KPMG pursuant to and to the full extent permitted by Sections 10(b)

73

and 20(a) of the 1934 Act and the Private Securities Litigation Reform Act, 15 U.S.C. §

78u-4(f).

WHEREFORE, the XL Capital Defendants respectfully ask that this Court

grant judgment in their favor and against plaintiffs, together with attorneys' fees and costs in

this action and such other and further relief as the Court deems just and proper.

Dated: New York, New York
     April 8, 2004

By:_____

Thorn Rosenthal (ct. 21473)
Tammy L. Roy (ct. 25188)
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000
(212) 269-5420 (fax)
trosenthal@cahill.com
troy@cahill.com

Lawrence W. Andrea (ct. 18427)
57 North Street, Suite 313
Danbury, Connecticut 06810
(203) 743-6454
(203) 778-5770 (fax)
counsel@LawrenceWAndrea.com

Attorneys for Defendants XL Capital, Ltd., Brian
O'Hara, and Michael P. Esposito Jr.

74

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Answer to Plaintiffs' Consolidated Amended Class Action Complaint was mailed first class postage prepaid, on April 7, 2004 to the following counsel of record:

Erin G. Comite, Esq.
Scott + Scott, LLC
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415

Beth Kaswan, Esq.
Milberg, Weiss, Bershad, Hynes &
Lerach LLP
One Pennsylvania Plaza
New York, New York 10119

Marc Edelson, Esq.
Hoffman & Edelson
45 West Court St.
Doylestown, Pennsylvania 18901

Andrew M. Schatz, Esq.
Schatz & Nobel
330 Main Street
Hartford, Connecticut 06106-1817

James E. Miller, Esq.
Shepherd, Finkelman, Miller & Shah,
LLC
One Lewis Street
Hartford, Connecticut 06103

Elias A. Alexiades, Esq.
215 Church Street
New Haven, Connecticut 06525

Terence J. Gallagher, Esq.
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT  06901

John R. Horvack, Jr., Esq.
Carmody & Torrance LLP
50 Leavenworth Street
P.O. Box 1110
Waterbury, Connecticut 06721-1110

Francis S. Chlapowski, Esq.
Morgan, Lewis & Bockius, LLP
101 Park Avenue, 44th Floor
New York, New York 10178

John J. Robinson, Esq.
McCarter & English, LLP
CityPlace I
185 Asylum Street
Hartford, Connecticut 06103

R. Nicholas Gimbel, Esq.
McCarter & English, LLP
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, Pennsylvania  19103

Josept T. Baio, Esq.
Wilkie, Farr & Gallagher
787 Seventh Avenue
New York, New York 10019-6099

James H. Bicks, Esq.
Wiggin & Dana
400 Atlantic Street, 7th Floor
P.O. Box 110325
Stamford, Connecticut 06911-0325

Frederick S. Gold
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, Connecticut 06901

Gary R. Battistoni
Drinker, Biddle & Reath
One Logan Square
18th & Cherry Sts.
Philadelphia, Pennsylvania 19103-6996

Michael J. Malone
King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036

John W. Cannavino, Esq.
Cummings & Lockwood LLC
Four Stamford Plaza
107 Elm Street
Stamford, CT 06902

Peter S. Olson, Esq.
Pulman & Comley LLC
850 Main Street
Bridgeport, Connecticut 06601

Tammy L. Roy