**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **SHERRY SCHNALL, Individually and on Behalf of All Others Similarly Situated,** | : | |
| | : | |
| | : | **CONSOLIDATED CIVIL ACTION** |
| **Plaintiff,** | : | No. 3:02-CV-2133 (GLG) |
| | : | |
| **v.** | : | |
| | : | |
| **ANNUITY AND LIFE RE (HOLDINGS), LTD.,** | : | |
| **XL CAPITAL, LTD., LAWRENCE S. DOYLE,** | : | |
| **FREDERICK S. HAMMER, JOHN F. BURKE,** | : | |
| **WILLIAM W. ATKIN, BRIAN O'HARA, AND** | : | |
| **MICHAEL P. ESPOSITO JR.,** | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANT JOHN F. BURKE'S**
**ANSWER TO THE CONSOLIDATED AMENDED COMPLAINT**

Defendant John F. Burke ("Burke"), by and through his undersigned counsel, denies

that he is in any way liable to plaintiffs and hereby responds to the numbered paragraphs of

plaintiffs' Consolidated Amended Complaint, as follows:

Plaintiffs' Heading:
"SUMMARY OF COMPLAINT"[1]

1.        Burke admits that plaintiffs purport to bring this action as a class action on behalf of the class as defined.  Burke denies the remaining allegations contained in paragraph 1.

2.        Burke admits, for the period beginning September 17, 2001, the allegations of the first, second and fourth sentences, except that he denies that ANR and its subsidiaries should be referred to collectively as ANR for all purposes for the period beginning September 17, 2001.  Burke further admits, for the period beginning September 17, 2001, that for an annuity reinsurance contract, ANR normally expects over the life of the contract to make its profits primarily by earning "spreads" between amounts due policyholders and the earnings derived from investment of policyholder premiums.  Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 with respect to the period prior to September 17, 2001 and they are therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in paragraph 2.

3.        Burke admits, for the period beginning September 17, 2001, the allegations of the first, second and third sentences.  Burke states that ANR's public filings upon which the allegations in the fourth sentence are based are documents that speak for themselves and any

---

[1]        No response is required to the headings in the Complaint, which do not comply with the requirements of Rule 4 of the Federal Rules of Civil Procedure, and do not constitute averments of (continued).(continued).(continued).

characterization of them by plaintiffs is therefore denied.  Burke is without knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph

3 with respect to the period prior to September 17, 2001 and they are therefore denied and

strict proof thereof is demanded.  Burke denies the remaining allegations contained in

paragraph 3.

4.         Burke admits that ANR is a Bermuda corporation not subject to United States

corporate taxes; that most of ANR's client companies are based in the United States and

subject to state regulations; that ANR and Annuity and Life Reassurance, Ltd., ANR's

Bermuda operating subsidiary, were not registered or licensed to do business in any United

States jurisdiction, and, as a result, needed to post collateral in connection with a number of

reinsurance agreements; that ANR sometimes posted collateral by obtaining letters of credit

from banks; that ANR's financial ratings were sometimes important in connection with

obtaining such letters of credit; and that some of ANR's contracts contain provisions relating

to ANR's financial ratings. Burke is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in the first sentence of paragraph 4 and they

are therefore denied and strict proof thereof is demanded.  Burke denies the remaining

allegations contained in paragraph 4.

5.         Burke states that the contract with Transamerica is a document that speaks for

itself and any characterization of it by plaintiffs is therefore denied.  Burke admits that ANR's

---

fact.  To the extent that any response to such headings is deemed required, however, Burke denies any
averments therein.

1999 10-K reported interest sensitive contracts liabilities to policyholders of approximately $1.6 billion.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 5 and they are therefore denied and strict proof thereof is demanded.

6.      Burke admits, based upon knowledge, information and belief, that the Transamerica contract differs from ANR's other annuity reinsurance contracts in that the annuity products reinsured allowed policyholders to select among four "investment strategies";3 that IL Annuity has retained investment managers, which have historically invested policyholder premiums consistent with the policyholder's selected investment strategy; that IL Annuity has historically credited rates reflecting the yield (consisting of income plus net realized capital gains and losses, less IL Annuity's targeted gross margin or aggregate expenses) on the assets then supporting the selected investment strategy; that various state laws require that fixed annuity policyholders receive minimum guaranteed interest of 3% to 3.5% per annum; and that holders of the underlying annuity policies had the opportunity to earn more than the guaranteed minimum interest rate if their selected investment strategy performed well.  Burke denies, based upon knowledge, information and belief, the remaining allegations contained in paragraph 6.

7.      Burke admits the allegations of the second and third sentences, except that Burke denies the characterizations of the interest rate bonds pay as "guaranteed," and the convertible bonds pay as "typically," "relatively low."  Burke further admits, based upon knowledge, information and belief, that at various points in time, consistent with policyholder

investment strategy selections, approximately 70% of the premiums held and managed by IL Annuity were invested in convertible bonds.  Burke denies, based upon knowledge, information and belief,  the remaining allegations contained in paragraph 7.

8.          Burke denies, based upon knowledge, information and belief, the allegations contained in paragraph 8.

9.          Burke admits, based upon knowledge, information and belief, that IL Annuity charged policyholders an annual management or administrative fee of approximately 2.5% of the assets plus some additional investment management expenses, for total expenses at certain times of approximately 2.75% of the assets annually; that under various state laws, policyholders were entitled to minimum guaranteed interest of 3% to 3.5% per annum; and that ANR did not in its public filings state the approximate percentage of assets amount of IL Annuity's aggregate annual expenses until the filing of its November 19, 2002 Report on Form 8-K ("November 19, 2002 8-K").  Burke denies, based upon knowledge, information and belief, the remaining allegations contained in paragraph 9.

10.          Burke admits that discussions between ANR and the SEC staff resulted in ANR's decision to restate its 2000 and 2001 financial statements.  Burke states that ANR's public statements and disclosures are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 10.

11.          Burke states that ANR's 1999 10-K, quoted and referred to by plaintiffs in paragraph 11, is a document that speaks for itself and any characterization of it by plaintiffs is

therefore denied.  Burke admits that he initiated a review of the recoverability of capitalized

costs.  Burke denies the remaining allegations contained in paragraph 11.

12.      Burke admits that ANR's financial ratings were at various times downgraded;

that ANR has announced that it has ceased writing new reinsurance agreements and does not

anticipate resuming to do so in the foreseeable future; and that ANR and its auditor have

stated that there is substantial doubt about ANR's ability to continue as a going concern.

Burke admits that ANR restated its financial statements for the fiscal years ended December

31, 2000 and 2001 and for the first and second quarters of the fiscal year ended December 31,

2002.  Burke admits that on August 16, 2001, ANR's stock closed at $36.98, and that on

November 20, 2002, ANR's stock closed at $2.24.  Burke denies the remaining allegations

contained in paragraph 12.

Plaintiffs' Heading:<br>"<u>JURISDICTION AND VENUE</u>"

13.      The allegations in this paragraph are conclusions of law as to which no

response is required, and such allegations are therefore denied.

14.      The allegations in this paragraph are conclusions of law as to which no

response is required, and such allegations are therefore denied.

15.      Burke admits, for the period beginning September 17, 2001, that certain of the

acts and transactions of which plaintiffs complain involved use of the mails and the facilities

of national securities markets.  Burke is without knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph 15 with respect to the period

prior to September 17, 2001 and they are therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in paragraph 15.

16.        The allegations in the first sentence of this paragraph are conclusions of law as to which no response is required, and such allegations are therefore denied.  Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the last clause of the second sentence of this paragraph and it is therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in paragraph 16.

Plaintiffs' Heading:
"<u>PARTIES</u>"

17.        Burke is without knowledge or information sufficient to form a belief as to the truth of the allegation that Communication Workers of America purchased ANR common stock, and it is therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in the first sentence of paragraph 17.  Burke admits the allegations of the second sentence of paragraph 17.

18.        Burke is without knowledge or information sufficient to form a belief as to the truth of the allegation that Midstream Investments, Ltd. purchased ANR common stock, and it is therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in the first sentence of paragraph 18.  Burke admits the allegations of the second sentence of paragraph 18.

19.          Burke admits the allegations contained in paragraph 19, except that he denies that Annuity and Life Re America, Inc. is an operating company that directly provides reinsurance, and that ANR has any reinsurance contracts that indemnify the ceding company for all of the risks associated with the underlying insurance policies.

20.          Burke admits the allegations of the first and third sentences.  XL Capital, Ltd.'s ownership of ANR common stock is reflected in publicly - available documents that speak for themselves.

21.          Burke admits the allegations contained in paragraph 21.

22.          Burke admits that Hammer was, throughout the purported class period, the Chairman of ANR's Board of Directors; that from approximately September 12, 2002 until the end of the purported class period, Hammer was a member of the Transition Committee of ANR's Board of Directors that was formed to oversee the management and operations of ANR until a new President and Chief Executive Officer was identified; and that Hammer was at various times a member of ANR's Board of Directors' Executive Committee, Finance and Investment Committee and Corporate Governance Committee.  Burke denies the remaining allegations contained in paragraph 22.

23.          Burke denies that he was ANR's Treasurer.  Burke admits the remaining allegations contained in paragraph 23.

