UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
JUN 22  12 :18 PM '04

| | |
|---|---|
| SHERRY SCHNALL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANNUITY AND LIFE RE (HOLDINGS), LTD., XL CAPITAL, LTD., LAWRENCE S. DOYLE, FREDERICK S. HAMMER, JOHN F. BURKE, WILLIAM W. ATKIN, BRIAN O'HARA, AND MICHAEL P. ESPOSITO, JR.,<br><br>Defendants. | Civil Action No. 03 CV 2133 (EBB)<br><br><br><br><br><br><br><br>JUNE 11, 2004 |

**APPENDIX TO LEAD PLAINTIFFS' MEMORANDUM IN FURTHER OPPOSITION TO THE MOTIONS TO DISMISS FILED BY DEFENDANTS KPMG BERMUDA AND KPMG USA**

Exhibit C:[1]   Financial Accounting Standards Board, Financial Accounting Standard 133 (as of June 1, 1998).

Exhibit D:   American Institute Of Certified Public Accountants, Statement Of Position 03-1 (July 7, 2003).

Exhibit E:   Securities and Exchange Commission, Division of Corporate Finance, International Financial Report and Disclosure Issues (May 1, 2001).

Exhibit F:   Securities and Exchange Commission, Division of Corporate Finance, International Financial Report and Disclosure Issues (October 1, 2003).

Exhibit G:   *Securities & Exchange Commission v. KPMG LLP et al.*, No. 03 CV 0671 (DLC) (S.D.N.Y. filed Jan. 29, 2003), Endorsed Memorandum and Stipulation.

---

[1] Exhibits A and B are attached to Lead Plaintiffs' Consolidated Opposition To The Motions To Dismiss Filed By KPMG LLP (United States) and KPMG In Bermuda, dated April 28, 2004

# EXHIBIT C

Case 3:02-cv-02133-EBB   Document 162   Filed 06/22/2004   Page 3 of 20

# ORIGINAL PRONOUNCEMENTS

## ACCOUNTING STANDARDS

as of June 1, 1998

### VOLUME II

AICPA Pronouncements
FASB Interpretations
FASB Concepts Statements
FASB Technical Bulletins
Topical Index/Appendixes



Financial Accounting Standards Board
401 MERRITT 7, P.O. BOX 5116, NORWALK, CONNECTICUT 06856-5116

are not subject to the requirements of this Statement if the underlying on which the settlement is based is one of the following:

(1) A climatic or geological variable or other physical variable

(2) The price or value of (a) a nonfinancial asset of one of the parties to the contract provided that the asset is not readily convertible to cash or (b) a nonfinancial liability of one of the parties to the contract provided that the liability does not require delivery of an asset that is readily convertible to cash

(3) Specified volumes of sales or service revenues of one of the parties to the contract.

If a contract has more than one underlying and some, but not all, of them qualify for one of the exceptions in paragraphs 10(e)(1), 10(e)(2), and 10(e)(3), the application of this Statement to that contract depends on its predominant characteristics. That is, the contract is subject to the requirements of this Statement if all of its underlyings, considered in combination, behave in a manner that is highly correlated with the behavior of any of the component variables that do not qualify for an exception.

f. *Derivatives that serve as impediments to sales accounting.* A derivative instrument (whether freestanding or embedded in another contract) whose existence serves as an impediment to recognizing a related contract as a sale by one party or a purchase by the counterparty is not subject to this Statement. For example, the existence of a guarantee of the residual value of a leased asset by the lessor may be an impediment to treating a contract as a sales-type lease, in which case the contract would be treated by the lessor as an operating lease. Another example is the existence of a call option enabling a transferor to repurchase transferred assets that is an impediment to sales accounting under FASB Statement No. 125, *Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities.*

11. Notwithstanding the conditions of paragraphs 6–10, the reporting entity shall *not* consider the following contracts to be derivative instruments for purposes of this Statement:

a. Contracts issued or held by that reporting entity that are both (1) indexed to its own stock and (2) classified in stockholders' equity in its statement of financial position

b. Contracts issued by the entity in connection with stock-based compensation arrangements addressed in FASB Statement No. 123, *Accounting for Stock-Based Compensation*

c. Contracts issued by the entity as contingent consideration from a business combination. The accounting for contingent consideration issued in a business combination is addressed in APB Opinion No. 16, *Business Combinations.* In applying this paragraph, the issuer is considered to be the entity that is accounting for the combination using the purchase method.

In contrast, the above exceptions do not apply to the counterparty in those contracts. In addition, a contract that an entity either can or must settle by issuing its own equity instruments but that is indexed in part or in full to something other than its own stock can be a derivative instrument for the issuer under paragraphs 6–10, in which case it would be accounted for as a liability or an asset in accordance with the requirements of this Statement.

