COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

criteria in paragraph .37 of this SOP are met, an asset should be established. While it may not become payable by the insurance company until some future vesting or crediting date, the insurance enterprise is prohibited by FASB Statement No. 97 from anticipating surrenders and must assume the contract holder will persist to earn the bonus.

**D-20.**   In an enhanced crediting rate sales inducement, the insurance enterprise offers customers a crediting rate for a stated period in excess of that currently being offered by the company for other similar contracts. Pursuant to the contract, the enhanced crediting rate is applicable for a limited period of time, after which, the rate is "reset" under the contractual provisions, typically at the discretion of the insurance enterprise. The liability for an enhanced crediting rate sales inducement should be accrued ratably over the bonus crediting period. If the criteria in paragraph .37 of this SOP are met, an asset should be established for the same amount.

## Variable Annuity With Long-Term Care Benefit

**D-21.**   Some deferred annuities provide that if during the accumulation phase, the contract holder has an insurable event (for example, disability, loss of "activities of daily living") that meets the criteria specified in the contract, additional benefits in excess of the account balance will be available. This feature should be evaluated and accounted for in accordance with paragraphs .24 through .30 of this SOP.

## Annuities With Earnings Protection Benefit

**D-22.**   Some annuities provide that in the event of death, the beneficiary will receive a benefit in addition to the account balance equal to a percentage (for example, 40 percent) of the difference between the account balance and the deposits less withdrawals. This feature is a death benefit and should be evaluated and accounted for in accordance with paragraphs .24 through .30 of this SOP.

# Appendix E

# Illustrations of the Calculation of Minimum Guaranteed Death Benefit Liability

.48

**E-1.**   The accompanying schedules illustrate how to calculate an additional liability for a portfolio of variable annuity contracts with a minimum guaranteed death benefit (MGDB) feature as noted in paragraphs .24 through .29 of this Statement of

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

Position (SOP). For this illustration it is assumed that the guidance in paragraphs .24 and .25 of this SOP has been followed, with the conclusion that the mortality and morbidity risk associated with insurance benefit features is other than nominal.

**E-2.**    The following is assumed for contracts in this illustration:

*a.*    Variable annuity contracts have no front-end loads.

*b.*    Mortality assessments include any explicit assessments for enhanced death benefit feature.

*c.*    Surrender charges are calculated based on a percentage of premiums.

*d.*    Expense assessments are a fixed annual charge.

*e.*    Discount rate of 8 percent is the same rate as used for deferred acquisition cost amortization.

**E-3.**    Schedules 6 through 10 contain the same basic assumptions as Schedule 1, but with the impact on the adjusted gross profits of a 10 percent increase in account balances (not shown in schedules) in year 2.

**E-4.**    The illustrations display the computations involved in:

*a.*    Gross profits

*b.*    Benefit ratio

*c.*    Additional MGDB liability

*d.*    Adjusted gross profits that should be used for the amortization of deferred acquisition costs fn 1(35)

*Note*: Columns in schedules do not cross foot due to rounding.

## Schedule 1—Illustration of Unadjusted Gross Profits Calculation

| Year | Expense Assessments | + | Mortality Assessments | + | Surrender Charges | = | Total Revenue fn 1(36) | – | Recurring Expenses Incurred | – | Excess De Benefit Paid |
|------|---------------------|---|-----------------------|---|-------------------|---|------------------------|---|-----------------------------|---|------------------------|
| 1 | 30.00 | | 820.50 | | 17.50 | | 868.00 | | 25.00 | | ( |
| 2 | 29.75 | | 871.65 | | 44.62 | | 946.02 | | 170.27 | | 1: |

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

| | | | | | | |
|---|---|---|---|---|---|---|
| 3 | 29.48 | 919.29 | 61.42 | 1,010.20 | 117.78 | 20 |
| 4 | 29.20 | 969.80 | 68.12 | 1,067.12 | 185.96 | 23 |
| 5 | 28.89 | 1,034.77 | 64.99 | 1,128.65 | 196.53 | 3 |
| 6 | 28.55 | 1,086.61 | 95.16 | 1,210.32 | 204.89 | 44 |
| 7 | 28.18 | 1,143.53 | 58.71 | 1,230.42 | 214.07 | 49 |
| 8 | 27.78 | 1,086.61 | 0.00 | 1,114.39 | 224.32 | 53 |
| 9 | 27.34 | 1,268.91 | 0.00 | 1,296.25 | 234.27 | 6: |
| 10 | 26.87 | 1,333.10 | 0.00 | 1,359.97 | 244.57 | 76 |
| 11 | 26.35 | 1,382.93 | 0.00 | 1,409.28 | 252.45 | 9: |
| 12 | 25.79 | 1,433.09 | 0.00 | 1,458.87 | 243.67 | 104 |
| 13 | 25.18 | 1,487.10 | 0.00 | 1,512.27 | 268.83 | 120 |
| 14 | 24.52 | 1,539.66 | 0.00 | 1,564.18 | 278.10 | 142 |
| 15 | 23.81 | 1,597.88 | 0.00 | 1,621.69 | 286.16 | 15 |
| 16 | 23.06 | 1,662.23 | 0.00 | 1,685.28 | 296.25 | 15: |
| 17 | 22.25 | 1,691.70 | 0.00 | 1,713.95 | 300.49 | 210 |
| 18 | 21.39 | 1,723.70 | 0.00 | 1,745.09 | 305.11 | 230 |
| 19 | 20.48 | 1,751.22 | 0.00 | 1,771.70 | 308.93 | 270 |
| 20 | 19.52 | 1,788.11 | 0.00 | 1,807.63 | 314.28 | 270 |
| Present Value | | | | 12,304.07 | | 724 |

