## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHERRY SCHNALL, Individually and on Behalf of All Others Similarly Situated, | : : : | Case No. |
| Plaintiff, | : : | 02CV2133 (GLG) |
| -against- | : : | May 25, 2004 |
| ANNUITY AND LIFE RE (HOLDINGS), LTD., XL CAPITAL, LTD., LAWRENCE S. DOYLE, FREDERICK S. HAMMER, JOHN F. BURKE, WILLIAM W. ATKIN, BRIAN O'HARA, AND MICHAEL O. ESPOSITO JR. | : : : : : : : | |
| Defendants. | : : | |

### REPLY MEMORANDUM OF LAW OF DEFENDANT KPMG LLP (U.S.) IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

WIGGIN & DANA LLP
400 Atlantic Street
Stamford, Connecticut 06901
(203) 363-7600

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8000

Attorneys for Defendant KPMG LLP (U.S.)

1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT....................................................................................................................3

I.    THE AMENDED COMPLAINT FAILS TO ALLEGE ANY
      ACTIONABLE MISREPRESENTATION BY KPMG U.S...................................3

      A. KPMG U.S. Did Not Issue the Audit Opinion Upon Which Plaintiffs
         Purport to Sue ................................................................................................3

      B. KPMG U.S. Is Not Liable as a Joint Venturer with KPMG Bermuda ..............8

      C. Plaintiffs Fail to State a Claim for a "Scheme to Defraud" Against
         KPMG U.S. Under Rule 10b-5(a) or (c)...........................................................9

II.   THE AMENDED COMPLAINT FAILS TO PLEAD FRAUD WITH
      PARTICULARITY UNDER RULE 9(b)...........................................................11

III.  THE AMENDED COMPLAINT FAILS ADEQUATELY TO ALLEGE
      SCIENTER AGAINST KPMG U.S. ................................................................12

IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON
      LIABILITY UNDER SECTION 20(a)..............................................................12

CONCLUSION................................................................................................................15

## TABLE OF AUTHORITIES

<u>**Case**</u>                                                                                                      <u>**Page(s)**</u>

*In re AM Int'l, Inc. Sec. Litig.*, 606 F. Supp. 600 (S.D.N.Y. 1985)................................14

*Apex Arc, Inc. v. Garvey*, 104 F. Supp. 2d 326 (S.D.N.Y. 2000) ....................................12

*In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391 (S.D.N.Y. 2003) .................14

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,

    511 U.S. 164 (1994)....................................................................................................1

*Cromer Finance Ltd. v. Berger*, 245 F. Supp. 2d 552 (S.D.N.Y. 2003)..........................9

*De Vito v. Pokoik*, 150 A.D.2d 331 (N.Y. App. Div. 1989) ..............................................8

*In re Elan Corp. Sec. Litig.*, 02 Civ. 865 (S.D.N.Y. May 18, 2004) .....................*passim*

*Elec. Assocs., Inc. v. Automatic Equip. Dev. Corp.*, 440 A.2d 249 (Conn. 1981)...........8

*Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628 (S.D.N.Y. 1999) ...................10, 11

*In re Global Crossing Ltd. Sec. Litig.*, 02 Civ. 910, 2004 U.S. Dist. LEXIS 5040

    (S.D.N.Y. Mar. 23, 2004) ...........................................................................................5

*Goldberger v. Bear, Stearns & Co.*, No. 98 Civ. 8677 (JSM), 2000 WL 1886605

    (S.D.N.Y. Dec. 28, 2000)...........................................................................................10

*Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654 (S.D.N.Y. 1997),

    *aff'd*, 173 F.3d 844 (2d Cir. 1999)........................................................................9, 14

*In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152 (D. Mass. 2002) ........*passim*

*Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113 (2d Cir. 1998) .....................9

*Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905 (RWS), 1996 WL 494904

    (S.D.N.Y. Aug. 30, 1996) ..........................................................................................10

*Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246 (Fed. Cir. 2000)*.........................9

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)...........................................................................11

*In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) .....................................................4, 5

*Scone Inv., L.P. v. Am. Third Mkt. Corp.*, No. 97 Civ. 3802, 1998 WL 205338

    (S.D.N.Y. Apr. 28, 1998)...................................................................................................11

