**Exhibit C**

Westlaw

2000 WL 1886605                                                                                                                    Page 1
Fed. Sec. L. Rep. P 91,287
**(Cite as: 2000 WL 1886605 (S.D.N.Y.))**

C

United States District Court, S.D. New York.

Ronald GOLDBERGER, Craig Bier, Dominic Poeta, Joseph Wincelowitz, Matt Jenkins,
Alan Booth, John Callahan, Herman Dickens, Steve Endres, William Fraser, Steven
Fuller, Edward R. Tozzi, Robert Wierschem, Lorenzo Miceli, and Sheldon
Prenovitz, on behalf of themselves and all others similarly situated,
Plaintiffs,
v.
BEAR, STEARNS & CO., INC., Bear Stearns Securities Corp., and Richard Harriton,
Defendants.

No. 98 Civ. 8677(JSM).

Dec. 28, 2000.

Gregory M. Nespole, Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY, Nicholas E. Chimicles, Chimicles & Tikellis LLP, Haverford, PA, for plaintiffs.

David A. Weintraub, Arnold & Porter, New York, NY, Howard Wilson, Rosenman & Colin, New York, NY, for defendants.

OPINION and ORDER

MARTIN, J.

*1 Plaintiffs bring this class action complaint against Bear, Stearns & Co., Inc., its subsidiary Bear Stearns Securities Corp., and one of its former officers, Richard Harriton, (collectively referred to herein as "Bear Stearns") seeking to recover damages allegedly suffered by the purchasers of over fifty different stocks that were purchased through thirteen different brokerage houses for whom Bear Stearns served as the clearing broker. The gravamen of the complaint is that these brokerage houses, referred to in the complaint as "introducing brokers," manipulated the price of the stocks at issue and that Bear Stearns was a knowing participant in these manipulations.

The complaint also alleges that Bear Stearns similarly participated in the manipulation of twenty- eight other stocks by two other introducing brokers for whom Bear Stearns also served as clearing broker. Because these transactions are already the subject of earlier-filed class action complaints, Plaintiffs do not assert any claims against Bear Stearns with respect to the manipulation of these securities. Rather, Plaintiffs argue that these allegations are relevant on the issue of Bear Stearns' scienter.

Although the complaint seeks to assert claims on behalf of investors who purchased through thirteen different introducing brokers, the named plaintiffs did not purchase through seven of those brokers, nor did they purchase any of the stocks allegedly manipulated by those brokers. Of the over eighty stocks referred to in the complaint as having been manipulated, the named plaintiffs purchased only twenty-four. In addition, there is a prior pending class action in the Eastern District of New York against one of the introducing brokers, Sterling Foster & Co. ("Sterling Foster"), through whom named plaintiffs purchased six allegedly manipulated securities. Subsequent to the filing of this complaint, Bear Stearns was added as a defendant in that action.

The defendants move to dismiss the entire complaint on the ground that it does not state a cause of action and also to dismiss or stay the claims relating to Sterling Foster in favor of the pending action in the Eastern District.

DISCUSSION

As the above description of the complaint demonstrates, the named plaintiffs purchased allegedly manipulated securities through only six of the fifteen introducing brokers referred to in the complaint. [FN1] In ruling on the motion to dismiss, the Court must focus on the allegations concerning Bear Stearns' relationship with the introducing brokers through whom the named plaintiffs purchased the allegedly manipulated securities. In order to maintain a class action, Plaintiffs must first establish that they have a valid claim with respect to the shares that they purchased. If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim. See *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 40 n .20, 96 S.Ct.

1917, 1925 n. 20 (1976); *Warth v. Seldin,* 422 U.S. 490, 497-502, 95 S.Ct. 2197, 2205-07 (1975).

> FN1. There is a serious question whether plaintiffs who purchased manipulated securities through one brokerage house can represent a class of plaintiffs who purchased different securities through different introducing brokers. However, that question is not presently before the Court because Plaintiffs have not moved for class certification.

### A. *Claims Relating to Sterling Foster*

*2 As noted above, there is a class action presently pending in the Eastern District of New York against Bear Stearns that involves claims identical to those asserted here by customers of Sterling Foster. Because that action was filed before this one, the defendants claim that the present action should be dismissed or stayed under the first-filed rule. Plaintiffs contend, however, that as to Bear Stearns this action is the first-filed one because Bear Stearns was not named as a defendant in the Eastern District action until after this case was filed.

The principles to be applied in determining which of two identical cases should be given priority were set forth by the Second Circuit Court of Appeals in *Gluckin & Co. v. International Playtext Corp.,* 407 F.2d 177 (2d Cir.1969):

> The general rule in this Circuit is that, as a principle of sound judicial administration, the first suit should have priority, "absent the showing of balance of convenience in favor of the second action," or unless there are special circumstances which justify giving priority to the second. In deciding between competing jurisdictions, it has often been stated that the balancing of convenience should be left to the sound discretion of the district courts.
>
> *Id.* at 178 (citations omitted).

