Case 3:02-cv-02133-EBB    Document 167-7    Filed 08/18/2004    Page 1 of 7

Not Reported in F.Supp.  Page 10
Fed. Sec. L. Rep. P 99,328
**(Cite as: 1996 WL 494904 (S.D.N.Y.))**

proceeding] unless there is, at the time the action is brought, a claim which could be enforced by the corporation"). Shareholders are therefore subject to the same affirmative defenses available against the corporation. Foster Aff. ¶ 8 ("The plaintiff/shareholder sues in right of the company and is in no better position than the company. Consequently any defenses which the defendant would have had against the company are available against the shareholder pursuing the claim on behalf of the company."); *see also* 13 Fletcher Cyc. Corp. § 5947 and cases cited therein; *id.* § 5954.30. Bankruptcy of a corporation does not alter the requirement that the injury to the corporation be vindicated only by the corporation or a shareholder suing derivatively. Indeed, the Supreme Court has stated that "the insolvency of the victim directly injured adds a further concern ..., since a suit by an indirectly injured victim could be an attempt to circumvent the relative priority its claim would have in the directly injured victim's liquidation proceedings." Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 274 (1992); Ionosphere, 17 F.3d at 606 (Bankruptcy "provides additional reason why the recovery must be to the corporation rather than to the Preferred holders [because] ... the law provides for a strict order of priorities for the distribution of its assets."); Manson v. Stacescu, 11 F.3d 1127, 1132 (2d Cir.1993) ("[T]he standing requirement prevents some claimants from diverting the corporation's assets from other creditors whose claims have priority.").

Thus, if Primavera's claims for breach of fiduciary duty, breach of contract and fraud against the Broker Defendants are derivative, defenses available against the corporation can be asserted in such an action. Foster Aff. ¶¶ 8, 13. The fact that the Funds have filed for bankruptcy does not give the shareholders and limited partners any greater rights than they would have enjoyed absent the bankruptcy. The nature of the claims--derivative rather than direct--would not change and any defenses to those claims, including *in pari delicto,* would be available. Foster Aff. ¶¶ 8, 13; *see also In re Mediators, Inc.,* 190 B.R. 515, 528-29 (S.D.N.Y.1995) (official committee of unsecured creditors, standing in shoes of debtor, could not bring estate claims barred by *in pari delicto* ); Feltman v. Prudential-Bache Sec., 122 B.R. 466, 475-76 (S.D.Fla.1990) (creditors' committee cannot bring claims on behalf of estate that trustee would have been unable to raise).

*14 Primavera argues further that as the doctrine of *in pari delicto* has impaired the Trustee from pursuing this claim against the Broker Defendants, Primavera and the class have standing to prosecute this claim as the holders of the beneficial interest of the claim. It cites no authority for this proposition, but seeks to analogize to cases in which trust beneficiaries are conferred standing to pursue claims which the trustee either refuses to pursue or is prevented from pursuing. Cf. Application of Grotzinger, 440 N.Y.S.2d 189, 196-97 (App.Div.1981) (where partial remaindermen of two limited partnership trusts commenced proceeding to remove three trustees for allegedly conspiring to loot assets of trusts, court held that while limited partner was generally restricted from suing, those limitations were intended solely to restrain limited partners from interfering with the right of the general partners to carry on the business of the partnership, noting that these limitations did not bar limited partners from bringing an action in cases where the interests of the limited partners had been prejudiced); Velez v. Feinstein, 451 N.Y.S.2d 110, 115 (App.Div.1982) (beneficiary may sue in favor of trust against third parties when trustee under a duty to enforce such claims fails to do so).

Yet the fact that both shareholders and the Trustee might be prevented from suing on claims belonging to the corporation based on the doctrine of *in pari delicto* is not inequitable. No party purporting to act as a representative of a corporation should be able to recover on behalf of that corporation against co-conspirators if *in pari delicto* applies because, by definition, the corporation and co-conspirators have been found to be "equally at fault." See Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 138 (1968).

