UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------------x

SHERRY SCHNALL, Individually and On Behalf of
All Others Similarly Situated,

Plaintiffs,

-against-

ANNUITY AND LIFE RE (HOLDINGS), LTD.,
XL CAPITAL, LTD., LAWRENCE S. DOYLE,
FREDERICK S. HAMMER, JOHN F. BURKE,
WILLIAM W. ATKIN, BRIAN O'HARA, AND
MICHAEL P. ESPOSITO, JR.,

Defendants.

----------------------------------------------------------------x

CIVIL ACTION NO.
3:02CV2133 (GLG)

May 25, 2004

## REPLY MEMORANDUM OF LAW OF
## DEFENDANT KPMG BERMUDA IN SUPPORT OF ITS MOTION
## TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

Frederick S. Gold
Morgan P. Rueckert
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel. (203) 324-8100
Fax. (203) 324-8199

Michael J. Malone
Paul A. Straus
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel. (212) 556-2100
Fax. (212) 556-2222

*Attorneys for KPMG BERMUDA*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................i

PRELIMINARY STATEMENT.......................................................................................1

ARGUMENT ...............................................................................................................3

POINT I   PLAINTIFFS HAVE NOT IDENTIFIED FACTS FROM WHICH THIS
          COURT CAN DRAW THE REQUISITE STRONG INFERENCE OF
          SCIENTER AGAINST KPMG BERMUDA...............................................3

     A.    Plaintiffs Have Failed to Show That The Amended Complaint Alleges
             Violations of GAAP. .........................................................................4

          1.    Plaintiffs Effectively Concede That Their Allegation Concerning
                   Embedded Derivatives Is Based on an Interpretation That Was Not
                   Announced Until After the Class Period Ended..........................4

          2.    Plaintiffs' Argument That ANR's Accounting for the Transamerica
                   Contract Was a Mere "Accounting Formality" Ignores The Express
                   Language of Issue No. B36. .......................................................6

          3.    Plaintiffs Have Alleged No Facts Showing That ANR Reviewed
                   Its Business by Segment Prior to April 2002, When It Began
                   Reporting on That Basis. ...........................................................7

          4.    Plaintiffs Have Retreated From Their Allegation That ANR's
                   Accounting for the Transamerica Contract Violated FAS 97. ....7

          5.    Plaintiffs Have Retreated From Their Allegation That ANR's
                   Financial Statements Failed to Disclose Its Accounting Policies.. .............9

          6.    Plaintiffs Fail to Show How Scienter Can Be Inferred Against
                   KPMG Bermuda Based on ANR's Failure to Disclose Payments of
                   Which KPMG Bermuda Was Not Aware. ..................................10

     B.    Plaintiffs Cannot Allege Scienter Against KPMG Bermuda Based on
             ANR's Writedowns. ..........................................................................11

          1.    Plaintiffs Cannot Allege Scienter Against KPMG Bermuda Based
                   on the Timing and Size of ANR's Writedowns. ........................11

          2.    Plaintiffs Have Not Identified Facts Warranting an Inference of
                   Scienter Against KPMG Bermuda Based on ANR's Projections of
                   Profits on the Transamerica Agreement. ...................................12

     C.    ANR's Restatements Do Not Support an Inference of Scienter Against
             KPMG Bermuda. ..............................................................................17

    D.     ANR's Risk Disclosure Does Not Support an Inference of Scienter
            Against KPMG Bermuda .................................................................... 18

POINT II  PLAINTIFFS HAVE NOT IDENTIFIED A MATERIAL MISSTATEMENT
         BY KPMG BERMUDA ........................................................................... 19

    A.     Plaintiffs Have Not Adequately Pled that KPMG Bermuda's Opinions
            Stated in Its Audit Reports Were False at the Time They Were Made. ................ 19

    B.     KPMG Bermuda Cannot Be Liable for Statements in ANR's Form 10-Qs. ........ 20

CONCLUSION ....................................................................................................... 24

## TABLE OF AUTHORITIES

### FEDERAL CASES

<u>In re Adaptive Broadband Sec. Litig.</u>,
No. C 01-1092, 2002 U.S. Dist. LEXIS 5887 (N.D. Cal. Apr. 2, 2002)............... 16, 17

<u>In re American Express Co. Sec. Litig.</u>,
No. 02 Civ. 5533, 2004 WL 632750 (S.D.N.Y. Mar. 31, 2004)........................... 13, 14

<u>In re Bristol-Myers Squibb Sec. Litig.</u>,
No. 02 CIV 2251, 2004 WL 720406 (S.D.N.Y. Apr. 1, 2004) ....................... 11, 17, 20

<u>In re Burlington Coat Factory Sec. Litig.</u>,
114 F.3d 1410 (3d Cir. 1997).......................................................................................... 6

<u>Carley Capital Group v. DeLoitte & Touche, L.L.P.</u>,
27 F. Supp. 2d 1324 (N.D. Ga. 1998) .......................................................................... 12

<u>Central Bank of Denver v. First Interstate Bank of Denver</u>,
511 U.S. 164 (1994) ................................................................................................. 21, 22

<u>In re Colonial P'ship Litig.</u>,
896 F. Supp. 250 (D. Conn. 1995) ............................................................................... 15

<u>Cope v. Price Waterhouse</u>,
990 F.2d 1256 (9th Cir. 1993)....................................................................................... 21

<u>D.E. & J Ltd. P'ship v. Conaway</u>,
284 F. Supp. 2d 719 (E.D. Mich. 2003) ................................................................. 11, 20

<u>Decker v. Massey-Ferguson, Ltd.</u>,
681 F.2d 111 (2d Cir. 1982)............................................................................................ 3

<u>In re Duane Reade Sec. Litig.</u>,
No. 02 Civ. 6478, 2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003)............................. 14

<u>In re Elan Corp. Sec. Litig.</u>, ,
02 Civ. 865 (S.D.N.Y. May 18, 2004) ......................................................................... 23

<u>Fecht v. Price Co.</u>,
70 F.3d 1078 (9th Cir. 1995),
<u>cert. denied</u>, 517 U.S. 1136 (1996) .............................................................................. 15

<u>Fla. State Board of Admin. v. Green Tree Fin. Corp.</u>,
270 F.3d 645 (8th Cir. 2001)......................................................................................... 15

In re Flag Telecom Holdings Sec. Litig.,
  308 F. Supp. 2d 249 (S.D.N.Y. 2004) ........................................................................ 14

Ganino v. Citizens Utilities, Co.,
  228 F.3d 154 (2d Cir. 2000) .................................................................................... 16

In re Global Crossing, Ltd. Sec. Litig.,
  No. 02 Civ. 910, 2004 WL 763890 (S.D.N.Y. Mar. 23, 2004) .................. 3, 20, 22, 23

Halperin v. eBanker USA.com, Inc.,
  295 F.3d 352 (2d Cir. 2002),
  aff'd, 2002 WL 1476288 (2d Cir. July 9, 2002) ........................................................ 8

Helwig v. Vencor, Inc.,
  251 F.3d 540 (6th Cir. 2001) ................................................................................... 13

In re K-Tel Int'l, Inc. Sec. Litig.,
  107 F. Supp. 2d 994 (D. Minn. 2000),
  aff'd, 300 F.3d 881 (8th Cir. 2002) ........................................................................... 6

In re Keithley Instruments, Inc. Sec. Litig.,
  268 F. Supp. 2d 887 (N.D. Ohio 2002) .................................................................... 15

In re Kendall Square Research Corp. Sec. Litig.,
  868 F. Supp. 26 (D. Mass. 1994) ............................................................................. 22

LC Capital Partners, LP v. Frontier Ins. Group, Inc.,
  318 F.3d 148 (2d Cir. 2003) .................................................................................... 17

In re Leslie Fay Cos. Sec. Litig.,
  835 F. Supp. 167 (S.D.N.Y. 2003) ........................................................................... 11

In re Loral Space & Communications Ltd. Sec. Litig.,
  No. 01 Civ. 438, 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) ................................... 14

In re Mercator Software, Inc., Sec. Litig.,
  161 F. Supp. 2d 143 (D. Conn. 2001) ...................................................................... 16

