United States District Court
District of Connecticut
FILED AT NEW HAVEN
1/14/05 20
Kevin F. Rowe, Clerk
By G. Malone Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHERRY SCHNALL, Individually and On Behalf of All Others Similarly Situated,

Plaintiffs,

v.

ANNUITY AND LIFE RE (HOLDINGS), LTD., XL CAPITAL, LTD., LAWRENCE S. DOYLE, FREDERICK S. HAMMER, JOHN F. BURKE, WILLIAM W. ATKIN, BRIAN O'HARA, AND MICHAEL P. ESPOSITO, JR.,

Defendants.

Civil Action No 03 CV 2133 (EBB)

JANUARY 14, 2005

FILED
2005 JAN 25 A 9:02
U.S. DISTRICT COURT
NEW HAVEN, CT

# MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS AND PETITION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

HISTORY OF THE LITIGATION ..... 4

A. Background ..... 4

B. Procedural History of the Litigation ..... 6

C. Investigation of the Claims ..... 11

D. The Settlement ..... 13

E. Plaintiffs' Recovery Under The Settlement and Plan of Allocation ..... 13

CLASS NOTICE AND CERTIFICATION ..... 15

A. Notice To The Class Was Adequate ..... 15

1. Adequacy Of The Notice ..... 15

2. Content of the Notice ..... 17

B. Certification Of The Settlement Class Is Proper ..... 19

1. Numerosity, Commonality and Typicality ..... 20

2. Adequacy of Representation ..... 21

3. Predominance of Common Issues And Superiority ..... 22

THE PROPOSED SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL ..... 22

A. The Proposed Settlement Is Fair, Reasonable and Adequate ..... 22

1. The complexity, expense and likely duration of the litigation ..... 25

2. The Reaction of the Class to the Settlement ..... 26

3. The Stage of Proceedings and the Amount of Discovery Completed ..... 27

4. Risks of Establishing Liability ..... 28

5. The Risks of Establishing Damages ..... 31

6. Risks of Maintaining Class Action Through Trial ..... 32

7. The Ability of Defendants to Withstand a Greater Judgment .............................. 32

8. The Range of Reasonableness of the Settlement Funds in Light of the Best Possible Recovery and Litigation Risks ............................................................ 34

B. The Settlement Negotiations Were Procedurally Fair .................................................... 35

THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE . 36

PETITION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES ........................... 37

A. Plaintiffs' Counsel Should Be Awarded Fees as a Percentage of the Common Fund Created as a Result of the Settlement ................................................................ 38

B. The Requested Fee is Fair and Reasonable as a Percentage of the Fund Created for the Benefit of Class Members and Consistent with Fee Awards in Comparable Cases......... 42

1. The Time and Labor Expended by Counsel ...................................................... 44

2. The Magnitude and Complexity of the Litigation .............................................. 45

3. The Risk of the Litigation .................................................................................... 46

4. The Quality of Representation and the Result Achieved..................................... 50

5. The Relation of the Requested Fee to the Settlement.......................................... 51

6. Public Policy Considerations ............................................................................... 51

C. A "Cross-Check" of Plaintiffs' Counsel's Lodestar Demonstrates the Reasonableness of the Requested Award ................................................................................................ 52

D. The Absence of Objections by Class Members Demonstrates the Reasonableness of the Requested Fee ........................................................................................................ 54

E. Plaintiffs' Counsel Should be Reimbursed for their Reasonably Incurred Litigation Expenses ..................................................................................................................... 54

CONCLUSION ............................................................................................................... 54

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adair v. Bristol Tech. Sys.*,
No. 97 Civ. 5874, No. 1999 U.S. Dist. LEXIS 17627 (S.D.N.Y. Nov. 16, 1999) ....................42

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir. 1987)....................16, 49

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................26, 36

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)....................19, 22

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ....................48

*In re APAC Teleservices, Inc. Sec. Litig.*,
No. 97 Civ. 9145, slip op. at 2 (S.D.N.Y. Dec. 10, 2001) ....................42, 53

