UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHERRY SCHNALL, Individually and On
Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

ANNUITY AND LIFE RE (HOLDINGS), LTD.,
XL CAPITAL, LTD., LAWRENCE S. DOYLE,
FREDERICK S. HAMMER, JOHN F. BURKE,
WILLIAM W. ATKIN, BRIAN O'HARA, AND
MICHAEL P. ESPOSITO, JR.,

    Defendants.

Civil Action No. 02 CV 2133 (EBB)

**AFFIDAVIT OF STEPHEN J. CIRAMI IN SUPPORT
OF MOTION FOR DISTRIBUTION OF CLASS SETTLEMENT FUNDS**

STATE OF NEW YORK )
         ) ss.:
COUNTY OF SUFFOLK )

  Stephen J. Cirami, being first duly sworn, deposes and says:

  1. I am the Assistant Vice-President of Securities Operations for The Garden City Group, Inc. ("GCG"). Lead Plaintiffs' Co-Lead Counsel retained GCG to act as the Claims Administrator herein, to give notice of the proposed settlement to the Class, to process all claims submitted by Class Members in this action, to prepare the tax returns for the Settlement Fund and to distribute the Net Settlement Fund to the Authorized Claimants. I make this affidavit in support of Lead Plaintiffs' application for an order: (a) approving the administrative action taken by my firm in accepting and rejecting the claims filed by Claimants herein; (b) directing payment to GCG of its fees and all its expenses in connection with the services performed and to be performed in giving notice to the Class, preparing tax returns for the Settlement Fund, the

processing of the Proofs of Claim, and the administration and distribution of the Net Settlement Fund; (c) directing distribution of the Net Settlement Fund to the Authorized Claimants; and (d) authorizing destruction of paper copies of Proof of Claim forms one year after distribution of the Net Settlement Fund, and authorizing destruction of electronic copies of Proof of Claim records three years after distribution of the Net Settlement Fund. I have personal knowledge of the facts stated herein.

2. On August 24, 2004, Lead Plaintiffs and Defendants Annuity and Life Re (Holdings), Ltd. ("ANR"), XL Capital, Ltd. ("XL Capital"), and Lawrence S. Doyle ("Doyle"), Frederick S. Hammer ("Hammer"), John F. Burke ("Burke"), William W. Atkin ("Atkin"), Brian O'Hara ("O'Hara"), and Michael P. Esposito ("Esposito") (Doyle, Hammer, Burke, Atkin, O'Hara, and Esposito are collectively referred to as the "Individual Defendants") (ANR, XL Capital, and the Individual Defendants are collectively referred to as the "Settling Defendants"), entered into a Stipulation and Agreement of Partial Settlement (the "Stipulation"). The Stipulation provided for the settlement of this action on behalf of a Class consisting of all persons who purchased the common stock of ANR during the period between March 15, 2000 and November 19, 2002, inclusive, and were damaged thereby.

3. This Court entered the Amended Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings (the "Notice Order"), dated October 6, 2004, preliminarily approving the Stipulation and directing that notice of the proposed settlement be given to the members of the Class. As more fully described in the Affidavit of Barbara Heald dated January 13, 2004, previously filed herein, Docket No. 188, Ex. 1, GCG distributed 16,700 copies of the Court-approved Notice of Pendency of Class Action and Proposed Settlement with Certain Defendants, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Notice")

and Proof of Claim and Release form (the "Proof of Claim") (collectively with the Notice, the "Claim Packet") to potential members of the Class commencing on October 13, 2004. As scheduled in the Notice Order, a hearing was held on January 21, 2005, to consider the settlement pursuant to the Stipulation. By Order and Final Judgment dated January 21, 2005, this Court approved the Settlement as fair, reasonable and adequate.

### Procedures Followed in Processing Claims

4. Under the terms of the Stipulation, Class Members were required to submit a Proof of Claim in order to obtain their share of the "Net Settlement Fund" (the $16,500,000 Cash Settlement Amount, less all attorneys' fees and expenses of the litigation approved by this Court, less all administration fees and expenses approved by this Court, plus interest earned on the Settlement Fund, less taxes payable on such interest).

