UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHERRY SCHNALL, Individually and on Behalf of All Others Similarly Situated, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. |
| | : | |
| v. | : | 3:02 CV 2133 (EBB) |
| | : | |
| ANNUITY AND LIFE RE (HOLDINGS), LTD., XL CAPITAL, LTD., LAWRENCE S. DOYLE, FREDERICK S. HAMMER, JOHN F. BURKE, WILLIAM W. ATKIN, BRIAN O'HARA, and MICHAEL P. ESPOSITO, JR., | : | |
| | : | |
| Defendants. | : | |

## RULING ON KPMG BERMUDA's MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

### INTRODUCTION

On March 15, 2004, the defendant, KPMG Bermuda, filed a Motion to Dismiss the First Amended Class Action Complaint (Doc. # 125). For the reasons discussed in this ruling, the defendant's motion to dismiss is DENIED.

### BACKGROUND

The following background is substantially similar to the factual detail contained in this Court's recent ruling on KPMG (US)'s Motion To Dismiss (Doc. # 208). In the amended complaint

in this action ("the Complaint") (Doc. # 32)[1] the plaintiffs allege that "KPMG" audited the year-end financial statements of Annuity & Life Re (Holdings), Ltd. ("ANR") for the fiscal years ending December 31, 1999, December 31, 2000, and December 31, 2001.  The plaintiffs, Communications Workers of America and Midstream Investments Ltd., brought this suit individually and on behalf of all others who purchased securities of ANR during the Class Period, which runs from March 15, 2000 to November 19, 2002.  "ANR is a Bermuda corporation, formed in 1997 as a holding company for subsidiaries whose purpose was to sell annuity and life reinsurance products." Compl. ¶ 2.

The subject of this lawsuit is a retrocessional insurance contract between ANR and Transamerica Occidental Life Insurance Company ("Transamerica"), "a major United States insurance company."  Compl. ¶ 8.  Pursuant to this contract, "ANR assumed $1.6 billion in liabilities, which represented 96% of its liabilities to policyholders at the start of the Class Period." Id.  ANR indemnified Transamerica, which indemnified IL Annuity and Insurance Company ("IL Annuity"), the cedent company directly liable to the policyholders.  Id.  In consideration for the

---

[1]

        This case was originally assigned the case number 3:03-cv-1826 prior to consolidation.  The First Amended Class Action Complaint against KPMG US and KPMG Bermuda, the relevant complaint for purposes of this ruling, is docketed under the original case number - 3:03-cv-1826.

assumption of a portion of Transamerica's liability to IL
Annuity, ANR would receive a corresponding share of the various
investment securities purchased by IL Annuity with the
policyholder premiums.  Id.  While ANR assumed a portion of the
risk, IL Annuity retained complete control over the investment
decisions and management of the underlying assets.  Id.

    The laws of the various states imposed minimum interest rate
guarantees with respect to the premiums paid for annuity
policies.  Compl. ¶ 9.  The minimum interest guarantees were in a
range, generally, from 3 to 3.5%.  Id.  Therefore, regardless of
how the investments performed, the insurance companies were
required to pay policyholders a minimum of 3 to 3.5%.  Id.

    Approximately 70% of the IL Annuity policyholders chose to
"tie their investment returns" to the performance of convertible
bonds, pursuant to an unusual feature of the underlying
annuities.  Compl. ¶ 9-10.  "Convertible bonds are bonds issued
by corporations that, like regular bonds, pay a stated interest
rate, but are 'convertible' into common stock of the issuing
corporation."  Compl. ¶ 10.  Convertible bonds tend to offer a
low interest rate because of the added value supplied by the
convertible feature.  Thus, if the underlying common stock
appreciates to a predetermined price, the bond will convert.
Otherwise, the bondholder could be left with a relatively low
paying corporate bond.  This, allegedly, made the Transamerica

3

contract substantially risky and dependent on the stock market,
as opposed to a spread in interest rates.  Plaintiffs allege that
this "gamble was lost," in part, because many policyholders
surrendered their policies prematurely, before the equity markets
could perform as the insurance companies had predicted.  At one
point, the surrender rate reached 26%, much higher than ANR's
projection of 4%.  Compl. ¶ 79(c).  Despite this allegedly
obvious decline, ANR continued to report positive results and
projections to the public, with certification by KPMG Bermuda.

