# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHERRY SCHNALL, Individually and On Behalf of All Others Similarly Situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ANNUITY AND LIFE RE (HOLDINGS), LTD., XL CAPITAL, LTD., LAWRENCE S. DOYLE, FREDERICK S. HAMMER, JOHN F. BURKE, WILLIAM W. ATKIN, BRIAN O'HARA, AND MICHAEL P. ESPOSITO, JR., )<br><br>Defendants. ) | Civil Action No. 02-CV-2133 (EBB) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**SCOTT + SCOTT, LLC**
David R. Scott (Juris No. 16080)
Beth Kaswan (Juris No. 21415)
Erin Green Comite (Juris No. 24886)
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Telephone:     (860) 537-5537
Facsimile:     (860) 537-4432

**MILBERG WEISS & BERSHAD LLP**
Barry A. Weprin (Juris No. 06136)
Ann E. Gittleman
One Pennsylvania Plaza
New York, NY  10119
Telephone:     (212) 594-5300
Facsimile:     (212) 868-1229

*Co-Lead Counsel for Lead Plaintiffs*

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

I.      FACTUAL HISTORY AND PROCEDURAL BACKGROUND ......................... 2

ARGUMENT ............................................................................................................... 6

I.      APPLICABLE LEGAL STANDARDS ............................................................... 6

II.     THE PROPOSED CLASS SATISFIES THE REQUIREMENTS
        OF RULE 23(a) .................................................................................................... 8

        A.      The Proposed Class Is So Numerous That Joinder of All
                Members Is Impracticable ........................................................................ 8

        B.      Common Questions of Law and Fact Exist With Respect To
                the Class Representatives and Class Member Claims ............................... 9

        C.      The Claims Of The Class Representatives Are Typical Of
                The Claims Of The Proposed Class ......................................................... 11

        D.      The Class Representatives Will Fairly and Adequately Protect
                the Interests of the Class ......................................................................... 13

III.    THIS CASE SATISFIES THE REQUIREMENTS OF RULE 23(b)(3) .............. 15

        A.      Common Questions of Law and Fact Predominate .................................. 15

        B.      Class Treatment Is Superior to Other Available Methods For the
                 Fair and Efficient Adjudication of this Controversy ............................... 19

CONCLUSION ........................................................................................................... 22

TABLE OF AUTHORITIES

Page

**CASES**

*Abdul-Malik v. Coombe*,
    No. 96-1021, 1996 U.S. Dist. LEXIS 18203 (S.D.N.Y. Dec. 5, 1996) ...........11

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)......................................................................................2

*In re Amerifirst Sec. Litig.*,
    139 F.R.D. 423 (S.D. Fla. 1991).....................................................................18

*In re Arakis Energy Corp. Sec. Litig.*,
    No. 95-3431, 1999 U.S. Dist. LEXIS 22246 (E.D.N.Y. Apr. 23, 1999) .........16

*In re Avon Sec. Litig.*,
    No. 91-2287, 1998 U.S. Dist. LEXIS 18642 (S.D.N.Y. Nov. 19, 1998).........10

*In re Baldwin-United Corp. Litig.*,
    122 F.R.D. 424 (S.D.N.Y. 1986) ....................................................................12

*Barnett v. Experian Info. Solutions*,
    No. 2:00-CV-174, 2004 U.S. Dist. LEXIS 28855
    (E.D. Tex. Sept. 30, 2004) ........................................................................2, 14

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)......................................................................6, 13, 16, 17

*Berrios v. Sprint Corp.*,
    No. 97-0081, 1997 U.S. Dist. LEXIS 19259 (E.D.N.Y. Nov. 13, 1997).........20

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) .............................................................. *passim*

*Bresson v. Thomson McKinnon Sec. Inc.*,
    118 F.R.D. 339 (S.D.N.Y. 1988) ....................................................................21

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ...............................................................18, 19

*Ceres Partners v. GEL Assocs.*,
    918 F.2d 349 (2d Cir. 1990)...........................................................................17

*Cheney v. Cyberguard Corp.*,
    213 F.R.D. 484 (S.D. Fla. 2003) ..................................................................18

*Civic Ass'n of the Deaf v. Giuliani*,
    915 F. Supp. 622 (S.D.N.Y. 1996)..................................................................8

*In re Crazy Eddie Sec. Litig.*,
    135 F.R.D. 39 (E.D.N.Y. 1991) ....................................................................12

*Cutler v. Perales*,
    128 F.R.D. 39 (S.D.N.Y. 1989) ......................................................................9

*Daniels v. City of N.Y.*,
    198 F.R.D. 409 (S.D.N.Y. 2001) ..................................................................13

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992)...........................................................7, 11, 13

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
    89 F.R.D. 87 (S.D.N.Y. 1981) ......................................................................12

*Eisenberg v. Gagnon*,
    766 F.2d 770 (3d Cir. 1985)............................................................................6

*Epifano v. Boardroom Bus. Prods., Inc.*,
    130 F.R.D. 295 (S.D.N.Y. 1990) ....................................................................7

*In re Frontier Ins. Group Sec. Litig.*,
    172 F.R.D. 31 (E.D.N.Y. 1997) ......................................................................9

*Ganino v. Citizens Utilities Co.*,
    228 F.3d 154 (2d Cir. 2000)............................................................................9

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990)............................................................................7

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    114 F.R.D. 48 (S.D.N.Y. 1987) ....................................................................13

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)............................................................2, 7, 10, 22,

*In re IPO Sec. Litig.*,
    No. 05-3349, 2006 U.S. App. LEXIS 29859 (2d Cir. Dec. 5, 2006)...........7, 16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
210 F.R.D. 476 (S.D.N.Y. 2002) .................................................................7, 8

*Kennedy v. Tallant*,
710 F.2d 711 (11th Cir. 1983) ..........................................................................6

