# EXHIBIT D

# SCOTT + SCOTT, LLP



**MISSION STATEMENT**

The firm prides itself on its continuing dedication to client satisfaction and communication. Founded by alumni of larger firms, our attorneys encourage our clients to share their fiduciary, business and personal philosophies with us. We then invest the time to learn about our clients' operations and interests so that each representation can truly be a collaborative effort. We believe strongly that the practice of law should be conducted in a straightforward and honorable manner. We work diligently to ensure that intelligence, preparation and knowledge, as opposed to abusive and often counterproductive gamesmanship, are utilized to achieve the best result for our clients in a cost-effective manner. In so doing, we dedicate ourselves to practicing at the highest legal and ethical standards. We believe that our clients, as well as the numerous established law firms with whom we work and oppose, trust our word and respect the nature of our advocacy.

Scott + Scott regularly works with other firms on major litigation and with firms of only the highest quality and reputation so as to ensure the best representation for our clients. From its inception, the firm has been committed to producing legal work of the highest professional quality. It combines the flexible, informal and cooperative atmosphere of a smaller firm with a sophisticated practice, involving substantial and challenging legal issues more typically associated with larger firms.

### Securities Class Action and Corporate Governance Litigation

Scott + Scott is a nationally recognized law firm that recovers money for individual and institutional investors who have suffered from corporate stock fraud through securities class action and corporate governance litigation. Scott + Scott's philosophy is simple – officers and directors of a corporation should be responsible to their shareholders and the public markets. The firm has participated in recovering billions of dollars and achieved precedent-setting reforms in corporate governance on behalf of investors and shareholders.

### Employee Retirement Litigation

Scott + Scott actively litigates complex class actions across the United States on behalf of corporate employees alleging violations of the federal Employee Retirement Income Security Act of 1974 (ERISA). ERISA was enacted by Congress to prevent employers from exercising improper control over retirement plan assets and requires that pension and 401(k) plan trustees, including employer corporations, owe the highest fiduciary duties to retirement plans and their participants as to their retirement funds. Scott + Scott is committed to continuing its leadership

in ERISA and related employee-retirement litigation, as well as to those employees who entrust their employers with hard-earned retirement savings.

### Antitrust Litigation

The firm is actively involved in litigating many complex antitrust cases throughout the United States. In such actions, Scott + Scott works to ensure that the markets remain free, open and competitive to the benefit of both consumers purchasing and business enterprises operating in such markets. In addition to traditional price-fixing cases, the firm has taken the lead in a number of novel antitrust claims throughout the United States.

### Consumer Rights Litigation

Scott + Scott regularly represents aggrieved consumers in a variety of class action cases pending throughout the United States. In addition to more typical cases involving consumer finance issues, such as *In re: Providian Credit Card Litigation* (Superior Court of California, County of San Francisco), the firm is litigating cases against a number of health maintenance organizations (HMO) and other corporate defendants, including: *Albert v. Physician Health Services of Connecticut, Inc.* and *O'Brien v. Aetna, Inc. and Aetna-U.S. Healthcare, Inc.* (United States District Court, District of Connecticut); *Medical Society of the State of New York v. Connecticut General Corporation, et al.* (New York Supreme Court, County of New York); and *Granito, et al. v. International Business Machines, Inc.* (Connecticut Superior Court). Scott + Scott also has been involved in a number of major consumer fraud cases under state consumer protection laws, including: *Harnage v. Publishers Clearing House* (Connecticut Superior Court); *Gould v. IDT Corporation* (United States District Court, District of New Jersey); *In re: Kava Kava Litigation* (Superior Court of California, County of Los Angeles); *Fischer, et al. v. MasterCard International, Inc., et al.* (New York Supreme Court, County of New York); and *Paton, et al. v. Cingular Wireless, et al.* (Superior Court of California, County of San Francisco).

### Human Rights & Civil Rights Litigation

Scott + Scott is also an advocate of human and civil rights. For instance, Scott + Scott was active in the *World War II Era Japanese Forced Labor Litigation*, suing Japanese companies in U.S. court on behalf of thousands of aging veterans and civilians forced to work as slaves for Japanese corporations during World War II. In addition, Scott + Scott currently represents a nationwide class of workers of United Parcel Service (UPS), alleging that UPS violates the Americans with Disabilities Act.

**ATTORNEY BACKGROUND AND EXPERIENCE**

**MELVIN SCOTT** is a graduate of the University of Connecticut (B.A. 1950) and the University of Kentucky (M.A. 1953; LL.B. 1957). Mr. Scott founded the firm in 1975. He is admitted to practice in Kentucky (now retired), Connecticut and Pennsylvania. Mr. Scott was a member of the Kentucky Law Review, where he submitted several articles for publication. He has served as an Attorney Trial Referee since the inception of this program in the State of Connecticut and is a member of the Fee Dispute Committee for New London County. Mr. Scott also formerly served as a Special Public Defender in criminal cases and as a member of the New London County Grievance Committee. Mr. Scott actively represents aggrieved parties in securities, commercial and criminal litigation and served or serves as counsel in: *Irvine, et al. v. ImClone Systems, Inc., et al.*; *Schnall, et al. v. Annuity and Life Re (Holdings) Ltd., et al.*; *In re: 360networks Class Action Securities Litigation*; *AMS Fund Inc. v. Halliburton Co.*; *In re: General Motors ERISA Litigation*; and *Hohider v. UPS*, among others.

**DAVID R. SCOTT** is a graduate of St. Lawrence University (B.A., *cum laude*, 1986), Temple University School of Law (J.D., Moot Court Board, 1989) and New York University School of Law (LL.M. in taxation). He concentrates in commercial and class action trial work. Mr. Scott's trial work involves antitrust, intellectual property, commercial and complex securities litigation. Mr. Scott's antitrust litigation experience includes matters dealing with illegal tying, price-fixing and monopolization actions. He has served as lead counsel in numerous antitrust and securities class action lawsuits. Notably, Mr. Scott served as co-lead counsel in *Thurber v. Mattel, Inc.* ($122 million settlement); *In re: Emulex Corp. Securities Litigation* ($39 million settlement); *In re: Sprint Securities Litigation* ($50 million settlement); *In re: Northwestern Corporation Securities Litigation* ($61 million settlement); *Irvine, et al. v. Imclone Systems, Inc., et al.* ($75 million settlement); *Schnall, et al. v. Annuity and Life Re (Holdings) Ltd., et al.* ($16 million settlement); and *In re: Qwest Communications International, Inc.* (significant corporate governance reforms and $25 million for the company), among others. His securities litigation experience includes matters dealing with securities fraud class actions, derivative/corporate governance litigation and representation of start-up technology companies in private securities litigation. Presently, Mr. Scott is serving as lead counsel in: *AMS Fund Inc. v. Halliburton Co.*; *In re: General Motors ERISA Litigation*; *In re: Guidant Corp. Securities Litigation*; *In re: Priceline.com Securities Litigation*; *Shirk v. Fifth Third Bancorp, et al.*; *In re Merck ERISA Litigation*; and *Pugh, et al. v. Tribune Company, et al.*, among others. Mr. Scott is admitted to practice in Connecticut, Pennsylvania, New York, the United States Tax Court and many United States District Courts.

