UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------------x

SHERRY SCHNALL, Individually and On Behalf of
All Others Similarly Situated,

                      Plaintiffs,          CIVIL ACTION NO.
                                                 3:02 CV 2133 (EBB)

            -against-

ANNUITY AND LIFE RE (HOLDINGS), LTD.,
et al.,

                                                  June 26, 2007

                      Defendants.

------------------------------------------------------------------------x

**DEFENDANT KPMG BERMUDA'S MEMORANDUM OF LAW IN OPPOSITION
TO MOTION TO WITHDRAW MIDSTREAM INVESTMENTS, LTD. AS LEAD
PLAINTIFF AND CLASS REPRESENTATIVE AND FOR A PROTECTIVE ORDER**

                                                        SHIPMAN & GOODWIN LLP
                                                        Frederick S. Gold
                                                        Fed. Bar. No.: ct 03560
                                                        Morgan P. Rueckert
                                                         Fed. Bar. No.: ct 19838
                                                         300 Atlantic Street
                                                         Stamford, Connecticut 06901
                                                         Tel. (203) 324-8100
                                                         Fax. (203) 324-8199

                                                         KING & SPALDING LLP
                                                         Michael J. Malone
                                                         Paul A. Straus
                                                         Mordecai Geisler
                                                         1185 Avenue of the Americas
                                                         New York, New York 10036
                                                         Tel. (212) 556-2100
                                                         Fax. (212) 556-2222

                                                         Attorneys for KPMG BERMUDA

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

Preliminary Statement ..................................................................................................................1

Statement of Facts and Procedural History ..................................................................................2

Argument .......................................................................................................................................6

I.   Midstream Should Not Be Permitted To Withdraw From This Case,
     Just Over Four Months Before The Close Of Fact Discovery,
     To Avoid Its Discovery Obligations ....................................................................................6

     A.   The Court Should Not Countenance Midstream's Attempt
          to Avoid  Complying with Pending Discovery Requests
          by Seeking to Withdraw. .............................................................................................7

     B.   Midstream's Withdrawal Would Dissolve the Only
          Lead Plaintiff in this Action Just Over Four Months
          Before the Close of Fact Discovery. ...........................................................................9

II.  Midstream's Request for a Protective Order Should Be Denied .....................................11

Conclusion ...................................................................................................................................13

i

Defendant KPMG (Bermuda) ("KPMG Bermuda") hereby respectfully submits this memorandum of law in opposition to the Motion to Withdraw Midstream Investments, Ltd. ("Midstream") as a Lead Plaintiff and Class Representative and for a Protective Order (the "Motion") in the above-captioned matter. KPMG Bermuda opposes the withdrawal of Midstream as sought by plaintiffs and respectfully requests that Midstream be required to comply with KPMG Bermuda's standing discovery requests.

## **PRELIMINARY STATEMENT**

Contrary to plaintiffs' assertions, defendant KPMG Bermuda has not consented to the withdrawal of Midstream as Lead Plaintiff.[1] In fact, a withdrawal by Midstream would have dramatic repercussions for this case. After four years of litigation, Midstream seeks to withdraw as Lead Plaintiff only a few months before the closing of discovery for the express purpose of avoiding compliance with KPMG Bermuda's pending discovery requests and deposition notice. If permitted, the withdrawal by Midstream would not only legitimize Midstream's evasion of its discovery obligations, but it would also eliminate the sole Lead Plaintiff with only four months of fact discovery left in this action. Midstream and Communications Workers of America ("CWA") successfully sought appointment, not as co-lead plaintiffs, but as one single Lead Plaintiff, in the form of an entity calling itself the "Midstream Group." A withdrawal by Midstream would dissolve the Midstream Group, eliminating the sole Lead Plaintiff approved by an earlier Court in the companion Schnall case.

