UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
_____
                                :
SHERRY SCHNALL, Individually and :
on Behalf of All Others Similarly :
Situated,                       :
                                :
          Plaintiffs,           :     CIVIL NO.
                                :
     v.                         :
                                :     3:02 CV 2133 (EBB)
ANNUITY AND LIFE RE (HOLDINGS),  :
LTD., et al.,                   :
                                :
          Defendants.           :
_____
```

**RULING ON PLAINTIFF'S MOTIONS TO WITHDRAW AND FOR A PROTECTIVE
ORDER AND DEFENDANT'S MOTION FOR EXTENSION OF TIME**

Plaintiff, Midstream Investments, Ltd. ("Midstream") moves to withdraw as Lead Plaintiff and moves for a protective order preventing Defendant KPMG Bermuda ("KPMG") from taking the deposition of its representative Thomas Carr. Defendant opposes both motions and, in a separate motion of its own, requests an extension of time to respond to Plaintiff's motion for class certification until 30 days after the later of (i) entry of judgment of the court's order deciding Midstream's motion to withdraw as Lead Plaintiff or (ii) the completion of any and all discovery and other proceedings consistent with the court's order deciding the withdrawal motion. For the following reasons, Plaintiff's motion to withdraw [Doc. No. 245] is DENIED, Plaintiff's motion for a protective order [Doc. No. 245] is DENIED

and Defendant's request for an extension of time [Doc. No. 250] is GRANTED.

## Factual Background

All parties are assumed to be familiar with the facts of this case. Thus this court will recount only those facts necessary for a determination of the foregoing motions.

This consolidated litigation began on December 4, 2002, when plaintiff Sherry Schnall filed a complaint against Annuity and Life Re (Holdings), Ltd. ("ANR") and certain other defendants, not including KPMG Bermuda. [Doc. No. 1]. Shortly thereafter, the Midstream Group, comprised of Midstream Investments, Ltd. and the Communication Workers of America ("CWA") jointly moved for consolidation, appointment as Lead Plaintiff, and approval for selection of Lead Counsel. [Doc. No. 11]. In support of this motion, Midstream's representative, Thomas Carr, submitted a certification under penalty of perjury undertaking to "serve as a representative party on behalf of the class, including providing testimony at deposition and trial." [Doc. No. 13, Ex. C].

The appointment of Midstream and CWA as Lead Plaintiff was opposed by several other purchasers of ANR securities, including the General Retirement System of the City of Detroit ("Detroit"). Detroit suffered the largest alleged loss of any class member

2

moving to be named Lead Plaintiff.[1] Nonetheless, over Detroit's objection, Midstream and CWA were appointed Lead Plaintiff.

After this appointment, Midstream and CWA commenced the present action against KPMG Bermuda. On January 7, 2004, this action was consolidated with Schnall for all pretrial purposes. [Doc. No. 102]. On August 24, 2004, plaintiffs reached a settlement with ANR and the other named defendants in Schnall, which was approved by the Court on January 21, 2005. [Doc. No. 192]. Midstream recovered $7,526, which included payment for alleged losses as well as costs and expenses it claimed to have incurred in the course of serving as Lead Plaintiff. This left KMPG Bermuda, the Defendant in the instant case, as the sole remaining Defendant.[2]

On April 25, 2007, Defendant served Counsel for CWA and Midstream with a notice of Rule 30(b)(6) deposition. Plaintiff's counsel provided a date for the deposition of CWA's representative, and that deposition was taken on June 7, 2007. However, on May 23, 2007, Plaintiff's counsel advised Defendant that Midstream would not voluntarily appear for a deposition and was seeking to withdraw

---

[1]Midstream and CWA alleged a joint loss of $531,576.80, [Doc. No. 12 at 1-2], with CWA's loss at $344,142 and Midstream's loss at $187,435. Detroit alleged a loss of $686,632. [Doc. No. 38 at 3]. The Board of Trustees of Local 338 Retirement Fund, which alleged a loss of $383,000, withdrew its lead plaintiff motion in support of Detroit. [Doc. No. 22].

