# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| SHERRY SCHNALL, Individually and On Behalf of All Others Similarly Situated | ) ) ) | Master File No.  02CV2133 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ANNUITY AND LIFE RE (HOLDINGS), LTD., et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF PETITION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

**SCOTT + SCOTT, LLP**
David R. Scott
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Tel:  (860) 537-5537
Fax:  (860) 537-4432

**SCOTT + SCOTT LLP**
Beth A. Kaswan
29 West 57th Street, 14th Floor
New York, NY 10019
Tel:  (212) 223-6444
Fax:  (212) 223-6334

**MILBERG LLP**
Barry A. Weprin
Todd Kammerman
One Pennsylvania Plaza
New York, NY  10119-0165
Tel:  (212) 594-5300
Fax: (212) 868-1229

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

   A.    Plaintiffs' Counsel Should Be Awarded Fees as a Percentage of the Common
         Fund Created as a Result of the Settlement ............................................................2

   B.    The Requested Fee is Fair and Reasonable as a Percentage of the
         Fund Created for the Benefit of Class Members and Consistent
         with Fee Awards in Comparable Cases ................................................................5

         1.    The Time and Labor Expended by Counsel ..................................................8

         2.    The Magnitude and Complexity of the Litigation ......................................9

         3.    The Risk of the Litigation .............................................................................9

         4.    The Quality of Representation and the Result Achieved..........................13

         5.    The Relation of the Requested Fee to the Settlement ...............................13

         6.    Public Policy Considerations ......................................................................13

   C.     A "Cross-Check" of Plaintiffs' Counsel's Lodestar
         Demonstrates the Reasonableness of the Requested Award..................................14

   D.    Plaintiffs' Counsel Should be Reimbursed for their Reasonably
         Incurred Litigation Expenses ...............................................................................16

   E.    Lead Plaintiff CWA Is Entitled To Reimbursement of Its Reasonable
         Costs and Expenses (Including Lost Wages) Directly Relating To Its
         Representation Of The Class ................................................................................16

II.   CONCLUSION ..............................................................................................17

# TABLE OF AUTHORITIES

*Anixter v. Home-Stake Prod. Co.,* 77 F.3d 1215 (10th Cir. 1996)................................................. 11

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)............................................................... 11

*Bateman Eichler v. Berner*, 472 U.S. 299, 86 L. Ed. 2d 215, 105 S. Ct. 2622 (1985) ................. 13

*Boening Co. v. Van Gemert*, 444 U.S. 472 (1980)........................................................................... 2

*Btesh v. Bahnman*, No. 3:98 CV-00213 (D. Conn. Nov. 3, 2000)................................................... 6

*Cherner v. Transitron Elec. Corp.*, 221 F. Supp. 55 (D. Mass. 1963)......................................... 12

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974)..................................................... 12

*Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) ............................................................. 11

*Freedman v. Value Health, Inc.,* No. 01-7567. 34 Fed. Appx. 408  (2d Cir. 2002) ..................... 10

*Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998)............................................................. 15

*Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000)......................... 3, 5, 15,

*Grant v. Martinez,* 973 F.2d 96, 100 (2d Cir. 1992)..................................................................... 15

*In re "Agent Orange Prod. Liab. Litig.,* 818 F.2d 226, 236 (2d Cir. 1987) ................................ 12

*In re APAC Teleservice, Inc. Sec. Litig.*, No. 97 Civ. 9145 (BJS)............................................. 6, 15

*In re Apple Computer Sec. Litig.*, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH)
    ¶ 96, 252 (N.D. Cal. Sept. 6, 1991).......................................................................................... 11

*In re Biogen Sec. Litig.*, No. 94-12177-PBS (D. Mass. 1999)...................................................... 10

*In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2002 U.S. Dist. LEXIS 23170, at *5
    (S.D.N.Y. Dec. 4, 2002)............................................................................................................. 6

*In re Buspirone Patent,* 01-MD-1410, slip op. at 41-43 (S.D.N.Y. Apr. 11, 2003) ................ 6, 15

*In re Cityscape Fin. Corp. Sec. Litig.,* MDL Docket No. 1234 (E.D.N.Y. Nov. 27, 2000) .......... 6

*In re Clorox Co. Sec. Litig., 238 F. Supp.* 2d 1139 (N.D. Cal. 2002).......................................... 11

*In re Fine Host Corp. Sec. Litig.*, No. MDL 1241, 3:97-CV-2619,
2000 WL 33116538 ................................................................ 3, 5, 14

*In re Generics Corp. Sec. Litig.*, [1980 Transfer Binder] Fed. Sec. L. Rep.
(CCH) ¶ 97,719, at 98,770 (S.D.N.Y. Dec. 4, 1980) ...................... 14

*In re Health Management, Inc. Sec. Litig.*, No. 96-CV-889 (ADS) (E.D.N.Y. 1999) .............. 10

*In re Merrill Lynch & Co., Inc. Research, 2007 WL 313474 *8 (S.D.N.Y. Feb. 1, 2007)* ............ 3

*In re Netease.com, Inc. Sec. Litig.,* No. 01-CV-9405 (RO), ............................................ 5

