# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHERRY SCHNALL, Individually and On Behalf of All Others Similarly Situated | ) Master File No.  02CV2133 |
| Plaintiff, | ) |
| v. | ) |
| ANNUITY AND LIFE RE (HOLDINGS), LTD., et al., | ) |
| Defendants. | ) |

---

## LEAD PLAINTIFFS' MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION, AND TO CERTIFY A CLASS FOR SETTLEMENT PURPOSES

**SCOTT + SCOTT LLP**
David R. Scott
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Tel:  (860) 537-5537
Fax:  (860) 537-4432

**SCOTT + SCOTT LLP**
Beth A. Kaswan
29 West 57th Street, 14th Floor
New York, NY 10019
Tel:  (212) 223-6444
Fax: (212) 223-6334

**MILBERG LLP**
Barry A. Weprin
Todd Kammerman
One Pennsylvania Plaza
New York, NY  10119
Tel:  (212) 594-5300
Fax: (212) 868-1229

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

HISTORY OF THE LITIGATION ...............................................................................4

    A.      Background .............................................................................4
    B.      Procedural History of the Litigation...........................................5

SUMMARY OF THE SETTLEMENT ..........................................................................7

    A.      The Settlement ..........................................................................7
    B      Plaintiffs' Recovery Under The Settlement and Plan of Allocation ...........7

CLASS NOTICE AND CERTIFICATION....................................................................8

    A.      Adequacy of the Notice..............................................................9
    B.      Content of the Notice ..............................................................10

THE PROPOSED SETTLEMENT SHOULD BE
GRANTED FINAL APPROVAL..................................................................................13

    A.      The Proposed Settlement Is Fair, Reasonable and Adequate......................13

          1.      The complexity, expense and likely duration of the litigation.............15
          2.      The Reaction of the Class to the Settlement .........................................16
          3.      The Stage of Proceedings and the Amount of Discovery
               Completed ..........................................................................17
           4.      Risks of Establishing Liability.............................................................18
          5.      The Risks of Establishing Damages ...................................................19
          6.      Risks of Maintaining Class Action Through Trial...............................20
           7.      The Ability of Defendants to Withstand a Greater Judgment .............20
          8.      The Range of Reasonableness of the Settlement Funds
               in Light of the Best Possible Recovery and Litigation Risks .............20

    B.      The Settlement Negotiations Were Procedurally Fair.................................. 21

THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE
AND ADEQUATE ........................................................................................................22

CONCLUSION..............................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

*Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............... 15

*Banyai v. Mazur, 2007 WL 927583 \*7 (S.D.N.Y. March 27, 2007)* ............................................ 12

*Chatelain v. Prudential-Bache Secs., Inc*., 805 F. Supp. 209 (S.D.N.Y. 1992) ......................... 12

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ............................................................ 13

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974)...................................................................... 8

*Gulf Oil Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588 (S.D.N.Y.1992) ................................ 18

*In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987).........................................9

*In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.Supp. 180 (S.D.N.Y. 2003) ........9, 10, 11

*Iomega Sec. Litig.*, Civ Nos. B-86-257 (JAC), B-86-273 (JAC), 1987 WL 43391,
    at \*9 (D. Conn. Oct. 1, 1987);................................................................................................ 12

*Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991); ................................................ 12

*Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577,
    at \*15 (S.D.N.Y. Nov. 26, 2002) ...................................................................................... 16

*Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358 (S.D.N.Y. 2002)* ............................ 12, 15

*Merrill Lynch & Co., Inc. Research,* 2007 WL 313474 \*8 (S.D.N.Y. Feb. 1, 2007)..................... 8

*Michael Milken & Assocs.*, 150 F.R.D. 57 (S.D.N.Y. 1993);....................................................... 18

*New York & Maryland v. Nintendo of Am ., Inc.*, 775 F. Supp. 676 (S.D.N.Y. 1991);............... 12

*Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088 (5th Cir. 1977)............................................. 8

*PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y.1997) .............................................. 11

*Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362 (S.D.N.Y. 1996)................................... 9

*Sterling Foster & Co. Sec. Litig.*, 238 F. Supp. 2d 480 (E.D.N.Y. 2002) ................................... 19

*Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55 (S.D.N.Y. 2003)................................... 14

*Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277 (S.D.N.Y. 1993)......................................... 13

*Warner Communications Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) .................................... 13

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ................................................................ 13

**Other Authorities**

15 U.S.C. §§ 78u-4(a)(7), 77z-1(a)(7 ...................................................................................... 9, 10

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................................... 7

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs in this action respectfully request that this Court grant final approval of the proposed settlement of $10.5 million (the "Settlement") with Defendant KPMG Bermuda.[1]   The Settlement finally and completely resolves a class action lawsuit brought under the federal securities laws involving whether KPMG Bermuda issued materially false and misleading audit opinions for its annual audits of ANR's financial statements which artificially inflated the value of ANR's securities and caused losses to the class, persons and entities who purchased or otherwise acquired securities of ANR during a given period.  The Settlement will benefit all persons and entities that purchased such securities, including common stock and warrants, between March 15, 2000 and November 19, 2002 , inclusive (the "Class Period"), and who were damaged when the truth was disclosed (the "Class").[2]

For the reasons set forth below and in the accompanying Declaration of Beth A. Kaswan in Support of Final Approval of the Proposed Class Action Settlement, Class Certification, Award of Fees and Expenses, and Plan of Allocation (the "Kaswan Declaration"), Plaintiffs submit that the Settlement is an outstanding recovery for the Class, and respectfully request that the Court approve the Settlement and Plan of Allocation, and enter the proposed Order and Final Judgment accordingly.  A separate Memorandum is being submitted in support of Plaintiffs' petition for an award of attorneys' fees and costs.

