# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| SHERRY SCHNALL, Individually and On Behalf of All Others Similarly Situated )<br><br>Plaintiff, )<br><br>v. )<br><br>ANNUITY AND LIFE RE (HOLDINGS), LTD., et al., )<br><br>Defendants. ) | Master File No. 02CV2133 |

---

## DECLARATION OF BETH A. KASWAN IN SUPPORT OF FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, CLASS CERTIFICATION, AWARD OF FEES AND EXPENSES, AND PLAN OF ALLOCATION

**SCOTT + SCOTT LLP**
David R. Scott
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
Fax: (860) 537-4432

**SCOTT + SCOTT LLP**
Beth A. Kaswan
29 West 57th Street, 14th Floor
New York, NY 10019
Tel: (212) 223-6444
Fax: (212) 223-6334

**MILBERG LLP**
Barry A. Weprin
Todd Kammerman
One Pennsylvania Plaza
New York, NY 10119-0165
Tel: (212) 594-5300
Fax: (212) 868-1229

## DECLARATION

Pursuant to 28 U.S.C. § 1746, Beth A. Kaswan, under penalty of perjury, declares that the following is true and correct to the best of her knowledge and belief:

1.     I am a partner at the law firm of Scott + Scott LLP, which is one of the Court-appointed Co-Lead Counsel for Lead Plaintiffs Communications Workers of America ("CWA") and Midstream Investments, Ltd (collectively, "Plaintiffs"). I have personal knowledge of the matters set forth herein based on my active participation in all material aspects of the prosecution and settlement of this action.

2.     This declaration is submitted in support of Plaintiffs' application for (a) final approval of the proposed Settlement of $10.5 million plus accrued interest (the "Settlement"); (b) the Plan of Allocation; (c) certification of a class for settlement purposes; and (d) an award of attorneys' fees equal to 1/3 of the Gross Settlement Fund and reimbursement of expenses of approximately $ 186,853.00 (the "Fee Application"), plus $6,629.00 to reimburse Lead Plaintiff CWA for its reasonable costs and expenses directly relating to its representation of the Class. The purpose of this declaration is to set forth the background of the action and its procedural history, the factual investigation and prosecution, the negotiations that led to the Settlement, the notice process, and the proposed Plan of Allocation.

## PRELIMINARY STATEMENT

3.     The substantive terms of the Settlement and method used to arrive at it are, taken as a whole, fair, reasonable, and adequate. The Settlement results in substantial tangible present recovery without the attendant risk of delay of continued litigation; has received a favorable reaction of the Class; follows more than sufficient investigation of

1

the facts; and eliminates serious risks of establishing liability and damages. The Settlement therefore provides the best possible recovery for the Class given the litigation risks. Finally, it is the result of lengthy and hard-fought arms'-length negotiations between counsel for all parties.

4.    Plaintiffs also seek approval of the proposed Plan of Allocation as fair and reasonable. The Plan of Allocation is identical to that previously approved on January 21, 2005 in connection with the prior settlement. It provides for the distribution of the Net Settlement Fund on a *pro rata* basis, based on a formula tied to liability and damages. As this is a reasonable and rational distribution, the Court should approve the proposed Plan of Allocation.

5.    In addition to seeking final approval of the Settlement and Plan of Allocation, Co-Lead Counsel is also applying to the Court for a collective award of attorneys' fees and payment of costs and expenses. Specifically, Co-Lead Counsel is applying for a fee of 1/3 of the Gross Settlement Fund and requesting reimbursement of incurred expenses totaling approximately $186,855.00. Respectfully, Co-Lead Counsel submit that the Fee Application should be awarded because: (a) the fee sought is supported by the amount of time expended by counsel in prosecuting the case; (b) the action was prosecuted on a contingent basis; and (c) counsels' efforts resulted in a substantial settlement favorable to the Class.

## FACTUAL BACKGROUND OF THIS LITIGATION
## AS ALLEGED IN THE CONSOLIDATED COMPLAINT

6.      This is a securities class action brought on behalf of all purchasers of the publicly traded securities of Annuity and Life Re (Holdings), Ltd. ("ANR") between May 15, 2000 and November 19, 2002 (the "Class Period"), against Defendant KPMG Bermuda for violations of the Securities Exchange Act of 1934 (the "Exchange Act").[1]

7.      Plaintiffs initially filed suit against ANR after public revelation that ANR would have to restate virtually all of its SEC filings during the Class Period, which caused the stock price to drop from $36.98 to $2.24.

