UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHERRY SCHNALL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANNUITY AND LIFE RE (HOLDINGS), LTD., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 02 CV 2133 (EBB)<br>)<br>)  Filing Date April 29, 2009<br>)<br>)<br>)<br>)<br>) |

**AFFIDAVIT OF JASON ZUENA IN SUPPORT OF MOTION TO
DISTRIBUTE SETTLEMENT FUNDS FROM SETTLEMENT WITH KPMG BERMUDA**

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF SUFFOLK   )

JASON ZUENA, being first duly sworn, deposes and says:

1.  I am a Director of Operations for The Garden City Group, Inc. ("GCG"). Plaintiffs' Co-Lead Counsel retained GCG to act as the Claims Administrator in this action in connection with a prior settlement, in 2004, with certain defendants, and again with respect to the current Settlement. The prior settlement was distributed to claimants who submitted Proofs of Claim and whose claims were accepted in connection with that prior settlement. I make this affidavit in relation to the administration of the present Settlement with KPMG Bermuda (the "KPMG Settlement). GCG now requests that this Court enter an order (a) approving the administrative action taken by GCG in accepting and rejecting the additional claims filed by Claimants in connection with the KPMG Settlement; (b) directing payment to GCG of the balance of its fees and expenses in connection with the services performed and to be performed in giving notice of the KPMG Settlement to the Class, preparing tax returns for the Settlement

Fund, the processing of the additional Proofs of Claim submitted in connection with the KPMG Settlement, and the administration and distribution of the Net KPMG Settlement Fund; (c) directing distribution of the Net KPMG Settlement Fund to the Authorized Claimants, including the previously accepted claims and the additional acceptable claims submitted in connection with the KPMG Settlement; and (d) authorizing destruction of paper copies of all Proof of Claim forms one year after distribution of the KPMG Settlement Fund, and authorizing destruction of electronic copies of Proof of Claim records three years after distribution of the KPMG Settlement Fund. I have personal knowledge of the facts stated herein.

2.  A settlement of this action with KPMG in Bermuda, for $10.5 Million (U.S. $) was proposed pursuant to the Stipulation and Agreement of Settlement with Remaining Defendant KPMG Bermuda dated February 11, 2008 (the "Stipulation"). This Court entered a Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings (the "Notice Order"), dated February 19, 2008, preliminarily approving the Stipulation and directing that notice of the proposed settlement be given to the members of the Class.

3.  In connection with the KPMG Settlement, GCG gave notice of the proposed settlement to the Class, processed all additional claims submitted by Class Members in this action, prepared (and will prepare) the tax returns required for the Gross Settlement Fund (from both settlements), and will distribute the Net KPMG Settlement Fund to the Authorized Claimants.

4.  The KPMG Settlement provided an additional $10,500,000 (U.S. $) Settlement Fund to be distributed to Class Members who had either (i) already submitted acceptable Proofs of Claim in connection with the previous settlement or (ii) who submitted a newly acceptable Proof of Claim in connection with the KPMG Settlement.

5.  As more fully described in the Affidavit of Jose C. Fraga dated May 28, 2008, previously filed herein, GCG distributed the Court-approved Notice of Proposed Settlement of Class Action with Remaining Defendant KPMG Bermuda, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Notice") and Proof of Claim and Release form (the "Proof of Claim") (collectively with the Notice, the "Claim Packet") to the members of the Class commencing on March 7, 2008. As scheduled in the Notice Order, a hearing was held on June 5, 2008 to consider the settlement pursuant to the Stipulation. By Order and Final Judgment dated June 13, 2008, this Court approved the Settlement as fair, reasonable and adequate and approved the Plan of Allocation as affair and reasonable method for the distribution of the Net KPMG Settlement Fund.

### Procedures Followed in Processing Claims

6.  Under the terms of the KPMG Stipulation, Class Members who had not previously submitted an acceptable Proof of Claim were required to submit a Proof of Claim in order to obtain their share of the "Net KPMG Settlement Fund" (the $10.5 Million Settlement Amount, less all attorneys' fees and expenses of the litigation approved by this Court, less all administration fees and expenses approved by this Court, plus interest earned on the Settlement Fund, less taxes payable on such interest).

7.  GCG undertook the following tasks in order to prepare to process the Proofs of Claim: conferred with Plaintiffs' Co-Lead Counsel to define the project and guidelines for claims processing; trained staff in the specifics of the project; developed programs for entry of the Class Members' identifications and their transaction information.