24.          Burke admits the allegations contained in paragraph 24.

25.          Burke admits the allegations contained in paragraph 25.

26.        Burke admits that Esposito was, throughout the purported class period, a Director of ANR and the Chairman of XL Capital's Board of Directors, and that Esposito was at certain times a member of ANR's Board of Directors' Executive Committee and Finance and Investment Committee.  Burke denies the remaining allegations contained in paragraph 26.

27.        Burke admits that plaintiffs have chosen to refer to defendants Doyle, Hammer, Burke, Atkin, O'Hara and Esposito collectively as the "Individual Defendants," but denies that the defendants should be grouped together.

28.        Burke admits that, for the period beginning September 17, 2001, he sometimes had access to certain non-public information about ANR.  Burke states that ANR's publicly -filed financial statements referred to in paragraph 28 are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  The allegations contained in the last sentence of paragraph 28 are conclusions of law as to which no response is required, and such allegations are therefore denied.  Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 as they relate to defendants other than himself, and they are therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in paragraph 28.

29.        The allegations contained in paragraph 29 are conclusions of law as to which no response is required, and such allegations are therefore denied.  To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke admits that he prepared or was provided with copies of certain of ANR's reports, filings and/or press

releases prior to or shortly after their issuance.  Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 as they relate to defendants other than himself, and they are therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in paragraph 29.

30.        The allegations contained in the first sentence and the last clause of the last sentence of paragraph 30 are conclusions of law as to which no response is required, and such allegations are therefore denied.  Burke admits that, for the period beginning September 17, 2001, he participated in the management of the Company and had access to certain non-public information about the Company.  Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 as they relate to defendants other than himself, and they are therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in paragraph 30.

31.        The allegations contained in paragraph 31 are conclusions of law as to which no response is required, and such allegations are therefore denied.

32.        Burke admits that, for the period beginning September 17, 2001, he participated to some extent at certain times in the drafting, preparation and/or approval of certain of the public filings and statements of which plaintiffs complain and sometimes had access to certain non-public information about ANR.  The allegations in the last sentence of paragraph 32 are conclusions of law as to which no response is required, and such allegations are therefore denied. Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 32 as they relate to defendants

other than himself, and they are therefore denied and strict proof thereof is demanded. Burke denies the remaining allegations contained in paragraph 32.

33.     The allegations contained in paragraph 33 are conclusions of law as to which no response is required, and such allegations are therefore denied.

Plaintiffs' Heading:<br>"<u>PLAINTIFFS' CLASS ACTION ALLEGATIONS</u>"

34.     Burke admits that plaintiffs purport to bring this action as a class action on behalf of the class as defined. Burke denies the remaining allegations contained in paragraph 34.

35.     Burke admits the allegations of the second sentence of paragraph 35. Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 35 and they are therefore denied and strict proof thereof is demanded.

36.     The allegations in paragraph 36 are conclusions of law as to which no response is required, and such allegations are therefore denied.

37.     Burke denies that plaintiffs will fairly and adequately represent and protect the interests of the members of the putative class. Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 37 and they are therefore denied and strict proof thereof is demanded.

38.     The allegations in paragraph 38 are conclusions of law as to which no response is required, and such allegations are therefore denied.

39.        The allegations in paragraph 39 are conclusions of law as to which no response is required, and such allegations are therefore denied.

Plaintiffs' Heading:
"SUBSTANTIVE ALLEGATIONS"

Plaintiffs' Subheading:
"Background Facts"

40.        Burke admits the allegations of the first three sentences and the first clause of the fourth sentence.  Burke denies the remaining allegations contained in paragraph 40.

41.        Burke admits that annuity policies often have the features described in the first two sentences, and that higher than originally anticipated surrender rates can have an adverse impact on a contract's profitability.  Burke denies the remaining allegations contained in paragraph 41.

42.        Burke admits the allegations of the first sentence and that various state laws require that fixed annuity policyholders receive minimum guaranteed interest of 3% to 3.5% per annum.  Burke denies the remaining allegations contained in paragraph 42.

43.        Burke admits the allegations contained in paragraph 43, except that he denies the allegations of what constitutes a "typical" reinsurance contract.

44.        Burke admits the allegations of the first four sentences of paragraph 44.  Burke denies the remaining allegations contained in paragraph 44.

45.        Burke admits, based upon knowledge, information and belief, the allegations contained in paragraph 45, except that he denies the characterization of the Transamerica contract as ANR's "principal" annuity reinsurance contract.

46.        Burke admits that IL Annuity's Visionmark policies underlying ANR's Transamerica contract are "investment-type" products within the meaning of FAS 97.  Burke further states that FAS 97 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

47.        The allegations of this paragraph do not conform to Rules 8(e) and 10(b) of the Federal Rules of Civil Procedure, which require that "each averment of a pleading shall be simple, concise and direct . . . ," and that "the contents of each [numbered paragraph] shall be limited as far as practicable to a statement of a single set of circumstances . . . ," and they are therefore deemed denied.  By way of further response, Burke states that ANR's financial statements referred to in paragraph 47 are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  The allegations contained in the fourth and tenth sentences of paragraph 47 are conclusions of law as to which no response is required, and such allegations are therefore denied.  Burke admits, based upon knowledge, information and belief, the allegations contained in the sixth, seventh, eighth and ninth sentences; that ANR did not credit policyholders' accounts to reflect potential minimum interest guarantee payments that might be due if policyholders surrendered immediately; and that historical surrender rates were one factor ANR considered in conducting loss recognition testing.  Burke denies, based upon knowledge, information and belief, the remaining allegations contained in paragraph 47.

48.      Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48 and they are therefore denied and strict proof thereof is demanded.

49.      Burke admits the allegations of the third sentence except the characterization of the benefit as "main."  Burke admits that primary insurers in the United States are required, under state laws, to maintain statutory reserves.  Burke admits that most state laws require, among other things, that the reinsurer be licensed or accredited in the state.  Burke admits, for the period beginning September 17, 2001, that some of ANR's contracts with its cedents required ANR or its subsidiaries to maintain certain financial strength ratings and, because ANR was not licensed or accredited in United States jurisdictions, ANR was required to post collateral in connection with some of its reinsurance contracts.  Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in sentences five, six and seven of paragraph 49 with respect to the period prior to September 17, 2001 and they are therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in paragraph 49.

50.      Burke admits the allegations of the first sentence.  The allegations contained in the second sentence of paragraph 50 appear to be based upon an August 3, 1998 report of Prudential Securities.  Burke states that Prudential Securities' August 3, 1998 report is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

51.      Burke states that ANR's September 29, 1998 press release is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke is

without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 with respect to the period prior to September 17, 2001 and they are therefore denied and strict proof thereof is demanded.  Burke admits that ANR's stock closed at $17.625 on September 28, 1998 and that ANR's stock closed at $19.75 on September 30, 1998.  Burke denies the remaining allegations contained in paragraph 51.

52.        Burke states that ANR's Report on Form 10-K for 1998 ("1998 10-K") is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

53.        Burke states that ANR's Report on Form 10-K for 1999 ("1999 10-K") and its quarterly financial results are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 53.

54.        Burke states that ANR's February 17, 2000 press release is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  The allegations contained in the last sentence of paragraph 54 appear to be based upon a February 22, 2000 report of Prudential Securities.  Burke states that Prudential Securities' February 22, 2000 report is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

Plaintiffs' Subheading:
"Undisclosed Adverse Facts Affecting ANR's Business"

55.        Burke admits that plaintiffs have correctly stated  the dollar amounts appearing in the third sentence; that policyholder surrender rates, fees and expenses charged by the

primary insurer and minimum interest guarantee payments were factors that could potentially affect the contract's profitability.  Burke further admits, based upon knowledge, information and belief, that ANR knew that surrender rates were higher than ANR had assumed in pricing the product; and that ANR knew that the rates of total return IL Annuity earned on the assets IL Annuity had invested in convertible bonds were, in general, at first somewhat and later considerably, lower than those ANR had assumed in pricing the product.  Burke denies, based upon knowledge, information and belief, the remaining allegations contained in paragraph 55.

56.        Burke admits, based upon knowledge, information and belief, the allegations of the second and third sentences.  Burke denies, based upon knowledge, information and belief, the remaining allegations contained in paragraph 56.

57.        Burke admits that IL Annuity charged policyholders aggregate annual expenses, which at certain times were approximately 2.75% of the assets; and that various state laws entitled fixed annuity policyholders to minimum guaranteed interest of 3% to 3.5% per annum.  Burke states that the Transamerica contract is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 57.

58.        Burke admits the allegations of the second, third and fourth sentences, except that he denies the characterization of the underlying annuities as "unusual" and states that there were investment guidelines directing how IL Annuity managed the assets.  Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations

contained in the fifth sentence of paragraph 58 with respect to how policyholders view their policies. Burke denies the remaining allegations contained in paragraph 58.

59.        Burke admits, based upon knowledge, information and belief, the allegations contained in paragraph 59.

60.        Burke admits, based upon knowledge, information and belief, that at various points in time, consistent with policyholder investment strategy selections, approximately 70% of the premiums held and managed by IL Annuity were invested in convertible bonds. Burke admits the allegations contained in the second sentence of paragraph 60. Burke states that ANR's November 19, 2002 8-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke denies, based upon knowledge, information and belief,  the remaining allegations contained in paragraph 60.

61.        Burke states that ANR's November 19, 2002 8-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke denies the remaining allegations contained in paragraph 61.