### Embedded Derivative Instruments

12. Contracts that do not in their entirety meet the definition of a derivative instrument (refer to paragraphs 6–9), such as bonds, insurance policies, and leases, may contain "embedded" derivative instruments—implicit or explicit terms that affect some or all of the cash flows or the value of other exchanges required by the contract in a manner similar to a derivative instrument. The effect of embedding a derivative instrument in another type of contract ("the host contract") is that some or all of the cash flows or other exchanges that otherwise would be required by the contract, whether unconditional or contingent upon the occurrence of a specified event, will be modified based on one or more underlyings. An embedded derivative instrument shall be separated from the host contract and accounted for as a derivative instrument pursuant to this Statement if and only if all of the following criteria are met:

a. The economic characteristics and risks of the embedded derivative instrument are not clearly and closely related to the economic characteristics and risks of the host contract. Additional guidance on applying this criterion to various contracts containing embedded derivative instruments is included in Appendix A of this Statement.

b. The contract ("the hybrid instrument") that embodies both the embedded derivative instrument and the host contract is not remeasured at fair value under otherwise applicable generally

accepted accounting principles with changes in fair value reported in earnings as they occur.

c. A separate instrument with the same terms as the embedded derivative instrument would, pursuant to paragraphs 6–11, be a derivative instrument subject to the requirements of this Statement. (The initial net investment for the hybrid instrument shall not be considered to be the initial net investment for the embedded derivative.)

13. For purposes of applying the provisions of paragraph 12, an embedded derivative instrument in which the underlying is an interest rate or interest rate index[6] that alters net interest payments that otherwise would be paid or received on an interest-bearing host contract is considered to be clearly and closely related to the host contract unless either of the following conditions exist:

a. The hybrid instrument can contractually be settled in a such a way that the investor (holder) would not recover *substantially all* of its initial recorded investment.
b. The embedded derivative could at least double the investor's initial rate of return on the host contract and could also result in a rate of return that is at least twice what otherwise would be the market return for a contract that has the same terms as the host contract and that involves a debtor with a similar credit quality.

Even though the above conditions focus on the investor's rate of return and the investor's recovery of its investment, the existence of either of those conditions would result in the embedded derivative instrument not being considered clearly and closely related to the host contract by both parties to the hybrid instrument. Because the existence of those conditions is assessed at the date that the hybrid instrument is acquired (or incurred) by the reporting entity, the acquirer of a hybrid instrument in the secondary market could potentially reach a different conclusion than could the issuer of the hybrid instrument due to applying the conditions in this paragraph at different points in time.

14. However, interest-only strips and principal-only strips are not subject to the requirements of this Statement provided they (a) initially resulted from separating the rights to receive contractual cash flows of a financial instrument that, in and of itself, did not contain an embedded derivative that otherwise would have been accounted for separately as a derivative pursuant to the provisions of paragraphs 12 and (b) do not incorporate any terms not present in the original financial instrument described above.

15. An embedded foreign currency derivative instrument shall *not* be separated from the host contract and considered a derivative instrument under paragraph 12 if the host contract is not a financial instrument and it requires payment(s) denominated in (a) the currency of the primary economic environment in which any substantial party to that contract operates (that is, its functional currency) or (b) the currency in which the price of the related good or service that is acquired or delivered is routinely denominated in international commerce (for example, the U.S. dollar for crude oil transactions). Unsettled foreign currency transactions, including financial instruments, that are monetary items and have their principal payments, interest payments, or both, denominated in a foreign currency are subject to the requirement in Statement 52 to recognize any foreign currency transaction gain or loss in earnings and shall not be considered to contain embedded foreign currency derivative instruments under this Statement. The same proscription applies to available-for-sale or trading securities that have cash flows denominated in a foreign currency.

16. In subsequent provisions of this Statement, both (a) a derivative instrument included within the scope of this Statement by paragraphs 6–11 and (b) an embedded derivative instrument that has been separated from a host contract as required by paragraph 12 are collectively referred to as derivative instruments. If an embedded derivative instrument is separated from its host contract, the host contract shall be accounted for based on generally accepted accounting principles applicable to instruments of that type that do not contain embedded derivative instruments. If an entity cannot reliably identify and measure the embedded derivative instrument that paragraph 12 requires be separated from the host contract, the entire contract shall be measured at fair value with gain or loss recognized in earnings, but it may not be designated as a hedging instrument pursuant to this Statement.

---

[6]Examples are an interest rate cap or an interest rate collar. An embedded derivative instrument that alters net interest payments based on changes in a stock price index (or another non-interest-rate index) is not addressed in paragraph 13.