## Schedule 2—Computation of Benefit Ratio

| | |
|---|---|
| Present value of excess death benefits paid | 724.88 |
| Divided by present value of total revenue | 12,304.07 |
| Equals benefit ratio | 5.8914% |

## Schedule 3—Computation of Year 1 Additional MGDB Liability

| | |
|---|---|
| Cumulative revenue recognized | 868.00 |
| Multiplied by benefit ratio | 5.8914% |
| Equals year 1 additional liability | ($) 51.14 |

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

## Schedule 4—Additional MGDB Liability Amortized Over Total Revenue

| Year | Beginning Additional MGDB Liability | + | Interest | + | Total Revenue x Benefit Factor | – | Excess Death Benefits Paid | = | Ending Additional MGDB Liability | Change in Additional Liability |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 0.00 | | 0.00 | | 51.14 | | 0.00 | | 51.14 | 51.14 |
| 2 | 51.14 | | 4.09 | | 55.73 | | 12.20 | | 98.76 | 47.63 |
| 3 | 98.76 | | 7.90 | | 59.51 | | 20.61 | | 145.57 | 46.81 |
| 4 | 145.57 | | 11.65 | | 62.87 | | 25.94 | | 194.15 | 48.57 |
| 5 | 194.15 | | 15.53 | | 66.49 | | 31.58 | | 244.59 | 50.45 |
| 6 | 244.59 | | 19.57 | | 71.30 | | 44.05 | | 291.41 | 46.82 |
| 7 | 291.41 | | 23.31 | | 72.49 | | 49.53 | | 337.69 | 46.28 |
| 8 | 337.69 | | 27.02 | | 65.65 | | 52.00 | | 378.35 | 40.66 |
| 9 | 378.35 | | 30.27 | | 76.37 | | 65.93 | | 419.06 | 40.70 |
| 10 | 419.06 | | 33.52 | | 80.12 | | 76.78 | | 455.92 | 36.86 |
| 11 | 455.92 | | 36.47 | | 83.03 | | 93.75 | | 481.67 | 25.75 |
| 12 | 481.67 | | 38.53 | | 85.95 | | 104.76 | | 501.39 | 19.72 |
| 13 | 501.39 | | 40.11 | | 89.09 | | 120.67 | | 509.93 | 8.54 |
| 14 | 509.93 | | 40.79 | | 92.15 | | 142.22 | | 500.65 | -9.27 |
| 15 | 500.65 | | 40.05 | | 95.54 | | 151.25 | | 484.99 | -15.66 |
| 16 | 484.99 | | 38.80 | | 99.29 | | 153.64 | | 469.44 | -15.55 |
| 17 | 469.44 | | 37.56 | | 100.98 | | 210.92 | | 397.05 | -72.39 |
| 18 | 397.05 | | 31.76 | | 102.81 | | 236.72 | | 294.91 | -102.14 |
| 19 | 294.91 | | 23.59 | | 104.38 | | 270.72 | | 152.16 | -142.75 |
| 20 | 152.16 | | 12.17 | | 106.49 | | 270.82 | | 0.00 | -152.16 |

## Schedule 5—Estimated Gross Profits to Use for Amortization of Deferred Acquisition Costs

| Year | Unadjusted Gross Profits | – | Change in Additional Liability | = | Estimated Gross Profits |
|---|---|---|---|---|---|
| 1 | 843.00 | | 51.14 | | 791.86 |
| 2 | 763.55 | | 47.63 | | 715.92 |
| 3 | 811.80 | | 46.81 | | 765.00 |