*SEC v. First Jersey Sec. Inc.*, 101 F.3d 1450 (2d Cir. 1996) .........................................................13

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998)...................................................3, 6, 7

## OTHER AUTHORITIES

American Institute of Certified Public Accountants SEC Practice Section Manual,

    Appendix K, SECPS § 1000.45 ..............................................................................................13

KPMG LLP ( "KPMG U.S.") respectfully submits this reply memorandum of law in further support of its motion to dismiss the First Amended Class Action Complaint, dated January 13, 2004 ("Am. Cplt."), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief ("Opp. Br."), like the amended complaint, continues to lump together KPMG U.S. and KPMG Bermuda in an obvious effort to distract this Court from the pleading's fatal deficiencies. The amended complaint should be dismissed.

First, the amended complaint does not identify any publicly-disseminated material misrepresentation made by and attributed to KPMG U.S. The law is clear that without one, plaintiffs cannot state a Section 10(b) claim.

While plaintiffs nonetheless argue that KPMG U.S.'s alleged involvement was "substantial enough" such that KPMG U.S. may be "deemed" or "implied" to have made purported false statements (Opp. Br. at 33), that is not what the law requires. Such assertions amount to nothing more than a claim that KPMG U.S. "aided and abetted" others' alleged misrepresentations. The Supreme Court held, however, in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), that there is no cognizable claim for "aiding and abetting" a Section 10(b) violation. Thus, even though plaintiffs may seek to keep a perceived "deep pocket" in this litigation, there was no disclosure to ANR's investors that KPMG U.S. assisted KPMG Bermuda in its audits, and without such disclosure, the Section 10(b) claim must be dismissed.

Indeed, the court in *In re Elan Corp. Sec. Litig.,* 02 Civ. 865 (S.D.N.Y. May 18, 2004) (Magistrate Report and Recommendation), just dismissed a Section 10(b) claim against

KPMG U.S. under strikingly similar circumstances.[1]  There KPMG U.S. was alleged to have assisted another member firm with the audits of a foreign company, and to have provided opinions as to that company's compliance with U.S. GAAP.  Like here, the issuer's public filings did not disclose to investors that KPMG U.S. was involved in the audits.  The court accordingly held that under *Central Bank* and the Second Circuit's "bright line" test, plaintiffs could not sustain a Section 10(b) claim against KPMG U.S.  That is the required outcome here.

Second, plaintiffs have not alleged adequately a Section 10(b) claim because they fail to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b), and fail adequately to allege scienter.  Again, plaintiffs merely lump KPMG U.S. and KPMG Bermuda together, when, as plaintiffs' counsel well knows and courts have routinely held, they are separate entities.  Without allegations of fraudulent conduct and scienter as to KPMG U.S. specifically (and there certainly is not enough as to KPMG Bermuda either), plaintiffs' Section 10(b) claim must be dismissed.

Finally, plaintiffs' Section 20(a) "control person" claim fails as well, as it, too, is nothing more than a repackaged "aiding and abetting" claim.

For all these reasons and those set forth in KPMG U.S.'s opening brief, plaintiffs' amended complaint against KPMG U.S. should be dismissed with prejudice in its entirety.

---

[1]    A copy of this decision is attached hereto as Exhibit A.

**ARGUMENT**

**I.    THE AMENDED COMPLAINT FAILS TO ALLEGE ANY ACTIONABLE MISREPRESENTATION BY KPMG U.S.**

> **A.    KPMG U.S. Did Not Issue the Audit Opinion Upon Which Plaintiffs Purport to Sue.**

Plaintiffs' attempt to avoid *Central Bank's* elimination of aiding and abetting liability relies upon a misstatement of the law. The Second Circuit held in *Wright v. Ernst & Young LLP*, citing *Central Bank*, that "a secondary actor cannot incur primary liability under the Act for a statement <u>not attributed to that actor at the time of its dissemination</u>." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) (emphasis added); *see In re Elan,* 02 Civ. 865, at p. 55. Here, as KPMG Bermuda's audit report does not mention KPMG U.S., under *Central Bank* and *Wright*, dismissal is required.

Plaintiffs claim that *Wright* is not applicable, arguing that "[w]hen related or affiliated entities work together to issue false statements, both will be held liable for them, even if the statement was only formally attached to one." (Opp. Br. at 31.) That assertion is simply baseless.