The first-filed rule is not to be applied mechanically, however. The Court must concern itself with the special circumstances that may accompany competing lawsuits filed in different districts. *See Riviera Trading Corp. v. Oakley, Inc.,* 944 F.Supp. 1150, 1158 (S.D.N.Y.1996). The factors to be considered include a regard to "conservation of judicial resources and comprehensive disposition of litigation." *Computer Assocs. Int'l v. Altai, Inc.,* 893 F.2d 26, 29 (2d Cir.1990).

Whether one considers this action or the Eastern District action as the "first filed," a due regard for the "conservation of judicial resources and comprehensive disposition of litigation" compel the conclusion that the case against Bear Stearns by the customers of Sterling Forster should go forward in the Eastern District. There is no reason to have two cases involving the manipulation of securities by Sterling Foster going forward in two districts and no basis for this Court to enjoin the proceedings in the Eastern District. Judicial economy would not be served by having the same facts litigated in two federal courts less than five miles apart. Therefore, in the exercise of its discretion, this Court will dismiss the claims asserted against Bear Stearns relating to the securities purchased by the named plaintiffs through Sterling Foster.

### B. *Claims of Purchasers from the Remaining Introducing Brokers*

Because the allegations concerning Bear Stearns' relationship with Sterling Foster will be dismissed, there remain only five introducing brokers through whom the named plaintiffs purchased the allegedly manipulated securities (referred to herein collectively as "the Introducing Brokers"). [FN2] The allegations concerning Bear Stearns' relationship with the Introducing Brokers do not establish liability on Bear Stearns' part for any manipulation of which they may have been guilty.

> FN2. These Introducing Brokers are: First Cambridge Securities Corp.; Hillcrest Financial Corp.; Josepthal, Lyon & Ross, Inc.; Kensington Wells Inc.; and Meyers Pollock Robbins, Inc.

*3 In order to state a cause of action for securities manipulation under § 10(b), Plaintiffs must allege that: (1) they were injured; (2) in connection with the purchase or sale of securities; (3) by relying on a market for securities; (4) controlled or artificially affected by the defendant's deceptive or manipulative conduct; and (5) the defendants engaged in the manipulative conduct with scienter. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 199, 96 S.Ct. 1375, 1383-84 (1976).

In *Central Bank v. First Interstate Bank,* 511 U.S. 164, 190-91, 114 S.Ct. 1439, 1455 (1994), the

Supreme Court held that secondary liability for "aiding and abetting" is not a basis for a § 10(b) claim. In *Shapiro v. Cantor,* 123 F.3d 717, 721-22 (2d Cir.1997), the Second Circuit extended that holding to bar claims for "conspiracy" under § 10(b). Thus, in order to state a claim against Bear Stearns, the complaint must allege that Bear Stearns itself engaged in manipulative conduct.

Here, Plaintiffs' allegations might support a conspiracy or aiding and abetting claim against Bear Stearns, but they do not establish the primary liability of Bear Stearns which is necessary to support a § 10(b) claim. In this regard, the two opinions of Judge Sweet in the class action pending against Bear Stearns with respect to securities allegedly manipulated by D. Blech & Co. are instructive in determining the type of conduct by a clearing broker that crosses the line between secondary and primary liability under § 10(b). See *In re Blech Securities Litigation (Blech I ),* 928 F.Supp. 1279 (S.D.N.Y.1996); *In re Blech Securities Litigation (Blech II ),* 961 F.Supp. 569 (S.D.N.Y.1997).

In *Blech I,* Judge Sweet dismissed a claim of manipulation against Bear Stearns on the ground that its activity as clearing broker, standing alone, was not a ground for liability under § 10(b). *Blech I,* 928 F.Supp. at 1295-96. However, in *Blech II,* Judge Sweet sustained the viability of the claims because:
> [T]he Complaint crosses the line dividing secondary liability from primary liability when it claims that Bear Stearns "directed" or "contrived" certain allegedly fraudulent trades. Under these circumstances, the Complaint adequately alleges that Bear Stearns engaged in conduct, with scienter, in an attempt to affect the price of the Blech securities.
> 961 F.Supp. at 584.

In the instant case, the complaint fails to allege that Bears Stearns did anything other than act in its capacity as a clearing broker; there is no allegation of conduct that constitutes primary rather than secondary liability with respect to Bear Stearns' relationship with the Introducing Brokers. This is best demonstrated by contrasting the alleged conduct found to sustain a claim of primary liability against Bear Stearns by Judge Sweet in *Blech II* and by Judge Sprizzo in *Berwecky v. Bear, Stearns & Co., Inc.,* 197 F.R.D. 65 (S.D.N.Y.2000), a case involving stocks manipulated by A.R. Baron & Co.