For these reasons, the fact that the Bankruptcy Court found that the doctrine of *in pari delicto* applies does not mean that Primavera has standing to raise derivative claims.

*2. The Breach of Fiduciary Duty and Third-Party Breach of Contract Claims Are Derivative Claims*

Judge Bernstein determined that the fraudulent inducement claims, which he found located "primarily although not exclusively" in the First through Fourth Claims of the Complaint, Bankr.Op. at 18, are direct and belong to Primavera. The other claims--arising from waste, mismanagement, and breach of fiduciary duty--the Court deemed derivative. *Id.* at 18-19. Because Primavera's complaints against the Broker Defendants for aiding and abetting a breach of fiduciary duty and for third-

Case 3:02-cv-02133-EBB   Document 167-7   Filed 08/18/2004   Page 2 of 7

Not Reported in F.Supp.  
Fed. Sec. L. Rep. P 99,328  
(Cite as: 1996 WL 494904 (S.D.N.Y.))

Page 11

party beneficiary breach of contract--do not sound in fraudulent inducement, and because they allege no special injury against the shareholders, they will be dismissed. However, the claim for aiding and abetting fraud is not derivative, and Primavera possesses standing to bring that claim.

In analyzing whether a claim is derivative, a court "must look to the nature of the alleged wrong rather than the designation used by plaintiffs." *Rabkin v. Philip A. Hunt Chem. Corp.*, 547 A.2d 963, 968 (Del.Ch.1986). *See also Kobin v. Goodman*, 222 N.Y.S.2d 744, 746 (N.Y.Sup.1961) ("[T]he mere labeling of a complaint as either a personal or individual one does not convert one category of action into the other.") (citations omitted).

*15 Claims based on corporate mismanagement or third-party action that resulted in the diminution of share value belong to the corporation and can only be brought by it. *See* Foster Aff. ¶¶ 7-10. "When an injury to corporate stock falls equally upon all stockholders, then an individual stockholder may not recover for the injury to his stock alone, but must seek to recover derivatively in behalf of the corporation." *Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del.1970) (*citing* 13 Fletcher Cyc. § 5913).

Thus, unless the shareholders can allege a special injury, they have no cause of action. Foster Aff. ¶ 11 (a shareholder has a personal cause of action only in "exceptional circumstances" where the shareholder claims "personal loss distinct from the loss suffered by the company"); *In re Ionosphere Clubs, Inc.*, 17 F.3d 600, 604 (2d Cir.1994) ("a shareholder asserting a direct action against a third party must allege a 'special injury' ") (citation omitted) (applying Delaware law); *Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.) (a shareholder lacks standing to bring a claim when its alleged injury consists only of a decrease in the value of its shares), *cert. denied*, 479 U.S. 987 (1986); *Moran v. Household Int'l, Inc.*, 490 A.2d 1059, 1070 (Del.Ch.) (a shareholder may sue individually only if it has alleged "an injury which is separate and distinct from that suffered by other shareholders" or a wrong involving a contractual right of a shareholder, such as the right to vote, or a certain majority control, which exists independently of any right of the corporation) (citation omitted).

The claims against the Broker Defendants for aiding and abetting a breach of fiduciary duty and breach of contract arise out of the Broker Defendants' interaction with the Funds, but not with the investors in the Funds. As described in Complaint, those interactions are as follows:

The Broker Defendants "sold and brokered" or "created and sold" securities to the Funds. Compl. ¶¶ 16-18, 27, 37.

The Broker Defendants "extended credit to the [Funds] to enable ACM and Askin to leverage the Funds' portfolio and increase their trading volume." *Id.* ¶ 27.

The Broker Defendants participated in the ACM Defendants' "unreasonable leveraging of the [Funds] by ... violating their own internal credit requirements." *Id.* ¶ 52.

The Broker Defendants "unilaterally set the price" of the securities bought and sold by the Funds. *Id.* ¶ 53.

The Broker Defendants imposed "severe and unreasonable margin requirements on the [Funds]." *Id.* ¶ 61.