In re MSC Indus. Direct Co., Inc.,
  283 F. Supp. 2d 838 (E.D.N.Y. 2003) ...................................................................... 18

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003) ...................................................................... 16

In re Microstrategy, Inc. Sec. Litig.,
   115 F. Supp. 2d 620 (E.D. Va. 2000) ........................................................ 17

Mortenson v. Americredit Corp.,
   123 F. Supp. 2d 1018 (N.D. Tex. 2000)
   aff'd, 240 F.3d 1073 (5th Cir. 2000) .......................................................... 5

New England Health Care Employees Pension Fund v. Ernst & Young, LLP,
   336 F.3d 495 (6th Cir. 2003),
   cert. denied, 124 S. Ct. 1424 (2004) ......................................................... 11

Novak v. Kasaks,
   216 F.3d 300 (2d Cir. 2000),
   cert. denied, 531 U.S. 1012 (2000) ........................................................... 15

In re Oxford Health Plans, Sec. Litig.,
   51 F. Supp. 2d 290 (S.D.N.Y. 1999) ......................................................... 14

PR Diamonds, Inc. v. Chandler,
   364 F.3d 671 (6th Cir. 2004) ...................................................................... 3

In re Ramp Networks, Inc. Sec. Litig.,
   201 F. Supp. 2d 1051 (N.D. Cal. 2002) ...................................................... 6

In re Rent-Way Sec. Litig.,
   209 F. Supp. 2d 493 (W.D. Pa. 2002) ........................................... 12, 21, 23

Rombach v. Chang,
   355 F.3d 164 (2d Cir. 2004) ................................................................. 8, 19

Rothman v. Gregor,
   220 F.3d 81 (2d Cir. 2000) .................................................................. 3, 13

SEC v. Caserta,
   75 F. Supp. 2d 79 (E.D.N.Y. 1999) ............................................................ 6

Schnell v. Conseco, Inc.,
   43 F. Supp. 2d 438 (S.D.N.Y. 1999) ......................................................... 10

In re Scholastic Corp. Sec. Litig.,
   252 F.3d 63 (2d Cir. 2001),
   cert. denied, 534 U.S. 1071 (2001) ........................................................... 11

Shields v. Citytrust Bancorp, Inc.,
   25 F.3d 1124 (2d Cir. 1994) ...................................................................... 10

v

Spielman v. Gen. Host Corp.,
    402 F. Supp. 190 (S.D.N.Y. 1975),
    aff'd, 538 F.2d 39 (2d Cir. 1976)....................................................................... 9

Stavros v. Exelon Corp.,
    266 F. Supp. 2d 833 (N.D. Ill. 2003) .......................................................... 14

Steiner v. Shawmut Nat. Corp.,
    766 F. Supp. 1236 (D. Conn. 1991) ............................................................ 14

Tricontinental Indus. Ltd. v. Anixter,
    184 F. Supp. 2d 786 (N.D. Ill. 2002) .................................................... 22, 23

Vladimir v. Deloitte & Touche LLP,
    No. 95 Civ. 10319, 1997 WL 151330 (S.D.N.Y. Mar. 31, 1997)................................. 6

In re Worldcom Inc. Sec. Litig.,
    No. 02 Civ. 3288, 2003 U.S. Dist. LEXIS 10863 (S.D.N.Y. June 25, 2003) ............. 11

Wright v. Ernst & Young, LLP,
    152 F.3d 169 (2d Cir. 1998),
    cert. denied, 525 U.S. 1104 (1999) ...................................................... 21, 22

Zerman v. Ball,
    735 F.2d 15 (2d Cir. 1984)........................................................................ 19

## FEDERAL STATUTES

17 C.F.R. § 210.10-01 (2003) ............................................................................ 23

This reply memorandum of law is submitted by KPMG Bermuda in response to the Lead Plaintiffs' Consolidated Opposition to the Motions to Dismiss Filed by Defendants KPMG LLP (United States) and KPMG in Bermuda ("Plaintiffs' Brief" or "Pl. Br.") and in further support of KPMG Bermuda's motion to dismiss.[1]

### PRELIMINARY STATEMENT

Nowhere in plaintiffs' fifty-page brief have plaintiffs identified fact allegations from which this Court could draw the requisite "strong inference" that KPMG Bermuda's audits of ANR "amounted to no audit at all" or that KPMG Bermuda had a state of mind akin to an actual intent to aid in a fraud committed by ANR.

Plaintiffs do not dispute that alleged GAAP violations, in themselves, do not state a securities fraud claim. While plaintiffs claim such allegations can nevertheless constitute "red flags," plaintiffs do not even attempt to respond to the merits of KPMG Bermuda's argument that all plaintiffs' supposed "red flag" violations of GAAP fall apart in the face of an actual reading of the provisions they cite. See section I.A. Instead of addressing these arguments, plaintiffs attempt to avoid dismissal by urging this Court simply not to consider such arguments on a motion to dismiss. Yet plaintiffs have ignored the cases cited in KPMG Bermuda's moving brief that did just that -- dismissed cases for failure to state a claim where plaintiffs' alleged GAAP violations fall apart when compared to the language of the GAAP provisions on which they purport to rely. See section I.B.2.

Plaintiffs cannot establish scienter against KPMG Bermuda by pointing to ANR's assumptions regarding investment performance over the lives of the 30-year annuities underlying the Transamerica contract. Plaintiffs argue that, in assessing the reasonableness of ANR's

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Memorandum of Law of KPMG Bermuda in Support of Its Motion to Dismiss the First

projection of profits on the Transamerica contract, KPMG Bermuda must have known that the underlying portfolios would perform the same over the annuities' 30-year lifetime as they did over the first two years of the contract. But the law in this Circuit is clear that an inference of scienter cannot be based on a party's refusal to assume that long-term performance will mimic recent data. Plaintiffs cannot dispute that ANR's assumed investment rate of return was substantially <u>lower</u> than the average long-term rate of return for convertible bonds. Since plaintiffs cannot dispute this point, they simply urge the Court not to consider it on this motion. At the same time, plaintiffs -- who have the burden to allege facts establishing scienter -- have alleged no comparable, long-term data that KPMG Bermuda allegedly disregarded. <u>See</u> section I.B.2.

Plaintiffs also try to bolster their scienter allegations by reciting a laundry list of "facts" of which KPMG Bermuda supposedly was aware. But plaintiffs do not demonstrate that KPMG Bermuda's knowledge of such facts, even if true, gives rise to scienter. <u>See</u> section I.B.2 below.

Finally, plaintiffs have failed even to show a material misrepresentation by KPMG Bermuda. It was ANR's management, and not KPMG Bermuda, who prepared and were responsible for ANR's financial statements and disclosures. KPMG Bermuda's only statements were its opinions that ANR's financial statements complied with GAAP, and plaintiffs have failed to allege with particularity that KPMG Bermuda's opinion lacked a reasonable basis. <u>See</u> section II.A. Furthermore, as a matter of well-settled Second Circuit law, KPMG Bermuda cannot be held liable for statements it did not make, including those in ANR's Form 10-Qs. <u>See</u> section II.B.

---

Amended Class Action Complaint ("Moving Brief" or "Moving Br.").

2

Plaintiffs' claim against KPMG Bermuda must be dismissed.

## ARGUMENT

### POINT I

### PLAINTIFFS HAVE NOT IDENTIFIED FACTS FROM WHICH THIS COURT CAN DRAW THE REQUISITE STRONG INFERENCE OF SCIENTER AGAINST KPMG BERMUDA

Plaintiffs argue that they have met their heavy burden of pleading "severe recklessness" against KPMG Bermuda based on:

(a) Supposed "widespread" GAAP violations by ANR (Pl. Br. at 35, 41-42);

(b) ANR's adjustments to its estimates of future anticipated profits on the Transamerica contract (Pl. Br. at 40-41);

(c) ANR's restatements (Pl. Br. at 42-43); and

(d) ANR's risk disclosures (Pl. Br. at 35, 44-46).[2]

As shown below, none of plaintiffs' allegations supports an inference of scienter against KPMG Bermuda.