*In re Apple Computer Sec. Litig., [1991 Transfer Binder]*,
Fed. Sec. L. Rep. (CCH) ¶ 96 (N.D. Cal. Sept. 6, 1991) ....................48

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)....................27

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990)....................48

*In re Baesa Sec. Litig.*,
Nos. 96 Civ. 7435, 96 Civ. 8141 (S.D.N.Y. 1998)....................42

*Becher v. Long Island Lighting Co.*,
64 F. Supp. 2d 174 (E.D.N.Y. 1999) ....................42

*In re Biogen Sec. Litig.*,
No. 94-12177-PBS (D. Mass. 1999)....................48

*In re Blech Sec. Litig.*,
No. 94 Civ. 7696, 2002 U.S. Dist. LEXIS 23170 (S.D.N.Y. Dec. 4, 2002)....................32, 42

*Boening Co. v. Van Gemert*,
444 U.S. 472 (1980)....................38

*In re Bolar Pharm. Co. Sec. Litig.*,
966 F.2d 731 (2d Cir. 1992)....................41

*Btesh v. Bahnman*,
No. 3:98 CV-00213 (D. Conn. Nov. 3, 2000).....42

*In re Buspirone Patent*,
01-MD-1410 (S.D.N.Y. Apr. 11, 2003).....42, 53

*Chatelain v. Prudential-Bache Secs., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992).....23, 39

*In re Cityscape Fin. Corp. Sec. Litig.*,
MDL Docket No. 1234 (E.D.N.Y. Nov. 27, 2000).....42

*In re Clorox Co. Sec. Litig.*,
238 F. Supp. 2d 1139 (N.D. Cal. 2002).....48

*In re Columbia Sec. Litig.*,
No. 89 Civ. 6821 (LBS) (S.D.N.Y. Feb. 15, 1995).....42

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995).....19

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)..... *passim*

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
No. 98 Civ. 4318, 2001 U.S. Dist. LEXIS 8418 (S.D.N.Y. Jun. 22, 2001).....49

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).....15

*Eisenstadt v. Centel Corp.*,
113 F.3d 738 (7th Cir. 1997).....48

*In re Fine Host Corp. Sec. Litig., No. MDL 1241, 3:97-CV-2619*,
2000 WL. 33116538 (D. Conn. Nov. 8, 2000)..... *passim*

*Freedman v. Value Health, Inc.*, No. 01-7567,
34 Fed. Appx. 408 (2d Cir. 2002).....48

*In re In-Store Adver. Sec. Litig.*,
No. 90-CIV. 5594 (PKL) (S.D.N.Y. Dec. 18, 1996).....42

*In re Iomega Sec. Litig.*,
Civ Nos. B-86-257 (JAC), B-86-273 (JAC), 1987 WL. 43391
(D. Conn. Oct. 1, 1987).....22, 23, 24, 33

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000).....29

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990)....................19

*In re Gitano Group, Inc. Cons. Sec. Litig.*,
File No. 91 Civ. 1440 (SS) (S.D.N.Y. Oct. 31, 1994)....................42

*In re Global Crossing Sec. and ERISA Litig.*,
02 MD 1472 2004 U.S. Dist. LEXIS 23946 (S.D.N.Y. Nov. 24, 2004).................... *passim*

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000).................... *passim*

*In re Gulf Oil Cities Serv. Tender Offer Litig.*,
142 F.R.D. 588 (S.D.N.Y.1992)....................34, 40

*In re Health Management, Inc. Sec. Litig.*,
No. 96-CV-889 (ADS) (E.D.N.Y. 1999)....................48

*In re Ikon Office Solutions, Inc.*,
194 F.R.D. 166 (E.D. Pa. 2000)....................50

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003)....................16, 17, 18

*In re Ivan F. Boesky Sec. Litig.*,
948 F.2d 1358 (2d Cir. 1991)....................23