5. GCG undertook the following tasks in order to prepare to process the Proofs of Claim: conferred with Lead Plaintiffs' Co-Lead Counsel to define the project and guidelines for claims processing; trained staff in the specifics of the project; and developed programs for entry of the Class Members' identifications and their transaction information.

6. Class Members seeking to share in the Net Settlement Fund were directed in the Notice to submit their Proofs of Claim to:

> Annuity and Life Re (Holdings), Ltd. Securities Litigation
> c/o The Garden City Group Inc.
> Claims Administrator
> P.O. Box 9000 #6254
> Merrick, NY 11566-9000

GCG sorted incoming mail into Proofs of Claim and administrative mail. Claim Packets that were returned by the Post Office were reviewed for better addresses and, where available, new

addresses were entered into the database and new Claim Packets were mailed to the updated addresses. Administrative mail such as correspondence and requests for forms were reviewed and appropriate responses given.

7. The Proof of Claim forms were opened and scanned into a database along with all submitted documentation. If the Proof of Claim form did not have a pre-assigned claim number, it was assigned one. The information from each claim form, including the name, address, Taxpayer I.D. or Social Security Number of the Claimant, and the purchase and sales transactions listed on the claim were then entered into a computerized database. The documentation provided in support of each claim by the Claimant was reviewed to ascertain whether the Claimant had in fact purchased the common stock of ANR during the period between March 15, 2000 and November 19, 2002, inclusive (the "Class Period"), and were damaged thereby. Claims were then reviewed to be sure they were not from the Settling Defendants, the officers and directors of ANR and XL Capital at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest, to the extent that the identities of such persons or entities are known to us through the list of defendants and through the Claimant's certification on the Proof of Claim form. Claims were also reviewed against the list of persons requesting exclusion.

8. GCG established internal claim codes (also known as "message codes") to identify and classify types of claims and conditions that exist within the claims. Where a submitted claim lacked the required filing information or documentation to substantiate the Class Member's transactions during the Class Period, or was otherwise ineligible, a Notice of Deficiency letter was sent to the Claimant advising him or her of the deficiency and requesting the submission of the appropriate documentary evidence or correction of the defect.

9. Where a Notice of Deficiency letter was sent, each Claimant was notified that unless the deficiency was corrected within twenty (20) days, his or her claim would be accepted only to the extent of the documentation supplied, or that the claim would be entirely rejected if they had not supplied the required documentation or filing information for any transactions.

10. Responses to deficiency letters were carefully reviewed and evaluated. If the response corrected the deficiency, the database was updated to reflect the accepted claim. If the response did not cure the defect, either (a) an Rejection letter was sent to the Claimant or, (b) the Claimant was called advising him or her (i) the claim was still deficient, (ii) what was needed to cure the defect and, (iii) if the deficiency was not corrected the claim would be rejected in whole or part, or (c) an Ineligible letter was sent if the submitted response demonstrated that the Claimant was not eligible to share in the Net Settlement Fund.

11. Claimants who submitted claims which showed that they were ineligible to participate in the Net Settlement Fund (for example, where their claim showed that they had suffered no Recognized Claim from their purchases of ANR common stock during the Class Period, or where their purchases were not made within the Class Period) were sent a Final Notice of Ineligibility letter. Claimants who submitted duplicate claims were also sent Final Notice of Ineligibility letters rejecting the duplicate claims. All of the Claimants who were sent a Final Notice of Ineligibility letters were advised of their right to have this Court review our administrative determination.

12. Attached hereto as Exhibit "A" is a copy of the forms of letters used to notify claimants of the deficiency in their claims or the rejection of their claims. The Final Notice of Ineligibility letter advised the claimant of his, her or its right to request this Court's review of our administrative determination rejecting the claim. The letter stated that the Claimant could

request this Court's review of the rejection of their claim by filing a statement in writing setting forth the reasons why they believe that the claim was adequately submitted. No claimant has requested this Court's review of the rejection of his, her or its claim.