     On its financial statements, ANR classified its portion of
the underlying investments held by the ceding companies as an
asset called Funds Withheld at Interest.  Compl. ¶ 44.  ANR also
reported the amount of liabilities it assumed under its various
annuity contracts.  Id.  However, ANR allegedly failed to credit
each policyholder's account for the minimum interest guarantees
to which the policyholder was entitled.  Id.  As is typical, ANR
capitalized and amortized its Deferred Acquisition Costs ("DAC")
over the life of the annuity reinsurance contract, rather than
recognize these costs as they were incurred.  Id.  The manner in
which the DAC were amortized was dependent upon the projected
profits over the life of the contract.  Id.  However, Generally
Accepted Accounting Practices ("GAAP") allegedly required ANR to
conduct loss recognition and recoverability testing to determine
whether the contract continued to appear as if it would generate

sufficient income to offset the DAC in the future.   Id.
According to the Complaint, when a contract appears as if it will
not generate enough profit to offset the capitalized costs, a
company is required to "write down" a portion of its deferred
costs.   Id.   Thus, surrender rates were very important to the
viability of the Transamerica contract and ANR's ability to
capitalize its DAC.   Id.   A high rate of surrender would deplete
the underlying pool of assets and reduce the likelihood that the
contract will generate sufficient income in the future to offset
the DAC.   Id.

Furthermore, IL Annuity charged policyholders a 2.75%
management fee.   Therefore, for ANR to make a profit, the
underlying assets had to earn a return of at least 6.25% (the
state mandated 3.5% minimum interest guarantees plus IL Annuity's
2.75% management fee).   As stated earlier, ANR allegedly failed
to account for the statutory interest guarantees.   Compl. ¶ 13.
Investors were not informed of IL Annuity's management fee, the
state mandated interest guarantees, or even the nature of the
risk associated with the Transamerica contract until late in the
Class Period.   Compl. ¶ 15.

Plaintiffs allege that, rather than disclose the risks
associated with the Transamerica contract, ANR told investors
that it was "not directly exposed to market risk with respect to
the assets underlying the annuity reinsurance agreements ...."

Compl. ¶ 16.  ANR also assured its investors that, every quarter, it would conduct recoverability and loss recognition tests of its deferred costs to confirm that the capitalized costs would be recouped against future profits.  Id.  Plaintiffs allege that KPMG Bermuda was aware of these assurances made by ANR and also that "ANR had entirely failed even to initiate a review of the recoverability of its capitalized costs until late in the Class Period."  Id.  KPMG Bermuda nonetheless signed unqualified audit opinion reports for each of the years 1999, 2000, and 2001, indicating that it had assessed the "significant estimates made by management."  Id.  Those reports were included in ANR's 10-K's for each of those years, and investors allegedly relied on them to make investment decisions.  Compl. ¶ 28.

Once more complete disclosure was made, ANR's stock price fell from a Class Period high of $36.98 per share to $2.24 per share, and ANR was required to restate "virtually all of its SEC filings during the Class Period."  Compl. ¶ 17.  Both ANR and KPMG have expressed doubt about ANR's ability to continue as a going concern.  Id.

In a separate class action, plaintiffs sued ANR, and others, alleging fraud relating to certain inaccuracies in ANR's financial statements.  Here, plaintiffs allege that "KPMG"[2]

---

2

　　Plaintiffs often refer to KPMG US and KPMG Bermuda collectively as "KPMG," however for the purposes of this ruling the Court will identify each entity specifically.  Where the plaintiff does not identify a specific KPMG entity, the Court construes those allegations as against KPMG Bermuda, as KPMG

audited ANR's financial statements for the years 1999, 2000, and
2001, and consented to the use of its audit opinions in ANR's
public filings and Annual Reports.  The plaintiffs further claim
that KPMG Bermuda was aware that ANR's liabilities were
understated and its profits overstated and that its audit reports
constitute material misstatements disseminated to the market.
The plaintiffs allege that ANR violated GAAP and that KPMG
Bermuda failed to perform the audits in accordance with Generally
Accepted Auditing Standards ("GAAS").  The defendant is alleged
to have violated § 10(b) of the Securities Exchange Act of 1934
(the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

In the audit opinions, which are attributed to KPMG Bermuda,
KPMG Bermuda represented that ANR's financial statements were
"fairly presented in accordance with GAAP."  Compl. ¶ 13.  The
plaintiffs allege that there were several "red flags" that should
have alerted KPMG to ANR's alleged GAAP violations in its
financial reporting, and that KPMG should have required a
restatement by ANR or withdrawn its earlier audit opinions.
Compl. ¶¶ 79(I), 117, 250.