*Korn v. Franchard Corp*,
456 F.2d 1206 (2d Cir. 1972).........................................................................20

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001) ..................................................................18

*In re Lilco Sec. Litig.*,
111 F.R.D. 663 (E.D.N.Y. 1986) ..............................................................15, 16

*Maywalt v. Parker & Parsley Petroleum Co.*,
147 F.R.D. 51 (S.D.N.Y. 1993) ........................................................................7

*McNamara v. Bre-X Minerals, Ltd.*,
No. 97-159, 2003 U.S. Dist. LEXIS 25641 (E.D. Tex. Mar. 31, 2003) ...........9

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) ....................................................................15, 16

*In re NASDAQ Market-Makers Antitrust Litig.*,
172 F.R.D. 119 (S.D.N.Y. 1997) ....................................................................11

*Oscar Gruss & Son v. Geon Indus., Inc.*,
75 F.R.D. 531 (S.D.N.Y. 1977) ......................................................................12

*In re Oxford Health Plans, Inc. Sec. Litig.*,
191 F.R.D. 369 (S.D.N.Y. 2000) .............................................................8, 9, 13

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ....................................................................16

*In re Ribozyme Pharms., Inc. Sec. Litig.*,
209 F. Supp. 2d 1106 (D. Colo. 2002)............................................................18

*Schnall v. Annuity & Life Re (Holdings), Ltd.*,
02-cv-2133, 2004 U.S. Dist. LEXIS 1601 (D. Conn. Feb. 4, 2004).............3, 4

*Schnall v. Annuity & Life Re (Holdings), Ltd.*,
02-cv-2133, 2004 U.S. Dist. LEXIS 2859 (D. Conn. Feb. 22, 2004)................3

*Schnall v. Annuity & Life Re (Holdings), Ltd.*,
   02-cv-2133, 2004 U.S. Dist. LEXIS 4643 (D. Conn. Mar. 9, 2004) ............3, 4

*Simon v. Westinghouse Elec. Corp.*,
   73 F.R.D. 480 (E.D. Pa. 1977).........................................................................21

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   No. 05-1898, 2006 U.S. Dist. LEXIS 52991
   (S.D.N.Y. Aug. 1, 2006) ..........................................................................16, 17

*Tedesco v. Mishkin*,
   689 F. Supp. 1327 (S.D.N.Y. 1988)..................................................................10

*Trief v. Dun & Bradstreet Corp.*,
   144 F.R.D. 193 (S.D.N.Y. 1992) .......................................................................9

*United States Trust Co. v. Alpert*,
   163 F.R.D. 409 (S.D.N.Y. 1995) .....................................................................14

*In re VMS Sec. Litig.*,
   136 F.R.D. 466 (N.D. Ill. 1991)........................................................................10

## STATUTES AND RULES

15 U.S.C. §§ 78j(b) ...............................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(ii)-(iii) ......................................................................1

17 C.F.R. § 240.10b-5...........................................................................................5

28 U.S.C. § 1332(d)(9) .........................................................................................1

Fed. R. Civ. P. 23(a) .............................................................................................1

Fed. R. Civ. P. 23(a)(1).........................................................................................8

Fed. R. Civ. P. 23(a)(2).........................................................................................9

Fed. R. Civ. P. 23(a)(3).......................................................................................11

Fed. R. Civ. P. 23(b)(3)....................................................................................1, 22

**MISCELLANEOUS**

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1778, at 528 (2d ed. 1986)......................................15

1 H. Newberg, *Newberg on Class Actions* § 3.15 (3d ed. 1992) ....................11, 21

# INTRODUCTION

Plaintiffs respectfully submit their Motion for Class Certification to certify Lead Plaintiffs, Communication Workers of America ("CWA") and Midstream Investments, Ltd. ("Midstream Investments") (collectively "Plaintiffs") as Class Representatives for the following class pursuant to Fed. R. Civ. P. 23 (a) and (b)(3):

> all persons and entities who purchased or otherwise acquired the securities of Annuities and Life Re (Holdings) ("ANR" or "the Company") between March 15, 2000 and February 19, 2002, inclusive, as the class period ("the Class Period") and who were damaged thereby. Excluded from the Class are KPMG in Bermuda ("the Defendant" or "KPMG"), the officers and directors of the Company and its subsidiaries, affiliates, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which KPMG has had a controlling interest.

CWA and Midstream Investments seek appointment of the law firms of Scott + Scott LLC and Milberg Weiss & Bershad LLP as Class Counsel.

Class Actions are an important part of the enforcement mechanism for private actions under the federal securities laws. Congress specifically envisioned that securities fraud actions could and should proceed as class actions when it passed the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See, e.g.,* 15 U.S.C. § 78u-4(a)(3)(B)(ii)-(iii)(I).[1] The fact that Congress expressly integrated the use of the class device into the enforcement mechanism of the PSLRA "is an indication that Congress views the availability of the class action procedure as an integral part of the enforcement regime." *See, e.g., Barnett v. Experian Info. Solutions*, No. 2:00-CV-174, 2004 U.S. Dist. LEXIS 28855, at *14 (E.D. Tex. Sept. 30, 2004). Moreover, the Supreme Court has

---

[1] Further, when Rule 23 was substantially revised in 2003, there were no changes that negated the availability of the class device for PSLRA actions, and, when Congress passed extensive changes regarding class actions with the Class Action Fairness Act of 2005, securities fraud actions were specifically excluded from those changes. *See* 28 U.S.C. §1332(d)(9).

observed that securities fraud class actions are the prototypical cases suited for class treatment under Rule 23(a) and (b)(3). *Amchem Prods. v. Windsor*, 521 U.S. 591, 624-625 (1997).

The Second Circuit has long recognized that a class action may, in many cases, be the only viable means for shareholders to obtain a meaningful recovery. *Green v. Wolf Corp.,* 406 F.2d 291, 296 (2d Cir. 1968). As set forth more fully below, this case readily meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, making it a prime candidate for class treatment. Accordingly, the proposed Class Representatives' Motion for Class Certification should be granted.