**EDMUND W. SEARBY** is a graduate of Dartmouth College (B.A., *cum laude*, 1986) and the University of Michigan (J.D. 1990). Mr. Searby is an experienced trial and appellate attorney both as a federal prosecutor and in private practice. From 1991 to 1996, he served as an Assistant United States Attorney for the Department of Justice in Florida. There, he tried a number of significant and complex criminal jury cases including mail and wire fraud, money laundering, counterfeiting and international drug trafficking. He also led significant investigations and prosecutions of national organized crime and large-scale fraud. In recognition

of his work, he received letters of commendation from the Attorney General of the United States and the Director of the Federal Bureau of Investigation. Mr. Searby also served as a special prosecutor with the Office of the Independent Counsel, Washington, D.C. In private practice, Mr. Searby represents clients in class actions and other complex civil litigation, including antitrust, securities and multidistrict products liability litigation. Mr. Searby's civil trial experience includes, among other proceedings: a twenty-five witness antitrust class action conspiracy jury trial resulting in a multimillion-dollar verdict for the class; the successful defense of a multinational corporation in a jury trial, which, after seventeen witnesses and four weeks of trial, resulted in a verdict of no liability for his client; and a verdict on behalf of a biotechnology company in a bench trial regarding nationwide punitive damages insurance coverage. Mr. Searby also served as co-lead counsel in *Irvine, et al. v. ImClone Systems, Inc.*, where he deposed the former Chief Executive Officer, the former Director of Regulatory Affairs, the former Chief Scientist, as well as other current and former employees of ImClone before achieving a $75 million settlement on behalf of the class. Mr. Searby represents several Fortune 500 companies in opt-out antitrust litigation across the United States. In addition, Mr. Searby also represents companies and individuals subject to federal and state criminal investigations and prosecutions.

Mr. Searby has presented on trial practice to the Federal Bureau of Investigation and the Cleveland Bar Association. He is a member of the American Bar Association - Antitrust Section and the Federal Bar Association. He is admitted to practice in Ohio and Illinois and various United States District Courts.

**ARTHUR L. SHINGLER** is a graduate of Point Loma College (B.A., *cum laude*, 1989) and Boston University School of Law (J.D. 1995). Mr. Shingler specializes in complex consumer and securities class actions, as well as related shareholder derivative litigation. Mr. Shingler is counsel in numerous actions, including: *AMS Fund Inc. v. Halliburton Co.; In Re: Lattice Semiconductor Derivative Litigation; In re: Priceline.com Securities Litigation; In re: 360networks Class Action Securities Litigation; Irvine, et al. v. ImClone Systems, Inc., et al.; In re: Cyberonics Securities Litigation; Lancaster, et al. v. Royal Dutch Petroleum Co.; In re: HealthSouth Corporation Derivative Litigation;* and *In Re: Guidant Corp. Securities Litigation*, among other representative actions. In addition to numerous successful recoveries in class litigation, of particular note are Mr. Shingler's efforts on behalf of the class in the Halliburton securities litigation, where he successfully argued against final approval of an inadequate settlement and now serves as a lead class counsel as the action proceeds. Mr. Shingler also played a primary role in substantially changing executive management and corporate governance, as well as advancing shareholder rights in the Lattice Semiconductor Derivative Litigation. Of additional note, Mr. Shingler has represented aggrieved class members in a number of consumer protection actions and has been instrumental in expanding and clarifying consumer and class interests nationwide. As two examples, Mr. Shingler was fundamentally involved before the Massachusetts Supreme Judicial Court in shaping the contours of class certification under Massachusetts state law (*Weld v. Glaxo Wellcome, Inc.*, 434 Mass. 81 (2001)) and, before the California Court of Appeals, in shaping the scope of California's Unfair Practices Act and the limits of its False Claims Act (*Rothchild v. Tyco Internat. (US), Inc., et al.*, 83 Cal. App. 4th 488 (Cal. App. 4th D.C.A. 2000)) Mr. Shingler is admitted to practice before the Supreme and all other Courts of the State of California, the United States Court of Appeals for

the Third Circuit, and various United States District Courts.

**ANITA MELEY LAING** is a graduate of Ohio University (B.S., *cum laude*, 1963), University of Tennessee (M.S., *summa cum laude*, 1967) and University of Pittsburgh School of Law (J.D., *cum laude*, 1978). She is admitted to practice in California and Pennsylvania (inactive). Ms. Laing was the Notes Editor of the University of Pittsburgh Law Review and has authored articles for publication there and in the legal magazine *Trial*. Ms. Laing's entire legal career has involved complex commercial and class action cases. Her practice has ranged: from representation of employees in nationwide class action discrimination cases, to thousands of individuals who lived near a major California Superfund site for personal injuries and property damage sustained from exposure to toxic waste emissions; from companies who paid inflated premiums for workers' compensation insurance, to elderly investors in a multi-million dollar Ponzi scheme; and from purchasers of publicly traded securities at fraudulently inflated prices to consumers nationwide. Ms. Laing is active in litigation, including: *Hohider v. UPS; In re: Guidant Securities Litigation*; and *In re: Diebold Inc. Securities Litigation*, among others.

**MARK V. JACKOWSKI** is a graduate of St. John's University and the University of Dayton Law School. He also holds an LLM in Corporate law from New York University. Mr. Jackowski concentrates his practice in the litigation and trial of white collar crime and related complex cases. For more than twenty-five years, Mr. Jackowski investigated and tried high profile criminal and civil cases on behalf of the United States. From 1979 to 1984, he served with the Securities and Exchange Commission's New York Regional Office, where he investigated and tried insider trading and corporate fraud cases, including *SEC v. Materia* – a civil injunctive action brought against a financial printer for trading on the basis of non-public information. From 1984 to 2006, Mr. Jackowski served as an Assistant United States Attorney with the Department of Justice in New York, Florida, and Colorado, and as Deputy Independent Counsel with the Office of the Independent Counsel in Washington, D.C. Notable cases include the landmark convictions in 1990 of numerous officers of the Bank of Credit and Commerce International (BCCI) in a six month trial. Mr. Jackowski also conducted the investigation of a former White House cabinet member and his associates, resulting in the former cabinet member's plea to lying to the Federal Bureau of Investigation. In addition to these cases, Mr. Jackowski prosecuted and tried numerous other complex criminal cases, including international drug trafficking, money laundering, securities fraud, and bank fraud. In recognition of his work, Mr. Jackowski received the Department of Justice's award for Sustained Superior Performance, as well as letters of commendation from the Attorney General of the United States, the Director of the Federal Bureau of Investigation, and the Director of the Drug Enforcement Administration. Mr. Jackowski has been a National Institute for Trial Advocacy Instructor and has taught the Department of Justice Complex Prosecution and Money Laundering Seminars, and is a member of the American Bar Association – Litigation Section. He is admitted to practice in New York and the United States Court of Appeals for the District of Columbia Circuit.

**BETH KASWAN** recently joined Scott + Scott as of counsel. Beginning in 1998 and until joining Scott + Scott, she practiced with Milberg Weiss where she has represented plaintiffs in cases involving securities and consumer fraud. Immediately before joining Milberg Weiss, Ms. Kaswan

served in the Giuliani administration as New York City's Chief Procurement Officer, a Deputy Commissioner in the Department of Investigations and the Finance Department's Chief Counsel.

Ms. Kaswan, having majored in accounting at college, began her career at Peat, Marwick, Mitchell & Co. and later served as a trial attorney with the U.S. Department of Justice, Tax Division. In 1985, she joined the U.S. Attorney's Office for the Southern District of New York, and was promoted to Chief of Commercial Litigation and then Deputy Chief of the Civil Division. While employed by the government, Ms. Kaswan litigated several high-profile cases to judgment, including the landmark case of *United States v. Gleneagles Inv. Co.*, where following a multi-stage, thirteen month trial, the fraudulent conveyance laws were first applied to set aside a leveraged buy-out. She also represented the Federal Reserve for its enforcement actions against the rogue bank, BCCI, leading to the global RICO plea agreement and forfeiture of BCCI's $550 million of United States assets; the IRS for its $5 billion claim against Drexel, the Defense Department and MARAD for *qui tam* and other false claims actions against Goodyear Aerospace, Loral and General Dynamics and the FDA to enjoin the manufacture of adulterated generic drugs. See, e.g., *United States v. Gleneagles Inv. Co.*, 565 F. Supp. 556 ("Gleneagles I"), 571. F. Supp. 935 ("Gleneagles II"), 584 F. Supp. 671 ("Gleneagles III") (M.D. Pa. 1981), aff'd in part and rev'd in part sub. nom., *United States v. Tabor Ct. Realty Corp.*, 803 F.2d 1288 (3d Cir. 1986); In re Smouha ("BCCI"), 136 B.R. 921 (S.D.N.Y. 1992); *United States v. Davis*, 803 F. Supp. 830 (S.D.N.Y. 1992), aff'd in part and rev'd in part sub. nom., *United States v. General Dynamics Corp.*, 19 F.3d 770 (2d Cir. 1994); *United States v. Barr Laboratories, Inc.*, 812 F. Supp. 458 (D.N.J. 1993).