Midstream cannot be permitted to walk away from its discovery obligations by the eleventh-hour expedient of withdrawing. Midstream was appointed as part of the Lead Plaintiff

---

[1] At no time did counsel for KPMG Bermuda consent to a withdrawal. On June 1, 2007, subsequent to plaintiffs' counsel's request for consent, counsel for KPMG Bermuda, Mr. Straus, informed plaintiffs' counsel that KPMG Bermuda did not consent to Midstream's withdrawal. See Declaration of Paul A. Straus, dated June 26, 2007 at ¶ 4.

based on its express commitment to the Court to provide discovery, including a deposition. Midstream is the only entity that can testify as to its dealings with Lead Counsel Milberg Weiss & Bershad, LLP ("Milberg Weiss"), which has been accused of paying individuals to serve as lead plaintiffs in securities fraud class actions. Moreover, Midstream is the only Lead Plaintiff capable of testifying regarding its decisions to buy and sell Annuity and Life Re (Holdings), Ltd. ("ANR") securities in the market during the Class Period. Although Midstream claims it is now motivated to withdraw because of what it considers the "modest" recovery from a settlement with other defendants in this case, it has known the amount of the settlement since August 2004; yet it did not seek to withdraw until May 2007, <u>almost three years later</u>, after KPMG Bermuda noticed its deposition. To allow Midstream to shirk its discovery obligations would permit plaintiffs' counsel to win appointment as class counsel in securities actions by proffering a "straw" lead plaintiff who could freely drop out of the case the moment it is required to comply with discovery. Doing so would vitiate the procedures set forth in the Private Securities Litigation Reform Act ("PSLRA").

Accordingly, plaintiffs' motion for withdrawal and a protective order should be denied, and Midstream should be directed to comply with its discovery obligations.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

This consolidated litigation began on December 4, 2002, when plaintiff Sherry Schnall filed a complaint against ANR and certain other defendants, not including KPMG Bermuda. See Complaint dated Dec. 3, 2002 (Docket No. 1).[2] Shortly thereafter, on February 3, 2003, the "Midstream Group," comprised of Midstream and CWA, jointly applied to be named the sole

---

[2] A number of similar actions against ANR were quickly filed by other plaintiffs and were consolidated with the <u>Schnall</u> case.

Lead Plaintiff representing the entire putative class.[3]  In support of this application, Midstream's representative, Thomas F. Carr, submitted a certification, under penalty of perjury, attesting to his transactions in ANR stock and, inter alia, undertaking "to serve as a representative party on behalf of the class, including providing testimony at deposition and trial."  See Decl. of David R. Scott dated February 3, 2003 ("Scott Decl."), Ex. C (emphasis added) (Docket No. 13).

In support of its motion to be appointed lead plaintiff, the Midstream Group argued that it had fulfilled the requirements of the PSLRA, 15 U.S.C. § 77z-1,  because: (1) representatives of Midstream and CWA had each filed certifications stating that they were willing to serve as representative parties on behalf of the Class, and if necessary, testify at depositions or trial; (2) the Midstream Group purchased a combined 36,500 shares of ANR stock, incurring an alleged total group loss of $531,576.80 and thus had a "significant financial interest" in the case; and (3) the Midstream Group satisfied the typicality and adequacy requirements under Fed. R. Civ. P. 23(a).[4]

Combining the alleged losses of both CWA and Midstream was critical for plaintiffs.  The appointment of the Midstream Group was opposed by another alleged purchaser of ANR securities, the General Retirement System of the City of Detroit ("Detroit"), which suffered the largest alleged loss of any class member moving to be named lead plaintiff.[5]

---

[3]    See Motion of CWA and Midstream for Consolidation, Appt. as Lead Pl. and for Approval of Selection of Lead Counsel, dated Feb. 3, 2003 (Docket No. 11).

[4]    See Memo in Support of the Mot. of CWA and Midstream for Consolidation, Appt. as Lead Pl. and for Approval of Selection of Lead Counsel, dated Feb. 3, 2003 at 6-9 (Docket No. 12).  Midstream also argued that given its location in Bermuda, it could provide unique benefits and efficiency in this suit against Bermuda defendants.