[2]Claims against KMPG USA were dismissed on August 10, 2006. [Doc. No. 208].

as Lead Plaintiff.[3]

## **Discussion**

### **I. Plaintiff's Motion to Withdraw**

The Court finds that Midstream is seeking to withdraw as Lead
Plaintiff for the express purpose of avoiding its discovery
obligations.  Midstream claims that, in light of the modest
recovery it received from the earlier settlement against ANR, it is
"no longer willing to undergo the burden of serving as Lead
Plaintiff, and particularly to prepare and attend its deposition."
[Doc. No. 246 at 2].  However, this earlier settlement was approved
in January 2005.  Midstream, presumably aware of the terms of this
settlement, did not seek to withdraw then.  Instead, it waited over
two years, and moved to withdraw just weeks after Defendant noticed
its deposition.

When it sought appointment as Lead Plaintiff, Midstream
certified under penalty of perjury that it would "serve as a
representative party on behalf of the class, including providing
testimony at deposition and trial." [Doc. No. 13, Ex. C].  As one
District Court has noted, a Lead Plaintiff under the Private
Securities Litigation Reform Act (PSLRA) acts "as a fiduciary for
all members of the proposed class. The lead plaintiff must provide

---

[3]Counsel for the parties disagree on whether Defendant's counsel
consented to the withdrawal in subsequent telephone conversations on May 30th
and June 1st. [Doc. No. 251, Ex. 2 (declaration of Beth Kaswan)]; [Doc. No.
249, Ex. 2 (declaration of Paul Straus). Regardless, Defendant has voiced its
objection to the Court.

fair and adequate representation and management to obtain the
largest recovery for the proposed class consistent with good faith
and meritorious advocacy." <u>Zucker v. Zoran Corp.</u>, No. C 06-04843
WHA, 2006 WL 3591156, at *2 (N.D. Cal. Dec. 11, 2006). Although "it
is certainly within the lead plaintiffs' discretion . . . to
propose their own withdrawal and substitution should it be
discovered that they may no longer adequately represent the
interests of the purported plaintiff class," <u>In re NYSE
Specialists Sec. Litig.</u>, 240 F.R.D. 128, 134 (S.D.N.Y. Feb. 26,
2007), here, Midstream has offered no justification for its
withdrawal at this late stage of the litigation other than its
desire to avoid complying with outstanding discovery.  Absent more,
and in light of Defendant's objection to the withdrawal, this court
cannot grant Midstream's request.  <u>See</u>, <u>e.g.</u> <u>In re Initial Pub.
Offering Sec. Litig.</u>, 224 F.R.D. at 552 (granting the withdrawal
requests of two lead plaintiffs, but noting that "defendants have
not objected to their request and there is no basis to refuse their
request," and denying the withdrawal request of a third lead
plaintiff because the court was not given a reason for the
withdrawal); <u>In re Initial Pub. Offering Sec. Litig.</u>, No. 21 MC
92SAS, 01 Civ. 9741, 01 Civ. 10899, 2004 WL 3015304, at *1
(S.D.N.Y. Dec. 27, 2004) (granting a withdrawal request where it
was determined that the lead plaintiff had not purchased shares
during the alleged class period); <u>Funke v. Life Financial Corp.</u>,

No. 99 Civ. 11877, 2003 WL 21182763, at *2 (S.D.N.Y. May 20, 2003) (withdrawal granted for three lead plaintiffs where the first plaintiff had no damages remaining after the Court dismissed some of the claims in the case, the second plaintiff had died, and the third plaintiff was, as the recently widowed mother of two young children, unable to continue in her capacity as a class representative).[4]

In addition, the Court agrees that Midstream and CWA sought and won appointment as a single entity, and not as "co-Lead Plaintiffs", as Midstream suggests. Midstream argues that "there is no merit to KPMG Bermuda's argument that Plaintiffs strategically and improperly[5] combined the losses of Midstream and CWA to create the largest financial interest in this case and there[b]y become appointed as Lead Plaintiffs," [Doc. No. 252 at 4]. It notes that even after CWA and Midstream's losses were aggregated, Detroit still retained the largest alleged loss of any movants seeking Lead Plaintiff status. Yet in their joint motion seeking Lead Plaintiff status, CWA and Midstream stated:

"This motion is made on the grounds that Movants

---

[4]In other cases cited by the parties, the courts approved the withdrawal of a lead plaintiff, but did not elaborate on the reason why. See In re CIGNA Corp. Secs. Litig., No. Civ.A. 02-8088, 2005 WL 3536212, at *2 (E.D. Pa. Dec 23, 2005) (noting that it had approved the withdrawal of a co-lead plaintiff); In re Bank One Secs. Litig./First Chicago S'holder Claims, No. 00 CV 0767, 2002 WL 989454, at *2 (N.D. Il. May 14, 2002) (granting an oral motion to withdraw, without elaboration).