*In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884, 2007 WL 2115592 *2
(D.Conn. July 20, 2007)................................................................ 5

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,* 724 F. Supp. 160
(S.D.N.Y. 1989) .......................................................................... 3

*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735
(S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ...................... 12

*Leventhal v. Tow*, No. 3:97 CV-01642 (DJS) (D. Conn. Jan. 31, 2001) ...................... 9

*Maley*, 186 F. Supp. 2d at 369-70............................................................... 3

*Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375 (1970) .......................................... 2

*Milman v. BoxHill Sys. Corp.,* No. 98 Civ. 8640 (SAS) (S.D.N.Y. Jan. 9, 2001)......... 6

*Missouri v. Jenkins*, 491 U.S. 274 (1989) .................................................... 14

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 136 (2d Cir. 1983).......................................................... 15

*Newman v. Caribiner Int'l Inc.*, No. 99 Civ. 2271 (S.D.N.Y. Oct. 19, 2001) ............ 6, 15

*RMED Int'l, Inc v. Sloan's Supermarkets, Inc.,* No. 94 Civ. 5587,
2003 WL 21136726 *2 (S.D.N.Y. May 15, 2003) .......................... 6

*Robbins v. Koger Props., Inc.,* 116 F.3d 1441 (11th Cir. 1997)................... 10

*Saddle Rock Partners, Ltd. v. Hiatt,* No. 96 Civ. 9474 (SHS)
(S.D.N.Y. Apr. 12, 2001).............................................................. 6

*Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir. 1999)................... 3, 14, 15

*Steiner v. Williams,* No. 99 Civ. 10186,
    2001 WL 604035 *6 (S.D.N.Y. May 31, 2001) ....................................................... 12

*Strougo,* 258 F. Supp. 2d at 262................................................................................ 4, 6

*Trustees v. Greenough*, 105 U.S. 527 (1882) ............................................................... 2

*Union Carbide*, 724 F. Supp. at 163, .................................................................... 5, 14

*West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710
    (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ........................................ 11

## I.    INTRODUCTION

This Memorandum is submitted in support of the application by Plaintiffs' Counsel for an award of attorneys' fees in the amount of 1/3 of the Gross Settlement Fund and reimbursement of $186,853.16 in litigation expenses, as well as $6,628.95 to reimburse Lead Plaintiff Communications Workers of America Plan for Employees' Pension and Death Benefits ("CWA") for its reasonable costs and expenses directly relating to its representation of the Class.  This Court awarded Plaintiffs' Counsel a 1/3 fee in the earlier settlement against ANR, certain of its officers and directors and an affiliated company.  None of the time or expenses applied for in the earlier settlement are being applied for in connection with this settlement.

The $10.5 million cash Settlement obtained against remaining defendant KPMG Bermuda in this case is a very good result in a complex and technical case against an independent auditor.  This recovery is due to the tenacious and skillful efforts of Plaintiffs' Counsel, who prosecuted this case for almost six years on a wholly-contingent basis.  Based upon an intensive review and analysis of KPMG (Bermuda) audit work papers, and in consultation with actuarial, accounting and economic experts, Plaintiffs' Counsel constructed a compelling case in the face of vigorous opposition.  Plaintiffs' Counsel's skill and diligence in prosecuting this action, and their willingness to take this case to mediation and trial and perhaps risk their significant investment of lodestar and out-of-pocket expenses, merits the requested fee in this case.  The reasonableness of Plaintiffs' Counsel's fee application is confirmed by the 2.26 lodestar multiplier calculated using only hours spent after Plaintiffs' Counsel's submissions in the earlier settlement with the Company.  Indeed, this percentage and far greater lodestar multipliers have been awarded in numerous cases that were less complex and risky.

The Class does not disagree.  Over 21,000 copies of the Notice of Proposed Settlement of Class Action with Remaining Defendant KPMG Bermuda, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "KPMG Settlement Notice") were

1

mailed, and a Summary Notice was published in the *Wall Street Journal* as well as *The Financial Times* and transmitted over *Business Wire*. The KPMG Settlement Notice described the litigation and the proposed Settlement, as well as Plaintiffs' Co-Lead Counsel's motion for an award of attorneys' fees not to exceed 1/3 of the Gross Settlement Fund and reimbursement of their expenses in the approximate amount of $350,000. The KPMG Settlement Notice also informed Class Members of their right to object to this application. The deadline for filing an objection has passed. No objection to counsel's fee and expense request has been received. Consistent with the prevailing standards in the Second Circuit, Plaintiffs' Counsel seek a fair and reasonable award given the complexities of this action, the recovery obtained and the substantial commitment of time and resources to successfully litigate this action. The overwhelming positive response from Class Members is further grounds for finding that the requested fee award is reasonable and appropriate.

A.    **Plaintiffs' Counsel Should Be Awarded Fees as a Percentage of the Common Fund Created as a Result of the Settlement**

Courts have long recognized that when, as in this case, a party maintains a suit that results in the creation of a fund for the benefit of a class, the costs of the litigation, including an award of reasonable attorneys' fees, should be recovered from the fund created by the litigation. *Boening Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375 (1970). This "equitable" or "common fund" doctrine established more than a century ago in *Trustees v. Greenough*, 105 U.S. 527 (1882), spreads the cost of the litigation, including attorneys' fees, among the fund's beneficiaries.