## PRELIMINARY STATEMENT

The proposed Settlement represents an exceptional recovery for the Class.   The Settlement  resolves a lawsuit over whether KMPG either recklessly or knowingly issued

---

[1]     The Settlement Agreement covers only KPMG Bermuda as the Court on January 21, 2005 approved a final settlement with Defendant Annuity & Life Re (Holdings) Ltd. ("ANR") and certain other Defendants, and dismissed the complaint as against KPMG LLP in the United States ("KPMG US").

[2]     Excluded from the Class are Defendants and defined affiliates.

unqualified audit opinions approving ANR's financial statements which were misstated and which violated generally accepted accounting principles ("GAAP") and that, in so doing, KMPG Bermuda also failed to comply with generally accepted audit standards ("GAAS").

Following the Court's decision on August 30, 2006 upholding Plaintiffs' amended complaint against KPMG Bermuda, this case has been vigorously and aggressively litigated by both parties. KPMG Bermuda has made successive applications for the Court to reconsider its opinion sustaining the complaint, a motion for class certification was filed, thousands of highly technical documents have been produced, reviewed and analyzed and depositions of the trustee for the Plaintiff, Communications Workers of America Plan for Employees' Pension and Death Benefits ("CWA") and the KPMG Bermuda audit manager were taken. The issues are highly technical and complex and would involve sharply conflicting expert testimony by accountants, actuaries and economists. Establishing liability and damages would have been a difficult undertaking and, even if Plaintiffs prevailed in full, the recovery from KPMG Bermuda would have been proportionately reduced based upon the relative fault of the other Defendants, for the prior settlement with the ANR Defendants. Plaintiffs, by their counsel, conducted numerous discussions and arm's-length negotiations with counsel for KPMG Bermuda over the course of two extensive mediations with respect to a compromise and settlement of the Action as against KPMG Bermuda with a view to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Class.

There remained serious risks on the merits and to establishing damages in prosecuting this action further, including establishing:

- Whether ANR's income reported on its financial statements was inflated and by how much;

- Whether actuarial assumptions and estimates were valid;

- Which accounting principles and auditing standards were violated;

- Whether the violations were material and caused Plaintiffs' losses;

- Whether the KPMG Bermuda auditors were reckless, or acted with knowledge, when they issued the unqualified audit opinions;

- The amount of the shareholder losses that were attributable to KPMG Bermuda's false opinion as distinguished from other non-fraud factors; and

- The percentage of fault of KPMG Bermuda versus the other culpable parties.

Each of these issues was vigorously disputed. Under these circumstances, therefore, the $10.5 million recovery for the Class represents an outstanding result. Indeed, nobody has objected to the substantive terms of the Settlement or the substantial recovery obtained and the time period to object has now expired.

Additionally, Plaintiffs' proposed Plan of Allocation is a fair and appropriate method for distributing the recovered funds to Class Members. The Plan of Allocation incorporates when Class Members purchased their stock and when the alleged fraud was revealed. The Plan of Allocation, which is set forth in the Notice of Pendency of Class Action and Proposed Settlement, Motion For Attorneys' Fees and Settlement Fairness Hearing (the "Notice") that has been mailed to members of the Class, provides for the distribution of the Net Settlement Fund on a *pro rata* basis, based on a formula tied to individual claims *vis a vis* total claims. There is no objection – class member or otherwise -- to the Plan of Allocation. Finally, certification of a class for settlement purposes is appropriate for the reasons set forth in Plaintiffs' motion for class certification pending before this Court.

Plaintiffs respectfully submit that the Settlement is worthy of immediate approval, that the proposed Plan of Allocation is equitable and just, and that each should be approved by the Court.

## HISTORY OF THE LITIGATION

### A.    Background

This action can best be explained as a consolidation of essentially two related suits involving the same pattern of events: one against ANR, its affiliate and a host of Individual Defendants (the "ANR Action") and one against KMPG US and KPMG Bermuda (the "KPMG Action"). Both were brought on behalf of a Class of all persons and entities that purchased securities, including common stock and warrants of ANR between March 15, 2000 and November 19, 2002, inclusive. Plaintiffs brought the ANR Action after public revelation that ANR would have to restate virtually all of its SEC filings during the Class Period caused the stock price to drop from $36.98 to $2.24. Neither complaint, however, alleged that all the issues causing the restatements were matters involving fraud, or were related to the challenged accounting for the Transamerica contract.