8.      Plaintiffs later brought suit against KPMG LLP and KPMG Bermuda based upon their allegedly fraudulent audit opinions for ANR's financial statements for 1999, 2000, and 2001 which KPMG Bermuda audited and which contained financial accounting information concerning ANR's contract with Transamerica Occidental Life Insurance ("Transamerica").

9.      Plaintiffs contended that ANR made a series of misstatements (which KPMG Bermuda approved) about the risks of the Transamerica contract, its failure to adequately reserve for interest due to policyholders that was guaranteed under state laws, and its inadequate amortization of deferred acquisition costs.

10.     Plaintiffs contended that the Transamerica contract was particularly risky because the investment returns were tied to the performance of convertible bonds and that

---

[1] The Settlement applies only to KPMG Bermuda, as a final settlement was approved on January 21, 2005 as to ANR, its affiliate, officers, and directors, while KPMG LLP, the United States firm, was dismissed from the case on August 10, 2006. KPMG Bermuda issued the allegedly fraudulent audit opinions and KPMG LLP assisted in conducting the audit. Therefore, KPMG Bermuda is the sole remaining defendant in this case.

3

loss recognition and recoverability tests for the deferred acquisition costs related to the Transamerica contract were not properly performed or reported.

11.    In fact, ANR assumed the bulk of the risk and losses for the Transamerica contract, which grew as policyholder surrenders skyrocketed and investment earnings on the convertible bonds fell.  Instead of reporting the experienced losses attributable to the Transamerica contract, ANR reported net income using an undisclosed reserve.

12.    Therefore, Plaintiffs assert that ANR consistently overstated its earnings, understated its liabilities and failed to account for or disclose the risks it had assumed in conjunction with the Transamerica contract involving $1.6 billion in assumed policyholder liabilities.

13.    KPMG Bermuda, who served as the independent auditor for ANR during the entire Class Period, certified that ANR's financial statements fairly portrayed its earnings and financial position and complied with GAAP.    Furthermore, KPMG Bermuda represented that its audits of ANR were conducted in accordance with GAAS.

14.    In reality, though, as discussed above and in the complaints filed in the various actions, ANR's financial statements were misstated in material amounts in violation of GAAP.  They failed to fully account for ANR's obligations to policyholders, over-reported income, failed to recognize expenses for minimum interest payments and accruals, and failed to write-down deferred acquisition costs.

15.    During discovery, Plaintiffs learned that ANR was effectively netting its revenues and expenses through the use of an undisclosed reserve to arrive at and report a targeted and pre-determined rate of return as income.

16.    Plaintiffs alleged that KMPG Bermuda was aware of this erroneous accounting but nonetheless signed the unqualified and false audit opinions.

17.    Furthermore, Plaintiffs alleged that KPMG Bermuda ignored certain "red flags" that should have alerted it to the gross accounting errors and misstatements espoused by ANR.

## PROCEDURAL HISTORY OF THIS ACTION

18.    The litigation began in December, 2002, when a number of related putative securities class actions were filed alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act") in connection with investors' purchases of ANR securities.

19.    These cases were all consolidated into one case (the "ANR Action") with Plaintiffs appointed as Lead Plaintiffs and Scott + Scott LLP and the predecessor to Milberg LLP as Co-Lead Counsel on March 29, 2003.

20.    On October 23, 2003, Lead Plaintiffs filed suit against KPMG LLP and KPMG Bermuda (the "KPMG Action") and the Court soon consolidated the two actions into one case.

21.    All parties to the two actions filed motions to dismiss which were fully briefed and researched.

22.    On January 21, 2005, the Court entered an Order and Final Judgment approving the settlement with the defendants to the ANR Action for $16 million (the "ANR Settlement").

23.    On August 10, 2006, the Court granted the motion to dismiss as to KPMG LLP. On August 30, 2006 the Court denied the motion to dismiss as against

KPMG Bermuda.    On September 14, 2006 KPMG Bermuda moved for reconsideration and the parties briefed the motion.

24.    KPMG Bermuda then answered the operative complaint on November 22, 2006 and continued to deny that ANR's accounting for the Transamerica contract violated GAAP or that its audit opinions were false or issued with scienter.