8.  Class Members seeking to share in the Net KPMG Settlement Fund were directed in the Notice to submit their Proofs of Claim to:

Annuity and Life Re (Holdings), Ltd. Securities Litigation
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9254
Dublin, OH 43017-4654

GCG sorted incoming mail into Proofs of Claim and administrative mail. Claim Packets that were returned by the Post Office were reviewed for better addresses and, where available, new addresses were entered into the database and new Claim Packets were mailed to the updated addresses. Administrative mail such as correspondence and requests for Proof of Claim forms were reviewed and appropriate responses given.

9. The Proof of Claim forms were opened and scanned into a database along with all submitted documentation. If the Proof of Claim form did not have a pre-assigned claim number, it was assigned one. The information from each claim form, including the name, address, the last four digits of the Taxpayer I.D. or Social Security Number of the Claimant, and the purchase and sales transactions listed on the claim were then entered into a computerized database. The documentation provided in support of each claim by the Claimant was reviewed to ascertain whether the Claimant had in fact purchased or otherwise acquired the securities of Annuity and Life Re (Holdings), Ltd. ("ANR") during the period of March 15, 2000 through November 19, 2002, inclusive (the "Class Period"). Claims were then reviewed to be sure they were not from the Defendants, their officers, directors, and partners at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest, to the extent that the identities of such persons or entities are known to us through the list of defendants and through the Claimant's certification on the Proof of Claim form. Claims were also reviewed against the list of persons requesting exclusion.

10. GCG established internal claim codes (also known as "message codes") to identify and classify types of claims and conditions that exist within the claims. Where a submitted claim lacked the required filing information or documentation to substantiate the Class Member's transactions during the Class Period, or was otherwise ineligible, a deficiency letter was sent to the Claimant advising him or her of the deficiency and requesting the submission of the appropriate documentary evidence or correction of the defect.

11. Where a deficiency letter was sent, each Claimant was notified that unless the deficiency was corrected within twenty (20) days, his or her claim would be accepted only to the extent of the documentation supplied, or that the claim would be entirely rejected if they had not supplied the required documentation or filing information for any transactions.

12. Responses to Deficiency letters were carefully reviewed and evaluated. If the response corrected the deficiency, the database was updated to reflect the accepted claim. If the response did not cure the defect, the Claimant was called advising him or her (i) the claim was still deficient, (ii) what was needed to cure the defect and, (iii) if the deficiency was not corrected the claim would be rejected in whole or part, or (b) an Ineligible letter was sent if the submitted response demonstrated that the Claimant was not eligible to share in the Net Settlement Fund.

13. After all responses were received and evaluated and claims updated, GCG staff called Claimants (both timely and late filed) with still deficient claims where the potential Recognized Claim exceeded $10,000 to provide them a final opportunity to fix their claim. If in response to the telephone call the Claimant cured the deficiency, the database was manually updated to reflect the change.

14. Claimants who submitted claims which showed that they were ineligible to participate in the Net KPMG Settlement Fund (for example, where their claim showed that they

had suffered no Recognized Claim from their purchases of ANR common stock during the Class Period, or where their purchases were not made within the Class Period) were sent a rejection letter. Claimants who submitted duplicate claims were also sent rejection letters rejecting the duplicate claims. All of the Claimants who were sent Ineligibility letters were advised of their right to have this Court review our administrative determination.

15. Attached hereto as Exhibit "A" is a copy of the forms of letters used to notify claimants of the deficiency in their claims or the rejection of their claims. The rejection letter advised the claimant of his, her or its right to request this Court's review of our administrative determination rejecting the claim. The letter stated that the Claimant could request this Court's review of the rejection of their claim by filing a statement in writing setting forth the reasons why they believe that the claim was adequately submitted. No claimant has requested this Court's review of the rejection of his, her or its claim.

16. "Recognized Claim" amounts were calculated for claims, which were properly filed and supported with adequate documentary evidence. Pursuant to the Recognized Claim formula in the Plan of Allocation previously approved by the Court in connection with the initial ANR Settlement, and approved for use in this settlement, a Recognized Claim was calculated by using the Plan of Allocation of Net Settlement Fund Among Class Members found on page 9 of the initial Settlement Notice which states:

For purposes of the Settlement, "Recognized Claims will be calculated as follows:

(a) For shares of ANR common stock purchased during the Class Period and still owned as of the close of trading on November 19, 2002, "Recognized Claim" shall be the Plaintiffs' Contention of Alleged Inflation ("PCAI") per share on the date of purchase as shown on Schedule 1 of the Notice for the date of purchase.