62.        Burke admits that, based upon knowledge, information and belief, plaintiffs have correctly stated the approximate percentages of total policyholder premiums that IL Annuity had, at various points in time, invested in convertible bonds and "high-yield" bonds, respectively. Burke states that the contracts between Transamerica, ANR and IL Annuity referred to in paragraph 62 are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied. Burke denies, based upon knowledge, information and belief, the remaining allegations contained in paragraph 62.

63.         Burke states that the financial figures contained in the first and third sentences of paragraph 63 are contained in ANR's financial statements, which are documents that speak for themselves, and any characterization of them by plaintiffs is therefore denied. Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 63 with respect to the period prior to September 17, 2001 and they are therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in paragraph 63.

64.         Burke admits that the Transamerica contract, like other annuity contracts, was sensitive to the underlying assumptions.  Burke denies the remaining allegations of paragraph 64.

65.         Burke admits that, based upon knowledge, information and belief, ANR knew that the rates of total return IL Annuity had earned on the assets IL Annuity had invested in convertible bonds were, in general, at first somewhat and later considerably, lower than those ANR had previously assumed in establishing its deferred acquisition costs assets.  Burke admits that plaintiffs have correctly quoted the yield disclosed in ANR's financial statements. Burke denies, based upon knowledge, information and belief,  the remaining allegations contained in paragraph 65.

66.         Burke admits, based upon knowledge, information and belief, that ANR did not credit each policyholder's account for any minimum interest guarantee payment the policyholder might be entitled to receive in the event such person immediately surrendered the policy.  Burke admits that ANR restated its 2000 and 2001 financial statements in part to

reflect as expenses minimum interest guarantee payments that ANR only later learned it had been making during those times. Burke denies, based upon knowledge, information and belief, the remaining allegations contained in paragraph 66.

67.     Burke admits that, based upon knowledge, information and belief, Visionmark policyholder surrender rates were higher than ANR had anticipated in pricing; that ANR later learned that certain surrendering policyholders had during 1999, 2000 and the first three quarters of 2001 received minimum interest guarantee payments; that ANR has since continued to make such payments; and that ANR at times revised the surrender rate assumptions it used in setting its deferred acquisition cost amortization schedule. Burke denies, based upon knowledge, information and belief, the remaining allegations contained in paragraph 67.

68.     Burke denies the allegations contained in paragraph 68 for the period beginning September 17, 2001. Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68 with respect to the period prior to September 17, 2001 and they are therefore denied and strict proof thereof is demanded.

Plaintiffs' Heading:
"FALSE AND MISLEADING STATEMENTS
AND OMISSIONS DURING THE CLASS PERIOD"

69.     Burke admits that plaintiffs purport to define the Class Period as beginning on March 15, 2000. Burke states that ANR's 1999 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

70.        Burke states that ANR's 1998 10-K and 1999 10-K are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

71.        Burke states that ANR's 1999 10-K and other disclosures are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 71.

72.        Burke states that ANR's 1999 10-K and other disclosures are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 72.

73.        Burke states that ANR's 1999 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 73 with respect to the period prior to September 17, 2001 and they are therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in paragraph 73.

74.        Burke states that ANR's 1999 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 74 with respect to the period prior to September 17, 2001 and they are therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in paragraph 74.

75.          Burke states that ANR's 1999 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

76.          Burke states that ANR's 1999 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

77.          Burke states that ANR's 1999 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

78.          Burke states that ANR's 1999 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

79.          The allegations of this paragraph do not conform to Rules 8(e) and 10(b) of the Federal Rules of Civil Procedure, which require that "each averment of a pleading shall be simple, concise and direct . . . ," and that "the contents of each [numbered paragraph] shall be limited as far as practicable to a statement of a single set of circumstances . . . ," and they are therefore deemed denied.  By way of further response, the allegations contained in paragraph 79 are conclusions of law as to which no response is required, and such allegations are therefore denied.

80.          The allegations contained in paragraph 80 are conclusions of law as to which no response is required, and such allegations are therefore denied.

81.          Burke admits that the overall profitability of the Transamerica contract to ANR over time depended, among other things, on earning a targeted spread between amounts due policyholders, which could include minimum interest guarantee payments, and the earnings derived from investment of policyholder premiums.  Burke states that ANR's financial

statements referred to in the last sentence of paragraph 81 are documents that speak for themselves, and any characterization of them by plaintiffs is therefore denied. Burke denies the remaining allegations contained in paragraph 81.

82.          Burke states that the April 19, 2000 earnings report referred to in paragraph 82 is a document that speaks for itself, and any characterization of it by plaintiffs is therefore denied.

83.          Burke states that ANR's May 15, 2000 Report on Form 10-Q ("May 15, 2000 10-Q") is a document that speaks for itself, and any characterization of it by plaintiffs is therefore denied. Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 83 with respect to the period prior to September 17, 2001 and they are therefore denied and strict proof thereof is demanded. Burke denies the remaining allegations contained in paragraph 83.

84.          Burke states that the May 15, 2000 10-Q is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 84 with respect to the period prior to September 17, 2001 and they are therefore denied and strict proof thereof is demanded. Burke denies the remaining allegations contained in paragraph 84.

85.          Burke states that ANR's May 15, 2000 10-Q and 1999 10-K are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

86.         The allegations contained in paragraph 86 are conclusions of law as to which no response is required, and such allegations are therefore denied.

87.         The allegations of this paragraph do not conform to Rules 8(e) and 10(b) of the Federal Rules of Civil Procedure, which require that "each averment of a pleading shall be simple, concise and direct . . . ," and that "the contents of each [numbered paragraph] shall be limited as far as practicable to a statement of a single set of circumstances . . . ," and they are therefore deemed denied.  By way of further response, the allegations contained in paragraph 87 are conclusions of law as to which no response is required, and such allegations are therefore denied.

88.         The allegations contained in paragraph 88 appear to be based upon an April 24, 2000 report of Prudential Securities.  Burke states that Prudential Securities' April 24, 2000 report is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

89.         The allegations contained in paragraph 89 appear to be based upon a June 9, 2000 report of Prudential Securities.  Burke states that Prudential Securities' June 9, 2000 report is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

90.         Burke states that ANR's July 24, 2000 press release is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

91.         Burke admits that on July 24, 2000 ANR's stock closed at $23.766 and that on July 31, 2000 ANR's stock closed at $24.625.

92.        The allegations contained in paragraph 92 appear to be based upon an August 3, 2000 announcement by Standard & Poor's.  Burke states that Standard & Poor's August 3, 2000 announcement is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

93.        Burke states that ANR's August 14, 2000 Report on Form 10-Q ("August 14, 2000 10-Q") is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

94.        Burke states that ANR's August 14, 2000 10-Q is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  The allegations contained in the last sentence of paragraph 94 are conclusions of law as to which no response is required, and such allegations are therefore denied.

95.        Burke states that ANR's August 14, 2000 10-Q and 1999 10-K are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

96.        The allegations contained in the first sentence of paragraph 96 are conclusions of law as to which no response is required, and such allegations are therefore denied.  Burke admits that ANR later learned that it had in the second quarter of 2000 made approximately $588,066 in minimum interest guarantee payments which, in light of ANR's lack of knowledge, it had failed to record as an expense and had instead recorded as a reduction in its liabilities; and that ANR's restated financial statements restated that item as an expense. Burke denies the remaining allegations contained in paragraph 96.

97.         The allegations contained in paragraph 97 appear to be based upon an August 23, 2000 announcement by A.M. Best and an August 31, 2000 announcement by Fitch. Burke states that A.M. Best's August 23, 2000 announcement and Fitch's August 31, 2000 announcement are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

98.         Burke states that ANR's October 30, 2000 press release and November 14, 2000 Report on Form 10-Q for the third quarter of 2000 ("November 14, 2000 10-Q") and other disclosures are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 98 and they are therefore denied and strict proof thereof is demanded.

99.         Burke states that ANR's November 14, 2000 10-Q and 1999 10-K are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

100.        The allegations contained in the first sentence of paragraph 100 are conclusions of law as to which no response is required, and such allegations are therefore denied.  Burke admits that ANR later learned that it had in the second quarter of 2000 made approximately $588,066 in minimum interest guarantee payments, which, in light of ANR's lack of knowledge, it had failed to record as an expense and had instead recorded as a reduction in its liabilities; and that ANR's restated financial statements restated that item as an expense.  Burke denies the remaining allegations contained in paragraph 100.

101.         Burke states that the recording and transcript of the October 31, 2000 conference call are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  The allegations contained in the second sentence of paragraph 101 appear to be based upon a November 1, 2000 Bear Stearns report.  Burke states that Bear Stearns' November 1, 2000 report is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  The remaining allegations contained in paragraph 101 are conclusions of law as to which no response is required, and such allegations are therefore denied.

102.         Burke admits that on October 30, 2000 ANR's stock closed at $26.50, that on October 31, 2000 ANR's stock closed at $27.563 and that on November 2, 2000 ANR's stock closed at $28.188.  The remaining allegations contained in paragraph 102 appear to be based upon an October 31, 2000 report of J.P. Morgan and a November 1, 2000 report of Prudential Securities.  Burke states that J.P. Morgan's October 31, 2000 report and Prudential Securities' November 1, 2000 report are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

103.         The allegations contained in paragraph 103 appear to be based upon a January 10, 2001 report of J.P. Morgan.  Burke states that J.P. Morgan's January 10, 2001 report is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

104.         Burke states that ANR's February 12, 2001 press release and its subsequent disclosures are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in paragraph 104 and they are therefore denied and strict proof thereof is demanded.