# EXHIBIT D

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

# ACC Section 10,870

## *Statement of Position 03-1 Accounting and Reporting by Insurance Enterprises for Certain Nontraditional Long-Duration Contracts and for Separate Accounts*

July 7, 2003

> **NOTE**
>
> Statements of Position on accounting issues present the conclusions of at least two-thirds of the Accounting Standards Executive Committee, which is the senior technical body of the Institute authorized to speak for the Institute in the areas of financial accounting and reporting. **Statement on Auditing Standards No. 69**, *The Meaning of Present Fairly in Conformity With Generally Accepted Accounting Principles*, identifies AICPA Statements of Position that have been cleared by the Financial Accounting Standards Board as sources of established accounting principles in category b of the hierarchy of generally accepted accounting principles that it establishes. AICPA members should consider the accounting principles in this Statement of Position if a different accounting treatment of a transaction or event is not specified by a pronouncement covered by **Rule 203 of the AICPA Code of Professional Conduct**. In such circumstances, the accounting treatment specified by the Statement of Position should be used, or the member should be prepared to justify a conclusion that another treatment better presents the substance of the transaction in the circumstances.

## Summary

This Statement of Position (SOP) provides guidance on accounting and reporting by insurance enterprises for certain nontraditional long-duration contracts and for separate accounts. This SOP requires, among other things, the following:

- *Separate account presentation.* The portion of separate account assets representing contract holder funds should be measured at fair value and reported in the insurance enterprise's financial statements as a summary total, with an equivalent summary total for related liabilities, if the separate account arrangement meets all the criteria specified in paragraph 11 of this SOP. If a separate account arrangement does not meet the criteria, assets representing contract holder funds under the arrangement should be accounted for and recognized as general account assets. Any related liability should be accounted for

Revised December 2003                                           1

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

as a general account liability.

- *Interest in separate accounts.* Assets underlying an insurance enterprise's proportionate interest in a separate account do not represent contract holder funds, and thus do not qualify for separate account reporting and valuation. If a separate account arrangement meets the criteria of paragraph .11 of this SOP and (*a*) the terms of the contract allow the contract holder to invest in additional units in the separate account or (*b*) the insurance enterprise is marketing contracts that permit funds to be invested in the separate account, the assets underlying the insurance enterprise's proportionate interest in the separate account should be accounted for in a manner consistent with similar assets held by the general account that the insurance enterprise may be required to sell.

  If the insurance enterprise's proportionate interest in the separate account is less than 20 percent of the separate account and all of the underlying investments of the separate account meet the definition of securities under Financial Accounting Standards Board (FASB) Statement of Financial Accounting Standards No. 115, *Accounting for Certain Investments in Debt and Equity Securities,* or paragraph 46 of FASB Statement No. 60, *Accounting and Reporting by Insurance Enterprises,* as amended by FASB Statement No. 115, or cash and cash equivalents, the insurance enterprise may report its portion of the separate account value as an investment in equity securities classified as trading under FASB Statement No. 115.

- *Gains and losses on the transfer of assets from the general account to a separate account.* Assets transferred from the general account to a separate account should be recognized at fair value to the extent of third-party contract holders' proportionate interest in the separate account if the separate account arrangement meets the criteria in paragraph .11 of this SOP. Any resulting gain related to the third-party contract holder's proportionate interest should be recognized immediately in earnings of the general account of the insurance enterprise, provided that the risks and rewards of ownership have been transferred to contract holders using the fair value of the asset at the date of the contract holders' assumption of risks and rewards. A guarantee of the asset's value or minimum rate of return or a commitment to repurchase the asset would not transfer the risks of ownership, and no gain should be recognized. If the separate account arrangement does not meet the criteria in paragraph .11 of this SOP, the transfer generally should have no financial reporting effect (that is, general account classification and carrying amounts should be retained). However, in certain situations, loss recognition may be appropriate.

- *Liability valuation.* The basis for determining the balance that accrues to the

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

contract holder for a long-duration insurance or investment contract that is subject to FASB Statement No. 97, *Accounting and Reporting by Insurance Enterprises for Certain Long-Duration Contracts and for Realized Gains and Losses from the Sale of Investments* (paragraphs 15 and 17(a)), is the accrued account balance. The accrued account balance equals:

1. Deposit(s) net of withdrawals;

2. Plus amounts credited pursuant to the contract;

3. Less fees and charges assessed;

4. Plus additional interest (for example, persistency bonus); and

5. Other adjustments (for example, appreciation or depreciation recognized in accordance with paragraph .21 of this SOP to the extent not already credited and included in item 2).