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

| | | | |
|---|---|---|---|
| 4 | 855.22 | 48.57 | 806.64 |
| 5 | 900.54 | 50.45 | 850.09 |
| 6 | 961.38 | 46.82 | 914.56 |
| 7 | 966.82 | 46.28 | 920.55 |
| 8 | 838.07 | 40.66 | 797.40 |
| 9 | 996.05 | 40.70 | 955.35 |
| 10 | 1,038.61 | 36.86 | 1,001.75 |
| 11 | 1,063.08 | 25.75 | 1,037.34 |
| 12 | 1,110.44 | 19.72 | 1,090.72 |
| 13 | 1,122.78 | 8.54 | 1,114.24 |
| 14 | 1,143.86 | -9.27 | 1,153.13 |
| 15 | 1,184.28 | -15.66 | 1,199.94 |
| 16 | 1,235.39 | -15.55 | 1,250.95 |
| 17 | 1,202.54 | -72.39 | 1,274.93 |
| 18 | 1,203.27 | -102.14 | 1,305.41 |
| 19 | 1,192.05 | -142.75 | 1,334.80 |
| 20 | 1,222.52 | -152.16 | 1,374.68 |

## Schedule 6—Illustration of Unadjusted Gross Profits Calculation With 10 Percent Increase in Account Balances in Year 2

| Year | Expense Assessment | + | Mortality Assessments | + | Surrender Charges | = | Total Revenue | − | Recurring Expenses Incurred | − | Excess Death Benefits Paid | = | U |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 30.00 | | 820.50 | | 17.50 | | 868.00 | | 25.00 | | 0.00 | | |
| 2 | 29.75 | | 952.20 | | 44.62 | | 1,026.58 | | 183.70 | | 0.00 | | |
| 3 | 29.48 | | 1,004.82 | | 61.42 | | 1,095.72 | | 192.04 | | 14.70 | | |
| 4 | 29.20 | | 1,060.59 | | 68.12 | | 1,157.91 | | 201.10 | | 23.32 | | |
| 5 | 28.89 | | 1,131.90 | | 64.99 | | 1,225.78 | | 212.72 | | 30.43 | | |
| 6 | 28.55 | | 1,189.01 | | 95.16 | | 1,312.72 | | 221.96 | | 44.65 | | |
| 7 | 28.18 | | 1,251.32 | | 58.71 | | 1,338.21 | | 232.04 | | 51.02 | | |
| 8 | 27.78 | | 1,189.01 | | 0.00 | | 1,216.79 | | 243.33 | | 54.23 | | |
| 9 | 27.34 | | 1,389.04 | | 0.00 | | 1,416.38 | | 254.29 | | 68.42 | | |
| 10 | 26.87 | | 1,456.89 | | 0.00 | | 1,483.76 | | 265.21 | | 82.24 | | |
| 11 | 26.35 | | 1,511.61 | | 0.00 | | 1,537.96 | | 273.89 | | 101.42 | | |
| 12 | 25.79 | | 1,568.05 | | 0.00 | | 1,593.83 | | 264.30 | | 112.70 | | |
| 13 | 25.18 | | 1,626.63 | | 0.00 | | 1,651.81 | | 292.09 | | 131.08 | | |

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

| | | | | | | |
|---|---|---|---|---|---|---|
| 14 | 24.52 | 1,683.48 | 0.00 | 1,708.00 | 302.07 | 154.93 |
| 15 | 23.81 | 1,747.40 | 0.00 | 1,771.22 | 311.08 | 163.02 |
| 16 | 23.06 | 1,814.73 | 0.00 | 1,837.79 | 321.67 | 167.79 |
| 17 | 22.25 | 1,845.71 | 0.00 | 1,867.96 | 326.16 | 232.38 |
| 18 | 21.39 | 1,878.58 | 0.00 | 1,899.97 | 330.92 | 261.62 |
| 19 | 20.48 | 1,909.07 | 0.00 | 1,929.54 | 335.24 | 296.86 |
| 20 | 19.52 | 1,950.07 | 0.00 | 1,969.58 | 341.27 | 296.31 |
| Present value | | | | 13,326.45 | | 759.24 |

## Schedule 7—Computation of Benefit Ratio at Year 2

| | | |
|---|---|---|
| Present value of excess death benefits paid | | 759.24 |
| Divided by present value of total revenue | = | 13,326.45 |
| Equals benefit ratio | | 5.6972% |

## Schedule 8—Computation of Year 2 Additional MGDB Liability

| | | |
|---|---|---|
| Cumulative revenue recognized | | |
| | Year 1 | 868.00 |
| | Year 2 | 1026.58 |
| | Total | 1,894.58 |
| Multiplied by benefit ratio | | 5.6972% |
| Equals year 2 additional liability [fn 1(37)] | ($) | 107.94 |

## Schedule 9—Additional MGDB Liability Amortized Over Total Revenue

| Year | Beginning Additional MGDB Liability | + | Interest | + | Total Revenue x Benefit Factor | – | Excess Death Benefits Paid | = | Ending Additional MGDB Liability | Change in Additional Liability |
|---|---|---|---|---|---|---|---|---|---|---|