In the recent decision, *In re Elan Corp. Sec. Litig.,* the Southern District of New York addressed allegations analogous to those before this Court. Specifically, plaintiffs in a putative class action brought securities fraud claims against Elan Corporation, an Irish pharmaceutical company, certain of its executives, its outside auditor KPMG-Ireland, and KPMG U.S. (the same entity plaintiffs sue here). Plaintiffs alleged that KPMG U.S. "audited" Elan's financial statements and, like here, provided opinions to KPMG-Ireland regarding Elan's compliance with U.S. GAAP. *In re Elan*, 02 Civ. 865, at p. 4. Plaintiffs asserted that KPMG-Ireland's representation in its audit opinions that Elan's financial statements conformed to U.S.

3

GAAP thereby constituted an "implicit" representation by KPMG U.S. *Id.* at p. 55. KPMG U.S. moved to dismiss, citing *Central Bank* and *Wright*.

The *Elan* court began its analysis of the motion to dismiss with a discussion of *Central Bank* and the Second Circuit's "bright line" test, noting that "a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b)." *Id* at 53. (citing *Wright v. Ernst & Young LLP*, 152 F.3d at 175). The *Elan* court readily concluded that, "Under the bright line rule applicable in this Circuit, [allegations that KPMG U.S. audited Elan's financial statements or provided opinions to KPMG-Ireland] are insufficient to establish KPMG-US's involvement because Elan's disclosures are utterly silent as to any role that KPMG-US may have played in the Elan audits." *Id.* at p. 55. Rejecting plaintiffs' "implied" involvement argument, the *Elan* court held that "there is no suggestion in the Complaint that KPMG-US's role in the audit process, rather than being surmised by investors, was in fact disclosed to them in some fashion by Elan." *Id.* at p. 56. The court accordingly dismissed the Section 10(b) claim against KPMG U.S.

Even most generously read, plaintiffs' amended complaint alleges nothing more than that KPMG U.S. assisted KPMG Bermuda in some way with its audits, which then purportedly led KPMG Bermuda to make the one public statement on which plaintiffs claimed to have relied - - KPMG Bermuda's audit report on ANR's financial statements - - and that KPMG U.S.'s role can somehow be implied from facts analogous to those alleged in *Elan*. As such allegations of assistance are insufficient without actual, explicit disclosure of the putative defendant's role, the Section 10(b) claim against KPMG U.S. should be dismissed.

The cases upon which plaintiffs rely are inapposite. In *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001), for example, the Court of Appeals reversed the district court's

4

decision to dismiss a Section 10(b) claim against, among others, defendant Raymond Marchuck, Scholastic's vice president for finance and investor relations. At issue in the case were allegedly false "book return" figures. Addressing only whether scienter had been adequately pleaded, the Court held that the facts alleged were "detailed enough to justify plaintiffs' belief that Marchuck was one of the senior officials involved in conversations with market analysts such as Merrill Lynch" and would be "in a position to know Scholastic's sales/return data and evaluate whether statements disseminated to the public accurately reflected such information." *Id.* at 76. Notwithstanding plaintiffs' claim in its opposition brief (at page 31) that *Scholastic* somehow "refined" *Wright*, in fact, there is no indication in the decision that the Court was asked to consider the misrepresentation or reliance elements of a Section 10(b) claim implicated in *Central Bank* and *Wright*. Indeed, neither *Central Bank* nor *Wright* is cited anywhere in the *Scholastic* decision.[2]

Plaintiffs' reliance on *In re Global Crossing Ltd. Sec. Litig.*, 02 Civ. 910, 2004 U.S. Dist. LEXIS 5040 (S.D.N.Y. Mar. 23, 2004), is similarly misplaced.[3] Contrary to plaintiffs' assertion, *Global Crossing* did not address the circumstances before this Court, namely the liability of two audit firms who are members of the Swiss association KPMG International, like the KPMG firms here. Rather, *Global Crossing* involved one audit firm, Global Crossing's independent auditor Arthur Andersen LLP. Andersen was alleged to have "masterminded" misleading accounting practices, and to have perpetrated a fraud on investors by dictating incorrect and misleading accounting systems in violation of GAAP and GAAS. *Id.*, at *4, *40.