*4 In *Blech II,* the complaint was sustained because:
> Plaintiffs allege that Bear Stearns "directed" Blech & Co. to sell Blech Securities by demanding that Blech reduce its debit balance with knowledge of Blech's history of sham trading, and that Blech, in response to Bear Stearns' pressure, engaged in manipulative parking transactions, which Bear Stearns cleared. This course of conduct by Bear Stearns--the instigation of trading that Bear Stearns knew or should have known would result in fraudulent trades that would artificially inflate the price of the Blech Securities, and the subsequent clearing of the resultant fraudulent trades for its own pecuniary benefit--constitutes an attempt to affect the price of the Blech Securities. As a result, by participating at both the initiation and clearing stages of the allegedly fraudulent transactions, Bear Stearns knowingly engaged in a manipulative scheme to defraud under Section 10(b), which affected the market upon which Plaintiffs relied in purchasing the Blech Securities. The pressure exerted by Bear Stearns on Blech to reduce his debit balance, when combined with Bear Stearns' knowledge of Blech's sham trading and its clearing of such trades, does not "reflect ... the standard practice of [a] clearing broker."
> Plaintiffs further properly allege manipulative conduct against Bear Stearns when they claim that on July 5, 1994, Bear Stearns, in an effort to sell and transfer certain Blech Securities, "contrived and agreed to fund" the pre- planned fraudulent sale of Blech Securities. This allegation satisfies the conduct element of a Section 10(b) claim because Bear Stearns is alleged to have conceived of and participated in the initiation and clearing of sham transactions aimed at affecting [ ] the price of the Blech Securities.
> *Blech II,* 961 F.Supp. at 584-85 (citations omitted).

Judge Sweet distinguished this conduct establishing primary liability from the normal activity of a clearing broker:
> These allegations stand on grounds different from those presented in *Ross v. Bolton,* 904 F.2d 819, 821 (2d Cir.1990). There, the plaintiffs were only alleging the conduct of a normal clearing broker that extends loans on margin to its clients. Here, however, it is alleged that Bear Stearns knowingly contrived and funded sham transactions. This allegation, assumed for purposes of this motion to be true, states a claim that Bear Stearns employed a manipulative device that suffices for the imposition of primary liability under *Central Bank.*
> *Id.* at 585.

In *Berwecky,* Judge Sprizzo sustained the complaint because:

Plaintiffs assert that throughout the class period Harriton and others at Bear, Stearns shed their role as a mere clearing broker for A.R. Baron, and with actual knowledge, directly participated in the heretofore described scheme. Moreover, plaintiffs allege that after Baron was sanctioned by the National Association of Securities Dealers ("NASD") defendants asserted control over Baron's trading operations by, *inter alia,* placing Bear, Stearns' employees at Baron's offices to observe Baron's trading activities, approving or declining to execute certain trades, imposing restrictions on Baron's inventory, and loaning funds to Baron. All of this was done, plaintiffs contend, in order to keep A.R. Baron a viable concern while Bear, Stearns and Harriton continued to reap the large profits that they received from their activities with A.R. Baron.

*5 197 F.R.D. at 67 (footnote and citations omitted).

Here, there are no allegations that Bear Stearns instigated trading that it "knew or should have known would result in fraudulent trades that would artificially inflate the price" of the manipulated securities. Nor are there allegations that Bear Stearns "asserted control over [the Introducing Brokers'] trading operations by, *inter alia,* placing Bear, Stearns' employees at [their] offices to observe [their] trading activities, approving or declining to execute certain trades, imposing restrictions on [their] inventory, and loaning funds to [them]."

Although this complaint does contain the allegations that Judges Sweet and Sprizzo found sufficient to establish primary liability against Bear Stearns with respect to the securities manipulated by D. Blech & Co. and A.R. Baron, there is no claim asserted against Bear Stearns with respect to those securities. While these allegations may be admissible under Federal Rule of Evidence 404(b) to prove that Bear Stearns acted with scienter, they are not relevant on the question of whether the complaint establishes Bear Stearns' primary liability under § 10(b).

With respect to the Introducing Brokers, the complaint does no more than allege that Bear Stearns performed the normal function of a clearing broker. Even if one accepts that the complaint sufficiently alleges that Bear Stearns did this with knowledge that these brokers were manipulating the securities at issue, the complaint does not establish Bear Stearns' primary liability under § 10(b). *See Shapiro v. Cantor,* 123 F.3d at 722; *Dietrich v. Bauer,* 76 F.Supp.2d 312, 335 (S.D.N.Y.1999); *Blech II,* 961 F.Supp. at 584.

CONCLUSION

For the foregoing reasons, the claims against Bear Stearns for manipulation under § 10(b) are dismissed. Because these are the only federal claims asserted, the Court will not retain jurisdiction over the state claims alleged. Therefore, the complaint is dismissed.

SO ORDERED.

2000 WL 1886605, 2000 WL 1886605 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,287

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works