The Broker Defendants unreasonably liquidated the securities held by the Funds. *Id.* ¶¶ 62-64.

In the Complaint, Primavera does not allege that it or any member of the purported class suffered any unique injury apart from the loss of its investment in the Funds. Indeed, the Complaint expressly states that Primavera seeks damages from the ACM Defendants and the Broker Defendants to compensate it for the alleged loss of "all monies invested by Plaintiff," and the other investors in the Funds. Compl. ¶ 8; *see also id.* ¶¶ 12, 102, 106; Prayer for Relief ¶ 2. The fact that Primavera's claim is brought as a class action on behalf of other investors in the Funds further illustrates the commonality of the alleged injury and that it is not "peculiar to [Primavera] alone." *See Nordberg v. Lord, Day & Lord*, 107 F.R.D. 692, 698 (S.D.N.Y.1985), *quoting* 12B Fletcher Cyc. Corp. § 5913 at 434 (" 'It is only where the injury sustained to one's stock is peculiar to him alone, and does not fall alike upon other stockholders, that one can recover as an individual.' "). Primavera thus lacks standing to assert these claims.

a. *The Aiding and Abetting Breach of Fiduciary Duty is Derivative*

*16 To allege the requisite "special injury" necessary to support a direct action against a third party who transacts business with a corporation, a shareholder must allege either that the wrongful conduct violates a duty to him "independent of the fiduciary duties owed that party along with all other shareholders," or that the conduct causes an injury to the shareholders distinct from any injury to the corporation itself.

Case 3:02-cv-02133-EBB   Document 167-7   Filed 08/18/2004   Page 3 of 7

Not Reported in F.Supp.   Page 12
Fed. Sec. L. Rep. P 99,328
(Cite as: 1996 WL 494904 (S.D.N.Y.))

*Cowin v. Bresler,* 741 F.2d 410, 415 (D.C.Cir.1984); *see also Ionosphere,* 17 F.3d at 600; *Vincel v. White Motor Corp.,* 521 F.2d 1113, 1121-22 (2d Cir.1975). Primavera's breach of fiduciary duty claim satisfies neither requirement.

Where "special injury" is predicated on violation of a duty, the complaining shareholder may sue directly only where he has been injured in his relationship to the corporation, "in a capacity other than that of a shareholder." *Cowin,* 741 F.2d at 415 (emphasis added). Thus, where a party alleges "a breach of fiduciary duty to all shareholders, the action can only be maintained derivatively." *Moelis v. Schwab Safe Co.,* 706 F.Supp. 284, 285 (S.D.N.Y.1989); *see Manson v. Stacescu,* 11 F.3d 1127, 1131 (2d Cir.1993) (holding that shareholders lack standing to sue unless they are owed some "special duty"), *cert. denied,* 115 S.Ct. 292 (1994); *Enterra Corp. v. SGS Assoc.,* 600 F.Supp. 678, 689 (E.D.Pa.1985) ("An alleged breach of fiduciary duty on the part of the directors which is asserted on behalf of all shareholders or the entire corporation ... must be maintained as a derivative action....").

Here, Primavera's claims for breach of fiduciary duty are predicated on duties owed to all of the Funds' investors in their capacity as shareholders (or limited partners); their right of recovery is not independent of their status as investors. Thus, they fail to meet the first prong of the "special injury" test.

The second category of "special injury" claims involve " 'wrong(s) inflicted upon the stockholder alone ... or wrong(s) affecting ... the stockholders and not the corporation....' " *Cowin,* 741 F.2d at 415 (citation omitted). By contrast,
> [c]laims of corporate mismanagement must be brought on a derivative basis because no shareholder suffers a harm independent of that visited upon the corporation and the other shareholders. Because each shareholder has been injured in proportion to his equity ownership, "each will be made whole if the corporation obtains compensation or restitution from the wrongdoer".