---

[2] Plaintiffs dispute the very high standard applied in this Circuit for pleading scienter against an outside auditor based on recklessness but do not cite a single case in support of their argument. Pl. Br. at 37. Contrary to plaintiffs' suggestion, the standard set forth in Rothman v. Gregor, 220 F.3d 81, 98 (2d Cir. 2000) was not limited to the facts of that case; rather, it is the same standard this Circuit has applied for decades. As the Second Circuit held, for an outside auditor's recklessness to constitute scienter for purposes of the securities laws, "[i]t must approximate an actual intent to aid in the fraud being perpetrated by the audited company." Rothman, 220 F.3d at 98 (emphasis added) (quoting Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 120-21 (2d Cir. 1982)). See Moving Br. at 9 (citing cases). The higher standard is recognized by plaintiffs' own cases. E.g., In re Global Crossing, Ltd. Sec. Litig., No. 02 Civ. 910, 2004 WL 763890, at *21 (S.D.N.Y. Mar. 23, 2004) ("[F]or non-fiduciary accountants, the standard for pleading scienter by recklessness appears to be heightened.") (emphasis added) (citing Rothman). Accord PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 2004 WL 853305, at *17 (6th Cir. Mar. 3, 2004) ("[T]he meaning of recklessness in securities fraud cases is especially stringent when the claim is brought against an outside auditor.") (emphasis added). Plaintiffs have not alleged facts warranting an inference of such recklessness here.

A.    **Plaintiffs Have Failed to Show That The Amended Complaint Alleges Violations of GAAP.**

Plaintiffs do not dispute that GAAP violations, in themselves, do not plead scienter. Moving Br. at 18. However, plaintiffs continue to argue that the requisite "strong inference" of scienter can be inferred from supposed "widespread GAAP violations" by ANR. Pl. Br. at 37. Plaintiffs' argument fails because, as KPMG Bermuda's Moving Brief shows, there were no widespread GAAP violations. Moving Br. at 18-23.

1.    **Plaintiffs Effectively Concede That Their Allegation Concerning Embedded Derivatives Is Based on an Interpretation That Was Not Announced Until After the Class Period Ended.**

Plaintiffs do not dispute that Implementation Issue No. B36 ("Issue No. B36") to FAS 133 -- which governs embedded derivatives -- was not issued until April 2003, more than five months after the class period ended. They argue that this is irrelevant, because the supposed "fraud" consisted not of ANR's decision not to apply FAS 133 -- which even plaintiffs concede was appropriate because of the effective date of that guidance -- but of ANR's statements that it did not have derivatives in the first place. Pl. Br. at 28.[3] What plaintiffs ignore is that it was in Issue No. B36 that the FASB for the <u>first time</u> took the position that modified coinsurance agreements should be deemed to contain embedded derivatives. Plaintiffs talk of embedded derivatives as a "risk type of security" that one can "hold" (Pl. Br. at 12) -- as if one could call a securities broker and buy a product called an "embedded derivative." But there is no product named "embedded derivative" that is bought and sold in the securities markets. Rather, it is an accounting concept that was created by Statement of Financial Accounting Standards 133 ("FAS 133"), pursuant to which a contract may be deemed to contain "embedded derivatives" even if

---

[3] While plaintiffs claim that ANR said that it did not hold "embedded derivatives" (Pl. Br. at 28), the actual statements were that ANR did not hold "derivatives." Amended Complaint ("A.C.") (Ex. 1) ¶¶ 84, 90, 96, 115, 123.

4

the contract in its entirety does not meet the definition of a derivative instrument.  FAS 133 (Ex. A)[4] ¶ 12 ("Contracts that do not in their entirety meet the definition of a derivative instrument . . . may contain 'embedded' derivative instruments -- implicit or explicit terms that affect some or all of the cash flows or the value of other exchanges required by the contract in a manner similar to a derivative instrument.").

Plaintiffs are absolutely wrong when they argue that it was "well-settled" prior to the beginning of the class period that embedded derivatives were contained in modified coinsurance agreements.  Pl. Br. at 28.  To the contrary, the FASB addressed the following question for the first time in April 2003:  "**Does a modified coinsurance arrangement** [such as the Transamerica agreement] . . . **contain an embedded derivative feature** that is not clearly and closely related to the host contract?"  FASB Statement 133 Implementation Issue No. B36 ("Issue No. B36") (Ex. 15) at 1 (emphasis added).  Far from being "well-settled" prior to the beginning of the class period, this prospective implementation guidance did not even become effective until the first day of the first fiscal quarter beginning after September 15, 2003 -- nearly one year after the <u>end</u> of the class period.  <u>Id.</u> at 4.  Since the FASB did not opine until April 2003 that modified coinsurance agreements should be deemed to contain embedded derivatives, ANR's statement in its 1999 10-K that it did not hold derivatives cannot support an inference of scienter against KPMG Bermuda.  E.g., <u>Mortenson v. Americredit Corp.</u>, 123 F. Supp. 2d 1018, 1027 (N.D. Tex. 2000) <u>aff'd</u>, 240 F.3d 1073 (5th Cir. 2000) (need to clarify FASB statement negated inference of scienter and warranted dismissal; "If FASB No. 125 was as clear as

---

[4] Exhibit letters referenced in this reply memorandum of law refer to exhibits attached to the Reply Declaration of Paul A. Straus.  Exhibit numbers referenced in this reply memorandum of law refer to exhibits attached to the Declaration of Paul A. Straus submitted in support of the Moving Brief.

[plaintiffs' expert] opines, the SEC would not have needed to clarify how the standard was to be applied.").

>    **2.    Plaintiffs' Argument That ANR's Accounting for the Transamerica Contract Was a Mere "Accounting Formality" Ignores The Express Language of Issue No. B36.**

Plaintiffs do not dispute that ANR's accounting for its Funds Withheld at Interest complied with GAAP accounting for receivables. Pl. Br. at 20, 29-30. They nevertheless argue that ANR "deliberately obscured the true yield" on the assets underlying the Funds Withheld at Interest asset because, plaintiffs contend, ANR's classification of the funds as a receivable, rather than an investment, is "nothing but an accounting formality" to avoid full disclosure to investors. Pl. Br. at 30, 44. First of all, this claim is nowhere alleged in the Amended Complaint. More importantly, plaintiffs' argument is simply wrong. ANR's treatment of the funds withheld at interest as a receivable was no "accounting formality," but the precise manner in which such rights are treated under GAAP. E.g., Issue No. B36 (Ex. 15) at 2 (to account for a modified co-insurance arrangement, "the reinsurer recognizes a funds-withheld receivable from the ceding insurer") (emphasis added).[5]

---

[5] Plaintiffs attempt to avoid dismissal by urging this Court not to consider GAAP principles for purposes of this motion. Pl. Br. at 22. However, this Court can certainly take judicial notice of the very GAAP principles on which plaintiffs rely in the Amended Complaint. Indeed, courts do not hesitate to review and rely on statements of GAAP to grant a motion to dismiss. See Moving Br. at 12 n. 7 (citing cases); Vladimir v. Deloitte & Touche LLP, No. 95 Civ. 10319, 1997 WL 151330, at *4-6 (S.D.N.Y. Mar. 31. 1997); In re Ramp Networks, Inc. Sec. Litig., 201 F. Supp. 2d 1051, 1068 (N.D. Cal. 2002) (discussing SFAS No. 48 in granting defendant's motion to dismiss); In re K-Tel. Int'l, Inc., Sec. Litig., 107 F. Supp. 2d 994, 1000 (D. Minn. 2000) aff'd, 300 F.3d 881 (8th Cir. 2002) (discussing FAS 121 and FAS 5 in granting defendant's motion to dismiss). This Court does not need an accounting expert to conclude, for example, that plaintiffs may not establish scienter by relying on an interpretation of "embedded derivatives" that was not even announced until after the class period. This distinguishes the cases cited by plaintiffs on this issue, neither of which involved, as here, a misstatement of GAAP principles on their face. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997); SEC v. Caserta, 75 F. Supp. 2d 79 (E.D.N.Y. 1999).