*In re JWP, Inc. Sec. Litig.*,
No. 92 Civ. 5815 (S.D.N.Y. Jan. 24, 1997)....................42

*Klein ex rel. Ira v. PDG Remediation*,
No. 95 Civ. 4954, 1999 U.S. Dist. LEXIS 650 (S.D.N.Y. Jan. 26, 1999)....................42

*Lemmer v. Golden Books Family Entm't Inc.*,
No. 98 Civ. 5748 (S.D.N.Y. Oct. 12, 1999)....................42

*Leventhal v. Tow*,
No. 397 CV 0742 (DJS) (D. Conn. Jan. 31, 2001)....................42

*In re Lloyd's Am. Trust Fund Litig.*,
No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663
(S.D.N.Y. Nov. 26, 2002)....................28, 31, 39, 40

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).................... *passim*

*Maywalt v. Parker & Parsley Petroleum Co.*,
963 F. Supp. 310 (S.D.N.Y. 1997)....................42

*In re Michael Milken & Assocs.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................ 34

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) ........................................................ 38

*Milman v. BoxHill Sys. Corp.*,
No. 98 Civ. 8640 (SAS) (S.D.N.Y. Jan. 9, 2001) ........................................................ 42

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ........................................................ 52

*Moelis v. Hyperion Capital Mgmt., Inc.*,
No. 94 Civ. 3328 (S.D.N.Y. Oct. 16, 1997) ........................................................ 42

*In re MTC Electronic Technologies Shareholder Litig.*,
No. CV-93-0876 (E.D.N.Y. Oct. 20, 1998) ........................................................ 42

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................ 32, 39

*In re NASDAQ Market-Makers Antitrust Litig.*,
94 Civ. 3996 1999 WL. 395407 (S.D.N.Y. June 15, 1999) ........................................................ 15

*In re Netease.com, Inc. Sec. Litig.*,
No. 01-CV-9405 (RO) (S.D.N.Y. May 16, 2003) ........................................................ 41

*New York & Maryland v. Nintendo of Am ., Inc.*,
775 F. Supp. 676 (S.D.N.Y. 1991) ........................................................ 23

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 136 (2d Cir. 1983) ........................................................ 52

*Newman v. Caribiner Int'l Inc.*,
No. 99 Civ. 2271 (S.D.N.Y. Oct. 19, 2001) ........................................................ 42, 53

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088 (5th Cir. 1977) ........................................................ 15

*In re Oxford Health Plans, Inc.*,
191 F.R.D. 369 (S.D.N.Y. 2000) ........................................................ 20, 21

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.1997) ........................................................ *passim*

*Phillips Petroleum v. Shutts*,
472 U.S. 797 (1985) ........................................................ 22

*Plummer v. Chem. Bank*,
608 F.2d 654 (2d Cir. 1982)....................28

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
164 F.R.D. 362 (S.D.N.Y. 1996)....................16

*RMED Int'l, Inc v. Sloan's Supermarkets, Inc.*,
No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003)....................42

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E. D. Pa.2001)....................34

*In re RJR Nabisco Inc. Sec. Litig.*,
No. 88 Civ. 7905, 1992 WL. 210138 (S.D.N.Y. Aug. 24, 1992)....................39, 40

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997)....................48

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)....................20

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)....................29

*Saddle Rock Partners, Ltd. v. Hiatt*,
No. 96 Civ. 9474 (SHS) (S.D.N.Y. Apr. 12, 2001)....................42

*Savoie v. Merchants Bank*,
166 F.3d 456 (2d Cir. 1999)....................39, 52, 53

*Steiner v. Williams*,
No. 99 Civ. 10186, 2001 U.S. Dist. LEXIS 7097
(S.D.N.Y. May 31, 2001)....................49

*In re Sterling Foster & Co. Sec. Litig.*,
238 F. Supp. 2d 480 (E.D.N.Y. 2002)....................35

*Strougo v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................39, 40, 42