13. Claims which were properly filed and supported with adequate documentary evidence were recognized on the basis of the following "Recognized Claim" formula as stated in the Plan of Allocation set forth on page 9 of the Notice and approved by the Court:

(a) For shares of ANR common stock purchased during the Class Period and still owned as of the close of trading on November 19, 2002, "Recognized Claim" shall be the Plaintiffs' Contention of Alleged Inflation ("PCAI") per share on the date of purchase as shown on Schedule 1 of the Notice for the date of purchase.

(b) For shares of ANR common stock purchased during the Class Period and sold at a loss on or before the close of trading on November 19, 2002, "Recognized Claim" shall be the lesser of (x) the Purchase Price Paid less the Sale Proceeds Received; or (y) the PCAI per share on the date of purchase (as shown on Schedule 1 of the Notice for the date of purchase), less the PCAI per share on the date of sale (as shown on Schedule 1 of the Notice for the date of sale).

14. Approximately 331 claims were postmarked later than March 7, 2005, the submission deadline stated in the Notice. No claim has been rejected because it was received after the initial submission deadline and we believe no delay has resulted from the provisional acceptance of these claims. It is our belief that when the equities are balanced, it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement Fund solely because it was submitted after the cut-off date, when it was submitted while the claims were still being processed. Accordingly, it is respectfully requested that this Court approve the administrative

determination not to reject claims submitted after the March 7, 2005 deadline because of lateness. These claims are included in the list of Authorized Claimants. Ex. B.

15. However, there must be a final cut-off after which no more claims may be accepted in order that there may be a proportional distribution of the Net Settlement Fund. Acceptance of any claim received after the date of this application would necessarily increase the costs of the administration and could require a delay in the distribution. Accordingly, it is also respectfully requested that an Order be entered that no claim submitted after April 30, 2006, a date during the preparation of this application, be accepted for any reason whatsoever.

16. A total of 3,294 persons or entities have filed claims herein (2,963 timely and 331 after March 7, 2005), of which a total of 2,457 have been accepted.

17. A total of 837 Claimants were rejected in whole or in part for the following reasons:

| No. of Claims | Reason for Rejection |
|---|---|
| 103 | Claim Did Not Fit the Definition of the Class |
| 111 | Duplicate Claim |
| 180 | Deficient Claims Never Cured |
| 443 | Claim Did Not Result in a Recognized Claim |

18. An integral part of all of our claims administration projects is the Quality Assurance review. Once all of the claims have been processed, Deficiency and/or Rejection letters have been mailed, and deficiency responses reviewed and processed, GCG's Quality

Assurance unit performs a final project wrap-up in order to ensure correctness and completeness of all of the claims processed prior to preparing our final reports to counsel. Here, in connection with this Quality Assurance process we: checked that all otherwise "valid" claims that do not have proper Social Security/Tax Identification Numbers were given a "message" flagging the computer system to denote that condition; determined that valid claims have no messages denoting ineligibility; determined that claims that are ineligible have messages denoting ineligibility; determined that claims that contained purchases that occurred after the Class Period contain appropriate ineligible messages; determined that claim detail (transaction) message(s) appear(s) only on claim detail records; determined that all claims requiring Deficiency/Rejection letters were sent such letters; performed a sample review of deficient claims; reviewed claims with large dollar losses; sampled claims that were determined to be ineligible, including those with no Recognized Claim calculated in accordance with the Plan of Allocation, in order to verify that all transactions had been captured correctly; and tested the accuracy of the calculation program.

19. In support of the work described above, the GCG computer staff designed, implemented and tested the following programs for this administration: Calculation program with descending dollar and alphabetical order lists; and Check writing programs.

20. GCG has accepted 2,457 claims representing a total Recognized Claim of $180,402,223.40 (including $154,707,397.48 from timely claims and $28,694,825.92 from claims submitted after March 7, 2005).