KPMG Bermuda now moves the Court for a dismissal of the
Amended Complaint because it claims the plaintiffs failed to
plead scienter or a material misstatement made by KPMG Bermuda,
both of which are required to state a claim under § 10(b).  For

---

Bermuda was ANR's primary auditor.

the reasons outlined below, KPMG Bermuda's motion to dismiss is
denied.

## LEGAL STANDARD

"A Rule 12(b)(6) motion to dismiss tests only the adequacy
of the complaint. <u>United States v. City of New York</u>, 359 F.3d
83, 87 (2d Cir. 2004). Thus, such a motion can be granted only
if it appears beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to relief."
<u>Foncello v. U.S. Dept. Of the Army</u>, 2005 WL 2994011 (D. Conn.
Nov. 7, 2005). "[W]hile bald assertions and conclusions of law
will not suffice to state a claim, the district court, before
granting a motion to dismiss, must accept as true all of the
factual allegations set out in plaintiff's complaint, draw
inferences from those allegations in the light most favorable to
plaintiff, and construe the complaint liberally." <u>Tarshis v.
Riese Org.</u>, 211 F.3d 30 (2d Cir. 2000) (internal citations
omitted).

## DISCUSSION

In order to properly plead a violation of section 10(b) of
the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule
10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, the
plaintiffs must allege (1) a misrepresentation or omission, (2)
of material fact, (3) made with scienter, (4) upon which
plaintiffs relied, (5) which proximately caused plaintiff's

injuries.  <u>In re Oxford Health Plans, Inc. Sec. Litig.</u>, 51

F.Supp.2d 290, 293-94 (S.D.N.Y. 1999).  In its motion to dismiss

the amended complaint, KPMG Bermuda claims that the plaintiffs

failed to allege that KPMG Bermuda made a material

misrepresentation or that it made any such representation with

the required element of scienter.

## I.    **SCIENTER**

KPMG Bermuda claims that the plaintiffs have failed

adequately to plead scienter.  A "[p]roper pleading of the

scienter element under Rule 9(b) and the PSLRA requires that the

plaintiffs state with particularity facts giving rise to a strong

inference that the defendant acted with the required state of

mind."  <u>In re Oxford Health</u>, 51 F.Supp.2d at 294 (S.D.N.Y. 1999)

(internal quotation omitted), citing 15 U.S.C. § 78u-4(b)(2).  To

satisfy this requirement, the Second Circuit has held that a

plaintiff must either (1) "allege facts showing that the

defendant had both motive and opportunity to commit fraud, or (2)

... allege facts that constitute strong circumstantial evidence

of conscious misbehavior or recklessness.  <u>Id.</u>, citing <u>Press v.</u>

<u>Chemical Investment Services, Corp.</u>, 166 F.3d 529, 537-38 (2d

Cir. 1999).

"Reckless conduct is, at the least, conduct which is highly

unreasonable and which represents an extreme departure from the

standards of ordinary care ...."  <u>In re Oxford</u>, 51 F.Supp.2d at

295.  "An egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of ... recklessness."  Id.  On the other hand, the "mere misapplication of accounting principles by an independent auditor does not establish scienter."  Zucker v. Sasaki, 963 F.Supp. 301, 307 (S.D.N.Y. 1997), citing SEC v. Price Waterhouse, 797 F.Supp. 1217, 1240 (S.D.N.Y. 1992).  Allegations of misstatements of a great magnitude, specific GAAP and GAAS violations, and various "red flags," taken together, have been found sufficient to support an inference that a particular audit "amounted to no audit at all or an egregious refusal to see the obvious or investigate the doubtful."  Zucker, 963 F. Supp. at 296, quoting In re First Merchants Acceptance Corp. Sec. Litig., 1998 WL 781118, at *11 (N.D. Ill. Nov. 4, 1998).  While allegations of GAAP and GAAS violations alone are generally not sufficient to create a strong inference of reckless behavior, where plaintiffs have alleged facts showing "that there were numerous red flags that KPMG must have been aware of, if it were conducting any kind of audit," reckless conduct can be, and has been, inferred.  In re Oxford Health Plans, Inc., 51 F.Supp.2d at 295.