## I.    FACTUAL HISTORY AND PROCEDURAL BACKGROUND

*Schnall v. ANR*, No. 02-cv-2133 ("Schnall Action"), was commenced by Plaintiffs on December 4, 2002 against ANR, and its officers and directors. Dkt. No. 1. On March 29, 2003, this Court appointed Plaintiffs, CWA and Midstream Investments as Lead Plaintiffs. Dkt. No. 33. On July 11, 2003, the Plaintiffs filed a consolidated amended class action complaint ("the Schnall Complaint") against ANR, a Bermuda corporation which sells annuity and life reinsurance products, XL Capital, Ltd., owner of between 11.1% and 12.9% of ANR stock, and ANR officers and directors, alleging violations of the securities laws, which injured purchasers of ANR securities during the Class Period. Dkt. No. 45.

On September 20, 2003, ANR filed its answer to the Schnall Complaint, denying any liability to Lead Plaintiffs and the Class. On October 3, 2003, Individual Defendants Burke, Hammer, and Atkin each filed a separate motion to dismiss the Complaint. In addition, XL Capital and Individual Defendants O'Hara and Esposito (the "XL Capital Defendants") together filed a motion to dismiss on October 3, 2003.

On October 23, 2003, the Plaintiffs filed a related action, Civil Action No. 03-CV-1826, (the "KPMG Action") with a separate complaint (the "Complaint")[2] against KPMG Bermuda and KPMG LLP USA, alleging that they had violated the securities laws through their conduct as ANR's auditor.  On January 6, 2004, the Court granted Lead Plaintiffs' motion to consolidate the KPMG Action with the Schnall Action.

On November 19, 2003, Plaintiffs filed opposition papers to all the outstanding defendants' motions to dismiss the Schnall Complaint.  Dkt. No. 83-84.  In three separate opinions, Judge Goettel of this Court, denied defendants' motions in the Schnall Action in its entirety. *See Schnall v. Annuity & Life Re (Holdings), Ltd.*, 02-cv-2133 (GLG), 2004 U.S. Dist. LEXIS 1601 at *26 (D. Conn. Feb. 4, 2004) ("*Schnall I*"); *Schnall v. Annuity & Life Re (Holdings), Ltd.*, 02-cv-2133 (GLG), 2004 U.S. Dist. LEXIS 2859 at *32 (D. Conn. Feb. 22, 2004) ("*Schnall II*");  *Schnall v. Annuity & Life Re (Holdings), Ltd.*, 02-cv-2133 (GLG), 2004 U.S. Dist. LEXIS 4643, at *31 (D. Conn. Mar. 9, 2004) ("*Schnall III*").  Judge Goettel stated that given the nature of the falsehoods, defendants' knowledge of the industry, and the size of the Transamerica contract, there was a strong inference that the defendants acted knowingly or recklessly when they approved ANR's financial statements.  *See Schnall I*, 2004 U.S. Dist. LEXIS 1601, at *22-23; *Schnall II*, 2004 U.S. Dist. LEXIS 2859, at *25; *Schnall III*, 2004 U.S. Dist. LEXIS 4643, at *24-25.  Judge Goettel rejected the claims of the outside directors, and instead held them responsible for the contents of ANR's financial statements.  Judge Goettel highlighted the industry expertise of these defendants and the interrelationships between themselves,

---

[2]  References to paragraphs of the Complaint are made herein as "¶ __" and "¶¶ ___".

3

ANR, XL Capital, and Inter-Atlantic.  *See Schnall I*, 2004 U.S. Dist. LEXIS 1601, at *12-13; *Schnall III*, 2004 U.S. Dist. LEXIS 4643, at *15-18.

Following the appointment of CWA and Midstream Investments as Lead Plaintiffs on March 29, 2003, Lead Plaintiffs conducted an extensive investigation in the Schnall case, without the benefit of formal discovery under the Federal Rules.  Lead Plaintiffs examined all of ANR's publicly-filed financial statements and analyst conference calls.  Lead Plaintiffs contacted insurance regulators in several states to obtain information about ANR's domestic reinsurance companies.  To assist with their analysis of these documents, Lead Plaintiffs enlisted the aid of a forensic accountant, a consulting actuary, and an expert in insurance liabilities.  Lead Plaintiffs also consulted with a Bermuda attorney regarding Bermuda law and its affect on this action.

In or about October 2003, ANR's counsel initiated settlement discussions in the Schnall Action.  Following extensive negotiations, a settlement was reached on October 6, 2004, and the Court entered an Amended Order preliminarily approving the Schnall Action Settlement for $16.5 million and directing Plaintiffs' counsel to mail the Notice and the Proof of Claim and Release form to potential class members. [3]

On January 21, 2005, this Court issued an order to finally certify the class for settlement purposes, approved Milberg Weiss & Bershad LLP and Scott + Scott LLC as

---

[3]    The affidavit of Barbara Heald, Director of Consumer Operations of The Garden City Group, Inc. states that the Notice of Pendency of Class Action and Proposed settlement of the Schnall Action was mailed to approximately 16,700 potential class members.  Dkt. No. 188 Ex. 1 at 3.

co-lead counsel and approved the final settlement in the Schnall Action.[4]  Specifically, this Court held:

> [T]he prerequisites for a class action under Federal Rules of Civil Procedure 23 (a) and (b)(3) have been satisfied in that: (a) the number of Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the Class Representatives are typical of the claims of the Class they seek to represent; (d) the Class Representatives have and will fairly and adequately represent the interests of the Class; (e) the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*See*, Kaswan Decl., Ex. A at 2.