Ms. Kaswan received several awards from the Justice Department and the agencies she represented, including the Justice Department's John Marshall award, Special Commendation from the Attorney General, a Superior Performance award from the Executive Office of U.S. Attorneys, Tax Division Outstanding Achievement awards, and awards from the FDA Commissioner and U.S. Customs Service. She has testified before the New York legislature as a government expert on money-laundering and lectured in Justice Department training programs on evidence and other subjects.

**MARIA K. TOUGAS** is a graduate of Bowdoin College (B.A., *magna cum laude*, 1985) and Western New England College School of Law (J.D. 1989), where she was a member of the National Moot Court Team. Ms. Tougas' experience includes complex commercial litigation, creditor's rights and bankruptcy. At Scott + Scott, Ms. Tougas is actively engaged in complex class action litigation, including securities, consumer and antitrust litigation. She also focuses on bankruptcy and creditor's rights issues associated with complex class action litigation. Ms. Tougas actively practices all types of commercial litigation. She is admitted to practice in Connecticut, as well as the U.S. Court of Appeals for the Second Circuit.

**DEIRDRE DEVANEY** is a graduate of New York University (B.A., *cum laude*, 1990) and the University of Connecticut School of Law (J.D., with honors, 1998) where she was the Managing Editor of the Connecticut Journal of International Law. Ms. Devaney's experience includes commercial and probate litigation, as well as trusts and estates. Currently, Ms. Devaney's practice areas include commercial and securities litigation. Ms. Devaney is involved in litigation, including: *AMS Fund, Inc. v. Halliburton Co., et al.*; *In re: Priceline.com Securities Litigation*; and *In re: Guidant Corp. Securities Litigation*, among others. Ms. Devaney is admitted to

practice in Connecticut, New York and the United States District Court for the District of Connecticut.

**GEOFFREY JOHNSON** is a graduate of Grinnell College (B.A., with honors, 1996) and the University of Chicago Law School (J.D., with honors, 1999), where he served on the law review. An attorney with the firm's Ohio office, Mr. Johnson's main practice areas include securities and ERISA class action litigation, corporate governance and other complex commercial litigation, including among others: *In re: Priceline.com Securities Litigation; In re: GM ERISA Litigation; AMS Fund, Inc. v. Halliburton Co., et al.; Shirk v. Fifth Third Bancorp.;* and *In re: Merck ERISA Litigation.* Prior to joining Scott + Scott, Mr. Johnson clerked for the Honorable Karen Nelson Moore, Sixth Circuit United States Court of Appeals. Mr. Johnson has been active in pro bono matters, handling cases for the Legal Aid Society of Cleveland. Mr. Johnson is a member of the Ohio Bar.

**DENISE V. ZAMORE** is a graduate of Georgetown University (B.A. 1996) and Columbia University School of Law (J.D. 1999), where she was a member of the Journal of Gender and Law. She also was an NAACP Legal Defense Fund Earl Warren Legal Training Scholar. Ms. Zamore's main practice areas include securities, ERISA and corporate governance litigation, including: *AMS Fund, Inc. v. Halliburton Co., et al.; In re: Guidant Securities Litigation;* and *In re: Diebold Inc. Securities Litigation,* among others. Prior to joining Scott + Scott, Ms. Zamore clerked for The Honorable Donald L. Graham, United States District Court for the Southern District of Florida. She is admitted to practice in Florida and New York.

**WALTER NOSS** is a graduate of the University of Toledo (B.A., *magna cum laude*, Economics 1997) and the Ohio State University College of Law (J.D., with honors, 2000), where he served as a member of the Ohio State Law Journal. Mr. Noss' main practice areas include securities, antitrust and complex litigation, including: *In re: Rubber Chemicals Antitrust Litigation; In re: Plastic Additives Antitrust Litigation;* and *In re: Polychlorprene Rubber Antitrust Litigation,* among others. Mr. Noss is a member of the Ohio Bar.

**DONALD D. BROGGI** is a graduate of University of Pittsburgh (B.A. 1990) and Duquesne University School of Law (J.D. 2000). He is licensed to practice in Pennsylvania and currently is engaged in the firm's complex securities, antitrust and consumer litigation, including: *Hohider v. UPS; In re: Priceline.com Securities Litigation; In re: Rubber Chemicals Antitrust Litigation;* and *In re: Plastic Additives Antitrust Litigation,* among others.

**ERIN GREEN COMITE** is a graduate of Dartmouth College (B.A., *magna cum laude*, 1994) and the University of Washington School of Law (J.D. 2002). Prior to entering law school, Ms. Comite was a legal assistant at The White House. At Scott + Scott she actively is engaged in the firm's complex securities, corporate governance and antitrust litigation, including: *Hohider v. UPS; In re: Priceline.com Securities Litigation;* and *In re: Host America Securities Litigation,* among others. Ms. Comite also assists in the firm's institutional investor and class member services. She is licensed to practice in Connecticut.

**NICHOLAS J. LICATO, Ph.D.** is a graduate of New York University (B.A. Chemistry, 1980), University of Utah (Ph.D. Medicinal Chemistry, 1985), University of Michigan - Ann Arbor

(Postdoctoral Fellowship, 1988) and University of San Diego School of Law (J.D., 2002). Dr. Licato has over 12 years of industrial experience, including the management and direction of drug discovery, development and commercialization activities. As an attorney, Dr. Licato's practice emphasizes application of the Food, Drug and Cosmetic Act (FDCA) to the investigation, commencement and prosecution of securities fraud class actions, M&A litigation, and shareholder derivative suits, including: *In re: Cyberonics Securities Litigation; In re: Guidant Securities Litigation;* and *In re: Diebold Securities Litigation*. Dr. Licato is admitted to practice in California.

**DAVID H. GOLDBERGER** is a graduate of the University of Colorado (B.A. 1999) and California Western School of Law (J.D. 2002). Mr. Goldberger is currently actively involved in litigation, including: *In re: Priceline.com Securities Litigation*; *In re: GM ERISA Litigation;* and *In re: Plastic Additives Antitrust Litigation*, among others. He is licensed to practice in California and is currently involved in the firm's complex securities and antitrust litigation.

**DESSETA MARSIE-HAZEN** is a graduate of Wellesley College (B.A. 1978), the Woodrow Wilson School of Public and International Affairs at Princeton University (M.P.A. 1980) and the New York University School of Law (J.D. 1987). She is licensed to practice in the Virgin Islands, New York, Florida and the District of Columbia. She currently spearheads all aspects of discovery in the firm's antitrust and securities practice.

**SHAHIN RAHIMI** is a graduate of the University of California San Diego (B.A. 1998) and California Western School of Law (J.D. 2002). Mr. Rahimi is actively involved in litigation, including: In re: Priceline.com Securities Litigation and Fifth Third Bank Securities Litigation, among others. He is licensed to practice law in California and is currently involved in the firm's complex securities litigation.