[5]    See Detroit's Memo of Law in Opp. to Competing Lead Plaintiff Mot. and in Further Support of its Mot., dated Feb. 21, 2003 at 1-3 (Docket No. 21).

On March 29, 2003, based in part on the certifications filed by Midstream and CWA, and over Detroit's opposition, Judge Goettel appointed the Midstream Group the sole Lead Plaintiff in this action. See Order, dated Mar. 29, 2003, attached as Exh. 1 to the Declaration of Paul A. Straus, dated June 26, 2007 ("Straus Decl.").

On October 23, 2003, Midstream and CWA commenced the instant action against KPMG Bermuda and another defendant[6] captioned Commc'n Workers of Am., et al. v. KPMG LLP (United States), et al., Civ. No. 03 CV 1826 (GLG). Plaintiffs filed their First Amended Complaint, the operative complaint in this action, on January 13, 2004. See First Am. Class Action Compl. (03 CV 1826 (GLG) (Docket No. 32)). Despite the requirements of the PSLRA, plaintiffs never provided notice to absent class members regarding this action and never moved for appointment of a lead plaintiff in this action, apparently relying on the earlier appointment of the Midstream Group in the Schnall case. On January 2, 2004, this case was consolidated with Schnall for all pretrial purposes. See Schnall v. Annuity and Life Re (Holdings), Ltd., Civil No. 3:02 CV 2133 (GLG), 2004 U.S. Dist. LEXIS 208 (D. Conn. Jan. 2, 2004).

On August 24, 2004, plaintiffs reached a settlement with ANR and the other named defendants in the Schnall action, and on January 21, 2005, the Court approved the terms and conditions of that settlement.[7] Midstream recovered $7,526 as a result of the settlement, which included payment for its alleged losses as well as all the costs and expenses it claimed to have incurred in the course of serving as Lead Plaintiff. See Straus Decl. Exh. 2.

On May 18, 2006, the United States Attorney for the Central District of California

---

[6] All claims against the other defendant, KPMG LLP (United States) ("KPMG US"), were dismissed on August 10, 2006. See Schnall v. Annuity and Life Re (Holdings), Ltd., Civil No. 3:02 CV 2133 (EBB), 2006 U.S. Dist. LEXIS 55439 (D. Conn. Aug. 10, 2006).

[7] See Order and Final Judgment, dated January 21, 2005 (Docket No. 192).

**4**

announced the indictment of plaintiffs' Lead Counsel, the law firm then known as Milberg Weiss Bershad & Shulman, LLP, and two of its partners, Steven Schulman and David Bershad, on charges relating to allegedly paying individuals to serve as lead plaintiffs in securities fraud class actions. Both indicted partners have billed time to this case, and Mr. Schulman was identified by plaintiffs as having worked on the Midstream Group's application to be appointed Lead Plaintiff. See Straus Decl. Exh. 3, at 8.

On August 30, 2006, the Court denied KPMG Bermuda's motion to dismiss and on September 14, 2006, KPMG Bermuda moved for reconsideration or clarification, in part. That motion has been fully briefed and is sub judice. On March 1, 2007, the Court entered a Scheduling Order, providing for all fact discovery to be completed by October 31, 2007. Consistent with the Scheduling Order, KPMG Bermuda served plaintiffs with a First Set of Requests for Production of Documents on March 5, 2007 and Interrogatories on April 25, 2007. Also on April 25, 2007, KPMG Bermuda served plaintiffs with a Notice of Rule 30(b)(6) Deposition of Midstream.

On May 2, 2007, plaintiffs' counsel sent a letter advising of a conflict with the dates noticed for the depositions of CWA and Midstream and promising to revert back with alternate dates for both depositions. See Straus Decl. Exh. 4. Instead, on May 23, 2007, just a few weeks after KPMG Bermuda noticed Midstream's deposition, plaintiffs' counsel advised KPMG Bermuda that Midstream would not appear for a deposition and was seeking to withdraw.[8] After further discussions between counsel, on June 5, 2007, plaintiffs filed the instant Motion.