[5]The court notes that Defendant argues that the combination was deliberate, but does not argue that it was improper.

are the most adequate plaintiff, as defined by the PSLRA. Movants have suffered losses of $531,576.80 in connection with purchases of Annuity and Life shares during the Class Period . . . On information and belief, this is the greatest loss sustained by any moving Class member or plaintiff group who has brought suit or filed an application to serve as Lead Plaintiff in these Actions." [Doc. No. 12 at 1-2].

The Court did not issue a written opinion explaining its decision to appoint CWA and Midstream as Lead Plaintiff. Although it turned out that Midstream and CWA jointly suffered the second largest alleged loss, Midstream and CWA's assertions, as well as process under the PSLRA for determining the most adequate Lead Plaintiff, indicate that this aggregation of their losses was a significant factor in the court's decision to grant them Lead Plaintiff status.[6] Moreover, this aggregation and their joint motion indicate that the Court appointed them as a single Lead Plaintiff, rather than co-Lead Plaintiffs. Neither of their

---

[6]In determining the most adequate lead plaintiff, the PSLRA creates a presumption in favor of "the person or group of persons that: (aa) has either filed the complaint or made a motion [to be the lead plaintiff]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 . . . " 15 U.S.C. 77z-1(a)(3)(B)(iii)(I). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff - (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. In other words, in choosing the most adequate plaintiff, "'if the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to satisfy and satisfies the requirements of Rule 23.'" In re Host America Corp. Sec. Litig., 236 F.R.D. 102, 105 (D. Conn. 2006), citing In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002).

individual losses was the second largest alleged loss.[7]  In addition, the order granting them their Lead Plaintiff status referred to them in the singular ("The following class members are hereby appointed Lead Plaintiff for the class . . . Communication Workers of America and Midstream Investments Ltd." [Doc. No. 33]), as did the papers they themselves filed on behalf of their motion. [Doc. 12 at 1, 6, 10], [Doc. 24 at 2]. Indeed, Midstream and CWA referred to themselves collectively as "the Midstream Group", and argued that Local 338, which had suffered the second largest alleged individual loss (after Detroit), should not be appointed Lead Plaintiff because it "suffered a significantly smaller financial loss than the Midstream *Group*." [Doc. 24 at 1] (emphasis added). Plaintiff also argued that "the Midstream Group has the largest financial loss of any movant who does not violate the PSLRA's presumptive bar on "professional plaintiffs". . .". [Doc. 24 at 2].  Thus, Midstream's withdrawal would leave this action with no Lead Plaintiff at an advanced stage of litigation.

In sum, the Court denies Midstream's request to withdraw on the ground that it is seeking to do so purely to avoid its discovery obligations. The Court also notes that Midstream's withdrawal would dissolve the Lead Plaintiff group that was

---

[7]Midstream claimed losses of $187,435 and CWA claimed losses of $344,141.80. [Doc. No. 13, Ex. C].  The movant with the second largest alleged loss, the Board of Trustees of Local 338 Retirement Fund, reporting an alleged individual loss of $383,017, withdrew its motion to be appointed Lead Plaintiff in favor of Detroit. [Doc. No. 38, Ex. B].