Courts traditionally have used two methods to calculate attorneys' fees in common fund cases: (i) the percentage method, which awards attorneys' fees as a percentage of the common fund created for the benefit of the class; and (ii) the lodestar/multiplier approach, which multiplies the number of hours expended by counsel

by the hourly rate normally charged for similar work by attorneys of comparable skill and experience, and enhances the resulting lodestar figure by an appropriate multiplier to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors. *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999); *Maley*, 186 F. Supp. 2d at 369-70.

Although the Second Circuit has held that both the percentage and lodestar/multiplier methods are available to district courts in awarding attorneys' fees in common fund cases, *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000), the clear trend among district courts in this Circuit is to use the percentage method rather than the "cumbersome, enervating, and often surrealistic process"[1] of evaluating fee petitions under the lodestar/multiplier approach. *See In re Fine Host Corp. Sec. Litig.*, No. MDL 1241, 3:97-CV-2619, 2000 WL 33116538, at *4 (D. Conn. Nov. 8, 2000) ("The court finds it appropriate to apply the percentage method in this case while remaining cognizant of the policy considerations favoring the lodestar calculation and using the lodestar documentation "as a 'cross check' on the reasonableness of the requested percentage."); *In re Merrill Lynch & Co., Inc. Research, 2007 WL 313474 *8 (S.D.N.Y. Feb. 1, 2007)* (noting trend in favor of the percentage method); *Maley,* 186 F. Supp. 2d at 370 ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").[2]  As the Court observed in *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,* 724 F. Supp. 160, 165, 170 (S.D.N.Y. 1989):

---

[1]     Third Circuit Task Force on Court Awarded Attorneys' Fees, 108 F.R.D. 237, 258 (1985).

[2]     *See also In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, at *73 (S.D.N.Y. Nov. 26, 2002) ("This Court has previously found that the percentage approach is appropriate in a class action common fund context."); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) ("Courts increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation."); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 484 (S.D.N.Y. 1998) ("there is strong support for the percentage approach from district courts in this Circuit"); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992) ("[t]his Court declines to apply the lodestar method, and instead favors the use of the straight

> Experience…has finally taught us that convoluted judicial efforts to evaluate the lodestar, and see to it that the lodestar hours were reasonable and necessary, and that the case was not overmanned or the time overbooked, are extremely difficult to say the least, and unrewarding. Such efforts produce much judicial paper shuffling, in many cases with no real assurance that an accurate or fair result has been achieved.
>
> * * *
>
> [Lodestar] computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo.  They do not guarantee a more fair result or a more expeditious disposition of litigation.[3]

In addition to its relative simplicity, the percentage method has been favored because it "directly aligns the interests of the class and its counsel[,] . . . provides a powerful incentive for the efficient  prosecution and early resolution of litigation,"[4] and most closely approximates the manner in which private litigants compensate their attorneys in the marketplace contingency fee model.[5]   Further, application of the percentage approach in securities class actions is supported by the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class…."   *See* 15 U.S.C. § 78u-4(a)(6) (emphasis added).

---

percentage of recovery method"); *In re RJR Nabisco Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *6 (S.D.N.Y. Aug. 24, 1992) ("the award of the percentage fee in common fund cases…is consistent with the better and increasingly prevailing view in such cases");  *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992) ("in cases such as this, where counsel have  helped create a fund to be shared by numerous plaintiffs, courts have tended increasingly to award fees based on a percentage of the fund rather than on the lodestar calculation of time multiplied by an hourly rate.") (citations omitted).

[3]    The *Union Carbide* court is not alone in its criticisms of the lodestar/multiplier approach.  In *Goldberger*, the Second Circuit observed that "experience with the lodestar method proved vexing." and noted that "the primary source of dissatisfaction was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed view of the line-item fee audits."  209 F.3d at 48.

[4]    *In re Lloyd's Am. Trust Fund*, 2002 U.S. Dist. LEXIS 22663, at *73.

[5]    *See Strougo*, 258 F. Supp. 2d at 261 ("the percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace"); *In re Sumitomo*, 74 F. Supp. 2d at 397 (noting that the percentage approach is "uniquely the formula that mimics the compensation system actually used by individual clients to compensate their attorneys."); *In re RJR Nabisco*, 1992 WL 210138, at *7 ("What should govern such awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases.").

No matter which method is chosen – percentage or lodestar/multiplier – the fees awarded in common fund cases must be "reasonable" under the circumstances. *Goldberger,* 209 F.3d at 47; *In re Fine Host*, 2000 WL 33116538, at *4. "What constitutes a reasonable fee is properly committed to the sound discretion of the district court, … and will not be overturned absent an abuse of discretion, such as mistake of law or a clearly erroneous factual finding." *Goldberger,* 209 F.3d at 47;[6] *In re Fine Host*, 2000 WL 33116538, at *4. The Second Circuit has instructed that in exercising their discretion:

> [D]istrict courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…., (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger,* 209 F.3d at 50, quoting *Union Carbide*, 742 F. Supp. at 163; *In re Fine Host*, 2000 WL 33116538, at *4. As the *Union Carbide* court observed, in applying these criteria, "a Court essentially makes no more than a qualitative assessment of a fair legal fee under all the circumstances of the case." *Union Carbide*, 724 F. Supp. at 166.