The relevant SEC filings were ANR's financial statements for 1999, 2000, and 2001 which KPMG Bermuda audited and which contained information concerning ANR's contract with Transamerica Occidental Life Insurance ("Transamerica"). Plaintiffs contended that ANR made a series of misstatements about the risks of the Transamerica contract, its failure to adequately reserve for interest due to policyholders that was guaranteed under state laws, and its inadequate amortization of deferred acquisition costs. The Transamerica contract was allegedly particularly risky because the investment returns were tied to the performance of convertible bonds. Plaintiffs also alleged that loss recognition and recoverability tests for the deferred acquisition costs related to the Transamerica contract were not properly performed or reported. During discovery, Plaintiffs also learned that through the use of an undisclosed reserve, ANR was effectively netting its revenues and expenses to arrive at a targeted and pre-determined rate of

return.

As to KPMG Bermuda, Plaintiffs alleged in the KPMG Action that KMPG Bermuda was aware of the erroneous accounting but nonetheless signed unqualified audit opinions, that falsely represented that ANR's financial statements were "fairly presented in accordance with GAAP." When these financial statements were revealed to be flawed, the stock lost almost all of its value, to the detriment of the Plaintiffs. KPMG Bermuda has denied all these allegations.

B.    **Procedural History of the Litigation**

Beginning on December 4, 2002, a number of related putative class actions arising under the federal securities laws were filed in this Court and were subsequently consolidated into the ANR Action. On March 29, 2003, the Court appointed CWA and Midstream Investments Ltd. ("Midstream"), as Lead Plaintiffs and appointed Scott + Scott, LLP and the predecessor to Milberg LLP as Plaintiffs' Co-Lead Counsel.

The Consolidated Amended Complaint for Violations of the Securities Laws was filed in the ANR Action on July 11, 2003, and alleged that ANR, certain of its officers and directors and an affiliated company (the "ANR Defendants") made fraudulent misstatements in their financial statements regarding, among other things, the Transamerica Contract. On October 23, 2003, the Lead Plaintiffs filed the KPMG Action, and the Court soon consolidated the two. Once this occurred, a series of motions to dismiss were filed by the various Defendants, and in a series of three decisions, Plaintiffs' claims were sustained as against the ANR Defendants. On January 21, 2005, the Court entered an Order and Final Judgment approving a settlement with the ANR Defendants for $16 million. On August 10, 2006 KMPG U.S. was dismissed. On August 30, 2006, the Court denied the motion to dismiss KPMG Bermuda.

KPMG Bermuda then answered the complaint on November 22, 2006. By its answer, KPMG Bermuda denied that ANR's accounting for the Transamerica contract violated GAAP, and that its audit opinion was false or issued with scienter. KPMG Bermuda also denied that the audit opinion caused Plaintiffs' losses and raised other defenses. Therefore, extensive discovery was required to ascertain the pattern of events that transpired. Thousands of pages of accounting work papers and other documents were produced, reviewed and analyzed with the assistance of Plaintiffs' actuarial and accounting experts.

As is more fully described in the Kaswan Declaration, this case is now settling almost six years after it began, after thorough and extensive investigation by Co-Lead Counsel. Such investigation included, among other things, the review of thousands of accounting and actuarial documents, and consultations with expert accountants, economists and actuary. Plaintiffs reviewed testimony and documents produced in a related arbitration proceeding as well as information contained in SEC filings. Plaintiffs retained expert economists to develop detailed event studies and economic analyses concerning loss causation and damages. Before a settlement was reached, the depositions of a trustee for CWA, and the KPMG Bermuda audit manager were conducted. The latter deposition disclosed both strengths and weaknesses in Plaintiffs' accounting theories, and disclosed additional technical complexities relating to the hybrid nature of the annuity product itself. The parties engaged in extensive negotiations and two extensive mediation sessions utilizing the assistance of special mediator Robert A. Meyer, Esq. with respect to a compromise and settlement of the case against KPMG Bermuda with a view to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Class. For the reasons described herein and in the Kaswan Declaration, the $10.5 million settlement of this case is an outstanding result and should be approved.

## SUMMARY OF THE SETTLEMENT

### A.    The Settlement

KPMG Bermuda has agreed to pay $10.5 million in cash in full settlement of Plaintiffs' claims against it.  The settlement fund, less any attorneys' fees and expenses and notice, administrative and tax expenses (the "Net Settlement Fund") will be distributed among those injured Class members who have not requested exclusion from the Class and who submit a timely and valid Proof of Claim under the procedures set forth in the Settlement Notice.  The Settlement resolves the claims concerning whether KPMG Bermuda issued fraudulent audit opinions and misled investors about ANR's financial performance and condition during the Class Period.