25.    Co-Lead Counsel therefore embarked upon a hard-fought and aggressive prosecution of this action.  Indeed, Plaintiffs and Co-Lead Counsel vigorously litigated this action by, among other things: conducting an extensive investigation into Defendant's wrongful conduct; drafting a detailed, particularized amended complaint; extensively briefing Defendant's motion to dismiss and motion for reconsideration; issuing a subpoena to KPMG LLP and moving to compel its workpapers; obtaining, reviewing and analyzing thousands of pages of auditor and actuarial work papers; taking and defending depositions; briefing a motion for class certification; and preparing for and participating in the mediations leading up to the settlement in this action.

## A.    Discovery Commences And Plaintiffs Move For Class Certification

26.    On December 15, 2006 the parties filed their Report on their Rule 26F Planning Meeting.  Thereafter, the parties each submitted a proposed scheduling order and made initial disclosures pursuant to Rule 26(a).  The parties each served requests for documents.    In response to Plaintiffs' requests, KPMG Bermuda produced tens of thousands of pages of audit work paper files.

27.    Plaintiffs also served a subpoena on KPMG LLP for its auditor and actuarial work papers, and moved to compel their production in the United States District Court for the Southern District of New York.

28.    On January 31, 2007 Plaintiffs moved for class certification. Plaintiffs' motion papers included a memorandum of law and a detailed declaration from an expert economist addressing market efficiency for ANR's stock.    Motion practice then proceeded on Plaintiff Midstream Investment's efforts to withdraw as a class representative.

29.    On June 7, 2007, KPMG Bermuda took the deposition of Barbara Easterling, a trustee of CWA.  KPMG Bermuda also sought discovery from CWA's outside investment advisors who supplied documents in response to their requests.

30.    On October 10, 2007, Plaintiffs took the testimony of KPMG Bermuda's audit manager.    This deposition disclosed strengths and weaknesses in Plaintiffs' accounting theories as well as additional technical complexities in the case arising out of the hybrid nature of the annuity product itself.

**B.    The Settlement Negotiations**

34.    The proposed settlement is the result of lengthy and hard-fought negotiations between Co-Lead Counsel and KPMG Bermuda's Counsel.  Counsel on both sides are experienced and thoroughly familiar with the factual and legal issues. The parties engaged in numerous discussions and arm's-length negotiations with the assistance of Robert A. Meyer, Esq., acting as special mediator, over the course of extensive mediation with respect to a compromise and settlement of the case as against KPMG Bermuda with a view to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Class.

35.    Additional insights into the relative strengths and weaknesses of the case were obtained through the two extensive mediation sessions conducted with the special mediator.

36.    On February 13, 2008, Plaintiffs moved this Court for preliminary approval of a proposed settlement of their case against KPMG Bermuda for $10.5 million in cash, preliminary certification of a class for settlement purposes and to set a schedule for notice and a fairness hearing on the proposed settlement. On February 19, 2008 the Court issued its Preliminary Order.

## EVALUATION OF THE PROPOSED SETTLEMENT

37.    Co-Lead Counsel respectfully submit that the substantive terms of the Settlement and the method used to arrive at the Settlement, as well as the proposed Plan of Allocation are fair, reasonable and adequate and should be approved by the Court.

38.    The factors in this Circuit to be considered in evaluating the Settlement are: (i) the complexity, expense and likely duration of the litigation; (ii) the reaction of the class to the settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the risks of establishing liability; (v) the risks of establishing damages; (vi) the risk of maintaining the class action through trial; (vii) the ability of the defendants to withstand a greater judgment; (viii) the range of reasonableness of the settlement funds in light of the best possible recovery; and (ix) the range of reasonableness of the settlement funds to a possible recovery in light of all the attendant risks of litigation. When assessed in light of the applicable criteria, the Settlement is fair, reasonable and adequate and should be granted final approval.

## A. The complexity, expense and likely duration of the litigation

8

39.    As the preceding paragraphs have shown, this Action is replete with complexity both in establishing liability and in proving damages specifically attributable to KPMG Bermuda alone.    Additionally, the jury's verdict with respect to damages would depend on its reaction to the complex testimony of accounting and actuarial experts, a reaction which at best is uncertain.    Apportioning fault and the losses attributable to the audit opinions versus other factors would have involved difficult and conflicting testimony by the parties' economists.