(b) For shares of ANR common stock purchased during the Class Period and sold at a loss on or before the close of trading on November 19, 2002, "Recognized Claim" shall be the lesser of (x) the Purchase Price Paid less the Sale Proceeds Received; or (y) the PCAI per share on the date of purchase (as shown on Schedule 1 of the Notice for the date of purchase), less the PCAI per share on the date of sale (as shown on Schedule 1 of the Notice for the date of sale).

17. Fifteen (15) claims were postmarked later than July 7, 2008, the submission deadline stated in the KPMG Notice. No claim has been rejected because it was received after the initial submission deadline and we believe no delay has resulted from the provisional acceptance of these claims. It is our belief that when the equities are balanced, it would be unfair to prevent an otherwise valid claim from participating in the Net KPMG Settlement Fund solely because it was submitted after the cut-off date, when it was submitted while the claims were still being processed. Accordingly, it is respectfully requested that this Court approve the administrative determination not to reject claims submitted after the July 7, 2008 deadline because of lateness. These claims are included in the list of Authorized Claimants.

18. However, there must be a final cut-off after which no more claims may be accepted in order that there may be a proportional distribution of the Net KPMG Settlement Fund. Acceptance of any claim received after the date of this application would necessarily increase the costs of the administration and could require a delay in the distribution. Accordingly, it is also respectfully requested that an Order be entered that no claim submitted after April 15, 2009, a date during the preparation of this application, be accepted for any reason whatsoever.

19. A total of 2,998 persons or entities have filed claims herein, whether by submitting a Proof of Claim with respect to the prior Settlement with the Previously Settled Defendants or by submitting a Proof of Claim in connection with this settlement, (2,983 timely and 15 after July 7, 2008), of which a total of 2,702 have been provisionally accepted.

20. A total of 296 Claimants were rejected in whole or in part for the following reasons:

| No. of Claims | Reason for Rejection |
| --- | --- |
| 45 | Claim Did Not Fit the Definition of the Class |
| 148 | Duplicate Claim |
| 41 | Deficient Claims Never Cured |
| 62 | Claim Did Not Result in a Recognized Claim |

21. An integral part of all of our claims administration projects is the Quality Assurance review. Once all of the claims have been processed, Deficiency and/or Rejection letters have been mailed, and deficiency responses reviewed and processed, GCG's Quality Assurance unit performs a final project wrap-up in order to ensure correctness and completeness of all of the claims processed prior to preparing our final reports to counsel. Here, in connection with this Quality Assurance process we: determined that valid claims have no messages denoting ineligibility; determined that claims that are ineligible have messages denoting ineligibility; determined that claims that contained purchases that occurred after the Class Period contain appropriate ineligible messages; determined that claim detail (transaction) message(s) appear(s) only on claim detail records; determined that all claims requiring Deficiency/Rejection letters were sent such letters; performed a sample review of deficient claims; reviewed claims with

large dollar losses; sampled claims that were determined to be ineligible, including those with no Recognized Claim calculated in accordance with the Plan of Allocation, in order to verify that all transactions had been captured correctly; and tested the accuracy of the calculation program.

22. In support of the work described above, the GCG computer staff designed, implemented and tested the following programs for this administration: Calculation program with descending dollar and alphabetical order lists; and payment writing programs.

23. GCG has provisionally accepted 2,702 claims representing a total Recognized Claim of $210,060,985.49 (including $208,326,867.44 from timely claims and $1,734,118.05 from claims submitted after July 7, 2008).

24. Submitted herewith as Exhibit B is a computer printout listing all the claims filed herein. The first portion of the printout alphabetically lists all the timely filed Authorized Claimants and shows their Recognized Claim amounts, followed by an alphabetical list of otherwise acceptable claims submitted after July 7, 2008 showing their Recognized Claim amounts. The next portion of the printout alphabetically lists all the rejected Claimants and shows the reason why such claims were rejected.

25. GCG has spent the time necessary to do a thorough job of processing the claims and to protect the interests of each Class Member filing a claim. No claims were rejected out-of-hand and adequate time was spent communicating with Class Members and suggesting appropriate ways they could document their claims and participate in the settlement. Telephone calls and written letters from Claimants to GCG were courteously handled. Class Member were assisted to the fullest extent possible. The professional attitude and work product of GCG was, I believe, the highest quality.