105.         The allegations contained in the first sentence of paragraph 105 are conclusions of law as to which no response is required, and such allegations are therefore denied.  Burke admits that ANR later learned that it had made approximately $1.3 million in minimum interest payments during the fourth quarter of 2000, which, in light of ANR's lack of knowledge, it had failed to record as an expense and had instead recorded as a reduction in its liabilities; and that ANR later restated its financial statements to recognize that item as an expense.  Burke denies the remaining allegations contained in paragraph 105.

106.         The allegations contained in paragraph 106 appear to be based upon a February 14, 2001 report of Prudential Securities.  Burke states that Prudential Securities' February 14, 2001 report is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

107.         Burke states that ANR's March 15, 2001 Report on Form 10-K for 2000 ("2000 10-K"), 1999 10-K and other disclosures are document that speak for themselves and any characterization of them by plaintiffs is therefore denied.

108.         Burke states that ANR's 2000 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

109.         Burke states that ANR's 2000 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

110.        Burke states that ANR's 2000 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 110 and they are therefore denied and strict proof thereof is demanded.

111.        Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 111 and they are therefore denied and strict proof thereof is demanded.

112.        Burke states that ANR's 2000 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke admits that plaintiffs have correctly calculated the approximate yield on ANR's "Funds Withheld at Interest" asset for 2000. Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 112 and they are therefore denied and strict proof thereof is demanded.

113.        The allegations contained in paragraph 113 are conclusions of law as to which no response is required, and such allegations are therefore denied.

114.        The allegations contained in paragraph 114 are conclusions of law as to which no response is required, and such allegations are therefore denied.

115.        The allegations contained in paragraph 115 are conclusions of law as to which no response is required, and such allegations are therefore denied.

116.        Burke states that ANR's 2000 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

117.        The allegations contained in the first sentence of paragraph 117 are conclusions of law as to which no response is required, and such allegations are therefore denied.  Burke admits that ANR later learned that it had during 2000 made minimum interest guarantee payments, which, in light of ANR's lack of knowledge, it failed to record as an expense and instead recorded as a reduction in its liabilities; and that ANR's restated financial statements restated this item as an expense.  Burke denies the remaining allegations contained in paragraph 117.

118.        Burke states that ANR's 2000 10-K and other disclosures are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

119.        Burke states that ANR's 2000 10-K and 1999 10-K are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

120.        Burke states that ANR's 2000 10-K and Annual Report to Shareholders for the year 2000 are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

121.        The allegations contained in paragraph 121 are conclusions of law as to which no response is required, and such allegations are therefore denied.

122.        Burke states that the publication of the April 2, 2001 Wall Street Transcript interview with Doyle is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

123.        Burke states that ANR's April 26, 2001 press release is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

124.        Burke states that ANR's May 1, 2001 press release is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 124 and they are therefore denied and strict proof thereof is demanded.

125.        Burke states that ANR's May 2, 2001 press release and its SEC filings are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

126.        Burke states that ANR's May 14, 2001 Report on Form 10-Q for the first quarter of 2001 ("May 14, 2001 10-Q") and ANR's earlier financial statements are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

127.        Burke states that ANR's May 14, 2001 10-Q and 1999 10-K are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

128.        The allegations contained in the first sentence of paragraph 128 are conclusions of law as to which no response is required, and such allegations are therefore denied.  Burke admits that ANR later learned that it had during the first quarter of 2001 made minimum interest guarantee payments of approximately $1.6 million, which, in light of ANR's lack of knowledge, it had failed to record as an expense and instead recorded as a reduction in its liabilities; and that ANR's restated financial statements restated that item as an expense.  Burke denies the remaining allegations contained in paragraph 128.

129.        Burke admits that IL Annuity had originally written the Visionmark policies, which had been reinsured by Transamerica.  Burke states that the announcements of IL Annuity, Indianapolis Life and AmerUs Group are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 129 and they are therefore denied and strict proof thereof is demanded.

130.        Burke states that the Forms 4 filed with the SEC in June and August of 2001 publicly reporting Atkin's and/or his wife's transactions in ANR are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke admits that ANR's Proxy Statement, filed on April 12, 2002, erroneously reported certain information relating to those transactions; and that ANR's March 21, 2003 amended 2001 10-K ("March 21, 2003 10-K/A") corrected the error.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 130 and they are therefore denied and strict proof thereof is demanded.

131.        Burke states that Prudential Securities' May 22, 2001 report is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

132.        Burke admits that plaintiffs have properly stated ANR's share price at various points in time.  Burke denies plaintiffs' characterization of ANR's trading volume as "heavy."

133.        Burke states that ANR's July 24, 2001 and July 30, 2001 press releases are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke is without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in paragraph 133 and they are therefore denied and strict proof thereof is demanded.

134.        Burke admits that ANR's stock closed at $35.06 on July 30, 2001 and that ANR's stock closed at $36.20 on August 6, 2001. Burke denies that ANR's stock price was $36.20 by August 5, 2001. Burke denies plaintiffs' characterization of the effect on ANR's share price as "drastic." Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 134 and they are therefore denied and strict proof thereof is demanded.

135.        Burke states that A.M. Best's announcement speaks for itself and any characterization of it by plaintiffs is therefore denied.

136.        Burke states that ANR's August 13, 2001 Report on Form 10-Q for the second quarter of 2001 ("August 13, 2001 10-Q") and July 30, 2001 press release are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied. Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 136 and they are therefore denied and strict proof thereof is demanded.

137.        Burke states that ANR's August 13, 2001 10-Q is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 137 and they are therefore denied and strict proof thereof is demanded.

138.      Burke states that ANR's August 13, 2001 10-Q and ANR's earlier 10-Q's are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 138 and they are therefore denied and strict proof thereof is demanded.

139.      The allegations contained in the first sentence of paragraph 139 are conclusions of law as to which no response is required, and such allegations are therefore denied.  Burke admits that ANR later learned that it had in the first half of 2001 made minimum interest guarantee payments of approximately $4.9 million, which, in light of ANR's lack of knowledge, ANR had failed to record as an expense and instead recorded as a reduction in its liabilities; and that ANR's restated financial statements restated the minimum interest guarantee payments as expenses.  Burke states that ANR's August 13, 2001 10-Q is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 139.

140.      Burke admits that, prior to the restatements, ANR had recognized approximately $6 million of income on the Transamerica contract during the first six months of 2001; and that after the restatements ANR recognized losses on the Transamerica contract for that period.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 140 and they are therefore denied and strict proof thereof is demanded.

141.     The allegations contained in paragraph 141 appear to be based upon an August 16, 2001 report of Fitch.  Burke states that Fitch's August 16, 2001 report is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke admits that ANR's stock closed at $36.98 on August 16, 2001.

142.     Burke states that ANR's August 21, 2001 press release is a document that speaks for itself, and any characterization of it by plaintiffs is therefore denied.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 142 and they are therefore denied and strict proof thereof is demanded.

143.     The allegations contained in paragraph 143 are conclusions of law as to which no response is required, and such allegations are therefore denied.

Plaintiffs' Subheading:
"The Truth Begins to Emerge"

144.     Burke denies the allegations contained in paragraph 144.

145.     Burke states that ANR's October 25, 2001 press release is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

146.     Burke admits that ANR's stock price closed at $32.85 on October 25, 2001 and that ANR's stock price closed at $24.01 on October 26, 2001.  Burke denies plaintiffs' characterization of ANR's trading as "on very heavy volume."

147.     Burke states that the recording and transcript of the October 26, 2001 conference call are documents that speak for themselves and any characterization of them by

plaintiffs is therefore denied.  Burke states that ANR's October 26, 2001 press release is a

document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

Burke admits that in its October 26, 2001 conference call, ANR discussed high surrender

rates, but did not discuss minimum interest guarantee payments.  The allegations contained in

paragraph 147 concerning Bear Steams appear to be based upon an October 29, 2001 report of

Bear Stearns.  Burke states that Bear Stearns' October 29, 2001 report is a document that

speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies

the remaining allegations contained in paragraph 147.

148.        The allegations contained in paragraph 148 appear to be based upon an

October 29, 2001 report of Keefe, Bruyette & Woods.  Burke states that Keefe, Bruyette &

Woods' October 29, 2001 report is a document that speaks for itself and any characterization

of it by plaintiffs is therefore denied.

149.        The allegations contained in the first sentence of paragraph 149 appear to be

based upon an October 29, 2001 report of Prudential Securities.  The allegations contained in

the second sentence of paragraph 149 appear to be based on an October 29, 2001 press release

by Fitch Ratings.  Burke states that the Prudential Securities' October 29, 2001 report and

Fitch Ratings' October 29, 2001 press release are documents that speak for themselves and

any characterization of them by plaintiffs is therefore denied.

150.        Burke admits that on October 29, 2001 ANR's stock closed at $24.46 and that

on October 30, 2001 ANR's stock closed at $22.65.  Burke states that ANR's October 29,

2001 press release is a document that speaks for itself and any characterization of it by

plaintiffs is therefore denied. Burke denies the remaining allegations contained in paragraph 150.