For contracts that have features that may result in more than one potential account balance, the accrued account balance should be based on the highest contractually determinable balance that will be available in cash or its equivalent at contractual maturity or the reset date, without reduction for future fees and charges. The accrued account balance should not reflect any surrender adjustments (for example, market value annuity adjustments, surrender charges, or credits). For contracts in which amounts credited as interest to the contract holder are reset periodically, the accrued balance should be based on the highest crediting rate guaranteed or declared through the reset date.

- *Return based on a contractually referenced pool of assets or index.* For a contract not accounted for under the provisions of FASB Statement No. 133, *Accounting for Derivative Instruments and Hedging Activities,* that provides a return based on the total return of a contractually referenced pool of assets either through crediting rates or termination adjustments, the accrued account balance should be based on the fair value of the referenced pool of assets (or applicable index value) at the balance sheet date even if the related assets are not recognized at fair value.

- *Determining the significance of mortality and morbidity risk and classification of contracts that contain death or other insurance benefit features.* To determine the accounting under FASB Statement No. 97 for a contract that contains death or other insurance benefit features, the insurance enterprise should first determine whether the contract is an investment or universal life-type contract. If the mortality or morbidity risks are other than nominal and the fees assessed or insurance benefits are not fixed and guaranteed, the contract should be classified as a FASB Statement No. 97 universal-life type contract. There is a rebuttable

Revised December 2003                                   3

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

presumption that a contract has significant mortality risk where the additional insurance benefit would vary significantly in response to capital markets volatility. The determination of significance should be made at contract inception, other than at transition, and should be based on a comparison of the present value of expected excess payments (that is, insurance benefit amounts and related incremental claim adjustment expenses in excess of the account balance) to be made under insurance benefit features with the present value of all amounts expected to be assessed against the contract holder (revenue).

- *Accounting for contracts that contain death or other insurance benefit features.* For contracts classified as insurance contracts that have amounts assessed against contract holders each period for the insurance benefit feature that are assessed in a manner that is expected to result in profits in earlier years and subsequent losses from that insurance benefit function, a liability should be established in addition to the account balance to recognize the portion of such assessments that compensates the insurance enterprise for benefits to be provided in future periods in accordance with the guidance in paragraphs .26 through .28 of this SOP.

- *Accounting for reinsurance and other similar contracts.* If a reinsurer assumes the insurance benefit feature, the reinsurer should assess the significance of mortality and morbidity risk within the reinsurance contract according to the guidance in paragraphs .24 and .25 of this SOP, regardless of whether there is an account balance. The reinsurer should determine the classification of the reinsurance contract as an investment contract or as an insurance contract at the inception of the reinsurance contract. For reinsurance contracts, the mortality or morbidity risk could be deemed other than nominal even if the original issuer did not determine mortality or morbidity to be other than nominal. Similarly, the issuer of a contract that provides only an insurance benefit feature that wraps a noninsurance contract, for example, a guaranteed minimum death benefit related to a mutual fund balance, should evaluate its contract in the same manner. A reinsurer or issuer of the insurance benefit features of a contract should calculate a liability for the portion of premiums collected each period that represents compensation to the insurance enterprise for benefits that are assessed in a manner that is expected to result in current profits and future losses from the insurance benefit function. That liability should be calculated using the methodology described in paragraphs .26 through .28 of this SOP.

- *Accounting for annuitization benefits.* Contracts may provide for potential benefits in addition to the account balance that are payable only upon annuitization, such as annuity purchase guarantees, guaranteed minimum income benefit (GMIBs), and two-tier annuities. Insurance enterprises should determine whether such contract features should be accounted for under the provisions of

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

FASB Statement No. 133. If the contract feature is not accounted for under the provisions of FASB Statement No. 133, an additional liability for the contract feature should be established if the present value of expected annuitization payments at the expected annuitization date exceeds the expected account balance at the expected annuitization date in accordance with the guidance in paragraphs .31 through .35 of this SOP.

- *Sales inducements to contract holders.* Sales inducements provided to the contract holder, whether for investment or universal life-type contracts, should be recognized as part of the liability for policy benefits over the period for which the contract must remain in force for the contract holder to qualify for the inducement or at the crediting date, if earlier, in accordance with paragraph .20 of this SOP. No adjustments should be made to reduce the liability related to the sales inducements for anticipated surrender charges, persistency, or early withdrawal contractual features.

    Sales inducements that are recognized as part of the liability under paragraph .36 of this SOP, that are explicitly identified in the contract at inception, and that meet the criteria specified in paragraph .37 of this SOP should be deferred and amortized using the same methodology and assumptions used to amortize capitalized acquisition costs.

- *Disclosures.* The financial statements of an insurance enterprise should disclose information related to the following:

    1. Separate account assets and liabilities; the nature, extent, and timing of minimum guarantees related to variable contracts and the amount of gains and losses recognized on assets transferred to separate accounts.