68

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | 0.00 | 0.00 | 49.45 fn 1(38) | 0.00 | 49.45 fn 2(19) | 51.14 |
| 2 | 49.45 | 3.96 | 58.49 fn 1(40) | 0.00 | 111.89 fn 3(41) | 60.75 |
| 3 | 111.89 | 8.95 | 62.43 | 14.70 | 168.57 | 56.68 |
| 4 | 168.57 | 13.49 | 65.97 | 23.32 | 224.71 | 56.14 |
| 5 | 224.71 | 17.98 | 69.84 | 30.43 | 282.09 | 57.38 |
| 6 | 282.09 | 22.57 | 74.79 | 44.65 | 334.79 | 52.70 |
| 7 | 334.79 | 26.78 | 76.24 | 51.02 | 386.80 | 52.01 |
| 8 | 386.80 | 30.94 | 69.32 | 54.23 | 432.84 | 46.04 |
| 9 | 432.84 | 34.63 | 80.69 | 68.42 | 479.74 | 46.90 |
| 10 | 479.74 | 38.38 | 84.53 | 82.24 | 520.41 | 40.67 |
| 11 | 520.41 | 41.63 | 87.62 | 101.42 | 548.24 | 27.83 |
| 12 | 548.24 | 43.86 | 90.80 | 112.70 | 570.21 | 21.97 |
| 13 | 570.21 | 45.62 | 94.11 | 131.08 | 578.86 | 8.65 |
| 14 | 578.86 | 46.31 | 97.31 | 154.93 | 567.55 | -11.31 |
| 15 | 567.55 | 45.40 | 100.91 | 163.02 | 550.84 | -16.71 |
| 16 | 550.84 | 44.07 | 104.70 | 167.79 | 531.82 | -19.02 |
| 17 | 531.82 | 42.55 | 106.42 | 232.38 | 448.41 | -83.41 |
| 18 | 448.41 | 35.87 | 108.25 | 261.62 | 330.91 | -117.50 |
| 19 | 330.91 | 26.47 | 109.93 | 296.86 | 170.46 | -160.45 |
| 20 | 170.46 | 13.64 | 112.21 | 296.31 | 0.00 | -170.46 |

## Schedule 10—Estimated Gross Profits to Use for Amortization of Deferred Acquisition Costs

| Year | Unadjusted Gross Profits | – | Change in Additional Liability | = | Estimated Gross Profits |
|---|---|---|---|---|---|
| 1 | 843.00 | | 51.14 | | 791.86 |
| 2 | 842.88 | | 60.75 | | 782.13 |
| 3 | 888.98 | | 56.68 | | 832.30 |
| 4 | 933.50 | | 56.14 | | 877.36 |

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

| | | | |
|---|---|---|---|
| 5 | 982.63 | 57.38 | 925.25 |
| 6 | 1,046.10 | 52.70 | 993.40 |
| 7 | 1,055.15 | 52.01 | 1003.14 |
| 8 | 919.23 | 46.04 | 873.19 |
| 9 | 1,093.67 | 46.90 | 1046.77 |
| 10 | 1,136.32 | 40.67 | 1095.65 |
| 11 | 1,162.64 | 27.83 | 1134.81 |
| 12 | 1,216.83 | 21.97 | 1194.86 |
| 13 | 1,228.64 | 8.65 | 1219.99 |
| 14 | 1,251.00 | -11.31 | 1262.31 |
| 15 | 1,297.12 | -16.71 | 1313.83 |
| 16 | 1,348.33 | -19.02 | 1367.35 |
| 17 | 1,309.42 | -83.41 | 1392.83 |
| 18 | 1,307.43 | -117.50 | 1424.93 |
| 19 | 1,297.44 | -160.45 | 1457.89 |
| 20 | 1,332.00 | -170.46 | 1502.46 |

## Glossary

.49

**accumulation phase.** The period during an annuity contract prior to annuitization. An insurance enterprise may refer to this type of annuity as a deferred annuity.

**annuitization phase.** The period during which the contract holder is receiving periodic payments from an annuity, also referred to as the payout phase.

**general account.** All operations of an insurance enterprise that are not reported in the separate account(s).

**guaranteed investment option.** Component of a variable contract that guarantees a specific rate of performance.

**guaranteed minimum income benefit (GMIB).** Benefit normally offered with deferred variable annuities to provide a guaranteed minimum amount available for annuitization after a specified period in addition to a guaranteed minimum annuity rate. That is, the fixed periodic annuity payments would be determined using the higher of the current accumulated account value that exists at the date of annuitization or the guaranteed

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

amount.

**long-term care (LTC) benefit.** Benefit offered in an annuity product with a rider providing amounts in excess of the account balance to provide for LTC benefits if contract holder meets the criteria for restrictions on activities of daily living.

**minimum guaranteed death benefit (MGDB).** A feature in an annuity, life insurance, or similar contract that provides that in the event of an insured's death, the beneficiary (or insurer in the case of a reinsurance contract) will receive the higher of the current account balance of the contract or another amount defined in the contract.