---

[2]    Moreover, in those cases in which courts have allowed claims to survive the pleadings stage even if the defendant was not alleged to have made the statement, the defendant was a corporate insider -- not an unrelated public auditor. *See Global Crossing*, 2004 U.S. Dist. LEXIS 5040, at *81. Clearly those are not the facts here.

[3]    A copy of this decision is attached hereto as Exhibit B.

5

The *Elan* court discussed the decision in *Global Crossing* but found it inapplicable to the Section 10(b) claim against KPMG U.S., as it is here. The *Elan* court specifically discussed *Global Crossing's* reliance on certain aspects of *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152 (D. Mass. 2002). The *Elan* court noted that the *Lernout & Hauspie* holding contravened *Central Bank* and the Second Circuit's "bright line" test when it stated that "a plaintiff may state a claim for primary liability under section 10(b) for a false statement (or omission), <u>even where the statement is not publicly attributed to the defendant</u> ...." *In re Elan,* 02 Civ. 865, at p. 55 (citing *In re Global Crossing*, 2004 WL 763890, at \*8) (emphasis added). In any event, to the extent the *Global Crossing* decision can be interpreted as permitting claims based on statements without specific and explicit attribution to the audit firm, KPMG U.S. respectfully asserts that *Global Crossing* was wrongly decided, as it is completely inconsistent with the Supreme Court's decision in *Central Bank* and the Second Circuit's decision in *Wright*, which require that an allegedly false statement "<u>must be attributed to that specific actor at the time of public dissemination</u>" to establish Section 10(b) liability. *Wright*, 152 F.3d at 175 (emphasis added).

Plaintiffs' attempt to distinguish those aspects of the court's decision in *In re Lernout & Hauspie*, cited by KPMG U.S. in its opening brief, is equally unavailing. In *Lernout*, the corporation's principal auditor, KPMG Belgium, was assisted by other KPMG affiliates that did not sign the audit reports. As discussed in KPMG U.S.'s opening brief and in *Elan*, KPMG U.S. here is more akin to KPMG Singapore, which was found not to be liable under Section 10(b) because its role was limited to communicating its "clean" audit opinion to the Belgian affiliate responsible for issuing the audit reports. *Lernout,* 230 F. Supp. 2d at 171. *See also In re Elan,* 02 Civ. 865, at p. 54; (Open. Br. at 10-11.) By contrast, the role of the United States firm

6

in *Lernout*, unlike the role of KPMG U.S. here, had been noted in the company's annual reports, a fact which was very significant to the court. *Lernout*, 230 F. Supp. 2d at 166-167.[4]

In short, plaintiffs cannot satisfy the requisite elements of Section 10(b) as a matter of law. There is simply not a single document, statement or other communication establishing that investors knew of any role by KPMG U.S. in the ANR audits. In fact, plaintiffs concede that the audit opinions bear only the address of KPMG Bermuda. Plaintiffs' assertion that because KPMG Bermuda signed the opinion "KPMG" (which is its name), without qualification, it somehow implied the involvement of a separate firm - - KPMG U.S. - - is facetious, and, in any event, certainly not enough under *Central Bank*, *Wright* and *Elan*.[5]

As the Second Circuit in *Wright* explained, allowing a secondary actor to incur primary liability for a statement not attributed to it "would circumvent the reliance requirements of the Act, as 'reliance only on representations made by others cannot itself form the basis of liability.' Thus, the misrepresentation <u>must be attributed to that specific actor at the time of public dissemination</u>." *Wright v. Ernst & Young LLP*, 152 F.3d at 175. Accordingly, because

---

[4]    The allegations against KPMG UK in *Lernout* were also quite different than the allegations against KPMG U.S. here. Plaintiffs in *Lernout* alleged that a partner in the KPMG UK office played a "substantial role in conducting audits and preparing" public filings, was "a key behind-the-scenes player in <u>drafting</u> the statements and <u>conducting</u> the audit, and [ ] knew that the statements he prepared would be publicly disseminated." *Id.* at 168 (emphasis added). It was also alleged that the KPMG UK partner participated in a meeting and conference call in which he may have learned of several "red flags" to which his colleagues in other offices were already privy. *Id.* at 169 n.14. No such allegations exist here. In any event, despite finding that KPMG UK's role appeared sufficient to trigger primary liability, the allegations nonetheless did not withstand the motion to dismiss because the complaint did not adequately allege scienter. *Id.* at 169; *(see also* Open. Br. at 16-17.)