*Id.* at 414 (citation omitted). *See also Kramer v. Western Pac. Indus., Inc.,* 546 A.2d 348, 353 (Del.1988) (plaintiff shareholders suffered no special injury and therefore had no standing to bring suit for corporate mismanagement); *Litman v. Prudential-Bache Properties, Inc.,* 611 A.2d 12, 16-17 (Del.Ch.1992) (limited partners' claims against general partners for breach of fiduciary duty were derivative).

*17 Here, Primavera alleges that it and all other investor members of the class suffered a common injury by virtue of the ACM Defendants' mismanagement of the Funds and that the Broker Defendants aided and abetted these breaches by *inter alia,* "encouraging and enabling ACM and Askin to excessively leverage the Granite Funds accounts ... and to purchase the most speculative tranches of CMOs and MBSs they were selling." Compl. ¶ 105. Any injury suffered as a result of this conduct was suffered by the Funds. Any injuries to investors were indirect, resulting from the decline in the value of the Funds.

The claim for aiding and abetting breach of fiduciary duty is, for these reasons, a derivative claim.

b. *Third-Party Beneficiary Breach of Contract*

Primavera's seventh claim is based on an alleged breach "by the Broker Defendants of their margin and repurchase contracts" with the Funds to which the investors are alleged to be third-party beneficiaries. Compl. ¶¶ 108-09. This claim concerns the Broker Defendants' alleged improper liquidation of the Funds' portfolios and alleged unreasonable extension of credit to the Funds. *See id.* ¶ 112.

As Chancellor Allen of the Delaware Chancery Court observed: "[t]he idea of shareholders having directly enforceable rights as third party beneficiaries to corporate contracts is, I think, one that should be resisted. One of the consequences of limited liability that shareholders enjoy is that the law treats corporations as legal persons not simply agents for shareholders." *Orban v. Field,* Civ.A. No. 12820, 1993 WL 547187, at *9 (Del.Ch. Dec. 30, 1993).

Upon examination of Primavera's Seventh Claim for Relief, the Bankruptcy Court noted that "[a]lthough Primavera has alleged its own standing, it is not clear that it, or the class members, have it.... Primavera has not alleged a special injury." Bankr.Op. at 35. As this reasoning is sound, and as Primavera has not raised here any objection to the Broker Defendants' argument that it and Chancellor Allen's reasoning should be adopted, Primavera's third-party beneficiary claim will be deemed derivative and will be dismissed for lack of standing.

c. *The Fraud Claim*

To the extent that the claim against the Broker Defendants is based on aiding and abetting the Dealer Defendants, Primavera has standing to assert the

Case 3:02-cv-02133-EBB    Document 167-7    Filed 08/18/2004    Page 4 of 7

Not Reported in F.Supp.
Fed. Sec. L. Rep. P 99,328
(Cite as: 1996 WL 494904 (S.D.N.Y.))

Page 13

common law fraud and negligent misrepresentation claims against the Broker Defendants, as these claims are personal to Primavera and the class. It is true that Primavera's claims of fraud and misrepresentation are directed almost exclusively at the ACM Defendants (Compl. ¶¶ 28-36), and that in contrast, the Broker Defendants are not alleged to have participated in the preparation or distribution of these materials. As Judge Bernstein noted, "Although Primavera frequently describes this conduct as 'fraudulent,' the specific allegations depict acts of mismanagement, waste and breach of fiduciary duty that resulted in dissipation of [the Funds'] assets--the portfolios." Bankr.Op. at 18. Moreover, "[t]he claims of breach of contract, breach of fiduciary duty and aiding and abetting fraud allege what is essentially a single form of wrongdoing under different names.' " *Id.* at 36 (citations omitted).

*18 Thus, as noted above, factual allegations supporting a claim of fraud against the Broker Defendants are absent from the Complaint. However, construed liberally, the Complaint can be read to set out a claim of aiding and abetting the ACM Defendants' fraudulent inducement, and so the rule that fraud and negligent misrepresentation claims are personal, not derivative, noted by Judge Bernstein, will be applied. *See In re Phar-Mor, Inc. Sec. Litig.,* 164 B.R. 903, 904, 905 (Bankr.W.D.Pa.1994), *Begier v. Price Waterhouse,* 81 B.R. 303, 305 (E.D.Pa.1987). Given the attenuated nature of the involvement of the Broker Defendants as alleged in the Complaint, however, this standing is limited to bringing a claim for aiding and abetting fraud. That claim will not be dismissed for lack of standing.