3.    **Plaintiffs Have Alleged No Facts Showing That ANR Reviewed Its Business by Segment Prior to April 2002, When It Began Reporting on That Basis.**

Plaintiffs do not dispute that ANR was only required to report its business in segments to the extent it reviewed its business in segments internally. Moving Br. at 22. Yet plaintiffs have identified no facts showing that ANR reviewed its business in segments internally prior to April 2002, when ANR announced that it was doing so. Pl. Br. at 29. The only "fact" plaintiffs argue supports scienter against KPMG Bermuda is an "admission" that ANR's CEO reviewed them on that basis in April 2002 -- the same time ANR began to report in segments publicly. Pl. Br. at 29. The only basis plaintiffs allege for inferring that they were reviewed in segments sooner is the fact that the two different types of contracts received different accounting treatment in ANR's financials. Pl. Br. at 29. But as plaintiffs admit, this disparate treatment was "clear from [ANR's] 10-Ks." Pl. Br. at 29. If investors were interested in reviewing the performance of ANR's annuity business, they needed only look at the accounts that related to ANR's annuities reinsurance business, such as Funds Withheld at Interest and Interest Sensitive Contracts Liability. Since the information was publicly disclosed, this allegation cannot warrant an inference of scienter against KPMG Bermuda.

4.    **Plaintiffs Have Retreated From Their Allegation That ANR's Accounting for the Transamerica Contract Violated FAS 97.**

Plaintiffs argue that scienter can be inferred from the fact that KPMG Bermuda was aware of ANR's contingent minimum interest guarantee obligations under the Transamerica contract. Pl. Br. at 37. However, KPMG Bermuda's awareness of these contingent obligations

does not show scienter, because these potential obligations were both disclosed to investors and properly accounted for in ANR's financials. Moving Br. at 18-20, 20-21.[6]

Plaintiffs devoted seven paragraphs of the Amended Complaint to their allegation that ANR's accounting for anticipated minimum interest guarantees violated FAS 97 and FAS 60. A.C. ¶¶ 228-34. In its Moving Brief, KPMG Bermuda showed that the full text of FAS 97 -- of which plaintiffs quoted only part -- makes clear that the principles plaintiffs relied on do not apply to the Transamerica contract. Moving Br. at 18-19. Plaintiffs have not even responded to this argument, and appear to retreat from their own allegations. They respond instead that even if FAS 97 did not apply, ANR was not entitled simply to ignore its potential minimum interest guarantee obligations. Pl. Br. at 22-23. It did not. Instead, ANR treated these potential future obligations exactly the way plaintiffs now concede it should have: by writing down DAC. Pl. Br. at 22. See Moving Br. at 20 n.11; AAG-LHI (Ex. 21) ¶ 10.48.

Contrary to plaintiffs' argument, the result is no different under FAS 5. Pl. Br. at 23. As plaintiffs themselves admit, FAS 5 requires a party to recognize a loss only "when a liability has been incurred and its amount can be determined." Pl. Br. at 23. As FAS 5 itself provides, a loss contingency is only recognized when "it is probable that an asset had been

---

[6] Plaintiffs concede, as they must, that the possibility of these payments, as well as the fact that the underlying portfolios contained convertible bonds, was disclosed to investors in ANR's 1999 10-K, the first filing after ANR entered into the Transamerica contract. Pl. Br. at 45-46. Whether ANR chose to repeat the identical disclosure in the 2000 10-K is immaterial, since the Court must look to the "total mix" of information available to investors to evaluate plaintiffs' concealment claim. Rombach v. Chang, 355 F.3d 164, 173 (2d Cir. 2004) ("The touchstone of the inquiry is . . . whether defendants' representations, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered.") (quoting Halperin v. eBanker USA.com, Inc., 295 F.3d 352, 357 (2d Cir. 2002) aff'd, 2002 WL 1476288 (2d Cir. July 9, 2002)). Once ANR described the minimum interest guarantee feature of the Transamerica contract, the public is charged with that knowledge. A defendant is not liable for failure to repeat material information which has already

impaired or a liability had been incurred **at the date of the financial statements**." FAS 5 (Ex. B) ¶ 8 (emphasis added). Therefore, ANR was not required to book a loss under FAS 97, FAS 60, FAS 5, or any other principle identified in the Amended Complaint, based on surrenders that had not yet occurred. To the contrary, "recording an additional liability for surrender adjustments prior to the contract holder's elected surrender would be inconsistent with the long-duration model." FASB Statement of Position 03-1, "Accounting and Reporting by Insurance Enterprises for Certain Nontraditional Long-Duration Contracts and for Separate Accounts" (July 7, 2003) (Ex. C) ¶ A23. Again, the possibility of minimum guarantee interest payments was not ignored; to the extent such payments were anticipated, they were reflected by writing down the amount of the DAC asset. Pl. Br. at 22. See Moving Br. at 20 n.11; AAG-LHI (Ex. 21) ¶ 10.48.

Plaintiffs' only remaining allegation on this point is that the DAC writedown was not taken soon enough. As shown in section I.B, however, that does not show scienter.

### 5. Plaintiffs Have Retreated From Their Allegation That ANR's Financial Statements Failed to Disclose Its Accounting Policies.

In its Moving Brief, KPMG Bermuda showed that plaintiffs' attempt to allege scienter against KPMG Bermuda based on ANR's supposed failure to disclose its accounting policies (A.C. ¶ 220) simply ignored entire paragraphs of disclosure in ANR's annual reports. Moving Br. at 20-21. Specifically, ANR disclosed exactly how the Transamerica contract was treated, including how ANR accounted for policy surrenders and the fact that the Transamerica contract was treated as an investment contract. Moving Br. at 20. In addition, under the heading "SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES," ANR described the key accounts reflecting the Transamerica contract: DAC, Funds Withheld at Interest and Interest

---

been publicly proclaimed. Spielman v. Gen. Host Corp., 402 F. Supp. 190, 206 (S.D.N.Y. 1975), aff'd, 538 F.2d 39 (2d Cir. 1976).

Sensitive Contracts Liabilities. Moving Br. at 20. ANR disclosed the nature of these accounts, how they were calculated, and the fact that the underlying annuities contained minimum interest guarantees. Moving Br. at 20-21. Plaintiffs have not responded to this argument, and appear to have abandoned their allegation that ANR failed to disclose its accounting policies. In any event, this allegation cannot support an inference of scienter against KPMG Bermuda.

### 6. Plaintiffs Fail to Show How Scienter Can Be Inferred Against KPMG Bermuda Based on ANR's Failure to Disclose Payments of Which KPMG Bermuda Was Not Aware.

Plaintiffs do not dispute that KPMG Bermuda was not aware that ANR had paid minimum interest guarantees prior to the fourth quarter of 2001, when ANR first reported them. Plaintiffs nevertheless argue that KPMG Bermuda's inability to obtain this information constituted a failure to "collect and review critical audit evidence" because KPMG Bermuda must have known that there was a significant risk of these payments being made. Pl. Br. at 23, 24. Plaintiffs do not dispute that such payments would only be made if two unlikely events occurred together: Surrender rates had to be significantly higher than anticipated and investment performance had to be significantly lower than anticipated in light of the historical long-term performance of convertible bonds. Pl. Br. at 24. Plaintiffs nevertheless argue that KPMG Bermuda must have known there was a "significant risk" that these two unlikely events would occur just because they did, in fact, occur. Pl. Br. at 24. This is classic fraud by hindsight, and it cannot state a claim. E.g., Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994) (rejecting plaintiff's attempt to plead fraud by citing to optimistic statements and comparing them to what actually transpired; stating "This technique is sufficient to allege that the defendants were wrong; but misguided optimism is not a cause of action, and does not support an inference of fraud. We have rejected the legitimacy of alleging fraud by hindsight."); Schnell v.