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)....................39, 40

*TBK Partners, Ltd. v. Warshow, [1977-1978 Transfer Binder]*,
Fed. Sec. L. Rep. (CCH) ¶ 96,196 (S.D.N.Y. Oct. 6, 1997)....................54

*Thompson v. Metropolitan Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003)....................24

*Trief v. Dun & Bradstreet Corp.*,
840 F. Supp. 277 (S.D.N.Y. 1993) ....................23

*Trustees v. Greenough*,
105 U.S. 527 (1882)....................38

*In re Twinlab Corp. Sec. Litig.*,
187 F. Supp. 2d 80 (E.D.N.Y. 2002) ....................42

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) .................... *passim*

*Varljen v. H.J. Meyers & Co., Inc.*,
No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205
(S.D.N.Y. Nov. 8, 2000)....................42

*In re Warner Communications Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ....................23, 31, 49

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)....................19, 23, 35

*West Virginia v. Chas. Pfizer & Co.*,
314 F. Supp. 710 (S.D.N.Y. 1970) ....................48

*Teachers' Retirement Sys. of Loisiana. v. A.C.L.N., Ltd.*,
No. 01 Civ. 11814 (MP), 2004 WL. 1087261 (S.D.N.Y. May 14, 2004) ....................34, 36

**OTHER AUTHORITIES**

15 U.S.C. §78u-4 .................... *passim*

15 U.S.C. §78u-5 ....................29

15 U.S.C. §78t(a) ....................2

Fed. R. Civ. P. 23 .................... *passim*

*Third Circuit Task Force on Court Awarded Attorneys' Fees*,
108 F.R.D. 237 (1985) ....................39

*Manual for Complex Litigation, Fourth § 21.612* (2004)....................23

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs in this action (the "Action") respectfully request that this Court grant final approval of the proposed settlement of $16.5 million (the "Settlement") with Defendant Annuity and Life Re (Holdings) Ltd. ("ANR"), Defendant XL Capital, Ltd. ("XL Capital") and Individual Defendants Lawrence S. Doyle, Frederick S. Hammer, John F. Burke, William W. Atkin, Brian O'Hara and Michael P. Esposito, Jr. (collectively, the "Settling Defendants"). The Settlement partially resolves a class action lawsuit brought under the federal securities laws over whether ANR misled investors in its quarterly and annual reports filed with the SEC about the problems and risks associated with its largest annuity reinsurance contract and about its earnings. The Settlement will benefit all persons and entities that purchased shares of ANR securities between March 15, 2000 and November 19, 2002 inclusive (the "Class Period") and were damaged thereby (the "Class"), excluding Defendants and those affiliated with them. This lawsuit will continue, however, with respect to claims asserted against ANR's independent auditors, KPMG in Bermuda and KPMG LLP USA (collectively "KPMG").

For the reasons set forth below and in the accompanying Joint Declaration of Co-Lead Counsel in Support of Proposed Settlement and Petition for An Award of Attorney's Fees and Reimbursement of Expenses (the "Joint Declaration"), Plaintiffs submit that the Settlement is an outstanding recovery for the Class and respectfully request that the Court certify this case as a class action, approve the Settlement and Plan of Allocation, award Plaintiffs' counsel fees and expenses, and enter the proposed Order and Final Judgment accordingly.

**PRELIMINARY STATEMENT**

The proposed Settlement represents an extraordinary recovery for the Class. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs in this action respectfully request that this Court grant final approval of the Settlement with the "Settling Defendants". The

Settlement partially resolves a lawsuit over whether ANR allegedly misled investors about the problems and risks associated with its largest annuity reinsurance contract. Plaintiffs allege that ANR misstated its liabilities and earnings for this contract in each of the quarters during the class period.