21. Submitted herewith as Exhibit B is a computer printout listing all the claims filed herein. The first portion of the printout alphabetically lists all the timely filed Authorized Claimants and shows their Recognized Loss amounts, followed by an alphabetical list of

otherwise acceptable claims submitted after March 7, 2005, showing their Recognized Claim amounts. The next portion of the printout alphabetically lists all the rejected Claimants and shows the reason why such claims were rejected.

22. GCG has spent the time necessary to do a thorough job of processing the claims and to protect the interests of each Class Member filing a claim. No claims were rejected out-of-hand and adequate time was spent communicating with Class Members and suggesting appropriate ways they could document their claims and participate in the settlement. Telephone calls and written letters from Claimants to GCG were courteously handled. Class Member were assisted to the fullest extent possible. The professional attitude and work product of GCG was, I believe, the highest quality.

23. It is respectfully requested that the Court enter an Order approving the above determinations accepting and rejecting the claims filed herein. In order to allow the final distribution of the Net Settlement Fund it is necessary to bar any further claims against the Net Settlement Fund and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund be released and discharged from any and all claims arising out of such involvement beyond the amount allocated to them.

24. If the Court grants this motion, the GCG staff will undertake the following tasks: calculate the pro rata distribution amounts from the Net Settlement Fund by comparing the Authorized Claimants' total Recognized Claim with the total dollar value of the Net Settlement Fund at the time of distribution; prepare checks and check registers, and mail checks by prepaid

first class mail; issue replacement checks upon request by payee; and, answer inquiries about claim calculation and checks.

25.  Pursuant to the Plan of Allocation approved in this action, any monies remaining in the Net Settlement Fund by reason of returned or uncashed checks or otherwise one year after the initial distribution, and after appropriate efforts have been made to locate and distribute funds to Authorized Claimants who did not cash their distribution checks are to be re-distributed, with such remainder to be allocated to Authorized Claimants who have cashed their checks, provided that they would receive at least $10.00 on such re-distribution, based on their Recognized Claims, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution.

26.  If the Court grants this motion, the GCG staff will make reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks. If there is any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of the Net Settlement Fund, GCG shall re-distribute such balance to Class members who have cashed their checks and who would receive at least $10.00 from such re-distribution. If after six months after such re-distribution any funds shall remain in the Net Settlement Fund, then pursuant to the approved Plan of Allocation such balance shall be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated by Lead Plaintiffs' Co-Lead Counsel.

### Fees and Disbursements

27.  GCG agreed with Plaintiffs' Counsel to give notice to the Class, process the claims herein, administer and distribute the Net Settlement Fund to the Authorized Claimants, and prepare the tax returns for the Settlement Fund in consideration of payment of our standard

hourly fees, subject to this Court's approval. Our hourly fees incurred to date and expected to be incurred through the re-distribution amount to $87,272.73, as shown on the invoices annexed hereto as Exhibit C. In our engagement it was also agreed that our out-of-pocket expenses would be reimbursed. Our actual out-of-pocket expenses incurred to date and expected to be incurred will total $11,984.16, as also shown on the invoices annexed as Exhibit C. GCG respectfully requests the Court to authorize the payment of the full amount of such fees and out-of-pocket expenses.

28.  GCG has not received any payment on account from the Settlement Fund. Accordingly there is a balance due of $99,256.89 payable to GCG.

### Records Retention And Destruction

29.  We request that the Court enter an Order providing that one year after distribution of the Net Settlement Fund we are authorized to destroy the paper copies of the Proof of Claim forms, and three years after distribution of the Net Settlement Fund we are authorized to destroy electronic copies of claim records.

_____
Stephen J. Cirami

Sworn to before me this 15th
day of May, 2006

_____
Notary Public

VANESSA M. VIGILANTE
Notary Public, State of New York
No. 01VI6143817
Qualified in Queens County
My Commission Expires 4-17-2010