Here, plaintiffs are alleging that KPMG Bermuda's audit "amounted to no audit at all" because, in part, the violations of GAAP and GAAS by ANR and KPMG Bermuda, respectively, involved "the most basic and simple accounting principles."  This includes

10

ANR's failure properly to account for minimum interest guarantees
and significant losses "on a contract that failed to earn
investment returns sufficient to offset costs."  Plaintiffs
allege that ANR only once reported returns on the Transamerica
contract exceeding 6.25%, the minimum amount necessary to offset
the costs of minimum interest guarantees and IL Annuity's
management fee, and it was only able to report this level of
returns because of an unusually large liquidation of the
underlying assets shortly before the reporting date.
Nevertheless, ANR continued to report predicted returns of up to
10% on the Transamerica contract.  This, allegedly, should have
alerted KPMG Bermuda to the possibility that ANR's financial
statements were being manipulated.

Repeated restatements can also raise an inference of
scienter.  Here, ANR allegedly restated almost every financial
statement issued during the Class Period.  Compl. ¶ 214.  Because
of its alleged failure properly to recognize ANR's liabilities to
policyholders and the associated expenses for these liabilities,
ANR falsely reported profits throughout most of the Class Period
when it should have reported losses.  Compl. ¶ 215.

ANR's alleged GAAP violations, which KPMG Bermuda failed to
recognize, include the misstatement of "expenses for paid and
accrued policyholder obligations and for the amortization of DAC,
as well as the net income attributable to the Transamerica

11

contract."  Compl. ¶ 218.  The plaintiffs allege that "ANR's
recorded liability should have been at least the amount then due
to the policyholder on the financial reporting date, if he chose
to surrender his policy, which would necessarily include the
amount due upon surrender for interest as required by state law."
Compl. ¶ 231.  ANR, however, allegedly failed to record its
liabilities for state mandated minimum interest guarantees.  This
failure, and others, "violated GAAP and materially inflated ANR's
income, and thus its stock price, by understating its expenses."
Compl. ¶ 234.

        ANR also failed adequately to disclose its Funds Withheld at
Interest asset and to segment its accounting for its annuity
business.  Id.  ANR allegedly failed to disclose all of the risks
associated with the Transamerica contract, specifically the
presence of embedded derivatives and the overall dependence on
the equity markets for profitability.  In fact, it allegedly
"represented to investors that there was virtually no market risk
associated with its Funds Withheld at Interest," a representation
that plaintiffs allege was false and a violation of GAAP.  Compl.
¶ 239.  Plaintiffs allege that GAAP required ANR to report its
financial results by segments, but, until the first quarter of
2002, ANR failed to do so.  Compl. ¶ 235.

        Plaintiffs allege that, despite these and other GAAP
violations, KPMG Bermuda nonetheless certified ANR's 1999, 2000,

and 2001 financial statements.  Compl. ¶ 242.  Further, KPMG
Bermuda represented that its audit examination was conducted in
accordance with GAAS, an assertion that plaintiffs claim
constitutes a material misstatement.  Id.  KPMG Bermuda either
knew that this representation was false, or was reckless in
ignoring that fact, because GAAS was violated in many respects.
Id.  For instance, KPMG Bermuda allegedly failed to collect
"information critical to KPMG's audit," but declined to attach a
qualification to its audit opinion.  Compl. ¶ 242(a).  GAAS
proscribes the issuance of an unqualified audit report "where an
auditor is unable to obtain sufficient competent evidential
matter to perform necessary audit procedures."  Id.

KPMG Bermuda also allegedly failed to consider certain
"inherent risks that the financial statements contained material
misstatements (whether caused by error or fraud), and the risks
that it would not 'detect' such misstatements."  Compl. ¶ 243.
For example, KPMG Bermuda should have considered the following,
as well as other, high risk factors: (1) concentration of
investments in a single investee, (2) substantial unrealized
investment losses, (3) the acceptance of additional investment
risk to support high interest-crediting rates, (4) significant
amounts of investments in derivatives and structured securities,
(5) lack of conservatism in determining benefit liabilities, (6)
sensitivity of benefit liabilities to management estimates, (7)

13

actual expenses that are substantially higher than those assumed
in pricing, and (8) significant increases in surrenders or lapses
of contracts, negative spreads on investment contracts.  Compl. ¶
244.  These risk factors, plaintiffs allege, should have
compelled KPMG Bermuda to "intensely test ANR's policyholder
reserves and its estimates."  Compl. ¶ 245.  Under GAAS,
plaintiffs claim, KPMG Bermuda was required to collect evidence
pertaining to each of these factors and use that evidence to
evaluate ANR's estimates.  Id.  KPMG Bermuda was either reckless
in failing to collect the evidence necessary to make this
evaluation or else it knew that ANR's financial statements were
misleading.  Id.