The instant Complaint against KPMG alleges violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act")[5] and Rule 10b-5 promulgated thereunder.[6]  More specifically, the Complaint alleges, *inter alia*, that Defendants audited ANR's financial statements for the years 1999, 2000, and 2001 and consented to the use of its audit opinions in ANR's public filings and annual reports. As a result, the Defendants were aware that ANR's liabilities were understated and its profits overstated and that its audit report contained material misstatements disseminated to the market. ANR violated generally accepted accounting principles ("GAAP"), and KPMG failed to conduct its audit in accordance with generally accepted auditing standards ("GAAS").

Thus, KMPG made untrue statements of material fact and/or omitted to state material facts in the Company's SEC filings during the Class Period, because, in

---

[4]  This Court's Order certifying the class for settlement purposes is attached as Exhibit A to the Declaration of Beth Kaswan ("Kaswan Decl.").

[5]  15 U.S.C. § 78j(b)

[6]  17 C.F.R. § 240.10b-5.

KPMG's audit opinions for ANR, they represented that "ANR's financial statements were fairly presented in accordance with GAAP." ¶ 13. Further, there were several "red flags" that were present that should have alerted Defendants to ANR's alleged GAAP violations in its financial reporting, and KPMG should have required a restatement from ANR or withdrawn its earlier audit opinions. ¶¶ 79(i), 117, 250.

KPMG knowingly and/or recklessly permitted ANR to use improper accounting practices and to make misleading and inadequate disclosures, all in violation of GAAP (and SEC reporting requirements), to falsely inflate ANR's reported earnings and to underreport ANR's policyholder liabilities during the Class Period. ¶ 217. Even though KPMG had a continuing obligation to require ANR to correct its materially misstated financial statements (or to withdraw its unqualified opinions), ANR did not restate its Class Period financial statements for the matters described herein until March 21, 2003 -- and then the restatement was only done upon the SEC's discovery of the wrongful accounting. *Id*.

## ARGUMENT

## I.    APPLICABLE LEGAL STANDARDS

By providing a single forum in which to litigate the same or similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) ("[T]he effectiveness of the securities laws may depend in large measure on the application of the class action device.")(citation omitted); *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). The important role that Rule 23 plays in securities actions is well established. *See, e.g.*, *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Courts

in the Second Circuit have consistently held that class actions are appropriate for cases alleging violations of the federal securities laws.[7]  Indeed, courts have stressed that, "in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward." *Blech*, 187 F.R.D. at 102.  *See also, In re Indep. Energy Holdings PLC Sec. Litig*., 210 F.R.D. 476, 479 (S.D.N.Y. 2002). Rule 23 is, therefore, broadly structured so as to facilitate certification of class actions.

A plaintiff seeking class certification must meet all four requirements of Rule 23(a), as well as one of the subsections of Rule 23(b).  *In re IPO Sec. Litig.*, No. 05-3349, 2006 U.S. App. LEXIS 29859 at *24 (2d Cir. Dec. 5, 2006); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir. 1992).  But the Second Circuit has also stressed that, "[i]n light of the importance of the class action device in securities fraud suits, these factors are to be construed liberally."  *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir. 1990).  As elaborated herein, the four requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – as well as the predominance and superiority requirements of Rule 23(b)(3), are all readily satisfied in this case.  And since certification of a class is "particularly appropriate" where the complaint alleges violations

---

[7]   *Green* 406 F.2d at 296-97 (noting that Rule 23 "illustrates the need for an effective use of class actions in securities act litigation"); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("Class action treatment of related claims is particularly appropriate when plaintiffs seek redress for violations of the securities laws.  It is well recognized that private enforcement of these laws is a necessary supplement to government regulation."); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 54 (S.D.N.Y. 1993) (noting a "preference for class certification in securities cases" as certification is important "for small securities holders located throughout the country"); *Epifano v. Boardroom Bus. Prods., Inc.*, 130 F.R.D. 295, 298 (S.D.N.Y. 1990) ("There is a strong public policy in favor of private enforcement of the nation's securities laws. A class action is both an effective and appropriate method for resolving securities law claims.") (citations omitted).

of the securities laws, this Court should not hesitate to certify the class again, as it previously did in the Schnall Action. *See* Kaswan Decl., Ex. A; *Blech*, 187 F.R.D. at 102.

Plaintiffs allege that all members of the proposed Class suffered damages at the hands of the same Defendant, based on the same misstatements and/or omissions. The propriety of class certification is supported by the facts establishing KPMG's fraudulent course of conduct, as stated in detail in the Complaint, by the expert declaration of Jane D. Nettesheim,[8] the certifications of the proposed Class Representatives, CWS and Midstream Investments[9], previous Orders issued by the Court, and applicable law.

## II.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(A)

### A.    The Proposed Class Is So Numerous That Joinder of All Members Is Impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). This requirement does not mandate impossibility, merely difficulty or inconvenience in joining all members of a class.[10]

The proposed Class Representatives seek to represent a Class consisting of all purchasers of ANR securities from March 15, 2000 through February 19, 2002, which consists of thousands of members. This has been verified during the Schnall Action settlement, in that notices of settlement were mailed to 16,700 potential class members.

---

[8]  The Declaration of the expert, Jane D. Nettesheim is attached to Kaswan Decl., Exhibit B.

[9]  Plaintiffs' certifications are attached hereto as Exhibit C to the Kaswan Decl.

[10]  *Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 632 (S.D.N.Y. 1996); *see also Indep. Energy*., 210 F.R.D. at 479 ("Impracticability does not mean impossibility of joinder, but refers to the difficulty or inconvenience of joinder."); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("The rule does not require that joinder of all parties is impossible, only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate.").

Also, the Court may take notice of the fact that throughout the class period, ANR had 25,499,999 and 26,106,328 shares of common stock outstanding, which were actively traded on both the NYSE and the NASDAQ National Market[11], highly efficient markets for stocks nationwide.  ¶ 32; *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000).  Consequently, Defendants cannot contest numerosity in this case.