# Milberg Weiss & Bershad LLP

### THE FIRM'S PRACTICE AND ACHIEVEMENTS

Milberg Weiss was founded in 1965 and was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The firm pioneered this type of litigation and is now widely recognized as the nation's leading defender of the rights of victims against corporate and other large-scale wrongdoing. The firm has principal offices in New York City and Los Angeles, California. The firm's practice focuses on the prosecution of class and complex actions in many fields of commercial litigation, emphasizing securities, corporate fiduciary, consumer, insurance, antitrust, mass tort, human rights, and related areas of litigation.

In the firm's early years, its founding partners, Lawrence Milberg and Melvyn I. Weiss, built a new area of legal practice in representing shareholders' interests under the then recently amended federal procedure Rule 23, which allowed securities fraud cases, among others, to proceed as class actions. In the following decades, the firm's lawyers obtained decisions that established important legal precedents in many of their areas of practice, and prosecuted cases that set benchmarks in terms of case theories, organization, discovery, trial results, methods of settlement, and amounts recovered and distributed to clients and class members.

Important milestones included the firm's involvement in the *U.S. Financial* litigation in the early 1970s, one of the earliest large class actions, which resulted in the recovery of over $50 million by purchasers of the securities of a failed real estate development company; the Ninth Circuit decision in *Blackie v. Barrack* in 1975, which established the fraud-on-the-market doctrine for securities fraud actions; co-lead counsel position in the *In re Washington Public Power Supply System (WPPSS) Securities Litigation*, a seminal securities fraud action in the 1980s in terms of complexity and amounts recovered; representation of the Federal Deposit Insurance Corp. in a year-long trial to recover banking losses from a major accounting firm, leading to a precedent-setting global settlement; attacking the Drexel-Milken "daisy chain" of illicit junk-bond financing arrangements with numerous cases that resulted in substantial recoveries for investors; representing life insurance policyholders defrauded by "vanishing premium" and other improper sales tactics and obtaining large recoveries from industry participants; and ground-breaking roles in the multi-front attack on deception and other improper activities in the tobacco industry.

Milberg Weiss remains at the forefront in its areas of practice. Recent litigation results include: Nortel Networks (proposed settlement for cash and stock valued at $1.142 billion); Lucent Technologies Securities Litigation ($600 million recovery); Raytheon Co. Securities Litigation ($460 million recovery); Managed Care Litigation (recoveries over $1 billion and major changes in HMO practices); NASDAQ Market Makers Antitrust Litigation ($1 billion recoveries); Initial Public Offering Securities Litigation (partial settlements for guaranteed minimum of $1 billion).

The firm is consistently active in pro bono litigation, highlighted by its leadership role in the *Swiss Bank Litigation*, which led to the recovery of $1.25 billion from Swiss banks to benefit victims of the Holocaust and its recent efforts representing claimants of the September 11 Victim Compensation Fund.

The firm's lawyers come from many different professional backgrounds. They include former federal or state prosecutors, private defense attorneys, and government lawyers. The firm's ability to pursue claims against defendants is augmented by its team of investigators, headed by a former agent for the Federal Bureau of Investigation, and its five full-time forensic accountants.

In 2003, the partners of Milberg Weiss Bershad Hynes & Lerach LLP decided to separate into two groups, with Milberg Weiss & Bershad LLP serving as the continuing firm.

Milberg Weiss has been responsible for more than $45 billion in recoveries during the life of the firm. Examples of cases in which the firm has taken lead roles include the *WPPSS* litigation, which resulted in settlements totaling $775 million; the *Lincoln Savings and Loan Litigation*, with total recoveries of $240 million out of $288 million in estimated total losses; the *NASDAQ Market-Makers Antitrust Litigation*, which resulted in a $1.027 billion settlement; and actions against major life insurers, including Prudential and MetLife, where the firm has recovered billions of dollars on behalf of policyholders who were the victims of alleged churning and other improper practices. In addition, the firm currently plays a major role in the litigation arising from one of the largest scandals in the financial community -- the *IPO Securities Litigation*, in which the firm serves as Chair of Plaintiffs' Executive Committee. For more information, please visit www.milbergweiss.com.

## JUDICIAL COMMENDATIONS

In *In re September 11 Victim Compensation Fund*, Preliminary Hearing, Claim No. 212-003658 (Dec. 9 2003), Special Master Kenneth R. Feinberg stated the following regarding the firm's commitment to the public interest:

> Let me say one more thing on the record before we adjourn, and please convey this to Mr. Weiss and to David Bershad. Once again, as I have learned over the years here in New York, the Milberg Weiss firm steps up to the plate in the public interest time and time again. The social conscience of the Milberg Weiss firm, acting through its excellent associates and partners, help deal with crises that confront the American people and others, and I am personally in the debt of Milberg Weiss for the work that it is doing, even under the gun with the December 22 deadline looming. I am once again in Milberg Weiss' debt for their extraordinary willingness to help out in the public interest, and I hope you'll relay that message back to the firm... they are second among none in terms of the public interest, and I'm very, very grateful, not only to you guys for doing this, but... for the firm's willingness to help out. I wanted to let everybody know that.

Mr. Feinberg echoed this sentiment in a subsequent hearing (September 11th Victim Compensation Fund Hearing before Special Master Kenneth R. Feinberg, May 11, 2004):

> I also note on the record that the pro bono service of the Milberg Weiss firm is well-known to lawyers and the public throughout the nation, and I'm grateful that this is one more example of how Milberg Weiss serves the nation.
>
> I want to note on the record the extraordinary professionalism and skill of counsel in the preparation of this claim. They have exhibited the finest character of the Bar, and I thank them for a job well done.

Milberg Weiss has been commended by countless judges all over the country for the quality of its representation in class action lawsuits. In *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003), Judge Dalzell commented on the skill and efficiency of Milberg Weiss attorneys in litigating the complex case:

> At the risk of belaboring the obvious, we pause to say a specific word about... the skill and efficiency of the attorneys involved...Milberg Weiss [was] extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write-down of over $1.6 billion in previously reported Rite Aid earnings... In short, it would be hard to equal the skill class counsel demonstrated here.

In *In re Lucent Technologies, Inc. Securities Litigation*, No. 00 CV-621, slip op. at 14-15, 26 (D.N.J. Feb. 24, 2004), Judge Joel A. Pisano of the United States District Court for the District of New Jersey recently issued an Opinion approving the Settlement of the Lucent Technologies Securities Litigation, in which he complimented Milberg Weiss (Co-Lead Counsel for the Plaintiff Class) saying:

> [T]he attorneys representing the Plaintiffs are highly experienced in securities class action litigation and have successfully prosecuted numerous class actions throughout the United States. They are more than competent to conduct this action. Co-Lead Counsel diligently and aggressively represented Plaintiffs before this Court and in the negotiations that resulted in the Settlement . . . the efforts and ingenuity of Lead Plaintiffs and Lead Counsel resulted in an extremely valuable Settlement for the Benefit of the Class.

In *In re IKON Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 195 (E.D. Pa. 2000), where Milberg Weiss served as co-lead counsel, Judge Marvin Katz of the United States District Court for the Eastern District of Pennsylvania commented on the skill and professionalism of plaintiffs' co-lead counsel:

> First, class counsel is of high caliber and has extensive experience in similar class action litigation... Each of the co-lead counsel firms has a national reputation for advocacy in securities class actions, and there is no doubt that this standing enhanced their ability both to prosecute the case effectively and to negotiate credibly. Similarly, defense counsel has a fine reputation and has displayed great skill in defending this complex class action. Their opposition to plaintiffs has been anything but token, and many of the battles on crucial issues were hard fought.
>
> Of particular note in assessing the quality of representation is the professionalism with which all parties comported themselves. The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines. This professionalism was also displayed in class counsel's willingness to cooperate with other counsel when appropriate... This cooperation enabled the parties to focus their disputes on the issues that mattered most and to avoid pointless bickering over more minor matters.

In *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), in an opinion dated November 9, 1998, approving settlements totaling over $1.027 billion, Judge Sweet commented:

Counsel for the Plaintiffs [Milberg Weiss] are preeminent in the field of class action litigation, and the roster of counsel for Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties in this action achieved.