In the Motion, Midstream states that because of its "modest recovery" in the earlier

---

[8] Plaintiffs' counsel did provide dates for the deposition of CWA's Rule 30(b)(6) representative, its Secretary-Treasurer, Barbara J. Easterling. That deposition was taken on June 7, 2007.

5

settlement and the fact that KPMG Bermuda is the sole remaining defendant, Midstream is "no longer willing to undergo the burden of serving as Lead Plaintiff, and particularly to prepare for and attend its deposition." See Memo of Law in Support of Midstream's Motion, dated June 5, 2007 at 2 ("Pl. Memo"). Yet, although Midstream has been aware of that "modest" settlement since August 2004, it did not seek to withdraw until May 2007, after KPMG Bermuda's discovery requests were served, with just over four months remaining before the October 31, 2007 date by which all fact discovery is set to be completed in this case. See Scheduling Order (Docket No. 238).

*   *   *

For the reasons set forth below, Midstream's eleventh-hour attempt to avoid its obligations to comply with pending discovery requests should be denied.

## **ARGUMENT**

**I.  MIDSTREAM SHOULD NOT BE PERMITTED TO WITHDRAW FROM THIS CASE, JUST OVER FOUR MONTHS BEFORE THE CLOSE OF FACT DISCOVERY, TO AVOID ITS DISCOVERY OBLIGATIONS**

After four years of litigation, Midstream's last minute gambit to withdraw for the express purpose of avoiding its discovery obligations cannot be permitted.[9] See Pl. Memo at 2. Furthermore, permitting that withdrawal would leave this action with no lead plaintiff just four months before the close of fact discovery. Midstream should not be permitted to use withdrawal as a means of evading its obligations under the federal rules, simply because now, at this late hour, it deems those obligations burdensome.

---

[9] Midstream's frank admissions regarding the reason it seeks to withdraw demonstrate how much this case is being driven by plaintiffs' counsel instead of by plaintiffs, which is exactly what the PSLRA sought to remedy. Midstream admits that it seeks to withdraw because the burden of litigating is not worth the relatively little it can hope to gain in this action. See Pl. Memo at 2. It is plaintiffs' counsel, therefore, not their clients, who appear to be driving this case.

### A. The Court Should Not Countenance Midstream's Attempt to Avoid Complying with Pending Discovery Requests by Seeking to Withdraw.

Midstream's eleventh-hour motion is particularly egregious given that its express purpose in seeking this withdrawal is to avoid complying with its obligation to respond to KMPG Bermuda's pending discovery requests. See Pl. Memo at 2. In no event should Midstream be permitted to withdraw simply as an expedient to avoid discovery. E.g., Funke v. Life Fin. Corp., No. 99 Civ. 11877 (CBM), 2003 WL 21182763 at *2 (S.D.N.Y. May 20, 2003) (directing lead plaintiff seeking to withdraw to appear for deposition).

At the time it sought appointment as lead plaintiff as part of the Midstream Group in February 2003, Midstream certified under penalty of perjury that it would "serve as a representative party on behalf of the class, including providing testimony at deposition and trial." See Scott Decl. Exh. C (emphasis added). This certification, including its express undertaking to provide discovery, was part of the basis upon which the Midstream Group's application was approved. See Straus Decl. Exh. 1. In successfully seeking appointment, Midstream not only pledged to provide discovery in this case, but it also took upon itself a fiduciary duty to the members of the class whom it sought to represent. See Zucker v. Zoran Corp., No. C 06-04843 WHA, 2006 U.S. Dist. LEXIS 93469, at *5-6 (N.D. Cal. Dec. 11, 2006) (PSLRA intended for a single lead plaintiff to act as a fiduciary for all members of a proposed class and the lead plaintiff must act with "good faith and meritorious advocacy"). Upon becoming Lead Plaintiff, Midstream became obliged to monitor this litigation and plaintiffs' counsel, which obligation it is now also abandoning.