appointed in this case.

**II. Plaintiff's Motion for a Protective Order**

A protective order should issue only when necessary to prevent "injury, harassment or abuse of the court's processes." Bridge C.A.T. Scan Assocs. v. Technicare Corp., 710 F.2d 940, 944-45 (2d Cir. 1983); Fed. R. Civ. P. 26(c). "[T]he burden is upon the party seeking nondisclosure or a protective order to show good cause." Penthouse Int'l v. Playboy Enters., 663 F.2d 371, 391 (2d Cir. 1981); In re Agent Orange, 821 F.2d 139, 145 (2d Cir. 1987). Broad allegations of harm do not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere trifle. Schiller v. City of New York, Nos. 04 Civ. 7922 & 7921, 2007 WL 136149, at *5 (S.D.N.Y. Jan. 19, 2007). Here, the only harm Midstream cites in its motion for a protective order is the inconvenience Mr. Carr will suffer in appearing at a deposition noticed in Connecticut. [Doc. No. 252 at 2]. Thus, it has not shown good cause for its proposed protective order, especially in light of the fact that the Court declines its request to withdraw as Lead Plaintiff.

Moreover, Defendant has stated valid reasons for why it requires the deposition of Mr. Carr. Midstream argues that any question or discovery request that KMPG Bermuda has can still be directed to CWA, and that Defendant has already obtained the information it needs to address class certification issues and whatever defenses it may have against the class from CWA's

9

deposition and response to interrogatories. [Doc. 252 at 5].
However, according to the Defendant, Midstream is the only member
of the Lead Plaintiff group that can testify regarding its decision
to purchase and sell ANR securities in the market during the Class
Period. From its deposition of CWA, Defendant states that it
learned that CWA relied exclusively on an investment advisor and
was not involved in the decisions to purchase ANR securities, and
thus cannot testify about those decisions, what the investment
advisor knew or what the investment advisor relied on. Defendant
contends that "Midstream potentially has information supporting
various defenses regarding what was known about ANR in the
marketplace during the class period. KPMG needs discovery from a
lead plaintiff that is capable of testifying to that central aspect
of this case." [Doc. No. 249 at 10]. Thus, Defendant's noticed
deposition of Mr. Carr is not unreasonably cumulative, nor is it
seeking information that it already had ample opportunity to
discover. See Fed.R.Civ.P. 26(b)(2)(i)-(iii). Rather, Defendant's
proposed deposition is consistent with the position that "the
deposition-discovery regime set out by the Federal Rules of Civil
Procedure is an extremely permissive one to which courts have long
'accorded a broad and liberal treatment to effectuate their purpose
that civil trials in the federal courts [need not] be carried on in
the dark.'" In re Subpoena Issued to Dennis Friedman, 350 F.3d 65,
69 (2d. Cir. 2003), quoting Schlagenhauf v. Holder, 379 U.S. 104,

114-15, 85 S.Ct. 234 (1964).

**III. Defendant's Motion for an Extension of Time**

Defendant argues that it cannot respond to Plaintiff's certification motion [Doc. No. 232] until it completes its class certification discovery, which includes the deposition of Midstream's representative.   The Court agrees.   Therefore, the Court grants Defendant's motion for an extension of time to respond to Plaintiff's motion for class certification until 30 days after the later of (i) entry of this order denying Plaintiff's motion to withdraw and motion for a protective order or (ii) the completion of Defendant's class certification discovery.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Withdraw [Doc. No. 245] is DENIED, Plaintiff's Motion for a Protective Order [Doc. No. 245] is DENIED, and Defendant's Motion for an Extension of Time [Doc. No. 250] is GRANTED.


SO ORDERED


____/s/_____
ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this _____ day of October, 2007.

11

12