**B.    The Requested Fee is Fair and Reasonable as a Percentage of the Fund Created for the Benefit of Class Members and Consistent with Fee Awards in Comparable Cases**

Irrespective of the method employed, the requested fee in this case is consistent with fee awards in comparable cases. There are scores of recent common fund cases in which district courts in the Second Circuit have awarded such a fee. For example, recently Judge Covello in *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884, 2007 WL 2115592 *2 (D.Conn. July 20, 2007) awarded Plaintiffs' Counsel 30% of the Settlement Fund. *See also, In re Netease.com, Inc. Sec. Litig.,* No. 01-CV-9405 (RO), slip

---

[6]    The Second Circuit has held that the already deferential "abuse of discretion" standard of review "takes on special significance when reviewing fee decisions," *Goldberger*, 209 F.3d at 47 (acknowledging that "[t]he district court, which is intimately familiar with the nuances of the case, is in a far better position to make [such] decisions than is an appellate court, which must work from a cold record.") *See also In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir. 1992) (per curiam).

op. at 3 (S.D.N.Y. May 16, 2003) (33 1/3%); *RMED Int'l, Inc v. Sloan's Supermarkets, Inc.,* No. 94 Civ. 5587, 2003 WL 21136726 *2 (S.D.N.Y. May 15, 2003) (33 1/3%); *Strougo,* 258 F. Supp. 2d at 262 (33 1/3%); *Maley*, 186 F. Supp. 2d at 370 (S.D.N.Y. 2002) (33 1/3%); *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (33 1/3%), *In re Blech Securities Litigation*, 94 Civ. 7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (33 1/3%); *In re APAC Teleservices, Inc. Sec. Litig.,* No. 97 Civ. 9145, slip op. at 2 (S.D.N.Y. Dec. 10, 2001) (33 1/3%); *Newman v. Caribiner Int'l Inc.*, No. 99 Civ. 2271 (S.D.N.Y. Oct. 19, 2001) (33 1/3%); *Saddle Rock Partners, Ltd. v. Hiatt,* No. 96 Civ. 9474 (SHS) (S.D.N.Y. Apr. 12, 2001); *Leventhal v. Tow*, No. 3:97 CV-01642 (DJS) (D. Conn. Jan. 31, 2001); *Milman v. BoxHill Sys. Corp.,* No. 98 Civ. 8640 (SAS) (S.D.N.Y. Jan. 9, 2001); *In re Cityscape Fin. Corp. Sec. Litig.,* MDL Docket No. 1234 (E.D.N.Y. Nov. 27, 2000); *Btesh v. Bahnman*, No. 3:98 CV-00213 (D. Conn. Nov. 3, 2000).[7]

*In re Buspirone Patent*, No. 01-MD-1410, slip. op. at 41-43 (S.D.N.Y. Apr. 11, 2003), Judge Koeltl, applying the *Goldberger* factors, approved a requested fee of 33-1/3% (including expenses) of a settlement fund of $220,000,000, a multiple of 8.46 over lodestar, reasoning that:

> The fee of one-third falls within the range of rates that have been approved in other class actions. Determining then whether the percentage fee is a reasonable fee in this case applying the traditional standards it's clear. . .

---

[7] *See also Lemmer v. Golden Books Family Entm't Inc.*, No. 98 Civ. 5748 (S.D.N.Y. Oct. 12, 1999) (33 1/3%) sub nom., *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513 (2d Cir. 1998) (33 1/3%); *Klein ex rel. Ira v. PDG Remediation*, No. 95 Civ. 4954, 1999 WL 38179 *4 (S.D.N.Y. Jan. 28, 1999) (33%); *Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997) (33.4 %), aff'd, (2d Cir. 1998); *In re MTC Electronic Technologies Shareholder Litig.*, No. CV-93-0876 (E.D.N.Y. Oct. 20, 1998) (33 1/3%); *Moelis v. Hyperion Capital Mgmt., Inc.*, No. 94 Civ. 3328 (S.D.N.Y. Oct. 16, 1997) (33 1/3%); *In re Baesa Sec. Litig.*, Nos. 96 Civ. 7435, 96 Civ. 8141 (S.D.N.Y. 1998); *In re JWP, Inc. Sec. Litig.*, No. 92 Civ. 5815 (S.D.N.Y. Jan. 24, 1997) (33 1/3%); *In re In-Store Adver. Sec. Litig.*, No. 90-CIV. 5594 (PKL) (S.D.N.Y. Dec. 18, 1996) (33 1/3%); *In re SLM Int'l, Inc. Sec. Litig.*, No. 94 Civ. 3327 (RLC) (S.D.N.Y. July 23, 1996) (33 1/3%); *In re Columbia Sec. Litig.*, No. 89 Civ. 6821 (LBS) (S.D.N.Y. Feb. 15, 1995) (33 1/3%); *In re Gitano Group, Inc. Cons. Sec. Litig.*, File No. 91 Civ. 1440 (SS) (S.D.N.Y. Oct. 31, 1994). Although district courts in this Circuit have awarded fees in a lower range in certain common fund cases, these lower awards were based on findings that there was little, if any, litigation or contingency risk in the case. *See, e.g., Goldberger*, 209 F.3d at 53-54 (finding that "this was a 'promising case,' with almost certain prospects of a large recovery from solvent defendants," in which a preceding government investigation resulting in guilty pleas "dramatically increased [plaintiffs'] chances of success").