### B.    Plaintiffs' Recovery Under The Settlement and Plan of Allocation

To begin with, the Plan of Allocation is identical to that previously approved on January 21, 2005 in connection with the settlement in the ANR Action.  Under it, the claims administrator will determine each "Authorized Claimant's" *pro rata* share of the Net Settlement Fund based on his or her "recognized Claim" from transactions during the Class Period based on the Plan of Allocation.  This amount will be calculated pursuant to the identical Recognized Claim Formula as set forth in the Settlement Notice for the ANR Action.  Therefore, for purposes of the Settlement, "Recognized Claims" are calculated as follows:

a)    For shares of ANR common stock purchased during the Class Period and still owned as of the close of trading on November 19, 2002, "Recognized Claim" shall be the Plaintiffs' Contention of Alleged Inflation ("PCAI") per share on the date of purchase as shown on Schedule 1 for the date of purchase.

b)    For shares of ANR common stock purchased during the Class Period and sold at a

loss on or before the close of trading on November 19, 2002, "Recognized Claim" shall be the lesser of (x) the Purchase Price Paid less the Sale Proceeds Received; or (y) the PCAI per share on the date of purchase, less the PCAI per share on the date of sale.

The Plan of Allocation and the "Recognized Claim" formulae are prepared in order to fairly allocate the recovery among Class members. Thus, investors who purchased ANR stock during the Class Period qualify for recovery under the Settlement. As detailed in the Plan of Allocation with respect to common stock purchases, a Claimant's Recognized Claim is based on Plaintiffs' contention of the estimated artificial inflation in the price paid for shares of ANR common stock as determined by Plaintiffs' damages expert. This estimated inflation is the excess amount that Class Members allegedly paid, over fair market value, for their stock.

Under the Plan of Allocation, checks will be distributed to Authorized Claimants after the Court has finally approved the Settlement and after all claims have been processed. If any funds remain in the Net Settlement Fund after the checks are distributed by reason of un-cashed distributions the balance will be distributed as ordered by the Court on motion of the Class Plaintiffs.

## <u>CLASS NOTICE AND CERTIFICATION</u>

The Class includes all persons and entities that purchased or otherwise acquired securities of ANR during the Class Period of March 15, 2000 and November 19, 2002, and were damaged thereby. Excluded from the Class are (i) the Defendant, (ii) the officers and directors of KPMG Bermuda at all relevant times, and (iii) any entity in which KPMG Bermuda has or at any time had a Controlling Interest.

A.    **Adequacy of the Notice**

Federal Rule of Civil Procedure 23(c) and (e) describe the form of notice to Class Members applicable here. *See, e.g., In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088 (5th Cir. 1977). Conformity with the requirements of Rule 23(c)(2) fulfills the due process mandate. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). Thus, for opt-out class actions like this one, due process and the Federal Rules require individual notice to "all class members whose names and addresses may be ascertained through reasonable effort." *Id.; accord* Fed. R. Civ. P. 23(c)(2)(B); *In re Merrill Lynch & Co., Inc. Research,* 2007 WL 313474 *8 (S.D.N.Y. Feb. 1, 2007) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." (citation omitted)).

The Garden City Group ("GCG"), the Claims Administrator for the Settlement, administered the mailing of individual notice by first-class mail to all reasonably locatable Class Members at their last-known addresses. GCG obtained the most recent addresses for all ANR shareholders of record. *See* Affidavit of Jose C. Fraga Re: (a) Mailing of the Settlement Notice; and (b) Report on Exclusion Requests Received (the "Fraga Declaration") ¶¶ 4-5 (attached to the Kaswan Declaration as Exhibit A)

In addition to the mailing of individual notice, the Summary Notice of Pendency Of Class Action and Proposed Settlement Motion for Attorneys' Fees and Settlement Fairness Hearing ("Summary Notice") was published in several media sources on or before March 14, 2008. *See* Affidavit of Paul J. Andrejkovics Re: Publication of the Summary Notice of Proposed Settlement of Class Action with Remaining Defendant KPMG Bermuda and Settlement Hearing (the

"Andrejkovics Affidavit"), ¶ 2 (attached to the Kaswan Declaration as Exhibit B). The Summary Notice was published in the global edition of *The Wall Street Journal* and the worldwide edition of *Financial Times* on March 14, 2008. Additionally, a press release announcing the Settlement in the same form as the publication notice was issued over the Global Media Circuit of *Business Wire* on March 14, 2008. *Id.*, ¶ 2. The Notice, Settlement Agreement and Proof of Claim are also posted and available publicly on the Claims Administrator's website. *Id.*, ¶4.

These procedures collectively satisfy Rule 23(c)(2)(B)'s requirement that individual notice be sent to all potential Class members identifiable through reasonable effort. *See, e.g., In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.Supp. 2d 180, 185-86 (S.D.N.Y. 2003) (due process satisfied by mailing approximately 30,000 notice packets to all reasonably identifiable persons who purchased securities during Class Period and by publishing summary notice in The New York Times). *See also, e.g., In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 168-69 (2d Cir. 1987) (approving letter notice to reasonably identifiable class members, supplemented by "various forms of substitute notice," including publication in various media); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (approving individual notice to class members "whose address could reasonably be located" and summary notice published twice in national editions of the *Wall Street Journal*, *New York Times*, and *USA Today*), aff'd mem., MDL No. 1005, 107 F.3d 3, 1996 WL 739258 (2d Cir. 1996).