40.    Moreover, trial of this case would have proven to be complex, highly technical, expensive and time consuming.    There were significant risks in proceeding with a trial of Plaintiffs' claims.    The accounting and actuarial issues would have been extremely difficult to explain to a lay jury and Plaintiffs would have been faced with the daunting task of demonstrating and proving scienter on behalf of an independent auditor. Loss causation issues would also be challenging because a large portion of ANR's restatements was unrelated to the Transamerica contract, and ANR made several false statements that were not the subject of the KPMG Bermuda audits. Finally, a jury would need to apportion the relative fault of KPMG Bermuda versus the earlier settling parties to determine the reduction to the final judgment for the earlier settlement. Each of these issues involved enormous risks.

41.    Additionally, whatever the outcome of any eventual trial, inevitably appeals would have been taken to the Second Circuit and perhaps even to the U.S. Supreme Court. All of the foregoing would have delayed, for years, the ability of the Class to recover. Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk of delay of continued litigation through the class

9

certification, summary judgment, trial and post-trial proceedings. While, at this time, Plaintiffs have no reason to question the Defendant's ability to pay a larger judgment, collectability cannot be assured where the issue would not likely be confronted for years to come absent a settlement.

## B. The Reaction of the Class to the Settlement

42.    Over 21,000 copies of Notice of Proposed Settlement of Class Action with Remaining Defendant KPMG Bermuda, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "KPMG Settlement Notice") were sent to Class Members or their nominees. No one has objected and only one person has requested exclusion from the Class. The favorable reaction of the Class is further evidence that the Settlement is fair, reasonable and adequate.

## C. The Stage of Proceedings and the Amount of Discovery Completed

43.    After KPMG Bermuda's motion to dismiss was denied, Plaintiffs engaged in thorough discovery in this case which included analyzing documents obtained through publicly available sources, case law and other authorities as well as reviewing thousands of pages of documents produced by KPMG Bermuda in the course of discovery as well as documents produced in a related arbitration proceeding.

44.    Furthermore, Plaintiffs moved for class certification and filed a lengthy sworn statement of an economist testifying to the efficiency of the market in support, while additional insights into the relative strengths and weaknesses of the case were obtained through the series of mediations conducted before a settlement was finally

reached. Therefore, at this stage of these proceedings, the parties have gained a thorough understanding of their own strengths and weaknesses.

**D.  Risks of Establishing Liability**

45.     It is highly likely that Defendant would later file a motion for summary judgment which Plaintiffs would have to defeat. If the case proceeded to trial, it would surely entail a "battle of the experts" which would also involve extremely complex analyses of highly detailed and sophisticated accounting and actuarial issues which would have to be explained to and understood by a lay jury.

46.     Such a trial would carry with it enormous risks for the Plaintiffs who would also have to show that any losses to the Class were actually caused by KPMG Bermuda's verifications of ANR's statements rather than any other factors that may have affected the price of ANR's stock price.

47.     Therefore, given these risks of establishing liability, settlement at this point is highly advantageous to the Plaintiffs.

**E.  The Risks of Establishing Damages**

48.     A trial of this Action would also likely involve a "battle of the experts" to establish damages which would again subject the lay jury to complex accounting measures.

49.     A further complication in establishing damages at trial would be caused by the fact that the amount of Plaintiffs' stock losses actually attributable to KPMG Bermuda's fraud rather than any other market forces or ANR would have to be isolated. This would prove to be a risky venture and further indicative of the soundness of the Settlement.

### F.  Risks of Maintaining Class Action Through Trial

50.    The fact that Plaintiffs faced a significant risk of maintaining a class through trial weighs heavily in favor of approval of this Settlement.

51.    Plaintiffs face this risk because Defendants have indicated that they intend to vigorously challenge the class certification already filed by Plaintiffs.    Further complicating class certification is the fact that one of the original lead plaintiffs and a class representative, Midstream Investments, sought to withdraw.

### G.  The Ability of Defendants to Withstand a Greater Judgment

52.    The ability of KPMG Bermuda to withstand a greater judgment was not a factor in negotiations, but it is not possible to predict whether a far larger judgment entered many years from now would be collectible.  This unpredictable quality is further exacerbated by the fact that KPMG Bermuda is a foreign entity.