26. It is respectfully requested that the Court enter an Order approving the above determinations accepting and rejecting the claims filed herein. In order to allow the final distribution of the Net KPMG Settlement Fund it is necessary to bar any further claims against the Net KPMG Settlement Fund and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Gross KPMG Settlement Fund or the Net KPMG Settlement Fund be released and discharged from any and all claims arising out of such involvement beyond the amount allocated to them.

27. If the Court grants this motion, the GCG staff will undertake the following tasks: calculate the pro rata distribution amounts from the Net KPMG Settlement Fund by comparing each Authorized Claimants' Recognized Claim to the Total Recognized Claim of all Authorized Claimants, and multiplying that fraction by the dollar value of the Net KPMG Settlement Fund at the time of distribution; prepare payment drafts and payment registers, and mail payments by prepaid first class mail; issue replacement drafts upon request by payee; and, answer inquiries about claim calculation and payments.

28. Pursuant to the Plan of Allocation approved in this action, any monies remaining in the Net KPMG Settlement Fund by reason of returned or un-cashed distribution drafts or otherwise one year after the initial distribution, and after appropriate efforts have been made to locate and distribute funds to Authorized Claimants who did not cash their distribution drafts are to be re-distributed, with such remainder to be allocated to Authorized Claimants who have cashed their distributions, provided that they would receive at least $10.00 on such re-distribution, based on their Recognized Claims, after payment of any unpaid costs or fees incurred in administering the Net KPMG Settlement Fund for such re-distribution.

29.   If the Court grants this motion, the GCG staff will make reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net KPMG Settlement Fund cash their distribution drafts.  If there is any balance remaining in the Net KPMG Settlement Fund one (1) year after the initial distribution of the Net KPMG Settlement Fund, GCG shall re-distribute such balance to Class members who have cashed their payments and who would receive at least $10.00 from such re-distribution.  If after six months after such re-distribution any funds shall remain in the Net KPMG Settlement Fund, then pursuant to the approved Plan of Allocation such balance shall be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated by Plaintiffs' Co-Lead Counsel.

## Fees and Disbursements

30.   GCG agreed with Plaintiffs' Counsel to give notice to the Class, process the claims herein, administer and distribute the Net KPMG Settlement Fund to the Authorized Claimants, and prepare the tax returns for the Settlement Fund in consideration of payment of our standard hourly fees, subject to this Court's approval.  Our hourly fees incurred to date and expected to be incurred through the distribution amount to $131,372.73, as shown on the invoices annexed hereto as Exhibit C.  In our engagement it was also agreed that our out-of-pocket expenses would be reimbursed.  Our actual out-of-pocket expenses incurred to date and expected to be incurred will total $19,305.71, as also shown on the invoices annexed as Exhibit C.  GCG respectfully requests the Court to authorize the payment of the full amount of such fees and out-of-pocket expenses.

31.   To date, GCG has received payment on account from the KPMG Settlement Fund in the aggregate amount of $74,451.37 in connection with its invoices dated April 15, 2008 and

June 26, 2008, attached hereto as Exhibit C. Accordingly there is a balance due of $ 76,277.07 payable to GCG.

### Records Retention And Destruction

32. We request that the Court enter an Order providing that one year after distribution of the Net KPMG Settlement Fund we are authorized to destroy the paper copies of the Proof of Claim forms, and three years after distribution of the Net KPMG Settlement Fund we are authorized to destroy electronic copies of claim records.

### Conclusion

33. For the foregoing reasons, it is respectfully requested that this Court enter an Order (1) approving GCG's administrative determinations accepting and rejecting claims as herein set forth; (2) authorizing payment to GCG of a total of $76,277.07 for the balance of its fees and expenses incurred and to be incurred in connection with giving notice to the Class, processing the claims preparing the tax returns and administering and distributing the Settlement Fund; (3) authorizing distribution of the Net KPMG Settlement Fund to the accepted claimants after this Court has determined an award of attorneys' fees and expenses of the litigation; and (4) authorizing destruction of paper copies of Proof of Claim Forms and electronic copies of claim records after an appropriate time after the distribution of the Gross KPMG Settlement Fund.

Jason Zuena

Sworn to before me this
27th day of April, 2009

Vanessa M Vigilante
Notary Public

VANESSA M. VIGILANTE
Notary Public, State of New York
No. 01VI6143817
Qualified in Queens County
My Commission Expires 4-17-2010

- 12 -