151.       Burke states that ANR's November 14, 2001 Report on Form 10-Q for the third quarter of 2001 ("November 14, 2001 10-Q") and earlier financial statements are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied. Burke denies the remaining allegations contained in paragraph 151.

152.       Burke states that ANR's November 14, 2001 10-Q and its August 13, 2001 10-Q and other disclosures are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied. Burke denies the remaining allegations contained in paragraph 152.

153.       The allegations contained in the first sentence of paragraph 153 are conclusions of law as to which no response is required, and such allegations are therefore denied. Burke admits that ANR later learned that it had in the third quarter of 2001 made approximately $4.4 million in minimum interest guarantee payments, which, in light of ANR's lack of knowledge, ANR had failed to record as an expense and had instead recorded as a reduction in its liabilities; and that ANR's restated financial statements restated that item as an expense. Burke denies the remaining allegations contained in paragraph 153.

154.       The allegations contained in paragraph 154 are conclusions of law as to which no response is required, and such allegations are therefore denied.

155.       Burke states that ANR's January 15, 2002 press release and other disclosures are documents that speak for themselves and any characterization of them by plaintiffs is

therefore denied.  Burke admits that as of its January 15, 2002 release, ANR had announced that, for the third and fourth quarters of 2001, ANR would recognize charges of $57.7 million in expenses for the Transamerica contract consisting of a deferred acquisition cost writedown, minimum guarantee payments and a reserve for such future payments.  Burke denies the remaining allegations contained in paragraph 155.

156.    Burke states that ANR's January 15, 2002 press release is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 156.

157.    The allegations contained in paragraph 157 are conclusions of law as to which no response is required, and such allegations are therefore denied.

158.    Burke denies the characterization in the first sentence of paragraph 158 of market reaction as "swift."  Burke admits the allegations of the second and fourth sentences. The allegations contained in the third sentence appear to be based upon a January 16, 2002 report of Standard & Poor's and a January 16, 2002 report of Fitch.  Burke states that Standard & Poor's January 16, 2002 report and Fitch's January 16, 2002 report are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied. Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 158 concerning what "market-watchers" thought and they are therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in paragraph 158.

159.        The allegations contained in paragraph 159 appear to be based upon a January 16, 2002 report of Bear Stearns and a January 17, 2002 report of Keefe, Bruyette & Woods. Burke states that Bear Stearns' January 16, 2002 report and Keefe, Bruyette & Woods' January 16, 2002 report are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 159.

160.        The allegations contained in paragraph 160 appear to be based upon a February 8, 2002 report of Bear Stearns, a February 8, 2002 report of Fitch and a February 8, 2002 report of A.M. Best.  Burke states that Bear Stearns' February 8, 2002 report, Fitch's February 8, 2002 report and A.M. Best's February 8, 2002 report are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 160.

161.        Burke admits the allegations of the first two sentences and that ANR's shelf registration represented ANR's first attempt to sell debt securities in the public market.  Burke denies the remaining allegations contained in paragraph 161.

162.        Burke admits the allegations of the first sentence.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 162, and they are therefore denied and strict proof thereof is demanded.

163.        The allegations contained in paragraph 163 are conclusions of law as to which no response is required, and such allegations are therefore denied.

164.        Burke states that ANR's March 28, 2002 Report on Form 10-K for 2001 ("2001 10-K") is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

165.        Burke states that ANR's 2001 10-K and other disclosures are documents that speaks for themselves and any characterization of them by plaintiffs is therefore denied. Burke denies the remaining allegations contained in paragraph 165.

166.        Burke states that ANR's 2001 10-K and its prior 10-K's are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied. Burke denies the remaining allegations contained in paragraph 166.

167.        Burke states that ANR's 2001 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke denies the remaining allegations contained in paragraph 167.

168.        Burke states that ANR's 2001 10-K and other disclosures are documents that speaks for themselves and any characterization of them by plaintiffs is therefore denied. Burke admits that plaintiffs have correctly quoted the yield disclosed in ANR's financial statements. Burke denies the remaining allegations contained in paragraph 168.

169.        Burke states that ANR's 2001 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

170.        Burke states that ANR's 2001 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

171.     Burke states that ANR's 2001 10-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

172.     The allegations of this paragraph do not conform to Rules 8(e) and 10(b) of the Federal Rules of Civil Procedure, which require that "each averment of a pleading shall be simple, concise and direct . . . ," and that "the contents of each [numbered paragraph] shall be limited as far as practicable to a statement of a single set of circumstances . . . ," and they are therefore deemed denied.  By way of further response, the allegations contained in paragraph 172 are conclusions of law as to which no response is required, and such allegations are therefore denied.  To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke denies the allegations contained in paragraph 172.

173.     Burke states that ANR's Annual Report to Shareholders for 2001 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

174.     Burke states that ANR's April 23, 2002 press release is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

175.     Burke states that the recording and transcripts of ANR's April 24, 2002 conference call are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

176.     Burke states that the recording and transcripts of ANR's April 24, 2002 conference call are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

177.        Burke states that the recording and transcripts of ANR's April 24, 2002 conference call are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke admits that many states require that fixed annuity policyholders receive minimum guaranteed interest of 3% to 3.5% per annum on their premium payments.  Burke denies the remaining allegations contained in paragraph 177.

178.        Burke states that the recording and transcripts of ANR's April 24, 2002 conference call, ANR's May 14, 2002 announcement and ANR's May 15, 2002 Report on Form 10-Q for the first quarter of 2002 ("May 15, 2002 10-Q") are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

179.        Burke denies the allegations contained in paragraph 179.

180.        Burke admits that while Doyle was ANR's CEO and a director for the period beginning September 17, 2001, he regularly monitored ANR's financial results.  The remaining allegations contained in paragraph 180 are conclusions of law as to which no response is required, and such allegations are therefore denied.  To the extent that the remaining allegations in this paragraph are construed to contain any factual allegations against Burke, Burke denies the allegations contained in paragraph 180.

181.        Burke states that ANR's July 25, 2002 press release and other disclosures are documents that speaks for themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 181.

182.        Burke states that ANR's July 25, 2002 press release is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

183.        Burke states that ANR's July 25, 2002 press release and other disclosures are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke further states that ANR's November 19, 2002 8-K, which plaintiffs quote in the last sentence of paragraph 183, is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 183.

184.        The allegations contained in paragraph 184 are conclusions of law as to which no response is required, and such allegations are therefore denied.

185.        Burke admits that on July 25, 2001 ANR's stock closed at $12.87 and that on July 26, 2001 ANR's stock closed at $6.30.  Burke admits the allegations contained in the last sentence of paragraph 185.  Burke denies the remaining allegations in paragraph 185.

186.        Burke admits the allegations contained in paragraph 186.

187.        Burke admits that ANR later learned that it had made minimum interest guarantee payments relating to the Transamerica contract in 1999, 2000 and the first three quarters of 2001; that, in light of ANR's lack of knowledge, ANR had failed to record these payments as expenses, but had instead recorded them as a reduction in its liabilities; and that ANR's restated 2000 and 2001 financial statements restated these items as expenses.  The allegation contained in the last sentence of paragraph 187 appears to be based upon a July 29, 2002 report of Bear Stearns.  Burke states that Bear Stearns' July 29, 2002 report is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke denies the remaining allegations contained in paragraph 187.

188.        Burke states that ANR's announcements are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke admits the allegations contained in the last sentence of paragraph 188.

189.        Burke states that ANR's August 15, 2002 press release and August 15, 2002 Report on Form 10-Q for the second quarter 2002 ("August 15, 2002 10-Q") are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

190.        Burke states that ANR's August 15, 2002 10-Q is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke admits the allegations of the second sentence.  Burke denies the remaining allegations contained in paragraph 190.

191.        Burke states that ANR's August 15, 2002 10-Q is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 191.

192.        Burke admits, as ANR's August 15, 2002 10-Q stated, that in estimating the amount of the second quarter 2002 charge for the Transamerica contract, ANR had "assumed an annual investment return of 0% on convertible bonds for the remainder of 2002, with an 8% return assumed for 2003 and thereafter."  Burke denies the remaining allegations contained in paragraph 192.

193.        Burke states that ANR's August 15, 2002 10-Q is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 193.

194.        Burke states that ANR's August 15, 2002 10-Q is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 194.

195.        Burke states that ANR's August 15, 2002 10-Q is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 195.

196.        The allegations contained in paragraph 196 are conclusions of law as to which no response is required, and such allegations are therefore denied.

197.        Burke states that the recording and transcript of ANR's August 16, 2002 conference call are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

198.        The allegations contained in paragraph 198 are conclusions of law as to which no response is required, and such allegations are therefore denied.

199.        Burke states that ANR's September 12, 2002 announcement is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke admits the allegations contained in the second and third sentences of paragraph 199.

200.        Burke states that ANR's announcements are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke admits that on November 7, 2002 ANR's stock closed at $4.40 and that on November 8, 2002 ANR's stock closed at $3.64.

201.    Burke states that ANR's announcement is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies that the date of ANR's press release was November 12, 2002 (the press release was issued on November 13, 2002).