    2. An insurance enterprise's accounting policy for sales inducements, including the nature of the costs capitalized and the method of amortizing those costs; the amount of costs capitalized and amortized for each of the periods presented; and the unamortized balance as of each balance sheet date presented.

    3. The nature of the liabilities and methods and assumptions used in estimating any contract benefits recognized in excess of the account balance pursuant to paragraphs .20 and .36 of this SOP.

This SOP is effective for financial statements for fiscal years beginning after December 15, 2003, with earlier adoption encouraged. This SOP should not be applied retroactively to prior years' financial statements. Initial application of this SOP should be as of the beginning of an entity's fiscal year.

Revised December 2003.                                                      5

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

At the date of initial application of this SOP, an insurance enterprise will have to make various determinations, such as qualification for separate account treatment, FASB Statement No. 115 classification of securities in separate account arrangements not meeting the criteria in paragraph .11 of this SOP, significance of mortality and morbidity risk, adjustments to contract holder liabilities, and adjustments to estimated gross profits or margins, fn 1(1) to determine the cumulative effect of a change in accounting principle from adopting this SOP. Refer to paragraphs .41 through .43 of this SOP for specific transition guidance.

## Foreword

The accounting guidance contained in this document has been cleared by the Financial Accounting Standards Board (FASB). The procedure for clearing accounting guidance in documents issued by the Accounting Standards Executive Committee (AcSEC) involves the FASB reviewing and discussing in public board meetings (1) a prospectus for a project to develop a document, (2) a proposed exposure draft that has been approved by at least 10 of AcSEC's 15 members, and (3) a proposed final document that has been approved by at least 10 of AcSEC's 15 members. The document is cleared if at least four of the seven FASB members do not object to AcSEC undertaking the project, fn 2(2) issuing the proposed exposure draft or, after considering the input received by AcSEC as a result of the issuance of the exposure draft, issuing the final document.

The criteria applied by the FASB in its review of proposed projects and proposed documents include the following:

1. The proposal does not conflict with current or proposed accounting requirements, unless it is a limited circumstance, usually in specialized industry accounting, and the proposal adequately justifies the departure.

2. The proposal will result in an improvement in practice.

3. The AICPA demonstrates the need for the proposal.

4. The benefits of the proposal are expected to exceed the costs of applying it.

In many situations, prior to clearance, the FASB will propose suggestions, many of which are included in the document.

## Introduction and Background

### Nontraditional Annuity and Life Insurance Contracts

Revised December 2003                                           6

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

.01     At the time that Financial Accounting Standards Board (FASB) Statements of Financial Accounting Standards No. 60, *Accounting and Reporting by Insurance Enterprises,* as amended, and No. 97, *Accounting and Reporting by Insurance Enterprises for Certain Long-Duration Contracts and for Realized Gains and Losses from the Sale of Investments,* were issued, annuity and life insurance contracts were generally one of two basic designs: fixed or variable. Traditional fixed annuity and life insurance contracts, typically offered through an insurance enterprise's **general account**, fn 1(3) provide for a fixed rate of interest over some specified period, with the insurance enterprise bearing the investment risk associated with the invested assets. **Traditional variable annuity** and variable life insurance contracts, by contrast, offered through an insurance enterprise's **separate account** provide that all investment risks associated with the separate account assets are passed through to the contract holder, with no guarantees of return of principal, minimum crediting rates or, for annuity contracts, minimum death benefits.

.02     More recently, annuity and life products with nontraditional terms have been developed. Some of those products may combine fixed and variable features and are sold as general account or separate account products. The features of nontraditional contracts are many and complex, and may be offered in different combinations, such that there are numerous variations of the same basic products being sold in the marketplace. See examples of products in Appendix D [paragraph .47] of this Statement of Position (SOP).

.03     A common feature in variable annuities is a **minimum guaranteed death benefit (MGDB),** such as a death benefit equal to the total deposits made by the contract holder less any withdrawals, referred to as "return of premium" or "basic" MGDB. Although the return of premium MGDB has become increasingly common in variable annuities, the trend has been for insurers to offer MGDBs with more extensive benefit guarantees, such as:

*a.*    A death benefit equal to the total of deposits made to the contract less an adjustment for partial withdrawals, accumulated at a specified interest rate, often referred to as "roll up."

*b.*    A death benefit equal to the account balance on a specified anniversary date adjusted for deposits less partial withdrawals since the specified anniversary date, often referred to as "reset."

*c.*    A death benefit equal to the highest account balance among prior specified anniversary dates adjusted for deposits less partial withdrawals since the specified anniversary date, often referred to as "ratchet."