**morbidity.** The relative incidence of disability due to disease or physical impairment.

**mortality.** The relative incidence of death in a given time or place.

**net amount at risk.** The guaranteed benefit in excess of the current account balance. For guarantees in the event of death, the net amount at risk is the minimum guaranteed amount available to the contract holder upon death in excess of the contract holder's account balance at the balance sheet date. For guarantees of amounts at annuitization, the net amount at risk is defined as the present value of the minimum guaranteed annuity payments available to the contract holder determined in accordance with the terms of the contract in excess of the current account balance.

**sales inducements.** Sales inducements are product features that enhance the investment yield to the contract holder on the contract. The three main types of sales inducements are (1) day-one bonus, which increases the account value at inception, also called immediate bonus; (2) persistency bonus, which increases the account value at the end of a specified period; and (3) enhanced yield, which credits interest for a specified period in excess of rates currently being offered for other similar contracts.

**seed money.** An investment of non-contract holder funds by an insurer in a separate account when it is established, to support the initial or ongoing operations of the separate account.

**separate account.** A separate investment account established and maintained by an insurance enterprise under relevant state insurance law to which funds have been allocated for certain contracts of the insurance enterprise or similar accounts used for foreign originated products. Often for administrative purposes, separate account subaccounts with differing investment objectives are created within a single separate account.

**separate account arrangement.** An arrangement under which all or a portion of a contract holder's funds is allocated to a specific separate account maintained by the insurance enterprise. Examples include a variable life insurance contract offered through an

COPYRIGHT © 2003, AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS (AICPA)

insurance enterprise's high return separate account and a contract holder's allocation of a portion of his or her deposit in a deferred variable annuity to a growth equity fund.

**traditional variable annuity.** An insurance product in which all the contract holder's payments are used to purchase units of a separate account. The contract holder directs the allocation of the account value among various investment alternatives and bears the investment risk. The units may be surrendered for their current value in cash (usually less a surrender change) or applied to purchase annuity income. The insurance enterprise periodically deducts mortality and expense charges from the account.

## Accounting Standards Executive Committee
## (2002-2003)

| | |
|---|---|
| MARK V. SEVER, *Chair* | ANDREW M. MINTZER |
| MARK M. BIELSTEIN | RICHARD H. MOSELEY |
| VAL R. BITTON | BENJAMIN S. NEUHAUSEN |
| LAWRENCE N. DODYK | COLEMAN D. ROSS |
| KARIN A. FRENCH | ASHWINPAUL C. SONDHI |
| JAMES A. KOEPKE | MARY S. STONE |
| ROBERT J. LAUX | BRENT A. WOODFORD |
| FRANCIS T. MCGETTIGAN | |

## Nontraditional Long-Duration Contracts Task Force

| | |
|---|---|
| THOMAS W. WALSH, *Chair* | DAVID A. JACOBY |
| THOMAS A. CAMPBELL | DEBORAH KOLTENUK |
| THOMAS M. DAUGHERTY | L. JAMES KORTAN |
| DONALD A. DORAN | PAULA C. PANIK |
| DAVID L. HOLMAN | KEVIN SPATARO |

## AICPA Staff

| | |
|---|---|
| KIM KUSHMERICK HEKKER | DANIEL J. NOLL, |
| *Technical Manager* | *Director* |
| *Accounting Standards* | *Accounting Standards* |

AcSEC gratefully acknowledges the contributions of Mary Jane Fortin, Ellen M. Hancock, Ken Height, Elaine Lehnert, John Pintozzi, Susan J. Stamm, Dave Sandberg, Mary S. Saslow, Chris C. Stroup, and Deborah H. Whitmore.

# EXHIBIT E

Home | Previous Page



# U.S. Securities and Exchange Commission

## Division of Corporation Finance:
## International Financial Reporting and Disclosure Issues

*May 1, 2001*

*Prepared by Accounting Staff Members*
*in the Division of Corporation Finance*
*U.S. Securities and Exchange Commission*
*Washington, D.C.*

The Securities and Exchange Commission disclaims responsibility for any private publication or statement of any of its employees. This outline was prepared by members of the staff of the Division of Corporation Finance, and does not necessarily reflect the views of the Commission, the Commissioners, or other members of the staff.