[5]    So, too, are plaintiffs' references to KPMG Bermuda and KPMG U.S. as supposed "offices" of some undefined "KPMG" entity. (*See* pp. 10-11, *infra*, and Open. Br. at 2.) KPMG Bermuda and KPMG U.S. are, as plaintiffs well know and even admit, completely separately accounting firms.

plaintiffs cannot allege the requisite attribution, plaintiffs' Section 10(b) claim against KPMG

U.S. must therefore be dismissed.[6]

### B.    KPMG U.S. Is Not Liable as a Joint Venturer with KPMG Bermuda.

Plaintiffs' purported attempt to assert an entirely new theory of liability to end-run

*Central Bank*, premised on an imaginary joint venture between KPMG U.S. and KPMG

Bermuda, must also be rejected. Not only is there no basis for it alleged in the amended

complaint, but there is no legal support for it either.

At best, plaintiffs' amended complaint asserts that KPMG U.S. assisted KPMG

Bermuda in some aspects of the audits in question. The law is clear, however, that such

assistance with another's work is not sufficient as a matter of law to establish the existence of a

joint venture. *See, e.g., De Vito v. Pokoik*, 150 A.D.2d 331 (N.Y. App. Div. 1989) (stating that

an individual who has no proprietary interest in a business, even if sharing the profits as

compensation for services provided, is not a joint venturer). Moreover, there must be

demonstrated (and here it is not even alleged) that there was an explicit intent of the parties to

form a joint venture. *See, e.g., Elec. Assocs, Inc. v. Automatic Equip. Dev. Corp.*, 440 A.2d 249,

251 (Conn. 1981) (stating that a joint venture does not exist unless the parties so intend).

To obfuscate their failure to plead the requisites of a joint venture, plaintiffs cite

several cases purporting to establish that common-law agency liability remains cognizable under

Section 10(b). In addition to the element of direction and control, which plaintiffs have not

adequately pleaded (*see* Point IV, *infra*), the fundamental characteristic that distinguishes agency

is the agent's authority to bind his principal. As the Second Circuit has stated: "an agent must

---

[6]    Nor is KPMG U.S. liable for statements relating to ANR's quarterly filings, which incorporate by reference ANR's 10-Ks. (*See* Opp. Br. at 48.) For the same reasons stated above, there is no material misstatement attributed to KPMG U.S. in ANR's 10-Ks, and thus there is no such statement attributable in ANR's quarterly filings.

have authority, whether apparent, actual or implied, to bind his principal." *Merrill Lynch Interfunding, Inc. v. Argenti,* 155 F.3d 113, 122 (2d Cir. 1998) (emphasis added). One who lacks the authority to "affect the legal relationships of the principal" is not an agent. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1256 (Fed. Cir. 2000). Plaintiffs plead no such authority here.

In any event, the law plaintiffs cite is inapposite, as courts have consistently and specifically rejected the proposition that an agency relationship exists between firms structured similarly to the KPMG entities. In *In re Lernout & Hauspie*, for example, the court held that collaboration by KPMG firms on audits was not enough to impute an agency relationship between them. *Lernout*, 230 F. Supp. 2d at 173; *see also Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 662 (S.D.N.Y. 1997) ("Howard claims that Peat Marwick [KPMG LLP] is an agent...of [KPMG International] . . . . However, there is no factual support for any of these assertions."), *aff'd*, 173 F.3d 844 (2d Cir. 1999).[7]

Plaintiffs' amended complaint simply does not -- and could not -- allege either a joint venture or agency relationship between KPMG U.S. and KPMG Bermuda. Plaintiffs' attempt to defeat KPMG U.S.'s motion to dismiss on this basis accordingly fails.

## C.    Plaintiffs Fail to State a Claim for a "Scheme to Defraud" Against KPMG U.S. Under Rule 10b-5(a) or (c).

Having failed to state a claim under Rule 10b-5(b), plaintiffs' opposition asserts that plaintiffs have alleged primary liability against KPMG U.S. under Rule 10b-5(a) for employing a scheme to defraud, and under Rule 10b-5(c) for engaging in practices or a course of

---

[7] Plaintiffs' reliance on *Cromer Finance Ltd. v. Berger*, 245 F. Supp. 2d 552 (S.D.N.Y. 2003), is equally misplaced, as it did not address the facts alleged here, but rather whether the Swiss verein, Deloitte Touche Tohmatsu, could be liable for the acts of one of its member firms.