E. *The Negligent Misrepresentation Claim Against the ACM Defendants Will Be Dismissed*

The Fourth Claim is for common law negligent misrepresentation against the ACM Defendants. (Compl. ¶¶ 92-96). Because it fails to state a claim, it will be dismissed.

Under New York law, to state a claim for negligent misrepresentation, a plaintiff must allege:
> (1) carelessness in imparting words (2) upon which others were expected to rely (3) upon which they did act or failed to act (4) to their damage; further, (5) the author must express the words directly, with knowledge they will be acted upon, to one whom the author is bound to by some relation [of] duty or care.

*The Pits, Ltd. v. American Express Bank Int'l,* 911 F.Supp. 710, 720. "Under New York law, it is well established that '[a] defendant is not liable [for] breach of fiduciary duty or for negligent misrepresentation unless a prior relationship existed between the defendant and plaintiff.' " *Toto v. McMahan, Brafman, Morgan & Co.,* [1995 Decisions] Fed.Sec.L.Rep. (CCH) ¶ 98,639, at 91,928, 1995 WL 46691 (S.D.N.Y. Feb. 7, 1995) (*quoting Schwartz v. Michaels,* [1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,920, at 93,852 (S.D.N.Y. July 22, 1992)); *see also Village on Canon,* 920 F.Supp. 520, 531 ("Under New York law, there is no action for negligent misrepresentation of a promise of future conduct unless there is a special relationship between the parties."). No such relationship existed between the ACM Defendants and Primavera, and as such, the claim cannot stand.

It has, as Primavera notes, been held that a defendant may be held liable for negligent misrepresentations made in connection with and to induce the purchase of securities or investments even where no prior relationship existed between the parties. *See, e.g., The Pits,* 911 F.Supp. at 713-14, 720 (sustaining claim for negligent misrepresentation based on allegations that, at the time plaintiff opened a discretionary stock trading account with defendant bank, defendant misrepresented, among other things, that the account would be invested only in conservative, low-risk equity investments); *Maywalt v. Parker & Parsley Petroleum Co.,* 808 F.Supp. 1037, 1044-45, 1060 (S.D.N.Y.1992) (sustaining claim for negligent misrepresentation based on alleged misrepresentations in prospectus/proxy statement for merger transaction); *Polycast Technology Corp. v. Uniroyal, Inc.,* [1988-1989 Tr.Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,005, at 90,696-99, 1988 WL 96586 (S.D.N.Y. August 25, 1988) (sustaining cause of action for negligent misrepresentation based on allegations that defendant company misrepresented the financial status, earnings potential and operating conditions of its subsidiary in connection with the sale of the subsidiary to plaintiff). However, here, unlike in such cases, no "special" relationship existed between the ACM Defendants and Primavera at the time the alleged misrepresentations inducing the investment were made. While Primavera argues that the ACM Defendants did have a such a relationship with Primavera prior to its investment in Granite Corp., the Complaint alleges no facts to support such a conclusion. *See Maywalt,* 808 F.Supp. at 1044-45, 1060 (special relationship adequately pleaded where limited partners, who had previously purchased their

Case 3:02-cv-02133-EBB   Document 167-7   Filed 08/18/2004   Page 5 of 7

Not Reported in F.Supp.                                                                         Page 14
Fed. Sec. L. Rep. P 99,328
**(Cite as: 1996 WL 494904 (S.D.N.Y.))**

interests, asserted claims related to merger transaction); *Polycast*, ¶ 94,005, at 90,696-99 (special relationship between buyer and seller explicitly found where there was extended negotiation period); *Coolite Corp. v. American Cyanamid Co.*, 52 A.D.2d 486, 488-89, 384 N.Y.S.2d 808, 811 (1st Dep't 1976) (special relationship found based on the specific facts of the alleged buyer-seller relationship).