10

Conseco, Inc., 43 F. Supp. 2d 438, (S.D.N.Y. 1999) (similarly rejecting attempt to plead fraud by hindsight).[7]

### B. Plaintiffs Cannot Allege Scienter Against KPMG Bermuda Based on ANR's Writedowns.

#### 1. Plaintiffs Cannot Allege Scienter Against KPMG Bermuda Based on the Timing and Size of ANR's Writedowns.

Relying almost exclusively on cases outside this Circuit, plaintiffs claim that they can allege scienter against KPMG Bermuda based on the timing and size of ANR's writedowns. Pl. Br. at 25, 27, 41-42. They cannot. The courts in this Circuit have repeatedly held that such facts do not state a claim. See Moving Br. at 12-14 (citing cases).[8]

_____

[7] Plaintiffs' failure to allege how KPMG Bermuda must have known these payments would be made distinguishes In re Worldcom Inc. Sec. Litig., No. 02 Civ. 3288, 2003 U.S. Dist. LEXIS 10863, at **11, 22 (S.D.N.Y. June 25, 2002), where the auditors were allegedly notified that the company had made entries after the books were closed but failed to take appropriate action.

[8] The only two cases in this Circuit plaintiffs cite – In re Scholastic Corp. Sec. Litig., 252 F.3d 63 (2d Cir. 2001), cert. denied, 534 U.S. 1071 (2001), and In re Leslie Faye Cos. Inc., Sec. Litig., 835 F.Supp. 167 (S.D.N.Y. 2003) -- do not support their argument. Scholastic did not even involve a claim against an outside auditor and said nothing regarding the very high burden of pleading scienter against outside auditors. Scholastic, 252 F.3d at 67. In any event, Scholastic did not hold that plaintiffs may allege scienter based merely on the size of a writedown. Rather, the court relied on allegations of existing facts known to the defendants, that contradicted the statements the defendants were making to the public. Scholastic, 252 F.3d at 77 (defendants publicly represented that returns were not increasing despite their knowledge of rapidly rising returns). In addition, the special charges at issue were made to reflect actual returns -- not a change in a company's estimate of its future profits over the lifetime of a 30-year contract. Id. Leslie Fay did not involve a writedown to a projection of future earnings; rather, the court upheld a complaint based on the auditors' client's confession to a "massive" misstatement of the company's existing inventory by applying the incorrect valuation, "coupled with plaintiffs' other allegations." Leslie Fay, 835 F. Supp. at 175 (emphasis added). There is a significant difference between a writedown to existing inventory and an adjustment to an account that is only an estimate of future profits over a 30-year period. E.g., In re Bristol-Myers Squibb Sec. Litig., No. 02 CIV 2251, 2004 WL 720406, at *4 (S.D.N.Y. April 1, 2004); D.E. & J Ltd. P'ship v. Conaway, 284 F. Supp. 2d 719, 740 (E.D. Mich. 2003).

The only other cases involving auditors plaintiffs cite on this point also fail to support plaintiffs' argument. E.g., New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 502 (6th Cir. 2003) cert. denied, 124 S. Ct. 1424 (2004) (affirming dismissal of

**2.  Plaintiffs Have Not Identified Facts Warranting an Inference of Scienter Against KPMG Bermuda Based on ANR's Projections of Profits on the Transamerica Agreement.**

Plaintiffs also argue that they can base scienter on certain "facts" of which KPMG Bermuda was supposedly aware. Pl. Br. at 37. However, plaintiffs have not shown how any of these "facts" -- even assuming KPMG Bermuda was aware of them -- gives rise to an inference of scienter.

Thus, plaintiffs allege that KPMG Bermuda was aware of lower-than anticipated investment returns on the portfolios underlying ANR's Funds Withheld at Interest asset and higher than anticipated rates of surrender in connection with the Transamerica contract. Pl. Br. at 27, 37, 42. However, plaintiffs have failed to allege how (or when) KPMG Bermuda must have known from this evolving, short-term performance that ANR's projections of the profits it would achieve over 30-year lives of the annuities supporting the Transamerica contract must have been wrong. In fact, ANR did write down its DAC, the account that reflected its profit projections on the Transamerica contract (among others); as a matter of law, plaintiffs' conclusory allegation that these should have been made sooner does not warrant an inference of scienter against KPMG Bermuda.

The only "fact" plaintiffs allege to support this conclusory allegation is that ANR assumed that the convertible bond portfolios supporting the annuities subject to the Transamerica

---

complaint against auditors); In re Rent-Way Sec. Litig., 209 F. Supp. 2d 493, 506 (W.D. Pa. 2002) ("In and of itself, the magnitude of an erroneous financial statement is insufficient to raise a strong inference that a defendant acted with scienter."); Carley Capital Group v. Deloitte & Touche, LLP, 27 F. Supp. 2d 1324, 1339 (N.D. Ga. 1998) (upholding claim based on allegation that auditor knew that client was understating expenses and improperly recognizing revenue).

contract would earn an average of 10% per year over the life of the contracts. Pl. Br. at 27, 42.[9]
However, plaintiffs have failed to identify facts that show KPMG Bermuda must have known
ANR's forward-looking assumptions were false when made. Plaintiffs attempt to show that this
was inconsistent with the performance over the preceding two years, and that KPMG Bermuda
knew that ANR was aware of the lower-than-anticipated investment returns and higher-than-
anticipated surrender rates. Pl. Br. at 24-25, 27, 37, 42. However, as plaintiffs admit, the DAC
asset reflects ANR's projection of profits it will earn not in one or two years, but over the
lifetime of the contract. Pl. Br. at 6; A.C. ¶ 44. ANR's reinsurance contracts typically remain in
force for the life of the underlying long-term annuities, which could last for thirty years. 1999
10-K (Ex. D) at 2; A.C. ¶ 11. Plaintiffs have not alleged why KPMG Bermuda had to have
known prior to October 2001 that short-term lower-than-anticipated performance would translate
into a long-term loss on annuities that lasted for decades.[10]

       The courts do not require parties to assume that future performance will mimic
recent data, and will not infer scienter based on a refusal to do so. Rothman, 220 F.3d at 98 (no
scienter against outside auditors based on allegation company failed to expense allegedly
unsalable products, despite allegation that outside auditor disregarded recent product sales data);
In re American Express Co. Sec. Litig., No. 02 CIV. 5533, 2004 WL 632750, *13 (S.D.N.Y.

---

[9] Plaintiffs repeatedly refer to a 10% assumption going forward. Pl. Br. at 12, 16, 17, 26, 27, 28,
42. They ignore that, as KPMG Bermuda pointed out in its Moving Brief, this assumption was
reduced to 8% for years after 2002. Moving Br. at 14.

[10] Plaintiffs' citation to Helwig v. Vencor, Inc., 251 F.3d 540 (6th Cir. 2001), does not support a
finding of scienter here. The 7-6 decision of the Sixth Circuit in that case found scienter based
on the company's optimistic projections that were inconsistent with its own internal conclusions
that a recent statute would have a negative impact on the company's business, as well as with its
statements to its own employees. Helwig, 251 F.3d at 545, 557, 562. Here, in contrast, there is
no allegation that ANR's DAC asset as reported was inconsistent with ANR's own recoverability
analyses or any analysis of which KPMG Bermuda was aware.

Mar. 31, 2004) (no inference of scienter from company's failure to assume that actual deterioration in high-yield securities market would continue for rest of year, leading to subsequent $826 million charge); In re Flag Telecom Holdings, Ltd. Sec. Litig., 308 F. Supp. 2d 249 (S.D.N.Y. 2004) (allegation that $359 million impairment charge should have been taken sooner did not state a claim despite allegation that prices fell more than 25% in prior year); In re Loral Space & Comm. Ltd. Sec. Litig., No. 01 CIV 4388, 2004 WL 376442, at *17 (S.D.N.Y. Feb. 27, 2004) (allegation company should have taken writedown sooner based on evolving poor performance did not plead scienter: "When the impairments became so severe as to require specific accounting charges . . . necessarily involved issues of judgment") (emphasis added); In re Duane Reade Inc. Sec. Litig., No. 02 Civ. 6478, 2003 WL 22801416, at *10 (S.D.N.Y. Nov. 25, 2003) ("Plaintiffs' argument that because sales were down at the end of the first quarter, the impending final results for the second quarter must have been apparent throughout the quarter . . . mimics the typical type of 'fraud by hindsight' theory that courts have been unwilling to entertain"); Stavros v. Exelon Corp., 266 F. Supp. 2d 833, 851-52 (N.D. Ill. June 13, 2003) ("overoptimistic" hope that stock price would rebound notwithstanding falling value in first half of year did not warrant strong inference of scienter); Steiner v. Shawmut Nat. Corp., 766 F. Supp. 1236, 1247 (D. Conn. 1991) (allegation that loans should have been written down earlier did not state a claim where plaintiffs failed to plead specific allegations regarding the loans that should have been written off).[11]