As further described below, Plaintiffs' ability to collect a substantial judgment in this case is significantly imperiled by the precarious financial condition of ANR. The Settlement amount far exceeds the maximum recoverable amount of ANR's $10 million directors and officers ("D&O") insurance policy, which is first subject to payment of the litigation expenses to defend this case. Because of the complex and technical issues requiring expert support, the defense costs should this case proceed to trial could easily have exhausted the D&O policy. Moreover, because of the settlement offset provisions of the PSLRA, 15 U.S.C. §78u-4(f)(7), Plaintiffs risked failing to obtain any recovery from XL Capital (who was sued only as a control person under Sec. 20(a), 15 U.S.C. §78t(a)) if it was not included within the current settlement.

The Settlement was entered into after extensive informal discovery, retention of and consultation with a series of actuarial, accounting and economic experts to evaluate liability and damages issues and mediation with a retired U.S.D.C. judge, the Hon. Nicholas Politan, who recommended the proposed settlement terms. There remained serious risks on the merits and to establishing damages in prosecuting the action further, including establishing:

- What actuarial standards and Generally Accepted Accounting Principles ("GAAP") were applicable to this case;
- That Defendants misstated their financial statements in violation of these actuarial standards and GAAP;
- That each of the Defendants sued under §10b and Rule 10b-5 acted with scienter;
- That the alleged false statements caused Plaintiffs' losses; and
- The amount of damage to the class.

Each of these issues were vigorously disputed. For their claims against XL Capital, Plaintiffs would also have had to establish control person liability. Many of these issues would have been the subject of a "battle of experts" – plus the uncertainties, expense and delay of post-trial motions and likely appeals. Under these circumstances, the $16.5 million recovery for the Class represents an outstanding result and should be approved by the Court.

This Memorandum of Law also addresses Plaintiffs' proposed Plan of Allocation. The Plan of Allocation, which is set forth fully in the Notice of Pendency of Class Action and Proposed Settlement With Certain Defendants, Motion For Attorneys' Fees and Settlement Fairness Hearing (the "Notice") that has been mailed to members of the Class, provides for the distribution of the Net Settlement Fund on a pro rata basis, based on a formula tied to liability and damages. As this is a reasonable and rational distribution, the Court should approve the proposed Plan of Allocation.

This Memorandum is also submitted in support of certification of the Class for settlement purposes. In its October 6, 2004 Amended Order, this Court preliminarily certified the Class, as defined below, for settlement purposes. Because the Class adequately satisfies all the requirements of Rule 23, including numerosity, commonality, typicality, adequacy, predominance of common issues and superiority, the Court should confirm its certification of the Class for settlement purposes.

Finally, this Memorandum is submitted in support of the application by Plaintiffs' counsel for an award of attorneys' fees in the amount of 33 1/3% of the Settlement Funds and reimbursement of $194,855.37 in litigation expenses, including $3,150 of expenses personally expended by Lead Plaintiff Midstream Investments Ltd. investigating the claims and consulting with Bermuda counsel. Plaintiffs' counsel worked on an entirely contingent fee basis for nearly

two years. Counsel shouldered the risk of committing significant resources to the litigation, notwithstanding the uncertainty as to whether the litigation would succeed. Counsel's efforts have produced an enormously beneficial result for the Class. As discussed below, the requested fee falls within the parameters recognized as appropriate in federal securities class actions such as this, regardless of whether the proposed fee is evaluated as a percentage of the amount recovered through counsel's efforts or as a multiple of counsel's lodestar.

For the reasons discussed below, Plaintiffs respectfully submit that the Settlement is worthy of immediate approval, that the proposed Class should be certified for settlement purposes, that the proposed Plan of Allocation is equitable and just, and that the proposed requested fee should be awarded, with expenses.

## HISTORY OF THE LITIGATION[1]

### A. Background

Beginning on December 4, 2002, numerous class action complaints against ANR and its officers and directors were filed in this Court alleging violations of federal securities laws. These subsequently were consolidated under the above caption. The Action is brought on behalf of a Class of all persons who purchased the common stock of ANR during the Class Period of March 15, 2000 and November 19, 2002, inclusive.