Furthermore, under GAAS, KPMG Bermuda had a responsibility
to test ANR's assumptions and reserves with respect to the
recoverability of the DAC because ANR's actual experience with
the Transamerica contract differed greatly from its original
positive assumptions.  Compl. ¶ 246.  "Instead, KPMG recklessly
failed even to obtain evidence of the amounts necessary to begin
performing these required tests."  Compl. ¶ 247.

Plaintiffs allege that KPMG Bermuda ignored several "red
flags" before representing that ANR's financial statements were
presented fairly in accordance with GAAP.  Compl. ¶ 250.  Some of
the alleged red flags are as follows:

> (1) the failure of ANR's Funds Withheld at Interest to
> perform at a level consistent with ANR's assumptions

14

used to price the Transamerica contract and to
determine the recoverability of its costs; (2)
skyrocketing surrender rates exceeding the pricing
assumptions; (3) ANR's failure to adjust its
assumptions for its actual experience and then timely
conduct loss recoverability testing based upon the
current and correct factors; (4) the startling jump in
the yield purportedly earned on the Funds Withheld at
Interest in the fourth quarter of 2000 (which suggested
that policyholder statutory reserve requirements had
been met only by "realizing" capital gains through
selectively liquidating investments that had
appreciated); (5) ANR's failure to reserve for and
credit policyholder accounts for interest owed them
under state law, and its failure even to recognize an
expense for amounts actually paid to policyholders upon
surrender for these minimum interest guaranteed
payments ... (7) ANR's failure to recognize as an
expense the 2.75% fees charged by IL Annuity; (8) ANR's
blatantly false claim to be free from market risk when
the bulk of its assets were invested in convertible
bonds (and the profitability of the Transamerica
contract thereby depended on the performance of the
derivative stock) ....

Compl. ¶ 250(d).

Plaintiffs' allegations in the Amended Complaint, taken

together, support an inference of recklessness on the part of

KPMG Bermuda during the audits of ANR.  At this stage in the

litigation, the plaintiffs have made sufficient factual

allegations to survive KPMG Bermuda's motion to dismiss.

## II.   **MATERIAL MISSTATEMENTS BY KPMG BERMUDA**

"At the pleading stage, a plaintiff satisfies the

materiality requirement of Rule 10b-5 by alleging a statement or

omission that a reasonable investor would have considered

significant in making investment decisions." Ganino v. Citizens

Utilities Co., 228 F.3d 154, 161-62 (2d Cir. 2000), citing Basic

Inc. v. Levinson, 485 U.S. 224, 231 (1988) (adopting the standard
in TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976),
for § 10(b) and Rule 10b-5 actions); Glazer v. Formica Corp., 964
F.2d 149, 154-55 (2d Cir. 1992).  "[T]here must be a substantial
likelihood that the disclosure of the omitted fact would have
been viewed by the reasonable investor as having significantly
altered the 'total mix' of information made available."  Ganino,
228 F.3d at 161-62, quoting Basic, 485 U.S. at 231-32.

    The plaintiffs have alleged a series of GAAP violations by
ANR and GAAS violations by KPMG Bermuda.  KPMG Bermuda
represented in its audit opinions, which were included in ANR's
publicly filed financial statements, that its audits were
conducted in accordance with GAAS and that, in its opinion, ANR's
financial statements fairly represented its financial position
and were created in accordance with GAAP.  These statements by
KPMG Bermuda are allegedly false and material, and were relied
upon by investors making their investment decisions.  Thus,
plaintiffs have adequately pled the existence of material
misrepresentations made by KPMG Bermuda.

    Further, plaintiffs have pled sufficient facts under Wright
v. Ernst & Young, 152 F.3d 169 (2d Cir. 1998), to establish the
public's awareness of KPMG Bermuda's role in the ANR audits.
Under Wright, KPMG Bermuda, as ANR's primary auditor, may be held
liable for the misstatements contained in ANR's public statements

16

where KPMG Bermuda made a related misstatement and the public was aware of KPMG Bermuda's role in reviewing and assisting in the drafting of ANR's public statements.

## **CONCLUSION**

The plaintiffs have sufficiently alleged material misstatements made by KPMG Bermuda and concomitant facts supporting an inference of scienter.  Therefore, KPMG Bermuda's Motion to Dismiss (Doc. # 125) is hereby DENIED.


SQ ORDERED


ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this 30 day of August, 2006.

17