**B.    Common Questions of Law and Fact Exist With Respect To the Class Representatives and Class Member Claims**

The commonality element requires a determination that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This commonality requirement is generally considered a low hurdle that is easily surmounted because it "has been applied permissively by courts in the context of securities fraud litigation." *Blech*, 187 F.R.D. at 104.  Courts have construed the requirement liberally to mandate merely "one issue" common to class members.  *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992); s*ee also Cutler v. Perales*, 128 F.R.D. 39, 44 (S.D.N.Y. 1989) (commonality "does not mean that all issues must be identical as to each [class] member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment") (quoting *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986)).  Indeed, factual variations among class members' grievances will not defeat the commonality requirement so long

---

[11]  *McNamara v. Bre-X Minerals, Ltd.*, No. 97-159, 2003 U.S. Dist. LEXIS 25641, at *23 (E.D. Tex. Mar. 31, 2003)(numerosity requirement is "generally assumed to have been met" in class action suits involving nationally traded securities)(citations omitted); *Oxford Health*, 191 F.R.D. at 374 ("Here, because Oxford stock was traded in high volume during the class period, the precise number of class members could be, and very likely is, numbered in the thousands . . . [t]he [n]umerosity requirement is satisfied."); *In re Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) (stating that in "securities fraud actions brought against publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period") (citation omitted).

as the claims arise from a "common nucleus of operative facts."  *In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D. Ill. 1991); *Green*, 406 F.2d at 298-99.  *See also In re Avon Sec. Litig.*, No. 91-2287, 1998 U.S. Dist. LEXIS 18642, at *15 (S.D.N.Y. Nov. 19, 1998) ("Commonality does not mandate that all class members make identical claims and arguments") (citation omitted); *Tedesco v. Mishkin*, 689 F. Supp. 1327, 1334 (S.D.N.Y. 1988) ("not every question of fact or law raised need be common to every member of the class").

In this case, there are numerous legal and factual issues common to the Class. The same facts giving rise to the claims of the proposed Class Representatives also give rise to absent Class members' claims.  Absent Class members would have to prove identical facts and answer identical questions were they to pursue their claims individually.  The common legal and factual issues include, among others:

    (i)      whether the federal securities laws were violated by KPMG's acts and omissions as alleged in the Complaint;

    (ii)     whether KPMG pursued the course of conduct complained of in the Complaint;

    (iii)    whether KPMG acted with the requisite scienter in connection with their alleged violations of the securities laws;

    (iv)    whether the market price of ANR securities was artificially inflated or distorted during the Class Period because of KPMG's conduct detailed in the Complaint; and

    (v)     whether the proposed Class Representatives and the Class sustained damages, and, if so, the appropriate measure of those damages.

*See* ¶¶ 55-138.   Accordingly, as this Court found in certifying the Schnall Action settlement, there are numerous questions of law and fact common to the claims of all members of the Class.  As such, the commonality requirement of Rule 23(a)(2) is met.

### C.    The Claims Of The Class Representatives Are Typical Of The Claims Of The Proposed Class

The third requirement of Rule 23(a) is that the claims of the representative parties be typical of the claims of the class.  Fed. R. Civ. P. 23 (a)(3).  Class representatives' claims are considered typical if they are based on the same legal theory, and they arise from the same event, practice, or course of conduct that gives rise to the claims of other class members.  *See Drexel Burnham*, 960 F.2d at 291.  "Typicality under Rule 23 requires that a class representative 'have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.'"  *In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 126 (S.D.N.Y. 1997) (citing *Daniels v. Amerco*, No. 81-3801, 1983 U.S. Dist. LEXIS 18670, at *13 (S.D.N.Y. Mar. 10, 1983)).

The typicality requirement of Rule 23(a)(3), too, is liberally construed.  A plaintiff's claims satisfy the typicality requirement if, as here, they "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Drexel Burnham*, 960 F.2d at 291.  Prevailing Second Circuit authority holds that, when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class, the "typicality requirement is not defeated by minor variations in the fact patterns of individual class member's claims."  *Abdul-Malik v. Coombe*, No. 96-1021, 1996 U.S. Dist. LEXIS 18203, at *6 (S.D.N.Y. Dec. 5, 1996); 1 H. Newberg, *Newberg on Class Actions* § 3.15 (3d ed. 1992).

Because this inquiry focuses on the nature of the claims asserted, any factual difference involving the date, type, and manner of the purchase, the investor's perception of the transaction, or even the information furnished to him/her at the time of the purchase will not destroy typicality if each class member was the victim of the same material omissions and the same consistent course of conduct.  *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 428 (S.D.N.Y. 1986); *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981); *Oscar Gruss & Son v. Geon Indus., Inc.*, 75 F.R.D. 531, 534-35 (S.D.N.Y. 1977).

Here it is beyond dispute that the proposed Class Representatives' claims are typical, if not identical, to those of other Class members in that they arise out of the same uniform pattern of KPMG's conduct, including the use of deceptive accounting and auditing practices and the dissemination of materially false and misleading audit opinions certifying ANR's financial reporting.  Thus, the proposed Class Representatives stand in precisely the same position as do other purchasers of ANR stock during the Class Period. Further, the proposed Class Representatives have standing to pursue claims under the Exchange Act on behalf of all purchasers because they bought ANR shares.  Moreover, the proposed Class Representatives – like every member of the Class – have been financially injured as a result of the KPMG's actions.  Just as in *In re Crazy Eddie Securities Litigation.*, 135 F.R.D. 39, 40-41 (E.D.N.Y. 1991):

> Plaintiffs' claims are typical of those of absent class members.  They allege injury resulting from the same course of conduct that injured the absent class members and are based on the same theories of recovery.