In *In re Prudential Insurance Co. of America Sales Practices Litigation*, 962 F. Supp. 572, 585-86 (D.N.J. 1997), vacated on other grounds, in approving the settlement of a nationwide class action against a life insurer for deceptive sales practices, where Milberg Weiss was co-lead counsel, Judge Wolin observed:

> [T]he results achieved by plaintiffs' counsel in this case in the face of significant legal, factual and logistical obstacles and formidable opposing counsel, are nothing short of remarkable.
>
> \* \* \*
>
> Finally, the standing and professional skill of plaintiffs' counsel, in particular Co-Lead Counsel, is high and undoubtedly furthered their ability to negotiate a valuable settlement and argue its merits before this Court. Several members of plaintiffs' counsel are leading attorneys in the area of class action litigation.

At the Fairness Hearing, Judge Wolin stated that "there is no doubt that Class Counsel have prosecuted the interests of the class members with the utmost vigor and expertise." *In re Prudential Ins. Co. of Am. Sales Practices Litigation*, 962 F. Supp. 450, 519 (D.N.J. 1997) (emphasis added).

In approving a $100 million settlement in *In re Prudential Securities Inc. Partnership Litigation*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996), in which Milberg Weiss was one of the lead counsel, Judge Pollack noted that he had "had the opportunity at first hand to observe the quality of plaintiffs' class counsel's representation, both here and in prior complex litigation, and is impressed with the quality of Plaintiffs' Class Counsel."

In *Roy v. The Independent Order of Foresters*, Civ. No. 97-6225 (SKC) at 32 (D.N.J. Aug. 3, 1999), in his opinion on class certification, Judge Chesler noted:

> The firm of Milberg Weiss, which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the Prudential case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the Milberg firm has helped to secure for the plaintiff classes in both this case and the Prudential case are a testament to counsel's vigorous pursuit of the class interests.

In *In re Buspirone Patent Litigation*, MDL Docket No. 1413 at 34:2-3 (S.D.N.Y. Nov. 6, 2003) (Final Approval Hearing Transcript), Judge Koeltl commented on plaintiffs' counsel:

> Let me say that the lawyers in this case have done a stupendous job.

In *Kruman v. Christie's International*, PLC, 00 Civ. 6322 (LAK) at 36:13-16 (S.D.N.Y. June 2, 2003) (Final Approval Hearing Transcript), Judge Kaplan commented on class counsel's representation:

> I have satisfied myself in examining these papers that counsel involved in this case pursued this very difficult matter tenaciously, with skill, and got what I view to be an excellent result.

## PROMINENT CASES

- *In re Lucent Technologies, Inc. Securities Litigation*, No. 00cv621 (AJL) (D.N.J.). This settlement provides compensation of $600 million to aggrieved shareholders who purchased Lucent stock between October 1999 and December 2000.

- *In re Raytheon Securities Litigation*, 99 CV 12142 (E.D. Mass.). This case concerned claims that a major defense contractor failed to write down assets adequately on long term construction contracts. In May 2004, Raytheon and its auditor PricewaterhouseCoopers LLP settled for a total of $460 million.

- Milberg Weiss served as co-lead counsel in *In re Oxford Health Plans, Inc. Securities Litigation*, MDL Dkt. No. 1222 (CLB) (S.D.N.Y.), in which settlements totaling $300 million in cash were approved by the Court in June 2003. Plaintiffs alleged that Oxford Health Plans, Inc. issued fraudulent financial statements that misstated its premium revenues and medical claims expense. KPMG LLP, Oxford's outside auditor, was also named as a defendant and was alleged to have issued a materially false and misleading audit opinion on Oxford's financial statements for the year ended December 31, 1996.

- In *In re Rite Aid Securities Litigation*, Master File No. 99-1349 (E.D. Pa.), Judge Stewart Dalzell approved class action settlements totaling $334 million against Rite Aid ($207 million), KPMG ($125 million -- the second largest amount ever recovered from an

accounting firm in a federal securities class action, and the largest ever against an auditor in a case where the securities claims were limited to claims under section 10(b), which requires proof of knowing or reckless misconduct), and certain former executives of Rite Aid ($1.6 million).

• *In re Deutsche Telekom AG Securities Litigation*, Civil Action No. 00-CV-9475 (NRB) (S.D.N.Y.). Milberg Weiss served as co-lead counsel in this securities class action, alleging that Deutsche Telekom issued a false and misleading registration statement which improperly failed to disclose its plans to acquire VoiceStream Wireless Corporation and materially overstated the value of the Company's real estate assets. On July 29, 2005, Judge Naomi Reice Buchwald approved a settlement of $120 million in cash.

• *In re CVS Corp. Securities Litigation*, C.A. No. 01-11464 (JLT) (D. Mass). Milberg Weiss served as co-lead counsel in this class action alleging that defendants engaged in a series of accounting improprieties and issued false and misleading statements which artificially inflated the price of CVS stock. On September 7, 2005, Judge Joseph Tauro approved a settlement of $110 million dollars in cash for shareholders who acquired CVS stock between February 6, 2001 and October 30, 2001.

• *In re Scheiner v. i2 Technologies, Inc.*, Civ. No. 3:01-CV-418-H (N.D. Tex.). May 2004 settlement of $84.85 million with i2 Technologies and certain individual defendants. Case alleged securities fraud against defendants relating to company's software product descriptions and alleged violations of Generally Accepted Accounting Principles.

• Milberg Weiss served as co-lead counsel in *Irvine v. ImClone Systems*, Inc., No. 02 Civ. 0109 (RO) (S.D.N.Y.), in which a settlement of $75 million in cash was approved by the Court on July of 2005. Plaintiffs alleged that ImClone issued a number of misrepresentations and fraudulent statements to the market regarding the likelihood of approval of the drug Erbitux, thereby artificially inflating the price of ImClone stock.

• *In re Initial Public Offering Securities Litigation*, 21 MC 92 (S.D.N.Y.). The Initial Public Offering Securities Litigation consists of 309 separate class actions involving more than 300 IPOs marketed between 1998 and 2000. The actions are coordinated for pre-trial purposes before U.S. District Court Judge Shira A. Scheindlin in the Southern District of New York. The defendants consist of the companies brought public, certain of their officers and directors and 55 of the investment banks that brought them public and underwrote various follow-on offerings. The lawsuits generally allege that the IPOs of these companies were manipulated by the investment banks to artificially inflate the market price of those securities and to conceal the amounts of compensation actually received by the underwriters and that these efforts were not disclosed to the investing public. A settlement between plaintiffs and the issuer defendants and their directors and officers was approved by the Court. The settlement guarantees a recovery of at $1 billion dollars for the settlement classes. The $1 billion guarantee from the issuers is subject to reduction by potential recoveries from the 55 Underwriter Defendants against whom the litigation continues.

• The firm was lead counsel in *In re Prudential Insurance Co. Sales Practice Litigation*, Civ. No. 95-4707 (AMW) (D.N.J.), a landmark case which concerned securities claims as well as common law claims and which resulted in a recovery exceeding $4 billion for Prudential policyholders. The settlement was approved in a comprehensive decision handed down by the Third Circuit. Milberg Weiss has led the litigation of numerous other class actions involving alleged churning practices by other insurance companies and their agents, recovering billions of dollars in actions against major insurers, including MetLife, American Express/IDS, New York Life, ManuLife and John Hancock.

• In *In re NASDAQ Market-Makers Antitrust Litigation*, MDL 1023 (S.D.N.Y.), Milberg Weiss served as court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever.

• *In re Washington Public Power Supply System Securities Litigation*, MDL 551 (D. Ariz.). A massive litigation in which Milberg Weiss served as co-lead counsel for a class that obtained settlements totaling $775 million after several months of trial.