The discovery Midstream seeks to avoid by withdrawing is crucial to the issues in this case, including whether this case can even proceed as a class action. First, Lead Plaintiff's Lead Counsel, Milberg Weiss, and two of its partners have been indicted by the federal government on

7

several charges relating to alleged payments made to individuals in return for their serving as lead plaintiffs. Both indicted partners, Steven Schulman and David Bershad, billed time to this case, and Mr. Schulman worked specifically on the appointment of the Midstream Group as Lead Plaintiff. See Straus Decl. Exh. 3, at 8. Only Midstream can testify regarding what, if any, promises or payments were made to it upon being brought into this case.[10]

Second, Midstream is the only member of the Midstream Group that can testify regarding its decision to purchase and sell ANR securities in the market during the Class Period. CWA relied exclusively on an investment advisor with discretionary authority and was not involved in the decisions to purchase ANR securities on its behalf. CWA cannot testify about those decisions, what the investment adviser knew, or what it relied on. Midstream, on the other hand, potentially has information supporting various defenses regarding what was known about ANR in the marketplace during the Class Period. KPMG Bermuda needs discovery from a lead plaintiff that is capable of testifying to that central aspect of this case. Midstream should not be permitted to avoid opening its files and providing sworn testimony by the expedient of seeking to withdraw. Moreover, even if Midstream were permitted to withdraw, it should in no event be permitted to do so until after it has complied with the outstanding discovery request. The Motion should be denied.

---

[10] See, e.g., Mauldin v. Wal-Mart Stores, Inc., Civil Action No. 1:01-CV-2755-JEC, 2006 U.S. Dist. LEXIS 85189, at *11-12 (N.D. Ga. Nov. 22, 2006) (granting defendant's request for discovery regarding details of lead plaintiff's arrangements with local counsel and Milberg Weiss, given evidence of suspicious payments to the lead plaintiff by local counsel, and the recent indictment of Milberg Weiss, "to ensure that [lead plaintiff's] charge was not fraudulently procured.").

8

### B. Midstream's Withdrawal Would Dissolve the Only Lead Plaintiff in this Action Just Over Four Months Before the Close of Fact Discovery.

There is only one Lead Plaintiff in this case. Midstream and CWA sought (and won) appointment, not as co-lead plaintiffs, but as a single entity, the "Midstream Group."[11] Midstream and CWA were deliberately combined in order to create a "significant financial interest" in this case,[12] and each of their alleged individual losses alone would have paled in comparison to the loss allegedly incurred by the rival lead plaintiff candidate, Detroit.[13] Neither CWA nor Midstream alone would have had even the second largest financial stake in this case.[14]

---

[11] Under the PSLRA, "there is one lead plaintiff" appointed by the court: "an individual, an institution or a properly-constituted group." In re Cendant Corp. Litig., 264 F.3d 201, 223 n.3 (3d Cir. 2001) (emphasis added; internal quotations omitted) (the PSLRA "always speaks of the lead plaintiff in the singular"). Only one "entity" is entitled to speak for the class: the lead plaintiff. Id. In cases where a group serves as lead plaintiff, "it is for the group's members to decide how the group will make decisions, but it is the group—not its constituent members—that speaks for the class." Id.

[12] The lead plaintiff provisions of the PSLRA were designed to end the "race to the courthouse" by plaintiffs' lawyers and to "encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class." In re Star Gas Sec. Litig., No. 3:04cv1766 (JBA), 2005 U.S. Dist. LEXIS 5827, at *4-5 (D. Conn. Apr. 8, 2005) (quoting H.R. Conf. Rep. 104-369, at 34). Specifically, the law was "intended to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." Id at *5 (emphasis added).

[13] Detroit claimed losses amounting to $686,632. See Detroit General's Memo of Law in Opp. to Competing Lead Plaintiff Mot. and in Further Support of its Mot., dated Feb. 21, 2003 at 1 (Docket No. 21). Midstream claimed losses of $187,435 and CWA claimed losses of $344,141.80. See Decl. of David R. Scott, Ex. C (Docket No. 13).