that this is a very large and complex litigation. There is always risk involved in the litigation. The fee that's being sought is a completely contingent fee. The case was taken . . . on a contingent basis and that is entitled to greater weight than simply an hourly rate because the lawyers could have walked away having done substantial work with no recovery. This is not a case where the ground was substantially plowed before ….

The requested fee award in relationship to the settlement, the plaintiff's counsel are correct that the settlement is a very good settlement for the class. It is a high percentage of possible recovery for the class and the percentage fee is within the range of reasonableness for other contingent fees. There is certainly a public policy favoring the pursuit of anti-trust litigation on the part of consumers.

Looking at the lodestar as a check on the one-third requested contingent fee suggests that this fee is at the high end because the relationship between the lodestar and the fee indicates a multiplier of 8.46 and plainly results in a … high hourly rate. This is mitigated to some degree in the case in my view because the case has settled before a substantial amount of additional work has been done which would have to be done if the case went forward to complete discovery, substantive motions, pretrial preparations and trial, to say nothing of appeal.

During all that period the number of hours spent would have significantly increased. So the lodestar would have gone up and the multiplier would have gone down without any reason to believe that the ultimate recovery would have been any greater for the class. . . .

Judge Koeltl's reasoning is equally applicable in this case and supports the requested fee of 1/3 of the Gross Settlement Fund.

Finally, this Court awarded Plaintiffs' Counsel a 1/3 fee in the earlier settlement against ANR, certain of its officers and directors and an affiliated company. Although that was also a difficult claim to litigate, establishing liability on the part of an independent auditor for securities fraud has added complexities, including matching the technical proficiency of the Defendant's own auditors and actuaries, establishing "scienter" without evidence on motive and demonstrating that Plaintiffs' losses were tied to the annual audit opinions.

As discussed more fully below, the requested award is warranted and reasonable in light of the six *Goldberger* criteria.

1.    The Time and Labor Expended by Counsel

The first *Goldberger* factor – the time and effort expended by counsel – supports the requested fee award in this case. Plaintiffs' Counsel have a total lodestar of $1,550,259.00, which represents approximately 3,500 hours expended in litigating this case. This effort, which yielded the $10.5 million cash Settlement before the Court, was reasonable and necessary in light of the complexity of this case and the vigorous defense mounted by Defendants.

As discussed above and in the Declaration of Beth A. Kaswan in Support of Proposed Class Action Settlement, Class Certification, Plan of Allocation and Award of Attorneys' Fees and Reimbursement of Expenses, during the years this action has been pending, Plaintiffs' Counsel have, among other things:

- Comprehensively investigated materials publicly available including SEC filings, testimony, and documents produced in a related arbitration proceeding;

- Consulted with expert advisors regarding the accounting, actuarial and damages issues presented;

- Conducted extensive and on-going legal research and drafting in connection with the preparation of the complaint, and extensive pre-trial litigation and motion practice;

- Researched, drafted and filed oppositions to KPMG Bermuda's motion to dismiss;

- Reviewed and analyzed thousands of pages of auditor and actuarial work papers;

- Deposed KPMG Bermuda's audit manager and defended the deposition of Plaintiff CWA's trustee;

- Formulated litigation strategy and coordinated the work and assignments of Plaintiffs' counsel in regular conferences, and communicated with clients;

- Prepared for and participated in the mediation of Plaintiffs' claims; and

- Negotiated the settlement with KPMG Bermuda's counsel.

Plaintiffs in this case alleged and were prepared to prove at trial that KPMG Bermuda acted knowingly or recklessly in approving the misrepresentations in ANR's financial statements, and that because the errors in those statements were so fundamental, they simply could not have approved them without, at a minimum, being willfully blind to the errors and misleading statements. Evidence in support of these contentions was developed by Plaintiffs' Counsel solely through their own efforts and through years of litigation. Plaintiffs' Counsel worked diligently to obtain and review thousands of pages of technical work papers obtained from KPMG Bermuda and worked closely with its own expert accountants, actuary and damages consultants throughout.

As the foregoing discussion makes clear, the significant time and effort expended by counsel without any guarantee of payment supports the requested fee in this case.