**B.    <u>Content of the Notice</u>**

The content of the notice – whether mailed directly to Class Members or communicated by publication – also satisfied Rule 23, due-process norms and the PSLRA. Rule 23(c)(2)(B) specifies certain information that a class notice in a Rule 23(b)(3) action must contain, including (i) the nature of the case, the class definition, and the claims, issues, or defenses in the action, (ii)

class members' right to exclude themselves from the class, (iii) the binding effect of a class judgment on all class members who do not request exclusion, and (iv) class members' right to object to the partial settlement and appear through counsel.  The PSLRA contains additional requirements applicable to this securities action, including 15 U.S.C. §§ 78u-4(a)(7), 77z-1(a)(7), as follows:

>    (A)    Statement of recovery – the amount of the settlement determined in the aggregate and on an average per share basis;
>
>    (B)    Statement of potential outcome of case – the amount of damages per share recoverable if Plaintiffs were to prevail on every claim. If the parties are unable to agree on damages, a statement concerning the issues on which the parties disagree;
>
>    (C)    Statement of attorneys' fees – statement of fees and costs to be applied for in the aggregate and on a per share basis;
>
>    (D)    Identification of lawyers' representatives – the name, telephone number, and address of counsel available to answer questions; and
>
>    (E)    Reasons for settlement – a brief statement explaining the reasons why the parties are proposing the settlement.

15 U.S.C. §§ 78u-4(a)(7), 77z-1(a)(7); *Indep. Energy Holdings*, 302 F. Supp. 2d at 184.  The notice also must include a cover page summarizing the required information. 15 U.S.C. §§ 78u-4(a)(7), 77z-1(a)(7)(A).

The notice provided to the Class in this case satisfies all the foregoing requirements. The Notice informed the Class of the relevant aspects of the Action and the partial settlement, including:

>    •    The nature of the case, a statement of the parties' respective claims and defenses, the background of the settlement, and how the settlement funds will be allocated if the settlement is approved;
>
>    •    Class members' right to exclude themselves from the securities settlement class, to object to any aspect of the settlement, and to appear at the fairness hearing--and the processes and deadlines for doing so; and

-11-

- The binding effect of any judgment on all persons who do not exclude themselves from a class, and the impact on class members if the settlement is approved.

Consistent with the PSLRA's requirements, the Notice also:

- set out the amount of the settlement and the aggregate recovery per share, and provided the Plan of Allocation;

- stated that the parties disagree on the amount of damages to which class members would be entitled, and summarized the bases for that disagreement;

- stated the outside limits of the amount of attorneys' fees sought; and

- provided the name, address, and telephone number of lead counsel for the Class.

The notices provided sufficient information for the Class to understand the proposed settlement and their options. *See, e.g., In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.1997) *aff'd*, 117 F.3d 721 (2d Cir. 1997) (settlement notice adequate where "level of detail apprises the class members of the salient terms of the settlement and affords them a reasonable opportunity to present any objections."); *Indep. Energy Holdings*, 302 F. Supp. 2d at 184 (approving notice where information required by PSLRA was found partly in individual notice and partly in summary notice).

Accordingly, the Court should find the form and substance of the notices disseminated to the Class proper and adequate.

**C.    Class Certification For Settlement Purposes Is Appropriate.**

As set forth in Plaintiffs' Motion to Certify Class (Doc. ID # 232), certification of a class for settlement purposes is appropriate at this point.  Plaintiffs seek to certify a class defined as:

> All persons and entities who purchased or otherwise acquired the securities of ANR during the period between May 15, 2000 and November 19, 2002, inclusive, and were damaged thereby. Excluded from the Class are the Defendant, its officers, directors, and partners at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.  For purposes of this Settlement, the term "controlling interest" shall include any interest of 10% or more of the common stock of

-12-

> any entity.  Also excluded from the Class are any Class Members who have excluded themselves by filing a timely request for exclusion in accordance with the requirements set forth in the Notice.

(the "Class").  The class clearly satisfies the requirements of Fed. R. Civ. P. 23(a).  To begin with, the Class is so numerous as to merit a class action.  In fact, the Class consists of thousands of members.  This is best demonstrated by the fact that the Claims Administrator in this case sent Notices to over 21,000 recipients. *See* Fraga Declaration, ¶ 12.  The members likewise have numerous questions of law and fact common to the claims of *all* Class Members in that they arise out of the same uniform pattern of KPMG Bermuda's conduct.  Lead Plaintiff's claims are therefore typical, indeed *identical*, to those of other class members.  Finally, Lead Plaintiffs will adequately represent the Class for settlement purposes because their interests are not antagonistic to those of other Class Members and because Co-Lead counsel for the Lead Plaintiffs is qualified and experienced.  Under the law, therefore, the proposed Class for settlement purposes is adequate.

**THE PROPOSED SETTLEMENT SHOULD BE
GRANTED FINAL APPROVAL**

The substantive terms of the Settlement and the method used to arrive at the Settlement, as well as the proposed Plan of Allocation are fair, reasonable and adequate and should be approved by the Court.