### H.  The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Litigation Risks

53.    Plaintiffs face the reality that their recovery could be reduced by at least 50% given the fact that ANR was responsible for preparing the subject financial statements.

54.    Because Plaintiffs are recovering a significant portion of the remaining claims relating to the case and given the high litigation risk relating to the complexity of the actuarial and accounting issues in this case and the difficulties of proving scienter against an outside auditor, the Settlement represents a very good recovery for the Class.

## CLASS NOTICE

55.    By Order dated February 19, 2008 (the "Preliminary Order"), this Court ordered that notice be disseminated to the Class, and set the May 9, 2008 deadline for Class members to submit objections to the Settlement, Plan of Allocation and the request for attorneys' fees and reimbursement of expenses, or request exclusion from the Class. Thereafter, the Court set a final approval hearing date of June 5, 2008.

56.    Pursuant to the Preliminary Order, Lead Counsel instructed the Garden City Group, Inc. ("GCG"), the Claims Administrator for this Settlement and the prior settlement, to begin disseminating copies of the KPMG Settlement Notice. The KPMG Settlement Notice contains a thorough description of the Settlement, the Plan of Allocation and Class Members' rights to participate in and object to the Settlement, or to request exclusion from the Class. *See* Affidavit of Jose C. Fraga Re: (a) Mailing of the Settlement Notice; and (b) Report on Exclusion Requests Received (the "Fraga Affidavit") attached hereto at Exhibit A.

57.    GCG has disseminated over 21,000 copies of the KPMG Settlement Notice to potential Class Members and their nominees.

58.    In addition, the Summary Notice of Proposed Settlement of Class Action with Remaining Defendant KPMG Bermuda and Settlement Hearing ("Summary Notice") was published in the global edition of *The Wall Street Journal* and the worldwide edition of *Financial Times* on March 14, 2008. Additionally, a press release announcing the Settlement substantially the same form as the Summary Notice was issued over the Global Media Circuit of *Business Wire* on March 14, 2008. *See* Affidavit

13

of Paul J. Andrejkovics Re: Publication of the Summary Notice of Proposed Settlement of Class Action with Remaining Defendant KPMG Bermuda and Settlement Hearing (the "Andrejkovics Affidavit") attached hereto at Exhibit B.

59.    Information regarding the Settlement, including downloadable copies of the KPMG Settlement Notice and a Proof of Claim form, was posted on the GCG website. The KPMG Settlement Notice and a Proof of Claim form are also available on Co-Lead Counsel's websites.

60.    The deadline for Class Members to file objections to the Settlement, the Plan of Allocation or request for attorneys' fees and reimbursement of expenses was May 9, 2008. Co-Lead Counsel is not aware of any objections.

## PLAN OF ALLOCATION

61.    The Plan of Allocation is identical to the Plan of Allocation approved by this Court on January 21, 2005 in conjunction with the settlement as to ANR.

62.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Class Members who submit (or who previously submitted) acceptable Proof of Claim forms. The Plan of Allocation is designed to achieve an equitable distribution of the Net Settlement Fund.

63.    The Plan of Allocation is the product of Co-Lead Counsel's investigation and discovery in this Action, as well as its consultation with Lead Plaintiff's damages expert. Indeed, Co-Lead Counsel worked closely with the damages expert in establishing the Plan of Allocation, and believe that the Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Fund among Authorized Claimants.

14

64.    The analysis performed by Plaintiffs' damages expert entailed studying the market reaction to public disclosures that revealed or described the alleged misrepresentations or their effects, and calculating the reasonable percentage of artificial inflation present in the daily closing market prices for ANR common stock for each day in the Class Period that, in its opinion, was attributable to the alleged wrongdoing. Plaintiffs' damages expert also measured the percentage price decline associated with the disclosure, adjusted that price reaction to eliminate the effects, if any, attributable to general market or industry conditions, and then used standard statistical techniques to ensure that the price reaction was statistically significant.

65.    The Garden City Group, as the Claims Administrator for the Settlement, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim," calculated in accordance with the Plan of Allocation. Calculation of the Recognized Claim will depend upon several factors, including when the stock was purchased or acquired, and whether the stock was held until the conclusion of the Class Period or sold during the Class Period, and if so, when it was sold.