Plaintiffs' Subheading:
"More Revelations to the Market"

202.    Burke states that ANR's November 19, 2002 press release is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

203.    Burke states that ANR's November 19, 2002 8-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 203.

204.    Burke states that ANR's November 19, 2002 8-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke admits that ANR's March 21, 2003 10-K/A stated that "such expenses generally accrue at a rate of approximately 2.75% of the assets annually."  Burke denies the remaining allegations contained in paragraph 204.

205.    Burke states that ANR's November 19, 2002 8-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

206.    Burke states that ANR's November 19, 2002 8-K and other disclosures are documents that speak for themselves and any characterization of them by plaintiffs is

therefore denied.  Burke admits that he initiated a review of the recoverability of deferred acquisition costs.  Burke denies the remaining allegations contained in paragraph 206.

207.    Burke states that ANR's November 19, 2002 8-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 207.

208.    Burke states that ANR's November 19, 2002 8-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 208.

209.    Burke states that ANR's November 19, 2002 8-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 209.

210.    Burke states that ANR's November 19, 2002 8-K is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 210.

211.    Burke admits that on November 19, 2002 ANR's stock closed at $4.08 and that on November 20, 2002 ANR's stock closed at $2.24.  Burke denies the remaining allegations contained in paragraph 211.

Plaintiffs' Subheading:
"<u>Post-Class Period Events</u>"

212.        Burke states that ANR's January 2, 2003 press release is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 212.

213.        Burke states that ANR's January 16, 2003 and February 24, 2003 press releases are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 213.

214.        Burke states that ANR's March 21, 2003 10-K/A and other disclosures are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 214.

215.        Burke states that ANR's March 21, 2003 10-K/A and other disclosures are documents that speaks for themselves and any characterization of them by plaintiffs is therefore denied.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 215, and they are therefore denied and strict proof thereof is demanded.

216.        Burke states that ANR's March 21, 2003 10-K/A, ANR's original 2001 10-K and earlier 10-K's are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 216.

217.        Burke states that ANR's March 21, 2003 10-K/A is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 217.

218.        Burke states that ANR's April 23, 2003 press release is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

219.        Burke states that the March 14, 2003 Report on Form 10-K for 2002 of AmerUs is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

220.        Burke states that ANR's July 2, 2003 amended 2002 10-K/A ("July 2, 2003 10-K/A") and other disclosures are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 220.

Plaintiffs' Heading:<br>"DEFENDANTS' FALSE AND<br><u>MISLEADING FINANCIAL STATEMENTS</u>"

Plaintiffs' Subheading:
"<u>Violations of Generally Accepted Accounting Principles (GAAP)</u>"

221.        Burke states that ANR's financial statements during the purported class period are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  The remaining allegations contained in paragraph 221 are conclusions of law as to which no response is required and are therefore deemed denied.

222.          The allegations of this paragraph do not conform to Rules 8(e) and 10(b) of the Federal Rules of Civil Procedure, which require that "each averment of a pleading shall be simple, concise and direct . . . ," and that "the contents of each [numbered paragraph] shall be limited as far as practicable to a statement of a single set of circumstances . . . ," and they are therefore deemed denied.  By way of further response, the allegations contained in paragraph 222 are conclusions of law as to which no response is required and are therefore deemed denied.

223.          Burke states that Financial Accounting Standards Board ("FASB") Statements of Concepts ("Concepts Statement") No. 1 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  The remaining allegations contained in paragraph 223 are conclusions of law as to which no response is required and are therefore deemed denied.

224.          Burke states that SEC Rule 4-01(a) of SEC Regulation S-X and AICPA professional standards are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke admits that management has primary responsibility for preparing financial statements that conform to GAAP.  The remaining allegations contained in paragraph 224 are conclusions of law as to which no response is required and are therefore deemed denied.

Plaintiffs' Subheading:
"ANR Improperly Failed to Disclose Significant
Accounting Policies, Practices and Relevant Trends"

225.        Burke states that APB Opinion No. 22 is a document that speaks for itself and
any characterization of it by plaintiffs is therefore denied.  The remaining allegations
contained in paragraph 225 are conclusions of law as to which no response is required and are
therefore deemed denied.

226.        Burke denies the allegations contained in paragraph 226.

227.        Burke admits that ANR did not in its public statements discuss the specific
future lapse rate assumptions it was using to determine its deferred acquisition cost
amortization until the first conference call in which he participated on October 26, 2001, and
that ANR did not in its public statements discuss the future investment return assumptions it
was using for that purpose until the second conference call in which he participated on
January 16, 2002.  Burke denies the remaining allegations contained in paragraph 227.

228.        Burke states that Item 303 of Regulation S-K is a document that speaks for
itself and any characterization of it by plaintiffs is therefore denied.  The remaining
allegations contained in paragraph 228 are conclusions of law as to which no response is
required and are therefore deemed denied.

229.        The allegations contained in paragraph 229 are conclusions of law as to which
no response is required and are therefore deemed denied.  To the extent that this paragraph is
construed to contain any factual allegations against Burke, Burke states that SEC Interpretive

Release No. 34-26831 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

230.        The allegations contained in paragraph 230 are conclusions of law as to which no response is required and are therefore deemed denied.  To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that Securities Act Release No. 6349 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

231.        Burke admits that, for the period beginning September 17, 2001, ANR knew that Visionmark policyholder surrender rates were higher than ANR had anticipated in pricing; that ANR later learned that it had during 2000 and the first three quarters of 2001 made minimum interest guarantee payments, which, in light of ANR's lack of knowledge, it had failed to record as expenses and had instead recorded as a reduction in its liabilities; that ANR's restated financial statements restated these items as expenses; and that ANR did not, until the filing of its November 19, 2002 8-K, specifically describe in its public filings the approximate percentages of policyholder premiums that IL Annuity had invested, respectively, in all the various investment strategies, the yield on ANR's "Funds Withheld at Interest" asset for the Transamerica contract, the book and market values of the assets invested in the various investment strategies, and how various factors affect the prices of convertible bonds.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 231 with respect to the time

period prior to September 17, 2001, and they are therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in paragraph 231.

Plaintiffs' Subheading:
"ANR Improperly Failed to Acknowledge
Losses, or Accrue Liabilities for Future Policy Benefits"

232.        Burke states that ANR's 1999 10-K and 2000 10-K are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

233.        Burke admits that ANR later learned that it had during 2000 and the first three quarters of 2001 made minimum interest payments, which, in light of ANR's lack of knowledge, it had failed to record as expenses and had instead recorded as a reduction of its liabilities; and that ANR's restated financial statements restated these items as expenses. Burke denies the remaining allegations contained in paragraph 233.

234.        Burke states that ANR's 10-K's are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied  The remaining allegations contained in paragraph 234 are conclusions of law as to which no response is required and are therefore deemed denied.

235.        The allegations contained in paragraph 235 are conclusions of law as to which no response is required and are therefore deemed denied.  To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that FAS 97 and SFAS No. 60 are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

236.     The allegations contained in paragraph 236 are conclusions of law as to which no response is required and are therefore deemed denied.  To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that SFAS No. 60 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

237.     The allegations contained in paragraph 237 are conclusions of law as to which no response is required and are therefore deemed denied.  To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that FAS 97 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke denies the remaining allegations contained in paragraph 237.

238.     The allegations contained in paragraph 238 are conclusions of law as to which no response is required and are therefore deemed denied.  To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that SFAS No. 60 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

239.     The allegations contained in paragraph 239 are conclusions of law as to which no response is required and are therefore deemed denied.

240.     The allegations contained in paragraph 240 are conclusions of law as to which no response is required and are therefore deemed denied.

241.     The allegations contained in paragraph 241 are conclusions of law as to which no response is required and are therefore deemed denied.  To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that SFAS No. 5 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

Burke admits that until January 15, 2002, ANR had not recorded any minimum interest guarantee payments as expenses, established a reserve for anticipated future minimum interest guarantee obligations or disclosed loss contingencies related to minimum interest guarantee payments. Burke denies the remaining allegations contained in paragraph 241.

242.        The allegations contained in paragraph 242 are conclusions of law as to which no response is required and are therefore deemed denied. To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that FASB Interpretation No. 14 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke admits that until January 15, 2002 ANR had not recorded any minimum interest guarantee payments as expenses, or established a reserve for future minimum interest guarantee obligations. Burke denies the remaining allegations contained in paragraph 242.

243.        The allegations contained in paragraph 243 are conclusions of law as to which no response is required and are therefore deemed denied. To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that Regulation S-X is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning what the SEC thought in promulgating Regulation S-X and they are therefore denied and strict proof thereof is demanded.

244.        The allegations contained in paragraph 244 are conclusions of law as to which no response is required and are therefore deemed denied. To the extent that this paragraph is

construed to contain any factual allegations against Burke, Burke states that APB Opinion No. 28 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke denies the remaining allegations contained in paragraph 244.

245.        The allegations contained in paragraph 245 are conclusions of law as to which no response is required and are therefore deemed denied.  To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that FASB Statement of Concepts No. 5 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

246.        The allegations contained in paragraph 246 are conclusions of law as to which no response is required and are therefore deemed denied.  To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that Statement of Position No. 94-6 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 246.