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

Another example of an insurance benefit feature is a no-lapse guarantee, in which the company agrees to keep the insurance policy in force even when the account balance is not sufficient to pay the cost of insurance.

.04   Some annuities may provide for potential benefits in addition to the account balance, payable only if annuitization is elected. For example, some deferred variable annuities now provide that, regardless of separate account performance, a guaranteed minimum amount is available to annuitize after a specified period, thereby providing a **guaranteed minimum income benefit (GMIB)** if the contract holder elects to annuitize. This benefit is in addition to the guaranteed minimum annuity interest rate traditionally offered. Another type of deferred annuity may provide multiple crediting rates throughout the life of the contract depending on whether the contract holder elects to terminate or annuitize the contract. An example is a contract that applies a lower rate to funds deposited if the contract holder elects to surrender the contract for cash, and a higher rate if the contract holder elects to annuitize, often referred to as a "two-tier" annuity.

.05   Contracts also exist that potentially may be viewed as providing multiple account balances, for example, a contract that provides a return based on a contractually referenced pool of real estate assets owned by the insurance enterprise but also provides for minimum investment return guarantees. Other contracts may exist that provide for the return of principal and interest if held until maturity or a specified "market adjusted value" if surrendered at an earlier date.

.06   **Sales inducements** to contract holders may be offered with fixed and variable life insurance and annuity contracts. Those inducements may be offered in many forms, including an immediate bonus, a persistency bonus credited to the contract holder's account after a specified period, or an enhanced crediting rate, or "bonus interest" rate, in the initial period(s) of the contract.

.07   FASB Statement No. 97 provides no explicit accounting guidance for the above examples of nontraditional contract features. This SOP addresses the insurance enterprise's accounting for certain contract features not covered by other authoritative accounting literature, including asset, liability, revenue, and expense recognition. Embedded derivatives contained in nontraditional contracts should be accounted for in accordance with FASB Statement No. 133, *Accounting for Derivative Instruments and Hedging Activities,* and its related guidance. fn 2(4)

.08   In addition, this SOP addresses the insurance enterprise's accounting for separate account

Revised December 2003

8

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

assets and liabilities related to contracts for which all or a portion of the investment risk is borne by the insurer.

## Applicability and Scope

.09   This SOP is applicable to all entities to which FASB Statement No. 60, as amended, applies, hereinafter referred to as insurance enterprises. fn 3(5)

## Conclusions

### Separate Account Presentation

.10   Separate account assets and liabilities should be included in the financial statements of the insurance enterprise that owns the assets and is contractually obligated to pay the liabilities.

.11   The portion of separate account assets representing contract holder funds should be measured at fair value and reported in the insurance enterprise's financial statements as a summary total, with an equivalent summary total reported for related liabilities, if the **separate account arrangement** meets all of the following conditions:

   *a.*   The separate account is legally recognized. That is, the separate account is established, approved, and regulated under special rules such as state insurance laws, federal securities laws, or similar foreign laws.

   *b.*   The separate account assets supporting the contract liabilities are legally insulated from the general account liabilities of the insurance enterprise (that is, the contract holder is not subject to insurer default risk to the extent of the assets held in the separate account).

   *c.*   The insurer must, as a result of contractual, statutory, or regulatory requirements, invest the contract holder's funds within the separate account as directed by the contract holder in designated investment alternatives or in accordance with specific investment objectives or policies.

   *d.*   All investment performance, net of contract fees and assessments, must as a result of contractual, statutory, or regulatory requirements be passed through to the individual contract holder. Contracts may specify conditions under which there may be a minimum guarantee, but not a ceiling, as a ceiling would prohibit all

Revised December 2003                                           9

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

investment performance from being passed through to the contract holder.

For the portion of separate account arrangements meeting these criteria, the related investment performance (including interest, dividends, realized gains and losses, and changes in unrealized gains and losses) and the corresponding amounts credited to the contract holder should be offset within the same statement of operations line item netting to zero. Contract fees and assessments should be reported in accordance with FASB Statement No. 97, paragraph 19. Any liabilities related to minimum guarantees and insurance benefit liabilities under the contracts in excess of the fair value of separate account assets representing contract holder funds should be recognized as general account liabilities.

.12   If a separate account arrangement does not meet the criteria in paragraph .11 of this SOP, assets representing contract holder funds under the arrangement should be accounted for (measured and presented) the same as other general account assets as prescribed in paragraphs 45 through 51 of FASB Statement No. 60, as amended. Any related liability should be accounted for as a general account liability. Revenue and expenses related to such arrangements should be recognized within the respective revenue and expense lines in the statement of operations. Arrangements in which contract holders' funds are maintained in separate accounts to fund fixed account options of variable contracts, market value adjusted contracts, guaranteed investment contracts, and indexed contracts are examples of separate account arrangements that would not meet the criteria in paragraph .11 because all of the investment performance on these investments is not passed through to the contract holder.