## Table of Contents

I.   Overview of Disclosure Rules Applicable to Foreign Issuers

II.  Recent Commission Actions and Other Topical Information

    A.  Adoption of International Disclosure Rules

        1.  Age of Financial Statements

        2.  Other Issues Associated with the New Form 20-F

    B.  Concept Release about International Accounting Standards

    C.  Issues Related to Other Recently Adopted Rules

        1.  General

        2.  Audit Committee Disclosures

        3.  Auditor Independence

        4.  Regulation M-A -- Mergers and Acquisitions

        5.  Financial Statements for Subsidiary Issuers and Guarantors

III. Staff Processing and Review of Filings

A. Matters of Interest to Initial Filers

    1. Pre-filing Issues and Confidential Reviews

    2. US GAAP Reconciliation in an Initial Registration Statement

    3. Foreign Issuers that Use US GAAP for their Primary Financial Statements

    4. Pension Accounting under US GAAP in an Initial Registration Statement

B. Draft Submissions

    1. Staff Willingness to Review Draft Submissions

    2. Completeness of Draft Submission

    3. Audit Reports in Draft Submissions

    4. Quality of Reconciliation to US GAAP

IV. Audit Reports and Independent Auditors

A. Audit Opinion Qualifications

B. Reference to the US GAAP Reconciliation

C. Changes in Accounting Principles

D. True and Fair Overrides

E. References to Another Auditor

F. Auditor Independence

    1. Indemnification of Auditors

    2. Fairness Opinions Issued by Auditors

V. Issues Encountered in Reconciliations to US GAAP

A. Issues Related to Recent US GAAP Pronouncements

    1. FASB Statement 133 - Application in Initial Filings

    2. FASB Statement 130 - Comprehensive Income

    3. FASB Statement 131 - Segment Reporting

    4. FASB Statement 123 - Stock Compensation Disclosures

5. FASB Statement 109 - Income Taxes

B. Business Combination Accounting

    1. Effect of Transactions in an Issuer's own Stock on Pooling of Interests Accounting

    2. Date of Consummation under US GAAP

    3. Financial Statement Requirements after a Reverse Acquisition

    4. Dual Pro Forma Presentations: Purchase and Pooling

    5. Age of Pro Forma Information in a Cross-border Business Combination

    6. Accommodation for Period of Goodwill under UK Accounting Standards

C. Consolidation and Proportional Consolidation

    1. Consolidation Policy Disclosures

    2. Item 17/18 Accommodation for Proportional Consolidation

    3. Proportionate Consolidation in US GAAP Financial Statements

    4. Consolidated Businesses that would be under Equity Method in US GAAP

VI. International Accounting Standards

A. Representations as to Compliance with IAS

B. US GAAP Difference or Departure from IAS?

C. Business Combinations

    1. Accommodation for Method of Accounting under IAS 22

    2. Strict Interpretation of "Uniting of Interests" -- SIC-9

    3. Accommodation for Goodwill Amortization Period

    4. 1998 Revisions to IAS 22

D. Accounting for Associates

E. IAS 27 - Consolidation

F.  Consolidation Policies - Special Purpose Entities

G.  Consolidation of German Special Funds under IAS

H.  IAS 14 - Segment Reporting

I.  IAS 38 - Intangible Assets

J.  Income Statement and Balance Sheet Presentation

VII.  Reporting Currency

A.  Selection of Reporting Currency

B.  Currency for Measurement

C.  Changes in Reporting Currency

1.  General

2.  Reporting Currency Changes in Canada

3.  Reporting in a Currency Different from the Registrant's
    Predecessor

D.  Issues involving Euros

1.  Presentation of Comparative Periods in Euros

2.  Staff Legal Bulletin 6 - Euro Disclosures

3.  Convenience Translations

E.  Reporting Currency for Domestic Registrants and non Foreign
    Private Issuers

VIII.  Other Disclosure Issues and Staff Interpretations

A.  Updating Interim Financial Information -- Item 8.A.5 of Form
    20-F

B.  Changing to US GAAP for the Primary Financial Statements

C.  Pro Forma Information that Departs from Article 11 of
    Regulation S-X

D.  Disclosure in Specialized Industries

1.  Disclosure by Banking and Insurance Companies

2.  Oil and Gas Full Cost Ceiling Test

        3.   Mining Reserves and Depletion

    E.   Disclosure about New Accounting Rules

    F.   Management Discussion and Analysis

        1.   Effects of Accounting Methods on Reported Results and Liquidity

        2.   UK GAAP and Market Risk Disclosures

        3.   Sony Enforcement Release

IX.   Reporting in Highly Inflationary EconomieS

    A.   Price-Level Adjusted Financial Statements

        1.   General

        2.   Price Level Adjusted Financial Statements under US GAAP - APS 3

        3.   Updating Price Level Adjusted Financial Statements

        4.   Price-Level Adjusted Cash Flow Statements

    B.   Determining whether an Economy is Highly Inflationary for FASB Statement 52

        1.   General

    C.   Other Reporting Questions

        1.   Reporting in US Dollars

        2.   Accommodation for IAS 21 for Highly Inflationary Foreign Operations

X.   Privatizations of Government-Owned Enterprises

    A.   Predecessor Financial Statements

    B.   Selected Financial Data

    C.   Fixed Asset Valuations

    D.   Restructuring Activities

    E.   Issuances of Government-owned Shares to Employees

    F.   Oil & Gas Properties

XI.  Domestic Issuers With Acquired Foreign Businesses

    A.  Rule 3-05 and 3-09 Reconciliation Requirements