9

business that purportedly operated as a deceit. (Opp. Br. at 34.)  Again, plaintiffs' argument is merely a repackaging of the untenable aiding and abetting claim, and is supported neither by their amended complaint nor the law.

Allegations that KPMG U.S. provided assistance to KPMG Bermuda in specific areas of the audit (Am. Cplt. ¶ 259) or participated in conferences with the SEC (Am. Cplt. ¶ 261) in no way comprise any "scheme to defraud."  In any event, as the court observed in *In re Lernout & Hauspie*, subsections (a) and (c) of Rule 10b-5 are not a means to circumvent *Central Bank's* limitations on liability for a secondary actor's involvement in preparing misleading documents.

Numerous courts in this Circuit have specifically held that the prohibition against aiding and abetting liability exists whether the Rule 10b-5 claim is delineated as a misrepresentation claim, or participation in a fraudulent scheme claim. *See Goldberger v. Bear, Stearns & Co.*, No. 98 Civ. 8677 (JSM), 2000 WL 1886605, at *4-5 (S.D.N.Y. Dec. 28, 2000) (finding that the complaint did not establish defendant's primary liability under § 10(b) for a fraudulent scheme)[8]; *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 641 (S.D.N.Y. 1999) (holding that defendants cannot be held liable for conduct that amounts at most to aiding and abetting); *Primavera Familienstiftung v. Askin,* No. 95 Civ. 8905 (RWS), 1996 WL 494904, at *7 (S.D.N.Y. Aug. 30, 1996) (finding that the claims were essentially for aiding and abetting and would be dismissed).[9]

To allege adequately fraudulent scheme liability against KPMG U.S., plaintiffs would have to assert that KPMG U.S. engaged in orchestrating behavior or had control over

---

[8]    A copy of this decision is attached hereto as Exhibit C.

[9]    A copy of this decision is attached hereto as Exhibit D.

ANR's alleged fraud from which primary actor "fraudulent scheme" liability could be imposed.[10]

Plaintiffs' amended complaint here is devoid of any such allegations. Plaintiffs concede as well

that they must still establish reliance on KPMG U.S. (Opp. Br. at 34), which they cannot, as

shown above. Accordingly, plaintiffs' new theories of liability under (a) and (c) must be rejected

as a matter of law.

## II.    THE AMENDED COMPLAINT FAILS TO PLEAD FRAUD WITH PARTICULARITY UNDER RULE 9(b).

Plaintiffs' opposition to KPMG U.S.'s motion under Rule 9(b) is based on an

assertion that "KPMG USA's participation in the audit of the accounting for the Transamerica

contract gave it the same access to information, and thus the same degree of recklessness" as

corporate insiders. (Opp. Br. at 38.) Courts have repeatedly held, however, that an auditor's

knowledge of its client's alleged fraud "cannot be reasonably inferred from the allegation that [it]

had been [the] outside auditor." *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000). If that were

all that were required under Rule 9(b), an auditor would be strictly liable every time its clients

committed fraud, no matter how well disguised or hard to detect, simply because the auditor had

access to some of the company's books and records in the course of auditing the financial

statements that the corporation itself created from its own books and records.

For these reasons, and the reasons set forth in KPMG U.S.'s opening brief, the

amended complaint fails to plead fraud with particularity under Rule 9(b).

---

[10]    "'Intimate' 'hands-on involvement' and participation in 'key decisions' about the details of the [purported fraudulent scheme] which would render it a primary violator," must be alleged. *Scone Inv., L.P. v. Am. Third Mkt. Corp.*, No. 97 Civ. 3802, 1998 WL 205338, at *8 (S.D.N.Y. Apr. 28, 1998) (attached hereto as Exhibit E). Indeed, courts have limited "fraudulent scheme" liability to primary actors in the market, such as issuers, brokers, and traders, who, unlike KPMG U.S., are in a position to "manipulate" an alleged scheme. *See, e.g.*, *Ellison*, 36 F. Supp. 2d at 642-43.