**\*19** In sum, because Primavera fails to plead a special relationship with the ACM Defendants prior to its purchase of securities, the negligent misrepresentation claim will be dismissed.

### F. *The Claim for Breach of Fiduciary Duty Against the ACM Defendants Will Be Dismissed With Leave to Replead*

In its Fifth Claim, Primavera asserts a claim against the ACM Defendants for breach of fiduciary duty as a result of their alleged failure to exercise "due care and diligence in the management and administration of said Funds and in the use and preservation of their property and assets." (Compl. ¶ 100).

Even if, as Primavera contends, it has adequately alleged a primary breach of fiduciary duty by ACM and Askin, Primavera has been enjoined from prosecuting this claim by the Bankruptcy Court, which determined that the claim was properly that of the trustee. Bankr.Op. at 33. Therefore, the claim will be dismissed, with leave granted to replead at such time as the bankruptcy stay is lifted.

### II. *The Section 10(b) Claim Against the ACM Defendants and the Fraud Claims Against the ACM and the Broker Defendants Fail to Plead Fraud With Particularity*

Of the claims remaining against them, the ACM Defendants have moved to dismiss the Section 10(b) and common law fraud claims--that is, all but the Section 20(a) claim (brought against Askin and ACM, but not against Bradshaw-Mack)--for failure to plead fraud with particularity. The only claim remaining against the Broker Defendants--for aiding and abetting fraud--is subject to their motion to dismiss on the same grounds. Because the Complaint fails to allege fraud with sufficient particularity, the Section 10(b) claim and the common law fraud claim against the ACM Defendants will be dismissed. Because aiding and abetting fraud cannot survive in the absence of a well-plead claim for fraud by the principal, the claim against the Broker Defendants will be dismissed as well.

### A. *Legal Standards of Rule 9(b)*

Federal Rule of Civil Procedure 9(b) requires that in all allegations of fraud, the circumstances constituting the fraud must be stated with particularity. *See Shields v. Citytrust Bankcorp, Inc.*, 25 F.3d 1124, 1127 (2d Cir.1994); *In re Time Warner, Inc. Secs. Litig.*, 9 F.3d 259, 265 (2d Cir.1993), *cert. denied*, 1145 S.Ct. 1397; *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444-45 (2d Cir.1971). The pleading must be sufficiently particular to serve the three goals of Rule 9(b) which are (1) to provide a defendant with fair notice of the claims against it; (2) to protect a defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987); *O'Brien v. Price Waterhouse*, 740 F.Supp. 276, 279 (S.D.N.Y.1990), *aff'd*, 936 F.2d 674 (2d Cir.1991).

The Court of Appeals has required that allegations of fraud adequately specify the statements made that were false or misleading, give particulars as to the respect in which it is contended that the statements were fraudulent, and state the time and place the statements were made and the identity of the person who made them. *See McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir.1992); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989).

**\*20** The pleading must give notice to each opposing party of its alleged misconduct. To this end, the counterclaim may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged. *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 522 n. 7 (S.D.N.Y.1977). This requirement facilitates the preparation of an adequate defense while protecting a party's reputation from groundless accusations. *See de Atucha v. Hunt*, 128 F.R.D. 187, 189 (S.D.N.Y.1989), *aff'd*, 979 F.2d 846 (2d Cir.1992); *Posner v. Coopers & Lybrand*, 92 F.R.D. 765, 768 (S.D.N.Y.1981), *aff'd*, 697 F.2d 296 (2d Cir.1982). It also serves to prevent the abuse of process and the gratuitous disruption of normal business activity. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740-41 (1975).