---

[11] Plaintiffs' citations to prior decisions of this Court in Schnall (Pl. Br. at 25, 26) are not relevant here, where plaintiffs' claims are asserted against outside auditors. Unlike in Schnall, to plead scienter here, plaintiffs must meet a heightened standard. As plaintiffs concede, they must demonstrate that KPMG Bermuda's "accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful." Pl. Br. at 35 (citing In re Oxford Health Plans Sec. Litig., 51 F. Supp. 2d 290, 295 (S.D.N.Y. 1999)). Plaintiffs have failed to do so. The same difference distinguishes plaintiffs'

As argued in KPMG Bermuda's Moving Brief, an inference of scienter is particularly unwarranted here, given that ANR's assumptions were conservative in light of long-term convertible bond performance. Moving Br. at 14 n.9.[12] Plaintiffs' only response is to argue that the appropriate benchmark against which to compare the assumption is an issue of fact. Pl. Br. at 26. While plaintiffs urge the Court not to take judicial notice of this data (Pl. Br. at 26), they do not cite a <u>single case</u> in support of that argument. To the contrary, the Court can take judicial notice of market index performance and consider it on a motion to dismiss. <u>E.g.</u>, <u>In re Keithley Instruments, Inc. Sec. Litig.</u>, 268 F. Supp. 2d 887, 896 n.6 (N.D. Ohio 2002) (taking judicial notice of the historical performance of the Dow Jones Semiconductor Index and the

---

other cases cited on page 25, which would fail to support plaintiffs' argument in any event. <u>Fla. State Bd. of Admin. v. Green Tree Fin. Corp.</u>, 270 F.3d 645, 666 (8th Cir. 2001) (upholding complaint based not merely on size of a writedown but on showing that at the time defendants represented they complied with statute, they had crucial contradictory information); <u>Fecht v. Price Co.</u>, 70 F.3d 1078, 1082 n.4 (9th Cir. 1995) <u>cert. denied</u>, 517 U.S. 1136 (1996) (applying pre-PSLRA Ninth Circuit standard, which required plaintiffs to "simply say that scienter existed").

While plaintiffs cite <u>In re Colonial P'ship Litig.</u>, 896 F. Supp. 250, 257 (D. Conn. 1995) for the proposition that allegations that properly plead scienter against an issuer necessarily plead scienter against outside auditors, the case holds no such thing. Instead, that case held that the same allegations that had been deemed sufficient to plead scienter against the defendant auditor in a class action were sufficient to plead scienter against the same auditor in a subsequent individual case.

The fact that the DAC account reflected future anticipated profits over the life of 30-year annuities distinguishes this case from <u>Novak v. Kasaks</u>, 216 F.3d 300 (2d Cir. 2000), <u>cert. denied</u>, 531 U.S. 1012 (2000) . That case (which did not involve outside auditors) did not involve predictions about future events; rather, the defendants there allegedly deliberately refused to write down the value of currently existing inventory that was known to be obsolete or unsalable. <u>Novak</u>, 216 F.3d at 311. Whether or not plaintiffs think ANR was correct in its estimates, the fact remains that the DAC asset was necessarily a prediction about future profits. A.C. ¶ 44.

[12] The average annual investment return for the Morgan Stanley Dean Witter All Convertibles Index (the "Morgan Stanley Index") for the 9-year period ending in 1999 was 18.5%. <u>See</u> Ex. 9 at 325.

NASDAQ composite index on a motion to dismiss) (citing Ganino v. Citizens Utilities Co., 228 F.3d 154, 166 n.8 (2d Cir. 2000)). Accord In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 254 (S.D.N.Y. 2003) (taking judicial notice of stock price).

This argument also shows that plaintiffs mistake their burden.[13]  To create the required strong inference of scienter, plaintiffs must identify specific facts pleaded in the Amended Complaint that show why KPMG Bermuda had to know that ANR's projections had no basis.  The annuities in question here were indisputably long-term annuities with maturities as long as 30 years.  1999 10-K (Ex. D) at 2.  Plaintiffs have not alleged any long-term data that KPMG Bermuda allegedly disregarded in reviewing the reasonableness of ANR's projections. Since plaintiffs have not pleaded any such facts, their claim against KPMG Bermuda must be dismissed.[14]

---

[13] Plaintiffs also confuse the point of KPMG Bermuda's argument.  While the exercise of professional judgment does not insulate an estimate from securities fraud, it is nevertheless plaintiffs' burden to show how that exercise of judgment was "severely reckless."  Plaintiffs cannot show that an estimate of long-term profits, by comparable standards conservative, was "severely reckless" merely because it did not assume that the recent very short-term performance would continue for decades.

[14] Plaintiffs' other alleged "facts" are wholly inadequate to give rise to a strong inference of scienter against KPMG Bermuda.  Plaintiffs have not alleged a single fact regarding Atkin's retirement that KPMG Bermuda was supposedly aware of that gives rise to an inference of scienter.  Pl. Br. at 37, 43.  All the cases plaintiffs cite regarding corporate reshuffling allege involuntary terminations, generally of a number of officers, and other specific facts.  E.g., In re Adaptive Broadband Sec. Litig., No. C 01-1092, 2002 U.S. Dist. Lexis 5887, at *43 (N.D. Cal. Apr. 2, 2002) (three employees either left the company without severance or were assigned to new positions); In re Mercator Software, Inc., Sec. Litig., 161 F. Supp. 2d 143, 150 (D. Conn. 2001) (one officer fired, one resigned on same day company announced restatements).   All that is alleged here is the retirement of a single officer, which does not show scienter.  E.g., Adaptive, 2002 U.S. Dist. Lexis 5887, at *43.

Similarly, while plaintiffs allege, in conclusory fashion, that KPMG Bermuda should have been suspicious of a "spike" in the investment results in the portfolios underlying the Transamerica contract (Pl. Br. at 43), they do not allege any steps KPMG Bermuda should have, but did not, take as a result.  The cases plaintiffs cite at Pl. Br. 43 involve spikes in the operational

C.    **ANR's Restatements Do Not Support an Inference of Scienter Against KPMG Bermuda.**

Plaintiffs do not dispute that restatements in themselves do not show scienter.[15]

Plaintiffs attempt to distinguish their complaint by alleging that "multiple" restatements in short succession show scienter.[16]  Pl. Br. at 42.  This is not the law.  In fact, the very cases plaintiffs cite reject the claim that restatements -- even multiple restatements -- create the necessary strong inference of scienter.  See Adaptive, 2002 U.S. Dist. Lexis 5887, at *42 (holding that only when "coupled with the strong evidence of deliberately reckless accounting," these repeated restatements "shore up and place in context the allegation of fraud."); In re Microstrategy, Inc. Sec. Litig., 115 F. Supp. 2d 620, 639 (E.D. Va. 2000) (considering the fact that the financials were repeatedly restated in conjunction with "the magnitude of the overstatements, the nature of the accounting principles violated, and the importance of the contracts to which these principles were applied" to conclude that the totality of the factual allegations "shift the balance of inferences ... in favor of scienter").

Not surprisingly, plaintiffs do not dispute that the effect of restating these prior periods was relatively small.  ANR's entire restatement for the year 2001 amounts to only a change in net income of 4.8%.  For all of 2000, the change to net income was 2.2%.  ANR 2001 10-K/A-1 (Ex. 8) at 19.  Moving Br. at 10 n.5.  Nor do plaintiffs dispute that an inference of

---

performance of the subject company, not, as here, an increase in investment performance in the portfolios underlying the Transamerica contract.

[15] Nor could they.  See Bristol-Myers, 2004 WL 720406, at *12 ("A [r]estatement of earnings, without more, does not support a strong inference of fraud, or for that matter, a weak one.").