On August 24, 2004, the Settling Defendants entered into a Stipulation and Agreement of Partial Settlement. The Settlement Notice was mailed to Class members on October 13, 2004 and a summary notice was published in the international editions of *The Wall Street Journal* and

[1] The lengthy history of the case is only summarized herein. Plaintiffs respectfully refer the Court to the Joint Declaration for a detailed recitation of the history of the litigation and settlement negotiations.

the *Financial Times* on October 26, 2004. Class members had until December 27, 2004 to opt-out of this litigation, and only one shareholder, Andrew S. Lerner, has exercised that right.[2]

Plaintiffs brought this action in December 2002 after ANR, a Bermuda insurance company, filed its November 19, 2002 Form 8-K with the SEC, disclosing the extent of its losses on a massive reinsurance contract with Transamerica Occidental Life Insurance ("Transamerica"). Following the appointment as Lead Plaintiffs and Co-Lead Counsel on April 3, 2003, Plaintiffs filed the Amended Complaint on July 11, 2003.

The Amended Complaint alleges that Lead Plaintiffs and other Class members purchased the common stock of ANR during the Class Period at prices artificially inflated as a result of Defendants' dissemination of materially false and misleading statements regarding ANR in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder.

The Amended Complaint further alleges that ANR, and its officers and directors, acted knowingly or recklessly in issuing ANR's false financial statements, because the errors were so fundamental, and the Transamerica contract such a huge portion of ANR's business, that they simply could not have approved ANR's financial statements without, at minimum, being willfully blind to the errors. Additionally, the Amended Complaint alleges that XL Capital, as well as the Individual Defendants, are liable as controlling persons under Section 20(a) of the Exchange Act for ANR's fraud. As alleged in the Amended Complaint and demonstrated

[2] In the aggregate, 16,700 copies of the Settlement Notice were disseminated to potential Class Members or their nominees through January 13, 2005. *See* Affidavit of Barbara Heald Re: (A) Mailing of the Notice and Proof of Claim; and (B) Report on Exclusion Requests Received (hereinafter the "Heald Aff.") at ¶7. The Heald Aff. is attached as Exhibit 1 to the Joint Declaration. Additionally, a Summary Notice was published in the international editions of the *Wall Street Journal* and *Financial Times* on October 26, 2004. *See* Joint Decl., Ex. 2, Affidavit of Beth Kaswan Re: Publication of Summary Notice of Pendency of Class Action, Proposed Partial Settlement and Settlement Hearing.

through various SEC filings, ANR was formed by XL Capital and many of its top management were current or former officers of XL Capital or its subsidiaries. Two of ANR's directors were, in fact, XL Capital's President and CEO (Defendant O'Hara), and its Chairman of the Board of Directors (Defendant Esposito). In 1999, ANR paid a consulting firm $2.7 million for help with its business. That firm has as its principals two XL Capital officials who also sat on ANR's Board. During the Class Period, XL Capital owned between 11.1% and 12.9% of ANR common stock.

The Amended Complaint alleges that, during most of the Class Period, ANR reported, each quarter, millions of dollars of income on the annuity reinsurance contract with Transamerica that actually was generating losses; and that in ANR's public filings, Defendants falsely advised investors that the invested assets supporting its annuity reinsurance business were free of market risk.

Plaintiffs allege that Defendants' fraud caused ANR's share price to rise to a peak of $36.98 before plummeting to $2.24 at the end of the Class Period, when Defendants revealed the truth. According to the calculations performed by Plaintiffs' damages expert, members of the Class have lost between $252,396,100 ("Defendants' style damages") and $364,999,989 ("Plaintiffs' style damages") as a result of Defendants' actions.