The elements of the Class's claims will thus succeed or fail on the same evidence and legal theories.[12]  Accordingly, as this Court found in certifying the Schnall Action settlement, the claims of the proposed Class Representatives are typical, in all material respects, of the claims of all Class members, and thus satisfy the requirements of Rule 23(a)(3).

**D.    The Class Representatives Will Fairly and Adequately Protect the Interests of the Class**

Courts in this District apply a two-part test to assess adequacy of representation pursuant to Rule 23(a)(4):  (i) the plaintiff's interests must not be antagonistic to those of the remainder of the class; and (ii) the representative party's attorney must be qualified, experienced, and generally able to conduct the litigation.  *See, e.g., Oxford Health*, 191 F.R.D. at 376; *Daniels v. City of N.Y.*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001); *Drexel Burnham*, 960 F.2d at 291; *Genden v. Merrill Lynch*, *Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 53 (S.D.N.Y. 1987).

Here, both prongs of the adequacy requirement of Rule 23(a)(4) are satisfied.  To begin with, the proposed Class Representatives, CWA and Midstream Investments, are adequate because, as demonstrated above, their interests are not antagonistic to those of the Class.  Furthermore, both CWA and Midstream Investments have submitted certifications that they did not acquire ANR stock at the direction of Plaintiffs' counsel, that they are willing to serve as lead plaintiffs, and will abide by those duties.  *See*, Kaswan Decl., Ex. C.  These declarations are sufficient evidence of both CWA's and

---

[12]   In a Section 10(b) class action, such as this, the issue of individualized reliance does not create individual questions, nor impede class certification, because of the presumption created by the Supreme Court in *Basic*, 485 U.S. at 241-42 (adopting fraud-on-the-market doctrine and holding reliance on affirmative misrepresentations may be presumed). The Declaration of Jane D. Nettesheim, attached as Exhibit B to the Beth Kaswan Declaration, confirms that ANR securities traded on an efficient market so that reliance may be presumed based on the fraud-on-the-market principle. See Nettesheim Decl.¶ 61.

Midstream Investments' adequacy as class representatives. *See Barnett*, 2004 U.S. Dist. LEXIS 28855, at *12 (finding class representatives' affidavits stating their understanding and willingness to abide by duties of a class representative evidence of adequacy).

In both certifications, CWA and Midstream Investments state that they are willing to serve as representative parties on behalf of the Class. *See*, Kaswan Decl., Ex. C. They have already served as lead plaintiffs and class representatives in the Schnall Action, and understand the duties of and responsibilities as class representatives. Based upon the foregoing, it is clear that CWA and Midstream Investments are adequate class representatives.

Among the factors to be considered in determining the adequacy of counsel for the Class are the attorneys' experience, skills, acumen, resources and staff, reputation in the field, and performance in the litigation to date. *United States Trust Co. v. Alpert*, 163 F.R.D. 409, 422 (S.D.N.Y. 1995). The proposed Class Representatives retained counsel who are very experienced in class litigation. As set forth in Exhibit D to the Kaswan Declaration, filed concurrently herewith, the firm resumes for both Scott + Scott LLC and Milberg Weiss & Bershad LLP ("Co-Lead Counsel")[13], both firms have successfully prosecuted numerous securities, consumer, and other complex class actions in state and

---

[13] Milberg Weiss & Bershad LLP was appointed Co-Lead Counsel by this Court's March 29, 2003, Order (Dkt. No. 33). As counsel previously informed the Court, Milberg Weiss and two of its partners have been indicted. One of those partners has resigned and the other is on leave. The indictment alleges that, in certain specific cases, fees awarded to Milberg Weiss were improperly shared with three individuals who had served as class plaintiffs. Milberg Weiss denies that it engaged in any misconduct, intends to fight the charges, and expects to be fully vindicated. Moreover, the Milberg Weiss firm takes the position that: (1) the indictment's allegations, besides being unproven, are entirely unrelated to this proceeding; (2) the indictment specifies the cases in which misconduct allegedly took place; this case is not among them; and (3) the attorneys litigating this matter have not been accused of any wrongdoing. It should also be noted that the plaintiffs in this matter do not include any of the three individuals who are alleged in the indictment to have received improper compensation for serving in that role.

federal courts across the United States, including the prior settlement in the related

Schnall Action and have vigorously litigated this case for more than 4 years.[14]

### III.    THIS CASE SATISFIES THE REQUIREMENTS OF RULE 23(b)(3)

Rule 23(b)(3) authorizes a class action when the court finds that questions of law

or fact common to the members of the class predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for

the fair and efficient adjudication of the controversy.

The issues of predominance and superiority are not amenable to a bright-line test.

Rather, the inquiry under this subdivision is whether class certification will ensure

economies of time and money by allowing a few representatives to proceed on behalf of a

larger whole, thereby making a class action the most efficient method of proceeding.  *In

re Lilco Sec. Litig.*, 111 F.R.D. 663, 668 (E.D.N.Y. 1986).  The facts of this case plainly

satisfy these criteria.

### A.    Common Questions of Law and Fact Predominate

The predominance requirement is generally satisfied where "common questions

represent a significant aspect of the case and they can be resolved for all members of the

class in a single adjudication . . . ."  7A Charles Alan Wright, Arthur R. Miller & Mary

Kay Kane, *Federal Practice and Procedure* §1778, at 528 (2d ed. 1986).  In comparing

common issues with those that are individualized, the court should not limit its inquiry to

a mere counting of issues; rather the court should weigh the issues and identify those that

are significant if not pivotal.  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626

---

[14]   Further information regarding Co-Lead Counsel's qualifications may be found in the contents of their
websites:  www.scott-scott.com; and www.milbergweiss.com.