• In *In re American Continental Corp./Lincoln Savings & Loan Securities Litigation*, MDL 834 (D. Ariz.), Milberg Weiss served as the court-appointed co-lead counsel for a class of persons who purchased debentures and/or stock in American Continental Corp., the parent company of the now-infamous Lincoln Savings & Loan. The suit charged Charles Keating, other insiders, three major accounting firms, three major law firms, Drexel Burnham, Michael Milken and others with racketeering and violations of securities laws. Recoveries totaled $240 million on $288 million in

losses. A jury also rendered verdicts of more than $1 billion against Keating and others.

- *In re Exxon Valdez*, No. A89-095 Civ. (D. Alaska) and *In re Exxon Valdez Oil Spill Litigation*, 3 AN-89-2533 (Alaska Super. Ct. 3d Jud. Dist.). Milberg Weiss is a member of the Plaintiffs' Coordinating Committee and co-chair of Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. A jury verdict of $5 billion was obtained and is currently on appeal.

- In *In re Managed Care Litigation*, MDL 1334 (S.D. Fla.). Final approval of a settlement between a nationwide class of physicians and defendant CIGNA Healthcare valued in excess of $500 million dollars was granted on April 22, 2004. A similar settlement valued in excess of $400 million involving a nationwide class of physicians and Aetna was approved by the Court on November 6, 2003. The settlements stem from a series of lawsuits filed in both state and federal court by physicians and medical associations currently pending against many of the nation's largest for-profit health insurers arising from conduct involving issues dating back to 1990. These settlements bring sweeping changes to the health care industry and involve improvements to physician-related business practices and provide for the establishment of an independent foundation dedicated to improving the quality of health care in America.

- *In re Baldwin United Annuity Litigation*, No. M-21-35 (S.D.N.Y.). Milberg Weiss served as co-lead counsel in this consolidated proceeding on behalf of purchasers of annuities that was settled for over $160 million.

- *In re MicroStrategy, Inc. Securities Litigation*, No. 00-473-A (E.D. Va.). Milberg Weiss served as co-lead counsel in this action, which alleged securities fraud based on a massive restatement. Settlements with the defendants totaled in excess of $150 million.

- *In re Sunbeam Securities Litigation* (No. 98-8258) (S.D. Fla) Milberg Weiss acted as co-lead counsel for the class. Plaintiffs alleged that Sunbeam, its auditor, and its management engaged in a massive accounting fraud which led to a restatement of over three years of previously reported financial results. The Court approved a combined settlement of over $140 million. The settlement amount included a $110 million settlement with Arthur Andersen, LLP, Sunbeam's auditor. The Andersen settlement is one of the largest amounts ever paid by a public accounting firm to settle claims brought under the federal securities laws. The settlement with the individuals was achieved on the eve of trial, and ended almost four years of litigation against Andersen and Sunbeam's insiders, including Albert Dunlap, Sunbeam's former Chairman and CEO. The settlement included a personal contribution from Dunlap of $15 million.

- In *In re Computer Associates Securities Litigation*, Nos. 98-CV-4839, 02-CV-1226 (TCP) (E.D.N.Y.), Milberg Weiss served as co-lead counsel and obtained a pretrial settlement valued at over $134 million in these securities fraud class actions.

- In *In re IKON Office Solutions, Inc. Securities Litigation*, MDL 1318, Docket No. 98-4286 (E.D. Pa.), Milberg Weiss served as co-lead counsel and obtained a pretrial settlement of $111 million in this securities fraud class action.

- In *In re W.R. Grace & Co. (Official Committee of Asbestos Personal Injury Claimants v. Sealed Air. Corp. and Official Committee of Asbestos Personal Injury Claimants v. Fresenius Medical Care Holdings, Inc.)*, Nos. 02-2210 and 02-2211 (D. Del.), Milberg Weiss acted as lead counsel for the asbestos personal injury and property damage committees in two separate fraudulent conveyance actions within the W.R. Grace bankruptcy. The actions sought to return the assets of Sealed Air Corporation and Fresenius Medical Care Holdings (each of which had been Grace subsidiaries pre-bankruptcy) to the W.R. Grace bankruptcy estate. Complaints in both cases were filed in mid-March 2002, and agreements in principle in both cases were reached on November 27, 2002, the last business day before trial was set to begin in the Sealed Air matter. The total of the two settlements, which consisted of both cash and stock, was approximately $1 billion.

- *In re Kruman v. Christie's International, PLC*, 284 No. 01-7309 (S.D.N.Y.), resulted in the first U.S. Court of Appeals holding that antitrust class actions on behalf of all purchasers injured worldwide can be brought in U.S. courts under U.S. law when an antitrust conspiracy has sufficient effects in the U.S. Decided in March 2002; led to successful settlement in 2003 of claims against Christie's and Sotheby's on behalf of purchasers and sellers at auctions outside the U.S.

- *In re Tyco International Ltd., Securities Litigation*, MDL Docket No. 02-1335-B (D.N.H.). Milberg Weiss is co-lead counsel in this litigation, which involves claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Tyco and its former CEO, CFO, general counsel and certain former directors that arise out of Tyco's $5.8 billion overstatement of income and $900 million in insider trading, plus hundreds of millions of dollars looted by insiders motivated to commit the fraud. Claims are also made under the 1933 and 1934 Acts against PricewaterhouseCoopers, LLP, which is alleged to have published false audit opinions on Tyco's financial statements during the Class Period and to have failed to

audit Tyco properly, despite knowledge of the fraud. In October 2004, the Court sustained the vast majority of plaintiffs' claims against Tyco and its former senior officers (Dennis Kozlowski, Mark Swartz, Mark Belnick and Frank Walsh), with the exception of one director, as well as Tyco's auditor, PwC.

- ***In re Nortel Networks Corp. Securities Litigation***, Civ. No. 01-CV-1855-RMB (S.D.N.Y.). This federal securities fraud class action was commenced in February 2001 against Nortel Networks Corp. and certain of its officers and directors. In February 2002, Milberg Weiss was appointed to serve as sole Lead Counsel for the Class and for the Court-appointed Lead Plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund. In January 2003, the Court sustained the Complaint in its entirety, denying defendants' motion to dismiss and, in September 2003, certified a Class. In certifying the Class, the Court specifically rejected defendants' argument that those who traded in Nortel securities on the Toronto Stock Exchange (and not the New York Stock Exchange) should be excluded from the Class. The Second Circuit denied defendants' attempted appeal.

- ***In re Xerox Securities Litigation***, No. 3:99-CV-2374 (AWT) (D. Conn.) and ***Carlson v. Xerox Corp.***, No. 3:00-CV-1621 (AWT) (D. Conn.). Milberg Weiss was appointed co-lead counsel in both of these cases. The first case was brought on behalf of a class of purchasers of Xerox common stock from October 22, 1998 (when Xerox first claimed that it was benefiting from a restructuring) through October 7, 1999 (when Xerox finally disclosed the massive problems with the restructuring that affected its operations and the impact of these problems on its revenues) and alleged misrepresentations regarding Xerox's restructuring. The second case was brought on behalf of a class of purchasers of Xerox common stock from February 17, 1998 through June 28, 2002 and alleged misrepresentations and failure to disclose massive accounting improprieties. As a result of these alleged accounting improprieties, on June 28, 2002 (the last day of the Class Period), Xerox issued a $6.4 billion restatement of equipment sales revenues booked over a five year period.

- Milberg Weiss is prosecuting numerous class actions involving a major area of investment abuse: deceptive sales of deferred annuity tax shelters to investors for placement in retirement plans that are already tax-qualified. In ***Nelson v. Pacific Life Ins. Co.***, No. CV203-131 (S.D. Ga.) the district court denied defendants' motion to dismiss and has certified a class. In ***American United Life Insurance Co. v. Douglas***, No. 29A02-0304-CV-350 (Ind. Ct. App.), denial of defendant's summary judgment motion was sustained on interlocutory appeal. The SEC and NASD have begun regulatory programs to address these problems.