[14] See Detroit General's Memo of Law in Support of its Mot. for Reconsideration, dated Apr. 16, 2003, Ex. B (Docket No. 38). Indeed, the movant with the second largest claimed loss, the Board of Trustees of Local 338 Retirement Fund, reporting an alleged individual loss of $383,017, withdrew its lead plaintiff motion in favor of Detroit because Detroit clearly had the biggest claimed alleged loss in this case. See id. Had Midstream and CWA not combined in order to manufacture the second largest alleged loss in this case, CWA alone might never have been considered by Judge Goettel for appointment as lead plaintiff. See, e.g., In re Goodyear Tire & Rubber Co. Sec. Litig., Case No. 5:03CV2166, 2004 U.S. Dist. LEXIS 27043, at *17

9

If Midstream were permitted to withdraw after four years of litigation, the "Midstream Group" would cease to exist, leaving this action with no lead plaintiff, just over four months before the close of fact discovery.[15]

Midstream offers no justification for its delay in seeking withdrawal. Midstream claims it now seeks to withdraw because it received only a "modest recovery" from the settlement with the ANR defendants, and it is "no longer willing to undergo the burden" of serving as Lead Plaintiff, including sitting for a deposition. See Pl. Memo at 2. Yet <u>Midstream has been aware of the terms of the settlement for almost three years</u>, since August 2004. Nevertheless, Midstream did not seek to withdraw until KPMG Bermuda sought to obtain its documents and take its deposition.

Midstream's last-minute decision to withdraw will cause genuine prejudice, given that barely four months now remain in the fact discovery period. Even if plaintiffs seek to substitute another last minute lead plaintiff—which they have not done, and should not be permitted to do—it is highly doubtful that a new plaintiff could gain sufficient familiarity with the case in time to be able to supervise plaintiffs' counsel in any meaningful way.[16]

---

(N.D. Ohio May 12, 2004) (movant for lead plaintiff rejected because it did not have the largest alleged loss resulting from its relevant securities transactions).

[15] In addition to the combined loss, Midstream also explicitly cited its location in Bermuda as a prime reason why the Midstream Group should be appointed. Specifically, Midstream claimed that "its local presence in Bermuda gives the Midstream Group an additional low-cost monitoring advantage" not shared by its competitors for lead plaintiff. See Memo of Law in Further Support of the Mot. of the Midstream Group, dated Mar. 3, 2003 at 5 (Docket No. 24). CWA has no offices or employees in Bermuda, which could have filled this void. See Easterling Tr. at 10:8-11.

[16] Even in circumstances where, unlike this case, withdrawal is appropriate, courts have still required plaintiffs to seek appointment of a new lead plaintiff that meets the standards of the PSLRA. E.g., In re Neopharm, Inc. Sec. Litig., 02 C 2976, 2004 U.S. Dist. LEXIS 5814, at *2 (N.D. Ill. Apr. 8, 2004) (potential lead plaintiffs must move for appointment as lead plaintiff after withdrawal allowing "the court to make a reasoned analysis under the PSLRA rather than to summarily accept the submissions provided by lead counsel for the former lead plaintiff"); see

If Midstream's cavalier attitude toward its commitment to the class and its promise to provide discovery were permitted by this Court to prevail, then class action firms would be able to seek appointment as class counsel by using "straw" plaintiffs who file certifications with commitments they have no intention to keep, and then seek to withdraw the moment the case threatens to become a "burden." The PSLRA's statutory lead plaintiff requirements would be eviscerated. Plaintiffs should not be permitted to disregard the statutory mandate, and the Motion should be denied.

## II. MIDSTREAM'S REQUEST FOR A PROTECTIVE ORDER SHOULD BE DENIED

For all the reasons argued above, the Court should also deny plaintiffs' request for a protective order freeing Midstream from its obligation to respond to KPMG Bermuda's pending discovery requests. See Funke, 2003 WL 21182763 at *2 (lead plaintiff seeking to withdraw ordered to appear for deposition).