2.      The Magnitude and Complexity of the Litigation

The second *Goldberger* factor – the magnitude and complexity of the case – also supports the requested fee award in this case. As described in detail in the preceding sections, this action involved complex accounting fraud issues that would be difficult to prove and explain to a jury. Expert analysis was required from accounting experts and, even assuming arguendo that Plaintiffs prevailed on liability issues, Plaintiffs' counsel faced the equally if not more difficult task of proving damages attributable to KPMG Bermuda, which also required highly technical and complex expert analysis.

Plaintiffs' Counsel's ability to obtain a fair recovery without incumbent delay and harm to the Plaintiffs in this complex case clearly supports the requested reasonable 1/3 fee.

3.      The Risk of the Litigation

The Second Circuit identifies "the risk of success as 'perhaps the foremost' factor to be considered in determining [a reasonable award of attorneys' fees]." *Goldberger,* 209 F.3d at 54. "[L]itigation risk must be measured as of when the case is filed," *id.* at

55, rather than with the hindsight benefit of subsequent events.  From the outset, there was a significant litigation, collectibility and contingency risk in this case.

(i)       The Risk of Establishing Liability and Damages

Unlike the litigation in *Goldberger,* which was preceded by a lengthy government investigation that resulted in guilty pleas to charges of securities fraud, in this case, Plaintiffs had the heavy burden of proving that KPMG Bermuda's audit reports as to ANR  had been fraudulently, not just mistakenly, misstated.  Plaintiffs faced the difficult task of proving their case at trial through the complex and technical testimony of their experts and the testimony of hostile witnesses.  Plaintiffs would also face enormous obstacles in proving that an auditor had acted with the requisite scienter, and that Plaintiffs' losses were attributable to Defendant's audits and opinions that were only issued for the Company's annual financial accounting.

(ii)     Contingency Risk

In addition to the enormous litigation risks, Plaintiffs' Counsel diligently and vigorously pursued this case on an entirely contingent basis.  Courts have recognized that the risk of non-payment in complex cases such as this one is very real and is heightened when, as in this case, Plaintiffs' Counsel press to achieve the very best result for those they represent.  There are numerous class actions in which Plaintiffs' Counsel expended thousands of hours and advanced significant out-of-pocket expenses and yet received no remuneration whatsoever, despite their diligence and expertise.  *See, e.g., Freedman v. Value Health, Inc.,* No. 01-7567. 34 Fed. Appx. 408  (2d Cir. 2002) (affirming district court's grant of summary judgment in favor of defendants); *In re Health Management, Inc. Sec.  Litig.,* No. 96-CV-889 (ADS) (E.D.N.Y. 1999) (jury verdict for auditor in securities class action case);  *In re Biogen Sec. Litig*., No. 94-12177-PBS (D. Mass. 1999) (jury verdict for defendants in securities class action case); *Robbins v. Koger Props., Inc.,* 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an

10

accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) (appellate court affirmed the grant of summary judgment to defendants); *Anixter v. Home-Stake Prod. Co.,* 77 F.3d 1215 (10th Cir. 1996) (appellate court overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988, on the basis of 1994 Supreme Court opinion); *In re Clorox Co. Sec. Litig., 238 F. Supp.* 2d 1139 (N.D. Cal. 2002) (summary judgment and judgment on the pleadings granted); *In re Apple Computer Sec. Litig.*, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96, 252 (N.D. Cal. Sept. 6, 1991) (class won jury verdict against two individual defendants, but district court vacated on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won a substantial jury verdict and a motion for judgment n.o.v. was denied, but on appeal the judgment was reversed and the case dismissed, after 11 years of litigation); *see also West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) (referencing two cases which went to trial – in one case plaintiffs recovered nothing and in the other they recovered less than the amount which had been offered in settlement).[8]

The contingent nature of plaintiffs' counsel's representation is an important factor in determining a reasonable award of attorneys' fees.  As the Second Circuit in *City of Detroit v. Grinnell Corp.* stated:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

---

[8]    Thus, observations by some courts that "all but a small percentage of class actions settle, thereby guaranteeing counsel payment of fees and minimizing the risks associated with contingency fee limitations," *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2001 U.S. Dist. LEXIS 8418, at *16 (S.D.N.Y. Jun. 22, 2001), are misguided.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974), citing *Cherner v. Transitron Elec. Corp.*, 221 F. Supp. 55, 61 (D. Mass. 1963).  *See also Steiner v. Williams,* No. 99 Civ. 10186, 2001 WL 604035 *6 (S.D.N.Y. May 31, 2001); *In re "Agent Orange Prod. Liab. Litig.,* 818 F.2d 226, 236 (2d Cir. 1987); *Union Carbide*, 724 F. Supp. at 164 ("[C]ontingent fee risk is the single most important factor in awarding a multiplier"); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award.") (citations omitted).  Although the Second Circuit in *Goldberge*r expressed "some doubt" that "there is a substantial contingency risk in every common fund case," 209 F.3d at 52, the enormous contingency risk in this case cannot be seriously disputed.  Here, the Court dismissed Plaintiffs' complaint against KPMG LLP, the United States firm that assisted in the audit.  Even after Plaintiffs prevailed on the motion to dismiss against KPMG Bermuda, KPMG Bermuda filed a series of motions for reconsideration.  KPMG Bermuda vigorously challenged Plaintiffs at every turn, including through its opposition to Plaintiffs' motion for class certification.  Nonetheless, Plaintiffs aggressively pursued their claims though discovery, including by taking a highly technical deposition of the KPMG Bermuda audit manager, attended two hotly contested mediation sessions, and were fully prepared to try this case and risk losing their enormous investment of attorney time and substantial out-of-pocket expenses in the absence of a fair, reasonable and adequate settlement.