**A.      The Proposed Settlement Is Fair, Reasonable and Adequate**

In determining whether final approval should be given to a class action settlement, the Court must determine whether a proposed settlement, taken as a whole, is fair, reasonable and adequate. *In re Iomega Sec. Litig.*, Civ Nos. B-86-257 (JAC), B-86-273 (JAC), 1987 WL 43391, at *9 (D. Conn. Oct. 1, 1987); *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991); *Banyai v. Mazur, 2007 WL 927583 *7 (S.D.N.Y. March 27, 2007).*  A proposed class

action settlement enjoys a strong presumption that it is fair, reasonable, and adequate if, as here, it was the product of arm's length negotiations conducted by capable counsel experienced in class action litigation arising under the federal securities laws on an informed basis.  *See, e.g., Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 366-67 (S.D.N.Y. 2002); PaineWebber,* 171 F.R.D. at 124; *New York & Maryland v. Nintendo of Am ., Inc.*, 775 F. Supp. 676, 680-81 (S.D.N.Y. 1991); *Chatelain v. Prudential-Bache Secs., Inc*., 805 F. Supp. 209, 212 (S.D.N.Y. 1992) ("A strong initial presumption of fairness attaches to the proposed settlement when it is shown to be the result of this type of a negotiating process and when the number of objectors is small."); *see also Manual for Complex Litigation, Fourth § 21.612* (2004) ("Extended litigation between or among adversaries might bolster confidence that the settlement negotiations were at arm's length.").  Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp*., 840 F. Supp. 277, 281 (S.D.N.Y. 1993) (citation omitted).  In making this determination, the Court compares "the terms of the compromise with the likely rewards of litigation." *Iomega*, 1987 WL 43391, at *9; *In re Warner Communications Sec. Litig*., 618 F. Supp. 735, 740 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *see also Detroit v. Grinnell Corp*., 495 F.2d 448, 462 (2d Cir. 1974) ("[t]he court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable" (citations omitted)).

The Court must ascertain sufficient facts about the settlement in order to render "an intelligent and objective opinion" about the likelihood of success if a claim is litigated, but in doing so, the Court cannot conduct a trial on the settlement's merits.  *See Weinberger v.*

*Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (citations omitted); *Grinnell*, 495 F.2d at 462 ("[t]he Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case"); *Paine Webber*, 171 F.R.D. at 124 (approval of a settlement is within the Court's discretion).

The factors in this Circuit to be considered in evaluating the Settlement are:

1.      the complexity, expense and likely duration of the litigation;

2.      the reaction of the class to the settlement;

3.      the stage of the proceedings and the amount of discovery completed;

4.      the risks of establishing liability;

5.      the risks of establishing damages;

6.      the risk of maintaining the class action through trial;

7.      the ability of the Defendants to withstand a greater judgment;

8.      the range of reasonableness of the settlement funds in light of the best possible recovery; and

9.      the range of reasonableness of the settlement funds to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463; *Iomega*, 1987 WL 43391, at *9; *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003). When assessed in light of the applicable criteria, the Settlement is fair, reasonable and adequate and should be granted final approval.

1.      <u>The complexity, expense and likely duration of the litigation</u>

As described in more detail in the Kaswan Declaration, this Action was complex both in terms of establishing liability and in proving damages. The issues involved difficult actuarial and accounting questions relating to the adequacy of policyholder reserves for hybrid annuity

products and the amortization of deferred acquisition costs. Already the litigation has proceeded for almost six years, and, with regard to Plaintiffs' claims against KPMG Bermuda alone, Plaintiffs have incurred expert fees, document processing and other costs exceeding $185,000.00 as well as over $1,550,000.00 of lodestar. These costs and fees have all been incurred since Plaintiffs' application for fees and costs in the settlement against the ANR Defendants. To prevail, Plaintiffs would have to prove that ANR made misstatements that were signed off on by KPMG Bermuda, and thereby decipher complex actuarial and accounting issues and also attempt to establish scienter on the part of an auditor, which is always a difficult undertaking. Here that showing would need to be made without evidence of motive on the part of KPMG Bermuda or any substantial non-audit fees paid to KPMG Bermuda.

Moreover, whatever the outcome of any eventual trial, inevitable appeals would have been taken to the Second Circuit and perhaps even to the U.S. Supreme Court. All of the foregoing would have delayed, for years, the ability of the Class to recover. Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk of delay of continued litigation through the remainder of the discovery period, summary judgment, trial and post-trial proceedings.

2.     The Reaction of the Class to the Settlement

The reaction of the Class to the Settlement is often the most significant factor to be weighed in considering its adequacy. *See Maley*, 186 F. Supp. 2d at 362; *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001); *Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 457-58 (S.D.N.Y 2004). The fact that no class member has objected to the substantive terms of the Settlement is evidence of the fairness of the Settlement. *PaineWebber*, 171 F.R.D. at 126.

Over 21,000 Settlement Notices were sent to Class Members or their nominees. No Class member has objected. The favorable reaction of the Class is further evidence that the Settlement is fair, reasonable and adequate.