66.    In sum, the Plan of Allocation was designed to fairly and rationally allocate the proceeds of the Settlements among Authorized Claimants based on the strength of the various claims and the resulting damages. Accordingly, Co-Lead Counsel respectfully submits that the Plan of Allocation is fair and reasonable and should be approved.

## CLASS CERTIFICATION

67.     Plaintiffs filed a Motion to Certify Class (Doc. ID # 232) which is now pending before this Court and sets out detailed and well-supported reasons why this Class should be certified and why it clearly satisfies the requirements of Fed. R. Civ. P. 23(a).

68.     The Class consists of thousands of members and is therefore so numerous as to merit a class action. The Claims Administrator in this case sent copies of the KPMG Settlement Notice to over 21,000 recipients which demonstrates how large the class is and how appropriate a class action is to the claims.

69.     The Class Members all have numerous question of law and fact in common because all claims arise out of the same exact and uniform pattern of events conducted by KPMG Bermuda in conjunction with its audits of ANR during the Class Period.

70.     Lead Plaintiff's claims are typical, indeed *identical*, to those of other class members.

71.     Finally, Lead Plaintiffs will adequately represent the Class for settlement purposes because their interests are not antagonistic to those of other Class Members and because Co-Lead Counsel for the Lead Plaintiffs is qualified and experienced. Ms. Easterling's testimony is attached as Exhibit C hereto, and demonstrates her adequacy as a class representative. Under the law, therefore, the proposed Class for settlement purposes is adequate.

## THE FEE APPLICATION

72.     The KPMG Settlement Notice informed Class Members that Co-Lead Counsel are moving for an award of attorneys' fees in an amount not to exceed 1/3 of the Gross Settlement Fund, and for reimbursement of their expenses in the approximate

amount of $350,000.00. The KPMG Settlement Notice also stated that Co-Lead Counsel are moving for an award not to exceed $10,000.00 to Lead Plaintiff CWA for reimbursement of its reasonable costs and expenses (including lost wages) directly relating to its representation of the Class.

73.    Co-Lead Counsel achieved an extraordinary result for the Class at great risk and expense to themselves. Throughout this litigation, Co-Lead Counsel was committed to the interests of the Class, and invested the time and resources necessary to resolve the Class' claims. Moreover, Co-Lead Counsel took this case on a contingency basis, with no assurance of success, and vigorously litigated this case against KPMG Bermuda for almost two years after the complaint against KPMG Bermuda was sustained, without any compensation at all.

## A.    Plaintiffs' Counsels' Work and Expertise

74.    Co-Lead Counsel, Scott + Scott and Milberg LLP, are national law firms that specialize in shareholder class and other representative litigation. This declaration and the declarations of Arthur Shingler and Barry Weprin (Exhibits D and E) demonstrate the enormous effort and expense that went into litigating this case. These declarations indicate the amount of time spent by each attorney and paralegal employed by Scott + Scott and Milberg LLP, respectively, and the lodestar calculations based on current billing rates. None of these hours were submitted in connection with the earlier settlement in this case.

75.    As set forth in the Declaration of Arthur L. Shingler III and Barry W. Weprin, Exhibits D and E, respectively, since their application in connection with the prior settlement, Co-Lead Counsel expended approximately 3,500 hours in the

prosecution and investigation of this litigation. The resulting lodestar is $ 1,550,259.00. Under the lodestar approach, the requested fee yields a multiple of 2.26.

**B.    Standing and Caliber of Opposing Counsel**

76.    The quality of work performed by Co-Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. KPMG Bermuda was represented by Shipman & Goodwin and King & Spaulding, two of the country's most prestigious law firms. King & Spaulding spared no effort in the defense of their clients. In the face of this knowledgeable, formidable, and well-financed opposition, Co-Lead Counsel were nonetheless able to develop a case that was sufficiently strong to persuade KPMG Bermuda to settle the case on terms that were favorable to the Class.

**C.    The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk, Contingent Securities Cases**

77.    This prosecution was undertaken by Plaintiffs' Counsel entirely on a contingent-fee basis. The risks assumed by Plaintiffs' Counsel in bringing these claims to a successful conclusion are described above and in the Settlement Memorandum. Those risks are also relevant to an award of attorneys' fees. Here, the risks assumed by Plaintiffs' Counsel, and the time and expenses incurred without any payment, were extensive, and are described in detail above and in the accompanying declarations and Attorneys' Fees and Expenses Memorandum.