247.        Burke admits that ANR later learned that it had in 2000 and the first three quarters of 2001 made minimum interest guarantee payments, which, in light of ANR's lack of knowledge, it had failed to record as expenses and had instead recorded as a reduction of its liabilities; that ANR's restated financial statements restated these items as expenses; that ANR decided, as a result of discussions with the SEC staff, to restate its 2000, 2001 and interim 2002 financial statements to, *inter alia*, implement FASB 133, which ANR had not known or believed to be applicable prior to mid-2002; and that ANR's restated financial

statements implemented FASB 133 regarding accounting for "embedded derivatives." The remaining allegations contained in paragraph 247 are conclusions of law as to which no response is required and are therefore deemed denied. To the extent that the remaining allegations contained in paragraph 247 are construed to contain any factual allegations against Burke, Burke states that APB Opinion No. 20 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

Plaintiffs' Subheading:
"ANR Improperly Failed to Report
Its Financial Results by Segments"

248.　　　The allegations contained in paragraph 248 are conclusions of law as to which no response is required and are therefore deemed denied. To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that SFAS No. 131 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke denies the remaining allegations contained in paragraph 248.

249.　　　The allegations contained in paragraph 249 are conclusions of law as to which no response is required and are therefore deemed denied. To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that SFAS No. 131 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

250.　　　Burke admits that beginning in 2002 at his insistence, ANR's president and CEO began to review ANR's results separately for ANR's life and annuity segments. Burke denies the remaining allegations contained in paragraph 250.

Plaintiffs' Subheading:
"ANR Improperly Failed to Disclose its
Full Risks Related to the Funds Withheld at
Interest Associated with the Transamerica Contract"

251.        The allegations contained in paragraph 251 are conclusions of law as to which

no response is required and are therefore deemed denied.  To the extent that this paragraph is

construed to contain any factual allegations against Burke, Burke states that SFAS No. 115 is

a document that speaks for itself and any characterization of it by plaintiffs is therefore

denied.

252.        The allegations contained in paragraph 252 are conclusions of law as to which

no response is required and are therefore deemed denied.  To the extent that this paragraph is

construed to contain any factual allegations against Burke, Burke states that SEC Regulation

S-K, Item 305 is a document that speaks for itself and any characterization of it by plaintiffs is

therefore denied.  Burke denies the remaining allegations contained in paragraph 252.

253.        The allegations contained in the first sentence of paragraph 253 are

conclusions of law as to which no response is required and are therefore deemed denied.

Burke denies the remaining allegations contained in paragraph 253.

254.        The allegations contained in paragraph 254 are conclusions of law as to which

no response is required and are therefore deemed denied.

Plaintiffs' Subheading:
"ANR's Materially False and Misleading Financial Statements"

255.        The allegations of this paragraph do not conform to Rules 8(e) and 10(b) of the

Federal Rules of Civil Procedure, which require that "each averment of a pleading shall be

simple, concise and direct . . . ," and that "the contents of each [numbered paragraph] shall be limited as far as practicable to a statement of a single set of circumstances . . . ," and they are therefore deemed denied.  By way of further response, the allegations contained in paragraph 255 are conclusions of law as to which no response is required and are therefore deemed denied.

Plaintiffs' Heading:
"ADDITIONAL SCIENTER ALLEGATIONS"

256.        Burke is without knowledge or information sufficient to form a belief as to the truth of these allegations with respect to the period prior to September 17, 2001 and they are therefore denied and strict proof thereof is demanded.  Burke is without knowledge or information sufficient to form a belief as to the truth of these allegations as they relate to defendants other than himself and they are therefore denied and strict proof thereof is demanded.  Burke admits that, for the period beginning September 17, 2001, he had access to certain information that ANR's cedent, Transamerica, supplied concerning the nature of the annuity policies issued by IL Annuity and the performance of the reinsurance contract.  Burke admits that he understood the significance to the contract's long-term profitability of surrender rates, state-imposed minimum interest guarantees and investment returns on, *inter alia*, the assets invested in convertible bonds.  However, Burke states that his knowledge of the facts and circumstances surrounding the Transamerica contract increased over time. Burke denies the remaining allegations contained in paragraph 256.

Plaintiffs' Subheading:
"Defendants' Knowledge of the Falsity of ANR's Representations"

257.        Burke states that ANR's 1999 10-K, 2000 10-K and November 19, 2002 8-K are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 257.

258.        Burke states that ANR's December 24, 1997 Registration Statement is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

259.        Burke states that ANR's December 24, 1997 Registration Statement is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.

260.        Burke states that ANR's 10-K's filed during the purported class period are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

261.        Burke states that ANR's 2001 10-K/A is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied.  Burke denies the remaining allegations contained in paragraph 261.

262.        Burke states that ANR's March 29, 2001 and April 2, 2002 Proxy Statements are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke admits that he has twenty-five years' experience in the insurance industry.

263.        Burke states that the recording and transcript of ANR's April 24, 2002 conference call are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

264.        Burke states that ANR's 10-K's are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.

265.        The allegations of this paragraph do not conform to Rules 8(e) and 10(b) of the Federal Rules of Civil Procedure, which require that "each averment of a pleading shall be simple, concise and direct . . . ," and that "the contents of each [numbered paragraph] shall be limited as far as practicable to a statement of a single set of circumstances . . . ," and they are therefore deemed denied.  By way of further response, Burke states that ANR's 10-K's are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth, fifth and sixth sentences, and they are therefore denied and strict proof thereof is demanded.  Burke denies the remaining allegations contained in paragraph 265.

266.        The allegations contained in paragraph 266 are conclusions of law as to which no response is required and are therefore deemed denied.  To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that ASOP No. 22 and ASOP No. 7 are documents that speak for themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies that ASOP Nos. 22 and 7, which are promulgated by the American Academy of Actuaries, apply to the actuarial work that must be performed

pursuant to Bermuda law in connection with the actuarial certificate that accompanies a Bermuda insurer's Statutory Financial Return. Burke denies the remaining allegations contained in paragraph 266.

267.        The allegations contained in paragraph 267 are conclusions of law as to which no response is required and are therefore deemed denied. To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke states that ASOP No. 11 is a document that speaks for itself and any characterization of it by plaintiffs is therefore denied. Burke denies that ASOP No. 11, which was promulgated by the American Academy of Actuaries, applies to the actuarial work that must be performed pursuant to Bermuda law in connection with the actuarial certificate that accompanies a Bermuda insurer's Statutory Financial Return. Burke denies the remaining allegations contained in paragraph 267.

268.        Burke denies the allegations contained in paragraph 268.

Plaintiffs' Subheading:
"Defendants' Motive to Commit Fraud"

269.        Burke admits that, for the period beginning September 17, 2001, financial ratings were important to ANR's business. Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 269 with respect to the period prior to September 17, 2001 and they are therefore denied and strict proof thereof is demanded. Burke is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 269 with respect to defendants

other than himself, and they are therefore denied and strict proof thereof is demanded.  Burke

denies the remaining allegations contained in paragraph 269.

270.        Burke states that the Forms 4 filed with the SEC in June and August of 2001

publicly reporting Atkin's and/or his wife's transactions in ANR are documents that speak for

themselves and any characterization of them by plaintiffs is therefore denied.  Burke admits

that ANR's Proxy Statement, filed on April 12, 2002, erroneously reported certain

information relating to those transactions; and that ANR's March 21, 2003 10-K/A corrected

the error.  Burke is without knowledge or information sufficient to form a belief as to the truth

of the remaining allegations contained in paragraph 270 and they are therefore denied and

strict proof thereof is demanded.  Burke states that he did not sell any ANR stock during the

purported class period.

271.        Burke states that the Forms 4 filed with the SEC in June and August of 2001

publicly reporting Atkin's and/or his wife's transactions in ANR are documents that speak for

themselves and any characterization of them by plaintiffs is therefore denied.  Burke states

that ANR's public disclosures and announcements are also documents that speak for

themselves and any characterization of them by plaintiffs is therefore denied.  Burke denies

the remaining allegations contained in paragraph 271.  Burke states that he did not sell any

ANR stock during the purported class period.

272.        Burke is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 272 and they are therefore denied and strict

proof thereof is demanded.  Burke states that he did not sell any ANR stock during the purported class period.

273.     The allegations contained in paragraph 273 are conclusions of law as to which no response is required and they are therefore deemed denied.

Plaintiffs' Heading:
"APPLICABILITY OF PRESUMPTION OF
RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE"

274.     Burke admits that ANR securities traded first on NASDAQ and later on the NYSE.  Burke denies the remaining allegations contained in paragraph 274.

275.     The allegations contained in paragraph 275 are conclusions of law as to which no response is required and they are therefore deemed denied.

276.     The allegations contained in paragraph 276 are conclusions of law as to which no response is required and they are therefore deemed denied.  To the extent that this paragraph is construed to contain any factual allegations against Burke, Burke denies the remaining allegations contained in paragraph 276.

277.     Burke admits the allegations contained in subparagraphs (a), (b), and (c). Burke denies the remaining allegations contained in paragraph 277.

278.     Burke admits that ANR was followed by several securities analysts employed by major brokerage firms who at times wrote reports.  Burke is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 278 and they are therefore denied and strict proof thereof is demanded.

279.        The allegations contained in paragraph 279 are conclusions of law as to which no response is required, and such allegations are therefore denied.

Plaintiffs' Heading:
"<u>NO SAFE HARBOR</u>"

280.        The allegations contained in paragraph 280 are conclusions of law as to which no response is required and they are therefore deemed denied.