**Accounting for an Insurance Enterprise's Interest in a Separate Account**

.13   Assets underlying an insurance enterprise's proportionate interest in a separate account (**seed money** or other investment as described in paragraph A-12 of this SOP) do not represent contract holder funds, and thus do not qualify for separate account accounting and reporting. The insurance enterprise should "look through" the separate account [fn 4(6)] for purposes of accounting for its interest therein, and account for and classify the assets of the separate account underlying that interest based on their nature as if the assets of the separate account underlying the insurance enterprise's proportionate interest were held directly by the general account rather than through the separate account structure. [fn 5(7)]

.14   If a separate account arrangement meets the criteria in paragraph .11 of this SOP, and (*a*)

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

the terms of the contract allow the contract holder to invest in additional units in the separate account or (b) the insurance enterprise is marketing contracts that permit funds to be invested in the separate account, the assets of the separate account underlying the insurance enterprise's proportionate interest in the separate account should be accounted for in a manner consistent with the accounting for similar assets held by the general account that the insurance enterprise may be required to sell. For example:

a.  For a debt or equity security with an unrealized loss, the loss should be accounted for as an other than temporary impairment consistent with the guidance of FASB Statement No. 115, *Accounting for Certain Investments in Debt and Equity Securities,* and recognized immediately in the statement of operations as a realized loss.

b.  The guidance in FASB Statement No. 144, *Accounting for the Impairment or Disposal of Long-Lived Assets,* should be followed for both real estate that is held for sale and real estate that is not held for sale. For real estate that does not meet the FASB Statement No. 144 held for sale criteria, the impairment test should be performed solely using undiscounted cash flows assuming immediate disposition.

**Transfers to Separate Accounts**

.15  Assets transferred from the general account to a separate account should be recognized at fair value to the extent of the third-party contract holders' proportionate interests in the separate account if the separate account arrangement meets the criteria in paragraph .11 of this SOP. Any resulting gain related to the third-party contract holders' proportionate interest should be recognized immediately in earnings of the general account of the insurance enterprise provided that the risks and rewards of ownership have been transferred to contract holders using the fair value of the asset at the date of the contract holders' assumption of risks and rewards. fn 6(8) A guarantee of the asset's value or minimum rate of return or a commitment to repurchase the asset would not transfer the risks of ownership, and no gain should be recognized. If the separate account arrangement does not meet the criteria in paragraph .11 of this SOP, the transfer generally should have no financial reporting effect (that is, general account classification and carrying amounts should be retained). Consistent with the guidance in footnote 9 of this SOP, the insurance enterprise should recognize an impairment loss on an asset transferred from the general account to a separate account not meeting the criteria in paragraph .11 of this SOP if the terms of the arrangement with the contract holder are such that the insurance enterprise will not be able to recover the asset's carrying value. The insurance enterprise should recognize an impairment loss on its proportionate interest in a separate account arrangement meeting the criteria in paragraph .11, in a situation where the current fair

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

value of the insurance enterprise's proportionate interest in the separate account assets is less than its carrying amount.

.16   If the transferred asset is subsequently sold by the separate account, any remaining unrecognized gain related to the insurance enterprise's proportionate interest should be recognized immediately in the earnings of the general account of the insurance enterprise. If third-party contract holders' proportionate interests in the separate account are subsequently increased, or the insurance enterprise otherwise reduces its proportionate interest in the separate account arrangement that meets the criteria in paragraph .11 of this SOP, the reduction in the insurance enterprise's proportionate interest may result in additional gain. If an insurance enterprise's proportionate interest subsequently increases as a result of transactions executed at fair value (for example, at net asset value), the increase is considered a purchase from the contract holder and should be recognized at fair value.

.17   For example, the general account transfers to the separate account arrangement, as seed money, a debt security with a book value of $60 and a fair value of $100. No gain is recognized on the initial transfer to the separate account arrangement. Contract holders subsequently direct $100 to the separate account arrangement, reducing the general account's proportionate interest to 50 percent. Assuming the fair value of the debt security is still $100, the general account recognizes a gain of $20, as a result of the contract holder investment into the separate account arrangement. In subsequent years, if the insurance enterprise reduces its interest in the separate account arrangement through withdrawal of cash or additional investment by contract holders, additional gains would be recognized if the fair value of the security continues to exceed the general account's basis in the security.