    B.  Effect of Recent Amendments to Form 20-F

---

## Appendix — Country Specific Issues

  I.  Canada

    A.  MJDS

    B.  Flow Through Shares

  II.  Mexico

    A.  Pensions

    B.  Deferred Profit Sharing

    C.  Consolidation of Foreign Subsidiaries

    D.  Fixed Assets of Non-Mexican Origin

    E.  Inflationary Status

  III.  South America

    A.  Brazil

      1.  Price Level Index

      2.  Inflationary Status

    B.  Chile

      1.  Translation of foreign subsidiaries

      2.  Profit Distributions

    C.  Columbia - Price-Level Adjusting

    D.  Capital Transactions - Earnings per Share

  IV.  Europe

    A.  UK - Item 18 Disclosures

    B.  Russia - Inflationary Status

V.  Israel

    A.  Approved Enterprise Zones

    B.  Pension Plans

    C.  Government Grants

    D.  Devaluation Method

    E.  Price-Indexed Tax Systems

VI.  Asia

    A.  People's Republic of China

        1.  Consolidation of Joint Ventures

        2.  Fixed Asset Revaluation - IAS 16

    B.  Taiwan - Stock Bonuses

## I. Overview of Disclosure Rules Applicable To Foreign Issuers

Over the last five years, the number of foreign companies accessing the U.S. public markets has increased dramatically. In that time, over 800 foreign companies have registered securities with the SEC for the first time. As of December 31, 1999, there were over 1200 foreign companies from over 55 countries filing periodic reports with the Commission.

A foreign company that seeks to list its securities on the New York or American Stock Exchanges or the Nasdaq Stock Market must register its securities with the SEC by filing an Exchange Act registration statement, and must subsequently file annual reports. Form 20-F is the form used by most publicly traded, foreign companies for Exchange Act registration and annual reporting because its requirements are tailored specifically for foreign issuers. Form 20-F requires comprehensive disclosure about the company, including information about its business operations and its financial statements.

The Securities Act requires companies to register each public offering of securities in the U.S. In an initial public offering, a foreign company registers its securities using a Form F-1 registration statement. The registration statement includes the prospectus, which is the principal document used to market securities to investors. The disclosure contained in a prospectus generally is the same as that required by Form 20-F and also includes various matters that are specific to the offering.

The integrated disclosure system designed for foreign private issuers provides a number of accommodations to practices in other jurisdictions. These accommodations include:

adopted on January 1, 1998. At that date, the transition obligation is £15,000 and the remaining service period is 15 years. Nine years have elapsed since the effective date of FAS 87. Accordingly, 9/15ths, or £9,000 of the transition obligation would be recorded as a direct reduction of equity in the opening balance sheet under US GAAP. The remaining £6,000 would be amortized as part of pension expense over the next 6 years.

Foreign registrants implementing this accommodation should include the following disclosures:

- the date FAS 87 was adopted for purposes of the financial statements;

- a statement that it was not feasible to apply FAS 87 on the effective date specified in the standard; and

- the amortization period for the transition obligation/asset, and the amount that was recorded directly to equity in the opening balance sheet under US GAAP.

The disclosure of this information is necessary for financial statements prepared under either Item 17 or Item 18 of Form 20-F, and should be furnished whenever an income statement for the period in which FAS 87 was adopted is included in the filing.

## B. Draft Submissions

### 1. Staff Willingness to Review Draft Submissions

The SEC's review of filings by public companies is generally transparent to the public and usually involves the public filing of amendments to remedy disclosure deficiencies identified by staff reviewers. The SEC staff recognizes that a foreign registrant often has special concerns about that transparency. This is particularly true when a foreign registrant's securities trade publicly in its home market, and the company will be making new and different disclosure as a result of its registration with the SEC. To address these concerns, the SEC staff often reviews and screens draft submissions of foreign registrants on a non-public basis. The staff, however, is revising its practice in this area. The staff generally will continue to accept draft submissions in connection with an issuer's initial registration with the SEC. Except in unusual circumstances, however, once a foreign issuer has registered a transaction under the Securities Act or a class of securities under the Exchange Act, the staff will no longer accept from that issuer additional draft submissions and will not review or screen a registration statement until it is publicly filed. The timing and scope of staff review of these draft registration statements is generally the same as for publicly filed registration statements. Foreign companies are encouraged to contact the Office of International Corporate Finance (202 942-2990) to discuss the availability of any relief or accommodation early in the planning stages of a transaction or listing.