11

### III.  THE AMENDED COMPLAINT FAILS ADEQUATELY TO ALLEGE SCIENTER AGAINST KPMG U.S.

Plaintiffs' assertion is completely misguided that, because KPMG U.S. may have assisted in the audit, and "used its own actuary to evaluate ANR's assumptions about the recoverability of its deferred costs, and to instruct ANR as to how to amortize those costs," plaintiffs have somehow pleaded scienter. (Opp. Br. at 36, 38.) Plaintiffs simply fail to show that the amended complaint alleges specific events or "connecting incidents" that tie the role of KPMG U.S. (or KPMG Bermuda, for that matter) in the audits to *fraudulent* conduct or fraudulent motive and opportunity, as this Circuit requires. (*See* Open. Br. at 15.)

As in the amended complaint, plaintiffs' opposition brief once again purports to treat this aspect of KPMG U.S.'s motion against the collective "KPMG." As KPMG U.S. has already established, however, this is wholly insufficient. The complaint must specifically allege what <u>KPMG U.S.</u> knew, what it knew, and when it supposedly knew of the alleged falsities of ANR's financial statements. *See, e.g., Apex Arc, Inc. v. Garvey*, 104 F. Supp. 2d 326, 328 (S.D.N.Y. 2000) (conclusory assertions that a defendant "knew or should have known that the representations were inaccurate . . . do not suffice to create a proper pleading of scienter."). Plaintiffs simply do not allege such facts specifically against KPMG U.S. (*See also* Open. Br. at 14-18.)

Accordingly, plaintiffs' Section 10(b) claim should be dismissed for the additional reason that plaintiffs have failed adequately to allege scienter against KPMG U.S.

### IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON LIABILITY UNDER SECTION 20(a).

As KPMG U.S. demonstrated in its opening brief, plaintiffs' purported claim that KPMG U.S. is a "controlling person" of KPMG Bermuda is nothing more than a reframed attempt to plead an aiding and abetting claim - - firmly rejected by the Supreme Court in *Central*

12

*Bank.* In any event, plaintiffs' allegations come nowhere close to meeting the plain terms of Section 20(a).

Plaintiffs' attempts to distinguish *In re Asia Pulp & Paper Sec. Litig.* and *In re Lernout & Hauspie Sec. Litig.*, discussed in KPMG U.S.'s opening brief, are without merit. While plaintiffs assert that in both cases there were "no allegations showing the authority of one member firm over another" (Opp. Br. at 49), plaintiffs' amended complaint here is in fact no different.

The only allegations plaintiffs rely on to assert a claim under Section 20(a) are tangential assertions that (i) KPMG U.S.'s Department of Professional Practice provides advice to foreign firms on GAAP and GAAS, (ii) the membership of KPMG U.S. in the AICPA Practice Section purportedly "qualified" KPMG Bermuda to audit the financial statements of public companies,[11] (iii) KPMG Bermuda utilized a KPMG U.S. actuary in connection with the ANR audits prior to the Class Period, and (iv) KPMG U.S. participated in conferences concerning ANR before the SEC. (*See* Opp. Br. at 49.) These allegations in no way demonstrate that KPMG U.S. did or could "control" KPMG Bermuda as intended under Section 20(a), which means "to direct or cause the direction of the management and policies." *SEC v. First Jersey Sec. Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996) (quoting 17 C.F.R. § 240.12b-2).

Moreover, numerous courts have recognized <u>as a matter of law</u> that member firms like KPMG U.S. and KPMG Bermuda are separate entities, and that they do not control each

---

[11] This allegation is wrong; rather, the SEC Practice Section requirement to which plaintiffs allude firmly establishes that KPMG U.S.'s participation in that Section did not create "control" by KPMG U.S. over KPMG Bermuda. *See* American Institute of Certified Public Accountants SEC Practice Section Manual, Appendix K, SECPS §1000.45 (a copy of which is attached hereto as Exhibit F). Appendix K in fact provides that SECPS member firms typically "<u>do not control</u>" individual "foreign associated firms," and then Appendix K merely describes policies and procedures firms generally should have to provide assistance to foreign-associated firms. Appendix K nowhere indicates, as plaintiffs claim, that KPMG U.S. somehow "qualified" KPMG Bermuda to audit SEC registrants.