Not all elements of a fraud claim need be plead with

Case 3:02-cv-02133-EBB    Document 167-7    Filed 08/18/2004    Page 6 of 7

Not Reported in F.Supp.                                                                        Page 15
Fed. Sec. L. Rep. P 99,328
**(Cite as: 1996 WL 494904 (S.D.N.Y.))**

equal particularity. Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *See Shields,* 25 F.3d at 1128. The Court of Appeals has held that "allegations of scienter ... are not subjected to the more exacting consideration applied to the other components of fraud." *Breard v. Sachnoff & Weaver, Ltd.,* 941 F.2d 142, 143 (2d Cir.1991) (*quoting Ouaknine,* 897 F.2d at 81). All that is required under Rule 9(b) is that there exist a "minimal factual basis for ... conclusory allegations of scienter." *Cohen v. Koenig,* 25 F.3d 1168, 1173 (2d Cir.1994) (*quoting Connecticut Nat'l Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987)). "In fact, conclusory allegations of scienter are sufficient 'if supported by facts giving rise to a "strong inference" of fraudulent intent.' " *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1057 (2d Cir.1993), *cert. denied,* 115 S.Ct. 86 (1994). (*quoting Ouaknine,* 897 F.2d at 80). There are two independent ways to give rise to such an inference. A plaintiff may either (1) identify circumstances indicating conscious or reckless behavior by the defendants, or (2) allege facts showing both a motive for committing fraud and a clear opportunity for doing so. *Shields,* 25 F.3d at 1128; *Cosmas,* 886 F.2d at 13.

### B. *The Claims Against the ACM Defendants*

Primavera has failed to meet the burden of pleading scienter. The Complaint lacks factual allegations that give rise to a strong inference that ACM, Askin, or Bradshaw-Mack knew at the of the purportedly fraudulent statements that they were false or that such statements were reckless when made.

Primavera cites two allegations that it claims are sufficient to raise the requisite strong inference of the ACM Defendants' fraudulent intent. According to Primavera, the fact that "the Funds' portfolios actually contained the most exotic, newest and riskiest derivative tranches, such as 'Interest Only Strips,' 'Principal Only Strips' and 'Inverse Floaters,' " demonstrates that the ACM Defendants lacked any reasonable basis for measuring the market behavior of many of the MBSs and CMOs in their portfolios. The second allegation that Primavera claims supports a finding of scienter is the fact that the majority of the securities in the Funds' portfolios did not have readily ascertainable prices. Specifically, because the Funds' securities were "marked" by the Broker Defendants, Primavera contends that the ACM Defendants knew or recklessly disregarded that during periods of changing interest rates, the price behavior of such securities could become dependent on the Broker Defendants' subjective and "good faith" judgment of market "value."

*21 These allegations are insufficient to satisfy Rule 9(b). The fact that ACM purchased "exotic" CMO tranches for the Funds does not evidence fraudulent intent. ACM was authorized by the PPMs to purchase each security in the Funds' portfolios; there is no allegation in the Complaint to the contrary. (*See, e.g.,* Compl. ¶ 42). Moreover, the fact that ACM allegedly purchased exotic and risky derivative tranches, such as "Interest Only Strips," "Principal Only Strips" and "Inverse Floaters" does not lend support to the allegation that ACM knowingly eschewed a market-neutral strategy in favor of a bullish strategy, since for every exotic bullish tranche, there is an exotic bearish tranche. The fact that ACM's attempt to assemble a portfolio of both that would provide security against interest rate fluctuations failed when interest rates rose does not support an inference of fraudulent intent.

The second allegation that Primavera claims supports an inference of scienter--the "unpriced" nature of CMOs--also fails to give rise to a strong inference of scienter. Primavera asserts that because CMOs were not listed on a national exchange and their prices were not readily ascertainable through a newspaper or quotation service (but were instead "marked" or "set" by the market makers themselves (the Broker Defendants)), ACM knew or recklessly disregarded that during periods of changing interest rates, the price behavior of such securities could become dependent on the Broker Defendants' subjective and "good faith" judgment of market "value." Yet this allegation does not lead to a conclusion that the ACM Defendants knew about potential pricing problems and misrepresented the Funds' strategy.