[16]  This fact also distinguishes all of the cases cited by plaintiffs.  See Adaptive, 2002 U.S. Dist. Lexis 5887, at *42 (two separate restatements); Microstrategy, 115 F. Supp. 2d at 639 (repeated restatements); LC Capital Partners, LP v. Frontier Ins. Group, Inc., 318 F.3d 148, 155 (2d Cir. 2003) (three substantial reserve charges – $17.5 million in 1994, $40 million in 1997 and $139 million in 1998).  On March 21, 2003, ANR filed an amended 10-K that restated both 2000 and 2001, and filed amended 10-Qs for each of the first three quarters of 2002.  A.C. at ¶ 209.

scienter is particularly unwarranted when the restatements are relatively small in comparison to the size of the company. In re MSC Indus. Direct Co., Inc., 283 F. Supp. 2d 838, 849 (E.D.N.Y. 2003) (restatement of four year period that reduced net income by 6% did not allege scienter).[17]

### D. ANR's Risk Disclosure Does Not Support an Inference of Scienter Against KPMG Bermuda.

Plaintiffs argue that ANR's risk disclosure was inadequate because, plaintiffs argue, ANR failed to disclose that its annuity product line was indirectly subject to market risk. Pl. Br. at 44-45.

First, plaintiffs do not show how an alleged deficiency in ANR's risk disclosure can support a finding of scienter against KPMG Bermuda. It is ANR's management, not KPMG Bermuda, that prepares and is responsible for ANR's risk disclosures.

Second, plaintiffs' premise -- that ANR concealed its indirect exposure to market risk through the portfolios supporting its Funds Withheld at Interest receivable -- is based on plaintiffs' own mischaracterization of ANR's disclosures. Contrary to plaintiffs' argument (Pl. Br. at 46), ANR did not state that the Funds Withheld at Interest were not exposed to market risk. Instead, ANR described the nature of this asset -- equal to the ceding company's statutory reserve, which is in turn calculated in accordance with the Annuity Reserve Valuation method -- then stated that given such a structure, the carrying value of the Funds Withheld at Interest is not directly exposed to market risk with respect to the assets held by the ceding company." 1999 10-K (Ex. 5) at 15 (emphasis added). The indirect exposure to market risk was already apparent in ANR's disclosure that the underlying portfolios contained convertible fixed income securities.

---

[17] Another "red flag" listed by plaintiffs in their opposition is the "SEC investigation" of ANR. Pl. Br. at 44. As the Amended Complaint makes clear, however, there was no SEC investigation, but only a review by the SEC staff of certain of ANR's filings. A.C. ¶¶ 195, 261.

1999 10-K (Ex. 5) at 15.[18] Plaintiffs themselves concede that convertible bonds, by definition, are bonds that, "like regular bonds, pay a stated interest rate, but are 'convertible' into common stock of the issuing corporation." A.C. ¶ 10. Reasonable investors do not need to be told that such bonds are subject to market risk.[19]

## POINT II

### PLAINTIFFS HAVE NOT IDENTIFIED A
### MATERIAL MISSTATEMENT BY KPMG BERMUDA

**A.    Plaintiffs Have Not Adequately Pled that KPMG Bermuda's Opinions Stated in Its Audit Reports Were False at the Time They Were Made.**

The only misrepresentations by KPMG Bermuda urged by plaintiffs are its certifications with respect to ANR's financial statements -- its <u>opinions</u> that, at the time, ANR's financial statements complied with GAAP. Pl. Br. at 20, 25. As shown above, plaintiffs' allegations of widespread GAAP violations do not survive scrutiny. Moving Br. section I.D.

---

[18] ANR also disclosed:

> Under the terms of the reinsurance agreement, **the investment income which accrues to the Company is dependent upon the performance of the underlying portfolios.** The underlying segmented portfolios are managed by investment managers appointed by the ceding company. These assets are included on the Balance Sheet of the Company as Funds Withheld at Interest.

ANR 1998 10-K (Ex. 4) at 4 (emphasis added); <u>see</u> 1999 10-K (Ex. 5) at 5; 2000 10-K (Ex. E) at 4; 2001 10-K (Ex. 7) at 19.

[19] A report need not disclose information which is "so basic that any investor could be expected to know it." <u>Zerman v. Ball</u>, 735 F.2d 15, 21 (2d Cir. 1984). In the context of all these disclosures in which it appears, and its disclosure in the same paragraph of how the Funds Withheld at Interest asset is calculated, ANR's statement that the carrying value of the Funds Withheld at Interest is not "directly exposed to market risk with respect to the assets held by the ceding company" (Pl. Br. at 46) cannot be misleading. "The test for whether a statement is materially misleading under Section 10(b) . . . is whether the defendants' representations, taken together and in context, would have misled a reasonable investor." <u>Rombach v. Chang</u>, 355 F.3d 164, 172 (2d Cir. 2004).

For the same reasons that plaintiffs cannot show scienter, they cannot even allege a misstatement by KPMG Bermuda.[20]

Plaintiffs also argue that ANR's financials contained misstatements because ANR later restated certain numbers. Pl. Br. at 21. Even if that is true, it still does not allege a misstatement against KPMG Bermuda. KPMG Bermuda did not issue the financial statements; ANR did. As plaintiffs concede, the only potentially actionable statement by KPMG Bermuda is its opinion that the statements complied with GAAP. Pl. Br. at 20, 25. See, e.g. D.E. & J. Ltd. P'ship v. Conaway, 284 F. Supp. 2d 719, 740 (E.D. Mich. 2003). Plaintiffs have not identified facts demonstrating that KPMG Bermuda did not have a reasonable basis for that opinion at the time the financial statements were issued. D.E. & J., 284 F. Supp. 2d at 740 ("[S]tatements of opinion, such as . . . audit opinions, only constituted actionable 'false or misleading' statements under the securities laws if Plaintiffs can plead and prove that they were made 'without a genuine belief or reasonable basis.'"). See Bristol-Myers, 2004 WL 720406, at *4 ("[S]tatements of opinion . . . are actionable only if . . . the speaker does not genuinely or reasonably believe them.").

### B.    KPMG Bermuda Cannot Be Liable for Statements in ANR's Form 10-Qs.

Plaintiffs' argument that KPMG Bermuda can be held liable for statements in ANR's unaudited Form 10-Qs is flatly inconsistent with the law of this Circuit. To state a claim against KPMG Bermuda, plaintiffs must allege a materially misleading statement or omission

---

[20] Plaintiffs argue that compliance with GAAP does not guarantee that financial statements will be held not to be misleading (Pl. Br. at 23 n.8), citing Global Crossing. There, however, the allegation was that the defendants specifically designed a unique accounting treatment, set out in a "white paper," for the sole purpose of circumventing otherwise applicable GAAP principles. Global Crossing, 2004 WL 763890, at *19. No such scheme is alleged here. Not only have plaintiffs failed to identify any knowing or reckless violations of GAAP, but they have also failed to allege that ANR's accounting was anything but typical accounting treatment employed by reinsurance entities for modified co-insurance arrangements.

made by KPMG Bermuda. Wright v. Ernst & Young, LLP, 152 F.3d 169, 175 (2d Cir. 1998)
(affirming dismissal), cert. denied, 525 U.S. 1104 (1999)("Anything short of such conduct is
merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to
trigger liability under Section 10(b)."). In other words, the Second Circuit established a bright-
line rule that a party can only be held liable for the statements it makes. This rule is based
directly on the Supreme Court's decision in Central Bank of Denver v. First Interstate Bank of
Denver, which refused to hold defendant liable where plaintiff only alleged that defendant
assisted others in making purported statements. 511 U.S. 164 (1994). The public policy behind
this holding is clearly stated:

> [T]he rules for determining aiding and abetting liability are
> unclear, **in an area that demands certainty and**
> **predictability**....That leads to the undesirable result of decisions
> made on an ad hoc basis, offering little predictive value to those
> who provide services to participants in the securities business.
> **Such a shifting and highly fact-oriented disposition** of the issue
> of who may be liable for a damages claim for violation of Rule
> 10b-5 **is not a satisfactory basis for a rule of liability imposed**
> **on the conduct of business transactions**.