**B. <u>Procedural History of the Litigation</u>**

After investigation of public filings with the SEC and consultation with experts, beginning on December 4, 2002, nine class actions alleging violations of federal securities laws – *Schnall v. Annuity and Life Re (Holdings), Ltd., et al.*, Civil Action No. 02-CV-2133 (GLG); *Feldbaum v. Annuity and Life Re (Holdings), Ltd., et al.*, Civil Action No. 02-CV-2223 (GLG); *Nadoff v. Annuity and Life Re (Holdings), Ltd., et al.*, Civil Action No. 02-CV-2224 (GLG); *Bernard v. Annuity and Life Re (Holdings), Ltd., et al.*, Civil Action No. 03-CV-0043 (DJS);

*Madsen v. Annuity and Life Re (Holdings), Ltd., et al.*, Civil Action No. 02-CV-2269 (GLG); *Bird v. Annuity and Life Re (Holdings), Ltd., et al.*, Civil Action No. 02-CV-2210 (RNC); *Hertzl v. Annuity and Life Re (Holdings), Ltd., et al.*, Civil Action No. 02-CV-2211 (GLG); *Huff v. Annuity and Life Re (Holdings), Ltd., et al.*, Civil Action No. 03-CV-0022 (SRU); and *Lassoff v. Annuity and Life Re (Holdings), Ltd., et al.*, Civil Action No. 03-CV-0211 (SRU) – were filed in this Court and subsequently were consolidated under the above caption, and are hereinafter referred to as the "Action."

On February 3, 2003, four movants, including two large institutional investors -- the General Retirement System of the City of Detroit ("Detroit") and Local Union 338 Retirement Fund Board of Trustees, moved for appointment as lead plaintiff pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3). The battle for lead plaintiff was hard fought with Detroit and the other movants, but on April 3, 2003, the Court appointed Communications Workers of America and Midstream Investments Ltd. as the lead plaintiffs and appointed their counsel, Scott + Scott, LLC and Milberg Weiss Bershad Hynes & Lerach LLP (now Milberg Weiss Bershad & Schulman LLP), as Co-Lead Counsel, finding under the PSLRA that lead plaintiffs suffered the largest loss of all the movants. On April 17, 2003, however, Detroit challenged lead plaintiffs' appointment, filing a motion for reconsideration. After extensive briefing, the Court denied the motion for reconsideration, confirming lead plaintiffs' appointment on May 29, 2003.

Plaintiffs filed the Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws on July 11, 2003 (the "Complaint"), which generally alleges, as described in detail above, that Defendants issued false and misleading press releases and other statements regarding ANR's earnings and financial condition during the Class Period – March

15, 2000 through November 19, 2002 – in a scheme to artificially inflate the value of ANR's securities.

The Complaint further alleges that Lead Plaintiffs and other members of the Class purchased ANR common stock during the Class Period at prices artificially inflated as a result of Defendants' dissemination of materially false and misleading statements regarding ANR in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.

On September 17, 2003, Lead Plaintiffs filed a motion and supporting briefing for partial relief from the PSLRA's discovery stay, on the ground that ANR might soon file for bankruptcy and thus, under Bermuda law, render its documents inaccessible to Plaintiffs. Ultimately, ANR agreed to provide documents to Plaintiffs voluntarily, as described more fully below.

On September 20, 2003, ANR filed its answer to the Complaint, denying any liability to Lead Plaintiffs and the Class.

On October 3, 2003, Individual Defendants Burke, Hammer and Atkin each filed a separate motion to dismiss the Complaint. In addition, XL Capital and Individual Defendants O'Hara and Esposito (the "XL Capital Defendants") together filed a motion to dismiss on October 3, 2003.

On October 23, 2003, the Plaintiffs filed a related action, Civil Action No. 03-CV-1826, (the "KPMG Action") with a separate complaint against KPMG in Bermuda ("KPMG Bermuda") and KPMG LLP USA ("KPMG USA") (collectively, "KPMG"), alleging that they had violated the securities laws through their conduct as ANR's auditor. (Plaintiffs also initially named KPMG United Kingdom in its KPMG complaint but upon further investigation removed it as a Defendant in filing an amended KPMG complaint.) On January 6, 2004, the Court

granted Lead Plaintiffs' motion to consolidate the KPMG Action with the Action, without prejudice to Defendants' rights to request a separate trial at a later and more appropriate phase of the litigation. KPMG has filed motions to dismiss, which have been fully briefed and currently are pending before this Court. This Settlement with the Settling Defendants does not settle any claims against KPMG or its partners, principles, employees, agents and affiliates, none of whom or which shall be released from any claims of the Lead Plaintiffs or the Class under this Settlement.