(5th Cir. 1999). If most, but not necessarily all, of the significant liability issues are common to the class, then the predominance requirement will be met. *Id.*

Further, "[c]ourts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 206 (S.D.N.Y. 1995) (quoting *Dura-Bilt*, 89 F.R.D. at 93). As a result, securities fraud cases typically satisfy this requirement because the allegations of defendant's liability to the entire class will be premised on a common course of conduct, even where individualized proof of damages may be required. *See Lilco*, 111 F.R.D. at 668; *In re Arakis Energy Corp. Sec. Litig.*, No. 95-3431, 1999 U.S. Dist. LEXIS 22246, at *37 (E.D.N.Y. Apr. 23, 1999) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues").

The court must conduct a rigorous analysis, but that analysis must be limited to what is necessary to determine whether the requirements of Rule 23 are met. *See IPO Sec. Litig.*, 2006 U.S. App. LEXIS 29859 at *24. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* No. 05-1898, 2006 U.S. Dist. LEXIS 52991, at *13 (S.D.N.Y. Aug. 1, 2006). Here, Plaintiffs are entitled to a class-wide presumption of reliance under the fraud-on-the-market principle endorsed by the Supreme Court in *Basic,* 485 U.S. at 246. ¶¶ 266-271. The Nettesheim Declaration demonstrates that the fraud-on-the-market principle is applicable in this case.

In a Rule 10b-5 action involving a public company such as ANR, whose shares were traded in an open, well-developed market, it is presumed that: (a) the alleged misrepresentations, so long as they are material, will inflate the value of the Company's shares; and (b) Plaintiffs and all members of the Class relied upon the integrity of the market for those shares. *Basic,* 485 U.S. at 241; *Ceres Partners v. GEL Assocs.*, 918 F.2d 349, 360 (2d Cir. 1990).

The District Court in *Teamsters,* 2006 U.S. Dist. LEXIS 52991, recently recognized that the following factors have been used by courts to help determine whether a stock traded in an "efficient market":

> (1) the average weekly trading volume expressed as a percentage of total outstanding shares; (2) the number of securities analysts following and reporting on the stock; (3) the extent to which market makers and arbitrageurs trade in the stock; (4) the company's eligibility to file SEC registration Form S-3 (as opposed to Form S-1 or S-2); (5) the existence of empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price; (6) the company's market capitalization; (7) the bid-ask spread for stock sales; and (8) float, the stock's trading volume without counting insider-owned stock.

*Id*. at *22 (citing *Cammer v. Bloom,* 711 F. Supp. 1264, 1286-87 (D.N.J. 1989) (the first five factors) and *Krogman v. Sterritt,* 202 F.R.D. 467, 477-78 (N.D. Tex. 2001) (the last three factors)). This list is not exhaustive, not all factors are required in every case, and there is no requirement for expert testimony on this issue. *Teamsters,* 2006 U.S. Dist. LEXIS 52991.

Indeed, during the Class Period, ANR's common stock was a well-known, widely followed stock, which traded on both the NYSE and NASDAQ, with over 26 million shares outstanding and an annualized turnover ratio of 149% - which is higher than the average for all stocks listed on the NYSE during the class period. *See* Nettesheim Decl.

¶¶ 15-18 .  Courts have specifically found that there is a substantial presumption that a market is efficient if the security's average weekly trading volume is one percent or more of the total outstanding shares and an even greater presumption of market efficiency if the percentage is two percent.  *Id.* ¶ 17; *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484, 499 (S.D. Fla. 2003); *Krogman*, 202 F.R.D. at 474; *Cammer*, 711 F. Supp. at 1277.

Plaintiffs' evidence demonstrates that all the indicia of an efficient market outlined in *Cammer* and *Krogman* are present here.  *See* Nettesheim Decl. ¶¶ 5-14; *see also* the Complaint.  This evidence weighs heavily in favor of a preliminary finding of an efficient market for purposes of satisfying Rule 23(b)(3) because it establishes that:

1.   The average weekly trading volume for ANR common stock during the Class Period expressed as a percentage of the total outstanding shares establishes that there was an efficient market.  *See* Nettesheim Decl. ¶¶ 15-19.

2.   ANR was followed by at least six analysts[15] during the Class Period, which collectively issued at least 90 analyst reports covering Select stock. *Id.* ¶¶ 20-22.  The fact that one analyst follows a stock, when coupled with high trading volume, establishes a presumption of market efficiency.  *See In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1114 (D. Colo. 2002).[16]

3.   Market makers and arbitrageurs traded ANR common stock.  *See* Nettesheim Decl. ¶¶ 23-31.

4.   ANR was eligible to file a SEC registration Form S-3 and did in fact file a Form S-3 on March 1, 2002 and Form S-3/A on March 28, 2002 during the Class Period.  Only corporations whose stock is actively traded and

---

[15]  ANR was followed by the following analysts during the Class Period: Prudential Securities, JP Morgan, Bear Sterns, Dresdner Kleinwort Wasserstein, Putnam Lovell Securities, and Keefe Bruyette & Woods. *See* Nettesheim Decl. ¶ 21.

[16]  Courts addressing the issue of market efficiency in the context of class certification have applied the fraud-on-the-market theory where six securities analysts issued reports on the stock during the class period. *See, e.g., In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 431 (S.D. Fla. 1991).  Thus, the greater the number of securities analysts that cover a security, the more likely that investors relied on information disseminated to the marketplace.  *Cammer*, 711 F. Supp. at 1285-87.

widely followed are allowed to use Form S-3.[17]  *See* Nettesheim Decl. ¶¶ 32-34; *Cammer*, 711 F. Supp. at 1286-87.

5.    Empirical facts exist "showing a cause-and-effect relationship between unexpected corporate events or financial releases and an immediate reaction in the stock price." Nettesheim Decl. ¶¶ 35-55.

6.    ANR's average market capitalization during the Class Period was significant, at $720 million.  Nettesheim Decl. at ¶¶ 56-57.

7.    The bid-ask spread for stock sales of ANR common stock during the Class Period was comparable to those of its competitors, which illustrates that arbitrage opportunities could be exploited, which is evidence in support of market efficiency.  Nettesheim Decl. ¶¶ 58-59.