- Milberg Weiss is co-lead counsel in ***In re Vivendi Universal, S.A. Securities Litigation***, 02 Civ. 5571 (RJH), a securities fraud class action on behalf of U.S. and foreign investors who purchased Vivendi ordinary shares or American Depository Shares. Plaintiffs allege that Vivendi embarked on a $77 billion acquisition spree in order to transform itself into a huge international conglomerate. Throughout the Class Period (October 30, 2000 through August 14, 2002), defendants (and in particular, Vivendi's former CEO and Chairman, Jean-Marie Messier, and Vivendi's former CFO, Guillaume Hannezo) reported strong revenue and earnings, and portrayed Vivendi as a company that was generating sufficient cash flow to satisfy its debt obligations on approximately $21 billion in debt that it had amassed in connection with financing its acquisition binge. However, plaintiffs allege that Vivendi's operations and financial condition were much weaker than what their public statements portrayed. Plaintiffs have already defeated defendants' motions to dismiss the complaint, and are in the midst of discovery that will take place in the U.S. and France (where French regulators are conducting their own formal investigations).

- ***Rabi Abdullahi v. Pfizer, Inc.***, 01 Civ. 8118 (WHP), (S.D.N.Y.). This is a case in which the firm has brought claims under the Alien Tort Claims act on behalf of Nigerian children and their families who were enrolled in a clinical trial of a drug by Pfizer without their knowledge. Plaintiff alleges that Pfizer's conduct violated the international prohibition on medical experimentation without informed consent when children suffering from meningitis, whose families had brought them to a local hospital for treatment, were secretly enrolled in a clinical trial of the Pfizer drug, Trovan. Plaintiff survived a motion to dismiss for failure to state a claim. The case was dismissed by trial court on jurisdictional grounds and is now back before Second Circuit.

- In ***In re General Instrument Corp. Securities Litigation***, No. 01-3051 (LR) (E.D. Pa.), Milberg Weiss served as co-lead counsel and obtained a pretrial settlement of $48 million in this securities fraud class action.

- ***In re Royal Dutch/Shell Transport ERISA Litig.***, No. 04-1398 (JWB) (D.N.J.). This was an ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the company's U.S. employees invested in the company's stock fund. The $90 million settlement is one of the largest recoverable amounts obtained in an ERISA breach of fiduciary duty case. Notably, the settlement included important provisions regarding the

monitoring and training of individuals appointed to be ERISA fiduciaries.

- *In re Triton Energy Limited Securities Litigation*, Civil Action No. 5-98-CV-256 (E.D. Tex. Texarkana Division), settled for $42 million. Plaintiffs alleged that defendants misrepresented, among other things, the nature, quality, classification and quantity of Triton's Southeast Asia oil and gas reserves during the period March 30, 1998 through July 17, 1998.

- Milberg Weiss served as co-lead counsel in *In re Thomas & Betts Securities Litigation*, Civil Action No. 00-CV-2127 (W.D. Tenn), in which plaintiffs recovered $46.5 million dollars in cash from the Company and $4.65 in cash from its outside auditor, KPMG. Plaintiffs alleged that Thomas & Betts engaged in a series of accounting improprieties while publicly representing that its financial statements were in compliance with GAAP, and failed to disclose known trends and uncertainties regarding its internal control system and computer and information systems.

- *In re MTC Electronic Technologies Shareholder Litigation*, Master File No. CV-93-0876 (JG) (E.D.N.Y.). Plaintiffs alleged that defendants issued false and misleading statements concerning, among other things, purported joint venture agreements to establish telecommunications systems and manufacture telecommunications equipment in China. The Court approved a settlement of $70 million, including $65 million in cash and $5 million worth of MTC Class A shares with "put" rights.

- In *In re Painewebber Limited Partnerships Litigation*, Master File 94 Civ. 8547 (SHS) (S.D.N.Y.), Milberg Weiss represented investors alleging that PaineWebber developed, marketed and operated numerous investment partnerships as part of an ongoing conspiracy to defraud investors and enrich itself through excessive fees and commissions over a twelve-year period. On March 20, 1997, Judge Sidney Stein approved a settlement of $200 million, which consisted of $125 million in cash and $75 million worth of guarantees and fee waivers.

- In *In re Ames Department Stores, Inc.*, MDL Dkt. No. 924 (MP) (S.D.N.Y.), Milberg Weiss represented purchasers of Ames securities alleging that defendants issued false and misleading statements regarding the success of Ames' integration of a major acquisition and the Company's future financial prospects. The Court approved a settlement of $41 million in cash.

- In *In re VMS Securities Litigation*, No. 89 C 9448 (N.D. Ill.), Milberg Weiss secured a settlement of $59 million on behalf of a class of investors alleging that defendants committed securities fraud by engaging in misrepresentations concerning a group of real estate investment trusts. Plaintiffs alleged that defendants had misrepresented the funds' business practices, loan portfolios and financial well-being and concealed liquidity problems and the financial status of many of the funds' borrowers.

- In *Andrews v. AT&T,* No. CV 191-175 (S.D. Ga.). The firm represented a class of persons who paid for premium-billed "900-number" calls that involved allegedly deceptive games of chance, starting in 1993. Defendants included major long-distance companies, which approved the call programs and billed for the calls. Defendant MCI settled for $60 million in benefits; the class against AT&T was decertified on appeal and the firm prosecuted the individual plaintiffs' claims, obtaining a jury verdict in 2003 for compensatory and punitive damages.

## PRECEDENT-SETTING DECISIONS

Milberg Weiss has consistently been a leader in developing the law for investors and consumers under the federal securities, antitrust and consumer protection laws. The firm has represented individual and institutional plaintiffs in hundreds of class action litigations in federal and state courts throughout the country. In most of those cases, Milberg Weiss has served as lead or co-lead counsel for the class. The firm has also been responsible for establishing many important precedents, including:

- *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976). This is the seminal appellate decision on the use of the "fraud-on-the-market" theory, allowing investors who purchase stock at artificially inflated prices to recover even if they were personally unaware of the false and misleading statements reflected in the stock's price. The court stated that class actions are necessary to protect the rights of defrauded purchasers of securities.

- *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000). The firm was lead counsel in this seminal securities fraud case in which the Second Circuit undertook an extensive analysis of the statutory text and the legislative history of the PSLRA and pre-existing Second Circuit case law.

Among other things, the Second Circuit held that the PSLRA's pleading standard for scienter was largely equivalent to the pre-existing Second Circuit standard and vacated the district court's dismissal which sought to impose a higher standard for pleading scienter under the PSLRA. The Second Circuit also rejected any general requirement that plaintiffs' confidential sources must be disclosed to satisfy the PSLRA's newly-enacted particularity requirements.

• *In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002). The First Circuit joined the Second Circuit in allowing a complaint to be based on confidential sources. The Court also accepted the argument made by Milberg Weiss that courts should consider the amount of discovery that has taken place in deciding a motion to dismiss and that the lack of discovery will result in a less stringent standard for pleading securities fraud claims with particularity.

• *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824 (8th Cir. 2003). This important decision strongly reaffirmed the principle that whether an undisclosed fact would have been material to investors cannot ordinarily be decided on a motion to dismiss. The Eighth Circuit, stressing that "[t]he question of materiality hinges on the particular circumstances of the company in question," observed that even relatively small errors in financial statements might be material if they concern areas of particular importance to investors and raise questions about management integrity.

• *In re Advanta Corp. Securities Litigation*, 180 F.3d 525 (3d Cir. 1999). Here, the firm successfully argued that, under the PSLRA, the requisite scienter is pled by making an adequate showing that the defendants acted knowingly or with reckless disregard for the consequences of their actions. As urged by this firm, the Third Circuit specifically adopted the Second Circuit's scienter pleading standard for pleading fraud under the PSLRA.