Plaintiffs have made no showing of good cause as to why Midstream should be protected, other than generally claiming that its sole principal, Mr. Carr, will be inconvenienced. That is plainly insufficient.[17] Furthermore, Midstream cannot now be heard to complain that sitting for a

---

also In re Xerox, Civil No. 3:99 CV 2374 (AWT), 2006 WL 1359339, at *1 (D. Conn. May 12, 2006) (PSLRA requires form of notice of lead plaintiffs' withdrawal to other potential movants who wish to serve as lead plaintiff and class representative before determination is made as to appointment of new lead plaintiffs). Plaintiffs here have not sought any such appointment, nor should they be permitted to do so at this extremely late point in the action. KPMG Bermuda reserves all of its rights with respect to the appointment of any lead plaintiff and class representative in this action.

[17]   A protective order should issue only when necessary to prevent "injury, harassment or abuse of the court's processes." Massaro v. Allingtown Fire Dist., Civil No. 3:02cv537 (PCD), 2003 U.S. Dist. LEXIS 25331 at *2 (D. Conn. May 30, 2003) (citation omitted) (denying plaintiffs' motion for protective order). Under Fed. R. Civ. Pro. 26(c), plaintiffs "must show good cause by demonstrating a particular need for protection," and "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient. Id. at *3 (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)); SEC v. Sekhri, 98 Civ.

**11**

deposition would "annoy, embarrass or oppress" it when Midstream offered to the Court under oath to provide discovery in exchange for being named Lead Plaintiff. See Scott Decl. Exh. C. [18]

Plaintiffs' motion should be denied, and Midstream should be ordered to comply with all outstanding discovery requests.

---

2320 (RPP), 2002 U.S. Dist. LEXIS 22677, at *3-4 (S.D.N.Y. Nov. 22, 2002) (citations omitted) (denying protective order preventing the taking of a deposition; stating that protective orders preventing the taking of depositions "are rarely granted"). Accordingly, the Second Circuit has stated that "an order to vacate a notice of taking [a deposition] is generally regarded as both unusual and unfavorable." SEC v. Sekhri, 2002 U.S. Dist. LEXIS 22677 at *4 (citing Inv. Props. Int'l, Ltd. v. IOS, Ltd., 459 F.2d 705, 708 (2d Cir. 1972)).

[18]   Unlike the parties in the cases cited by plaintiffs (Pl. Memo at 4-10), Midstream is not an absent class member, but a member of the Lead Plaintiff that sought and obtained appointment on the basis that it would provide discovery. Midstream is also not a named plaintiff or class representative who has withdrawn, but a member of the current Lead Plaintiff that seeks withdrawal for the express purpose of avoiding a deposition.

## CONCLUSION

For the foregoing reasons, KPMG Bermuda respectfully requests that plaintiffs' Motion be denied. KPMG Bermuda further asks that Midstream be directed to respond to KPMG Bermuda's outstanding document requests and interrogatories and to appear for deposition.

**DEFENDANT
KPMG BERMUDA**


By:     /s/ Morgan P. Rueckert
        Frederick S. Gold
        Fed. Bar. No.: ct 03560
        Morgan P. Rueckert
        Fed. Bar. No.: ct 19838
        SHIPMAN & GOODWIN LLP
        300 Atlantic Street
        Stamford, Connecticut 06901
        Tel. (203) 324-8100
        Fax. (203) 324-8199

        Michael J. Malone
        Paul A. Straus
        Mordecai Geisler
        KING & SPALDING LLP
        1185 Avenue of the Americas
        New York, New York 10036
        Tel. (212) 556-2100
        Fax. (212) 556-2222


        Attorneys for KPMG BERMUDA

## Certificate of Service

    I hereby certify that on June 26, 2007, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Pursuant to the Court's Electronic Filing Order, a paper copy will be delivered to Chambers.

            <u>/s/ Morgan P. Rueckert</u>
            Morgan P. Rueckert
            Fed. Bar No. ct19838
            Shipman & Goodwin LLP
            300 Atlantic Street
            Stamford, CT 06109
            Tel: (203) 324-8100
            Fax: (203) 324-8199