In *Goldberger*, the Second Circuit held that "[r]isk falls along a spectrum, and should be accounted for accordingly."  *Id.* at 54.  Taking into account the litigation and contingency risks in this case, an award by the Court of attorneys' fees in the amount requested by Plaintiffs' Counsel is clearly justified.

4.     The Quality of Representation and the Result Achieved

The fourth *Goldberger* factor – the result achieved and the quality of the services provided – also supports a fee award at the highest end of the range.  Here, the quality of the representation of Plaintiffs' counsel is best evidenced by counsels' technical and legal expertise and their resolve to maximize the possible recovery for the Class.  The fact that the Settlement is all cash is also a significant achievement.  Further, this is not a "claims made" settlement in which some indeterminate portion of the Gross Settlement Fund can revert to defendants.  This is a true fixed fund of $10.5 million in cash.

5.     The Relation of the Requested Fee to the Settlement

The fifth *Goldberger* factor – the relation of the requested fee to the Settlement – also supports the requested fee in this case.  As noted above, the requested fee is consistent with fee awards in comparable cases within the Circuit.

6.   Public Policy Considerations

Public policy considerations also support the requested fee in this case.  As the Court held in *Union Carbide*:

> The award of attorneys' fees in complex securities class action litigation is informed by the public policy that individuals damaged by violations of the federal securities laws should have reasonable access to counsel with the ability and experience necessary to analyze and litigate complex cases. Enforcement of the federal securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance.  *See Bateman Eichler v. Berner*, 472 U.S. 299, 86 L. Ed. 2d 215, 105 S. Ct. 2622 (1985).   A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken.  These policies further support the award of a multiplier of counsel's lodestar fee.

724 F. Supp. at 169.  An award of the fees requested herein would be fully consistent with these important public policy considerations.

13

**C.     A "Cross-Check" of Plaintiffs' Counsel's Lodestar Demonstrates the
Reasonableness of the Requested Award**

Here Plaintiffs' Co-Lead Counsel have expended approximately 3,500 hours
litigating the case against KPMG Bermuda. The two firms' total loadstar equals
$1,550,259.00. To assure that no double-counting occurs, only hours spent *after* the
submission of the settlement papers for the settlement of the case against the Company
have been used in the lodestar calculation.  Plaintiffs' Co-Lead Counsel have used their
usual hourly rates in calculating their lodestars, as set forth in their fee and expense
affidavits.

In *Goldberger*, the Second Circuit held that even in cases in which the percentage
method is chosen, documentation of hours remains a useful 'cross-check' on the
reasonableness of the requested percentage."  209 F.3d at 50.  "[W]here used as a mere
cross-check, [however,] the hours documented by counsel need not be exhaustively
scrutinized by the district court….Instead, the reasonableness of the claimed lodestar can
be tested by the court's familiarly with the case… ." *Id.* (citation omitted).  Here, a 1/3
fee equates to a 2.26 lodestar multiplier, which is relatively conservative for litigation of
this complexity and risk.

As demonstrated above, the hours expended by counsel are reasonable in view of
the work performed.  So too are their hourly rates.  The Second Circuit has held that the
hourly rates to be applied in calculating the lodestar are those normally charged for
similar work by attorneys of comparable skill and experience in the community where the
attorney practices.  *Savoie,* 166 F.3d at 460; *see also In re Fine Host*, 2000 WL 33116538
*5.  In addition, the United States Supreme Court and the Second Circuit have approved
the use of current rates in the lodestar calculation to "compensate for the delay in
receiving compensation, inflationary losses, and the loss of interest."  *Union Carbide*,
724 F. Supp. at 163, quoting *In re Generics Corp. Sec. Litig*., [1980 Transfer Binder]
Fed. Sec. L. Rep. (CCH) ¶ 97,719, at 98,770 (S.D.N.Y. Dec. 4, 1980).  *See also Missouri*

*v. Jenkins*, 491 U.S. 274, 284 (1989); *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998); *Grant v. Martinez,* 973 F.2d 96, 100 (2d Cir. 1992); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 136, 153 (2d Cir. 1983).

In determining whether the rates are reasonable, the Court should take into account the attorney's legal reputation and experience.   In this case, the team of lawyers working on the case was led by Plaintiffs' Co-Lead Counsel Scott + Scott LLP and Milberg LLP, well-known and highly experienced law firms.  In short, the experience of Plaintiffs' Co-Lead Counsel support the hourly rates charged.  Clearly, the Class received the highest quality representation in this case.