3. The Stage of Proceedings and the Amount of Discovery Completed

The original complaint as to KMPG Bermuda was filed in October, 2003. Since that time, KPMG Bermuda has moved to dismiss the action, and Plaintiffs have made a comprehensive and thorough investigation into the matters alleged in the case including analyzing documents obtained through publicly available sources, case law and other authorities as well as by reviewing thousands of pages of documents produced by KPMG Bermuda in the course of discovery. Depositions of CWA and the KPMG Bermuda auditor were taken. The complexity of the actuarial and accounting issues required on-going assistance from actuarial and accounting experts. Plaintiffs had moved for class certification and filed a lengthy sworn statement of an economist testifying to the efficiency of the market in support. Here there was a related arbitration proceeding, and the testimony and exhibits produced in that action were also reviewed and analyzed. Additional insights into the relative strengths and weaknesses of the case were obtained through the series of mediations conducted before a settlement was finally reached.

The stage of proceedings and the amount of discovery completed at the time of settlement is relevant to "the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *PaineWebber*, 171 F.R.D. at 126.

Here, there is no doubt that at this stage of these proceedings, the parties have gained a thorough understanding of their own strengths and weaknesses. Prior to executing the

Stipulation, Co-Lead Counsel, Plaintiffs extensively consulted with their actuarial and accounting experts and reviewed and analyzed the thousands of pages of documents obtained from various sources. Key witnesses were deposed. Counsel's understanding of the facts and evidence was then put to the test as they presented their case twice to a special mediator, highly regarded defense counsel, and their experts.

This process adds credibility to Co-Lead Counsel's careful assessment that the Settlement is fair. *PaineWebber*, 171 F.R.D. at 126 ("Class Counsel has had sufficient information to act intelligently on behalf of the class") (internal quotations and citations omitted); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *15 (S.D.N.Y. Nov. 26, 2002) ("[g]iven the stage of this case and the extensive discovery conducted. . . Plaintiffs' counsel is well-positioned to assess the fairness of the proposed settlement"); *Global Crossing*, 225 F.R.D. at 459 (where plaintiffs obtained documents from the company through informal discovery during settlement negotiations, the court determined that "Plaintiffs' counsel appear to have scrutinized the facts of the Actions from the earliest stages of the litigation and developed an informed basis from which to negotiate a reasonable compromise"). Accordingly, this factor also supports approval of the Settlement.

4.    Risks of Establishing Liability

"[L]itigation risk must be measured as of when the case is filed," rather than with the hindsight benefit of subsequent events. *Goldberger v. Integrated Resources, Inc.*, 209 F. 3d 47 55 (2d. Cir. 2000). As the preceding paragraphs have shown, this case is replete with complexity in articulating complex accounting issues, in establishing liability, and in proving damages. Despite what has already transpired, Plaintiffs would still have to overcome a likely motion for summary judgment and a "battle of the experts" at trial of this case. Each task would have

proven to be complex, expensive and time-consuming.  There were enormous risks in proceeding with a trial of Plaintiffs' claims, requiring complex, fact-intensive analyses of highly detailed and intricate accounting and actuarial issues, and all of this would need to be absorbed and understood by a lay jury.

Plaintiffs would also have to demonstrate that the Class's losses were actually caused by not only ANR's false and misleading statements, but by KPMG Bermuda's verification of them, rather than other factors influencing ANR's stock price.

5.     The Risks of Establishing Damages

Plaintiffs also confronted significant obstacles in demonstrating damages.  "Calculation of damages is a complicated and uncertain process, typically involving conflicting expert opinion about the difference between the purchase price and the stock's 'true' value absent the alleged fraud."  *Global Crossing*, 225 F.R.D. at 459 (citations and internal quotations omitted).  The jury's verdict with respect to damages would depend on its reaction to the complex testimony of experts, a reaction which at best is uncertain.  *See Lloyd's*, 2002 WL 31663577, at *21 ("The determination of damages. . . is a complicated and uncertain process, typically involving conflicting expert opinions.  The reaction of a jury to such complex expert testimony is highly unpredictable."); *Maley*, 186 F. Supp. 2d at 365 (same); *Warner*, 618 F. Supp. at 744-45 ("[i]n this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions").  Isolating the amount of Plaintiffs' stock losses that was attributable to KPMG  Bermuda's fraud versus market forces would be a daunting task.  The risk of establishing damages and the amount thereof also supports approval of the Settlement.

6.    Risks of Maintaining Class Action Through Trial

Plaintiffs had moved for class certification supported by a lengthy sworn statement by their economist on the issue of market efficiency.  Defendants indicated that they intended to vigorously challenge class certification.  One of the original lead Plaintiffs and a class representative, Midstream Investments, sought to withdraw under these circumstances, and Plaintiffs faced a significant risk of maintaining a class through trial.

7.    The Ability of Defendants to Withstand a Greater Judgment

While the ability of KPMG Bermuda to withstand a greater judgment was not a significant factor in negotiations, no one can predict whether a much larger judgment entered several years from now would be collectible, particularly since KPMG Bermuda is a foreign entity.