78.    From the onset, Co-Lead Counsel understood that they were embarking on a complex and expensive litigation with no guarantee of ever being compensated for the investment of time and money the case would require. In undertaking that responsibility, Co-Lead Counsel were obligated to ensure that sufficient resources were dedicated to the

18

prosecution of this litigation, and that funds were available to compensate staff and to cover the considerable out-of-pocket costs that a case such as this requires. With an average lag time of several years for these cases to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

79.     Co-Lead Counsel also bore the risk that no recovery would be achieved. As discussed herein and in the Settlement Memorandum, from the outset, this case presented a number of significant risks and uncertainties that could have prevented any recovery whatsoever. As discussed in detail in the Attorneys' Fees and Expenses Memorandum, despite the most vigorous and competent of efforts, success in contingent-fee litigation, such as this, is never assured.

80.     Co-Lead Counsel firmly believe that the commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels.

81.     Moreover, courts have repeatedly recognized that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies. As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only occur if private plaintiffs, particularly institutional investors, take an active role in protecting the interests of shareholders. If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action.

82.    As a result of Co-Lead Counsel's extensive and persistent efforts in the face of substantial risks, Co-Lead Counsel achieved a significant recovery for the benefit of the Class. In circumstances such as these, and in consideration of Plaintiffs' Counsels' hard work and the extraordinary result achieved, the requested 1/3 fee is reasonable and should be approved.

## REIMBURSEMENT OF THE REQUESTED EXPENSES AND COSTS IS FAIR AND REASONABLE

83.    Co-Lead Counsel also moving for reimbursement of $186,855.16 in litigation expenses reasonably and actually incurred by Plaintiffs' Counsel in connection with commencing and prosecuting the claims against the defendants. Plaintiffs' Counsel advanced all of the incurred litigation expenses.

84.    As set forth in the declaration of Barbara Easterling, Exhibit F, CWA has incurred expenses of $6,628.95.

85.    From the beginning of the case, Plaintiffs' Counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the Action was successfully resolved. Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds advanced by them to prosecute this action. Thus, Plaintiffs' Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

86.    As set forth in the declarations attached as Exhibits D and E, Plaintiffs' Counsel incurred litigation expenses in connection with the prosecution of this Action. These declarations identify the specific category of expense, *e.g.*, experts' fees,

transcripts, travel costs, photocopying, telephone, fax and postage expenses and other costs actually incurred for which Plaintiffs' Counsel seek reimbursement.

87.    Furthermore, pursuant to the PSLRA (15 U.S.C. §78u-4(a)(4)), Lead Plaintiff CWA is entitled to full reimbursement of its expenses it incurred in assisting Co-Lead Counsel. Here, the CWA trustees utilized the services of CWA's usual labor lawyer to monitor the litigation and advise them on decisions to be made in the course of the litigation. CWA's request also includes travel costs for attendance at Ms. Easterling's deposition. No claim for Ms. Easterling's lost wages or opportunity costs have been included in CWA's application for reimbursement. These amounts are set forth in the Declaration of Ms. Easterling, Exhibit F.

88.    In view of the complex nature of the Action, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Class. Accordingly, Co-Lead Counsel respectfully submit that the expenses incurred by Plaintiffs' Counsel and CWA are reasonable in amount and should be reimbursed in full.

## CONCLUSION

89.    In the view of the substantial recovery to the Class, the extraordinary risks of this litigation, the diligent efforts of Co-Lead Counsel, the high quality of work performed, the contingent nature of the fee, and the technical complexity of the case, Co-Lead Counsel respectfully submit that the settlement with KPMG Bermuda should be approved as fair, reasonable and adequate, that the Plan of Allocation should be approved; that a fee in the amount of 1/3 of the Gross Settlement Fund should be awarded to Co-Lead Counsel; that Co-Lead Counsel's litigation expenses in the amount of $186,855.16 should be reimbursed; and that Lead Plaintiff CWA request under the

PSLRA for $6,628.95 for its reasonable costs and expenses (including lost wages) directly relating to its representation of the Class should likewise be granted.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 29, 2008.

Beth A. Kaswan