Plaintiffs' Heading:
"<u>COUNT I</u>"

Plaintiffs' Heading:
"<u>Violation of Section 10(b) of the Exchange Act
and Rule 10b-5 Promulgated Thereunder
Against ANR and the Individual Defendants</u>"

281.        Burke incorporates his answers to paragraphs 1 through 280 above, as if set forth fully herein.

282.        The allegations contained in paragraph 282 are conclusions of law as to which no response is required and they are therefore deemed denied.

283.        The allegations contained in paragraph 283 are conclusions of law as to which no response is required and they are therefore deemed denied.

284.        The allegations contained in paragraph 284 are conclusions of law as to which no response is required and they are therefore deemed denied.

285.        The allegations contained in paragraph 285 are conclusions of law as to which no response is required and they are therefore deemed denied.

286.     The allegations contained in paragraph 286 are conclusions of law as to which no response is required and they are therefore deemed denied.

287.     The allegations contained in paragraph 287 are conclusions of law as to which no response is required and they are therefore deemed denied.

288.     The allegations contained in paragraph 288 are conclusions of law as to which no response is required and they are therefore deemed denied.

289.     The allegations contained in paragraph 289 are conclusions of law as to which no response is required and they are therefore deemed denied.

290.     The allegations contained in paragraph 290 are conclusions of law as to which no response is required and they are therefore deemed denied.

291.     The allegations contained in paragraph 291 are conclusions of law as to which no response is required and they are therefore deemed denied.

Plaintiffs' Heading:
"COUNT II"

Plaintiffs' Heading:
"Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants and XL Capital"

292.     Burke incorporates his answers to paragraphs 1 through 291 above by reference, as if set forth fully herein.

293.     The allegations contained in paragraph 293 are conclusions of law as to which no response is required and they are therefore deemed denied.

294.     The allegations contained in paragraph 294 are conclusions of law as to which no response is required and they are therefore deemed denied.

295.     The allegations contained in paragraph 295 are conclusions of law as to which no response is required and they are therefore deemed denied.

296.     The allegations contained in paragraph 296 are conclusions of law as to which no response is required and they are therefore deemed denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint fails to plead fraud with particularity as required by the Private Securities Litigation Reform Act of 1995 and Federal Rule of Civil Procedure 9(b).

### THIRD AFFIRMATIVE DEFENSE

To the extent the Complaint is based on any forward-looking statement by ANR, plaintiffs are barred from recovery by the "bespeaks caution" doctrine because ANR provided the investing public with sufficiently specific risk disclosures or other cautionary statements concerning the subject matter of each forward-looking statement to render each such forward-looking statement immaterial.

### FOURTH AFFIRMATIVE DEFENSE

To the extent that the Complaint is based on any forward-looking statement contained in ANR's public disclosures, plaintiffs are barred from recovery by the safe harbor provision of the Private Securities Litigation Reform Act of 1995 because (i) each such forward-looking

statement was identified as a forward-looking statement and was accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ from those in the forward-looking statement; (ii) assuming that any such forward-looking statement was false and misleading, and Burke denies that any forward-looking statement was false or misleading, the forward-looking statement was not made with actual knowledge that it was false or misleading; and (iii) each such forward-looking statement was immaterial.

### FIFTH AFFIRMATIVE DEFENSE

To the extent plaintiffs have been damaged, if at all, plaintiffs' failure to mitigate their damages limits or bars recovery.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs cannot recover against Burke because the losses, if any, sustained by plaintiffs resulted from causes other than the acts of Burke alleged in the Complaint.

### SEVENTH AFFIRMATIVE DEFENSE

Burke cannot be held liable for events that occurred or injury suffered prior to September 17, 2001, when he began his tenure at ANR.

### EIGHTH AFFIRMATIVE DEFENSE

Burke cannot be held liable for any injury suffered after September 17, 2001 caused by the acts of others either before or after September 17, 2001.

## NINTH AFFIRMATIVE DEFENSE

Each of ANR's Class Period 10-K's contained a "Report of Independent Auditors," which stated that KPMG had audited ANR "in accordance with auditing standards generally accepted in the United States of America," and that, in KPMG's opinion, ANR's "consolidated financial statements . . . present fairly, in all material respects, the financial position of the Company and its subsidiaries. . . . and the results of their operations and cash flows . . . in conformity with accounting principles generally accepted in the United States of America."

KPMG also reviewed the accounting principles ANR applied in issuing its interim quarterly financial statements, and did not disagree with management's opinion that those statements were prepared in accordance with GAAP.

Burke recognizes that ANR's financial statements are the primary responsibility of management. Nevertheless, Burke respected KPMG's expertise and in good faith relied, when signing ANR's 10-K's and 10-Q's and approving other ANR public filings and statements, on KPMG's unqualified opinions that ANR's year-end financial statements fairly presented in all material respects the financial position of ANR and its subsidiaries in comformity with GAAP, and on KPMG's interim quarterly reviews of the accounting principles ANR applied and non-disagreement with management's opinion that ANR's interim quarterly financial statements were prepared in accordance with GAAP.

## TENTH AFFIRMATIVE DEFENSE

To the extent that plaintiffs establish that ANR made false and misleading representations or omissions, which Burke denies, plaintiffs' claims are barred by the "truth on the market" corollary to the "fraud on the market" theory of reliance because the information misrepresented or omitted was known to the market, already in the public domain and/or reasonably available to shareholders.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because plaintiffs failed to exercise due diligence in connection with their purchase of ANR shares.

## TWELFTH AFFIRMATIVE DEFENSE

Burke did not know, and in the exercise of reasonable care could not have known, of the alleged untruths or omissions.

## THIRTEENTH AFFIRMATIVE DEFENSE

Burke did not possess the requisite scienter.

## FOURTEENTH AFFIRMATIVE DEFENSE

Burke had no duty to disclose the information plaintiffs allege defendants omitted.

## FIFTEENTH AFFIRMATIVE DEFENSE

Burke had, after reasonable investigation, reasonable grounds to believe and did believe that his public statements were true, and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

## SIXTEENTH AFFIRMATIVE DEFENSE

To the extent that plaintiffs establish that ANR made material misrepresentations or omissions, which Burke denies, plaintiffs are barred from recovery because they did not rely on such misrepresentations and/or omissions.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Any reliance by plaintiffs upon any representations made by ANR or any defendants was unreasonable.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable statute of limitations.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

## TWENTIETH AFFIRMATIVE DEFENSE

Burke acted in good faith in connection with the statements, omissions, actions and/or inactions of which plaintiffs complain.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

In the event that plaintiffs establish that ANR is liable to plaintiffs, which Burke denies, Burke did not culpably participate in any of the statements, omissions, actions and/or inactions giving rise to any such ANR liability.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Burke lacked the power to control the actions of ANR.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs have not suffered any damages.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to recovery of their expenses, attorneys' fees or expert fees.

WHEREFORE, Burke respectfully asks that this Court grant judgment in his favor and against plaintiffs, together with his attorneys' fees and costs in this action and such other and further relief as the Court deems just and proper.

Dated:  Waterbury, Connecticut
        April 8, 2004

**CARMODY & TORRANCE LLP**

By:_____   _____
       John R. Horvack, Jr.  ct 12926
       50 Leavenworth Street
       P.O. Box 1110
       Waterbury, CT 06721-1110
       Telephone:  (203) 573-1200
       Facsimile:   (203) 575-2600

**MORGAN, LEWIS & BOCKIUS, LLP**
    Marc J. Sonnenfeld
    Karen Pieslak Pohlmann
    1701 Market Street
    Philadelphia, PA 19103-2921
    Telephone: (215) 963-5000
    Facsimile:  (215) 963-5001

    Randi B. Pincus
    101 Park Avenue, 44th Floor
    New York, NY 10178
    Telephone: (212) 309-6000
    Facsimile:  (212) 309-6001

*Attorneys for Defendant John F. Burke*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2004, I caused a true and correct copy of Defendant

John F. Burke's Answer to the Consolidated Amended Complaint to be served by U.S. mail

on the following:

David R. Scott
Erin Green Comite
Scott & Scott LLC
108 Norwich Avenue
Colchester, CT 06415

Beth Kaswan
Ann Lipton
Milberg Weiss Bershad Hynes & Lerach
One Pennsylvania Plaza
New York, NY 10119

Marc Edelson
Hoffman & Edelson
45 West Court Street
Doylestown, PA 18901

Andrew M. Schatz
Schatz & Nobel
330 Main Street
Hartford, CT 06106-1817

James E. Miller
Shepherd Finkelman Miller & Shah, LLC
One Lewis Street
Hartford, CT 06103

Elias A. Alexiades
Attorney Elias A. Alexiades
215 Church Street
New Haven, CT 06525

Gary R. Battistoni
Drinker Biddle & Reath LLP
One Logan Square
Philadelphia, PA 19103-6996

John W. Cannavino
Cummings & Lockwood, LLC
Four Stamford Plaza
107 Elm Street
Stamford, CT 06902

Terence J. Gallagher
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901

Thorn Rosenthal
Cahill Gordon & Reindel, LLP
80 Pine Street
New York, NY 10005-1702

Lawrence W. Andrea
Law Offices of Lawrence W. Andrea
57 North Street, Suite 313
Danbury, CT 06810

James T. Shearin
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

R. Nicholas Gimbel
McCarter & English, LLP
Mellon Bank Center
1735 Market Street, Suite 1700
Philadelphia, PA 19103

_____
                John Horvack