.18   If the insurance enterprise's proportionate interest in the separate account is less than 20 percent of the separate account and all of the underlying investments of the separate account meet the definition of securities under FASB Statement No. 115 or paragraph 46 of FASB Statement No. 60, as amended by FASB Statement No. 115, or cash and cash equivalents, the insurance enterprise may report its portion of the separate account value as an investment in equity securities under FASB Statement No. 115. This investment should be classified as trading and accounted for under the guidance in FASB Statement No. 115. The guidance in paragraphs .13 through .17 of this SOP should be applied when an insurance enterprise's interest in the separate account represents 20 percent or greater of the separate account interest, or when the underlying investments are other than those that meet the definition of securities under FASB Statement No. 115 or paragraph 46 of FASB Statement No. 60, as amended by Statement No. 115, or cash and cash equivalents.

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

**Valuation of Liabilities**

.19  Paragraphs .20 through .23 of this SOP provide guidance for determining the balance that accrues to the benefit of contract holders under paragraphs 15 and 17(a) of FASB Statement No. 97. Paragraphs .24 through .30 of this SOP provide guidance for determining any additional liability for death or other insurance benefit features under paragraph 17(b) of FASB Statement No. 97. Paragraphs .31 through .35 of this SOP provide guidance for determining any additional liability for potential benefits available only upon annuitization. Paragraph .36 of this SOP provides guidance for determining any additional liability for sales inducements.

.20  The balance that accrues to the benefit of the contract holder for a long-duration insurance or investment contract that is subject to FASB Statement No. 97 (paragraphs 15 and 17(a)) is the accrued account balance. The accrued account balance[fn 7(9)] equals:

   a.   Deposit(s) net of withdrawals;

   b.   Plus amounts credited pursuant to the contract;

   c.   Less fees and charges assessed;

   d.   Plus additional interest (for example, persistency bonus); and

   e.   Other adjustments (for example, appreciation or depreciation recognized in accordance with paragraph .21 of this SOP to the extent not already credited and included in *b* above).

   For purposes of item *d* above, additional interest is an amount that is required to be accrued under the liability valuation model that has not yet been credited to the contract holder's account. Additional interest, if any, should be accrued through the balance sheet date at the rate that would accrue to the balance available in cash, or its equivalent,[fn 8(10)] before reduction for future fees and charges, at the earlier of the date that the interest rate credited to the contract is reset or contractual maturity. The reset date is the date at which the existing contractually declared investment return expires.

.21  Some contracts, such as variable life and annuity and certain group pension participating and other experience-rated contracts, provide for a return through periodic crediting rates, surrender adjustments, or termination adjustments based on the total return of a contractually referenced pool of assets owned by the insurance enterprise. Insurance enterprises should determine whether such contracts will be accounted for under the

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

provisions of FASB Statement No. 133. fn 9(11) To the extent the contract is not accounted for under the provisions of FASB Statement No. 133, the amount of other adjustments described in paragraph .20 of this SOP should be based on the fair value of the referenced pool of assets at the balance sheet date, even if the related assets are not recognized at fair value, to the extent not already credited to the accrued account balance and included in paragraph .20*b* of this SOP. Amounts determined for other adjustments are not reduced for future fees and charges. fn 10(12)

.22 For contracts that have features that may result in more than one potential account balance (for example, a contract that provides a return based on a contractually referenced pool of real estate assets owned by the insurance enterprise but also provides for minimum investment return guarantees), the accrued account balance should be based on the highest contractually determinable balance that will be available in cash or its equivalent at contractual maturity or the reset date, before reduction for future fees and charges. For contracts in which amounts credited as interest to the contract holder are reset periodically, the accrued balance should be based on the highest crediting rate guaranteed or declared through the reset date.

.23 The accrued account balance should not reflect surrender adjustments (for example, market value annuity adjustments, fn 11(13) surrender charges, or credits). Any changes in the accrued account balance resulting from the application of the guidance in paragraphs .20 through .22 of this SOP should be reflected in net income in the period of the changes.

**Contracts With Death or Other Insurance Benefit Features**

*Determining the Significance of Mortality and Morbidity Risk and Classification of Contracts That Contain Death or Other Insurance Benefit Features*

.24 To determine the accounting under FASB Statement No. 60 or No. 97 for a contract that contains death or other insurance benefit features, the insurance enterprise should first determine whether the contract is an investment or insurance contract. Classification of a contract as an investment contract or as an insurance contract should be made at contract inception, and the classification should not be reassessed during the **accumulation phase** of the contract. If the **mortality** and **morbidity** risk associated with insurance benefit features offered in a contract is deemed to be nominal, that is, a risk of insignificant fn 12(14) amount or remote fn 13(15) probability, the contract should be classified as an investment contract; otherwise, it should be considered an insurance contract. There is a