### 2. Completeness of Draft Submission

The time period required for the staff to review, comment on, and

ultimately declare effective a registration statement depends upon the completeness of the draft registration statement and degree of compliance with the disclosure requirements. Draft registration statements must be complete in all material respects at the time of first submission, unless special arrangements have been agreed in advance with the Office of International Corporation Finance. Common examples of incompleteness include missing or partial US GAAP reconciliations, missing or partial US GAAP disclosure under Item 18, missing annual or interim periods, missing Industry Guide data, and missing financial statements of acquirees and investees. The staff will defer the review of an incomplete or deficient draft registration statement.

### 3. Audit Reports in Draft Submissions

The staff will expect the auditor's report to be signed and dated at the time the draft registration statement is first submitted, unless special arrangements have been agreed in advance with the Office of International Corporation Finance.

### 4. Quality of Reconciliation to US GAAP

Accounting firms that routinely audit financial statements that are prepared in accordance with US GAAP and filed with the Commission can be expected to be most knowledgeable about current US accounting practices and interpretations. Because of the importance of the reconciliation to US GAAP in filings with the Commission, registrants and their accountants should assure that appropriate competence is brought to that disclosure before materials are filed or submitted.

Most accountants that practice before the Commission are members of the SEC Practice Section (SECPS) of the American Institute of Certified Public Accountants. Membership in the SECPS and participation in its Peer Review program are a voluntary part of the self-regulatory activities of the AICPA and the Public Oversight Board that are intended to ensure good quality practice before the Securities and Exchange Commission. The SECPS recently modified its rules to address member firms with foreign associated firms that audit SEC registrants. Under the new rules, which became effective January 1, 2000, SECPS members must seek the adoption of policies and procedures by the international organization or the individual foreign associated firms that are consistent with SECPS objectives for audits of SEC registrants. The SECPS member will report to the AICPA the name and country of any foreign associated firms that demonstrates compliance with that objective. The foreign associated firm would be subject to scrutiny as part of the peer review process for the SECPS member firm. The new rules also establish minimum requirements for the review of SEC filings and confidential submissions by a designated "filing reviewer" within the US firm or international organization knowledgeable about US GAAP, US GAAS, US auditor independence and SEC reporting requirements.

The filing reviewer requirement in the SECPS rules is modeled on policies and procedures already in place at many firms. To complement those procedures, the staff has adopted certain practices upon receipt of draft submissions from foreign registrants audited by foreign associated firms. Prior to commencing review, the staff requests written confirmation that

the SECPS member firm's review procedures were applied to the submission. We also request the name of the designated filing reviewer that the staff may contact with any questions concerning the application of those policies and procedures to the draft submission. The staff's procedure is not intended to specify or alter the nature or scope of a firm's policies or procedures, nor to specify or alter how a firm selects its filing reviewers. The purpose of the procedure is to ensure that foreign associated firms appropriately involve their designated filing reviewer prior to submission of draft registration statements. The staff will consider deferring the review of a draft submission where the application of the firm's policies and procedures to that submission cannot be confirmed.

SEC rules do not require an auditor to be a member of the SECPS. A foreign auditor that is not a member or affiliate of a SECPS member firm may practice before the SEC, provided that the auditor meets all requirements of Article 2 of Regulation S-X and demonstrates sufficient knowledge and experience in applying US GAAP, US GAAS, SEC financial reporting rules, and SEC independence requirements. The Office of the Chief Accountant may request supplemental information from a foreign auditor to ascertain that the foreign auditor has the necessary knowledge and experience.

## IV. Audit Reports and Independent Auditors

### A. Audit Opinion Qualifications

The staff has received several requests to accept audit report qualifications in circumstances where a foreign registrant has deviated from home-country GAAP or IAS to facilitate a position taken for tax purposes, to produce an accounting effect similar to that of a particular accounting principle generally accepted in a different country, or for other purposes. Home-country law or regulation did not require these deviations, although the home-country securities or industry regulator may have approved them at the registrant's request. The deviations might have continuing effects on reported results of future periods, and might be applicable to similar transactions occurring in future periods.

Financial statements that require a qualification in the accompanying audit report as to compliance with the applicable body of accounting standards do not satisfy the requirements for filings with the Commission. This is true whether the primary basis of accounting is US GAAP, local country GAAP, or IAS. Adjustment of the deviation as part of the reconciliation to US GAAP would not cure the deficiency.

### B. Reference to the US GAAP Reconciliation

The reconciliation provided pursuant to Item 17 or 18 of Form 20-F must be included in notes to the financial statements and, accordingly, must be considered by the auditor when expressing an opinion of the financial statements taken as a whole. The auditor's report is required to comply with Rule 2-02 of Regulation S-X, and need not refer specifically to the note containing the reconciliation. However, if the reconciliation furnished in the notes to the financial statements fails to include disclosure of all material departures from US GAAP or the quantification of the effects of accounting differences is materially misstated, the financial statements would be presumed to be materially misleading and an exception should be cited in