other. *See In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391, 394 (S.D.N.Y. 2003) (rejecting attempted "group pleading" against international accounting firm where plaintiffs asserted that the firm set "professional standards and principles" under which other offices operated); *see also Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 662-63 (S.D.N.Y. 1997) (statements in marketing documents that auditors were part of a "global firm" or an "international network of member firms" not sufficient to establish control) *aff'd*, 173 F.3d 844 (2d Cir. 1999); *In re AM Int'l, Inc. Sec. Litig.*, 606 F. Supp. 600, 607 (S.D.N.Y. 1985) (rejecting theory that "all the Price Waterhouse firms world-wide are in fact one entity"); *Lernout*, 230 F. Supp. 2d at 170 (rejecting theory that allegation that "KPMG International markets itself and all of its member firms as a single entity" created agency or control person liability was legally sufficient).

The Court should reject plaintiffs' obvious attempt to circumvent *Central Bank's* prohibition against aiding and abetting through a supposed "control person" claim here. Plaintiffs' Section 20(a) claim, along with the rest of plaintiffs' amended complaint, should be dismissed with prejudice.

14

## CONCLUSION

For the reasons set forth above and in KPMG U.S.'s opening brief, defendant

KPMG LLP (United States) respectfully requests that the claims against it be dismissed.

Dated: May 25, 2004

Respectfully submitted,

WIGGIN & DANA LLP

By: _James H. Bicks (ct 04729) (ass)_____
    James H. Bicks (ct 04729)
400 Atlantic Street
Stamford, Connecticut 06901
Tel: (203) 363-7600
Fax: (203) 363-7676


WILLKIE FARR & GALLAGHER LLP
    Kelly M. Hnatt (ct 25374)
    Michelle J. Nadel (ct 25473)
787 Seventh Avenue
New York, New York  10019-6099
Tel: (212) 728-8000
Fax: (212) 728-8111

Attorneys for Defendant KPMG LLP (U.S.)


2537484.8

15

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent, via first class mail, on this 25th day

of May, 2004 to:

David Randall Scott, Esq.
Karen M. Leser, Esq.
Erin Green Comite, Esq.
Scott & Scott LLC
108 Norwich Ave.
P.O. Box 192
Colchester, CT 06415

Beth Kaswan, Esq.
Ann M. Lipton, Esq.
Peter E. Seidman, Esq.
Milberg, Weiss, Bershad, Hynes &
Lerach LLP
One Pennsylvania Plaza
New York, NY 10019

Elias A. Alexiades, Esq.
215 Church Street, 2nd Floor
New Haven, CT 06510

Karen L. Allison, Esq.
John W. Cannavino. Esq.
Cummings & Lockwood
Four Stamford Plaza
107 Elm St. PO Box 120
Stamford, CT 06904-0120

Lawrence William Andrea, Esq.
57 North Street, Suite 313
Danbury, CT 06810

Gary R. Battistoni, Esq.
Stuart A. Law, Esq.
Edward M. Posner, Esq.
Drinker, Biddle & Reath
One Logan Sq.
18th & Cherry Sts.
Philadelphia, PA 19103-6996

Terence J. Gallagher, III, Esq.
Kenneth W. Ritt, Esq.
James F. Stapleton, Esq.
Day, Berry & Howard
One Canterbury Green
Stamford, CT 06901-2047

John R. Horvack, Jr., Esq.
Carmody & Torrance
50 Leavenworth St., Po Box 1110
Waterbury, CT 06721-1110

Patrick A. Klingman, Esq.
Jeffrey S. Nobel, Esq.
Andrew M. Schatz, Esq.
Schatz & Nobel
330 Main Street
2nd Floor
Hartford, CT 06106-1817

James E. Miller, Esq.
Shepherd Finkelman Miller & Shah
One Lewis St.
Hartford, CT 06103

Peter S. Olson, Esq.
James T. Shearin, Esq.
Pullman & Comley
850 Main St., Po Box 7006
Bridgeport, CT 06601-7006

John J. Robinson, Esq.
McCarter & English
Cityplace I
185 Asylum St.
36th Fl.
Hartford, CT 06103-3495

Thorn Rosenthal, Esq.
Tammy Roy, Esq.
Cahill, Gordon & Reindel
80 Pine St.
New York, NY 1000

Michael S. Sheehy