As this Court has recognized, valuing CMOs is an art, not a science. *See generally Kidder Peabody & Co. v. Unigestion Int'l Ltd.,* 903 F.Supp. 479, 499 (S.D.N.Y.1995). Prior to March 1994, there had never been the kind of wholesale disruption and lack of liquidity in the market that led the Broker Defendants to mark the securities in March 1994 at a fraction of their "intrinsic values." (Compl. ¶ 63). Indeed, Primavera has acknowledged that the Funds were victims of the irrational "fire-sale" pricing, commercially unreasonable liquidations and other improper practices by the broker-dealers. (Compl. ¶¶ 107-117). No inference of scienter can be drawn from this scenario. No objective facts or

Case 3:02-cv-02133-EBB    Document 167-7    Filed 08/18/2004    Page 7 of 7

Not Reported in F.Supp.
Fed. Sec. L. Rep. P 99,328
(Cite as: 1996 WL 494904 (S.D.N.Y.))

Page 16

circumstances, known to defendants prior to the collapse of the market, have been alleged that would compel an inference of recklessness amounting to fraud.

Primavera's attempt to meet its burden of raising a strong inference of scienter by demonstrating a motive for the ACM Defendants' fraud also falls short. Primavera contends that the ACM Defendants were motivated to ignore their promised strategy of market neutrality in order to increase the Funds' returns and, thus, their incentive fees. Yet the mere fact that the ACM Defendants may have desired to earn more fees is an insufficient motive to demonstrate scienter. *See Shields,* 25 F.3d at 1130 ("Incentive compensation can hardly be the basis on which an allegation of fraud is predicated. On a practical level, were the opposite true, the executives of virtually every corporation in the United States could be subject to fraud allegations." (*quoting Ferber v. Travelers Corp.,* 785 F.Supp. 1101, 1107 (D.Conn.1991)); *Melder v. Morris,* 27 F.3d 1097, 1104 (5th Cir.1994) (profit maximization is insufficient motive to demonstrate scienter). In sum, there is no adequate basis in the Complaint sufficient to raise a strong inference of the ACM Defendants' scienter.

*22 For these reasons, the Section 10(b) and common law fraud claims against the ACM Defendants will be dismissed for failure to plead fraud with particularity.

C. *The Aiding and Abetting Fraud Claim Against the Broker Defendants*

To recover on a theory of aiding and abetting fraud, a party must show 1) a violation by the primary party; 2) knowledge of the violation on the part of the alleged aider and abettor; and 3) substantial assistance by the alleged aider and abettor. *Moll v. U.S. Life Title Ins. Co.,* 710 F.Supp. 476, 479 (S.D.N.Y.1989). A claim for aiding and abetting fraud must be plead with the same particularity that Fed.R.Civ.P. 9(b) requires for a direct fraud claim. *See Morin v. Trupin,* 711 F.Supp. 97, 112 (S.D.N.Y.1989); *Gramazio v. Borda, Wallace & Witty,* 580 N.Y.S.2d 344, 345 (1st Dep't 1992) ("mere allegations, in conclusory form, that the moving defendants participated in or assisted in the commission of a fraud are insufficient to state a cause of action"). Here, the violation by the primary party, ACM, has been inadequately plead, and so the aiding and abetting claim will be dismissed as well for failure to state a claim.

*Conclusion*

For the reasons set forth above, the motions of the Broker Defendants and Bradshaw-Mack will be granted in their entirety, and all claims against them will be dismissed. The motion of ACM and Askin will be denied with respect to the second claim for violation of Section 20(a) of the 1934 Act, but will be granted with regard to all other claims. Leave is granted to replead those claims dismissed for failure to plead fraud with particularity: the claims against the ACM Defendants for violation of Section 10(b) of the 1934 Act and for common law fraud, and the claim against the Broker Defendants for aiding and abetting fraud. In addition, leave is granted to replead the claim for breach of fiduciary duty against ACM and Askin at such time as the Bankruptcy Court's injunction against bringing such a claim is dissolved.

It is so ordered.

1996 WL 494904 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,328

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works