Central Bank, 511 U.S. at 188-89 (emphasis added). In light of Central Bank, the Second Circuit
has repeatedly held that a purportedly false statement "must be attributed to that specific actor at
the time of public dissemination" to establish Section 10(b) liability, and "a secondary actor
cannot incur primary liability under the Act for a statement not attributed to that actor at the time
of dissemination." Wright, 152 F.3d at 175.

Thus, courts applying the Central Bank bright-line rule have routinely dismissed
claims against auditors based on 10-Qs. E.g., Cope v. Price Waterhouse, 990 F.2d 1256, 1993
WL 102598, at *5 (9th Cir. 1993) (affirming dismissal of claims for primary liability against
auditors where complaint alleged only that audit reports had been incorporated into false and
misleading 10-Q and 10-K reports); Rent-Way, 209 F. Supp. 2d at 503 ("Central Bank precludes

21

holding PwC liable based on its review and approval of Rent-Way's unaudited 1999 and 2000 quarterly reports."); Tricontinental Indus. Ltd. v. Anixter, 184 F. Supp. 2d 789 (N.D. Ill. 2002) (dismissing complaint based on auditors' alleged failure to disclose irregularities in issuers' 10-Qs; plaintiff's "theory of recovery depend on 'aider and abettor' liability, which the Supreme Court expressly rejected in Central Bank."); In re Kendall Square Research Corp. Sec. Litig., 868 F. Supp. 26, 28 (D. Mass. 1994) ("Because Price Waterhouse did not actually engage in the reporting of the financial statements and Prospectuses, but merely reviewed and approved them, the statements are not attributable to Price Waterhouse and thus Price Waterhouse cannot be found liable for making a material misstatement.").[21]

Plaintiffs appear to contend, incorrectly, that regulation C.F.R. 210.10-01 wipes away the bright line established by Central Bank and Wright.[22]  However, this rule does no more than

---

[21] The only case plaintiffs cite in support of their position, Global Crossing, actually supports KPMG Bermuda's argument that it can not be held liable for statements made by ANR in its unaudited 10-Qs.  The plaintiffs in that case asserted securities fraud claims against the auditor of two affiliated issuers.  With respect to one issuer, plaintiffs alleged only that the auditor "reviewed and approved" or "helped create" the unaudited financial statements; the court held that this did not state a claim under Central Bank. Global Crossing, 2004 WL 763890, at *9.  As to the other issuer, the court upheld a claim because the plaintiffs alleged not that the auditor merely reviewed and approved the allegedly misleading financial statements, but that it allegedly "masterminded the misleading accounting . . . used to circumvent GAAP and inflate the company's revenues." Id. at **11, 40 (emphasis added).  The complaint in that case alleged that the auditor "essentially created the accounting schemes used to inflate the Companies' financials at the outset." Id. at * 11.  Therefore, "Andersen not only 'reviewed and approved' GC's financial statements, but [it also] 'prepared and directed the production of financial statements, reports, and releases' issued by the Company." Id. at * 9.  In stark contrast, there are no allegations here that KPMG Bermuda prepared the 10-Qs or did anything other than "review" ANR's 10-Qs. A.C. ¶ 91.  These are not sufficient to state a claim against KPMG Bermuda. In re Elan Corp. Sec. Litig., 02 Civ. 865, at 55 (S.D.N.Y. May 18, 2004) ("Under the bright-line rule applicable in this Circuit, these allegations are utterly insufficient . . . because Elan's disclosures are utterly silent as to any role [the auditor] may have played.").

[22]  This rule provides:

require auditors to <u>review</u> the 10-Qs, which is not enough to state a claim. <u>Global Crossing</u>, 2004 WL 763890, at \*9 (allegation that auditor "reviewed and approved" unaudited financial statements <u>did not state a claim</u> under <u>Central Bank</u>); <u>Tricontinental</u>, 184 F. Supp. 2d at 788 (auditor had no duty to reveal its client's misleading statement in quarterly reports). There is not even an allegation that ANR proclaimed to investors that KPMG Bermuda was involved in preparing ANR's 10-Qs. <u>See</u> <u>Elan</u>, 02 Civ. 865, at 55. Not surprisingly, the one court that has addressed plaintiffs' argument squarely rejected it. <u>Rent-Way</u>, 209 F. Supp. 2d at 503-04.

Under well-established precedent, plaintiffs cannot state a claim against KPMG Bermuda based on alleged misstatements or omissions in ANR's 10-Qs.

---

(d) Prior to filing, interim financial statements included in quarterly reports on Form 10-Q … must be reviewed by an independent public accountant using professional standards and procedures for conducting such reviews, as established by generally accepted auditing standards, as may be modified or supplemented by the Commission. **If, in any filing, the company states that interim financial statements have been reviewed by an independent public accountant, a report of the accountant on the review must be filed with the interim financial statements.**

17 C.F.R. § 210.10-01(d) (emphasis added).

## CONCLUSION

WHEREFORE, in view of all the foregoing, and for the reasons set forth in KPMG Bermuda's Moving Brief, KPMG Bermuda respectfully requests that the First Amended Class Action Complaint be dismissed in its entirety with prejudice, together with such other and further relief as the Court deems proper.

**DEFENDANT KPMG BERMUDA**

By: _Fred S. Gold_

Frederick S. Gold
Fed. Bar. No.: ct 03560
Morgan P. Rueckert
Fed. Bar. No.: ct 19838
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Tel. (203) 324-8100
Fax. (203) 324-8199

Michael J. Malone
Fed. Bar. No.: ct 25741
Paul A. Straus
Fed. Bar. No.: ct 25740
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel. (212) 556-2100
Fax. (212) 556-2222

*Attorneys for KPMG BERMUDA*

110519

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent via U.S. Mail, first-class, postage pre-paid on May 25, 2004, to the following counsel:

Andrew M. Schatz
Jeffrey S. Nobel
Patrick A. Klingman
SCHATZ & NOBEL
330 Main Street
Hartford, CT 06106-1817

Beth M. Kaswan
Ann Lipton
Peter E. Seidman
MILBERG WEISS BERSHAD HYNES & LERACH
One Pennsylvania Plaza
New York, NY 10119

James E. Miller
SHEPHERD FINKELMAN MILLER & SHAH, LLC
One Lewis Street
Hartford, CT 06103

Marc Edelson
HOFFMAN & EDELSON
45 West Court St.
Doylestown, PA 18901

Elias A. Alexiades
ATTORNEY ELIAS A. ALEXIADES
215 Church Street
New Haven, CT 06525

David R. Scott
Erin Green Comite
Karen M. Lesser
Scott + Scott, LLC
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415

Michael Malone
Paul Straus
KING & SPALDING
1185 Avenue of the Americas
New York, NY 10036-4003

Kelly M. Hnatt
Joseph T. Baio
Michelle J. Nadel
WILKIE, FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099

James H. Bicks
WIGGIN & DANA LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06901

John W. Cannavino
Karen L. Allison
CUMMINGS & LOCKWOOD, LLC
Four Stamford Plaza
107 Elm Street
Stamford, CT 06902

James F. Stapleton
Kenneth W. Ritt
Terence J. Gallagher, III.
DAY, BERRY & HOWARD, LLP
One Canterury Green
Stamford, CT 06901

Thorn Rosenthal
Tammy Roy
CAHILL GORDON & REINDEL, LLP
80 Pine Street
New York, NY 10005-1702

Peter S. Olson
James T. Shearin
PULLMAN & COMLEY, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

John J. Robinson
McCARTER & ENGLISH, LLP
City Place I
185 Asylum Street, 36th Floor
Hartford, CT  06103

Lawrence W. Andrea
LAW OFFICES OF LAWRENCE W.
ANDREA
57 North Street, Suite 313
Danbury, Ct 06810

Gary R. Battistoni
Stuart A. Law
Edward M. Posner
DRINKER BIDDLE & REATH
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

R. Nicholas Gimbel
McCARTER & ENGLISH, LLP
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA 19103

Francis S. Chlapowski
Randi B. Pincus
MORGAN, LEWIS & BOCKIUS, LLP
101 Park Avenue, 44th Floor
New York, NY 10178

John R. Horvack, Jr.
James K. Robertson, Jr.
CARMODY & TORRANCE
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110

Morgan P. Rueckert

107831