On October 24, 2003, Individual Defendant Doyle filed his answer to the Complaint, denying any liability to Lead Plaintiffs and the Class.

Lead Plaintiffs sought and received permission from the Court to file a consolidated response to the motions to dismiss filed by Burke, by Hammer and by the XL Capital Defendants. As Atkin's motion to dismiss was the only one to make substantially different arguments for dismissal, Lead Plaintiffs filed a separate response to Atkin's motion to dismiss. On November 19, 2003, Lead Plaintiffs filed these opposition papers to the motions to dismiss.

Atkin filed his reply to Lead Plaintiffs' opposition on December 4, 2003. On December 13, 2003, the Court denied Atkin's motion to dismiss without prejudice. *See Schnall v. Annuity & Life Re (Holdings)*, 02 CV 2133 (GLG), 2003 U.S. Dist. LEXIS 23258 (D. Conn. Dec. 13, 2003). On January 26, 2004, Atkin filed a renewed motion to dismiss. On March 16, 2004, Lead Plaintiffs filed their opposition to Atkin's renewed motion to dismiss. Atkin filed his response on April 1, 2004. On April 15, 2004, Lead Plaintiffs sought and received permission from the Court to file a surreply to Atkin's renewed motion to dismiss. On April 19, 2004, Atkin filed a reply to the surreply.

The XL Capital Defendants filed their reply to Lead Plaintiffs' opposition on December 18, 2003. Individual Defendants Hammer and Burke filed their replies to Lead Plaintiffs' opposition on December 22, 2003.

In three separate opinions, Judge Goettel denied Defendants' motions in their entirety.[3] *See Schnall v. Annuity & Life Re (Holdings)*, 02 CV 2133 (GLG), 2004 U.S. Dist. LEXIS 1601 (D. Conn. Feb. 4, 2004) ("*Schnall I*"); *Schnall v. Annuity & Life Re (Holdings)*, 02 CV 2133 (GLG), 2004 U.S. Dist. LEXIS 2859 (D. Conn. Feb. 22, 2004) ("*Schnall II*"); *Schnall v. Annuity & Life Re (Holdings)*, 02 CV 2133 (GLG), 2004 U.S. Dist. LEXIS 4643 (D. Conn. Mar. 9, 2004) ("*Schnall III*"). Judge Goettel stated that given the nature of the falsehoods, Defendants' knowledge of the industry, and the size of the Transamerica contract, there was a strong inference that the Defendants acted knowingly or recklessly when they approved ANR's financial statements. *See Schnall I*, 2004 U.S. Dist. LEXIS 1601, at *22-*23; *Schnall II*, 2004 U.S. Dist. LEXIS 2859, at *25; *Schnall III*, 2004 U.S. Dist. LEXIS 4643, at *25. Judge Goettel rejected the claims of Hammer, Esposito, and O'Hara that, as outside directors, they could not be held responsible for the contents of ANR's financial statements. Instead, Judge Goettel highlighted the industry expertise of these Defendants and the interrelationships between themselves, ANR, XL Capital, and Inter-Atlantic. *See Schnall I*, 2004 U.S. Dist. LEXIS 1601, at *12-13; *Schnall III*, 2004 U.S. Dist. LEXIS 4643, at *15-*18.

In response to the claim by XL Capital that it had not exercised control over ANR sufficient to subject it to 20(a) liability, Judge Goettel concluded, "based on the interrelationships" between the companies involved in this case, "Esposito and O'Hara are more

[3] By the time the parties reached agreement on the Settlement, only Defendant Atkin's renewed motion to dismiss based on improper service was unresolved.