8.    The public float for ANR common stock during the Class Period was approximately 80% of the shares outstanding, which demonstrates market efficiency.  Nettesheim Decl. ¶ 60.

The above evidence consists of empirical facts, including the Plaintiffs' well-plead allegations and the opinion of an expert on the issue of market efficiency.  Plaintiffs have offered sufficient proof to establish that ANR common stock traded in an open and efficient market during the Class Period.  Nothing more is required under *Basic* or *Eisenberg*.  Accordingly, as this Court found in certifying the Schnall Action settlement, common questions of law and fact predominate here as well.

**B.    Class Treatment Is Superior to Other Available Methods For the Fair and Efficient Adjudication of this Controversy**

Among the issues to be considered in determining whether a class action is superior to other available methods for the fair and efficient adjudication of the

---

[17]  The significance of this particular factor is underscored by the SEC's explanation of the rationales for permitting certain companies to use the Form S-3 registration statements:

This form is predicated on the Commission's belief that the market operates efficiently for these companies, *i.e.*, that the disclosures in Exchange Act reports and other communications by the registrant, such as press releases, has already been disseminated and accounted for by the market place.

SEC Securities Act Release No. 6331 (Aug. 13, 1981), as cited in *Cammer*, 711 F. Supp. at 1284-85.

controversy are: (i) the interests of individual class members in controlling the action; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the difficulties likely to be encountered in the management of a class action. *Blech*, 187 F.R.D. at 107.

First, individual members do not have an interest in controlling the action. One paramount consideration favoring certification here is that the amount of individual damages suffered by the vast majority of Class members is too small (relative to the cost of the litigation) to justify the expense of individual litigation:

> In general, securities suits such as this easily satisfy the superiority requirement of Rule 23. Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be "fair" nor an adjudication of their claims.

*Id.*; *See also Korn v. Franchard Corp*, 456 F.2d 1206, 1214 (2d Cir. 1972); *Berrios v. Sprint Corp.*, No. 97-0081, 1997 U.S. Dist. LEXIS 19259, at *6 (E.D.N.Y. Nov. 13, 1997).

Although some Class members may have suffered damages substantial enough to make bringing their own suits economically viable, this fact does not warrant a finding that Class members have an interest in individually controlling the litigation so that the action may not be certified under Rule 23(b)(3). As one commentator has noted, and as the cases cited above demonstrate, the reference in Rule 23(b)(3) to the interest of individual class members in controlling the litigation relates to the interests of most or all of the class members, rather than the interests of only a few, because if only a small

fraction of the class has an interest in controlling the litigation, their interest may be served by opting out of the suit, or by entering an appearance under Rule 23(c)(2), or by intervening. 1 H. Newberg, *Newberg on Class Actions* §4.29 (3d ed. 1992).

Second, there is no litigation concerning the controversy already commenced by members of the Class. As far as Plaintiffs are aware, all litigation arising out of KPMG's dissemination of false and misleading statements to the Class is pending in this Court. Thus, there is no evidence of any interest on the part of absent Class members in controlling the litigation. Finally, there is no evidence that the action will pose any unusual problems of manageability in the future. Without a factual basis for such a determination, speculation as to the possible unmanageability of this class action would be an inadequate basis for refusing certification. *Simon v. Westinghouse Elec. Corp.*, 73 F.R.D. 480, 487 (E.D. Pa. 1977).

It is thus clear that this securities lawsuit readily satisfies the superiority requirement of Rule 23. Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons to such an extent that the cost of pursuing individual litigation to seek recovery is simply not feasible. Under such circumstances, failure to certify a class either leaves thousands of investors with no recourse, or results in a multiplicity of scattered suits that then undermine efficient resolution of the litigation that follows. Indeed, the superiority of class actions is well established in securities cases like the one at bar, which implicate claims that cannot be litigated economically on an individual basis.[18]

---

[18]    *See Blech*, 187 F.R.D. at 107 (superiority requirement satisfied as "[m]ultiple lawsuits would be costly and inefficient" and "although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf");

As the Second Circuit has repeatedly recognized, the class action is superior to other available methods — particularly, duplicative individual lawsuits — for the fair and efficient adjudication of a controversy affecting a large number of securities holders from across the country, who are injured by violations of the federal securities laws:

> [A] class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf.

*Green*, 406 F.2d at 296.  Given these considerations, as well as those detailed previously, class certification pursuant to Rule 23(b)(3) is entirely appropriate in this case.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs, CWA and Midstream Investments respectfully request that their motion for certification of this action as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), be granted in full.

DATED:  January 31, 2007                **SCOTT + SCOTT, LLC**

                                        _____/s/ David R. Scott_____
                                        David R. Scott (Juris No. 16080)
                                        Beth Kaswan (Juris No. 21415)
                                        Erin Green Comite (Juris No. 24886)
                                        108 Norwich Avenue
                                        P.O. Box 192
                                        Colchester, CT 06415
                                        Telephone:     (860) 537-5537
                                        Facsimile:     (860) 537-4432

---

*Bresson v. Thomson McKinnon Sec. Inc.*, 118 F.R.D. 339, 345 (S.D.N.Y. 1988) (average investment of $8,600 would probably not be deemed sufficient to justify individual actions).

**MILBERG WEISS & BERSHAD LLP**
Barry Weprin (Juris No. 06136)
Ann E. Gittleman
One Pennsylvania Plaza
New York, NY  10119-0165
Telephone:    (212) 594-5300
Facsimile:     (212) 868-1229

***Co-Lead Counsel for Lead Plaintiffs***

**<u>Certificate of Service</u>**

I hereby certify that on January 31, 2007, a copy of the foregoing Memorandum Of Law In Support Of Plaintiffs' Motion For Class Certification was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

　　/s/ David R. Scott
David R. Scott