• *In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 493 (S.D.N.Y. 1996). The court certified a class of millions of investors, who were harmed by an industry-wide conspiracy where NASDAQ market-makers set and maintained wide spreads, over defendants' strenuous objections.

• *In re Initial Public Offering Securities Litigation*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003). The Court sustained, in large part, the plaintiffs' complaints against more than 50 underwriters of high-tech stocks in one of the most comprehensive decisions issued under the securities laws. Milberg Weiss serves as the Chair of Plaintiffs' Executive Committee in this landmark litigation.

• *Asher v. Baxter International, Inc.*, 377 F.3d 727 (7th Cir. 2004). In reversing and remanding the dismissal by the District Court, the Seventh Circuit resolved an important issue involving the PSLRA "safe harbor" for forward-looking statements in plaintiffs' favor. The Court held that whether a cautionary statement is meaningful is an issue of fact, because whether a statement is meaningful or not depends in part on what the defendant knew as well as other issues of fact. Thus, this issue is not appropriately resolved on a motion to dismiss.

• In *In re Vivendi Universal, S.A. Securities Litigation*, 2003 U.S. Dist. LEXIS 19431 (S.D.N.Y. Nov. 3, 2003), Judge Harold Baer upheld plaintiffs' claims under Section 10(b) of the Securities Exchange Act of 1934, which alleged that Vivendi and two of its former executives (CEO Jean-Marie Messier and CFO Guillaume Hannezo) did not disclose to investors that: (1) Vivendi's corporate acquisition programs had brought Vivendi to the brink of a potentially catastrophic liquidity crisis; (2) although it consolidated the financial results of several majority owned subsidiaries, Vivendi did not have access to the cash flows of these entities; (3) Vivendi failed to write down billions of dollars of impaired goodwill from prior acquisitions; and (4) one of Vivendi's U.S. subsidiaries improperly recognized revenue "up front" on the full value of long term contracts. The case is particularly notable because the court held that because of defendants' activities in New York promoting Vivendi stock, defendants' conduct was more than "merely prepatory" to the alleged fraudulent scheme, and thus the court had jurisdiction not only over purchasers of Vivendi ADRs on the NYSE, but also over the claims of foreign purchasers who purchased Vivendi ordinary shares on foreign exchanges.

• In *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998), the Second Circuit reversed the district court's ruling, which denied plaintiffs a cause of action against defendants for failing to disclose that the Trust was unable to utilize proper "hedging" techniques to insure against risk of loss. In the Court's view, taken together and in context, the Trust's representations would have misled a reasonable investor.

• In *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194 (1st Cir. 1996), the First Circuit remanded plaintiffs' action after affirming, in part, Milberg Weiss' position that in association with the filing of a prospectus related to the issuance of securities, a corporate-issuer must disclose intra-quarter, materially adverse changes in its business, if such adverse changes constitute "material changes" the disclosure of which is required pursuant to the Securities Act of 1933.

- *In re Salomon, Inc. Shareholders Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). The Second Circuit affirmed the district court's holding that derivative federal securities claims against defendants would not be referred to arbitration pursuant to the arbitration provisions of the Rules of the New York Stock Exchange, but would be tried in district court. Shortly thereafter, the case settled for $40 million, which is among the largest cash recoveries ever recorded in a derivative action.

- *Kamen v. Kemper Financial Services*, 500 U.S. 90 (1991). The Supreme Court upheld the right of a stockholder of a mutual fund to bring a derivative suit without first making a pre-suit demand.

- *Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985). The Second Circuit reversed the district court's dismissal of a securities fraud complaint, in an important opinion clarifying the "fraud" pleading requirements of Federal Rules of Civil Procedure, Rule 9(b).

- *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir.), cert. denied, 469 U.S. 932 (1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for §10(b) suits that are favorable to investors.

- *Hasan v. CleveTrust Realty Investors*, 729 F.2d 372 (6th Cir. 1984). The Sixth Circuit very strictly construed, and thus narrowed, the ability of a "special litigation committee" of the board of a public company to terminate a derivative action brought by a shareholder.

- *Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984). The Court of Appeals reversed the lower court's dismissal of the complaint. The firm had sought the extraordinary remedy of the appointment of a receiver over the affairs of a public company due to the highly specific allegations of fraud, dishonesty and gross mismanagement by the corporation's controlling shareholders.

- *Fox v. Reich & Tang, Inc.*, 692 F.2d 250 (2d Cir. 1982), aff'd sub nom, *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984). The court held that a derivative action to recover excessive advisory fees may be brought on behalf of an investment company without any prior demand on the board.

- *Rifkin v. Crow*, 574 F.2d 256 (5th Cir. 1978). The Fifth Circuit reversed an order granting summary judgment for defendants in a §10(b) case, paving the way for future acceptance of the "fraud-on-the-market" rationale in the Fifth Circuit.

- *Bershad v. McDonough*, 300 F. Supp. 1051 (N.D. Ill. 1969), aff'd, 428 F.2d 693 (7th Cir. 1970). The plaintiff obtained summary judgment for a violation of §16(b) of the Securities Exchange Act in which the transaction was structured by the defendants to look like a lawful option. The decision has been cited frequently in discussions as to the scope and purpose of §16(b).

- *Heit v. Weitzen*, 402 F.2d 909 (2d Cir. 1968), rev'g, 260 F. Supp. 598 (S.D.N.Y. 1966). The court held that liability under §10(b) of the Securities Exchange Act extends to defendants who were not in privity with the named plaintiffs or the class represented by the named plaintiffs.

- *In re Cox v. Microsoft*, No. 03-2922 (App. Div. 1st Dep't, June 2004). First appellate ruling in New York state courts that class actions may be pursued in the New York state courts for some antitrust violations on behalf of indirect purchasers under New York deceptive practices laws as well as common law claims for unjust enrichment. May open the door to class action recovery of damages on behalf of New York purchasers of Microsoft software comparable to settlements reached in various other states such as California, where Microsoft settled for approximately $1 billion.

- *In re JLM Industries, Inc. v. Stolt-Nielsen SA*, No. 3:03CV348 (D. Conn. June 24, 2003). Milberg Weiss succeeded in establishing that arbitration of horizontal conspiracy claims, arising under Section 1 of the Sherman Act, cannot be compelled on grounds that such claims do not "arise from" the injured person's purchase contract. (Currently on appeal and awaiting decision from the Second Circuit.)

- In *Puckett v. Sony Music Entertainment*, No. 108802/98 (New York Co. 2002), Milberg Weiss achieved a precedent-setting decision in which a class action was certified against Sony Music Entertainment on behalf of a class of recording artists who were parties to standard Sony recording or production agreements entered into at any time during the period of January 1, 1965 to the date of the filing of the complaint in 1998. The complaint alleged that Sony had a policy of treating the value added tax on foreign sales of recordings improperly thereby impermissibly reducing the royalties paid or credited to the class members. Justice DeGrasse of the New York State Supreme Court determined that class certification was appropriate and that Gary Puckett (of Gary Puckett & the Union Gap) and jazz musician and composer Robert Watson were appropriate class representatives to represent the class of artists and producers to whom Sony accounts for foreign record royalties.

Additionally, in the context of shareholder derivative actions, Milberg Weiss has been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases. Cases in which such changes were made include:

- *In re Marketspan Corporate Shareholder Litigation*, CV No. 98-15884 (N.Y. Sup. Ct.) (settlement agreement required modifications of corporate governance structure, changes to the audit committee and changes in compensation awards and the nominating committee);

- *Abramsky v. Computer Sciences Corp.*, CV No. 98-00306-JBR (RLH) (D. Nev. 1998) (significant changes to the company's by-laws and governance procedures to enhance shareholder voting rights and the role of outside directors).