Under the lodestar method, a multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.  *Savoie,* 166 F.3d at 460; *Goldberger,* 209 F.3d at 47.  The total lodestar reported by Plaintiffs' Counsel is $1,550,259.00.  Thus, the percentage fee requested represents a multiplier of  2.26 to the cumulative lodestar of Plaintiffs' Counsel.  This multiplier is well below the range of multipliers routinely awarded by courts within the Second Circuit.  *See In re Buspirone Patent,* 01-MD-1410, slip op. at 41-43 (S.D.N.Y. Apr. 11, 2003) (awarding multiplier of 8.46); *Maley*, 186 F. Supp. 2d at 368-69 (finding a multiplier of 4.65 to be within the range in this Circuit*); In re APAC Teleservice, Inc. Sec. Litig*., No. 97 Civ. 9145 (BJS) (percentage fee award of 33-1/3% represented multiplier of 2.76); *Newman*, 99 Civ. 2271 (GEL) (percentage fee award of 33-1/3% represented  multiplier of 7.7); *Union Carbide*, 724 F. Supp. at 170 (applying multiplier of 2.3 to lodestar of plaintiffs' steering committee).

As discussed more fully above, this case was risky and complex and the representation afforded the Class on an entirely contingent basis was first-rate.[9] Thus, the 2.26 times multiplier requested in this case is eminently reasonable.

**D.    Plaintiffs' Counsel Should be Reimbursed for their Reasonably Incurred Litigation Expenses**

Plaintiffs' Co-Lead Counsel also request reimbursement for the reasonable and necessary expenses that they advanced to prosecute this litigation. These expenses total $1,86,853.16, which is much less than the estimate of expenses contained in the KPMG Settlement Notice.

These expenses were incurred on an ongoing basis for such items as expert fees, mediation costs, photocopying of documents, on-line research, messenger service, postage, express mail and next day delivery, long distance and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this case.

Plaintiffs' Counsel respectfully requests that the listed expenses and costs be awarded because they were necessary and appropriate in prosecuting this action.

**E.    Lead Plaintiff CWA Is Entitled To Reimbursement Of Its Reasonable Costs And Expenses (Including Lost Wages) Directly Relating To Its Representation Of The Class**

Under the PSLRA, the Court may award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). Courts have noted that it is important to reimburse time and expenses of lead plaintiffs because doing so "encourages participation of plaintiffs in the active supervision of their counsel."

---

[9]    Although the Second Circuit observed in *Goldberger* that "a big recovery does not necessarily justify a quality multiplier," 209 F.3d at 56, it bears repeating that the factors that led the Court to decline to award a quality multiplier in that case – a preceding government investigation that resulted in guilty pleas – was not present in this case. *See, In re Fine Host*, 2000 WL 33116538, at *6.

*Varljen v. H.J. Meyers & Co.,* No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205 at *14 n.2 (S.D.N.Y. Nov. 8, 2000).

The KPMG Settlement Notice states that "Plaintiffs' Co-Lead Counsel are also moving the Court to award of a payment not to exceed $10,000 to Lead Plaintiff Communications Workers of America for reimbursement of its reasonable costs and expenses (including lost wages) directly relating to its representation of the Class." As shown in its declaration, the CWA incurred $6,628.95 to compensate its labor law attorney who oversaw and directly advised the Board on this litigation, and for travel expenses associated with the deposition of the CWA trustee. *See* Declaration Of Barbara Easterling In Support Of (A) Application Of Lead Plaintiff Communication Workers Of America Plan For Employees' Pension And Death Benefits For Reimbursement Of Costs And Expenses And (B) Final Approval Of The Proposed Settlement, Plan Of Allocation, And Plaintiffs' Counsel's Request For An Award Of Fees And Expenses (the "Easterling Declaration"), attached to the Kaswan Declaration at Exhibit F.

The requested award is appropriate and should be approved.

## II.    CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully request that the Court grant their application for an award of attorneys' fees in the amount of 1/3 of the Gross Settlement Fund, together with the reimbursement of their expenses reasonably incurred since January 14, 2005 in the amount of $186,855.16, and request payment of $6,628.95 to Lead Plaintiff CWA for reimbursement of its reasonable costs and expenses directly relating to its representation of the Class.

Dated:      May 29, 2008

*/s/ David R. Scott*

**SCOTT + SCOTT, LLP**
DAVID R. SCOTT (CT 16080)
drscott@scott-scott.com
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
Fax: (860) 537-4432

**SCOTT + SCOTT LLP**
Beth A. Kaswan
bkaswan@scott-scott.com
29 West 57th Street, 14th Floor
New York, NY 10019
Tel: (212) 223-6444
Fax: (212) 223-6334

**MILBERG LLP**
Barry A. Weprin
bweprin@milberg.com
Todd Kammerman
tkammerman@milberg.com
One Pennsylvania Plaza
New York, NY 10119-0165
Tel: (212) 594-5300
Fax: (212) 868-1229

**Attorneys for Lead Plaintiff and the Class**

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2008, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing. The parties may access this filing through the court's CM/ECF System.

*/s/ David R. Scott*

**SCOTT + SCOTT LLP**
David R. Scott (CT16080)
drscott@scott-scott.com
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
Fax: (860) 537-4432

**Co-Lead Counsel for Plaintiffs**