8.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Litigation Risks

The last two substantive factors courts consider are the range of reasonableness of the settlement funds in light of (i) the best possible recovery and (ii) litigation risks.  In analyzing these last factors, the issue for the Court is not whether the Settlement represents the "best possible recovery," but how the Settlement relates to the strengths and weaknesses of the case. The Court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462. Given the history and posture of this case, as well as the litigation risks discussed above, the Settlement provides an extraordinary recovery.

Settlements are approved even when they amount to only a small percentage of the recovery sought. *In re Michael Milken & Assocs.*, 150 F.R.D. 57, 64-65 (S.D.N.Y. 1993); *In re Gulf Oil Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590-91 (S.D.N.Y.1992); *Grinnell,* 495 F.2d at 455 n. 2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not

amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). Here, Plaintiffs faced the likely prospect of having their potential recovery reduced by the settlement with the ANR Defendants by at least 50%, since they were responsible for preparing the allegedly fraudulent financial statements. Plaintiffs are recovering a significant portion of its remaining claims relating to the case. Given the high litigation risk relating to the complexity of the actuarial and accounting issues in this case and the difficulties of proving scienter against an outside auditor, the Settlement represents an outstanding recovery for the Class.

**B.    The Settlement Negotiations Were Procedurally Fair**

In assessing whether a settlement is fair, reasonable and adequate, courts often examine the "negotiating process by which the settlement was reached" to determine whether the settlement was the result of "arms-length negotiations" between counsel with "the experience and ability . . . necessary to effective representation of the class's interests." *Weinberger*, 698 F.2d at 74; *In re Sterling Foster & Co. Sec. Litig.*, 238 F. Supp. 2d 480, 484 (E.D.N.Y. 2002) ("[a] strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length").

There can be no question that this was a hard-fought case and that the settlement resulted from lengthy and intense negotiations between Co-Lead Counsel and KPMG Bermuda's Counsel. Counsel on both sides were experienced and thoroughly familiar with the factual and legal issues, and utilized the expertise of special mediator Robert A. Meyer, Esq. Collusion is simply not an issue with respect to this Settlement. As explained in the Kaswan Declaration, in settling this case, the parties approached the mediation with the same diligence which they practiced throughout the course of the litigation. The settlement negotiations themselves were undeniably conducted at arm's length between highly experienced and skilled attorneys

specializing in securities fraud litigation. The Settlement is therefore clearly entitled to a presumption of fairness from the settlement negotiations.

**THE PROPOSED PLAN OF ALLOCATION
IS FAIR, REASONABLE AND ADEQUATE**

A Plan of Allocation is fair, reasonable and adequate as long as it has a "reasonable, rational basis." *Maley*, 186 F. Supp. 2d at 367. Because it is impossible in a large class to calculate each member's claim with mathematical precision, courts recognize that "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *PaineWebber*, 171 F.R.D. at 133.

Here, the Plan of Allocation provides for the distribution of the Net Settlement Fund on a *pro rata* basis, based on a formula tied to the relation between individual claims and total claims. "Allocation formulas, including certain discounts for certain securities, are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim." *American Bank Note*, 127 F. Supp. 2d at 429. An allocation formula only need have a reasonable and rational basis, particularly if recommended by experienced and competent class counsel. *Id.* at 429-30. Counsel's conclusion that the Plan of Allocation is fair and reasonable is therefore entitled to great weight. *Id.* at 430 (approving allocation plan and according counsel's opinion "considerable weight" because there were "lengthy negotiations" among lead counsel and "detailed assessments of the strengths and weaknesses of the claims asserted, the applicable damages, and the likelihood of recovery").

Furthermore, there can be no question that the Plan of Allocation is fair, reasonable and adequate because it is identical to that already approved by this Court in the ANR Action. For these reasons, the Plan of Allocation is fair, reasonable and adequate and should be approved.

## CONCLUSION

This Settlement is the result of nearly six years of aggressively prosecuted and investigated securities litigation, involving complex actuarial, accounting and damages issues that would have been extremely difficult for a jury to grasp.  KPMG Bermuda would have received the benefit of a significant proportional reduction in its exposure to liability as a result of the earlier settlement with the ANR Defendants.  The $10.5 million recovery was obtained after two mediation attempts and represents an excellent result in settlement of the Class's claims against KPMG Bermuda.  For all the foregoing reasons, Plaintiffs respectfully request that the Court approve the Settlement as fair, reasonable and adequate.

Dated:        May 29, 2008

/s/ David R. Scott
**SCOTT + SCOTT LLP**
David R. Scott (CT 16080)
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

**SCOTT + SCOTT LLP**
Beth A. Kaswan
29 West 57th Street, 14th Floor
New York, NY 10019
Telephone:  (212) 223-6444
Facsimile: (212) 223-6334

**MILBERG LLP**
Barry A. Weprin
Todd Kammerman
One Pennsylvania Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

**Co-Lead Counsel For Class Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2008, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing. The parties may access this filing through the court's CM/ECF System.

<u>    /s/ David R. Scott          </u>
**SCOTT + SCOTT LLP**
David R. Scott (CT16080)
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
Fax: (860) 537-4432

**Co-Lead Counsel for Plaintiffs**